# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| UNITED STATES OF AMERICA, | Civil Action No.: 1:21-CV-02575-JPB |
| *Plaintiff*, | |
| v. | |
| THE STATE OF GEORGIA, *et al.*, | |
| *Defendants*, | |
| REPUBLICAN NATIONAL COMMITTEE, *et al.*, | |
| *Intervenor-Defendants*. | |

# STATE DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION FOR IMMEDIATE APPEAL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION .............................................................................................. 1

ARGUMENT ..................................................................................................... 3

I.   This Court Should Grant Reconsideration Because
     Controlling Eleventh Circuit Authority Requires Plaintiffs
     in All § 2 Cases to Plead and Prove Discriminatory Results. ................. 3

     A.   The Holding of *Johnson* Applies to All § 2 Cases. ........................ 4

     B.   The Eleventh Circuit Has Applied *Johnson* Outside the Vote
          Dilution Context. ............................................................................. 7

     C.   *Johnson* Was Not Overruled Or Even Undermined
          By *Brnovich*. .................................................................................. 8

     D.   *Johnson* Would Be Binding Even if It Were Dictum, and
          Even if *Brnovich* Implicitly Undermined It. ............................... 11

     E.   Applying the *Johnson* Rule in Every § 2 Case Makes Sense. ..... 12

II.  An Immediate Appeal of the Order Should Be Allowed if
     The Court Does Not Reconsider It. ....................................................... 14

CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Ariz. Republican Party v. Democratic Nat'l Comm.*,
  141 S. Ct. 2321 (2021) (No. 19-1258)..............................................................10

*Brnovich v. Democratic National Committee*,
  141 S. Ct. 2321 (2021) .................................................................... 1, 8, 9, 10

*Brooks v. Miller*,
  158 F.3d 1230 (11th Cir. 1998) .......................................................................7

*Cargill v. Turpin*,
  120 F.3d 1366 (11th Cir. 1997) .....................................................................11

*Democratic Nat'l Comm. v. Hobbs*,
  948 F.3d 989 (9th Cir. 2020), *rev'd, Brnovich*, 141 S. Ct. 2321 .............. 8, 10

*Greater Birmingham Ministries v. Sec'y of State for State of Ala.*,
  992 F.3d 1299 (11th Cir. 2021) .................................................................. 9, 13

*In re Hubbard*,
  803 F.3d 1298 (11th Cir. 2015) .....................................................................11

*Johnson v. DeSoto County Board of Commissioners*,
  72 F.3d 1556 (11th Cir. 1996) ...............................................................*passim*

*Johnson v. Governor of State of Fla.*,
  405 F.3d 1214 (11th Cir. 2005) .....................................................................13

*McFarlin v. Conseco Servs., LLC*,
  381 F.3d 1251 (11th Cir. 2004) ............................................................... 14, 15

*Schwab v. Crosby*,
  451 F.3d 1308 (11th Cir. 2006) .....................................................................12

**Statutes**

28 U.S.C. § 1292(b) ......................................................................... 2, 13, 14

42 U.S.C. § 1973(a) ................................................................................... 5

52 U.S.C. § 10301(a) ................................................................................. 5

52 U.S.C. § 10301(b) ................................................................................. 6

## INTRODUCTION

While State Defendants appreciate this Court's diligent management of the sprawling litigation, the Court's recent decision declining to dismiss the single claim asserted by the U.S. Department of Justice ignored controlling precedent when it held that § 2 claims under the Voting Rights Act may proceed by claiming only discriminatory intent. Specifically, in *Johnson v. DeSoto County Board of Commissioners*, 72 F.3d 1556 (11th Cir. 1996), the Eleventh Circuit held that plaintiffs in *all* § 2 cases must plead and prove discriminatory results. Contrary to this Court's view, the *Johnson* court did not limit its holding to vote-dilution cases. Rather, relying on the plain language of § 2, *Johnson* expressly and repeatedly stated that its requirement of discriminatory results applied to all § 2 claims. It is unsurprising, then, that the Eleventh Circuit has reaffirmed this holding even outside of the vote dilution context.

