# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| THE NEW GEORGIA PROJECT, *et al.*, <br><br> *Plaintiffs*, <br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State, *et al.*, <br><br> *Defendants*. | Civil Action No.: 1:21-cv-01229-JPB |
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*, <br> *Plaintiffs*, <br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*, <br><br> *Defendants*. | Civil Action No.: 1:21-cv-01259-JPB |

SIXTH DISTRICT OF THE AFRICAN
METHODIST EPISCOPAL CHURCH,
*et al.*,

                                   *Plaintiffs*,

                   v.

BRIAN KEMP, Governor of the State of
Georgia, in his official capacity, *et al.,*

                                   *Defendants.*

Civil Action No.:
1:21-cv-01284-JPB

**STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
CERTIFICATION FOR IMMEDIATE APPEAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 3

    I.    Plaintiffs Fail to Establish Standing. ............................................ 3

        A.    Standing Arguments Cannot Be Waived, and the Court Has an Independent Duty to Consider Its Jurisdiction at All Stages of Litigation................................. 3

        B.    Immediate Relief Is Absolutely Necessary to Correct Errors Involving Jurisdiction. ............................................... 4

        C.    The Supreme Court's Holding in *Whole Woman's Health v. Jackson* Is an "Intervening Development" in the Law That Makes Clear That This Court Erred in Its Interpretation of Eleventh Circuit Precedent on Standing. ........................................................................ 6

        D.    Plaintiffs Fail to Identify Any Responsibility State Defendants Exercise That Causes Plaintiffs' Alleged Injuries as to the Challenged Claims. ................................ 8

    II.    At a Minimum, State Defendants Have Demonstrated They Have Grounds for Immediate Appeal If the Court Does Not Reconsider Its Orders. ................................................................. 12

CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Ashmore v. Ne. Petroleum Div. of Cargill, Inc.,*
    855 F. Supp. 438 (D. Me. 1994) .................................................................. 14

*Belleri v. United States,*
    712 F.3d 543 (11th Cir. 2013) ...................................................................... 4

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ..................................................................................... 5

*Georgia Latino Alliance for Human Rights v. Governor of Georgia,*
    691 F.3d 1250 (11th Cir. 2012) ................................................................ 8, 9

*Hoffman v. Wells Fargo Bank, N.A.,*
    No. 13-cv-5700, 2015 WL 3755207 (E.D. Pa. June 16, 2015). ................... 4

*Jacobson v. Fla. Sec'y of State,*
    974 F.3d 1236 (11th Cir. 2020) ........................................................*passim*

*Lewis v. Casey,*
    518 U.S. 343 (1996) .................................................................................. 2, 5

*McFarlin v. Conseco Servs., LLC,*
    381 F.3d 1251 (11th Cir. 2004) ............................................................ 14, 15

*Pearson v. Kemp,*
    831 F. App'x 467 (11th Cir. 2020) ............................................................ 13

*Rose v. Raffensperger,*
    511 F. Supp. 3d 1340 (N.D. Ga. 2021) ....................................................... 4

*Support Working Animals, Inc. v. DeSantis,*
    457 F. Supp. 3d 1193 (N.D. Fla. 2020) ....................................................... 7

*Warth v. Seldin,*
    422 U.S. 490 (1975) ................................................................................... 11

*Whole Woman's Health v. Jackson,*
    142 S. Ct. 522 (2021) ...................................................................... 1, 6, 7, 8

*Women's Emergency Network v. Bush,*
    323 F.3d 937 (11th Cir. 2003) ................................................................... 11

**Statutes**

O.C.G.A. § 21-2-50(a) .................................................................................... 9

## INTRODUCTION

In their motion, State Defendants demonstrated that the Supreme Court's recent holding in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), and the Eleventh Circuit's holding in *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020), make clear that this Court erred in holding that Plaintiffs have standing to sue State Defendants as to the challenged claims. In response, Plaintiffs move from one weak, rehashed argument to the next.

For example, although Plaintiffs don't dispute that Supreme Court and Eleventh Circuit precedent hold that standing cannot be waived at any stage of litigation, they nonetheless advance the nonsensical argument that State Defendants have somehow waived "particular arguments" regarding standing. They don't deny that in *Jacobson* the Eleventh Circuit has already rejected the argument that Plaintiffs can establish standing to sue an official who does not enforce the law causing their alleged injuries—indeed, Plaintiffs hardly address *Jacobson* at all. Nor do Plaintiffs deny *Jackson's* central premise: courts can enjoin only defendants who have the authority to enforce laws, not laws themselves. So they identify a few areas of election law over which State Defendants have authority.  But they cannot connect that authority to the injuries alleged in the challenged claims. Their failure to do so makes clear

that their claimed injuries are not traceable to State Defendants, nor redressable by an injunction against them.

