*In re Georgia Senate Bill 202*
No. 1:21-MI-55555-JPB

Defendants' Opposition to
Plaintiffs' Motions for Preliminary Injunction

Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| THE NEW GEORGIA PROJECT, *et al.*, | |
| *Plaintiffs*, | Civil Action No.: 1:21-cv-01229-JPB |
| v. | |
| BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State, *et al.*, | |
| *Defendants*, | |
| REPUBLICAN NATIONAL COMMITTEE, *et al.*, | |
| *Intervenor-Defendants.* | |
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*, | |
| *Plaintiffs*, | Civil Action No.: 1:21-cv-01259-JPB |
| v. | |
| BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the | |

State of Georgia, *et al.*,

      *Defendants,*

REPUBLICAN NATIONAL COMMITTEE, *et al.*,

      *Intervenor-Defendants.*

---

SIXTH DISTRICT OF THE AFRICAN
METHODIST EPISCOPAL CHURCH,

*et al.*,

      *Plaintiffs,*

     v.

BRIAN KEMP, Governor of the State of Georgia,
in his official capacity, *et al.,*

      *Defendants,*

REPUBLICAN NATIONAL COMMITTEE, *et al.*,

      *Intervenor-Defendants.*

Civil Action No.:

1:21-cv-01284-JPB

## DECLARATION OF C. RYAN GERMANY

   I, C. Ryan Germany, declare under penalty of perjury that the following

statements are true and accurate to the best of my knowledge.

**Background**

1.      I am the General Counsel for the Office of the Georgia Secretary of State.  I have held that position since January 2014.  My job responsibilities include providing legal advice and guidance to all divisions of the Secretary of State's Office, including the Elections Division.  I also work closely with the State Election Board.  I routinely interact with county election officials.

**Line length at polling places**

2.       Elections in Georgia are administered by counties. The Secretary of State's Office wants line lengths to be short for voters and seeks to assist counties in that goal.

3.      For early voting, voters may go to any early-voting location in their county, rather than to their assigned precinct.  The uncertain nature of early voting contrasts with Election Day, where a certain number of voters are assigned to particular precincts by county election officials.  Thus, it is more difficult for each early-voting location to plan for the number of voters who will arrive to vote on any given day.

4.      For Election Day for statewide general elections, however, counties are required to have at least one voting machine for every 250 voters.  O.C.G.A. § 21-2-367(b).

5.     After the June 2020 primary, the State took numerous steps to assist counties in avoiding lines in the November general election.

6.     That included running the amount of voting equipment and personnel that counties planned to deploy in every polling place through a tool from MIT that estimated whether lines would occur.  The Secretary of State's office then notified counties of the tool's evaluation of each of their polling places. The Secretary of State's office intends to use this tool for the 2022 general election as well.

7.     That effort resulted in an average line length of three minutes on Election Day in the November 2020 general election in Georgia.

8.     In an effort to track line lengths, the Secretary of State's office invested in a geolocation tool in 2020 that allowed an individual at each polling place to report the wait time at that location in real time. The Secretary of State's office intends to use a similar tool this year for reporting line length.

9.     Additionally, various provisions of Georgia's recent election law (SB 202) specifically target line length.

10.     For instance, under SB 202, at each precinct with more than 2,000 electors during the most recent general election, the precinct's chief manager must submit a report to the superintendent of the "reported time from entering the line to checking in to vote."  For this, "wait time shall be measured no fewer

than three different times throughout the day (in the morning, at midday, and prior to the close of polls) and such results shall be recorded on a form provided by the Secretary of State." O.C.G.A. § 21-2-263(b).

11.     And State Election Board Rule 183-1-12-.11(12) requires that all precincts measure wait times a minimum of three times a day on a form provided by the Secretary of State. This was the first time these types of reports were required by Georgia law.

12.     Additionally, under SB 202, counties are required to take action regarding any precinct with more than 2,000 electors where electors waited more than one hour before checking in to vote during the previous general election by reducing "the size of such precinct so that it shall contain not more than 2,000 electors … or provide voting equipment or poll workers, or both, before the next general election." O.C.G.A. § 21-2-263(b).

13.     Further, if precincts with less than 2,000 electors experience long lines, I would expect counties to take action to resolve that issue as well, but splitting that precinct may not be the best solution in that case.

14.     And for advance voting, SB 202 added a second required Saturday of voting and, at the county's discretion, multiple Sundays of advance voting. O.C.G.A. § 21-2-385(d)(a)(B).

15.     Each of these provisions, along with other provisions in SB 202, aim to reduce line length at polling locations across the State.

16.     Those efforts were largely successful in the May 2022 primary election, with almost no reported lines despite record voter turnout for a primary election.

**Regulations governing polling places**

17.     The polling location is subject to a complex set of rules to protect voters and election officials and ensure a calm and orderly process of voting.

18.     Starting with the location closest to the voting machines, only voters, poll workers, and certified poll watchers are allowed in the enclosed space.  Candidates are specifically prohibited from entering the enclosed space unless they are at their own precinct and voting.

19.     Despite those rules, Georgia has experienced several issues with candidates campaigning in and around polling locations, including, based on recent cases presented to the State Elections Board, candidates for U.S. Congress, State House, State Senate, and county commission.

20.     The next layer of protection extends 150 feet from the outside of the building in which voting is taking place.  Within that bubble, it has long been illegal to campaign or try to solicit votes from voters waiting in line.

21.     As State Election Board Member Matthew Mashburn has stated, this "150[-foot] bubble was a tremendous safety innovation for Georgia voters and made Georgia's some of the safest in-precinct voting in the country." Ex. A.

22.     As Elections Division Director Chris Harvey similarly explained, this is an area where "[v]oters standing in line … should generally be free of approaches from bystanders, even those with good intentions of offering refreshment[.]"   Ex. B at 2.   Indeed, "[p]olling places are meant to be a sanctuary from political influence[.]" *Id.*

23.     Beyond 150 feet (or 25 feet from any voter in line if the line extends beyond 150 feet), anyone may campaign freely.  Voters will often notice a collection of campaign signs just beyond the 150-foot limit when approaching their polling place or early voting site, as candidates try to reach voters one last time before they enter the protected zone around a polling place.

24.     Because of the complexities of this system, voters and county election officials routinely contact the Secretary of State's Office with questions about who is permitted in which portions of the polling place.

**Prohibition on soliciting voters in line to vote**

25.     In the late 2010s, groups began to set up tables within the 150-foot buffer, claiming they were nonpartisan or conducting research.  State officials responded by amending O.C.G.A. § 21-2-414 in 2017 through HB 268 to

address this concern, specifically prohibiting tables from being set up in that area. HB 268 also empowered election officials to "manage the number of persons allowed in the polling place to prevent confusion, congestion, and inconvenience to voters." O.C.G.A. § 21-2-414(c)(2).

26.   After 2017, but before SB 202, Georgia law prohibited "solicit[ing] votes in any manner or by any means or method," "distribut[ing] or display[ing] any campaign material," "solicit[ing] signatures for any petition," or "establish[ing] or set[ting] up any tables or booths on any days in which ballots are being cast": (1) within 150 feet of a polling place's outer edge; (2) within any polling place; or (3) within 25 feet of any voter standing in line to vote at a polling place. O.C.G.A. § 21-2-414(a).

27.   Yet, despite these rules, the highly complex areas around a polling location became even more confusing as many third-party organizations sent representatives to approach voters in line with food, drinks, masks, literature, and other goods.

28.   This made the counties' efforts to maintain an orderly election process more difficult, as "it's impossible for the poll managers, workers and watchers to monitor what is being said by these groups as they perform their 'line warming.'" Ex. A at 3–4 (statement by SEB Member Mashburn).

29.     For instance, this led voters and elections officials to contact the

Secretary of State to complain.[1]

      a.  For example, SEB Member Mashburn explained that Georgia had historically "turned a compassionate blind eye to people delivering water and food to people in line[.]" Ex. A at 1.  But the situation had changed recently, as "we're now seeing people setting up tables and food stations within the 150-foot voter protection Bubble while wearing clearly identifiable campaign clothing and colors." *Id.* And further, Mr. Mashburn complained that this practice had become "more aggressive, more sophisticated (and to me more worrisome)." *Id.*

      b.  Similarly, the Secretary of State's office received a complaint that a food truck was providing food to voters inside the buffer zone in Cobb County.  *See* Ex. C at 3–4.

      c.  The Secretary of State's office also received multiple complaints about Fulton County, where "organizations [we]re setting up outside the poll within 150 feet to provide coffee, water, crackers, [and] food boxes." Ex. D at 1.

      d.  Further, as Jamie Eveler, Director of Cobb County Board of Elections, stated: "We get a lot of complaints from voters when there are line warmers, because they always suspect the motives are partisan." Ex. E at 5.

30.     Elsewhere, voters and county elections officials complained that

the actions of these "non-partisan" organizations seemed aimed at soliciting

certain votes.

      a.  For instance, the State received a complaint from Elizabeth Brown, who participated in early voting in October 2020.  She

---

[1] The examples cited in this Declaration are merely illustrative of the complaints made about third parties approaching voters waiting in line to vote. The lists in this Declaration are by no means exhaustive.

reported that "[t]he Black Voters Matter group was present handing out food and water." Ex. F.  Ms. Brown continued, stating that "[t]here was also a lady leaning against the door" of the polling place "handing out plastic bracelets."  Ms. Brown reported that "[o]lder voters felt intimidated by the presence of this group" and that "[h]anding out food & water can be misconstrued as influencing voters or buying votes." *Id.*

b. Indeed, as Director Harvey stated, "depending on the organization that is distributing water, there could arise allegations or perceptions of having a political agenda."  Ex. B at 2.  Director Harvey further explained that the act of giving voters food and water could have the appearance "that voters are being rewarded for voting with beverages and food." *Id.*  Of note, these statements were made in an October 26, 2020 Official Election Bulletin ("OEB") issued by the Secretary of State's office.  In general, the Secretary of State's office only issues OEBs when an issue has been the source of many complaints or questions.

c. Moreover, as I explained in an email responding to a complaint about a food truck sent to polling locations by Vote.org, "[w]hat they are doing seems [to] be campaigning and should not be allowed within 150 feet of a polling place." Ex. C at 3.  Specifically, as I noted, the e-mail message from Vote.org stated that the food trucks were being used as "our last chance to reach Georgians before they vote." *Id.*  In fact, Vote.org further stated that they wanted to reach voters before they voted because "[t]he results have the potential to determine control of the U.S. Senate." *Id.*  As I explained, by emphasizing the need to "reach[] people *before* they vote," such groups "seem to be giving something of value for voting[.]" *Id.*

d. Ms. Eveler also explained that one potential solution to the confusion about permissible activities would be for "poll workers … to give the items to voters in line so there isn't a perceived conflict, but line warmer groups don't want to do that.  They want the contact with the voters, which fuels the idea that there is a motive." Ex. E at 5.

