# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |

## STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXTEND DISCOVERY

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................ 2
    I.    Plaintiffs Mischaracterize Discovery Conducted to Date. ................... 2
    II.   Plaintiffs Mischaracterize This Action. ................................................. 7
    III.  Plaintiffs Misunderstand *Purcell*. ......................................................... 9
    IV.  The Remaining Discovery Requires Additional Time. ........................ 11
CONCLUSION ........................................................................................................ 14

This case consists of six separate cases that the Court consolidated solely for discovery. [Doc. 1]. Those consolidated cases include 28 separate claims and 1,323 paragraphs of allegations. After extensive discovery over 14 months, including the production of more than one million pages of documents and several dozen depositions, State Defendants requested a modest two-month extension of discovery to allow the parties to complete the remaining discovery tasks. [Doc. 453]. For instance, over the next 14 business days, the parties must complete more than two dozen fact and expert depositions, revolve many pending and percolating discovery disputes, and negotiate several new searches for records that Plaintiffs recently requested. There simply is not enough time left to complete all those tasks. And, considering that there would have been approximately 48 months of discovery if each of the consolidated cases had proceeded separately, State Defendants' request for a total of 16 months of discovery is reasonable.

Yet Plaintiffs oppose this reasonable request, opting instead to file two separate oppositions littered with inaccuracies and misstatements. [Doc. Nos. 480, 482]. Once those inaccuracies are stripped away, Plaintiffs have offered no reason to deny the State Defendants' request for an extension of discovery.

Accordingly, the Court should grant the State Defendants' motion, extend discovery by two months, and vacate the current summary judgment

briefing schedule to allow the Parties and the Court to consider whether to extend consolidation in this case beyond discovery.

## ARGUMENT

In their motion [Doc. 453], State Defendants demonstrated that there is good cause to grant the requested extension. Indeed, despite the efforts of all parties, there is more discovery to be completed than can accomplished in the remaining days of discovery. Although they do not contest the number of tasks remaining, Plaintiffs rely instead on several inaccurate characterizations of these proceedings. For instance, the Plaintiffs mischaracterize discovery conducted to date, seeking to blame the State Defendants for the current scheduling problems. [Doc. 480 at 4]; [Doc. 482 at 6]. Plaintiffs also mischaracterize this action, suggesting that it is a run-of-the-mill case where discovery should be completed quickly. [Doc. 482 at 4]. Finally, Plaintiffs show their wholesale misunderstanding of the *Purcell* doctrine, as well as a misunderstanding of the 2024 election calendar in Georgia. As demonstrated below, none of these arguments defeats the State Defendants' showing that a two-month extension of time is necessary.

### I.   Plaintiffs Mischaracterize Discovery Conducted to Date.

As State Defendants previously explained, they have responded to dozens of written discovery requests, agreed to search for electronic records

2

using more than 600 search terms, and ultimately produced more than 1.3 million pages of record thus far, with recent requests from Plaintiffs requiring even more searches and productions.[1]  [Doc. 453 at 3].  State Defendants have also reviewed nearly 100,000 pages of records that Plaintiffs produced.  *Id.* at 2.  And State Defendants have taken more than thirty depositions and participated in dozens more.  By devoting substantial State resources, State Defendants have completed these tasks in just 14 months.[2]  But significantly more remains to be done.

In response, Plaintiffs make the preposterous suggestion that State Defendants have been dragging their feet throughout discovery.  [Doc. 480 at 4]; [Doc. 482 at 6].[3]  Specifically, Plaintiffs falsely suggest that State

---

[1] Plaintiffs recently served several additional document requests, which require the parties to engage in another round of search-term negotiation, followed by searches, review, and production.

[2] At the same time, State Defendants and counsel completed discovery and summary-judgment briefing in a related case, *VoteAmerica v. Raffensperger*, No. 1:21-cv-1390-JPB (N.D. Ga.).  And State and local election officials conducted several elections during this same period.

[3] Considering all that needs to be accomplished in this case, State Defendants do not believe it is a productive use of the parties' or the Court's resources to devote time to discussing the minutiae of the discovery proceedings to date.  Rather, State Defendants had anticipated that Plaintiffs would have consented to such a reasonable extension request, whereby the parties could devote their efforts to completing discovery.  Unfortunately, by filing two separate oppositions that are filled with misstatements, State Defendants and the Court must now take the time to address how discovery has proceeded in this case.

Defendants delayed written discovery, fact depositions, and expert depositions, and that State Defendants agreed to the current schedule without any reservations. Plaintiffs are wrong at every turn.

