**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |

**MOTION TO QUASH SUBPOENA TO DEPOSE BRAD CARVER AND INCORPORATED MEMORANDUM OF LAW**

Intervenors respectfully request that this Court quash the third-party deposition subpoena to their attorney, William Bradley Carver. In the alternative, this Court should limit the scope of his deposition to the only potentially relevant information that Mr. Carver might have knowledge on—his communications with Georgia legislators during the time that SB202 was under consideration.

## INTRODUCTION

Plaintiffs have issued a subpoena seeking to depose Mr. Carver. Plaintiffs seek that deposition even though it is highly questionable whether Mr. Carver whether he has any information on the intentions of the General Assembly when it enacted Senate Bill 202—the only relevant question in this case. Even though he is a non-party who is serving as litigation counsel to Intervenors. Even though Plaintiffs have other avenues to obtain almost all the information that they seek from parties to this case. And even though Plaintiffs *are* seeking that same information via a 30(b)(6) deposition of the GAGOP.

1

Plaintiffs' subpoena is not proportional to the needs of this case and would impose an undue burden on Mr. Carver. His "status as a non-party ... weigh[s] against disclosure in the undue burden inquiry." *Jordan v. Comm'r, Miss. Dept. of Corrs.*, 947 F.3d 1322, 1337 (11th Cir. 2020). And this non-party deposition receives "special scrutiny" because Mr. Carver is litigation counsel. *Gaddy v. Terex Corp.*, 2015 WL 13545486, at *2 (N.D. Ga. Oct. 28). Courts have consistently recognized that depositions of litigation counsel inherently risk delving into protected information and undermine counsel's ability to focus his efforts on providing quality representation. *See D.O.T. Connectors, Inc. v. J.B. Nottingham & Co. Inc.*, 2001 WL 34104929, at *1 (S.D. Fla. Jan. 22). As a result, they have generally required a party seeking to depose counsel to show that it needs the testimony and that other adequate means to obtain the information are not available. *See Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong. Ltd.*, 2013 WL 230241, at *3 (M.D. Fla. Jan. 22).

Plaintiffs cannot come close to meeting that standard here because Mr. Carver has little relevant information, substantial documents have been provided to Plaintiffs by the GAGOP already, and Plaintiffs sought to depose Mr. Carver before they even noticed a deposition of his client, GAGOP. Moreover, even if they could show Mr. Carver's advocacy for electoral reforms led to some relevant information that they could not obtain through other means, that information would be privileged—either under the attorney-client privilege or

the First Amendment privilege because its disclosure would raise a substantial risk that Mr. Carver's associational rights would be chilled. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). This Court should quash or significantly limit the subpoena.

## BACKGROUND

Following the 2020 runoff election, the GAGOP retained William Bradley Carver to assist it in preparing election reform proposals. Mr. Carver chaired a committee assembled by the GAGOP to prepare recommended reforms. In this role, he provided legal advice about proposed reforms as the GAGOP advocated for the passage of the suggested reforms. The Georgia General Assembly passed Senate Bill 202 on March 25, 2021. SB202 contained some but not all of the reforms advocated for by the GAGOP.

Following passage of SB202, Plaintiffs brought challenges to the law. Thought Plaintiffs brought a wide variety of challenges, the core of each challenge is that the legislature enacted SB202 for a discriminatory purpose or that SB202 will have a legally prohibited effect. *See, e.g.*, 1st Am. Compl. of New Ga. Proj. et al. (Doc. 39) at 53-65, No. 1:21-cv-1229-JPB (N.D. Ga. Jan. 21, 2022) (raising claims that the General Assembly enacted SB202 for a discriminatory purpose, SB202 would have a discriminatory effect, SB202 would burden protected speech and association, and SB202 imposes immaterial

3

conditions on voting). GAGOP intervened to defend SB202. Mr. Carver represents GAGOP in this litigation.

