# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Turtle Mountain Band of Chippewa Indians, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:22-cv-22 |
| vs. | ) ) | **ORDER** |
| Alvin Jaeger, in his Official Capacity as Secretary of State of North Dakota, et al., | ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Charles Walen, an individual, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| Doug Burgum, in his official capacity as Governor of the State of North Dakota, et al., | ) ) ) ) | Case No. 1:22-cv-31 |
| Defendants, | ) ) | **ORDER** |
| and | ) ) | |
| Mandan, Hidatsa, & Arikara Nation, et al., | ) ) | |
| Defendant-Intervenors . | ) | |

In the above-captioned cases, the Turtle Mountain Band of Chippewa Indians (Turtle Mountain Band) and Mandan, Hidatsa, & Arikara Nation (MHA Nation) subpoenaed members of North Dakota's Legislative Assembly to appear at depositions and testify about recent redistricting legislation. North Dakota's Legislative Assembly, a

non-party, moved to quash the subpoenas on the basis of the state legislative privilege. For the reasons discussed below, the court denies the motions.

## Background

On November 10, 2021, the North Dakota Legislative Assembly passed House Bill No. 1504, which altered the state's legislative districts. H.B. 1504, 67th Leg., Spec. Sess. (N.D. 2021). Governor Doug Burgum signed the bill into law the following day. Id. Before the redistricting legislation, voters in North Dakota's 47 legislative districts elected one state senator and two representatives at-large. The redistricting legislation retained that procedure for 45 of the 47 districts. (Walen, Doc. 12-1).

Districts 4 and 9 are now different from the other 45 districts. Those two districts were subdivided into single-representative districts, labeled House District 4A, 4B, 9A, and 9B. Id. Voters in each of these subdivided districts elect one senator and one representative, instead of one senator and two representatives at-large. House District 4A traces the boundaries of the Fort Berthold Reservation of the MHA Nation. House District 9A contains most of the Turtle Mountain Indian Reservation, with the remainder in House District 9B. The Spirit Lake Nation, which is located near the Turtle Mountain Reservation and a plaintiff in Turtle Mountain, is in the undivided District 15. Id. at Doc. 19-3, pp. 2-4).

In February 2022, complaints in the above-captioned cases were filed. Both sets of plaintiffs argue the redistricting plan is an illegal racial gerrymander. The Turtle Mountain plaintiffs allege a violation of the Voting Rights Act, asserting the redistricting plan simultaneously "packs" some Native American voters in subdivided districts and "cracks" others across divided and undivided districts. (Turtle Mountain, Doc. 1, p. 30).

2

The Walen plaintiffs allege a violation of the Equal Protection Clause, asserting race was the predominate factor behind the redistricting legislation. (Walen, Doc. 1, p. 9).

The Walen plaintiffs moved for a preliminary injunction. A three-judge panel held a hearing on that motion in May 2022. Id. at Doc. 36. State Representative Terry Jones—who the MHA Nation has now subpoenaed—testified at the hearing. See id. at Doc. 58-1. The three-judge panel denied the motion for a preliminary injunction on May 26, 2022. Id. at Doc. 37. The Turtle Mountain defendants brought a motion to dismiss for failure to state a claim and lack of jurisdiction. (Turtle Mountain, Doc. 17). The presiding district judge denied that motion on July 7, 2022. Id. at Doc. 30.

Both cases proceeded to discovery. In November 2022, the Turtle Mountain Band (plaintiffs in Turtle Mountain) and the MHA Nation (defendant-intervenors in Walen) served subpoenas on two state representatives to testify at depositions.[1] The Turtle Mountain Band subpoenaed Representative William Devlin, who served as chair of the redistricting committee when the challenged legislation was passed. Id. at Doc. 38. The MHA Nation subpoenaed Representative Terry Jones, who represented one of the districts altered by the challenged legislation and who testified at legislative hearings and at the preliminary injunction hearing. (Walen, Doc. 53, p. 1).

North Dakota's Legislative Assembly, Representative Devlin, and Representative Jones (together, "the Assembly") moved to quash the subpoenas in both cases on the

---

[1] In both cases, subpoenas were also served for production of documents. The Assembly does not challenge those subpoenas in its motion but notes it has conveyed its objections to plaintiffs. (Turtle Mountain, Doc. 38, p. 7 n.3).

