# Exhibit E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Turtle Mountain Band of Chippewa Indians, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:22-cv-22 |
| vs. | ) ) | **ORDER** |
| Michael Howe, in his Official Capacity as Secretary of State of North Dakota, et al., | ) ) ) ) | |
| Defendants. | ) | |

The Turtle Mountain Band of Chippewa Indians and other plaintiffs (hereafter Turtle Mountain) subpoenaed six current and former members of North Dakota's Legislative Assembly and a former Legislative Council staff attorney to produce documents about recent redistricting legislation.[1] The subpoenaed legislators, each of whom was identified by defendants as possessing relevant information, objected on several grounds. Turtle Mountain now moves to enforce the subpoenas. (Doc. 47). The six legislators (hereafter Respondents) filed a brief opposing the motion. (Doc. 50). The subpoenaed attorney has not responded to the motion, though Respondents' brief includes argument on her behalf. Id. at 17-19.

## Background

On November 10, 2021, the North Dakota Legislative Assembly passed House Bill No. 1504, which altered the state's legislative districts. H.B. 1504, 67th Leg., Spec. Sess. (N.D. 2021). Governor Doug Burgum signed the bill into law the following day. Id.

---

[1] The subpoenaed attorney no longer works with the Legislative Council but is now Deputy Attorney General. Five of the six subpoenaed legislators are no longer serving in the legislature.

Before the redistricting legislation, voters in North Dakota's 47 legislative districts elected one state senator and two representatives at-large. The redistricting legislation retained that procedure for 45 of the 47 districts. (Doc. 1, p. 2).

Districts 4 and 9 are now different from the other 45 districts. Those two districts were subdivided into single-representative districts, denominated House Districts 4A, 4B, 9A, and 9B. Voters in each of these subdivided districts now elect one senator and one representative, instead of one senator and two representatives at-large. House District 4A traces the boundaries of the Fort Berthold Reservation of the Mandan, Hidatsa, and Arikara Nation. House District 9A encompasses most of the Turtle Mountain Indian Reservation, with the remainder of that reservation in House District 9B. The Spirit Lake Nation, which is located near the Turtle Mountain Reservation, is in undivided District 15. Id.

In February 2022, Turtle Mountain filed a complaint alleging violation of the Voting Rights Act. Turtle Mountain asserts the redistricting plan simultaneously "packs" some Native American voters in subdivided districts and "cracks" others across divided and undivided districts. Id. at 30.

In September 2022, Turtle Mountain served third-party document subpoenas on three state senators and three state representatives who had served in the Legislative Assembly when the redistricting plan was adopted and on a former Legislative Council staff attorney. (Doc. 47-8). Initially, Respondents objected on the basis the discovery sought was publicly available, unduly burdensome, and was protected by the deliberative process privilege, state legislative privilege, and the attorney-client privilege. (Doc. 47-2).

In a December 1, 2022 supplemental objection, Respondents produced results of an initial search of their official email accounts, Microsoft Teams accounts, and personal phones for certain keywords like "redistricting," "race," and "Voting Rights Act."[2] The results of the searches are shown on a table indicating the total number of keyword "hits" for each Respondent's communications.[3] Each communication containing a keyword was then classified into one of three categories: (1) communications between the Respondent and another legislator, (2) communications between the Respondent and Legislative Council staff, and (3) communications between the Respondent and an individual who was neither a legislator nor a Legislative Council staff member. The court will refer to an individual who is neither a legislator nor a Legislative Council staff member as a "third party."

There may be multiple keyword "hits" in a single communication. To take one example, the search of a subpoenaed state senator's email found 181 "hits" for the keyword "redistricting" across ten communications between the senator and another legislator, seven communications between the senator and Legislative Council staff, and eight communications between the senator and a third party. (Doc. 47-4, p. 10). The

---

[2] Microsoft Teams is an instant messaging application for organizations. Microsoft, What is Microsoft Teams? https://support.microsoft.com/en-us/topic/what-is-microsoft-teams-3de4d369-0167-8def-b93b-0eb5286d7a29 (last visited Feb. 8, 2023).

