**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
|---|---|

**PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO QUASH
DEPOSITION SUBPOENA OF BRAD CARVER**

## Table of Contents

INTRODUCTION ...............................................................................................1

SUMMARY OF DISPUTE .................................................................................3

ARGUMENT ......................................................................................................6

I.    Mr. Carver's testimony is relevant to the Court's *Arlington Heights* analysis.............................................................................................................6

II.   Mr. Carver's deposition is proportional to the needs of the case. ...................8

    A.   Plaintiffs are entitled to conduct discovery into Mr. Carver's pre-litigation conduct. ......................................................................................9

    B.   Mr. Carver's deposition is appropriate under any of the proposed standards.............................................................................................11

III.  Mr. Carver's belated invocation of the First Amendment Privilege lacks merit..............................................................................................15

    A.   Mr. Carver cannot invoke First Amendment privilege over topics he has already discussed publicly. .................................................................16

    B.   Mr. Carver has not made a prima facie showing that his deposition will chill his associational rights.................................................................18

    C.   Plaintiffs' interest in obtaining discovery outweighs Mr. Carver's belated privilege assertion. .................................................................................21

i

# Table of Authorities

**Page(s)**

**Cases**

*Bank of Am., N.A. v. Ga. Farm Bureau Mut. Ins. Co.*,
   No. 3:12-CV-155-CAR, 2014 WL 4851853 (M.D. Ga. Sept. 29,
   2014) .................................................................................................................11

*BCD, LLC v. BMW Mfg. Co., LLC*,
   No. 5:19-cv-109, 2006 WL 8443166 (D.S.C. June 30, 2006)...........................10

*Bogan v. Northwestern Mut. Life Ins. Co.*,
   152 F.R.D. 9 (S.D.N.Y. 1993) .............................................................................9

*Brantley Cnty. Dev. Partners, LLC v. Brantley Cnty.*,
   No. 6:05-02152, 2021 WL 2678197 (S.D. Ga. June 29, 2021).........................10

*Curling v. Raffensperger*,
   No. 1:17-CV-2989-AT, 2021 WL 5162576 (N.D. Ga. Nov. 5,
   2021) ...........................................................................................................18, 20

*Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*,
   568 F. Supp. 3d 1301 (S.D. Fla. 2021) ..............................................................19

*Fox v. Pitney Bowes Inc.*,
   No. 1:09-CV-1028-RLV, 2009 WL 10670417 (N.D. Ga. Sept. 18,
   2009) .................................................................................................................15

*Gaddy v. Terex Corp.*,
   No. 1:14-CV-1928-WSD, 2015 WL 13545486 (N.D. Ga. Oct. 28,
   2015) ...................................................................................................................9

*Golden v. Stein*,
   No. 418CV00331JAJCFB, 2020 WL 13553710 (S.D. Iowa Apr.
   14, 2020) ...........................................................................................................13

*I.L. v. Alabama*,
   739 F.3d 1273 (11th Cir. 2014) ...........................................................................8

ii

*Jean v. Nelson*,
    711 F.2d 1455 (11th Cir. 1983) ..........................................................................7

*Kaiser v. Mut. Life Ins. Co.*,
    161 F.R.D. 378 (So. Ind. 1994) ..........................................................................9

*McDill v. Bd. of Pardons & Paroles*,
    No. 2:18-CV-597-MHT-SMD, 2021 WL 6883424 (M.D. Ala. June
    24, 2021) ..........................................................................12

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
    641 F.3d 470 (10th Cir. 2011) ..........................................................................19

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
    707 F. Supp. 2d 1145 (D. Kan. 2010)..........................................................................21

*N.L.R.B. v. Mod. Drop Forge Co.*,
    No. 96–3735, 1997 WL 120572 (7th Cir. 1997) ........................................14, 15

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) ..........................................................16, 20, 21

*Sadowski v. Gudmundsson*,
    206 F.R.D. 25 (D.D.C. 2002)..........................................................................10

*Shelton v. Am. Motor Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ..........................................................9, 11, 13

*Stout by Stout v. Jefferson Cnty. Bd. of Educ.*,
    882 F.3d 988 (11th Cir. 2018) ..........................................................1, 7, 8

*In re Subpoena Issued to Dennis Friedman*,
    350 F.3d 65 (2d Cir. 2003) ..........................................................11, 12, 14

*United States v. Moore, Ingram, Johnson & Steele, LLP*,
    No. 21-10341, 2022 WL 3134374 (11th Cir. Aug. 5, 2022)..........................15

