# Exhibit 13



ELIAS
LAW
GROUP

250 Massachusetts Ave NW, Suite 400 | Washington, DC 20001

February 11, 2023

<u>**VIA E-MAIL**</u>

Baxter D. Drennon
Hall Booth Smith, P.C.
500 President Clinton Ave.
Suite RL 20
Little Rock, AR 72201

**RE:      *In re Georgia Senate Bill 202, No. 1:21-MI-55555-JPB***
            ***Deposition Subpoena to Brad Carver***

Dear Mr. Drennon:

We received your letter concerning the deposition subpoena of Brad Carver. We write to address each of your objections in turn.

*First*, your assertion that this deposition is untimely is erroneous. Fact discovery in this case has not closed. The deadline you reference pertains only to "document and data discovery production" related to the 2022 general and runoff elections. ECF No. 259. The discovery schedule allows for depositions to take place until the close of discovery on March 31, 2023. ECF No. 400. The parties continue to notice and take depositions as of this date. Mr. Carver's deposition is timely.

*Second*, nothing in the Federal Rules of Civil Procedure prohibits Mr. Carver's deposition. Mr. Carver's subpoena seeks information that is relevant to Plaintiffs' claims and proportional to the needs of this case. Fed. R. Civ. P. 26(b). Mr. Carver served on the Election Confidence Task Force. By his own account, he had conversations with Georgia legislators about election reform legislation in early 2021 and lobbied in favor of many of the restrictions now reflected in SB 202. *See* The Madison Forum, *Madison Forum Brad Carver 2021 04 24 Q&A*, Youtube (May 17, 2021), https://www.youtube.com/watch?v=zwhxIFt39LQ. Contemporaneous communications regarding Mr. Carver's involvement in the passage of SB 202 describe him as the "GAGOP lobbyist." *See* GAGOP_0002306. Because Mr. Carver played a major role in the factual narrative that led to this lawsuit, his testimony is highly relevant.

Nor does the fact that Mr. Carver represents a party to this case prohibit this deposition. In fact, the only case you cite in support of your position, *Clough v. Richelo*, 616 S.E.2d 888 (Ga. Ct. App. 2005), makes this exact point. There, the court refused to disqualify an attorney whom defendants claimed would be a necessary witness at trial in part because the attorney had "*not yet been deposed.*" *Id.* at 894 (emphasis added). Moreover, your reliance on *Clough* and the constitutional



250 Massachusetts Ave NW, Suite 400 | Washington, DC 20001

right to choose a lawyer in this case is entirely misplaced because the question of whether an attorney is "likely to be a necessary witness" arises in the context of motions to disqualify, not discovery disputes. *See e.g.*, *id.* at 891; *Befekadu v. Addis Int'l Money Transfer, LLC*, 772 S.E.2d 785, 788 (Ga. Ct. App. 2015). And Plaintiffs have not moved to disqualify Mr. Carver.

In any event, Plaintiffs would have little trouble presenting evidence that Mr. Carver's testimony is necessary. As discussed, Mr. Carver played a significant role in lobbying for legislation that ultimately became SB 202. Throughout this case, legislators have stonewalled nearly every attempt by Plaintiffs to obtain discovery as to the process that led to SB 202 on the grounds of legislative privilege. ECF No. 286. Additionally, as chair of the Election Confidence Taskforce, Mr. Carver is in a unique position to speak to that body's activities. Discovery into these topics is not otherwise available absent Mr. Carver's testimony.

*Third*, the information solicited from Mr. Carver would not be privileged. Mr. Carver has the burden to show that the attorney-client privilege applies to the communications Plaintiffs wish to discuss at his depositions, *see United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991), but that burden has not been met here. At least some of Mr. Carver's work on the Election Confidence Taskforce was in a non-legal capacity: among other things, he chaired the task force, GAGOP_0002962-GAGOP_0002971, and reported on its business at the state Republican convention. GAGOP_0001874. Communications made in Mr. Carver's non-legal capacity are not privileged. *See United States v. Davita, Inc*., 301 F.R.D. 676, 682 (N.D. Ga. 2014) (holding privilege applies only where "the primary purpose of the communication [is] to relay, request or transmit legal advice" and where advice is non-legal, privilege does not apply). Likewise, any communications related to Mr. Carver's advocacy for election-reform legislation constitute lobbying and are therefore not privileged. *See Brantley Cnty. Dev. Partners, LLC v. Brantley Cnty.*, No. 5:19-CV-109, 2021 WL 2678197 at *2 (S.D. Ga. June 29, 2021) ("[t]he discussions in the [emails under review] between counsel, clients, and others is standard lobbying and public relations advice, which is inadequate to invoke the attorney-client privilege."). Your privilege arguments are further undermined by the documents Georgia GOP has produced, many of which include communications involving Mr. Carver. For example, in GAGOP_0002492, Representative Barry Fleming emailed Mr. Carver requesting "language in the form of OCGA code revisions" for each of the Election Confidence Taskforce's reform proposals. Mr. Carver and Representative Fleming do not share an attorney-client relationship. It is also beyond dispute that this document is highly relevant to this case. Plaintiffs are entitled to depose Mr. Carver to inquire as to this and other relevant communications.

*Fourth*, your arguments under Georgia law rely on a statute, O.C.G.A. § 24-9-25, that was repealed by the General Assembly in 2011. HB 24, 2011 Gen. Assemb., Reg Sess., Sec. 2 (Ga. 2011) (effective 2013). But even if the statute had any legal effect, it would not bar Mr. Carver's deposition. The repealed statute only reached testimony as to information an attorney "may have



250 Massachusetts Ave NW, Suite 400 | Washington, DC 20001

acquired from his client by virtue of his employment as attorney or by reason of the anticipated employment of him as attorney." O.C.G.A. § 24-9-25 (repealed 2011). As discussed, Plaintiffs do not seek Mr. Carver's testimony on such matters. Moreover, § 24-9-25 provided (when it was still in effect) that "an attorney shall be both competent and compellable to testify for or against his client as to any matter or thing, the knowledge of which he may have acquired in any other manner." O.C.G.A. § 24-9-25 (repealed 2011); *see also Amwest Sur. Ins. Co. v. Interstate Const. Co.*, 442 S.E.2d 772, 774 (Ga. Ct. App. 1994) (attorneys were competent, under § 24-9-25, to testify as to knowledge concerning the case acquired "in a capacity other than as [a party's] attorneys"). Thus, § 24-9-25 would in fact authorize Mr. Carver's testimony about information learned in his roles as chair of the Election Confidence Task Force and lobbyist for Georgia GOP.

*Finally*, there is no basis for sanctions, and your threat to seek them is itself improper. You assert that the deposition of Mr. Carver has an "improper purpose," but you do not indicate what that improper purpose might be, and we cannot conceive of one. As the chair of the Election Confidence Taskforce and a major advocate in favor of election reform in Georgia in early 2021, Mr. Carver is an important, and likely necessary, witness. And save for your meritless arguments concerning the witness-advocate rule, you offer nothing to suggest that the deposition would impose undue burden or expense.

We remain available discuss these issues. Please inform us of your availability in the next week for a meet and confer.

Sincerely,

Uzoma Nkwonta