Contrary to this Court's understanding, moreover, the Supreme Court's recent decision in *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321 (2021), does not require or authorize the departure from *Johnson*. *Brnovich* addressed not only a § 2 claim, but also a Fifteenth Amendment claim, which *requires* proof of discriminatory intent, and which is undoubtedly why the *Brnovich* Court felt obligated to address that issue on the merits. But the

*Brnovich* Court's decision to undertake that analysis in that case does not undermine *Johnson*'s holding on the necessity of pleading and proving discriminatory results in a § 2 case.

In any event, this Court lacks the authority to limit or narrow an Eleventh Circuit holding and, indeed, is obligated even to follow Eleventh Circuit dicta. Unless or until the Eleventh Circuit narrows the scope of *Johnson*, this Court is obligated to apply *Johnson* as written—all § 2 claims require a plaintiff to plead and prove discriminatory results. Accordingly, the Court should reconsider its decision and follow *Johnson*, which would require dismissal of the Department's Complaint.

Alternatively, the Court should certify this issue for immediate appeal. *See* 28 U.S.C. § 1292(b). This issue presents a controlling question of law where an appeal will materially advance the ultimate termination of the litigation. Indeed, if State Defendants are correct, the Department's Complaint must be dismissed. Accordingly, if the Court does not reverse course on its own, the Court should certify this issue for immediate appeal so that the Eleventh Circuit may address *Johnson*'s scope, in light of *Brnovich*.

## ARGUMENT

**I.    This Court Should Grant Reconsideration Because Controlling Eleventh Circuit Authority Requires Plaintiffs in All § 2 Cases to Plead and Prove Discriminatory Results.**

The Department's one-count Complaint alleges as its sole basis for invalidating SB 202 that the law was enacted with a discriminatory purpose. As this Court noted, "The United States contends that SB 202 violates § 2 of the VRA because the challenged provisions 'were adopted with the purpose of denying or abridging Black citizens' equal access to the political process.' Compl. ¶ 161, ECF No. 1."  Order at 6.  In support of their motion to dismiss, *see* [Doc. 38], State Defendants showed that the Complaint should be dismissed because the Eleventh Circuit's controlling decision in *Johnson* requires a plaintiff bringing a § 2 claim to plead and prove, not just discriminatory purpose, but discriminatory *results* as well.  The Department opposed the motion on the ground that "Plaintiffs who bring a Section 2 purpose claim need not also plead and prove a Section 2 results claim."  Opp. at 19 [Doc. 58].  This Court rejected State Defendants' argument on the view that *Johnson* requires a showing of discriminatory results only in vote-dilution cases.  *See* Order at 14–15.  But *Johnson* is not so narrow.  For the following five reasons, the Court should reconsider that ruling.

3

### A.    The Holding of *Johnson* Applies to All § 2 Cases.

First, *Johnson* carefully framed its holding as applying to *all* § 2 claims—with no exceptions.  It held that the "statutory language [of § 2] expressly requires a showing of discriminatory results, and it *admits of no exception* for situations in which there is discriminatory intent but no discriminatory results." *Johnson*, 72 F.3d at 1563 (emphasis added).  Yet in its Order, this Court created an exception—and a broad one—for all cases other than vote-dilution cases.  That exception swallows the *Johnson* rule almost entirely.

Yet the Eleventh Circuit did not use casual or loose language in *Johnson*'s holding.  It repeatedly and precisely explained that § 2 plaintiffs, all of them, must plead and prove discriminatory results.  *See id.* at 1561 ("DISCRIMINATORY INTENT ALONE IS INSUFFICIENT TO ESTABLISH A VIOLATION OF SECTION 2") (heading of Section II-B of opinion; capitalization in original); *id.* at 1562 (rejecting the view "that *some § 2 plaintiffs* may prevail without showing discriminatory results" because "discriminatory results must be shown in order to establish a § 2 violation") (emphasis added); *id.* at 1564 ("[W]e cannot read the results requirement out of § 2 … [I]n order to prevail on a § 2 claim, a plaintiff must prove discriminatory results"); *id.* ("[O]ur holding [is] that intent alone is insufficient to establish a § 2 violation"); *id.* ("The statute itself requires that

4

discriminatory results be shown"). None of these statements limits *Johnson*'s reach.