And critically, Plaintiffs do not dispute that lack of Article III standing is an absolute bar to courts' power to decide the merits of a claim. Yet they attempt to convince this Court to allow them to continue to pursue claims for which it clearly lacks jurisdiction on the basis that they have standing to sue State Defendants on *other* claims, and that they have standing to pursue the challenged claims as to *other* Defendants. This "piggyback" theory of standing has been firmly rejected by the Supreme Court: "[S]tanding is not dispensed in gross." *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996).

State Defendants are aware that reconsideration or certification for immediate appeal are not routinely granted. But an intervening development in Supreme Court law makes clear that this Court erred in holding that Plaintiffs have standing to sue State Defendants as to the challenged claims. The Court should grant the motion to reconsider, or, in the alternative, it should certify the issue for immediate appeal so that the Eleventh Circuit may clarify its caselaw in light of *Jackson.*

# ARGUMENT

## I.   Plaintiffs Fail to Establish Standing.

Plaintiffs still have not identified any enforcement authority that the State Defendants could be enjoined from exercising which would redress Plaintiffs' alleged injuries as to the challenged claims. The Court therefore lacks standing and must dismiss the challenged claims.

### A.   Standing Arguments Cannot Be Waived, and the Court Has an Independent Duty to Consider Its Jurisdiction at All Stages of Litigation.

Plaintiffs concede that the issue of standing cannot be waived. Pls.' Resp. in Opp. to State Defs.' Mot. for Recons. 6 [Doc. 22] ("NGP Opp."). Yet they inexplicably argue that State Defendants have waived "particular arguments" that Plaintiffs lack standing. *Id.* Plaintiffs are wrong. The Eleventh Circuit could not have spoken more clearly when it stated that:

> Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute. "For a court to pronounce upon ... the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." If at *any point* a federal court discovers a lack of jurisdiction, it must dismiss the action.

*Jacobson*, 974 F.3d at 1245 (emphasis added) (citation omitted).

The Eleventh Circuit has also described the courts' obligation to consider standing as "continuing," and stated that "[u]nder the law of this circuit,

3

parties cannot waive subject matter jurisdiction, and we may consider subject matter jurisdiction claims at any time during litigation." *Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013) (alteration omitted). And of course, as this Court has noted, "standing implicates the Court's subject matter jurisdiction." *Rose v. Raffensperger*, 511 F. Supp. 3d 1340, 1350 (N.D. Ga. 2021).[1] Accordingly, the Court retains an obligation to consider Plaintiffs' standing on a motion for reconsideration. Plaintiffs' reliance (NGP Opp. 7–8) on a single out-of-circuit district court case[2] cannot make it otherwise.

## B.   Immediate Relief Is Absolutely Necessary to Correct Errors Involving Jurisdiction.

Plaintiffs further disregard the indispensable nature of Article III standing in their assertion that the Court may continue to hear claims over which it has no jurisdiction simply because the claims and parties would not be removed from the case entirely. Pls.' Consol. Resp. in Opp. to State Defs.' Mot. for Recons. 13–14 [Doc. 18] ("Consol. Opp."). Even if it were true that

---

[1] Plaintiffs plainly misread *Rose* when they cite it (NGP Opp. 8 n.4) for the proposition that State Defendants were required to file a new Rule 12(b)(1) motion to challenge Plaintiffs' standing. *Rose* simply held that bringing a standing challenge through a Rule 12(b)(1) motion is *permissible*, not mandatory.

[2] *Hoffman v. Wells Fargo Bank, N.A.*, No. 13-cv-5700, 2015 WL 3755207, at *9 (E.D. Pa. June 16, 2015).

failure to dismiss the challenged claims would impose no burden on this Court or on State Defendants—and it is not true—the Court still must dismiss the challenged claims against State Defendants because it clearly erred in holding that Plaintiffs have standing to pursue those claims.