10

e. Similarly, as Cobb County Board of Elections & Registration Absentee Supervisor Allison Schaeffer explained when discussing "[p]eople handing out comfort items to people in line": "What one voter sees as a benefit another voter might feel is an effort to intimidate or influence them.  Out of respect for the varying perceptions of our voters we are creating this safe voting space." Ex. E at 5.

31.    Elsewhere still, confusion abounded in how the rules applied when third-party organizations wished to set up food trucks or otherwise provide goods to voters in line waiting to vote.

a. As Elections Division Director Chris Harvey explained, the law before SB 202 required "a fact dependent inquiry" to determine whether "candidates, campaigns, or third-parties offering refreshments to voters in line could violate that provision" against providing voters "anything of value in exchange for voting."  Ex. B at 1.

b. Elsewhere, in a discussion about food trucks set up around polling places, Ms. Eveler complained that "[t]his continues to be a grey area that we don't understand how to moderate.  We have people giving out water and food and masks, warm hats etc." Ex. C at 2. Additionally, Ms. Eveler noted that although third-party organizations set up food trucks outside the 150-feet buffer zone, "people bring items closer to the line to give them out." *Id.*

c. As Ms. Eveler explained elsewhere in correspondence with the Chair of the Cobb County Democratic Party, "[t]he problem [with line warming] is knowing where to draw the line." Ex. E at 5.  On this, Ms. Eveler stated, the Secretary of State's "direction is also confusing," and makes it complicated to determine whether a "complete meal from a food truck is too much and is a 'gift' for voting," or whether "hats" being handed out "were a little too nice to be an incidental item and bordered on a gift." *Id.*

    d. Additionally, there were multiple instances where food truck operators were confused and parked within the buffer zone and were required to move. *See* Ex. E at 4, 6, 7, 8.

32. Accordingly, the State took steps through SB 202 to update this solicitation provision to address the increase in organizations using food and drinks as a reason to approach voters waiting in line.

33. Under SB 202, the following activity was prohibited: "giv[ing], offer[ing] to give, or participat[ing] in the giving of any money or gifts, including, but not limited to, food and drink, to an elector[.]" O.C.G.A. § 21-2-414(a).

34. However, SB 202 also provided that this provision does not prohibit any poll officer from "mak[ing] available self-service water from an unattended receptacle to an elector waiting in line to vote." O.C.G.A. § 21-2-414(e).

35. Under these updated anti-solicitation provisions, third-party organizations may not send representatives to approach voters waiting in line with money, food, or drink. But these organizations may provide food and drink outside the buffer zone as long as they are not providing it only to voters or as an inducement to vote.

36. This struck the same balance that Director Harvey suggested when he said that "[t]he simpler, the better on this subject" as "the appearance

could be that voters are being rewarded for voting with beverages and food." Ex. B at 2.  As "[p]olling places are meant to be a sanctuary from political influence," Director Harvey explained, "it [is] better to sacrifice some refreshments than to allow a perception of political influence from any group, if it comes to that."  *Id*.

**Impact of an injunction**

37.     As noted, polling places in Georgia are very complex, and county election officials are trained on the various requirements so that the system is able to run efficiently.

38.     For instance, poll workers are trained about what is and is not permitted in an around polling locations.  And this includes portions of the Poll Worker Manual that address the rules for the 150-foot buffer zone.  *See* Ex. G at 40.

39.     If the Court enjoins the Anti-Solicitation Provision, the Secretary of State's office and county elections officials will be required to update their trainings to educate officials and poll workers about the new rules in place for the general election.

40.     County elections officials would also be forced to spend more time and resources policing activity in and around voters waiting in line to ensure it is not campaigning, electioneering, or giving anything of value to vote.

41.     This would be time-consuming and problematic.  Although there are several elections conducted throughout an election year, they are all part of a single election cycle.  Indeed, many poll workers are the same individuals who work multiple elections, and the primary election serves as an initial opportunity for many officials and poll workers to implement their training on a smaller scale.

42.     Between the primary and general elections, those individuals receive refresher training to build on what they learned during the primary election.  Having different rules for the primary and general elections could result in poll worker confusion that logically leads to voter confusion.  And it would harm the public's interest in the clarity of the electoral process.

43.     Moreover, there are myriad other activities that state and county election officials are otherwise expected to complete during the upcoming months, including list maintenance, building ballots for use in the general election, proofing ballots for the general election, preparing for overseas/military ballots to be sent out 49 days prior to the election, training for the required risk-limiting audit following the November election, ensuring polling places and early voting locations are set and ready, conducting logic and accuracy testing, and numerous other activities necessary for a smooth election in November.

44.     By requiring the State and counties to divert their attention to update training about more changes to the solicitation provision, those officials will not be able to complete the activities that they are otherwise expected to complete over the next few months.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and accurate to the best of my knowledge, information, and belief.

6/24/22
Date

C. Ryan Germany
Office of the Georgia Secretary of State

15

# EXHIBIT A

| | |
|---|---|
| **From:** | T Matthew Mashburn |
| **To:** | Germany, Ryan |
| **Subject:** | Intrusions into the 150 foot bubble needs a bright line restatement in my view |
| **Date:** | Friday, October 30, 2020 6:58:25 PM |

> **EXTERNAL EMAIL:** Do not click any links or open any attachments unless you trust the sender and know the content is safe.

To Ryan first:

Dear Secretary Raffensperger, fellow Board Members and Counsel Germany:  As always, the bad people take advantage of what was once a good thing and ruin it for everybody.  Georgia has always turned a compassionate blind eye to people delivering water and food to people in line but now we're seeing people setting up tables and food stations within the 150 foot voter protection Bubble while wearing clearly identifiable campaign clothing and colors.  Further, the AJC had an article today that this practice is getting more aggressive, more sophisticated (and to me more worrisome).



The 150 bubble was a tremendous safety innovation for Georgia voters and made Georgia's some of the safest



in-precinct voting in the country.  In light of the AJC article today on "line warming,"  I would like to propose a regulation for the runoff that makes it clear that nobody other than on-duty, sworn-in poll workers should be talking or interacting with voters waiting in line to vote. As we continue to work so hard on shortening the lines this will be less of a problem; but it's impossible for the poll managers, workers and watchers to monitor what is being said by these

groups as they perform their "line warming."  Like I said, the bad apples ruin it for everybody. I ask for your support of a regulation beginning with the January runoff  that makes it absolutely clear that only on-duty sworn pollworkers should be talking and interacting with voters while they are waiting in line and fully restore the integrity
of the 150 foot voter protection bubble.  If people want to donate water to the county for the poll workers to pass out that's perfectly fine and compassionate.  Thank you for your consideration of this proposal.

Get Outlook for iOS

# EXHIBIT B



# OFFICIAL ELECTION BULLETIN
October 26, 2020

_____

TO:          **County Election Officials and County Registrars**

FROM:     **Chris Harvey, Elections Division Director**

RE:          **Polling Place Concerns**

_____

Even with record-breaking voter turnout numbers for advance voting, we are expecting historic and record-breaking voter turnout on Election Day. There have been several persistent questions around several topics, so I want to give some direction on three topics: militias or civil unrest; Covid-19 awareness; and voters receiving refreshments in line.

1.  Civil Unrest or "Militias" at or near polling places

I encourage you to continue to keep regular communications with your local law enforcement agencies in the days before the election and on election day. Your first responders (sheriff or police) should know the locations of all of your polling places and should be prepared to respond to events as necessary with the foreknowledge that the location is a polling place.

As you are aware, it is against the law to carry a firearm within 150' of a polling place (O.C.G.A. 21-2-413(i) unless the person is a law enforcement officer or certified security guard.

Questions of voter intimidation can sometimes be difficult to discern. If you suspect or receive reports of voter intimidation, report the circumstances to local law enforcement and seek assistance in documenting the events with pictures and videos if possible.

2.  Voters Receiving Refreshments While in Line to Vote

You know that voters cannot receive anything of value in exchange for voting. Though it is not expressly mentioned in the law, candidates, campaigns, or third-parties offering refreshments to voters in line could violate that provision, but it is a fact dedendent inquiry All other prohibitions against campaigning, soliciting votes, and interfering with voters are still effective, and must be prevented. Poll officers (as opposed to candidates, campaigns, or third-party groups) may hand out refreshments to voters in line.

Voters standing in line, even beyond the 150' mark are should generally be free of approaches from bystanders, even those with good intentions of offering refreshment, for at least 25'. A better option would be to have any group who wants to offer refreshments to

*anyone*, not only those voting, set up an area, outside of the 150' line and 25' away from voters in line where voters could approach the group to receive refreshments.

The simpler, the better on this subject. Bottles of water and crackers or peanuts is reasonable, but if the refreshments get fancier, the appearance could be that voters are being rewarded for voting with beverages and food. Also, depending on the organization that is distributing water, there could arise allegations or perceptions of having a political agenda. Maintain fairness and consistency as you are making decisions about what is allowable. Polling places are meant to be a sanctuary from political influence, and I think it better to sacrifice some refreshments than to allow a perception of political influence from any group, if it comes to that. OCGA 21-2-414 allows poll managers to manage people in the polling place to prevent confusion, congestion, and inconvenience to voters, and I believe the spirit of this provision allows poll managers to manage and instruct groups who are outside the polling place approaching or interacting with voters waiting in line to vote.