    1. As to written discovery, DOJ mischaracterizes events by stating that, after Plaintiffs served their discovery requests on February 14, 2022, the "State did not begin to produce responsive email communications until August 23, 2022[.]" [Doc. 480 at 4]. That ignores the voluminous data State Defendants began producing almost immediately after February 14, 2022. It also ignores that Plaintiffs waited until May 31, 2022, to provide search terms to State Defendants, and that the parties negotiated those search terms from May through August 2022. And DOJ ignores that, once the search-term negotiations largely ended in August 2022, State Defendants began rolling productions *that month*.[4] Accordingly, DOJ's suggestion that State Defendants did nothing for six months after receiving Plaintiffs' discovery requests is deeply misleading.

---

[4] DOJ and the private Plaintiffs also fixate on an 800,000-page production in December 2022. [Doc. 480 at 4]; [Doc. 482 at 6]. But, as the Plaintiffs are aware, that production included only 61,000 files, and was not the product of any delay.

In contrast to the State Defendants' diligence in completing these tasks, Plaintiffs continue to produce documents. In many instances, Plaintiffs produced documents shortly before (and even *after*) depositions. In fact, just hours before Plaintiffs filed their oppositions to the extension motion, one Plaintiff group produced even more records. Additionally, State Defendants learned during depositions that several Plaintiffs failed to search for records, which requires additional time for Plaintiffs to cure those deficiencies, and for State Defendants to review the late-produced records to determine whether to recall witnesses.

2. Plaintiffs' misstatements are not limited to written discovery. For instance, Plaintiffs suggest that State Defendants delayed taking fact depositions of Plaintiffs, waiting until mid-January 2023 to suggest dates for depositions. [Doc. 480 at 4]. That ignores the parties' mid-December discussion when counsel for State Defendants asked Plaintiffs to provide witness availability in January and February. Only after Plaintiffs failed to provide any such availability did State Defendants proactively provide suggested deposition dates.[5] And, even then, Plaintiffs did not produce any

---

[5] DOJ oddly suggests (at 4) that it was the State Defendants' obligation to provide deposition dates for *Plaintiffs'* witnesses. That turns customary discovery practice on its head. To accommodate a witness's availability, parties traditionally provide the witness's availability, and then counsel work

5

witness until mid-February, which forced State Defendants to undertake many concurrent depositions throughout February. But even under that aggressive schedule, State Defendants are still waiting to complete additional fact depositions, including where Plaintiffs have yet to provide availability.

3. The Plaintiffs similarly misstate the facts about expert discovery. For instance, DOJ incorrectly suggests (at 5) that State Defendants delayed scheduling expert depositions. True, Plaintiffs provided an initial list of dates on February 14, 2023. And State Defendants were not able to respond with their availability until early March, as the Parties were substantially occupied during that period conducting more than 30 depositions. Once State Defendants provided Plaintiffs with their availability for expert depositions, Plaintiffs responded that they cannot conduct any expert depositions before March 17. In other words, Plaintiffs now insist that the Parties must complete 22 expert depositions in 11 business days. That is not only infeasible on its own, but it is impossible with all the other outstanding discovery tasks.

4. Finally, the private Plaintiffs incorrectly suggest that State Defendants agreed to the current discovery deadlines without any reservation.

---

to schedule the deposition with minimal disruption to the witness's schedule. Plaintiffs simply opted to abandon this traditional practice for their witnesses.

[Doc. 482 at 7–8]. Not so. Earlier this year, State Defendants consented to Plaintiffs' requests for several extensions of their expert-report deadlines. And, when it became clear that those extensions caused a complicated schedule for rebuttal reports, State Defendants proposed streamlining those deadlines. At that time, State Defendants also informed Plaintiffs that they believed discovery would need to be extended by at least two months to complete the remaining tasks. But, after Plaintiffs threatened to withhold consent from any motion seeking to consolidate expert-report deadlines, State Defendants agreed to see how much the parties could accomplish in February before requesting additional time.

Accordingly, Plaintiffs have been on notice since early January that State Defendants believed additional time would be needed. And, as anticipated, more time is needed, and none of the Plaintiffs' mischaracterizations changes that fact.

## II.  Plaintiffs Mischaracterize This Action.

Plaintiffs also oppose State Defendants' motion by mischaracterizing this action. In Plaintiffs' estimation, the discovery period in this case should be measured by the Court's typical "eight-month period" for discovery in complex cases. [Doc. 482 at 4]. But Plaintiffs cannot have it both ways. They cannot demand extraordinarily broad discovery—requiring State Defendants

7

to run more than 600 searches and produce more than one million pages of records—and demand a limited discovery schedule.