Plaintiffs issued a subpoena to depose Mr. Carver on January 6, 2023, even though he is a nonparty who is serving as litigation counsel for a party. To support this subpoena, Plaintiffs have speculated that Mr. Carver must have relevant information because of his role as chair of a committee assembled by the GAGOP. But Plaintiffs have plenty of other avenues for obtaining any relevant information from the GAGOP. At the time they issued the subpoena, Plaintiffs had already requested documents from GAGOP, and they have received responsive and non-privileged documents. (Plaintiffs never requested any documents from Mr. Carver himself.) Plaintiffs could also depose a representative of the GAGOP. *See* Fed. R. Civ. P. 30(b)(6). In fact, Plaintiffs have now noticed a Rule 30(b)(6) deposition of the GAGOP, though they waited until several weeks after seeking to depose Mr. Carver.

## ARGUMENT

This Court "must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter, if no exception applie[s] or subjects a person to an undue burden." Fed. R. Civ. P. 45(d)(3). A party's ability to obtain information through a subpoena is also limited by Rule 26. *See Jordan*, 947 F.3d at 1329. Thus, a subpoena that seeks information that could not be obtained under Rule 26 "should be quashed." *Id*. And Rule 26 limits discovery to

4

evidence that is "proportional to the needs of the case" considering factors including "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The deposition of Mr. Carver would not be proportional to the needs of this case and would impose an undue burden. Plaintiffs seek testimony with almost no relevance to their claims. That testimony, however, would impose substantial burdens on a nonparty. Worse, the burdened nonparty is an attorney serving as litigation counsel in this matter, and Plaintiffs have sought his testimony before even seeking testimony from his client, the GAGOP.

**A. Mr. Carver's testimony would have little relevance.**

It is "very questionable" whether Mr. Carver's deposition testimony would be relevant at all. *Jordan*, 947 F.3d at 1329. Plaintiffs have brought claims against the State alleging that it enacted SB202 for a racially discriminatory purpose and will have a racially discriminatory effect. Those claims turn on the intent and effect of the acts of the *legislature*. Mr. Carver's views are not relevant.

Plaintiffs have suggested that Mr. Carver must have relevant information because he served as counsel to the GAGOP and chaired a committee for the GAGOP that recommended changes to Georgia's election laws. But Mr.

5

Carver's testimony about his service in those roles is only relevant to the extent it shows the *legislature's* motives. Mr. Carver's own motives and actions shed no light on that question. And even if Mr. Carver could testify about conversations that he had with legislators, the relevance of those conversations would be minimal to "*the* legally dispositive intent of the entire body." *Greater Birmingham Ministries v. Sec. of State for Ala.*, 992 F.3d 1299, 1325 (11th Cir. 2021). The Eleventh Circuit has recently clarified that it is "questionable whether the sponsor speaks for all legislators." *Id.* at 1324. Much less, it is unclear how any conversation that a private attorney acting for a private party had with individual legislators could show the intent of the legislature.

### B. A deposition of Mr. Carver would impose substantial burdens on a nonparty acting as litigation counsel in this case.

While having virtually no relevance, the deposition of Mr. Carver would impose a substantial burden. "The status of the subpoena recipient as a nonparty ... can weigh against disclosure in the undue burden inquiry." *Jordan*, 947 F.3d at 1337. But Plaintiffs have sought to force Mr. Carver to go through the substantial burden of preparing for and testifying in a deposition even though virtually all the information they seek could be more easily obtained from a party.

Non-party depositions are especially disfavored when the nonparty is an attorney for the opposition. Courts have recognized that depositions of "opposing counsel are generally disfavored and permitted only in limited

6

circumstances." *Bank of Am.*, 2014 WL 4851853, at *2 (cleaned up). Courts recognize that the deposition of an opposing attorney "constitutes an invitation to delay, disruption of the case, harassment, and perhaps disqualification of the attorney." *Gaddy*, 2015 WL 13545486, at *2 (cleaned up). This case illustrates the slippery slope such depositions invite: Plaintiffs recently subpoenaed another lawyer who represents a party in this case—Bryan Tyson who represents the State of Georgia—and their logic would mean that Intervenors could depose one of Plaintiffs' lawyers because they worked closely with legislators opposing SB202. So while prohibiting a deposition altogether might be rare, courts have applied "special scrutiny" to attempts to depose counsel. *Id.*