3

basis of the legislative privilege.[2] (Walen, Doc. 52; Turtle Mountain, Doc. 37). The Turtle Mountain Band and MHA Nation (together, "the Tribes") filed a response in their respective cases, and the Assembly filed replies. (Walen, Doc. 58; Doc. 65; Turtle Mountain, Doc. 41; Doc. 45).[3] The Tribes filed a notice of supplemental evidence in Walen, together with transcripts of depositions of the two plaintiffs. (Walen, Doc. 71).

## Law and Discussion

Federal Rule of Civil Procedure 45 provides a court must "quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter." The Assembly argues this court should quash the subpoenas because the legislative privilege prohibits state legislators from being compelled to testify about their legislative activities. (Doc. 38). The Tribes do not dispute that, if applicable, the state legislative privilege would cover the representatives' testimony. Rather, the Tribes contend the privilege is overridden by the circumstances of this case. (Doc. 41). Because these cases involve federal claims, privileges are governed by federal common law unless a rule prescribed by the Supreme Court, a federal statute, or the United States Constitution provides otherwise. See Fed. R. Evid. 501.

The primary dispute is under what circumstances—if any—the state legislative privilege yields to countervailing interests. "This is a thorny issue." League of Women Voters of Fla., Inc. v. Lee, 340 F.R.D. 446, 455 (N.D. Fla. 2021). "[T]he Supreme Court has not set forth the circumstances under which the privilege must yield to the need for

---

[2] The Assembly also asserts the subpoenas should be quashed on the basis of the attorney-client privilege. (Turtle Mountain, Doc. 38, p. 16). For reasons discussed in this order, quashing the subpoenas on that basis would be premature.

[3] The briefs in both cases are similar. Unless otherwise indicated, the court will hereinafter cite only to the briefs filed in Turtle Mountain.

4

a decision maker's testimony." <u>Lee v. City of L.A.</u>, 908 F.3d 1175, 1187 (9th Cir. 2018).
Nor has the Eighth Circuit addressed the question. And other federal courts are split
about the strength of the privilege. <u>See e.g.</u>, <u>Bethune-Hill v. Va. State Bd. of Elections</u>,
114 F. Supp. 3d 323, 335 (E.D. Va. 2015).

One point of agreement is that the state legislative privilege is different in source
and purpose from its federal counterpart. These differences are important and make
"determining whether a state legislator is entitled to invoke legislative privilege in
federal court . . . not as simple as it would be . . . if the legislator were a member of
Congress." <u>Jackson Mun. Airport Auth. v. Bryant</u>, No. 3:16-CV-246, 2017 WL 6520967,
at *3 (S.D. Miss. Dec. 19, 2017). To understand this contrast, the court turns to the
legislative privilege afforded to federal lawmakers.

**1.    The Constitutional Federal Legislative Privilege**

The legislative privilege for federal lawmakers is explicit in the United States
Constitution. The federal Speech and Debate Clause, found in Article I, Section VI of the
Constitution, provides that "for any Speech or Debate in either House, they [Members of
Congress] shall not be questioned in any other Place." With roots in the English Bill of
Rights of 1689, "the central role of the Clause is to prevent intimidation of legislators by
the Executive and accountability before a possibly hostile judiciary." <u>Eastland v. U.S.
Servicemen's Fund</u>, 421 U.S. 491, 502 (1975) (internal quotation marks omitted). The
Clause also guards against the potential for litigation to "delay and disrupt the legislative
function." <u>Id.</u> at 503.

To effectuate these purposes, the Supreme Court has interpreted the Clause as
providing federal lawmakers with both immunity from liability and an evidentiary

privilege.[4] See Am. Trucking Ass'ns, Inc. v. Alviti, 14 F.4th 76, 86 (1st Cir. 2021). Legislative immunity shields federal lawmakers from criminal and civil liability for legislative activities "such as the production of committee reports, the passage of resolutions, and the act of voting." Bethune-Hill, 114 F. Supp. 3d at 331. Legislative privilege relieves federal lawmakers from "the burden of defending" themselves and protects against, among other things, "the use of compulsory process to elicit testimony from federal legislators . . . with respect to their legislative activities." Id. at 332. These protections are absolute. If the lawmaker's activity is "within the legitimate legislative sphere," then "balancing plays no part" and the federal lawmakers' protection applies. Eastland, 421 U.S. at 510 n.16.