[3] Respondents' counsel sent a list of keywords to the Respondents so they could conduct an initial search of their personal phones. Respondents' counsel selected the search terms without input from Turtle Mountain, but Turtle Mountain does not challenge the selection of those terms. In their supplemental objection, Respondents produced the results as to four of the seven individuals and stated that "the search results for the other remaining subpoenaed individuals' personal phones will be relayed as they are received." (Doc. 47-4, p. 4).

court calculated, across all subpoenaed individuals, 64,562 total keyword hits across at most 2,655 communications, with at most 857 communications between a Respondent and a legislator, 1,217 communications between a Respondent and Legislative Council staff, and 558 communications between a Respondent and a third party. (Doc. 47-4; Doc. 50-1).[4]

On December 6, 2022, after Respondents relayed their objections to Turtle Mountain, the parties conferred.[5] Unable to resolve the dispute in conferral, Turtle Mountain moved to enforce its subpoenas on December 22, 2022. (Doc. 47). Respondents filed a response, (Doc. 50), and Turtle Mountain filed a reply, (Doc. 53).[6]

## Law and Discussion

This is the second subpoena compliance dispute raised in this litigation. In November 2022, Turtle Mountain subpoenaed former Representative William Devlin—one of the current respondents—to testify at a deposition. Representative Devlin and the Legislative Assembly moved to quash the subpoena on the basis of the state legislative

---

[4] The court's calculation differs from Turtle Mountain's, (see Doc. 47, p. 4), because the court's calculation includes additional results included in an exhibit to Respondents' responsive brief, while Turtle Mountain's calculations included only Respondents' initial search results, (see Doc. 50-1, p. 2).

[5] Civil Local Rule 37.1 did not require an informal conference with the court before Turtle Mountain moved to enforce its subpoenas because the subpoenas were directed to third parties. Federal Rule of Civil Procedure 45(d)(2)(B)(ii) requires only that the moving party provide notice to the subpoenaed party.

[6] Respondents' brief refers to the court as "magistrate." The correct title is magistrate judge. More than thirty years ago, Congress changed the title "United States Magistrate" to "United States Magistrate Judge." Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990) ("After the enactment of this Act, each United States Magistrate . . . shall be known as a United States Magistrate Judge.").

privilege.[7] In a December 22, 2022 order, the court recognized a qualified state legislative privilege. But, applying a five-factor balancing test, the court determined Turtle Mountain's need for evidence outweighed Representative Devlin's state legislative privilege and therefore declined to quash the subpoena. (Doc. 48). Representative Devlin and the Legislative Assembly appealed the December 22 order; that appeal is pending before the presiding judge. (Doc. 49).

The primary dispute addressed in the December 22 order was whether the legislative privilege could be overcome by Turtle Mountain's need for evidence. (Doc. 48, p. 4). Both parties had agreed Representative Devlin's testimony was subject to the state legislative privilege; the issue was the extent to which the privilege was qualified rather than absolute. Id.

This dispute is different in an important respect; it concerns the scope—not the strength—of the state legislative privilege. Turtle Mountain emphasizes it "do[es] not seek to overcome Respondents' assertion of legislative privilege." (Doc. 53, p. 3). Rather, Turtle Mountain requests Respondents produce only documents where "legislative privilege does not exist or has been waived." Id. at 3. Turtle Mountain contends the state legislative privilege does not protect communications between a subpoenaed individual and a third party. Turtle Mountain also argues former Representative Terry Jones—one of the current respondents—waived his state legislative privilege by testifying at a preliminary injunction hearing in another case concerning the redistricting legislation and thus his communications cannot be withheld on the basis of privilege. Id. at 3-6. As

---

[7] Respondents' brief was filed by the same law firm that represented the Legislative Assembly in the earlier dispute, but the brief is not identified as filed on behalf of the Legislative Assembly.

to communications where privilege may exist and has not been waived, Turtle Mountain requests Respondents produce a privilege log describing withheld documents. Id. at 10-11.

Respondents argue three circuit courts—the First, Ninth, and Eleventh—have held "legislative privilege bars the exact type of discovery the Plaintiffs seek." (Doc. 50, p. 4). Respondents further argue the December 22 order conflicts with the Eighth Circuit policy of giving great weight and precedential value to reasoned decisions of other circuits. Id. This court of course recognizes the importance of giving weight and precedential value to decisions of other circuits. But, as discussed in the December 22 order, none of the three circuit court decisions Respondents cite supports their assertion that the legislative privilege bars any discovery from state legislators in civil cases. And close reading of each of the three cases shows that none involved the "exact type of discovery" Turtle Mountain now requests.