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)..........................................................................*passim*

**Statutes**

O.C.G.A. § 24-9-25 ................................................................................5

**Other Authorities**

*Election Confidence Task Force Report*, GAGOP (Feb. 16, 2021),
    https://gagop.org/wp-content/uploads/2021/02/Georgia-
    Republican-Party-Election-Confidence-Task-Force-Report-
    2.16.21-1.pdf ...........................................................................4, 17

Fed. R. Civ. P. 26(b) .........................................................................1, 11

Fed. R. Civ. P. 30(c)(2) .........................................................................3

H.B. 24, 2011 Gen. Assemb., Reg Sess., § 2 (Ga. 2011) (effective
    2013) ............................................................................................5

The Madison Forum, Brad Carver 2021 04 24 Q&A, YouTube (May
    17, 2021), https://www.youtube.com/watch?v=zwhxlFt39LQ ...............5, 17, 18

Madison Forum Brad Carver, Rumble, https://rumble.com/v13zfo4-
    madison-forum-brad-carver-2021-04-24.html ...........................................16, 17

# INTRODUCTION

Brad Carver was one of the leading proponents of election reform during the 2021 legislative session. He chairs the Election Confidence Task Force, which proposed many of the voting restrictions that appear in SB 202 and predecessor bills; he lobbied legislators to adopt those restrictions; and he even drafted some of the provisions Plaintiffs challenge here, sometimes at legislators' express request. Seeking to resist the obvious, Mr. Carver now argues that his deposition testimony is irrelevant to the motivations behind the law, ignoring settled precedent which establishes the importance of statements by lobbyists like Mr. Carver under the *Arlington Heights* analysis, especially when those lobbyists translate their efforts into official policy. *See Stout by Stout v. Jefferson Cnty. Bd. of Educ.*, 882 F.3d 988, 1007 (11th Cir. 2018). In any event, Federal Rule of Civil Procedure 26(b) permits discovery into any non-privileged matter that is relevant to any party's claim notwithstanding its admissibility at trial, and provides no basis to shield discovery into Mr. Carver's lobbying efforts.

Nor is Mr. Carver exempt from discovery simply because he was later retained as litigation counsel in this matter. The traditional bar on counsel testimony does not apply when counsel is a witness to prelitigation conduct, and even if it did, Mr. Carver's deposition is appropriate under even the most stringent test. Testimony

about his lobbying efforts to enact election reform legislation cannot currently be obtained from Georgia legislators who have invoked the legislative privilege, and a Rule 30(b)(6) witness from GAGOP cannot adequately speak to Mr. Carver's individual actions and communications with members of the General Assembly.

Furthermore, Mr. Carver's last-minute attempt to invoke his free speech and associational rights to shield discovery as to his publicly-known lobbying activities—including written communications with legislators that were produced in discovery without redaction or any privilege assertion, and speeches posted online describing those lobbying efforts—would result in an unprecedented expansion of the First Amendment privilege. But even if the First Amendment privilege applied, the need for Mr. Carver's testimony outweighs any purported interest he has advanced. Not only are Mr. Carver's lobbying and drafting efforts highly relevant to the Court's *Arlington Heights* analysis, but the information sought is not privileged and cannot be obtained from any other source. Thus, Mr. Carver's interest in shielding communications with public officials must yield to the important issues and needs of this case which seeks to enforce the constitutional right to vote.

Finally, even a properly asserted privilege cannot shield Mr. Carver from being deposed. The Federal Rules contemplate and establish procedures to address such objections during the deposition, while acknowledging that "the examination

still proceeds." Fed. R. Civ. P. 30(c)(2). And Mr. Carver's alternative request to limit the scope of the deposition implicitly recognizes that he possesses at least some relevant information that is not privileged, despite his overly expansive interpretation of the First Amendment privilege or his restrictive application of Rule 45. For these reasons, the Court should deny Mr. Carver's motion to quash.