By contrast, in its Order, this Court incorrectly concluded that *Johnson* "is distinguishable from the circumstances at bar because it involved a vote *dilution* case." Order at 14 (emphasis in original). While it is true that *Johnson* was a vote-dilution case, the Eleventh Circuit bottomed its decision in *Johnson*, not on anything peculiar to vote dilution cases, but on "the plain language of § 2." *Johnson*, 72 F.3d at 1563. Quoting subsection 2(a), the Court emphasized that the text of § 2 speaks of *results*. "[T]he plain language of § 2 … states: 'No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which *results* in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color ….'" *Id*. (quoting former 42 U.S.C. § 1973(a), now 52 U.S.C. § 10301(a)) (emphasis in *Johnson*). The plain language of subsection 2(a), of course, is not limited to vote-dilution cases. It applies to *all* § 2 cases, including this one.

So does the holding of *Johnson*. After quoting the foregoing text of subsection 2(a), the *Johnson* Court commented: "That statutory language expressly requires a showing of discriminatory results, and it *admits of no exception* for situations in which there is discriminatory intent but no

5

discriminatory results." *Id.* (emphasis added).  Neither the text of § 2 nor *Johnson* itself authorized a judge-made exception for non-vote dilution cases.

Subsection 2(b) of the VRA provides that "A violation of subsection (a) is established if, *based on the totality of circumstances*," the plaintiff makes a certain showing of discriminatory results then specified in 2(b).  52 U.S.C. § 10301(b) (emphasis added).  The first sentence of subsection 2(b) states in full:

> A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Id.*  The "totality of circumstances" referred to in subsection 2(b) therefore goes to how the discriminatory results requirement of subsection 2(a) may be satisfied.  Here, however, the Department deliberately chose not to plead a discriminatory results claim.  Thus, no consideration of the "totality of circumstances" can overcome the Department's failure to plead a results claim. *Cf.* Order at 10–12.

6

### B.  The Eleventh Circuit Has Applied *Johnson* Outside the Vote Dilution Context.

In any event, the Eleventh Circuit has applied *Johnson* outside the context of vote-dilution cases, which reconfirms that *Johnson* is not limited to that context.  For example, in *Brooks v. Miller*, 158 F.3d 1230 (11th Cir. 1998), the Court considered a § 2 challenge to Georgia's primary runoff rule, which requires a runoff election if no candidate in a primary election receives a majority of votes.  *Brooks* did not involve a vote-dilution claim; the plaintiffs alleged that the primary runoff rule deterred black candidates from running for office.

In *Brooks*, moreover, the Court rejected the plaintiffs' argument "that a showing of discriminatory purpose alone is sufficient for a violation of § 2."  *Id.* at 1237.  The Court explained that "we are bound by *Johnson v. DeSoto County Bd. of Comm'rs*, 72 F.3d 1556 (11th Cir. 1996), which held that discriminatory intent alone, in the absence of a showing of discriminatory effect, is insufficient to establish a violation of § 2."  *Brooks*, 158 F.3d at 1237.  Like *Johnson*, and contrary to this Court's ruling, *Brooks* did not cabin the rule requiring discriminatory results to certain kinds of § 2 cases.

7

**C.** ***Johnson* Was Not Overruled Or Even Undermined By *Brnovich*.**

In its Order, this Court nevertheless stated that the "State Defendants'
expansive interpretation of [*Johnson*] is *questionable* in light of the Supreme
Court's recent express consideration of a discriminatory purpose claim" in
*Brnovich*.  Order at 15 (emphasis added).  This Court went on to say that
"Presumably, the Supreme Court would have rejected the plaintiffs'
discriminatory purpose claim if, as State Defendants contend, such a claim
were invalid as a matter of law."  *Id.*  The Court's conclusion, however, does
not hold up.

In *Brnovich*, the Ninth Circuit had held that an Arizona law was enacted
for a discriminatory purpose and thus violated what the Ninth Circuit had
deemed the "'intent test' of Section 2."  *Democratic Nat'l Comm. v. Hobbs*, 948
F.3d 989, 1038 (9th Cir. 2020), *rev'd*, *Brnovich*, 141 S. Ct. 2321.  The Supreme
Court held that the Ninth Circuit was wrong on the facts because the law's
purpose was not, in fact, discriminatory.  *See* 141 S. Ct. at 2348–50.

This Court's suggestion that, if *Johnson* were correct, *Brnovich*
"[p]resumably … would have rejected the plaintiffs' discriminatory purpose
claim … as a matter of law," Order at 15, is mistaken.  The Supreme Court did

not grant certiorari in *Brnovich* to decide if § 2 intent-only claims are viable. In other words, the *Johnson* issue was not before the Court in *Brnovich*.