Indeed, as the Supreme Court has repeatedly held, "standing is not dispensed in gross." *Lewis,* 518 U.S. at 358 n.6. Accordingly, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). It is of no consequence that Plaintiffs may have standing to bring *other* claims against State Defendants, or that they may have standing to bring the challenged claims against County Defendants. The question for the Court is whether Plaintiffs have standing to sue *these* Defendants for *these* claims. Plaintiffs cannot piggyback claims in their effort to drag State Defendants through as much discovery and extended litigation as possible.

Furthermore, failing to reconsider the Orders *would* impose costs on both this Court and State Defendants.[3] Keeping the State Defendants in as to the

---

[3] Strangely, Plaintiffs suggest (NGP Opp. 16) that State Defendants may have "evidence of legislative intent within their sole control," and that State Defendants would thus be subject to third-party discovery to obtain the evidence. It is unclear why Plaintiffs expect that members of the *executive* branch would be the sole possessors of evidence of *legislative* intent. Plaintiffs' apparent desire to go on a fishing expedition through State Defendants' records

challenged claims will lead to more motions on these claims, expand the scope of discovery, and create more discovery disputes. Each of these disputes will cost this Court and State Defendants time and resources. To compel State Defendants to engage in discovery and litigation for claims against them over which this Court has no jurisdiction is clear error, and that error in this Court's orders warrants reconsideration.

### C. The Supreme Court's Holding in *Whole Woman's Health v. Jackson* Is an "Intervening Development" in the Law That Makes Clear That This Court Erred in Its Interpretation of Eleventh Circuit Precedent on Standing.

Plaintiffs are also wrong when they say "nothing has changed" since the Court's orders. Consol. Opp. 13. To the contrary, after this Court rendered its decision, the Supreme Court issued an opinion that makes Plaintiffs' lack of standing clear. Although *Jackson* did not change the Supreme Court's standing doctrine, it is a development that makes the Court's misinterpretation of Eleventh Circuit precedent clear.

It is true, of course, that *Jackson* considered the *Ex parte Young* exception to sovereign immunity, rather than standing. *Jackson*, 142 S. Ct. at 534. But the Supreme Court's holding rested on an inquiry that is core to both

---

does not give them standing to pursue claims against those who do not have the authority to enforce the provisions of law underlying their claims.

standing and *Ex parte Young* analysis: whether a defendant possesses any authority in connection with a challenged provision of law "that a federal court might enjoin him from exercising." *Id.* Where, as here, the Court cannot enter an injunction that would redress Plaintiffs' injury because State Defendants do not possess authority over the challenged provisions of law, the injury is neither traceable to the named State Defendants nor redressable by an injunction against them.[4]

Plaintiffs read much into a scant three sentences regarding causation and redressability in *Georgia Latino Alliance*. Consol. Opp. 9–10; NGP Opp. 9. To the extent that case held that traceability and redressability can be established where an injury would be redressed by enjoining "each provision" of law, *see Georgia Latino Alliance for Human Rights v. Governor of Georgia,*

---

[4] As this Courts has noted, "the requirements of *Ex parte Young* overlap significantly with the last two standing requirements—causation and redressability." *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1210 (N.D. Fla. 2020) (citation omitted). And, as the Eleventh Circuit has suggested, the bar for traceability and redressability for Article III standing purposes is *higher* than the bar to establish a connection to sustain an *Ex parte Young* exception. As the Eleventh Circuit has held, "[t]o be a proper defendant under *Ex parte Young*—and so avoid an Eleventh Amendment bar to suit—a state official need only have 'some connection' with the enforcement of the challenged law. In contrast, Article III standing requires that the plaintiff's injury be 'fairly traceable' to the defendant's actions and redressable by relief against *that* defendant." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1256 (11th Cir. 2020) (citation omitted).

691 F.3d 1250, 1260 (11th Cir. 2012), rather than enjoining defendants from enforcing the provision, *Jackson* has made clear that holding was in error. A federal court may only "enjoin named defendants from taking specified unlawful actions." *Jackson*, 142 S. Ct. at 535. It may not "purport to enjoin challenged laws themselves." *Id.* (citation and internal quotation marks omitted). Plaintiffs cannot establish standing against State Defendants simply by pointing to specific passages of SB 202; under *Jackson* they must show that State Defendants have authority to *enforce* those passages.

### D.   Plaintiffs Fail to Identify Any Responsibility State Defendants Exercise That Causes Plaintiffs' Alleged Injuries as to the Challenged Claims.