3. <u>Covid-19 Awareness</u>

You have been through this drill before. You know that PPE, barriers, hand sanitizer and distance, when possible, create a safer polling place. However, voters need to vote efficiently on election day, and the possibility of not having optimum social distances at every venue should not always override voters voting with the minimum amount of wait time. The CDC has published polling place guidelines, and your county health departments should be on your list of agencies to consult before Election Day to make sure you are keeping your poll workers and voters as safe as possible while still recognizing the primacy of voting on election day.

As you know, we are expecting historic turnout levels. Election Officials and voters will have to adjust to these situations, and others with patience, leadership, and creativity. Remember that emergency situations should initially be handled by appropriate first responders

# EXHIBIT C

| | |
|---|---|
| **From:** | Eveler, Janine |
| **To:** | Germany, Ryan; Watson, Frances |
| **Subject:** | RE: Cobb County Food Truck at Advanced Voting at Cobb Election Board on Whitlock - Sen Kay Kirkpatrick - Pam Reardon |
| **Date:** | Wednesday, December 16, 2020 7:56:10 AM |
| **Attachments:** | image001.png |

**EXTERNAL EMAIL:** Do not click any links or open any attachments unless you trust the sender and know the content is safe.

One more thing, as far as we can tell they are not campaigning. They have given out napkins with the food that have a QR code to https://www.vote.org/election-protection/ and has the election protection hotline number on it. They give food to everyone, including voters, poll workers, and other employees in the government complex. I am having a hard time justifying why they need to stop doing any of this.

*Janine Eveler*
Director,
Cobb County Elections & Registration
770-528-2312
770-528-2519 Fax
████████████ Cell
www.CobbElections.org

*Register...then Vote!*

---

**From:** Eveler, Janine
**Sent:** Tuesday, December 15, 2020 6:12 PM
**To:** 'Germany, Ryan' <rgermany@sos.ga.gov>; Watson, Frances <fwatson@sos.ga.gov>
**Subject:** RE: Cobb County Food Truck at Advanced Voting at Cobb Election Board on Whitlock - Sen Kay Kirkpatrick - Pam Reardon

I believe they are. The truck is more than 150 feet away, but people bring items closer to the line to give them out.

*Janine Eveler*
Director,
Cobb County Elections & Registration
770-528-2312
770-528-2519 Fax
████████████ Cell
www.CobbElections.org

*Register...then Vote!*

---

**From:** Germany, Ryan [mailto:rgermany@sos.ga.gov]
**Sent:** Tuesday, December 15, 2020 6:10 PM
**To:** Eveler, Janine ████████████ Watson, Frances <fwatson@sos.ga.gov>
**Subject:** Re: Cobb County Food Truck at Advanced Voting at Cobb Election Board on Whitlock - Sen Kay Kirkpatrick - Pam Reardon

I think a food truck crosses the line, especially the way they are marketing it. Frances has an open

investigation. Are they actually up there everyday?

—

Ryan Germany

███████████

---

**From:** Eveler, Janine ███████████████████
**Sent:** Tuesday, December 15, 2020 5:58:17 PM
**To:** Watson, Frances <fwatson@sos.ga.gov>
**Cc:** Germany, Ryan <rgermany@sos.ga.gov>
**Subject:** RE: Cobb County Food Truck at Advanced Voting at Cobb Election Board on Whitlock - Sen Kay Kirkpatrick - Pam Reardon

> **EXTERNAL EMAIL:** Do not click any links or open any attachments unless you trust the sender and know the content is safe.

This continues to be a grey area that we don't understand how to moderate. We have people giving out water and food and masks, warm hats etc.

*Janine Eveler*
Director,
Cobb County Elections & Registration
770-528-2312
770-528-2519 Fax
████████████ Cell
www.CobbElections.org

*Register...then Vote!*

---

**From:** Eveler, Janine
**Sent:** Tuesday, December 15, 2020 4:45 PM
**To:** 'Watson, Frances' <fwatson@sos.ga.gov>
**Subject:** RE: Cobb County Food Truck at Advanced Voting at Cobb Election Board on Whitlock - Sen Kay Kirkpatrick - Pam Reardon

So, no food trucks allowed?

*Janine Eveler*
Director,
Cobb County Elections & Registration
770-528-2312
770-528-2519 Fax
████████████ Cell
www.CobbElections.org

*Register...then Vote!*

---

**From:** Watson, Frances [mailto:fwatson@sos.ga.gov]
**Sent:** Tuesday, December 15, 2020 4:43 PM

**To:** Eveler, Janine ████████████████████████

**Subject:** Fwd: Cobb County Food Truck at Advanced Voting at Cobb Election Board on Whitlock - Sen Kay Kirkpatrick - Pam Reardon

Chief Investigator
Frances Watson

---

**From:** Germany, Ryan <rgermany@sos.ga.gov>
**Sent:** Tuesday, December 15, 2020 3:53:15 PM
**To:** McCloud, Hayley <hmccloud@sos.ga.gov>; Watson, Frances <fwatson@sos.ga.gov>
**Cc:** Combs, Leigh <lcombs@sos.ga.gov>; Holland, Gabrielle <gholland@sos.ga.gov>; Teasley, Sam <samteasley@sos.ga.gov>; Harvey, Chris <wharvey@sos.ga.gov>
**Subject:** RE: Cobb County Food Truck at Advanced Voting at Cobb Election Board on Whitlock - Sen Kay Kirkpatrick - Pam Reardon

What they are doing seems be campaigning and should not be allowed to within 150 feet of a polling place. They say "these food trucks will be our last chance to reach Georgians before they vote." They also seem to be giving some of value for voting—otherwise it wouldn't matter if they were reaching people before they vote and it's not allowed to matter if the people are voting or not.

--
C. Ryan Germany
*Georgia Secretary of State*
Direct: 470-312-2808
Cell: ███████████
*rgermany@sos.ga.gov*



--------------------------------------------------------------------------------------
This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

---

**From:** McCloud, Hayley <hmccloud@sos.ga.gov>
**Sent:** Tuesday, December 15, 2020 3:44 PM
**To:** Watson, Frances <fwatson@sos.ga.gov>
**Cc:** Combs, Leigh <lcombs@sos.ga.gov>; Holland, Gabrielle <gholland@sos.ga.gov>; Teasley, Sam <samteasley@sos.ga.gov>; Germany, Ryan <rgermany@sos.ga.gov>
**Subject:** Cobb County Food Truck at Advanced Voting at Cobb Election Board on Whitlock - Sen Kay Kirkpatrick - Pam Reardon

Frances,

Per our earlier discussion, can someone on our team please contact Pam Reardon at ███████ ? She says she has video of a food truck with folks less than 25' from the voters at the Cobb Election Board on Whitlock? Sen Kirkpatrick is asking if this is legal and wants us to answer. Allegedly, the Cobb sheriff came by and said they shouldn't be on county property, but was allegedly dissuaded by election staff.

I included the email about this below:

**From:** Bridget Geraghty <info@vote.org>
**Date:** December 10, 2020 at 7:27:45 PM EST
**To:** ████████████████
**Subject: Food trucks**
**Reply-To:** info@vote.org

Kay,

During the general election, we sent Vote.org-branded food trucks to polling places with long lines to provide free food, water, and crucial nonpartisan information about voting rights. **Now we're gearing up to do it again for the January 5, 2021, runoff elections in Georgia.**

**These food trucks will be our last chance to reach Georgians before they vote.**

**If we raise $153,000, we'll be able to send five food trucks stocked with free meals to early voting sites in Georgia. Chip in today — every dollar will help feed communities and increase voter turnout.**

**DONATE NOW**

If we can fully fund this program, food trucks will be parked in strategic locations across the state and voter ambassadors will refer Georgians who need support to 866-OUR-VOTE, the nonpartisan Election Protection hotline.

Each food truck will hand out between 500 and 750 free meals. **During a pandemic that has caused increased food insecurity for many communities, this program serves multiple community needs.**

Thanks to supporters like you, **we're already running a multilayered campaign to reach and turn out every eligible Georgia voter** for these consequential runoff elections. The results have the potential to determine control of the U.S. Senate.

Historically, runoff races have significantly lower turnout than general elections, especially in Georgia. This year, voters are expected to face additional barriers due to COVID-19 and misinformation about the election process. **We're doing everything we can to make sure every eligible Georgia voter has the accurate, timely information they need to make their voice heard.**

**We can't do it alone. We need *your* support to help us reach even more communities in the days ahead.** Our full Georgia food truck program will cost $153,000 to supply and staff.

**Chip in now to ensure we're able to reach Georgia voters with crucial election messaging through our food trucks. The more money we raise, the more free meals and voter information we'll be able to distribute.**

**DONATE NOW**

Your support helps us continue to reduce barriers so that *nothing* stands in the way of voters and the ballot box.

Thank you,
Bridget Geraghty, Director of Donor Relations
Vote.org

This email was sent to: ███████████████ You received this email because you have a relationship with Vote.org — you might have used our tools to register to vote, to check your status, or to get your absentee ballot.

Vote.org is located at 4096 Piedmont Avenue, #368, Oakland, CA 94611.

Update your email address or unsubscribe here.

To receive fewer emails, please click here.

Sent via ActionNetwork.org. To update your email address, change your name or address, or to stop receiving emails from Vote.org, please click here.

Thanks!

Hayley McCloud, MPA
Legislative Director
Georgia Secretary of State
Cell: ███████████
hmccloud@sos.ga.gov



**CAUTION:** This email originated outside Cobb County Government. Please exercise caution when opening links/attachments in this email .

**CAUTION:** This email originated outside Cobb County Government. Please exercise caution when opening links/attachments in this email .

# EXHIBIT D

**From:** Watson, Frances
**To:** Barron, Richard L.
**Subject:** RE: Giving away food and items outside poll
**Date:** Tuesday, November 3, 2020 9:41:00 AM

CT Martin Recreation center.