This simply is not a mine-run complex civil case. Rather, State Defendants are engaged in discovery on 28 claims, investigating allegations in 1,323 paragraphs spread across 449 pages of multiple complaints. And, taking Plaintiffs at their word, they actively coordinated to ensure that they were not duplicating efforts. *See, e.g.*, [Doc. 480 at 5 n.6].[6] In other words, each of these allegations and claims requires separate investigation during discovery.

If this were a standard case, as Plaintiffs imagine, the State Defendants would have responded to only 25 interrogatories, *see* Fed. R. Civ. P. 33(a)(1), and each Party would have taken only 10 depositions, *see* Fed. R. Civ. P. 30(a)(2)(A)(i). But, as the Parties acknowledged from the outset when they agreed to *substantially* higher discovery limits (*e.g.*, 120 fact depositions and hundreds of interrogatories), discovery here would not be subject to the limits of typical complex civil actions. And Plaintiffs should not try to impose such

---

[6] Here, DOJ makes the surprising statement that it did not coordinate its investigation of this case or its "decisions about filing its Complaint here." That statement is in serious tension with statements that DOJ has made here and elsewhere that its communications with other Plaintiff groups are privileged because they were engaged in the common interest of coordinating their litigation against Georgia.

8

limits now. Had the Court not consolidated these cases for discovery, the Parties would have engaged in six separate discovery periods, where each would have likely lasted approximately eight months. While the State Defendants are not proposing 48 months for discovery here, it is not surprising that this case requires additional time, and a total of 16 months is entirely reasonable for cases that are as broad as the ones Plaintiffs chose to bring.

### III. Plaintiffs Misunderstand *Purcell.*

Beyond their mischaracterizations of the record, Plaintiffs primarily oppose State Defendants' extension motion because they believe it will impair their ability to obtain relief sufficiently in advance of November 27, 2023, when Plaintiffs claim state voters would be able to begin requesting absentee-ballot applications for a potential February 2024 presidential preference primary. [Doc. 480 at 2]. That is wrong for several reasons.

To begin, as DOJ notes, this is an entirely hypothetical concern, as it relies only on "a *proposal* … for Georgia to hold the Democratic presidential preference primary" in February 2024. *Id.* (emphasis added).[7] Even if there

---

[7] While Georgia will certainly hold a Presidential Preference Primary for both parties in 2024, that is not likely to happen until March. Georgia law charges the Secretary of State with setting the date for the Presidential Preference Primary, and it has traditionally been set in March. In addition to the Presidential Preference Primary, Georgia law sets a General Primary to be

9

is no extension of time here, summary-judgment briefing would not be completed until June 21, 2023. [Doc. 400]. And, as the Court recognized last year when it denied Plaintiffs' preliminary-injunction motions, *Purcell* can be implicated months before an election, as "judicial alterations" can have "unanticipated consequences." [Doc. 241 at 65] (quoting *League of Women Voters v. Fla. Sec'y of State*, 32 F.4th 1363, 1375 (11th Cir. 2022)).

In other words, the impact of *Purcell* is not likely to be dictated by the outcome of State Defendants' extension motion. Moreover, even under the current schedule, it is highly unlikely that the Parties can complete summary-judgment briefing, the Court can resolve those motions, and trial can be completed (if necessary) early enough not to implicate a December 2023 deadline for voters to begin requesting absentee ballots for a March 2024 Presidential Preference Primary.

Rather, despite Plaintiffs' desire to ignore *Purcell*, granting State Defendants' extension motion will have no effect on whether *Purcell* is implicated by Plaintiffs' requested relief. And the *Purcell* doctrine is not something that the State Defendants can simply waive, as Plaintiffs have repeatedly requested. This ignores why *Purcell* exists in the first place—it

---

held on May 21, 2024, for all offices other than president, including U.S. Congress, statewide officers, state legislative seats, and county offices.

protects the *public* from confusion caused by "orders affecting elections." *League of Women Voters* 32 F.4th at 1371. Given the goals that the *Purcell* principle serves, State Defendants cannot simply waive it. Rather, considering the significant interplay in election administration, it is likely that *Purcell* will be implicated for at least certain of Plaintiffs' claims whether or not the Court extends discovery.

Accordingly, notwithstanding Plaintiffs' desire to ignore *Purcell*, granting State Defendants' motion will have little impact on whether *Purcell* is implicated by the Court's resolution of Plaintiffs' claims.