Courts have adopted different tests to decide whether to permit deposition of counsel. *See Bank of Am.*, 2014 WL 4851853, at *2-3. The Eighth Circuit, for example, requires a party to show that "(1) no other means exist to obtain the information sought through the deposition than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motor Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). The Second Circuit has adopted a "flexible approach" that looks to "all the relevant facts and circumstances." *Official Comm. of Unsecured Creditors of Hechinger Inc. Co. of Del, Inc. v. Friedman*, 350 F.3d 65, 72 (2d Cir. 2003). This test looks to "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is

7

sought in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id*. Whether the party seeking the depositions has made "prior resort to alternative discovery devices" should also be considered. *Id*.

In the absence of guidance from the Eleventh Circuit, courts in this circuit have "often applied" the Eighth Circuit's test in addition to asking whether a party seeking a deposition has shown that its "needs ... outweigh the danger of deposing a party's attorney." *Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong. Ltd.*, 2013 WL 230241, at *3 (M.D. Fla. Jan. 22) (cleaned up). That approach makes sense because it best accounts for the inherent risks and costs of deposing opposing counsel. *See West Peninsular Title Co. v. Palm Beach Cnty*, 132 F.R.D. 301, 301 (S.D. Fla. 1990). Some other courts, however, have applied the Second Circuit's test or adopted a standard that looks to the "need for the information" and the "interests in [the] attorney client relationship." *Bank of Am.*, 2014 WL 4851853, at *3 & n.20 (collecting cases).

Either way, these principles prohibit the deposition of Mr. Carver here. To begin, courts have consistently found that the interest in preventing an attorney deposition is strongest when the attorney, like Mr. Carver, is litigation counsel. Since litigation counsel "is privy to the litigation strategies and overall plan for prosecuting the case," there is an inherent risk that a deposition will touch on that protected information. *North Am. Med. Corp. v. Axiom*

8

*Worldwide, Inc.*, 2010 WL 11509356, at *9 (N.D. Ga. June 25). This kind of deposition "poses a real threat to work product and attorney client privilege." *Id*. And even apart from privilege issues, "the deposition of opposing counsel detracts from the quality of client representation." *D.O.T. Connectors*, 2001 WL 34104929, at *1 (quoting *Shelton*, 805 F.2d at 1327). Litigation counsel "should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Id*.

These privilege concerns are exacerbated by Mr. Carver's role as counsel to GAGOP during the preparation of legislative proposals following the 2020 runoff. In this role, Mr. Carver provided legal advice on legislative proposals. Thus, the "real threat" that the deposition will delve into privileged material is even greater. *North Am. Med. Corp.*, 2010 WL 11509356, at *9.

Plaintiffs cannot dismiss these costs by asserting that they will only seek non-privileged information. First, courts have recognized that disclosure of privileged information, including information relevant to litigation strategy, is an *inherent* risk when litigation counsel is deposed, even though counsel might have some relevant and nonprivileged information. *See, e.g.*, *North American Med. Corp. v. Axiom Worldwide, Inc.*, 2009 WL 10713154, at *1-2 (N.D. Ga. Apr. 8); *West Peninsular Title*, 132 F.R.D. at 303 (finding it "obvious" that "a deposition question may cause the defendants' attorney to discuss an area of his involvement in preparing for this case"). Second, the risk that a deposition

9

could undermine the quality of representation by distracting counsel from preparing the case applies regardless whether an attorney could testify about nonprivileged information. *See D.O.T. Connectors*, 2001 WL 34104929, at *1 (quoting *Shelton*, 805 F.2d at 1327). Third, to the extent Plaintiffs argue that Mr. Carver's advocacy efforts were not covered by the attorney-client privilege, those activities would be protected by the First Amendment privilege—a privilege that Plaintiffs have asserted in their own depositions throughout this case.

In contrast to these substantial burdens, Plaintiffs cannot show any need to depose Mr. Carver. As already explained, Mr. Carver's testimony would have little, if any, relevance to Plaintiffs' claims. The only potential relevance that testimony would have is about the legislature's intent, and Mr. Carver's testimony would, at best, have a tenuous connection to that question.