## 2. The Common Law State Legislative Privilege

The legislative privilege for state lawmakers "stand[s] on different footing." Am. Trucking, 14 F.4th at 87. The federal Speech and Debate Clause "by its terms" only applies to federal legislators; the state legislative privilege is not derived from the same source as the federal privilege. See United States v. Gillock, 445 U.S. 360, 374 (1980). What is more, the Supreme Court has rejected the argument that "our constitutional structure" compels the existence of a state legislative privilege on par with its federal counterpart. Id. at 366.

Without federal constitutional status, federal courts apply the state legislative privilege as a matter of federal common law. Id. at 374. In addressing a privilege under

---

[4] Some cases speak of only a legislative "privilege" to refer to both immunity from liability and an evidentiary privilege. See e.g., Tenney v. Brandhove, 341 U.S. 367, 372 (1951). This court separates the two concepts—immunity refers to protections against liability and privilege refers to evidentiary protections. See Am. Trucking, 14 F.4th at 86 (doing the same).

6

the federal common law, the court begins with Federal Rule of Evidence 501. See id. Rule 501 "authorizes federal courts to define new privileges by interpreting 'common law principles . . . in the light of reason and experience.'" Jaffee v. Redmond, 518 U.S. 1, 8 (1996) (citation omitted).

Defining a privilege under Rule 501 proceeds in two steps: "[F]irst [determining] whether 'reason and experience' justify recognizing a privilege at all, and if so whether the privilege should be qualified or absolute and whether it should cover the communications at issue in this case." In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141, 1168 (D.C. Cir. 2006) (Tatel, J., concurring). "By insisting on a two-step process, courts guide their discretion with rules developed from accumulated wisdom about the situations that justify a privilege." In re Grand Jury, 821 F.2d 946, 955 (3d Cir. 1987).

### 3. Recognition of a State Legislative Privilege

Whether to recognize a privilege depends upon a "broad-based view of how the privilege will work in general." Id. Factors traditionally considered are whether the privilege would serve significant private and public interests, the evidentiary benefit that would result from rejection of the privilege, and the policy decisions of the states. See Jaffee, 518 U.S. at 10-12.

As the Assembly points out, Article 4, Section 15 of the North Dakota Constitution contains a clause that reads, "Members of the legislative assembly may not be questioned in any other place for any words used in any speech or debate in legislative proceedings." A state's recognition of a privilege "indicates that 'reason and experience'" support its recognition in federal court. Id. at 13 (citation omitted).

7

The only Supreme Court case to address the state legislative privilege, Gillock, declined to recognize the privilege under Rule 501 in a federal criminal proceeding. 445 U.S. at 373. There, a state legislator, Gillock, was charged by federal prosecutors with bribery for accepting money in exchange for supporting certain legislation. Id. at 362. The issue was whether Gillock's legislative acts—his introduction of certain legislation and statements he made on the floor of the state senate, among others—could be introduced at trial as evidence against him. Id. at 365. Gillock argued for a state legislative privilege on par with the privilege granted to federal lawmakers through the Speech and Debate Clause.

In Gillock, the Supreme Court began its analysis by looking to the "language and legislative history of Rule 501." Id. at 367. The court noted the state legislative privilege was not one of the nine privileges enumerated in the Judicial Conference's original draft of Rule 501. Id. Though not dispositive, the state legislative privilege's omission from the draft suggested "that the claimed privilege was not thought to be either indelibly ensconced in our common law or an imperative of federalism." Id. at 368.

Next, the Supreme Court contrasted the purposes of the state legislative privilege with those of the federal Speech and Debate Clause. The federal Speech and Debate Clause has two interrelated purposes: to avoid intrusion by the Executive and Judiciary into the affairs of a coequal branch and to avoid disruption of the legislative process. Id. at 369. The first, separation-of-powers rationale, "[gave] no support to the grant of a privilege to state legislators in federal criminal prosecutions." Id. at 370. The court stated, "[U]nder our federal structure, we do not have the struggles for power between the federal and state systems [that] inspired the need for the Speech or Debate Clause as a restraint on the Federal Executive to protect federal legislators." Id. As to the second

rationale, disruption of the legislative process, the court recognized that "denial of a privilege to a state legislator may have some minimal impact on the exercise of his legislative function" but that impact was offset "when balanced against the need of enforcing federal criminal statutes." <u>Id.</u> at 373.