In American Trucking Association, Inc. v. Alviti, the First Circuit recognized a qualified state legislative privilege, subject to an exception when "important federal interests are at stake." 14 F. 4th 76, 87 (1st Cir. 2021). The discovery sought in American Trucking was depositions of state legislators on the theory that a state law was passed with a purpose of discriminating against out-of-state businesses. The First Circuit concluded no important federal interest was at issue. Id. at 88. Here, an important federal interest—the right to vote without racial discrimination—is at issue, and the discovery Turtle Mountain seeks is limited to documents not covered by legislative privilege or as to which any legislative privilege has been waived.

The Ninth Circuit case which Respondents cite challenged a redistricting plan alleging racial considerations predominated in the redistricting process. Lee v. City of

L.A., 908 F.3d 1175 (9th Cir. 2018). Though recognizing there are circumstances in which a legislative privilege must yield to a decision-maker's testimony, the plaintiffs' request for depositions of city officials was denied because of inadequacy of the factual record. Id. at 1188. In the present case, the factual record is adequate to consider Turtle Mountain's motion.

In re Hubbard, like American Trucking, recognized a qualified state legislative privilege but concluded no important federal interest was at stake in the litigation. 803 F.3d 1298, 1313 (11th Cir. 2015). And, unlike the issue presented in this case, the Hubbard court found it was apparent from the face of the document subpoenas that none of the requested information could have been outside the legislative privilege.

Because Respondents are non-parties, Turtle Mountain moves to compel subpoena compliance under Federal Rule of Civil Procedure 45(d)(2)(B)(i). That rule provides "the serving party may move the court for the district where compliance is required for an order compelling production." But, under Rule 45(d)(3)(A), a court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." "A person withholding subpoenaed information under a claim that it is privileged" must "expressly make the claim" and "describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A).

### 1. Communications with Third Parties

The court first considers whether Respondents must produce communications between themselves and third parties. In their objection, Respondents asserted the subpoenaed communications were protected by the state legislative privilege,

7

deliberative process privilege, and attorney-client privilege.[8] (Doc. 47-4, p. 2). Turtle Mountain argues communications between a Respondent and a third party must be produced "because no reasonable claim of privilege exists with respect to communications that involve or were shared with third parties." (Doc. 53, p. 2).

## A.  State Legislative Privilege

The state legislative privilege protects against disclosure of "confidential documents concerning intimate legislative activities." Comm. for a Fair & Balanced Map,  v. Ill. State Bd. of Elections, No. 11 C 5065, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 12, 2011). "[T]he privilege applies to any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." Jackson Mun. Airport Auth. v. Bryant, No. 3:16-CV-246-CWR-FKB, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017). "The privilege therefore also applies to any information that would reveal such opinions and motives." Hall v. Louisiana, No. CIV.A. 12-657-BAJ, 2014 WL 1652791, at *10 (M.D. La. Apr. 23, 2014).

---

[8] Respondents asserted the deliberative process privilege in their initial and supplemental objections, but that privilege is unavailable to legislators. See Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections, No. 11 C 5065, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011). ("[T]he deliberative process privilege applies to the executive branch, not the legislature."). Some courts, including one cited by Respondents in their objection, characterize the state legislative privilege as a type of "deliberative process privilege." See Doe v. Neb., 788 F. Supp. 2d 975, 984 (D. Neb. 2011) ("[T]he only evidentiary legislative privilege regarding the production of documents available to state legislators . . .  is a very narrow and qualified one, sometimes referred to as a 'deliberative process privilege.'"). These courts use "deliberative process privilege" rather than "legislative privilege." See id. But regardless of label, there is only one such privilege potentially available—not two.

"As with any privilege, the legislative privilege can be waived when the parties holding the privilege share their communications with an outsider." Comm. for a Fair & Balanced Map, 2011 WL 4837508, at *9. Even if the subject matter of a communication between a legislator and a third party would otherwise fall within the scope of the state legislative privilege, the legislator's communication with the third party results in waiver of the privilege. See Mich. State A. Philip Randolph Inst. v. Johnson, No. 16-CV-11844, 2018 WL 1465767, at *7 (E.D. Mich. Jan. 4, 2018). Thus, communications between legislators and third parties are generally not protected by the state legislative privilege. Id.