## SUMMARY OF DISPUTE

Brad Carver was centrally involved in the legislative process that led to SB 202's adoption. Following the 2020 Presidential election and 2021 runoffs, Georgia Republican Party Chair David Shafer appointed Mr. Carver to lead the newly formed GAGOP Election Confidence Task Force. The Task Force's mission was, in Mr. Carver's words, to "come up with a set of proposals" for election reform "to submit to our General Assembly allies in both the House [and] Senate and then to advocate for the passage of our solutions." Ex. 1 (GAGOP_0002607). Chairman Shafer instructed members of the Republican state committee to email any proposed changes to Georgia election law directly to Mr. Carver. Ex. 2 (GAGOP_0001375). In the days after, Mr. Carver received many emails with legislative proposals. *See, e.g.*, Ex. 3 (GAGOP_0002580–81) (proposing limitations on unsolicited absentee ballot applications being sent by third-party groups or the Secretary of State and ID requirements for absentee voting);  Ex. 4 (GAGOP_0002582) (proposing limitations

on drop boxes and ID requirements for absentee voting). Several of these proposals were incorporated in the Task Force's February 2021 report, which was widely disseminated, and some of the proposals were adopted in SB 202.[1]

Mr. Carver also directly lobbied the General Assembly. Even before the Task Force issued its report, at least one legislator requested Mr. Carver's permission to attend a Task Force meeting. Ex. 5 (GAGOP_0002505). Shortly after the Task Force issued its report, SB 202 sponsor Representative Barry Fleming emailed Mr. Carver and Mr. Shafer requesting legislative language in the form of Georgia Code revisions. Ex. 6 (GAGOP_0002492). Mr. Carver sent proposed language concerning voter challenges directly to Speaker Pro Tempore Jan Jones. Ex. 7 (GAGOP_0002345). An email from the Secretary of State's office would later describe SB 202's changes to voter challenges as "Brad Carver language." Ex. 8 (CDR00069682). Mr. Carver also collaborated with the General Assembly's Office of Legislative Counsel to ensure an amendment to an election bill complied with Senate rules. Ex. 9 (GAGOP_0002430). As Mr. Carver would later state in public remarks at the Madison Forum, he "was in many meetings" with members of the General Assembly to discuss election reform. The Madison Forum, Brad Carver

---

[1] *See Election Confidence Task Force Report*, GAGOP (Feb. 16, 2021), https://gagop.org/wp-content/uploads/2021/02/Georgia-Republican-Party-Election-Confidence-Task-Force-Report-2.16.21-1.pdf ("Task Force Report").

2021  04  24  Q&A,  YouTube  (May  17,  2021)  ("Madison  Forum  Q&A"),
https://www.youtube.com/watch?v=zwhxlFt39LQ  (6:00-6:35).  And  Mr.  Carver
explained that "[t]his effort for election reform is frankly, in my party business . . .
the most important thing that I've ever worked on." Ex. 10 (GAGOP_0000080).
When all was said and done, "[a] lot of what wound up being in Senate Bill 202 was
[the Task Force's] work." *Id.* (GAGOP_0000081).

Because of Mr. Carver's important role in proposing and drafting provisions
that were incorporated into SB 202, Plaintiffs served him with a deposition subpoena
on January 6, 2023. Ex. 11 (Subpoena for Deposition of Brad Carver). Three weeks
later, Mr. Carver's counsel responded with a letter asserting a raft of objections that
he has since abandoned. Ex. 12 (Letter from B. Drennon to T. Meng). For instance,
the letter argued that the subpoena was untimely because "fact discovery closed on
December 22, 2022." *Id.* That was plainly incorrect as discovery under the operative
schedule extended until March 17, 2023. *See* ECF No. 259. Counsel also argued that
Mr. Carver's deposition was prohibited by O.C.G.A. § 24-9-25. But that statute was
repealed in 2011. H.B. 24, 2011 Gen. Assemb., Reg Sess., § 2 (Ga. 2011) (effective
2013).[2] Plaintiffs identified these issues in a response letter and Mr. Carver's counsel

---

[2] It also would not have prohibited Mr. Carver's deposition, even if it were in effect,
since that statute expressly *permitted* testimony as to knowledge the attorney
acquired outside his capacity as an attorney.

requested a meet and confer. Ex. 13 (Letter from U. Nkwonta to B. Drennon).

During the parties' conference, Mr. Carver's objections to his deposition quickly shifted, as his counsel withdrew most of the arguments from his letter and explicitly stated that his sole basis for objection was attorney-client privilege. Counsel nonetheless refused to produce Mr. Carver for a deposition without a ruling from the Court on this issue, thereby leaving the parties at an impasse. As a result, the parties prepared a joint discovery statement that was intended to outline their dispute. But Mr. Carver's reasoning for opposing his deposition shifted yet again in the joint discovery statement, and for the first time, Mr. Carver invoked the First Amendment privilege in response to Plaintiffs' deposition subpoena.