Unlike the Department here, moreover, the *Brnovich* plaintiffs did not limit themselves to an intent-only § 2 claim.  They brought both a § 2 claim *and* a Fifteenth Amendment claim, and in support of both claims they alleged both discriminatory results *and* discriminatory purpose.  *See* 141 S. Ct. at 2334 (plaintiffs claimed that Arizona's voting restrictions "adversely and disparately affect" minorities and alleged one "restriction was 'enacted with discriminatory intent' and thus violated both § 2 of the VRA and the Fifteenth Amendment").  Proof of such discriminatory intent *is* required to establish a Fifteenth Amendment violation.  *See Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1321 (11th Cir. 2021) ("If Plaintiffs are unable to establish both intent *and* effect, their constitutional claims [under the Fourteenth and Fifteenth Amendments] fail.") (emphasis in original); *id*. at 1328–29 ("Unlike discrimination claims brought pursuant to the Fourteenth and Fifteenth Amendments, which require proof of both discriminatory intent and actual discriminatory effect, the language of Section 2(a) of the VRA requires only proof of discriminatory "results," not of discriminatory intent.").  Moreover, as *Johnson* explained, proof of discriminatory intent may be circumstantial evidence of discriminatory results in a § 2 case.  *See infra* at 11–

12.  Therefore, the Supreme Court in *Brnovich* could not have disregarded as irrelevant the Ninth Circuit's rejection of the district court's finding of no discriminatory intent.

Such an approach would have been especially implausible given that the Ninth Circuit's treatment of the district court's discriminatory intent finding was one of the questions on which the Court had granted certiorari:  The second Question Presented in the petition granted and consolidated with *Brnovich* was:  "Whether the Ninth Circuit correctly held that Arizona's ballot-harvesting prohibition was tainted by discriminatory intent[.]"   *Ariz. Republican Party v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021) (No. 19-1258) (consolidated with *Brnovich*, No. 19-1257).  The fact that the Court granted certiorari on and answered that question does not cast doubt on *Johnson*:  The question whether a § 2 claim may be brought based on alleged discriminatory intent alone, as the Department has done here, was not squarely before the Court in *Brnovich*.

To be sure, unlike the Eleventh Circuit, the Ninth Circuit believes there is a free-standing "intent test" that can itself be a basis for a claim under § 2. *See Hobbs*, 948 F.3d at 1011 ("A violation of Section 2 may now be shown under *either* the results test or the intent test.").  But in *Johnson*, as explained at length above, the Eleventh Circuit held otherwise.  And this Court is required

10

to follow the precedents of the Eleventh Circuit, not the Ninth.  *See In re Hubbard*, 803 F.3d 1298, 1309 (11th Cir. 2015) (holding that "the district court inadvertently transgressed the fundamental rule that courts of this circuit are bound by the precedent of this circuit" by following out-of-circuit precedent).

### D. *Johnson* Would Be Binding Even if It Were Dictum, and Even if *Brnovich* Implicitly Undermined It.

In all events, whether *Brnovich* renders *Johnson* "questionable" (Order at 15) is a matter for the Eleventh Circuit to decide.  This Court should apply *Johnson* as written unless and until the Eleventh Circuit says otherwise.  *See Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting *en banc* can judicially overrule a prior panel decision.").

That is true, moreover, even if the *Johnson* rule that all § 2 cases require discriminatory results could be viewed as dictum outside of the vote-dilution context.  Even in that situation, lower courts would not "be free to ignore it." *Johnson*, 72 F.3d at 1562 n.7.  That is because even the carefully considered dictum of a higher court must be followed.

Indeed, *Johnson* explained that the Eleventh Circuit must "treat[] as authoritative" and follow "[c]arefully considered statements of the Supreme Court, even if technically dictum." *Id*.  And so too here:  Just as the Eleventh

Circuit is bound by the carefully considered dictum of the Supreme Court, district courts within the Circuit are bound by the Circuit's dictum.

In short, the Eleventh Circuit follows the rule that "there is dicta, and then there is Supreme Court dicta." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006). And for district courts, the rule is that there is dicta and then there is Eleventh Circuit dicta—with the latter being binding on this Court.