Given the importance of enforcement authority to the analysis required by *Jackson*, it is striking that Plaintiffs have failed to make any plausible showing of enforcement authority. In Plaintiffs' own words, "it is the *enforcement* of a statute that imposes the injury; suits to enjoin unconstitutional statutes are properly brought against *officials…who enforce them*." NGP Opp. 13 (emphasis added). But despite this admission, Plaintiffs still have not identified any enforcement authority State Defendants possess as to the challenged claims. They merely pluck a few provisions of SB 202 that mention the Secretary of State or the State Election Board (SEB), and claim

these provisions prove that Plaintiffs' alleged injuries are traceable to State Defendants and redressable by an injunction against them.

Article III standing requires more. Plaintiffs bear the burden of showing that the enforcement authority contained in those provisions is connected, not merely to the challenged law, but to the specific harms Plaintiffs allege. And they must also show that an injunction restraining State Defendants from exercising that authority would redress those harms. Plaintiffs cannot make that showing. Each piece of evidence proffered to show that the Secretary of State or the SEB members[5] possess enforcement authority to which the alleged harms are traceable falls flat.

### 1. The Secretary of State's training, education, and election oversight authority[6]

Plaintiffs first contend that the Secretary's general authority over the election process is sufficient to establish traceability and redressability. But they ignore Eleventh Circuit precedent, already cited in State Defendants'

---

[5] Plaintiffs offer *no* enforcement authority that Governor Kemp possesses as to the challenged law. They rest their entire argument that they have standing against him on *Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250 (11th Cir. 2012). As discussed above, *supra* section I.C., that case offered no significant analysis of traceability and redressability, and Plaintiffs' reading of it is clearly inconsistent with *Jackson*.

[6] Consol. Opp. 9 (citing O.C.G.A. § 21-2-50(a); NGP Opp. 10 (same).

brief in support of motion for reconsideration, holding that "general supervision and administration of the election laws" does not establish standing. *Jacobson*, 974 F.3d at 1254.

Furthermore, Plaintiffs' assertion that the Secretary will undertake his election administration responsibilities "with the goal of obtaining SB 202 compliance" is insufficient because the Secretary's oversight and training responsibilities have no causal connection to Plaintiffs' alleged injuries. Plaintiffs claim injury based on two things: (1) the criminal prohibition on offering items of value to voters waiting in line, [No. 1:21-cv-01259-JPB, Doc. 35 ¶¶ 223–32; No. 1:21-cv-01284-JPB, Doc. 83 ¶¶342–48], and (2) an alleged intent to suppress Georgia voters' right to speak by voting for the candidates of their choice. But the Secretary's responsibilities do not allow him to impose any penalty for distributing items to voters, nor do they allow him to prevent Georgians from voting for their preferred candidates. Enjoining the Secretary from exercising his election oversight authority would therefore have no effect on Plaintiffs' alleged injuries. That lack of redressability is fatal to Plaintiffs' standing arguments.

The Eleventh Circuit has also already rejected Plaintiffs' argument that the Secretary of State's responsibility to instruct local officials regarding election requirements establishes traceability and redressability: Where state

law "already directs" local officials to take an action, "[a]n injunction ordering the Secretary to stay silent would do nothing to muzzle" the challenged provisions, which "already bind" the local officials. *Jacobson*, 974 F.3d at 1257. As the Court put it, "[t]here is no contrary evidence to suggest that the [local officials] would suddenly begin to disregard state law in the absence of instructions from the Secretary." *Id.*

### 2. The SEB's power to suspend local election officials[7]

Plaintiffs next say they seek to enjoin the SEB from penalizing local election officials who fail to enforce SB 202. But Plaintiffs suffer no injury if County officials are removed from office. If any injury may be inflicted by such removal, it is for the local officials, not Plaintiffs, to seek relief. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("A federal court's jurisdiction…can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action") (citation omitted). In any event, Plaintiffs do not allege that the SEB has taken any enforcement action against local officials, or that such enforcement is imminent, so any injury which could result from such action is speculative. *See Women's Emergency Network v. Bush*, 323 F.3d 937, 943 (11th Cir. 2003).

---

[7] Consol. Opp. 10; NGP Opp. 11.

### 3. Secretary of State's provision of absentee ballot applications[8]

Finally, NGP asserts, without explanation, that the Secretary's responsibility to design and make available the absentee ballot application form makes their claim that SB 202 suppresses the right to vote for one's preferred candidate traceable to the Secretary. NGP Opp. 10. Because they have failed to draw a connection between that responsibility and their claim against the Secretary, Plaintiffs have not established standing on the challenged claim. As the Eleventh Circuit has put it, "the elements of standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case,'" and "each element must be supported." *Jacobson*, 974 F.3d at 1245. Establishing standing is Plaintiffs' burden, and Plaintiffs have failed to advance any argument as to why a routine administrative responsibility makes their injuries traceable to the Secretary.