Frances Watson
Chief Investigator
Investigations Division
Georgia Secretary of State
Main: 470-312-2774
Cell: ███████

-----Original Message-----
From: Barron, Richard L. ████████████████████
Sent: Tuesday, November 3, 2020 9:41 AM
To: Watson, Frances <fwatson@sos.ga.gov>; Brower, Dwight ████████████████
Subject: RE: Giving away food and items outside poll

** Do not click any links or open any attachments unless you trust the sender and know the content is safe. **

Where is this happening?
_____
From: Watson, Frances [fwatson@sos.ga.gov]
Sent: Tuesday, November 03, 2020 9:00 AM
To: Barron, Richard L.; Brower, Dwight
Subject: Giving away food and items outside poll

    We are getting complaints that organizations are setting up outside the poll within 150 feet to provide coffee, water, crackers, food boxes. This is contrary to 21-2-414 (a)1 Please advise the poll managers to request that they moniter the outside of the poll and advise any organization to move outside 150 feet. It does not matter if they are offering to everyone

Frances Watson
Chief Investigator
Investigations Division
Georgia Secretary of State
Main: 470-312-2774
Cell: ███████

[cid:image001.jpg@01D6B1BF.691E1F60]

# EXHIBIT E



# INVESTIGATIONS DIVISION

### REPORT OF INVESTIGATION

| | |
|---|---|
| CASE NAME: | Cobb County-Food Truck at Polling Location |
| SEB CASE #: | SEB2020-262 |
| INVESTIGATOR: | P.E. Cain #19 |
| DATE OF REPORT: | June 17, 2021 |

## COMPLAINT:

On December 15, 2020, The Georgia Secretary of State's Office, State Elections Division, received a complaint from Dana Schlup, that provided information that a food truck was parked at the East Cobb Government Center, a poll location, located at 4400 Lower Roswell Road, Marietta, (Cobb County) Georgia. The food truck personnel were giving out free food items to voters. This occurred during early voting for the Special Run-Off Election, January 5, 2021. The matter was assigned to the Investigations Division, (*Exhibit #1*). The complaint of giving or receiving things of value for voting, is contrary to the Official Code of Georgia Annotated 21-2-570.

## COUNTY AND ELECTION INVOLVED:

Cobb County, Special Run-Off Election held January 5, 2021.

## ELECTION STAFF:

Combined Board of Elections and Registration

## ELECTION CERTIFICATION:

The Cobb County Combined Board of Elections and Registration has met the election training requirements, as Elections Director Janine Eveler, was certified on 04-02-2009.

## JURISDICTION/VENUE:

Jurisdiction will be with the State Election Board in Atlanta, Fulton County, Georgia.
Venue on any criminal prosecution will lie in Cobb County, Georgia.

## COMPLAINANT:

Dana Schlup
███████████████████
Marietta, Georgia ██████
Phone ████████████
Email:███████████████████

## RESPONDENT:

Bridget Geraghty
Director of Donor Relations
Vote.Org
██████████████████████████
Oakland, California ████████
(866-OUR-VOTE-nonpartisan Election Protection hotline)
Email: info@vote.org
(Respondent #1)

Janine Eveler
Director
Cobb County Elections & Registration
735 Whitlock Avenue NW Suite 400
Marietta, Georgia 30064
Main: 770-528-2312
Cell: ████████████
Email:██████████████████████
(Respondent #2)

Nikia Harris
On the Move Catering, LLC.
████████████████████
Powder Springs, Georgia ██████
Direct: ████████████████
Email: ████████████████████
(Respondent #3)

Christopher Martin Murphy
Oyster CO., LLC.
dba: Lil Nauti Food Truck
*Residence*
███████████████
Atlanta, Georgia
Cell:
Email:
(Respondent #4)

Mr. Michael C. Renner Jr.
Loaded Taco Food Truck
Loaded Burger Food Truck
███████████████
Atlanta, Georgia
Cell:
Email:
(Owner-Operator)
(Respondent #5)

## INVESTIGATIVE SUMMARY:

On February 11, 2021, reporting Investigator spoke to S.O.S. Investigator April Odom.
Investigator Odom advised she was initially assigned this case and did not respond to the original
complaint. Investigator Odom advised that Investigator Vincent Zagorin did respond to the
complaint. Investigator Odom said she obtained notarized statements from (3) three Cobb
County Poll Mangers regarding food trucks being present at (2) two separate Cobb County
polling precincts, during the Special Run-Off Election held on January 5, 2021 election. This
Investigator conducted a review of the statements.

-Poll Manager Craig J. Rogers wrote he was assigned at the Sandy Plains and East Cobb polling
precincts. Mr. Rogers advised every vendor & observer did speak to him before any activity
began. Mr. Rogers said on December 18, 2020, a food truck vendor checked in with him at the
East Cobb early voting poll precinct. Mr. Rogers wrote he told the vendor to remain 150 feet
from the building and 25 feet from the (voter) line. Mr. Rogers wrote he advised the vendor that
no campaigning was authorized. Mr. Rogers wrote that is what he had previously been instructed
before this encounter. Mr. Rogers wrote an S.O.S. Investigator (Zagorin) told him the food truck
operators were overtly inducing people to vote and that the line had extended to within 25 feet of
the food truck. Mr. Rogers wrote the food truck immediately packed up and left.

-Poll Manager Deborah Lundquist wrote she was assigned at the Lower Roswell polling precinct.
Ms. Lundquist advised on December 14, 2020; a food truck was parked in the parking lot. Ms.
Lundquist wrote the food truck driver was asked to move more than 150 feet away from the
building. Ms. Lundquist advised the Driver did so. Ms. Lundquist wrote she told the driver to
keep the food truck more than 25 feet away from the last voter (in line). Ms. Lundquist wrote the
Driver complied. Ms. Lundquist wrote the "*Driver of food truck did not offer food only to voter
or offer ant other incentives for voters*".

-Poll Manger Twana Orders wrote she was assigned to the Whitlock Avenue poll precinct. Ms. Orders advised on December 14, 2020, she was asked to speak to a food truck vendor regarding the message posted on the napkins being given out to the public. Ms. Orders wrote she went outside to speak to the vendors and did *see napkins* that had "*Vote.org*" written on them. Ms. Orders wrote she told the person serving the food that their napkins could not have messages on them. Ms. Orders wrote that she further told the vendors if they wanted to continue handing out food, they would need to use plain napkins, or none at all. Ms. Orders wrote the vendor complied with her request. Ms. Orders wrote when they returned the next day plain napkins "(to her knowledge)" was being handed out.   (*Exhibit #3*)

On February 12, 2021, reporting Investigator called and spoke to Cobb County Board of Elections & Registration Director, Janine Eveler. Ms. Eveler said she would provide a notarized statement regarding the food truck issues. Ms. Eveler said she would provide the names and contact information of the Poll Managers at the polls where any food truck were observed. Ms. Eveler said the Elected Officials or Sheriff did not arrive at any location to her knowledge. Ms. Eveler said they did have Deputies assigned each day to the Polls for security. Ms. Eveler verified they had a food truck at her location. Ms. Eveler said it was 736 Whitlock Avenue with early voting for the January 5, 2021, Senate Runoff race. Ms. Eveler said they do not have cameras at this building. Ms. Eveler said she knew a deputy did move a food truck away from a polling building. Ms. Eveler verified she received the memo from Chris Harvey about the food trucks after the incidents. (*Exhibit #4*)

On February 12, 2021, reporting Investigator called and spoke to Pamela Reardon. Ms. Reardon said she filed several SEB complaints. Ms. Reardon said in regard to the food trucks, she has photographs of the food trucks. Ms. Reardon said she has a friend who has a video of the food trucks. Ms. Reardon said she had already sent all the information to Mr. Hall previously. Ms. Reardon said she had to go because she was at work (Realtor) and would call back later. Ms. Reardon called back. Ms. Reardon said she took still photos and her friend took video at the Whitlock Avenue polling location. Ms. Reardon said she could not remember her friends name at this time. Ms. Reardon said she would have to research the dates and locations of her photographs to advise this Investigator. Ms. Reardon said she went to (4) four or (5) five locations. Ms. Reardon said she did speak to her personal State Senator, Kay Kirkpatrick. Ms. Reardon said she had spoken to Senator Kirkpatrick about the photos and the food trucks. Ms. Reardon said the Senator contacted the S.O.S. Ms. Reardon said then Mr. Hall contacted her. Ms. Reardon said that that is why she sent everything to Mr. Hall by text message. Ms. Reardon said she did also send an email to Cobb County Board of Elections Director, Janine Eveler. Ms. Reardon said that on the first day of early voting for the Presidential Election, October 12, 2020, she went in to get her Cobb County Poll Watching credentials. Ms. Reardon said *she saw a food truck parked close to the building*. Ms. Reardon said she saw Director Eveler and Cobb poll officials with a measuring tape. Ms. Reardon said she saw a Deputy Sheriff speak to the food truck occupants. The food truck then moved away to the parking lot close to the road entrance. (*Exhibit #5*)

On February 15, 2021, reporting Investigator started receiving multiple emails from Cobb County Board of Elections Director, Janine Eveler. The emails contained:

SEB Case Sample Format
Page 5

- an email and photograph forwarded to Cobb County Board of Elections & Registration Director, Janine Eveler, from the Cobb County GOP Executive Director Chris Scheve.

-copies of all emails about food trucks sent to Cobb County Board of Elections & Registration Director, Janine Eveler.

-copies of emails sent to and answers from Cobb County Board of Elections & Registration Director, Janine Eveler.

-copy of all email with contact information for Cobb County Poll staff.   -copies of emails sent from Don Davidson to and answers from Cobb County Board of Elections & Registration Director, Janine Eveler, copied to *Georgia Senator Kay Kirkpatrick*.

-copies of emails sent from Jacquelyn Bettadapur, Cobb County Democratic Party Chair. "*Janine, DPG Voter Protection wanted me to touch base with you about the issues yesterday with the Vote.org food truck and line warmers passing out hats at Whitlock. Apparently the Sheriff said they could not be in the space, you said it was fine. I was told there was a back and forth on this. How was this resolved? Were they cleared to operate within the space? Anything we can do?*" and answer from Cobb County Board of Elections & Registration Director, Janine Eveler, "*We get a lot of complaints from voters when there are line warmers, because they always suspect the motives are partisan. We tell them that unless they are campaigning there is nothing wrong with giving out incidental items. The problem is knowing where to draw the line. The SOS direction is also confusing. They feel that a complete meal from a food truck is too much and is a "gift" for voting, which is not allowed. I thought the hats were a little too nice to be an incidental item and bordered on a gift. It is such a grey area. The SOS has suggested the poll workers offer to give the items to voters in line so there isn't a perceived conflict, but line warmer groups don't want to do that. They want the contact with the voters, which fuels the idea that there is a motive. We did not really resolve it last night and it continues to be a difficult area. Janine Eveler.*"

-copy of email sent from Complainant, Dana Schlup, to and answer from Cobb County Board of Elections & Registration Director, Janine Eveler.