**IV. The Remaining Discovery Requires Additional Time.**

Finally, notwithstanding Plaintiffs' mischaracterization of this case, one thing is undisputed—there is a large amount of discovery yet to be completed. In fact, it is undisputed that, under the current schedule, the parties must complete at least the following by March 31: (1) depositions of more than 20 experts; (2) depositions of multiple plaintiffs; (3) fact depositions of several state officials; (4) resolution of a pending discovery dispute about Plaintiffs' attempt to depose legislators; (5) resolution of two pending discovery disputes involving the Plaintiffs' attempt to seek records from and a deposition of the Intervenor-Defendants' attorney; (6) resolution of a potential dispute about Plaintiffs' attempt to seek privileged records from State Defendants' attorney,

11

Bryan Tyson; (7) negotiations about Plaintiffs' recent attempt to obtain a Rule 30(b)(6) deposition of Georgia's Department of Driver's Services; (8) negotiations about electronic searches for records responsive to various document requests that Plaintiffs recently served; and (9) review and production of any records responsive to those new discovery requests.[8]

And there are likely to be even more discovery tasks added to this list. For instance, DOJ suggests for the *first time* in its opposition (at n.5) that it will be updating its initial disclosures *sometime* "in the coming days" to identify additional fact witnesses from the November and December 2022 elections. Considering that the Plaintiffs have thus far been unable to identify voters who suffered harm from SB 202, these 11th-hour additions will certainly require additional third-party depositions. And DOJ still offers no insight into when it will provide this information to State Defendants.[9]

---

[8] Contrary to the private Plaintiffs' suggestion [Doc 482 at 2], this is far more than the typical "accelerat[ion]" of "work … as discovery closes."

[9] Considering that DOJ is now planning to identify individuals with information about their experience during the November and December 2022 elections, it is difficult to accept as true the suggestion that DOJ was not able to identify these witnesses in the months since those elections. DOJ cannot complain about additional time needed for discovery when it has opted to hold this information until the eleventh hour.

Accordingly, it is plain that more time is needed to complete discovery. It is equally plain that the current summary-judgment briefing schedule should be vacated. Despite the invitation to do so, Plaintiffs notably fail to confirm that they will coordinate their efforts to file a single summary judgment motion.[10] Rather, Plaintiffs respond by suggesting that the Parties should simply forgo summary judgment entirely and proceed directly to trial. To restate that argument is to refute it, particularly where, as here, nearly every Plaintiff has now waived its claim of injury from financial diversion of resources and has been unable to identify a single voter who was prevented from voting by SB 202.[11]

Rather, the Parties' disputes about how to proceed with summary-judgment briefing is precisely the type of discussion that the parties should have with the Court at the conclusion of discovery. After all, these cases were consolidated only for the limited purposes of discovery, and it has recently

---

[10] In fact, Plaintiffs couldn't even coordinate their response to a simple extension motion,

[11] Equally curious is Plaintiffs' suggestion that there is no need to delay the date to *file* summary judgment motions. [Doc. 482 at 13]. Apparently, Plaintiffs are willing to vacate summary-judgment deadlines opening briefs. But that makes no sense, and it would only cause greater delays.

13

become clear that the current schedule is not feasible for summary-judgment briefing. [Doc. 1 at 5].

## CONCLUSION

Considering the many discovery tasks remaining, the Court should extend discovery by two months. This modest request is entirely reasonable for a consolidated case of this magnitude. State Defendants have worked diligently throughout this case to ensure that discovery proceeds efficiently. But there are more discovery tasks to be completed to ensure that State Defendants are able to mount a thorough defense to Plaintiffs' many claims. Accordingly, the Court should grant State Defendants' motion.

Respectfully submitted this 14th day of March, 2023.

>Christopher M. Carr
>Attorney General
>Georgia Bar No. 112505
>Bryan K. Webb
>Deputy Attorney General
>Georgia Bar No. 743580
>Russell D. Willard
>Senior Assistant Attorney General
>Georgia Bar No. 760280
>Elizabeth Vaughan
>Assistant Attorney General
>Georgia Bar No. 762715
>**State Law Department**
>40 Capitol Square, S.W.
>Atlanta, Georgia 30334

14

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
Special Assistant Attorney General
Erik Jaffe*
H. Christopher Bartolomucci*
Donald M. Falk**
Brian J. Field*
Cristina Martinez Squiers*
Nicholas P. Miller*
Joshua J. Prince*
Annika B. Barkdull*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
*Admitted *pro hac vice*
**Pro hac vice* application submitted

Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com.
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

Counsel *for State Defendants*

15

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Gene C. Schaerr*
Gene C. Schaerr