Finally, Plaintiffs have adequate alternative mechanisms to discover any relevant information held by GAGOP, but they failed to fully use those alternatives before seeking to depose Mr. Carver. Plaintiffs have already requested documents from GAGOP (but, notably, not Mr. Carver) and have received the nonprivileged documents that they requested. They could also obtain any relevant information held by GAGOP by conducting a Rule 30(b)(6) deposition. In fact, Plaintiffs recently noticed a Rule 30(b)(6) deposition, though they waited until well after they noticed the deposition of Mr. Carver. These alternatives

provide a "more convenient and less burdensome source of the information" that Plaintiffs seek. *North Am. Med. Corp.*, 2009 WL 10713154, at *2.

### C. Mr. Carver's testimony is protected by First Amendment privilege.

The deposition of Mr. Carver would also impose an undue burden because it would focus on information protected by the First Amendment. The Supreme Court has recognized that "compelled disclosure of political affiliations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 & n.4 (9th Cir. 2010) (collecting cases). For this reason, a party can "invoke the First Amendment privilege in response to a ... discovery request." *Curling v. Raffensperger*, 2021 WL 5162576, at *1 (N.D. Ga. Nov. 5). A party can make a prima facie showing that the First Amendment privilege applies if there is "an objectively reasonable probability that compelled disclosure will chill associational rights." *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1151 (D. Kan. 2010). The burden then shifts to the party seeking discovery to show "a compelling need for the information." *Id*.

Mr. Carver's deposition would chill associational rights. Plaintiffs have suggested that a deposition would not touch on issues protected by attorney-client privilege because it will focus on Mr. Carver's advocacy. But those activities are protected by the First Amendment. *See Curling*, 2021 WL 5162576, at *1.

There is a substantial risk that Mr. Carver would suffer consequences that would chill his associational rights. Mr. Carver has already suffered harassment for his associations. A well-funded group made a coordinated effort to have Mr. Carver disbarred. *See* Markay and Swan, *Scoop: High-Powered Group Targets Trump lawyers' Livelihoods*, axios.com/2022/03/07/trump-election-lawyers-disbar (last visited March 17, 2023). According to one of the leaders of that attempt, the goal was not only to threaten the livelihoods of Mr. Carver and others for their political associations, but also to "shame them and make them toxic." *Id.* While the bar complaint was unanimously dismissed, the confidential process was leaked to the press to harm Mr. Carver's career. There is every reason to think that his deposition on a politically controversial legislative reform would lead to further efforts to retaliate against him for his political associations. The First Amendment privilege protects against this kind of "harassment or reprisal from either government officials or private parties which may affect ... political activities or economic interests." *In re Motor Fuel Temperature Sales*, 707 F. Supp. 2d at 1151.

The deposition would also burden Mr. Carver's associational rights by undermining his ability to work with others on political issues in the future. Permitting inquiry into Mr. Carver's advocacy would make it less likely that others would be willing to work with him and communicate openly with him. As a result, Mr. Carver's ability to serve as an effective advocate would suffer.

12

The First Amendment privilege protects against these kinds of disclosures that "would have the practical effects of discouraging political association and inhibiting internal ... communications that are essential to effective association and expression." *Perry*, 591 F.3d at 1163; *see also Curling*, 2021 WL 5162576, at *1-2 (explaining that disclosure would "affect the willingness of legislators, experts, organizations, and voters, to associate with" a party).

Since the deposition would chill Mr. Carver's associational rights, Plaintiffs must show a "compelling need" for his testimony. But as explained previously, Plaintiffs cannot show any need. Mr. Carver's testimony could only be relevant to the intent of the legislature. But his activities and opinions are not relevant to that issue. Even conversations that Mr. Carver might have had with a legislator would have almost no weight in showing the intent of the entire legislature.

### D. At a minimum, any deposition of Mr. Carver should be narrowly limited.

Even if this Court permits the deposition of Mr. Carver to proceed, it can and should limit the scope. *See* Fed. R. Civ. P. 45(d)(3). As previously explained, Mr. Carver's testimony would have little relevance in this case. His activities and thoughts are not relevant to Plaintiffs' claims. His testimony could only be relevant to the intent of the *legislature*. But permitting a wide-ranging deposition would risk questions delving into legal advice given by Mr. Carver and would increase the burden on Mr. Carver while he should be working on his

13

client's case. For this reason, any deposition of Mr. Carver should be narrowly limited to the only potentially relevant information that he might have—communications with Georgia legislators.