Ultimately, the court found "although principles of comity command careful consideration, our cases disclose that where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." <u>Id.</u> The court concluded, "We believe that recognition of an evidentiary privilege for state legislators for their legislative acts would impair the legitimate interest of the Federal Government in enforcing its criminal statutes with only speculative benefit to the state legislative process." <u>Id.</u> In sum, <u>Gillock</u> held there was no state legislative privilege in federal criminal proceedings. The Supreme Court did not "recognize" the privilege under Rule 501. <u>See e.g.</u>, <u>Jaffee</u>, 518 U.S. at 14 ("In <u>United States v. Gillock</u> . . . our holding that Rule 501 did not include a state legislative privilege relied, in part, on the fact that no such privilege was included in the Advisory Committee's draft.").

<u>Gillock</u>'s holding was limited to federal criminal proceedings, but the Assembly and the Tribes here both presume existence of a state legislative privilege in federal civil cases. There is well-developed case law recognizing legislative immunity in civil cases. <u>See</u> <u>Tenney</u>, 341 U.S. at 369; <u>Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency</u>, 440 U.S. 391 (1979); <u>Bogan v. Scott-Harris</u>, 523 U.S. 44 (1998). Courts often find that from this civil immunity "springs a limited legislative privilege against supplying evidence, including testimony." <u>Kay v. City of Rancho Palos Verdes</u>, No. CV 02-03922, 2003 WL 25294710, at *9 (C.D. Cal. Oct. 10, 2003). Though the Supreme Court has never explicitly recognized the state legislative privilege under Rule 501, it has suggested such

9

a privilege would be available in civil cases. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 268 (1977) ("In some extraordinary instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege."). Because the Assembly and the Tribes do not argue otherwise, the court recognizes a state legislative privilege in federal civil cases.

**4.       Strength of a State Legislative Privilege**

Having recognized a state legislative privilege in federal civil cases, the court now considers "whether the privilege should be qualified or absolute and whether it should cover the communications at issue in this case." In re Grand Jury Subpoena, Judith Miller, 438 F.3d at 1168. The Assembly and the Tribes agree the state legislative privilege is qualified rather than absolute. (Doc. 41, p. 1; Doc. 45, p. 4). Used here, a qualified privilege simply means one that "may be overcome by an appropriate showing." See In re Grand Jury Subpoena, Judith Miller, 438 F.3d at 1150. The Assembly and the Tribes, however, assert different interpretations of how the state legislative privilege is qualified.

The Tribes argue the state legislative privilege is qualified in a manner similar to the deliberative process privilege, advocating for balance of their need for evidence against the Assembly's interest in non-disclosure. (Doc. 41, p. 2). The Assembly argues no such balancing is warranted, asserting the state legislative privilege includes categorical exceptions and none of those exceptions apply here. (Doc. 45, p. 4). Both the Assembly and the Tribes marshal extensive case law in support of their respective positions.

10

## A.    The Assembly's Argument

The Assembly relies on four cases that emphasize <u>Gillock</u>'s conclusion that "where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." 445 U.S. at 373. These cases ask a threshold question of whether there are "important federal interests" at stake and generally contrast the weightier federal interests in criminal prosecutions, like in <u>Gillock</u>, with the lesser-federal interests in private civil cases.

In the most recent of those cases, <u>American Trucking</u>, trucking companies and other private parties brought a Dormant Commerce Clause challenge to a Rhode Island law that authorized tolls on bridges and roads within the state. 14 F.4th at 81. The trucking companies sought to depose members of the state legislature on the theory that law was passed with a purpose of discriminating against out of state businesses. <u>Id.</u> at 82. The First Circuit Court of Appeals quashed the subpoenas on the basis of state legislative privilege. The court began its analysis by citing <u>Gillock</u> for the proposition that "federal courts will often sustain assertions of legislative privilege by state legislatures except when important federal interests are at stake, such as in a federal criminal prosecution." <u>Id.</u> at 87. The court then noted, "We have before us neither a federal criminal case nor a civil case in which the federal government is a party." <u>Id.</u> at 88. In addition, the court stated the private plaintiffs' case did not "implicate important federal interests" by seeking to enforce the Dormant Commerce Clause because were "a mere assertion of a federal claim sufficient[,] . . . the privilege would be pretty much unavailable largely whenever it is needed." <u>Id.</u> Finally, the court noted "the need for the discovery requested here is simply too little to justify such a breach of comity." <u>Id.</u> at 90.