Respondents argue the state legislative privilege is an absolute "bar to conducting discovery on state lawmakers" in civil cases. (Doc. 50, p. 4). In support, they cites cases where circuit courts quashed subpoenas that sought information from state lawmakers. See Am. Trucking, 14 F.4th at 86; Lee, 908 F.3d at 1187; In Re Hubbard, 803 F.3d at 1311. But none of those cases addressed the scope of the state legislative privilege because the parties agreed the subpoenas at issue sought only privileged information, and none addressed communications with third parties. In In re Hubbard, the court acknowledged "[n]one of the relevant information sought in this case could have been outside of the legislative privilege." 803 F.3d at 1311. And in American Trucking, "no party dispute[d] that the subpoenas issued . . . sought evidence of the [s]tate [o]fficials' legislative acts and underlying motives." 14 F.4th at 87. Here, Turtle Mountain contends Respondents are refusing to produce documents that are not within the scope of the legislative privilege.

In sum, the state legislative privilege protects certain communications—not all state legislators' communications concerning work of the Legislative Assembly.

Bethune-Hill v. Va. State Bd. of Elections, 114 F. Supp. 3d 323, 344 (E.D. Va. 2015)

("[T]he proponent of a privilege must demonstrate specific facts showing that the

communications were privileged."). And the state legislative privilege does not protect

information a legislator discloses to a third party. Thus, Respondents cannot withhold

information on the basis of the state legislative privilege where a communication has

been disclosed to a third party.

### B.    Attorney-Client Privilege

Respondents also assert Turtle Mountain's subpoenas seek documents protected

by the attorney-client privilege. (Doc. 50, p. 18). The attorney-client privilege protects

"confidential communications between a client and her attorney made for the purpose

of facilitating the rendition of legal services to the client." United States v. Yielding, 657

F.3d 688, 707 (8th Cir. 2011). This includes communications between government

officials and government attorneys. See United States v. Jicarilla Apache Nation, 564

U.S. 162, 169 (2011) ("The objectives of the attorney-client privilege apply to

governmental clients.").

To be protected by the attorney-client privilege a communication must be (1)

between an attorney and client, (2) confidential, and (3) for the purposes of obtaining

legal services or advice. See e.g., In re Cnty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007).

When the client is an organization, the communications may be distributed to multiple

individuals within the organization. But in order to maintain confidentiality,

distribution of a communication must be limited to those employees who "need to know

its contents" and the subject matter of the communication must be "within the scope of

the employee's . . . duties." See Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 609

(8th Cir. 1977),

Communications between a Legislative Council staff attorney and a third party (an individual who is neither a legislator nor the Legislative Council staff member) would likely not be privileged for lack confidentiality. Respondents offer no argument that communications between a Legislative Council staff attorney and a third party are protected by the attorney-client privilege.

### C. Respondents' Obligations Regarding Third Party Communications

Respondents' tables show approximately 581 communications between them and a third party. They are directed to review their communications with third parties in light of the principals articulated above and produce all communications between Respondents and third parties.

## 2. Representative Jones' Waiver of the State Legislative Privilege

Turtle Mountain argues Representative Jones waived any legislative privilege by testifying about his legislative work during the preliminary injunction hearing in <u>Walen v. Burgum</u>, 1:22-cv-31 (D.N.D. Feb. 16, 2022). Turtle Mountain argues Representative Jones cannot "waive the privilege by revealing only that information he deems beneficial to his cause and then refuse to produce documents and communications and preclude the parties from probing his public, non-legislative statements on those matters." (Doc. 47, pp. 10-11). Respondents "do not concede that Representative Jones waived his legislative privilege." (Doc. 50, p. 17 n.6).

 "[T]he legislative privilege can be waived when the parties holding the privilege share their communications with an outsider." <u>Comm. for a Fair & Balanced Map</u>, 2011 WL 4837508, at *10. "[T]he waiver of the privilege need not be . . . explicit and unequivocal, and may occur either in the course of the litigation when a party testifies as

to otherwise privileged matters, or when purportedly privileged communications are shared with outsiders." Favors v. Cuomo, 285 F.R.D. 187, 211-12 (E.D.N.Y. 2012).

During the preliminary injunction hearing, Representative Jones testified at length about the development of the challenged legislation. (Doc. 47-5). He testified about his motivations, his conversations with other legislators, staff, outside advisors, and attorneys, and the work of the redistricting committee. Id. During depositions, the Walen plaintiffs testified they spoke to Representative Jones about the redistricting process. (Doc. 47-6, p. 9; Doc. 47-7, p. 10). For these reasons, this court reiterates the conclusion made in the December 22 order that Representative Jones waived his state legislative privilege by testifying at the Walen preliminary injunction hearing. (Doc. 48, p. 20).