Following submission of the joint discovery statement, the Court instructed the parties to brief Mr. Carver's Motion to Quash.

## ARGUMENT

### I.  Mr. Carver's testimony is relevant to the Court's *Arlington Heights* analysis.

Mr. Carver's role in providing input, drafting language, and lobbying for SB 202 makes his testimony highly relevant to this case. As the parties agree, a central issue in this action is whether SB 202 was motivated by an intent to discriminate against certain categories of voters. Motion to Quash ("Mot.") at 5, ECF No. 493. In resolving this question, courts apply the factors articulated in *Arlington Heights*,

which include: (1) the decision's historical background; (2) the decision's discriminatory impact; (3) the sequence of events leading to the decision; (4) procedural or substantive deviations from the normal decision-making process; and (5) legislative history, including contemporaneous statements by decision-makers. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267–68 (1977).[3] As described above, Mr. Carver met with legislators, chaired the Task Force that proposed many of the provisions that were incorporated into SB 202 and predecessor bills, and even drafted some of those provisions himself. *See supra* at 3–5. He is therefore in a unique position to provide information relevant to several *Arlington Heights* factors and to the motivations behind the restrictions that he lobbied Georgia legislators to adopt.

Mr. Carver's contention that his status as a non-legislator renders his testimony irrelevant under *Arlington Heights* is directly foreclosed by Eleventh Circuit precedent. As the Court held in *Stout by Stout v. Jefferson County*, "constituent statements and conduct can be relevant in determining the intent of public officials." 882 F.3d at 1007. In fact, such statements can have significant

---

[3] The Eleventh Circuit also considers knowledge and foreseeability of the discriminatory impact and the availability of less discriminatory alternatives. *Jean v. Nelson*, 711 F.2d 1455, 1486 (11th Cir. 1983), *on reh'g*, 727 F.2d 957 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985).

weight when made by "those who played a primary role in lobbying for the state action" and "translate[d] their grassroots effort into official action." *Id.* at 1008 (alteration in original). In *Stout*, the Eleventh Circuit affirmed a district court's finding of intentional discrimination in a school board's decision to secede from the county school system—a finding that relied in part on statements made by activists who lobbied for secession. *Id.* at 992. In the same decision, the Eleventh Circuit noted that evidence of Facebook comments by secession supporters "easily satisfie[d] Federal Rule of Evidence 401 because the comments shed light on the motivations behind the creation and later actions" of the independent school board. *Id.* at 1008; *see also I.L. v. Alabama*, 739 F.3d 1273, 1287 (11th Cir. 2014) (concluding tax laws were motivated by financial, rather than discriminatory, considerations based in part on the work of private lobbyists).

Here, Mr. Carver was one of the leading champions of electoral reform efforts during the 2021 legislative session. He "translate[d]" these efforts "into official action," *Stout*, 882 F.3d at 1008, as demonstrated by the many provisions of SB 202 that sprang from the Task Force effort he led. Accordingly, Mr. Carver's claim that his testimony would "have little relevance," Mot. at 5, is without merit.

## II. Mr. Carver's deposition is proportional to the needs of the case.

Mr. Carver's role as one of the 11 attorneys who have noticed an appearance

on behalf of Intervenors in this case neither forecloses discovery into his pre-litigation conduct nor renders his deposition disproportionate to the needs of the case. As a general matter, the Federal Rules of Civil Procedure do not prohibit the deposition of another party's lawyer, so long as the deposition seeks relevant, non-privileged information. *Gaddy v. Terex Corp.*, No. 1:14-CV-1928-WSD, 2015 WL 13545486, at *2 (N.D. Ga. Oct. 28, 2015) (citing Fed. R. Civ. P. 26(b)(3), 30(a)). And Plaintiffs' deposition subpoena of Mr. Carver does just that—it seeks highly relevant information concerning public matters.

### A. Plaintiffs are entitled to conduct discovery into Mr. Carver's pre-litigation conduct.

Mr. Carver's reliance on Eighth Circuit precedent to impose strict limitations on counsel depositions glosses over a critical distinction: Plaintiffs seek to depose Mr. Carver as a fact witness concerning events that transpired *before* the lawsuit was filed. *See* Mot. at 7–8 (citing *Shelton v. Am. Motor Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).