### E.   Applying the *Johnson* Rule in Every § 2 Case Makes Sense.

*Brooks*' understanding of *Johnson's* scope also represents the most sensible reading of § 2. *Johnson* does not make discriminatory intent meaningless in § 2 cases. Indeed, *Johnson* squarely acknowledged that "proof of intent to discriminate is not irrelevant in a § 2 action. It is circumstantial evidence of discriminatory results that should be considered in assessing the 'totality of the circumstances.'" *Johnson*, 72 F.3d at 1565. Further, "[w]here it can be inferred, as it often can be, that the enactors were in a good position to know the effect their actions would have, the fact that the enactment was motivated by a desire to produce discriminatory results will often be strong, albeit circumstantial, evidence that such results were achieved." *Id.* But a plaintiff may not bring a § 2 action that relies on alleged discriminatory intent alone. That is the first rule of *Johnson*. The Department's claim violates that rule.

It is also important to remember that the defendant-friendly rule that § 2 requires proof of discriminatory results is the corollary to the plaintiff-friendly rule that § 2 does not *require* proof of discriminatory intent. *See Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1227 (11th Cir. 2005) ("Congress amended Section 2 of the Voting Rights Act so that a plaintiff could establish a violation without proving discriminatory intent."). Because plaintiffs in § 2 cases are not required to show discriminatory intent, common sense (not to mention Circuit precedent) dictates that they must be required to show something else. That something else is discriminatory results. *See Greater Birmingham Ministries*, 992 F.3d at 1329 ("Section 2(a) of the VRA requires only proof of discriminatory 'results,' not of discriminatory intent.") (rejecting § 2 challenge to Alabama's Photo Voter ID Law). State Defendants know of no Eleventh Circuit case, and the Department has cited none, holding that a plaintiff in a § 2 vote-denial case (or however the instant case should be characterized), or in any § 2 case for that matter, may plead only discriminatory intent and thereby avoid the obligation to plead and prove discriminatory results. Reconsideration should be granted.

## II.  An Immediate Appeal of the Order Should Be Allowed if The Court Does Not Reconsider It.

If this Court does not reconsider the Order, it should certify it for immediate appeal under 28 U.S.C. § 1292(b).  That statute provides: "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order."  *Id.*

All of the required elements of 28 U.S.C. § 1292(b) are satisfied here. First, whether *Johnson* and *Brooks* require all § 2 plaintiffs to plead and prove discriminatory results is no doubt a "controlling question of law."  *Id.*  It is what the Eleventh Circuit would describe as "a pure, controlling question of law" that "the court of appeals can rule on" but "without having to delve beyond the surface of the record in order to determine the facts."  *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

Second, although this Court did not adopt Defendants' reading of *Johnson*, it cannot be denied that State Defendants' reading is a strong one. There is, in other words, a "substantial ground for difference of opinion."  28

14

U.S.C. § 1292(b).   Given that *Johnson* nowhere limited its holding to vote-dilution claims, but seemed to extend its rule to all § 2 cases, it cannot be said that the Eleventh Circuit is "in complete and unequivocal agreement with the district court." *McFarlin*, 381 F.3d at 1258 (quotation marks omitted). The second requirement of § 1292(b) therefore is satisfied here.

Third, an immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As the Eleventh Circuit has pointed out, "[t]his is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. Here, if State Defendants prevail on the *Johnson* issue, the Department's Complaint must be dismissed, which obviously would "substantially shorten the litigation."

In short, this and all of the requirements of § 1292(b) are satisfied here. *Cf. id.* ("The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case."). Accordingly, if this Court does not wish to revisit its holding on the legal viability of the Department's intent-only § 2 claim, it should certify the issue to the Eleventh Circuit.

**CONCLUSION**

In *Johnson*, the Eleventh Circuit concluded that "we cannot read the results requirement out of § 2." 72 F.3d at 1564.  This Court's Order, however, did just that, dispensing with the results requirement for all § 2 cases other than those involving alleged vote dilution.  Because this Court's Order cannot be squared with *Johnson*, reconsideration or, in the alternative, certification for immediate appeal should be granted.

Respectfully submitted,

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
Special Assistant Attorney General
Erik Jaffe*
H. Christopher Bartolomucci*
Brian J. Field*
Riddhi Dasgupta*
Joshua J. Prince*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
*Admitted pro hac vice*

Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for State Defendants*

17

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing Motion has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Gene C. Schaerr*
Gene C. Schaerr