## II.   At a Minimum, State Defendants Have Demonstrated They Have Grounds for Immediate Appeal If the Court Does Not Reconsider Its Orders.

Plaintiffs also have no plausible objection to an interlocutory appeal.  For example, they incorrectly assert that interlocutory appeal on the question of

---

[8] NGP Opp. 10.

standing would require the Eleventh Circuit to consider questions of fact. Consol. Opp. 15. But Plaintiffs do not state any disputed facts which the Eleventh Circuit would need to consider in deciding whether Plaintiffs have standing against State Defendants as to the challenged claims. Instead, they misconstrue an unpublished decision in support of their bald assertion that redressability in election litigation will, of necessity, turn on the application of law to facts. *Pearson* said no such thing. It merely acknowledged that "facts have played a role in evaluating redressability in *other* election litigation," and decided that the facts could also play a role in that particular case. *Pearson v. Kemp*, 831 F. App'x 467, 473 (11th Cir. 2020) (emphasis added) (footnote omitted).[9] But the facts clearly do not control the standing issue in this case. The Eleventh Circuit need only consider SB 202 itself, and whether it grants authority to State Defendants to enforce the challenged provisions. That is a question of "pure law," which the Eleventh Circuit "can decide quickly and cleanly without having to study the record," and is therefore appropriate for

---

[9] In *Pearson*, the Eleventh Circuit addressed the limited issue of whether it had jurisdiction to consider an appeal of an emergency TRO entered by the district court, and determined that the TRO was not an appealable order. 831 F. App'x at 471–72. The issue of the plaintiffs' standing was not before the court.

certification under 1292(b). *See McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1262 (11th Cir. 2004) (cleaned up).

Plaintiffs are also wrong when they contend that there is no substantial ground for difference of opinion. An intervening development in Supreme Court law has made clear that federal courts lack jurisdiction when the Defendants have no enforcement authority over challenged provisions of law. That holding is plainly inconsistent with this Court's Orders permitting Plaintiffs to pursue claims over which State Defendants have no enforcement authority. There are few grounds more substantial for difference of opinion than controlling Supreme Court precedent.

Finally, Plaintiffs are wrong when they argue that certification would not "materially advance the ultimate termination of litigation." Consol. Opp. 16. Simply put, Article III standing is unlike other issues.[10] It is determinative of the outcome of these claims. If State Defendants are correct that the Court

---

[10] Plaintiffs conveniently omit some key words from their only case supporting their contention that it is appropriate to deny certification of a standing issue over which there is substantial ground for difference of opinion. Consol. Opp. 17. Read in full, *Ashmore* makes clear that it is discussing the issue of "standing *under the Clayton Act*." *Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*, 855 F. Supp. 438, 440 (D. Me. 1994) (emphasis added). Statutory standing is, of course, distinct from Article III standing. And the serious Article III issues present in this case necessitate immediate resolution of this issue before proceeding to the merits.

lacks jurisdiction as to the challenged claims against them, the Court *must* dismiss those claims before proceeding to the merits. *Jacobson*, 974 F.3d at 1245. Removing the challenged claims against State Defendants will end all further motions practice on these claims—motions which would substantially delay the termination of this litigation. And it would also reduce discovery disputes and save "considerable expense on the part of the litigants." *McFarlin*, 381 F.3d at 1257.

## CONCLUSION

In sum, Defendants have clearly explained why the Supreme Court's recent decision in *Jackson* and the Eleventh Circuit's decision in *Jacobson* make clear that this Court erred in holding that Plaintiffs have standing to pursue the challenged claims against the State Defendants.  Plaintiffs have offered no plausible response.  Accordingly, this Court should grant the motion for reconsideration or alternatively grant certification for immediate appeal.

Respectfully submitted,

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
Special Assistant Attorney General
Erik Jaffe*
H. Christopher Bartolomucci*
Brian J. Field*
Riddhi Dasgupta*
Joshua J. Prince*
Annika M. Boone*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
*Admitted *pro hac vice*

16

Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for State Defendants*

Dated:  February 3, 2022

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing Reply Brief has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Gene C. Schaerr*
Gene C. Schaerr