-copy of email sent from Cobb County Board of Elections & Registration Absentee Supervisor Allison Schaeffer, dated 12-19-2020, containing updated instructions regarding handing comfort items to voters in line. "*People handing out comfort items to people in line such as water, snacks, chairs, umbrellas in the past could come up to voters in line and pass out their items. Please read below the update to for this exchange. Voters in line are in a safe space and there is a twenty five foot space to be kept between the line and the general public. Just as exit interview and exit polls must take place 25 feet from the exit or the voter line, now all those passing out comfort items must also respect the 25 foot space. They may have their cart, supplies or items ( example : chairs) on the ground twenty five feet from the line. No tables or booths can be set up within 150 feet of the polling location. They may hold up the item to let the voter know it is available to the voter. If the voter signals they would like the item, the item can be brought to them. There is not to be lengthy conversation around the exchange. What one voter sees as a benefit another voter might feel is an effort to intimidate or influence them. Out of respect for the varying perceptions of our voters we are creating this safe voting space. Food trucks are to be*

*150 feet or more from the voting location and 25 feet from the end of the line (some locations
have long lines). It may entail the food truck moving if the line grows to the location of the truck.
Locations can have no food truck in the parking lot if the parking is limited and the truck takes
parking away from the voters.*" (*Exhibit #6*)

On February 22, 2021, reporting Investigator received a call from Cobb County Sheriff's Office
LTC, Dewayne Morris. LTC Morris advised he had spoken to the Cobb County Elections
Director regarding this Investigators request for notarized statements from the Deputies working
at the Cobb County election polls. LTC Morris advised he would have his Deputies who were
assigned to the Cobb County election polling precincts, write incident reports regarding any
observations and or interactions regarding any food trucks. This Investigator sent an email
request to LTC, Dewayne Morris. (*Exhibit #7*)

On March 5, 2021, reporting Investigator went to the Cobb County Board of Elections and
Registration Office. The administrative assistant at the front window provided this Investigator a
sealed envelope. The envelope contained the notarized statement of Elections Supervisor, Janine
Eveler. (*Exhibit #8*)

On March 19, 2021, reporting Investigator received a call from Jerilyn Gover. Ms. Gover
advised she did *not* see Candidate Warnock personally passing out food items at a Cobb County
polling site. Ms. Gover said she saw a website online that showed the Warnock bus at a Cobb
County polling location. This Investigator asked Ms. Gover for an email statement and send any
attachments that may show the bus or candidate passing out food items. Ms. Gover said she filed
a complaint with the Cobb County Elections website and not the S.O.S. website. Ms. Gover sent
an email advising that she saw a report in the Epoch times with a video. Ms. Gover advised she
deleted the email sent to the Cobb County Board of Elections because it was not taken seriously.
(*Exhibit #9*)

On March 22, 2021, reporting Investigator went to the Cobb County Sheriff's Office HQ located
at 185 Washington Street, Marietta. This Investigator received from Lt. Colonel Dewayne
Morris, copies of the Incident reports written by his deputies regarding food trucks at or near
polling locations in Cobb County. The reports included the following:

(1) *Sgt. John P. Gloster* wrote Cobb County S.O. report #12-01938, that he was assigned to the
Epi Center polling location.at 135 Riverside Parkway, Austell, Georgia, for both the November
3, 2020, General Election and the January 5, 2021, Federal Senate Runoff Election. Sgt. Gloster
advised he encountered numerous food trucks while working. Sgt. Gloster said he notified the
Poll Manager and the Epi Center Manager. Sgt. Gloster said upon the arrival of the Poll
Manager, he was advised the food trucks were in violation being parked within 150 feet of the
poll. Sgt. Gloster said he assisted the Poll Manager in moving the food trucks beyond 150 feet.
Sgt. Gloster said all food trucks complied and moved beyond 150 feet of the poll. Sgt. Gloster
said several other food trucks arrived throughout the election times, but they parked beyond the
150 feet limit, were he was advised by the Poll Manager it was ok.

(2) *Sgt. Chris P. Leger* wrote Cobb County S.O. report #21-0225-865, that he was assigned to
the North Cobb Regional Library Poll, located at 3535 Old Highway 41, NW, in Kennesaw,
Georgia, during the January 5, 2021 Special Federal Runoff Election. Sgt. Leger said that on a
couple of occasions, food trucks were parked in the library parking lot giving out free food. Sgt.

Leger said he stayed in close contact with the Poll Manager, Ken Parmer. Sgt. Leger said their instructions said the food trucks had to be parked beyond 150 feet of the building. Sgt. Leger said whenever he saw a food truck within 150 feet of the poll, he notified the Poll Manager, Mr. Parmer. Sgt. Leger said Mr. Parmer would come out and inspect the situation and ask the food trucks to move beyond 150 feet. Sgt. Leger also reported that on one occasion, a subject set up a table within 20 feet of the line of voters and was giving out bottles of water and snacks. Sgt. Leger said Mr. Parmer came out and told the subject to take down the table. Sgt Leger said all of the food trucks and the subject with the table all complied with Mr. Parmer.

(3) *Sgt. Gary W. Hatch* wrote Cobb County S.O report #21-0227896, that he was assigned to the East Cobb Government Center, located at 4400Lower Roswell Road, in Marietta. Sgt. Hatch said this was during the early voting of the January 5, 2021, Federal Special Election Runoff Election. Sgt. Hatch said the Poll Manager was Craig Rogers. Sgt. Hatch advised on one day a female with a food truck arrived. Sgt. Hatch said he was near when the Poll Manager spoke to the female and told them to park 150 feet away from the voters and to not to approach the voters in line. Sgt. Hatch said the truck did park 150 feet or more away from the poll building. Sgt. Hatch said he only provided security for the poll location and poll staff. Sgt. Hatch said he never received any complaints about anyone approaching the voters. Sgt. Hatch said he did not remember any of the food truck workers names or any of the food truck names from his poll location.

(4) *Deputy Adam M. Reddish* wrote Cobb County S.O report #21-02151. Deputy Reddish wrote that on December 31, 2020, he was working the election detail at the Epi Center poll, located at 135 Riverside Parkway, in Austell. Deputy Reddish said he parked his marked patrol vehicle in front of the building. Deputy Reddish said he went inside the poll every 30-to 40 minutes and spoke to the elections staff and asked if everything was ok. Deputy Reddish said while inside his marked patrol vehicle, he saw one male subject & one female subject handing out food & drinks to voters standing in line to vote. Deputy Reddish said he started to go and address the two subjects, but before he could, the poll Manager came out and advised them they could not pass out items to the voters waiting in line. Deputy Reddish said the Poll Manger said she told the two subjects they could move to the exit side of the building and pass out the free food and drinks to the people after they had voted. Deputy Reddish said he thought the two subjects had left, but then saw them near the end of the waiting to vote entry line, again passing out free drinks and food. Deputy Reddish he and the Poll Manager approached the two subjects again. Deputy Reddish said the Poll Manager again told them they could not pass out the items to voters in line to vote. Deputy Reddish said the female raised her voice and asked why they could not hand out the free drinks & food items to voters in line. Deputy Reddish advised they provided the subjects with the O.C.G.A. code. Deputy Reddish said the two subjects then left.

(5) *Deputy Jeffery K. Dulworth* wrote Cobb County S.O report #21-02054. Deputy Dulworth advised on December 30, 2020, he worked security at the Smyrna Community Center poll, located at 200 Village Green Circle. In Smyrna. Deputy Dulworth advised he saw a food tuck arrive that sold churros. Deputy Dulworth said it parked approximately 400 to 500 feet away from the poll. Deputy Dulworth said he brought this to the attention of the Poll Manager. Deputy Dulworth said the Poll Manager did not voice any concerns. Deputy Dulworth said the the food truck arrived around 16:00 hours (4 p.m.) and left around 18:45 hours (6:45 p.m.)

(6) *Deputy Kimber L. Meade* wrote Cobb County S.O report #21-01879. Deputy Meade wrote on December 16, 2020, she was working the Elections detail at 4400 Lower Roswell Road, in Marietta. Deputy Meade said around 08:00 hours, a.m., a pink food truck arrived and parked close to the building, taking up several parking spaces. Deputy Meade said the food truck had "*Vote*" and "*VoteGeorgia.org*" marked on the outside. Deputy Meade said she notified the Poll Manager. Deputy Meade said the Poll Manager told her to advise the food truck they could not park within 150 feet and could not take up any voter parking spaces. Deputy Meade said the Poll Manger told her they could park the food truck in the back of the parking lot. Deputy Meade advised after she told the food truck workers the instructions from the Poll Manager, one occupant complained and stated they had parked there the day before without anyone saying anything. Deputy Meade said she told them she was not here yesterday and the rules did apply today. Deputy Meade advised the food truck moved to the back of the parking lot, then left the poll about one hour later. (*Exhibit #10*)

On May 3, 2021, reporting Investigator received a call from Georgia State Senator Kay Kirkpatrick. Senator Kirkpatrick verified she had received the same email in this Investigators file from Bridget Geraghty, Director of Donor Relations, with vote.org. This email was dated December 10. 2020. Senator Kirkpatrick verified she had discussed via text messages, the Cobb County Food Truck issues with her constituent, Pam Reardon. Senator Kirkpatrick advised she would meet this Investigator at her Office on Wednesday, May 5, 2021, at 09:00 a.m., to sign the email she had received from Bridget Geraghty, Director of Donor Relations with vote.org, located in Oakland California. (*Exhibit #11*)

On May 5, 2021, reporting Investigator went to 18 Capitol Square, Suite 324-A, in Atlanta and spoke to Georgia Senator, Kay Kirkpatrick. This Investigator presented my S.O.S. credentials. Senator Kirkpatrick provided her Senate Photo ID. Senator Kirkpatrick reviewed and verified she had received the (2) two email copies shown to her. Senator Kirkpatrick initialed the first pages and signed the last page of each email. Senator Kirkpatrick advised the food trucks should have been issued food permits from the Department of Health. This Investigator notarized the emails signed by the Senator. (*Exhibit #12*)