## CONCLUSION

For all these reasons, Plaintiffs request that this Court quash the subpoena seeking deposition testimony from Mr. Carver. In the alternative, the subpoena should be modified to limit the deposition to Mr. Carver's communications with Georgia legislators.

Dated: March 16, 2023                    Respectfully submitted,

/s/ Baxter D. Drennon

| | |
|---|---|
| Tyler R. Green* | John E. Hall, Jr. |
| Cameron T. Norris* |   Georgia Bar No. 319090 |
| Gilbert C. Dickey* | William Bradley Carver, Sr. |
| CONSOVOY MCCARTHY PLLC |   Georgia Bar No. 115529 |
| 1600 Wilson Boulevard, Suite 700 | Baxter D. Drennon |
| Arlington, Virginia 22209 |   Georgia Bar No. _____ |
| (703) 243-9423 | Jake Evans |
| |   Georgia Bar No. 797018 |
| Alex Benjamin Kaufman | HALL BOOTH SMITH, P.C. |
| CHALMERS, ADAMS, BACKER & KAUFMAN, LLC | 191 Peachtree Street NE, Suite 2900 |
| 11770 Haynes Bridge Road | Atlanta, Georgia 30303 |
| Ste #G205-219 | (404) 954-5000 |
| Alpharetta, GA 30009 | (404) 954-5020 (Fax) |
| 404-964-5587 | |

*pro hac vice

*Counsel for Intervenors*

14

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

/s/ *Baxter D. Drennon*

## CERTIFICATE OF SERVICE

On March 16, 2023, I e-filed this document on ECF, which will email everyone requiring service.

/s/ *Baxter D. Drennon*

**County of Fulton**     )
                         )
**State of Georgia**     )

### AFFIDAVIT OF WILLIAM BRADLEY CARVER

I am over the age of 18, of sound mind, and have personal knowledge of the facts set out herein:

1. I am a lawyer. I received my law licensed in 1999 after graduating from the University of Georgia School of law. My Georgia Bar No. is 115529. I practice law with the firm Hall Booth Smith, P.C.

2. On or about January 11, 2020, Hall Booth Smith, P.C. and I were retained by the Georgia Republican Party ("GAGOP") to assist it in providing legal advice related to Georgia's election procedures.

3. Ultimately, as an attorney, I was asked to chair a committee of GAGOP leaders to prepare a package of election proposals for consideration by the Georgia legislature and advocate for those reforms.

4. In order to effectively formulate and advocate for election-reform proposals, it was important for party employees and leaders, as well as legislators, to be able to communicate openly and frankly with me. Because of that, there was an expectation that the communications with me would remain confidential.

5. Based on my experience, this expectation of confidentiality was important to my advocacy for election reforms. Without that expectation, conversations about election reforms would not have been as open—or even have taken place at all. As a result, my testimony about conversations discussing and advocating for election-reform proposals would harm my ability—and the ability of anyone else in a similar position—to advocate for policy

changes. Without the expectation that conversations will remain confidential party leaders, party employees, and legislators will be less likely to discuss policies openly or even to have policy conversations at all.

6. Further, as a part of my association with the GAGOP and related entities, I have been the target of harassment designed to have an adverse impact on associational rights.

7. For example, a bar complaint was filed against me but unanimously dismissed. That process—which should have been a confidential—was leaked to the press in an effort to discredit me or otherwise harm my career.

8. My testimony about my work on behalf of GAGOP would risk further attempts at harassment because of that work and my association with GAGOP. That risk applies not only to me but also to the GAGOP, its current members, and future political activities.

FURTHER AFFIANT SAYETH NOT.

_____
WILLIAM BRADLEY CARVER

DATED this 16th day of March, 2023.

Subscribed to and sworn before me, this 16th day of March, 2023.

_____
NOTARY PUBLIC

My Commission Expires:

1-22-2026