11

In another case on which the Assembly relies, In Re Hubbard, an Alabama teachers union subpoenaed members of the state legislature for documents related to legislation the union claimed was in retaliation for its members exercise of their First Amendment rights. 803 F.3d 1298 (11th Cir. 2015). The Eleventh Circuit quashed the subpoenas on the basis of the state legislative privilege. As in American Trucking, the court began its analysis by stating "a state lawmaker's legislative privilege must yield in some circumstances where necessary to vindicate important federal interests such as the enforcement of federal criminal statutes." Id. at 1311 (internal quotation marks omitted). The court then discussed the "fundamental difference between civil actions by private plaintiffs and criminal prosecutions by the federal government." Id. at 1312. In the end, the court held the plaintiffs' claim was not cognizable under the First Amendment and therefore did not implicate an important federal interest.[5] Id. at 1315.

Two cases the Assembly cited address claims brought under the Equal Protection Clause and the Voting Rights Act. In Florida v. United States, the court denied motions to compel depositions of state legislators in proceedings related to federal preclearance of legislation under the Voting Rights Act. 886 F. Supp. 2d 1301, 1302 (N.D. Fla. 2012). At that time, section 5 of the Voting Rights Act required covered jurisdictions to obtain federal preclearance from the federal government by proving that a change in their voting procedures had neither the purpose nor the effect of denying or abridging the

---

[5] The In Re Hubbard court emphasized the limited nature of its holding: "Our decision should not be read as deciding whether, and to what extent, the legislative privilege would apply to a subpoena in a private civil action based on a different kind of constitutional claim than the one [plaintiffs] made here." 803 F.3d at 1312 n.13.

right to vote on account of race.[6] The court recognized "a state legislator's privilege is qualified, not absolute," but determined

> there is no reason not to recognize the privilege here. Voting Rights Act cases are important, but so are equal-protection challenges to many other state laws, and there is nothing unique about the issues of legislative purpose and privilege in Voting Rights Act cases.

Id. at 1304.

In Lee, the plaintiffs brought an Equal Protection challenge to Los Angeles's redistricting of city council districts. 908 F.3d at 1179. The Ninth Circuit upheld protective orders prohibiting depositions of city officials on the basis of the state legislative privilege. The court recognized that "although the Supreme Court has not set forth the circumstances under which the privilege must yield to the need for a decision maker's testimony, it has repeatedly stressed that 'judicial inquiries into legislative or executive motivation represent a substantial intrusion.'" Id. at 1187 (citation omitted). The court then concluded "the factual record falls short of justifying the 'substantial intrusion' into the legislative process." Id. at 1188. The court also rejected the plaintiffs' "call for a categorial exception whenever a constitution claim implicates the government's intent" because "that exception would render the privilege of little value." Id.

Drawing on these cases, the Assembly argues the state legislative privilege is "qualified" only in the sense that it does not apply to federal criminal proceedings but otherwise stands as an "absolute bar to deposition testimony of local lawmakers in a racial gerrymandering case." (Doc. 45, p. 4). According to the Assembly, "[A] private

---

[6] That section of the Voting Rights Act was later held unconstitutional by the Supreme Court. See Shelby Cnty., Ala. v. Holder, 570 U.S. 529, 537 (2013).

lawsuit attacking a legislative action does not invoke the incredibly limited exceptions to a state lawmaker's legislative privilege." (Doc. 38, p. 8). Even if the state legislative privilege might yield in civil cases where important federal interests are at stake, the Assembly contends this case does not present sufficient federal interests and the Tribes have not shown sufficient need for the evidence they seek. Id. at 15.

### B.     The Tribes' Argument

The Tribes argue this court should apply a five-factor test imported from the deliberative process privilege context to determine when the state legislative privilege must yield to a need for evidence. (Doc. 41, p. 3). Those factors are (a) the relevance of the evidence sought to be protected, (b) the availability of other evidence, (c) the seriousness of the litigation and the issues involved, (d) the role of government in the litigation, and (e) the purposes of the privilege. Bethune-Hill, 114 F. Supp. 3d at 338. Several federal district courts, predominantly in redistricting cases, have applied this five-factor balancing test, or a similar test, to assess whether a need for evidence overrides the state legislative privilege. See S.C. State Conf. of NAACP v. McMaster, 584 F. Supp. 3d 152, 163 (D.S.C. 2022); League of Women Voters, 340 F.R.D. at 456; Benisek v. Lamone, 263 F. Supp. 3d 551, 553 (D. Md. 2017), aff'd, 241 F. Supp. 3d 566 (D. Md. 2017); Bethune-Hill, 114 F. Supp. 3d at 332; Doe v. Nebraska, 788 F. Supp. 2d 975, 985 (D. Neb. 2011); Rodriguez v. Pataki, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003), aff'd, 293 F. Supp. 2d 302 (S.D.N.Y. 2003).