Respondents cite Cano v. Davis, 193 F. Supp.2d 1177 (C.D. Cal. 2002), to argue Representative Jones cannot be compelled to produce communications as to "the legislative acts of legislators who have invoked the privilege or to those staffers or consultants who are protected by the privilege." (Doc. 50, p. 17). A three-judge panel in Cano held a legislator who waives their state legislative privilege

> may testify only to his own motivations, his opinion regarding the motivation of the body as a whole, the information on which the body acted, the body's knowledge of alternatives, and deviations from procedural or substantive rules typically employed. He may also testify to his own legislative acts and statements, but may not testify to the legislative acts of legislators who have invoked the privilege or to those of staffers or consultants who are protected by the privilege.

193 F. Supp. 2d at 1179. Turtle Mountain argues it seeks "precisely the type of information" permitted by the Cano court—information concerning Representative Jones' motivation, the information on which the legislature acted, Representative Jones'

knowledge of alternatives, and deviations from procedural or substantive rules typically employed. (Doc. 53, p. 5).

Accordingly, Representative Jones may not withhold documents on the basis of his own state legislative privilege. At the time Turtle Mountain filed its reply brief, Respondents had not provided data on a keyword search of Representative Jones' personal phone. See id. at 6. That search must be conducted immediately if it has not yet been completed. To the extent Representative Jones withholds documents on the basis of another legislator's state legislative privilege, he must produce a privilege log describing the documents in a manner that allows plaintiffs to assess his claims of privilege as required by Rule 45(e)(2)(A).

### 3.    Production of Privilege Logs

The court next addresses communications, like those between a respondent and another legislator or a Legislative Council staff member, where privilege may justify non-disclosure. Turtle Mountain states it "do[es] not seek to overcome Respondents' assertion of legislative privilege." Id. at 3. Rather, Turtle Mountain requests that Respondents "produce a privilege log containing individualized descriptions of each responsive document Respondents are withholding on the basis of privilege."[9] Id. at 11.

Rule 45(e)(2)(A) requires a non-party withholding documents on the basis of privilege to "expressly make the claim" and "describe the nature of the documents" that are withheld. In general, "the privilege must be proved for each document withheld as privileged." Bethune-Hill, 114 F. Supp. 3d at 344. Thus, to comply with Rule 45(e)(2), a

---

[9] Elsewhere in its brief, Turtle Mountain argues Respondents should produce a privilege log for documents withheld only on the basis of the attorney-client privilege and deliberative process privilege. (Doc. 47, p. 11). It appears that reference to deliberative process privilege is intended to refer to the state legislative privilege.

non-party will often produce a privilege log describing each document withheld and the justification for the assertion of privilege. See Tx. Brine Co., LLC & Occidental Chem. Corp., 879 F.3d 1224, 1229 (10th Cir. 2018).

That said, Rule 45(e)(2)(A) does not always require a document-by-document invocation of privilege. See In re Imperial Corp. of Am., 174 F.R.D. 475, 477 (S.D. Cal. 1997) ("[A] privilege log is one of a number of ways in which a party may sufficiently establish the privilege."). In some instances, document-by-document invocation of privilege may be unduly burdensome or inappropriate given the nature of the withheld documents. Id.

Respondents argue Turtle Mountain's request for a privilege log is inappropriate given the nature of the withheld documents. (Doc. 50 p. 16). In support of their argument, Respondents cite two Eleventh Circuit cases—In Re Hubbard and Jordan v. Commissioner—where the court determined a subpoenaed party was not required to produce a document-by-document privilege log.

In the case of In re Hubbard, an Alabama teachers' union subpoenaed members of the state legislature for documents related to legislation the union claimed was in retaliation for its members' exercise of their First Amendment rights. 803 F.3d at 1298. The Eleventh Circuit quashed the subpoenas on the basis of the state legislative privilege. In doing so, the Eleventh Circuit reversed a district judge who held the state lawmakers had waived their privilege by not, among other things, providing "a specific designation and description of the documents claimed to be privileged" and "precise and

14

certain reasons for preserving" the confidentiality of the documents.[10] Id. at 1308 (citing United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980)).