"Even cases in the *Shelton* line recognize that, if an attorney is a witness of *or actor in prelitigation conduct*, he may be deposed the same as any other witness." *Kaiser v. Mut. Life Ins. Co.*, 161 F.R.D. 378 (So. Ind. 1994) (collecting cases) (emphasis added); *see also Bogan v. Northwestern Mut. Life Ins. Co.*, 152 F.R.D. 9, 14 (S.D.N.Y. 1993) (*Shelton* "does not bar [counsel] depositions where attorneys

take part in significant relevant pre-events and the attorney-client privilege does not apply to the testimony sought."). Accordingly, courts have acknowledged that "[w]hen a party employs a counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested." *Sadowski v. Gudmundsson*, 206 F.R.D. 25, 26 (D.D.C. 2002) (quoting *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995)).

Here, Mr. Carver does not dispute that he played an important role in the development of SB 202, and his advocacy work is not privileged because it constitutes "standard lobbying." *Brantley Cnty. Dev. Partners, LLC v. Brantley Cnty.*, No. 6:05-02152, 2021 WL 2678197, at *2 (S.D. Ga. June 29, 2021) (finding lobbying activities "inadequate to invoke the attorney-client privilege," especially where "there is no apparent legal advice sought or given"); *see also BCD, LLC v. BMW Mfg. Co., LLC*, No. 5:19-cv-109, 2006 WL 8443166, at *3 (D.S.C. June 30, 2006) (ordering production of attorney communications that "more closely relate to lobbying strategies"). Because Plaintiffs seek to depose Mr. Carver on the non-privileged subject of his advocacy in support of SB 202 *before* this lawsuit was filed, and not as litigation counsel, his deposition should proceed like any other key fact witness.

### B.    Mr. Carver's deposition is appropriate under any of the proposed standards.

Even if Mr. Carver's proposed limitations on deposing counsel applied, his deposition easily passes the relevant tests. For the reasons described, Mr. Carver possesses highly relevant, non-privileged information that cannot be obtained from any other source.  Moreover, an order "prohibit[ing] a deposition is rarely given and nothing in the federal rules prohibits the deposition of opposing counsel." *Bank of Am., N.A. v. Ga. Farm Bureau Mut. Ins. Co.*, No. 3:12-CV-155 CAR, 2014 WL 4851853, at *2 (M.D. Ga. Sept. 29, 2014) (quotation marks omitted).

Federal courts have advanced two different approaches for determining when a deposition of litigation counsel is appropriate. The first approach, initially adopted by the Eighth Circuit in *Shelton v. American Motor Corp.*, requires the party seeking the deposition of an attorney to establish that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." 805 F.2d 1323, 1327 (8th Cir. 1986). The second approach, adopted by the Second Circuit, emphasizes the plain text of Rule 26, which permits a deposition to be taken "regarding *any* matter, not privileged, that is relevant to the claim or defense of *any* party." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (citing Fed. R. Civ. P. 26(b)(1) (emphasis in original) (cleaned up). And the

fact that a proposed deponent is a lawyer does not insulate that person from deposition. *Id*. Instead, the court considers "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Id.* at 72. While neither approach is binding on this Court—nor are they even applicable since Plaintiffs seek discovery into pre-litigation conduct—other district courts in this circuit "have used both approaches, or a combination thereof . . . ." *McDill v. Bd. of Pardons & Paroles*, No. 2:18-CV-597-MHT-SMD, 2021 WL 6883424, at *3 (M.D. Ala. June 24, 2021) (quotation marks omitted).

Regardless of whether the Court adopts the Second Circuit's or the Eighth Circuit's approach, or a combination of the two, Mr. Carver's deposition is appropriate. Under *Shelton*'s first prong, Plaintiffs have no other means of obtaining discovery into conversations between Mr. Carver and Georgia legislators about changes to the state's elections code, including the language Mr. Carver provided to be incorporated into SB 202. *See supra* at 3–5. This information cannot be obtained from other sources: the Georgia legislators who worked on SB 202 have invoked legislative privilege in response to Plaintiffs' requests and discovery disputes related to legislative privilege are still pending. *See* ECF. No. 286.