On May 14, 2021, reporting Investigator received a return call from Karen H. Gulley, the Cobb County Environmental Health Manager. Ms. Gulley advised Judy Lowry, is the Georgia Department of Public Health, Office Services Manager, and would be the person to request copies of any Food Truck applications/permits for Cobb County. Ms. Gulley advised Ms. Lowry's direct number is ███████████. Ms. Gulley said her direct number is ███████████. Ms. Gulley explained that a Food Truck vender had to have permission from someone, like the property owner, or someone having authority at the property location, for the Food Trucks to operate. Ms. Gulley said the Food Truck had to have a letter granting customers access, to a bathroom within 200 feet of the location. Ms. Gulley said the Food Trucks were required to update the County of their vending locations within (7) seven days. Ms. Gulley said the Food Trucks should have a letter from each location allowing access to a bathroom. Ms. Gulley said Ms. Lowry would know how long their records would be kept. Ms. Gulley said she thought the records were kept (3) three years. Ms. Gulley provided her email address. Ms. Gulley said she would forward this Investigators request to Ms. Lowry. (*Exhibit #13*)

On May 17, 2021, reporting Investigator conducted an S.O.S. corporation search. The search found "On the Move Catering, LLC." The principal Office address is ███████████ Austell, Georgia ████ The Registered Agent is Nikia Harris, ████████████Powder Springs, Georgia ████ Nothing was found for any company named "A Little Nauti". (*Exhibit #14*)

On June 1, 2021, reporting Investigator called and spoke to Christopher Murphy. Mr. Murphy is the owner of the "Little Nauti" food truck. Mr. Murphy verified he was hired by a non-profit for the election events. Mr. Murphy said he would have to go back and research his calendar to be able to advise the non-profits name. Mr. Murphy said upon his arrival at a poll location, he would speak to an onsite contact, who would then speak to the poll officials. Mr. Murphy said the poll officials would then tell the contacts where to have him park. Mr. Murphy said the non-profit also gave him a banner for the events. Mr. Murphy said the non-profit was nonpartisan and impartial. Mr. Murphy said all food items were pre-paid for and there was no charge for items given out to anyone the event crowds. Mr. Murphy said there was no campaigning, and no food was offered for voting. Mr. Murphy said he had no contracts with the non-profit. Mr. Murphy said all business was conducted through emails. Mr. Murphy said he sent an invoice was paid through the "Square" app. Mr. Murphy said he did not have any Department of Health (DPH) documents for the events. Mr. Murphy said he does not know anything about the "On the move Catering" food truck. Mr. Murphy said he does have a corporation named Oyster Co, LLC. Mr. Murphy said his food truck, "Little Nauti", is a "dba" business of the corporation. This Investigator sent an email request. (*Exhibit #15*)

On June 3, 2021, reporting Investigator received a call from Judy Lowry, with the Cobb & Douglas County Department of Public Health. Ms. Lowry verified she had received this Investigators email request regarding the food trucks operating in Cobb County during the elections. Ms. Lowry said a Michael Renner, with either the loaded taco or loaded burger food truck, participated during the election. Ms. Lowry said she would check to see which specific truck, Mr. Renner operated. This Investigator requested information on the Lil Nauti food truck owned by Christopher Murphy and the "On the Move Catering" food truck. Ms. Lowry said the Lil Nauti food truck was based out of another county. Ms. Lowry said the Lil Nauti food truck only requested a Cobb County location permit, in February, 2021. Ms. Lowry she would research and provide the requested information. (*Exhibit #16*)

On June 3, 2021, reporting Investigator received an email with attachments from Judy Lowry, with the Cobb & Douglas County Department of Public Health. Ms. Lowery provided copies of the permits and documents relating to the "On the Move Catering", food truck. The information indicated the food truck was operated by Nikia Harris, and the base of operation was ██████████████████████ Mableton, Georgia, in Cobb County. The information indicated the owner had requested the cancelation of their permits because they had lost their base of operation. DPH documents indicated Nakia Harris resides at ████████████Powder Springs, Georgia. (*Exhibit #17*)

On June 7, 2021, reporting Investigator arrived unannounced at 5520 Wheatfield Lane, Powder Springs. The Investigator observed no vehicles in the driveway. A male sounding voice answered through a Ring doorbell. The voice (rec) identified himself as Mr. (Sheron?) Green. Mr. Green said Nakia Harris did not live there. Mr. Green said did not know a Nakia Harris. The Investigator took photographs of the location. (*Exhibit #18*)

On June 8, 2021, reporting Investigator called and spoke to Respondent Nakia Harris. Ms. Harris advised she wanted to verify this Investigators identity before providing any information. Ms. Harris requested the main S.O.S. number. This Investigator advised Ms. Harris to call the main S.O.S. number listed on our website, 404-656-2881, and ask for Investigations, then ask for Deputy Chief Callaway, my Supervisor. This Investigator also provided Deputy Chief Callaway's direct desk number. (*Exhibit #19*)

On June 8, 2021, reporting Investigator received a return call (rec) from Nakia Harris, owner of On the Move Catering, LLC. Mrs. Harris said she did verify this Investigator was with the Georgia Secretary of State's Office. Mrs. Harris said because she was directly contacted, the type of questions asked, and long time since the events, she was concerned when this Investigator called her. Mrs. Harris said would help this Investigator little bit. Mrs. Harris said she and other food trucks were organized by World Central Kitchens (WCK). Mrs. Harris said they are online at WKC org. Mrs. Harris said the WCK phone number is ███████ Mrs. Harris said the WCK email address ███████ Mrs. Harris said she cannot give information on all the food trucks that were at the events.  Mrs. Harris said some of the other food trucks were from other organizations. Mrs. Harris said her food truck was organized by the WCK and offered the WCK menu and food items. Mrs. Harris said she had WKC signage barriers on the front and back of her food truck. Mrs. Harris said this Investigator could find information about WKC by accessing "online profiles", "Facebook", and "Google". Mrs. Harris said if this Investigator went to google and typed in "world central kitchens chefs for the polls". Mrs. Harris said this will explain how WCK selected the food trucks, what their purpose was and who handled the WKC event arrangements. This Investigator asked Mrs. Harris if she would provide an notarized statement. Mrs. Harris said she would not provide a notarized statement about her food truck. Mrs. Harris said she did not want to participate in this and would only provide the information requested because of all of the negativity about the community. Mrs. Harris said this was unsettling and the way things were negative in the newspaper and towards the community. Mrs. Harris said she is not WCK and does not take any side on any issues. Mrs. Harris said she was thinking about obtaining legal representation because of aggression towards her and her food truck by Trump supporters. Mrs. Harris explained the personal aggression towards her was from Trump supporters with signage, and that they knew her name, knew her company name, and asked her who (candidate) she supported. Mrs. Harris said they also asked her what party she was affiliated with. Mrs. Harris said one of the females in the group told her she would report her. Mrs. Harris said she felt uncomfortable because of the aggression. Mrs. Harris said people from the Cobb County building came out and told her she was ok, but next time not to park so close to the building so she would not get shut down. Mrs. Harris said she did find a Facebook video post of the aggressors and said she would try to send that footage to this Investigator. Mrs. Harris said another news channel reported on the food trucks. Mrs. Harris said she did not want to be part of all the negativity. Mrs. Harris said she only gave out food, drinks and trays of food to people and families in need. Mrs. Harris said she was just helping her community. Mrs. Harris said one lady gave her a crocheted potholder. Mrs. Harris said she parked her food truck in back. Mrs. Harris said the Warnock van-bus parked right behind her truck. Mrs. Harris said Mr. Warnock came out and started to speak to people. Mrs. Harris said she did not want to be caught up in the situation. Mrs. Harris said that is not what she was doing. Mrs. Harris said all she was doing was passing out food to families in need. Mrs. Harris said she would reply to this Investigators email. Mrs. Harris said expressed concern why this Investigator went to her home address. This Investigator explained I trying to obtain her notarized statement for the SEB Board. Mrs. Harris said a food truck with Trump stickers came to her house and recorded them for

hours. Mrs. Harris said they also took a photo of her and her license plate. Mrs. Harris said this occurred during the election events. This Investigator suggested Mrs. Harris contact the Cobb County Police Department or Sheriff 's Office if there were any suspicious vehicle parked outside of her home taking photographs. This Investigator sent an email request. (*Exhibit #20*)

On June 8, 2021, Nakia Harris, owner operator of the "On the Move Catering, LLC.," food truck sent her email statement to the Investigator. The statement verified she was contracted by the World Central Kitchen non-profit, to provide free meals & drinks to people at and around the polls, regardless if they voted or not. (*Exhibit #21*)

On June 10, 2021, reporting Investigator conducted an open records WEB search for World Central Kitchens. This Investigator found the WCK website with several articles that referenced the food trucks being at voting polls during election times. There were a few specific references to WCK sponsored food trucks being in Marietta and Cobb County Georgia. (*Exhibit #22*)

On June 15, 2021, reporting Investigator added S.O.S. Director of Elections, Chris Harvey's memo as an Exhibit. (*Exhibit #23*)

On June 15, 2021, reporting Investigator received a brief email statement  from Christopher Murphy. Mr. Murphy provided contact information for World Central Kitchens associate, Akeem Evans. Mr. Murphy invoked his right to legal counsel for any other documentation request. (*Exhibit #24*)

On June 15, 2021, reporting Investigator received an email from Judy Lowery, DPH, with attached documents for the "Lil Nauti" food truck business and the "Loaded Taco and Loaded Burger food truck business. (*Exhibit #25*)

On June 16, 2021, reporting Investigator called and spoke to Respondent, Michael C. Renner Jr. Mr. Renner verified he was the owner/operator of both the Loaded Taco & Loaded Burger Food Trucks. Mr. Renner advised he did not know who he was speaking with and wanted to verify this Investigator was with the S.O.S. Mr. Renner advised he would provide the requested information upon his verifying this Investigators identity. Mr. Renner requested and was sent an email request for information. Note Mr. Renner did advise his business was hired by "Roaming Hunger". (*Exhibit #26*)

**FINDINGS:**

Ms. Pamela Reardon advised the Investigator that on December 14, 2020, the first day of early voting for the Presidential Election, she went in to get her Cobb County Poll Watching credentials at 736 Whitlock Avenue. Ms. Reardon said *she saw (2) two food truck parked close to the building*. Ms. Reardon said *she saw Director Eveler and Cobb poll officials with a measuring tape*. Ms. Reardon advised the food trucks were *initially within 150 feet*. Ms. Reardon said *she saw* a Deputy Sheriff speak to the food truck occupants. The food trucks then *moved away* from the building and parked in the lot close to the road entrance. Ms. Readon advised she saw Ms. Floam videotaping the voter line. The Investigator also later received several photographs from Ms. Reardon, of food trucks with advertisement signage that referenced voting. No specific food truck with said signage, could be placed within 150 feet of any polling location.  Ms. Readon also provided the Investigator with copies of several text messages.