In South Carolina State Conference of NAACP, for example, the plaintiffs alleged South Carolina redistricting legislation violated the Fourteenth Amendment and brought a motion to compel discovery and depositions from several state legislators. 584 F. Supp. at 157. The state legislators asserted legislative privilege. The court interpreted

<u>Gillock</u> as rejecting the proposition that a state legislator's evidentiary privilege is "co-extensive" with their immunity from liability. <u>Id.</u> at 161. Rather, the court determined the "privilege is not without limit," rejected a sharp line between criminal and civil cases, and determined that when "constitutionally rooted public rights are at stake, legislative evidentiary privileges must yield." <u>Id.</u> at 162. The court applied the five-factor test to "balance the substantial interests at issue" and concluded the plaintiffs' need for evidence overcame the privilege and permitted discovery, including depositions of state legislators. <u>Id.</u> at 163, 166.

In this court's opinion, it is appropriate to apply the five-factor test the Tribes propose. Nearly all cases to consider the issue, including those cited by the Assembly, recognize the state legislative privilege as qualified. <u>See e.g.</u>, <u>Florida</u>, 886 F. Supp. 2d at 1303 ("To be sure, a state legislator's privilege is qualified."). And this court does not read <u>Gillock</u>'s rejection of the state legislative privilege in federal criminal proceedings as establishing an absolute privilege in civil cases.[7] <u>Gillock</u> does not address the contours of the state legislative privilege in civil cases. Rather, several courts have looked to the deliberative process privilege, which applies to the executive branch, to inform the contours of the state legislative privilege. <u>See</u> <u>In re Grand Jury</u>, 821 F.2d at 959 n.8 ("[S]ubpoenas directed at executive agencies arouse less direct concerns about

---

[7] If anything, <u>Gillock</u> cuts against recognition of a strong state legislative privilege. <u>See</u> <u>In re Grand Jury</u>, 821 F.2d at 958 (holding the state legislative privilege is similar to the deliberative process privilege); <u>see also</u> <u>Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections</u>, No. 11 C 5065, 2011 WL 4837508, at *6 (N.D. Ill. Oct. 12, 2011) ("Since <u>Gillock</u>, a number of courts have rejected the notion that the common law immunity of state legislators gives rise to a general evidentiary privilege.").

separation of powers than subpoenas directed . . . at Congress . . . and therefore provide a more useful model for a privilege mediating federal/state relations."); see also Doe, 788 F. Supp. 2d at 984 (collecting cases).

This court will balance, as with other qualified privileges, "the interests of the party seeking the evidence against the interests of the individual claiming the privilege." Favors v. Cuomo, 285 F.R.D. 187, 209 (E.D.N.Y. 2012). In applying the five-factor test, the court recognizes only in an "extraordinary instance" will testimony of a state legislator not "be barred by privilege." See Arlington Heights, 429 U.S. at 268.

5.    **Application of the Five Factor Balancing Test**

The five-factors described above provide an "analytical framework to balance the substantial interests at issue." S.C. State Conf. of NAACP, 584 F. Supp. 3d at 163. If the balance of interests weighs in favor of non-disclosure, the state legislative privilege shields Representatives Devlin and Jones from providing testimony about their legislative acts and the subpoenas will be quashed. If, on the other hand, the balance of interests weighs in favor of disclosure, the Tribes' need for evidence outweighs the state legislative privilege and the court will decline to quash the subpoenas.

   A.    **Relevance of the Evidence Sought**

The Assembly argues that testimony from a single legislator does not shed light on whether the legislation at issue was passed with a discriminatory purpose. (Doc. 38, p. 13). Further, the Assembly argues, even if such testimony would be relevant, the representatives subpoenaed in these cases have no relevant testimony to provide. Id. The Tribes contend "information related to the purpose and circumstances of the plan's adoption are . . . relevant to the totality of circumstance factors courts consider in Section 2 litigation." (Doc. 41).