The Eleventh Circuit reversed the district judge, in part, because those requirements were "inappropriate given the circumstances." In re Hubbard, 803 F.3d at 1308. The Eleventh Circuit stated a "document-by-document invocation of the legislative privilege" was inappropriate because "[n]one of the relevant information sought in this case could have been outside of the legislative privilege." Id. at 1311. Thus, it was unnecessary for the state lawmakers to "specifically designate and describe which documents were covered by the legislative privilege, or to explain why the privilege applied to those documents." Id.

In Jordan v. Commissioner, the Eleventh Circuit upheld a district court's quashal of a subpoena served on the Georgia Department of Corrections by two Mississippi inmates. 947 F.3d 1322 (11th Cir. 2020). The subpoena had sought information regarding Georgia's lethal injection protocol. On appeal, the inmates argued the district court should have required the Georgia Department of Corrections to submit a privilege log before granting the motion to quash. The Eleventh Circuit stated a document-by-document privilege log was unnecessary because it was "apparent from the face of the subpoena" that the information sought was protected by the relevant statute. Id. at 1328 n.3. Further, the court stated that "the remainder of the information sought [was] either readily available to the public . . . or of limited relevance." Id.

---

[10] The district judge also held the state lawmakers were required to personally review the documents and raise privilege claims by affidavit. See In re Hubbard, 803 F.3d 1308 (citing United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980)). The Eleventh Circuit held those requirements were contrary to circuit precedent. Id. at 1309. Turtle Mountain does not request the subpoenaed individuals fulfill these requirements and thus this portion of Hubbard is not relevant to the current dispute.

Drawing on these cases, Respondents argue a privilege log is unnecessary because "the requested information falls within the scope of [the state legislative privilege] and the non-privileged information requested by a subpoena is readily available to the public or of limited relevance to [Turtle Mountain's] burden." (Doc. 50, p. 16). Thus, Respondents contend "[m]erely asserting legislative privilege through counsel by written response was the only requirement." Id.

Unlike in Hubbard and Jordan, Respondents' communications with third parties and Representative Jones' waiver of the state legislative privilege suggest Turtle Mountains' subpoenas seek information outside of the state legislative privilege and attorney-client privilege. Thus, Respondents' broad invocation of privilege has not sufficiently enabled Turtle Mountain to assess the privilege claim as required by Rule 45(e)(2)(A)(ii). The court will therefore direct Respondents to produce a privilege log sufficient to distinguish privileged from non-privileged documents.

**4.     Undue Burden Under Rule 45**

Under Rule 45(d)(3)(A)(iv), a court "must quash or modify a subpoena" that "subjects a person to undue burden." The scope of discovery permitted under Rule 45 is the same as that permitted under Federal Rule of Civil Procedure 26. Beinin v. Ctr. For Study of Popular Culture, No. C06-2298JW(RS), 2007 WL 832962, at *2 (N.D. Cal. Mar. 16, 2007). The court determines whether a subpoena causes an undue burden by considering, among other things, the "relevance of the information requested" and "the burden imposed." See Am. Broad. Cos., Inc. v. Aereo, Inc., No. 13-MC-0059, 2013 WL 5276124, at *7 (N.D. Iowa Sept. 17, 2013). "Discovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case." Id.

16

Respondents argue "the subpoenaed information is not needed to prove the elements of [Turtle Mountain's] claims under the Voting Rights Act and the requested information lacks probative value in assessing the validity of a legislative act." (Doc. 50, p. 12). Turtle Mountain responds, "Under the totality of the circumstances test, communications demonstrating 'illicit motive' by one or more legislators would certainly be relevant and probative evidence of an ongoing history of voting-related discrimination, the extent to which voting is racially polarized, and the use of racial appeals in the political process." (Doc. 53, pp. 7-8).

In its December 22 order, this court found testimony of Representatives Jones and Devlin about the redistricting legislation met the Rule 26 standard for relevancy. (Doc. 48, p. 17 n.8). In doing so, this court joined other courts in finding such information relevant for discovery purposes. See League of United Latin Am. Citizens v. Abbott, No. 21CV00259, 2022 WL 1570858, at *2 (W.D. Tex. May 18, 2022); League of Women Voters of Fla., Inc. v. Lee, 340 F.R.D. 446, 457 (N.D. Fla. 2021); Rodriguez v. Pataki, 280 F. Supp. 2d 89, 102 (S.D.N.Y.), aff'd, 293 F. Supp. 2d 302 (S.D.N.Y. 2003). Though legislative intent is not central to Turtle Mountain's claims, such evidence may nonetheless be relevant. See Rodriguez, 280 F. Supp. 2d at 102 ("While evidence of discriminatory animus may not be an essential element of all of the plaintiffs' claims, it certainly is something that can be considered."). Accordingly, the court finds Turtle Mountain's subpoenas seek relevant information.