Nor is a Rule 30(b)(6) deposition of GAGOP adequate to replace Mr. Carver's testimony. Mr. Carver's unique role in election-reform efforts makes it unlikely a 30(b)(6) designee could testify about Mr. Carver's direct conversations with individual lawmakers and other matters to which only he would have direct knowledge. *See infra* Section III.A. Indeed, Mr. Carver was designated as the sole contact for Republican state committee members to direct any election-reform proposals. *See* Ex. 2 (GAGOP_0001375). And Rule 30(b)(6) expressly states that the possibility of a corporate deposition "does not preclude a deposition by any other procedure allowed by these rules." Even when there is some overlap between an individual deponent's knowledge and a 30(b)(6) deponent's testimony, courts routinely permit both depositions to go forward. *See, e.g.*, *Golden v. Stein*, No. 418CV00331JAJCFB, 2020 WL 13553710, at *6 (S.D. Iowa Apr. 14, 2020) (allowing individual and corporate deposition of same designee despite objections of duplication).

Plaintiffs also meet the second and third prongs of the *Shelton* test. As described above, Mr. Carver's deposition is not only highly relevant to Plaintiffs' claims, but important to the *Arlington Heights* analysis for determining the intent

behind SB 202 and predecessor bills. And the information sought is not protected by either the attorney-client, work product, or First Amendment privileges.[4]

Mr. Carver's deposition is similarly permitted under the Second Circuit's more flexible approach. Again, under that test, counsel's deposition is prohibited only if based on "all of the relevant facts and circumstances . . . the proposed deposition would entail an inappropriate burden or hardship." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d at 72. Apart from Mr. Carver's misapplication of the First Amendment privilege described below, he points to no evidence suggesting that his deposition would be especially burdensome. Nor is there any factual basis to support Mr. Carver's suggestion that he and his counsel are unable to assert privilege during his deposition as contemplated by the Federal Rules. *See N.L.R.B. v. Mod. Drop Forge Co*., No. 96–3735, 1997 WL 120572, at *3 (7th Cir. 1997) (finding that district courts have appropriately denied motions to quash depositions of attorneys and rejected assumptions that a party would fail to adequately assert the privilege in the deposition). Thus, even if the limits on attorney depositions applied in this case, they should not bar Mr. Carver's deposition. "The more appropriate method is to allow the deposition to be taken and permit the attorney to claim

---

[4] Intervenors do not appear to further press their attorney-client privilege argument in their motion to quash. For reasons described in the Joint Discovery Statement and in this brief, that argument lacked merit. ECF No. 434.

privilege in the face of certain questions, if necessary." *Id*. (quoting *Hunt Int'l Res. Corp. v. Binstein*, 98 F.R.D. 689, 690 (N.D. Ill. 1983)); *see also United States v. Moore, Ingram, Johnson & Steele, LLP*, No. 21-10341, 2022 WL 3134374, at *4 (11th Cir. Aug. 5, 2022) (holding issues of privilege should be claimed on a question-by-question basis); *Fox v. Pitney Bowes Inc*., No. 1:09-CV-1028-RLV, 2009 WL 10670417, at *3 (N.D. Ga. Sept. 18, 2009) ("If the attorneys seek to invoke a privilege related to a specific question, they may assert the [party's] privilege at the deposition, and this court will take the issue up on a question-by-question basis, rather than issue a blanket protective order.").

### III. Mr. Carver's belated invocation of the First Amendment Privilege lacks merit.

Mr. Carver claims privilege over topics and associations he has already disclosed publicly—an argument he raised for the very first time in the parties' joint discovery statement after objection letters had been exchanged and the parties had met and conferred. *See generally* Joint Disc. Statement on Carver Dep. ("Joint Disc. Statement"), ECF No. 439. Not only is Mr. Carver unable to make a prima facie showing that the First Amendment privilege applies to his lobbying efforts, but his involvement in the legislative process provides important insight into the development of, and motivations behind, the challenged restrictions in SB 202. The information sought is also not available through any other means. Thus, even a

properly asserted First Amendment privilege must yield to the needs of this case.

### A.   Mr. Carver cannot invoke First Amendment privilege over topics he has already discussed publicly.

At its core, the First Amendment privilege prevents compelled disclosure of information that could chill associational rights if made public. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). Mr. Carver, however, has already spoken publicly about the topics he now claims are privileged and confidential; thus, the privilege cannot shield discovery into those communications. For instance, Mr. Carver openly discussed his communications with legislators in pushing for election law reform during the 2021 legislative session. In a publicized speech to The Madison Forum on April 24, 2021, Mr. Carver stated, "we met all these folks" when discussing SB 202's predecessor bill, SB 241, and described interactions with Senate Majority leader Mike Dugan, SB 241's "proud[] champion[]." *See* The Madison Forum Brad Carver, Rumble, https://rumble.com/v13zfo4-madison-forum-brad-carver-2021-04-24.html (last visited Mar. 23, 2023) ("Madison Forum Speech") (31:30–31:52).