The Investigation received an email sent from Respondent Janine Eveler, the Cobb County Elections Supervisor, to Complainant Dana Schlup. The email advised *per Ms. Eveler*, it was *allowable* for food trucks to park *outside* of 150 feet from a poll, that *were not campaigning* or *offering food items, a thing of value, to vote*. The email further stated, the items *must be offered to everyone* and *not be of significant value*.

The Investigation received a copy of an email sent from Respondent Bridget Geraghty of "vote.org" to Georgia Senator, Dr. Kay Kirkpatrick, that advised Geraghty *raised funds* that paid for food trucks to display advertisement signage that referenced voting and offered food items, a thing of value to vote.

Christopher Murphy told the Investigator he operated his food truck in Cobb County but would need to check his records before he could say when and where. Mr. Murphy verified he was hired by a non-profit for the election events. Mr. Murphy said he would have to go back and research his calendar to be able to advise the non-profits name. Mr. Murphy said there was *no campaigning, and no food was offered for voting*. Mr. Murphy said he had no contracts with the non-profit. Mr. Murphy said all business was conducted through emails. Mr. Murphy said he sent an invoice was paid through the "Square" app. Mr. Murphy said he did not have any Department of Health (DPH) documents for the events. Mr. Murphy *did* provide some of the requested information via email.

Michael C. Renner Jr. Mr. Renner verified he was the owner/operator of both the Loaded Taco & Loaded Burger Food Trucks. Mr. Renner advised he did not know who he was speaking with and wanted to verify this Investigator was with the S.O.S. Mr. Renner advised he would provide the requested information upon his verifying this Investigators identity. Mr. Renner did advise his business was hired by "Roaming Hunger".

The investigation exhausted all leads and found that there is *insufficient* evidence to suggest, any Respondent, violated **O.C.G.A. 21-2-570,** in performing their various duties during the Special Run-Off Election, January 5, 2021. All food trucks parked *outside* of 150 feet of a polling location or *voluntarily moved* outside 150 feet when directed too by election officials. A specific food truck operator also complied with an election poll manager's instruction and voluntarily stopped handing out napkins with a political message printed on them.

## POTENTIAL VIOLATIONS:

**Bridget Geraghty**
**No Violation**

There is *insufficient* evidence to suggest, respondent **Bridget Geraghty**, violated **O.C.G.A. 21-2-570,** in that she did while performing her duties as Director of Donor Relations for vote.org, *fund* activities that sponsored a food truck to park *inside* 150 feet of a polling location, in which the food truck employee's gave out *free food* and *beverage* items, *a gift of value*, for voting. The investigation found all food trucks parked *outside* of 150 feet or *voluntarily moved* outside 150 feet. This occurred at the East Cobb Government Service Center, a poll located at 4400 Lower Roswell Road, Marietta, on December 14, 2020, during early voting for the January 5, 2021, Special Election, in Cobb County, Georgia.

**Janine Eveler**
**No Violation**

There is *insufficient* evidence to suggest, respondent **Janine Eveler**, violated **O.C.G.A. 21-2-570,** that she did while performing her duties as Director of the Cobb County Elections & Registration Office, *allow* a food truck to park *inside* 150 feet of a polling location, in which the food truck employee's gave out *free food and beverage* items, *a gift of value*, for voting. The investigation found all food trucks parked *outside* of 150 feet or *voluntarily moved* outside 150 feet. This occurred at the East Cobb Government Service Center, a poll location, during early voting for the January 5, 2021, Special Election, on December 14, 2020, in Cobb County, Georgia.

**Christopher Murphy**
**No Violation**

There is *insufficient* evidence to suggest, respondent **Christopher Murphy**, violated **O.C.G.A. 21-2-570,** in that he did while operating a food truck, park *inside* 150 feet of a polling location, in which the food truck employee's gave out *free food and beverage* items, *a gift of value*, for voting. The investigation found all food trucks parked *outside* of 150 feet or *voluntarily moved* outside 150 feet. This occurred at the North Cobb Regional Library, a poll located at 3535 Old Highway 41, NW, in Kennesaw, on December 14, 2020, during early voting for the January 5, 2021, Special Election, in Cobb County, Georgia.

**Nikia Harris**
**No Violation**

There is *insufficient* evidence to suggest, respondent **Nakia Harris**, violated **O.C.G.A. 21-2-570,** in that she did while operating a food truck, park *inside* 150 feet of a polling location, in which the food truck employee's gave out *free food* and *beverage* items, *a gift of value*, for voting. The investigation found all food trucks parked *outside* of 150 feet or *voluntarily moved* outside 150 feet. This occurred at the East Cobb Government Service Center, a poll location, at 4400 Lower Roswell Road, Marietta, on December 14, 2020, during early voting for the January 5, 2021, Special Election, in Cobb County, Georgia.

## **EXHIBITS**

1.  Complaint.
2.  Witness List.
3.  MOI, S.O.S. Inv. April Odom, investigative actions to date, copy of notarized statement(s) of Cobb County Poll Managers, Craig J. Rogers, Deborah Lundquist, and Twana Orders.
4.  MOI, Janine Eveler, Cobb County Elections Supervisor, call, emails,
5.  MOI, Pamela Reardon, call, email.
6.  EX, Janine Eveler, Cobb County Elections Supervisor, emails.
7.  EX, Dewayne Morris, LTC, Cobb County Sheriff's Office, email.
8.  MOI, Janine Eveler, Cobb County Elections Supervisor, notarized statement.
9.  MOI, Jerilyn Gover, Email statement. statement.
10. MOI, Dewayne Morris, LTC, Cobb County Sheriff's Office, copies of incident reports.
11. MOI, Kay Kirkpatrick, Georgia State Senator, call, emails.
12. EX, Kay Kirkpatrick, Georgia State Senator, notarized email statements.
13. MOI, Karen Gulley, Cobb County, Department Public Health, call, email.
14. EX, S.O.S. corporations search, "On the Move Catering, LLC.", Nakia Harris, Registered Agent.
15. MOI, Christopher Murphy, Food Truck Owner, call, email.
16. MOI, Judy Lowry, Cobb County, Department Public Health, call.
17. EX, Judy Lowry, email, DPH documents, "On the Move Catering".
18. MOI, Investigative Action, unannounced visit, 5520 Wheatfield Lane, powder Springs.
19. MOI, Nakia Harris, On the Move Catering, LLC., call.
20. MOI, Nakia Harris, On the Move Catering, LLC., call, email.
21. EX, Nakia Harris, On the Move Catering, LLC., email statement, copy text messages.
22. EX, World Central Kitchens (WCK), open records WEB search, documents.
23. EX, Copy of Elections Director, Chris Harvey's Food Truck memo.
24. EX, Christopher Murphy, Lil Nauti Food Truck, email statement.
25. EX, Judy Lowery, DPH, copies of Lil Nauti and Loaded Taco Food Truck documents.
26. MOI, Michael Renner Jr., Loaded Taco & Burgers Food Trucks, call, email.

# EXHIBIT F

**From:** ElectionsComplaintAlerts@sos.ga.gov
**To:** electionscomplaints
**Subject:** Elections Complaint from Elizabeth Lee Brown
**Date:** Tuesday, October 20, 2020 6:29:28 AM

Name:  Elizabeth Lee Brown
Phone:  ███████████
Address:  █████████████████
City:  Albany
State:  Ga
Zip Code:  █████
E-mail ████████████████
Complaint Type: General Complaint
Election Date:
County: Dougherty
City:  Albany

Description of Complaint:  I early voted in Albany, Georgia at the Candy Room on Tuesday, October 13th, 2020. I and other older voters had no issue standing in a long line to vote. The Black Voters Matter group was present handing out food and water. There was also a lady leaning against the door of the Candy Room, where voting takes place & she was handing out plastic bracelets. Older voters felt intimidated by the presence of this group. There was a look of fear on their faces. Handing out food & water can be misconstrued as influencing voters or buying votes. There needs to be some type of ordinance or law regarding any nonpolitical, social justice group from doing this.

# EXHIBIT G

# POLL WORKER MANUAL



**Latest Update: May 2021**

# <u>ELECTION DAY</u>

Although there is no such thing as a typical election day, this section reviews what happens when everything goes as planned. If assigned to a particular station, know your role and make the poll manager aware of any questions or concerns you may have before the polls open.

Poll workers must be aware of a few important things whenever voters begin entering the polling place.

How should voters with disabilities be accommodated?
What happens if a voter is wearing campaign material?
Can someone take a picture of their ballot?
What are Poll Watchers?