16

"[P]roof of a legislative body's discriminatory intent is relevant and extremely important as direct evidence." See Bethune-Hill, 114 F. Supp. 3d at 339. Of course, "the motivations of individual legislators in supporting a particular law are not necessarily representative of those of the entire Legislature." S.C. State Conf. of NAACP, 584 F. Supp. 3d at 163. But that does not mean individual motivations "cannot constitute an important part of the case presented against, or in favor of, the districting plan." Bethune-Hill, 114 F. Supp. 3d at 340. Other courts to consider this issue in redistricting cases have determined similar evidence to be relevant. See League of Women Voters, 340 F.R.D. at 457. Further, Representative Jones's extensive testimony at the preliminary injunction hearing in Walen cuts against the notion that his testimony would now be irrelevant. This factor weighs in favor of disclosure.[8]

## B.     Availability of Other Evidence

The Assembly points to publicly available evidence, including the "agendas, minutes, and video documentation" of the redistricting committee's meetings. (Doc. 38, p. 13 n.13). In addition to seeking testimony, the Tribes have subpoenaed Representatives Devlin and Jones for production of documents relating to the redistricting legislation. (Doc. 38-2). The Assembly indicates it has objected to that request but does not challenge it here. (Doc. 38, p. 7 n.3). The Tribes contend that while

---

[8] The Assembly argues the Tribes have not made a threshold showing of relevance under Rule 26. (Doc. 45, pp. 2-3). "The scope of permissible discovery is broader than the scope of admissibility." Kampfe v. Petsmart, Inc., 304 F.R.D. 554, 557 (N.D. Iowa 2015). "Discovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case." Id. For the same reasons this factor weighs in favor of disclosure, the court finds the representatives' testimony meets the standard of Rule 26 relevancy.

circumstantial evidence may be available, parties in a redistricting litigation "need not confine their proof to circumstantial evidence alone." (Doc. 41, p. 3).

In general, "the availability of alternate evidence will only supplement—not supplant—the evidence sought by the Plaintiffs." Bethune-Hill, 114 F. Supp. 3d at 341. The Assembly might produce the Tribes' requested documents without court involvement. The court is unaware of the extent of the discovery produced to date and thus unable to assess the other evidence available. This factor weighs in favor of neither disclosure nor non-disclosure.

### C.     Seriousness of the Litigation

"All litigation is serious. But . . . voting-rights litigation is especially serious." League of Women Voters, 340 F.R.D. at 457. "[T]he right to vote and the rights conferred by the Equal Protection Clause are of cardinal importance." Page v. Va. State Bd. of Elections, 15 F. Supp. 3d 657, 667 (E.D. Va. 2014). Moreover, "[i]n redistricting cases, . . . the natural corrective mechanisms built into our republican system of government offer little check upon the very real threat of legislative self-entrenchment." See Bethune-Hill, 114 F. Supp. 3d at 337 (citation and internal quotation marks omitted). The court recognizes the Assembly cites cases that do not distinguish redistricting claims from other federal claims. See e.g., Florida, 886 F. Supp. 2d at 1304 ("[T]here is nothing unique about the issues of legislative purpose and privilege in Voting Rights Act cases."). But other courts to consider the matter have found the claims at issue in redistricting "counsel in favor of allowing discovery." Favors, 285 F.R.D. 187, 219; see also S.C. State Conf. of NAACP, 584 F. Supp. 3d at 165. This court agrees and therefore finds this factor weighs in favor of disclosure.

### D.      The Role of the Legislature

This factor considers whether the legislature as an entity, rather than individual legislators, is the focus of the litigation. See Bethune-Hill, 114 F. Supp. 3d at 341. If so, then an individual legislator's "immunity is not under threat, [and] application of the legislative privilege may be tempered." Id. "This is not a case where individual legislators are targeted by a private plaintiff seeking damages." S.C. State Conf. of NAACP, 584 F. Supp. 3d at 165. Because no individual legislator is threatened with individual liability in this case, this factors weighs in favor of disclosure.

### E.      Purpose of the Privilege

The purpose of the state legislative privilege is to ensure litigation does not "delay and disrupt the legislative function." Eastland, 421 U.S. at 502. The court recognizes a subpoena for a deposition may be more burdensome than a subpoena for documents, and the threat of disruption to the legislative process is "not one to be taken lightly." See Bethune-Hill, 114 F. Supp. 3d at 342. "[T]he need to encourage frank and honest discussion among lawmakers favors nondisclosure." League of Women Voters, 340 F.R.D. at 458 (internal quotation marks and citation omitted). Accordingly, this factor weighs against disclosure.