The court now turns to the potential burden imposed by Turtle Mountain's subpoenas. Turtle Mountain seeks documents from seven individuals. (See Doc. 47-8). As described above, Respondents' supplemental objection to Turtle Mountain's subpoenas includes the results of searches of individuals' official email accounts, instant

messaging application, and personal phones for certain keywords like "redistricting," "race," and "Voting Rights Act." The table shows the total number of keyword "hits" for each individual's communications. The court calculated, across all subpoenaed individuals, 64,562 total keyword hits across at most 2,655 communications, with at most 857 communication between a subpoenaed individual and a legislator, 1,217 communications between a subpoenaed individual and Legislative Council staff, and 558 communications between a subpoenaed individual and a third party.

Respondents submitted an affidavit of a Legislative Council staff attorney that explained the burden of the initial search and the burden that full compliance with Turtle Mountain's subpoenas would impose on Legislative Council staff. (Doc. 52). The affiant states eight attorneys assisted in the initial keyword search and "[t]he combined time required to conduct the cursory keyword review averaged a full 8 hours per attorney." Id. at 2. If the Legislative Council is mandated to fully comply with Turtle Mountain's subpoenas, the affiant estimates it would take approximately "ten 8-hour days for eight attorneys" or "640 hours of Legislative Council's time." Id. The affiant also notes the Legislative Assembly is in session and Legislative Council staff, the primary drafters of bills and resolutions, had received, as of January 4, 2023, 748 drafting requests for the 2023 session. Id. at 3.

Respondents have not provided sufficient information to establish an undue burden. As Turtle Mountain notes, Respondents' initial keyword search does not appear to account for communications that contained more than one keyword. (Doc. 47, p. 4). For example, the court understands the sentence "the 2021 Redistricting Plan subdivides Senate District 9 into House Subdistrict 9A and 9B" would result in three keyword "hits" for the words "redistrict," "district," and "subdistrict," and thus be

18

counted as three separate communications on Respondents' table.[11] See id. at 4 n.2. Moreover, some of the results of the initial keyword search appear unreliable. One subpoenaed state senator, for example, had thirty-two keyword "hits" for the phrase "Voting Rights Act." Yet apparently the phrase did not occur in any communication between the senator and another legislator, the senator and Legislative Council staff, or the senator and a third party. (See Doc. 47-4, p. 12). Additionally, the assertion that compliance with Turtle Mountain's subpoenas would require 640 hours of Legislative Council staff attorney time is not adequately explained. In the court's experience with electronic discovery disputes, it is likely IT staff could identify duplicate documents, and it appears many documents identified on the initial search are duplicative of each other. The court recognizes the demand the ongoing legislative session imposes on Legislative Council staff. But Respondents have not explained that Legislative Council staff attorneys, rather than Respondents' counsel and their staff, would need to review the documents at issue. Accordingly, the court finds the Respondents have not shown compliance with Turtle Mountain's subpoenas would result in an undue burden under Rule 45(d)(3)(A)(iv).

## Conclusion

Trial of this case is scheduled to begin June 12, 2023, most discovery deadlines have passed, and thus discovery cannot be delayed any further. (Doc. 34; Doc. 40). Respondents are directed to produce their communications with third parties. Further, Representative Jones has waived his state legislative privilege and therefore any documents withheld on that basis must be produced. Any other documents withheld on

---

[11] Respondents do not address possible duplication in their supplemental objection or briefing.

the basis of privilege, including documents Representative Jones may have withheld based on another legislator's state legislative privilege, must be adequately described on a privilege log.

Privilege log descriptions should include the general nature of the document, the identity of the author, the identities of all recipients, and the date on which the document was written. Accordingly, Turtle Mountain's motion to enforce its subpoenas, (Doc. 47), is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 9th day of February, 2023.

/s/ Alice R. Senechal

Alice R. Senechal
United States Magistrate Judge