Mr. Carver also spoke about legislators' response to certain proposals he presented regarding election reform. For instance, he discussed several meetings he had with legislators about legislative drafting and strategy, including discussions with Chairman Fleming about House Bill 531 and changes to Sunday voting. *Id.*

(35:41–36:05) ("I had a meeting with Chairman Fleming. And this was his idea. Let me tell you this. He suggested that what we should do is make it optional. I said, 'Oh my gosh, that's the greatest idea I've ever heard.'"); *see generally* Ex. 10 (GAGOP_0000079–83) (written transcript of Mr. Carver's remarks at the Madison Forum). In a subsequent Q&A session that followed his speech at the Madison Forum, Mr. Carver again reiterated that he "was in many, many meetings with our legislators, and we did get our Senate to approve a stronger bill, Senate Bill 241." Madison Forum Q&A (6:00–6:18).

Beyond discussions with specific, publicly identified legislators, Mr. Carver's involvement in working with the GAGOP on election reform proposals has been publicly known for years. His involvement as the chair of the GAGOP Election Confidence Task Force was highlighted in the group's published report from February 2021. *See* Task Force Rep. at 1. And Mr. Carver has openly discussed strategic conversations that occurred at the state party level relating to the Task Force report. *See* Madison Forum Speech (33:48–34:53) ("And when we brought that [recommendation of eliminating no-excuse absentee voting] to the State Committee, it was [] completely divided . . . and I love Chairman Shafer and he does an amazing job for us, but he made the call the other way so we wound up changing it to eliminate Sunday voting. And, I get it."). And to cap it all off, Mr. Carver has

17

explicitly emphasized that "we're on the record, *me in a very public way*, supporting much stronger [election] proposals." Madison Forum Q&A (7:02–7:09) (emphasis in original).

Having openly discussed—and in fact bragged about—his personal communications with legislators and the GAGOP Task Force in recommending election reform proposals that the legislature subsequently adopted, Mr. Carver cannot now shield all inquiry into those discussions based on newly-discovered fears of reprisal and purported burdens to associational rights that he never thought to raise at any point before seeking this Court's intervention. *See generally* Joint Disc. Statement.

### B.   Mr. Carver has not made a prima facie showing that his deposition will chill his associational rights.

Mr. Carver has also failed to demonstrate any substantial risk that having to sit for a deposition about his involvement in the 2021 legislative process will chill the exercise of his First Amendment rights. *See Curling v. Raffensperger*, No. 1:17-CV-2989-AT, 2021 WL 5162576, at *2 (N.D. Ga. Nov. 5, 2021) (holding the party asserting the privilege must show there is "an objectively reasonable probability that the disclosure of their private communications would chill their exercise of First Amendment rights") (citing *Perry*, 591 F.3d at 1163).

First, as already discussed, Mr. Carver's prior actions have made clear that the topics about which Plaintiffs seek to depose him are not fairly characterized as "private communications" because he has already discussed them publicly. *See id*; *see also In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 479 (10th Cir. 2011) ("[T]he First Amendment privilege generally guarantees the right to maintain private associations when, without that privacy, there is a chance that there may be no association . . . ."); *Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021) (rejecting Heritage Foundation's assertion of First Amendment privilege over discovery involving the organization's "*external communications* with government officials related to Senate Bill 90") (emphasis added). While legislators have invoked other privileges to resist certain discovery into their roles in enacting legislation, lobbyists who reach out to them are not entitled to a First Amendment privilege for such discussions. *See Lee*, 568 F. Supp. 3d at 1307.

Mr. Carver's purported fears of harassment also fail to satisfy his evidentiary burden for the same reason: much of the conduct he refuses to disclose has already been disclosed publicly. By his admission, any retaliation he experienced in response to his attempts to overturn the results of the 2020 presidential election was not the result of lobbying efforts to enact SB 202 or predecessor bills. *See* Mot. at 12. And

even if Mr. Carver's speculative claim that merely sitting for a deposition could expose him to harassment were credible, he has failed to explain how the protective order in this case does not sufficiently address these concerns. *See* Stipulated Protective Order ¶ 7, ECF No. 106 (allowing deposition testimony to be designated as "confidential" or "highly confidential" where appropriate).[5] Thus, Mr. Carver has failed to carry his burden of showing that appearing for a deposition would infringe upon his First Amendment rights.