# __ELECTION DAY__

## Voter Flow

- Voters enter the polling place
  - When a voter enters the polling place, ensure they are not wearing any campaign material for any candidates on the ballot that day. Greet the voter with a smile and direct them to the appropriate station to begin the voting process.
- Identification & Poll Pad Check-in
  - Check their identification to find them in Poll Pad. The voter's eligibility is checked on the Poll Pad. The voter will sign the electronic voter certificate. Acceptable ID is found in O.C.G.A. § 21-2-417. If they have not voted, they are issued a voter access card (the card they insert into the BMD units), and added to the Numbered List of Voters.
- Vote on BMD
  - The voter is then directed to the BMD touchscreen units. They will insert the voter access card into the machine, select their candidates for each election, review their choices, and select "print ballot". Once the voter prints their ballot, the card will pop out of the machine.
- Voter casts ballot in the polling place scanner
  - The voter will place their printed ballot in the polling place scanner. Once a ballot is scanned into the polling place scanner, the ballot is cast.
- Voter returns Voter card to Poll Worker
  - Ensure the voter has completed their voting, returned their card, and received their sticker and then thank them for voting.
- Voter exits the polling place

- Provisional Ballots
  - If a voter, for any reason, is unable to cast a ballot at your polling station but would like to be issued a provisional ballot, they will fill out their ballot at the "Provisional Ballot Station". Ensure them that they will be notified if their ballot was counted typically within a week after the election. Any votes cast by a provisional ballot in the wrong precinct will not be counted unless it is cast after 5:00 P.M. and before the regular time for the closing of the polls on the day of the primary, election, or runoff.



# <u>ELECTION DAY</u>

## Voter enters the Polling Place

### <u>Accommodating Voters with Disabilities</u>

Signs are vital. Directional signs should designate accessible parking spaces and be visible, especially those designating handicapped parking spaces, as well as the nearest accessible entrance if it is not the main door.

If the polling place does not have a permanent handicapped parking space, designate a handicapped parking space by placement of a temporary "Handicapped Parking Sign." Make sure there is wheelchair access to the building, the polling place, and the voting booth.

Always be courteous and respectful. Be considerate of extra time it may take for a person who is disabled or elderly to complete the voting process, and give unhurried attention to a person who has difficulty speaking.

Always speak directly to the voter, and not to a companion, aide, or sign language interpreter.

Animals that assist people with disabilities should be admitted into all buildings. DO NOT pet or distract these Assistance Animals, as they are working animals, not pets.

If you observe a voter with a disability who needs assistance, ASK "May I help you in any way?" before rendering assistance. The answer you receive should dictate any further assistance.

Place chairs or benches along a waiting area for the convenience and comfort of those who may have difficulty standing in line.

### <u>Assistance to Voters</u>

A voter is entitled to assistance if the voter is:
- Unable to read the English Language and/or
- Has a disability which renders the voter unable to:
  - See or mark the ballot…OR
  - Operate the voting equipment…OR
  - Enter the voting compartment or booth without assistance
- Notice of the availability of assistance shall be posted at polling place.
- "A physically disabled or illiterate elector may receive assistance in preparing his or her ballot from" …
- Any person of the elector's choice EXCEPT
  - Elector's Employer or Agent of Employer
  - Officer or Agent of Elector's Union
  - Candidate on the Ballot or Family Member of Candidate
  - Unless Disabled/Illiterate Elector is Related to Candidate

38

# <u>ELECTION DAY</u>

## Voter enters the Polling Place

### <u>Voters with Speech or Hearing Impairment</u>
- A voter who cannot speak can give their name and address simply by providing their written name and address to the poll worker
- Follow the voter's cues to determine whether speaking, gestures, or writing is the most effective method of communication
- If speaking, speak calmly, slowly, and directly to the voter.  Do not shout.  Your facial expressions, gestures, and body movements help in understanding.
- Face the voter at all times and keep your face in full light (not backlit)
- Rephrase, rather than repeat, sentences that the voter does not understand

### <u>Voters with Mobility Impairment</u>
- Do not push or touch another person's wheelchair or equipment without prior consent
- People using adaptive equipment often consider the equipment as part of their personal space
- You are also more likely to break a wheelchair or piece of equipment with which you are not familiar

### <u>Voting by Electors Over 75 Years of Age or Older or Disabled</u>
- On election day between the hours of 9:30 A.M. and 4:30 P.M., and also during advance voting each elector who is 75 years of age or older or who is disabled and requires assistance in voting, shall, upon request to a poll officer, be authorized at any primary or election to vote immediately at the next available voting compartment or booth without having to wait in line.
- O.C.G.A. § § 21-2-385.1  and 21-2-409.1

### <u>Printed Ballot Review</u>
An area set up to provide magnifying tools for the paper ballots is recommended. Some voters may have difficulty reading the words on paper ballots
Ideas for assistance
- Standing magnifying screens
- Handheld magnifying glasses
- Reading glasses



SEB Rule 183-1-13-.02 Assistive Technology Devices
- An illiterate or disabled elector who is entitled to receive assistance pursuant to O.C.G.A. §§ 21- 2-385 or 21-2-409, or a person assisting such an elector, may use an assistive technology device to help the elector review their paper ballot prior to casting. Any image of the ballot obtained through using an assistive technology device shall be immediately deleted. Use of an assistive technology device by an illiterate or disabled elector or by a person assisting an illiterate or disabled elector shall not be deemed a violation of O.C.G.A. § 21-2-413(e).

39

# <u>ELECTION DAY</u>

## Campaign Activity or Materials

### O.C.G.A. § 21-2-413 and 21-2-414

- No person, when within the polling place, shall electioneer or solicit votes for any political party or body or candidate or question, nor shall any written or printed matter be posted within the room.

- No person whose name appears as a candidate on the ballot being voted upon at a primary, election, special primary, or special election, except a judge of the probate court serving as the election superintendent, shall physically enter any polling place other than the polling place at which that person is authorized to cast his or her ballot for that primary, election, special primary, or special election and, after casting his or her ballot, the candidate shall not return to such polling place until after the poll has closed and voting has ceased.

- No person shall solicit votes in any manner or by any means of method, nor shall any person distribute any campaign literature, nor shall any person give, offer to give, or participate in the giving of any money or gifts, including, but not limited to, food and drink, to an elector, nor shall any person solicit signature for any petition, nor shall any person, other than election officials discharging their duties, establish or set up any tables or booths on any day in which ballots are being cast:

    o Within 150 feet of out the outer edge of the building in which the polling place is established;
    o Within any polling place: or
    o Within 25 feet of any voter standing in line to vote at any polling place.

- Rooms under the control or supervision of the board of registrars or absentee ballot clerk in which absentee ballots are cast shall be considered polling places.

- This section shall not be construed to prohibit a poll officer from distributing materials, as required by law, which are necessary for the purpose of instructing electors or from distributing materials prepared by the Secretary of State which are designed solely for the purpose of encouraging voter participation in the election being conducted or from making available self-service water from an unattended receptacle to an elector waiting in line to vote.

### O.C.G.A. § 21-2-2

- Defines Campaign materials as "any newspaper, booklet, pamphlet, card, sign, paraphernalia, or any other written or printed matter referring to:

    o A candidate whose name appears on the ballot in a primary or election;

    o A referendum which appears on the ballot in a primary or election; or

    o A political party or body which has a nominee or nominees on the ballot in a primary or election

40

# __ELECTION DAY__

## The Voting Line

The voting line is an important component in all polling places. At each polling place, there should be a plan to deal with a scenario where there is a line that is well out the door. Wait times must be recorded at least three times on Election day. (Morning/Midday/Before the Polls Close) Wait times should be recorded on the Poll Pad recap sheet. Consider the following questions and options for a well-maintained voting line:

- Do you have room for the voters to line up safely around the building?
- O.C.G.A. § 21-2-414(a) (3) states that there can be no campaigning within 25 feet of anyone waiting in line to vote. Are you prepared to make those measurements?
- At your busier polling locations where you expect a line, have a designated person to manage the line. This person's focus should be to prepare the voters for the check-in and voting process.
- Consider giving poll workers a special nametag that says something like "Have a question about voting? Ask me."

- Have the poll workers monitor voters in line to ensure there is no campaigning in line or wearing campaign materials.

- Have the poll worker notify the voters of the required identification needed to vote and to have it ready to present to the poll work at the Poll Pad Station.

- Consider providing that poll worker with an electors list, a portable Poll Pad, or a device that can access MVP to look up voters in line to ensure that they are at the correct polling location.

- If the line is caused by a long ballot or long questions on the ballot, be sure to have extra sample ballots available to pass out to voters in line.  The more prepared they are when they get to the voting machine, the quicker you will be able to process them.



41

# <u>ELECTION DAY</u>

## <u>Cell Phones and Other Electronic Devices O.C.G.A. § 21-2-413(e)</u>

No person shall use photographic or other electronic monitoring or recording devices, cameras, or cellular telephones while such person is in a polling place while voting is taking place; provided, however, that a poll manager, in his or her discretion, may allow the use of photographic devices in the polling place under such conditions and limitations as the election superintendent finds appropriate, and provided, further, that no photography shall be allowed of a ballot or the face of a voting machine or DRE unit or electronic ballot marker while an elector is voting such ballot or machine or DRE unit or using such electronic ballot marker, and no photography shall be allowed of an electors list, electronic electors list, or the use of an electors list or electronic electors list.

## <u>Poll Watchers - O.C.G.A. § 21-2-408</u>

A poll watcher is a person named by a political party, political body, or candidate who is authorized to enter the enclosed space to observe the conduct of an election and the counting and recording of votes. No person shall be eligible to serve as a poll watcher unless he or she has completed training provided by the political party political body, or candidate designating the poll watcher.

(d)  Notwithstanding any other provisions of this chapter, a poll watcher may be permitted behind the enclosed space for the purpose of observing the conduct of the election and the counting and recording of votes. Such poll watcher shall in no way interfere with the conduct of the election, and the poll manager may make reasonable regulations to avoid such interference. Without in any way limiting the authority of poll managers, poll watchers are prohibited from talking to voters, checking electors lists, using photographic or other electronic monitoring or recording devices, using cellular telephones, or participating in any form of campaigning while they are behind the enclosed space. If a poll watcher persists in interfering with the conduct of the election or in violating any of the provisions of this Code section after being duly warned by the poll manager or superintendent, he or she may be removed by such official. Any infraction or irregularities observed by poll watchers shall be reported directly to the superintendent, not to the poll manager. The superintendent shall furnish a badge to each poll watcher bearing the words "Official Poll Watcher," the name of the poll watcher, the primary or election in which the poll watcher shall serve, and either the precinct or tabulating center in which the poll watcher shall serve or a statement that such poll watcher is a state-wide poll watcher. The poll watcher shall wear such badge at all times while serving as a poll watcher.