### F.      Balancing of the Factors

Having considered each of the five factors, the court finds the Tribes' need for evidence outweighs the Assembly's interest of non-disclosure. The court will therefore decline to quash the subpoenas on the basis of the state legislative privilege.

## 6.      Waiver of Representative Jones's Legislative Privilege

The Walen plaintiffs argue Representative Jones waived any legislative privilege by testifying about his legislative activities at the preliminary injunction hearing.

19

(<u>Walen</u>, Doc. 58, p. 4). "[T]he legislative privilege can be waived when the parties holding the privilege share their communications with an outsider." <u>Comm. for a Fair & Balanced Map</u>, 2011 WL 4837508, at *10. "[T]he waiver of the privilege need not be . . . explicit and unequivocal, and may occur either in the course of the litigation when a party testifies as to otherwise privileged matters, or when purportedly privileged communications are shared with outsiders." <u>Favors</u>, 285 F.R.D. 187, 211-12.

During the preliminary injunction hearing, Representative Jones testified at length about the development of the challenged legislation. (<u>Walen</u>, Doc. 58-1). He testified about his motivations, his conversations with other legislators, staff, outside advisors, and attorneys, and the work of the redistricting committee. <u>See</u> <u>id.</u> Thus, even if Representative Jones would have been protected by the state legislative privilege, the privilege was waived by his testimony at the preliminary injunction hearing.

### 7. Attorney-Client Privilege

The Assembly also asserts the Tribes' subpoena should be quashed because the Tribes' purpose is to inquire about conversations between the Assembly's members and Legislative Council staff attorneys.[9] (Doc. 38, p. 16).

The attorney-client privilege protects "confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client." <u>United States v. Yielding</u>, 657 F.3d 688, 707 (8th Cir. 2011). This includes

---

[9] North Dakota's Legislative Council performs a wide variety of duties for the Assembly, including research, bill drafting, and providing legal advice, and its staff consists of attorneys and non-attorneys. <u>See</u> N.D. Legislative Branch, https://www.ndlegis.gov/legislative-council (last visited Dec. 22, 2022). Depending on the nature of the communication, conversations between legislators and Legislative Council staff attorneys who provide legal advice could be protected by the attorney-client privilege.

communications between government officials and government attorneys. See United States v. Jicarilla Apache Nation, 564 U.S. 162, 169 (2011) ("The objectives of the attorney-client privilege apply to governmental clients."). Applying the attorney-client privilege to government officials encourages "governmental attorneys to respond with frank, candid advice." North Dakota v. United States, 64 F. Supp. 3d 1314, 1342 (D.N.D. 2014). That said, to be protected by the privilege, the communications must be for legal, as opposed to policy, advice. See e.g., In re Cnty. of Erie, 473 F.3d 413, 420 (2d Cir. 2007).

The record does not demonstrate that the Tribes will seek information about conversations between legislators and Legislative Council staff attorneys during the deposition. The court will therefore decline to quash the Tribes' subpoenas on this basis.

The Walen plaintiffs also contend Representative Jones waived his attorney-client privilege by testifying about his conversations with outside redistricting counsel and a Legislative Council staff attorney. (See Walen, Doc. 58-1, pp. 31, 33, 36). It appears most of these conversations, which occurred during public redistricting committee meetings, would not be privileged because they were not confidential. See id. at 31, 33. In his testimony, Representative Jones mentioned a private conversation with a Legislative Council staff attorney but did not provide enough to detail to allow the court to evaluate whether the communication would be protected under the attorney-client privilege. See id. at 36. Accordingly, the court cannot determine whether Representative Jones has waived the attorney-client privilege as to that communication.

## Conclusion

Representatives Devlin and Jones are, in general, protected from providing compelled testimony about their legislative acts by a state legislative privilege. This

privilege is recognized under Rule 501 and applied as a matter of federal common law. The privilege is qualified, not absolute, meaning it must yield when outweighed by countervailing interests. Applying a five-factor balancing test, the court finds the representatives' state legislative privilege is outweighed by the Tribes' need for evidence. Even if the representatives were protected by the privilege, Representative Jones waived any privilege by providing extensive testimony at the preliminary injunction hearing in <u>Walen</u>. For those reasons, the motions to quash the Tribes' subpoenas are **DENIED**.

        **IT IS SO ORDERED**.

        Dated this 22nd day of December, 2022.

                                     */s/ Alice R. Senechal*

                                     Alice R. Senechal
                                     United States Magistrate Judge