The cases Mr. Carver cites are not to the contrary: *Perry v. Schwarzenegger* and *Curling v. Raffensperger* involved communications and topics that had not been publicly discussed or disclosed. *See Perry*, 591 F.3d at 1163 (discussing declarations supporting a prima facie showing of chilled associational rights which referred to "personal, non-public communications," and "private thoughts"); *Curling*, 2021 WL 5162576, at *2 (N.D. Ga. Nov. 5, 2021) (considering affidavits in support of First Amendment privilege that were filed under seal and "private communications" that had not been disclosed before); *id.*, No. 1:17-cv-2989-AT (N.D. Ga. Oct. 21, 2021), ECF No. 1190 (affidavits under seal). But here, video recordings of Mr. Carver

---

[5] Plaintiffs recognize that a protective order may not eliminate First Amendment harms, *Perry*, 591 F.3d at 1164, but here, Mr. Carver makes no attempt to establish why a narrower or more limited disclosure of his deposition testimony would present any threat of retaliation, *see id.* at 1160 n.6.

publicly divulging the existence (and substance) of communications regarding his advocacy of SB 202 are available online, including on YouTube and Rumble, and he fails to demonstrate any "objectively reasonable probability" that disclosure of such activities in a deposition would chill associational rights. *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 1160 (D. Kan. 2010).

### C.    Plaintiffs' interest in obtaining discovery outweighs Mr. Carver's belated privilege assertion.

Finally, even if Mr. Carver can make a prima facie showing, the privilege should be overcome, as the highly relevant discovery Plaintiffs seek outweighs the First Amendment concerns Mr. Carver raised at the eleventh hour. *See Perry*, 591 F.3d at 1161 (noting prima facie showing may be overcome if (1) "the information sought is highly relevant to the claims or defenses" in the underlying litigation, (2) the discovery request is "carefully tailored to avoid unnecessary interference with protected activities," and (3) the information sought is otherwise unavailable).

As explained above, Mr. Carver's testimony about the enactment of SB 202 and its predecessor bills is highly relevant to issues before the Court. *See supra* Section I. Plaintiffs' requests are also carefully and narrowly tailored: they have sought only non-privileged information about Mr. Carver's involvement in lobbying for election reform and drafting language for some of the challenged restrictions during the 2021 legislative session. *See supra* Sections II.A, III.A. In fact, many of

the communications that Plaintiffs seek to inquire about were produced in discovery without redaction or any claim of privilege, and it was not until the parties submitted their joint discovery statement to this Court that Mr. Carver raised the First Amendment interests that he now claims are sufficiently weighty to prohibit his deposition wholesale. *See supra* at 5–6. And given the nature of Mr. Carver's personal involvement in the legislative process, this information cannot otherwise be obtained from other sources, including legislators or a GAGOP 30(b)(6) deponent. *See supra* Section II.B. His interest in shielding lobbying efforts and communications with public officials about laws that impact the right to vote of all Georgians thus pale in comparison to the needs of this case, and the important issues before the Court. *See id*.

## CONCLUSION

For these reasons, Plaintiffs request that the Court deny Mr. Carver's Motion to Quash and order Mr. Carver to sit for a deposition.

Respectfully submitted this 23rd day of March, 2023,

Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Joyce Gist Lewis
Georgia Bar No. 296261
Adam M. Sparks
Georgia Bar No. 341578
KREVOLIN & HORST, LLC
1201 W. Peachtree St., NW
One Atlantic Center, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
hknapp@khlawfirm.com
jlewis@khlwafirm.com
sparks@khlawfirm.com

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Jacob D. Shelly*
Spencer Klein*
Tina Meng Morrison*
Melinda K. Johnson*
Marcos Mocine-McQueen*
Raisa M. Cramer*
Samuel T. Ward-Packard*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
unkwonta@elias.law
jshelly@elias.law
sklein@elias.law
tmengmorrison@elias.law
mjohnson@elias.law
mmcqueen@elias.law
rcramer@elias.law
swardpackard@elias.law

*Admitted pro hac vice
Attorneys for Plaintiffs The New
Georgia Project, Black Voters Matter
Fund, Rise, Inc., Elbert Solomon,
Fannie Marie Jackson Gibbs, and
Jauan Durbin*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: March 23, 2023                              */s/ Uzoma N. Nkwonta*
                                                   *Counsel for NGP Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated: March 23, 2023                            */s/ Uzoma N. Nkwonta*
                                                 *Counsel for NGP Plaintiffs*