**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |

**REPLY IN SUPPORT OF MOTION TO QUASH**
**SUBPOENA TO DEPOSE BRAD CARVER**

Plaintiffs cannot justify their attempt to depose a lawyer for the other side. Their request must satisfy heightened scrutiny. *See* Motion (Dkt. No. 493) at 6-8. To depose Mr. Carver, Plaintiffs must show that his testimony is highly relevant to an important issue, that they have no other means to obtain the information, and that the deposition would not devolve into privilege fights.

Plaintiffs' opposition essentially admits that they fail to meet this standard. They insist that Mr. Carver's testimony could be relevant to several factors under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977). *See* Opposition (Dkt. 504) at 6-8. But they fail to link any information that they hope to garner from Mr. Carver to any factor under *Arlington Heights*. Instead, they argue that their assertion is supported by a recent Eleventh Circuit precedent finding the advocacy efforts of private individuals relevant. *Id.* at 7-8. They leave out, however, that those private individuals went on to *become* the relevant state actors. *See Stout ex rel. Stout v. Jefferson Cnty. Bd. of Educ.*, 882 F.3d 988, 1008 (2018).

1

Even if the testimony were relevant, Plaintiffs could not justify the heavy burden that their deposition would impose on litigation counsel. They assert that the law's protections for litigation counsel do not apply because Plaintiffs are seeking information about pre-litigation activities, *see* Opp. at 9-10, but multiple decisions have recognized that pre-litigation activities are protected, *see, e.g.*, *See W. Peninsular Title Co. v. Palm Beach Cnty*, 132 F.R.D. 301, 303 (S.D. Fla. 1990); *N.F.A. Corp. v. Narrow Fabrics, Inc.*, 117 F.R.D. 83, 86 (M.D.N.C. 1987). Nor can they claim that they first exhausted other avenues, as the law requires, since they sought Mr. Carver's deposition weeks before noticing a Rule 30(b)(6) deposition of GAGOP (a deposition that just occurred yesterday).

Finally, Plaintiffs insist that Mr. Carver cannot invoke First Amendment privilege because he has discussed "topics" related to his election-reform efforts. *See* Opp. at 16-18. But the First Amendment privilege does not apply to topics. The privilege requires an inquiry into the information that Plaintiffs seek, and there is no allegation that Mr. Carver has publicly discussed that information. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010). If he were forced to by order of this Court, it would chill both his advocacy and the advocacy of others.

This Court should quash or significantly limit the subpoena.

## ARGUMENT

### A. Plaintiffs have failed to show how Mr. Carver's testimony is relevant.

Plaintiffs have failed to show that Mr. Carver's testimony would be "highly relevant." Opp. at 6. They do not dispute that their claims turn on the *legislature*'s motives. *See* Opp. at 6-8. Since even the views of key legislators are of questionable relevance in this inquiry, *see Greater Birmingham Ministries v. Sec. of State for Ala.*, 992 F.3d 1299, 1325 (11th Cir. 2021), Mr. Carver's testimony is of microscopic, if any, relevance.

Still, Plaintiffs speculate that Mr. Carver's testimony might be relevant under *Arlington Heights*. Opp. at 6-8. Mr. Carver's testimony, Plaintiffs' assert, might "provide information relevant to several *Arlington Heights* factors." *Id.* at 7. It also might be relevant "to the motivations behind" SB202. *Id.*

Plaintiffs' speculation falls far short. While they insist that his testimony might provide relevant information to "several *Arlington Heights* factors," they fail to identify any factor that Mr. Carver's testimony would relate to. *See id.* at 6-8. And their speculation seems to confirm that their view of relevance is colored by a misunderstanding of the issues in this case. The *Arlington Heights* factors are not aimed at "the motivations behind" a law. *Id.* at 7. Evidence is relevant only if they point to "*the* legally dispositive intent of the entire" legislature. *Greater Birmingham*, 992 F.3d at 1325.

Plaintiffs insist that the Eleventh's Circuit's decision in *Stout* shows the relevance of Mr. Carver's testimony. But that decision reaffirmed that "only a state actor" can have the relevant discriminatory motive, and that a court should *not* rely on the motives of private actors "when there is no showing that the voters' sentiment can be attributed ... to state actors." *Stout*, 882 F.3d at 1007.

True, the Eleventh Circuit found that private statements were relevant in *Stout*. But those statements had a much closer relationship to the challenged government action. Most importantly, the statements *were* made by state actors, just before they assumed those roles. *Id.* at 995. The question in *Stout* was whether the Gardendale School Board had a discriminatory purpose when it sought to withdraw from Jefferson County Schools. *Id.* at 9. The Court upheld the district court's reliance on statements made—or in a handful of cases moderated—by a group of four "secession leaders" pushing for the formation of a new school district. *Id.* at 1007-08. These secession leaders had "put the mayor and city council in a head lock until they came to their own conclusions that the school system would have to happen." *Id.* at 1008. After creation of the Gardendale School Board, those "secession leaders became members of the Greendale Board and advisory board," *id.* at 1008, and one became President of the Board, *see id.* at 995.

Mr. Carver's views do not have a similar relationship with the enactment of SB202. Most obviously, Mr. Carver never served in an official government role and has no plans to become a Georgia legislator. Instead, Plaintiffs acknowledge that he "champion[ed] ... electoral reforms" as a private citizen. Opp. at 8. Nor can they suggest that Mr. Carver put the legislature in a "head lock" to obtain his singular goal. *Stout*, 882 F.3d at 1008. Instead, they say that some of the enacted reforms "sprang" from efforts led by Mr. Carver. *Id*. That assertion, even if it were true, is not the kind of private activity that the Eleventh Circuit found relevant in *Stout*. *Cf. Brnovich v. Democratic National Committee*, 141 S. Ct. 2321, 2350 (2021) ("The cat's paw theory,'" which treats an actor as "dupe" accomplishing the goals of a third party, "has no application to legislative bodies.").

### B. Plaintiffs cannot satisfy the heightened requirements for deposing litigation counsel.

A request to oppose an opposing party's attorney—especially litigation counsel—must satisfy "special scrutiny." *Gaddy v. Terex Corp.*, 2015 WL 13545486, at *2 (N.D. Ga. Oct. 28). Before obtaining this kind of deposition, a party must show that they need the information, that the work is not privileged, and that they lack other means to obtain it. *See Shelton v. Am. Motor Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Official Comm. of Unsecured Creditors of Hechinger Inc. Co. of Del. v. Friedman*, 350 F.3d 65, 72 (2d Cir. 2003). Plaintiffs' opposition confirms that they cannot satisfy these requirements.

5

### 1. Plaintiffs are not excused from meeting the standard for a deposition of litigation counsel.

Plaintiffs argue that they should not be required to meet this heightened standard because they seek to depose Mr. Carver about pre-litigation conduct. But courts apply the same principles to counsel's pre-litigation conduct. *See West Peninsular Title*, 132 F.R.D. at 303 (barring deposition about pre-litigation letters); *N.F.A. Corp.*, 117 F.R.D. at 86 (barring deposition about a pre-litigation opinion).

Nor would it make sense to exclude pre-litigation conduct from the heightened standard. The reasons for a heightened standard are present whether opposing counsel will testify about pre- or post-litigation conduct. A deposition about pre-litigation conduct is just as likely to "detrac[t] from the quality of client representation" by distracting counsel. *D.O.T. Connectors, Inc. v. J.B. Nottingham & Co. Inc.*, 2001 WL 34104929, at *1 (S.D. Fla. Jan. 22) (quoting *Shelton v. Am. Motor Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). And the risk that questions will delve into privileged material is inherent in a deposition of litigation counsel. *See West Peninsular Title*, 132 F.R.D. at 303.

Plaintiffs' suggestion that the cases support a different standard for inquiries into pre-litigation conduct is meritless. They first cite a decision that rejects both *Shelton* and any other standard that resembles the approach courts have adopted to counsel depositions in recent decades. *See Kaiser v. Mutual Life Ins. Co. of New York*, 161 F.R.D. 378, 382 (S.D. Ind. 1994) (rejecting

a "stricter standard"). Even if that case were good law, it states only that an attorney who "is a witness of or actor in prelitigation conduct ... may be deposed the same as any other witness," *id.* at 382, not that the *Shelton* standard would not have to be satisfied before that deposition could occur. To the extent the court suggested otherwise, it was wrong. Two of the four decisions that it cites actually applied *Shelton* to bar a counsel deposition about pre-litigation conduct. *See West Peninsular Title*, 132 F.R.D. at 303; *N.F.A.*, 117 F.R.D. at 86. Another case never adopted the *Shelton* test but applied another test that required special showings to depose counsel. *Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, (D.N.J. 1990).

Plaintiffs' only other support is a handful of ambiguous statements about the application of *Shelton* in inapposite cases. They cite a case that said *Shelton* "does not bar" a counsel deposition about pre-litigation conduct while affirming a magistrate judge under a deferential standard. *Bogan v. Northwestern Mutual Life Ins. Co.*, 153 F.R.D. 9, 14 (S.D.N.Y. 1993). And they cite two cases that say a party has "reason to expect that the attorney's deposition may be expected." *Sadowski v. Gudmundson*, 206 F.R.D. 25, 26 (D.D.C. 2002) (quoting *United Phosphourous, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995)). Neither of those cases involved the question whether litigation counsel could be deposed about pre-litigation activities. *See Sandowski*, 206 F.R.D. at 26 (addressing meeting after litigation had begun); *United*

7

*Phosphorous*, 164 F.R.D. at 249-50 ("The issue in this case is not whether opposing counsel's deposition will be taken."). These ambiguous statements from largely irrelevant cases do not support Plaintiffs' attempt to escape *any* heightened scrutiny over their deposition of litigation counsel.

In any event, Plaintiffs do not dispute that Mr. Carver's status as a non-party weighs against his deposition. *See Jordan v. Comm'r, Miss. Dept. of Corrs.*, 947 F.3d 1322, 1337 (11th Cir. 2020). So at a minimum, the must make some showing to overcome the weight of Mr. Carver's status as a non-party.

### 2. Plaintiffs cannot satisfy the special scrutiny applied to depositions of litigation counsel.

Plaintiffs next argue that they have should be allowed to depose Mr. Carver even under the standard applied to depositions of opposing counsel because they have no other means of obtaining highly relevant information. *See* Opp. at 11-14. But they have failed to make that showing.

Plaintiffs speculate that they have no other means to obtain the information that they seek from Mr. Carver's deposition, but they have failed to try obvious alternatives. Most notably, Mr. Carver acted only on behalf of the GAGOP as chair of its Election Confidence Task Force. Plaintiffs could ask a representative of GAGOP about Mr. Carver's activities. *See* Fed. R. Civ. P. 30(b)(6). But they failed to notice a Rule 30(b)(6) deposition of GAGOP until several weeks after seeking deposition from Mr. Carver.

8

Plaintiffs insist that a Rule 30(b)(6) deposition is not an adequate alternative because it is "unlikely" that a 30(b)(6) deponent will be able to speak to Mr. Carver's "conversations with lawmakers and other matters to which only he would have direct knowledge." Opp. at 13. But this argument misunderstands Plaintiffs' burden to obtain a deposition of litigation counsel. Courts have required "exhaustion of all reasonable alternatives before a party should seek to depose his opponent's attorney." *M&R Amusements Corp. v. Blair*, 142 F.R.D. 304, 306 (N.D. Ill. 1992). "[O]ther persons who have the information ... should be deposed first." *N.F.A.*, 117 F.R.D. at 86. And "other methods ..., which do not involve the same dangers as an oral deposition, should be employed. *Id*. For this reason, courts have rejected attempts to depose opposing counsel before other depositions that could provide an alternative occur. *See N.A. Med. Corp. v. Axiom Worldwide, Inc.*, No. 1:06-cv-1678-JEC, 2010 WL 11509356, at \*9 (N.D. Ga. June 25, 2010).

Nor can Plaintiffs show that a deposition of Mr. Carver would not touch on privileged information. To begin, the risk that privileged topics will be discussed is inherent in depositions of opposing counsel. *See N.A. Med. Corp.*, 2010 WL 11509356, at \*9. It is "obvious ... that a deposition question" could cause an attorney to "discuss an area of his involvement in preparing for th[e] case," even when that is not the topic of the deposition. *West Peninsular Title*, 132 F.R.D. at 303. Here, too, the risk of delving into privileged information is high.

9

In addition to serving as litigation counsel, Mr. Carver provided legal advice on legislative proposals in his role as counsel to GAGOP. And his work to develop and advocate for those proposals is protected by the First Amendment privilege.

Plaintiffs have provided no response to these privilege risks. They never even mention the inherent risk to privileged information posed by depositions of litigation counsel. *See, e.g.*, Opp. at 13-14. As for Mr. Carver's role providing legal advice on legislative proposals, Plaintiffs falsely assert that the motion to quash does "not appear to further press" that "attorney-client privilege argument." *Id.* at 14 n.4. The motion clearly argues that the threat to privileged information is "even greater" because "Mr. Carver provided legal advice on legislative proposals" in his work for GAGOP. *See* Mot. at 9.

Plaintiffs also fail to address any of the other costs that weigh against a deposition of litigation counsel. A "deposition of opposing counsel detracts from the quality of client representation" by distracting the efforts of counsel. *D.O.T. Connectors*, 2001 WL 34103929, at *1 (quoting *Shelton*, 805 F.2d at 1327). It also "constitutes an invitation to delay, disruption of the case, harassment, and perhaps disqualification of the attorney." *Gaddy*, 2015 WL 13545486, at *2 (N.D. Ga. Oct. 28). This case highlights the risks of opening this Pandora's box since Plaintiffs have already sought discovery from another litigation

10

attorney—Bryan Tyson, who represents the state of Georgia. But Plaintiffs never even mention those costs. *See* Opp. at 11-15.

Finally, Plaintiffs have failed to show that deposing Mr. Carver is important to their case. They assert that Mr. Carver's deposition is "important to the *Arlington Heights* analysis for determining the intent behind SB202 and predecessor bills." Opp. at 13. But as explained previously, they have failed to link any information that they seek from Mr. Carver to any of the *Arlington Heights* factors. Thus, they have failed to meet their burden to show that the information would be important in assessing their case. *See West Peninsular Title*, 132 F.R.D. at 302.

### C. Plaintiffs' attempts to evade the First Amendment privilege are meritless.

#### 1. The privilege applies to information, not topics.

Plaintiffs' argument that Mr. Carver cannot invoke the First Amendment privilege because he had discussed the "topic" of election reform rests on a basic misunderstanding of the privilege. *See* Opp. at 16-17. The privilege applies to "information," not topics. *See In re Motor Fuel Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1152 (D. Kan 2010). The question is "whether disclosure of the information will have a deterrent effect." *Perry*, 591 F.3d at 1162. For example, "internal campaign communications" receive protection even when the involved individuals were the "official proponents" of a policy and had litigated to defend that policy. *Id*. at 1152, 1162-63.

11

Plaintiffs' opposition illustrates that they seek to depose Mr. Carver about information that is protected by the First Amendment privilege. Plaintiffs point to Mr. Carver's discussion about certain "topics." Opp. at 16. They also rely on a statement that a meeting with legislators took place and a general description of one legislative leader as a "prou[d] champion." *Id*. Finally, they point to two anecdotes about discussions of specific proposals—one with a legislative leader and one internal to the GAGOP. *Id*. at 17. But they do not suggest that a deposition will be limited to the information that Mr. Carver has previously discussed. Instead, they argue that they should be able to depose him because he was "one of the leading champions of electoral reform efforts." *Id*. at 8. And regardless, limited reporting about some information does not mean that "disclosure of" information about the rest of Mr. Carver's activities will not "have a deterrent effect." *Perry*, 591 F.3d at 1162.

### 2. Disclosure would chill associational rights.

Plaintiffs' argument that Mr. Carver's associational rights would not be chilled by a deposition fails for similar reasons. Plaintiffs assert that Mr. Carver's communications were not private because he has discussed them publicly. *See* Opp. at 19. And they assert that any harassment Mr. Carver faces will not be a result of the deposition because he is already publicly associated with SB202. *See* Opp. at 20-21.

This argument misunderstands the First Amendment privilege. First, it repeats Plaintiffs' conflations above. Plaintiffs again leap from *some* information about Mr. Carver's advocacy being public to the conclusion that *none* of his communications were "private." Opp. at 19. That is not how First Amendment privilege works; it applies to the particular communications or information being sought.

Second, the question is not just whether Mr. Carver would be deterred but also whether others would be deterred from associating with Mr. Carver and others in a similar position. Mr. Carver's testimony about internal communications "would have the practical effects of discouraging political association and inhibiting internal … communications" because others would be less willing to talk with Mr. Carver or anyone in a similar position. *Perry*, 591 F.3d at 1163. His testimony could also "affect the willingness of legislators, experts, organizations, and voters, to associate" with Mr. Carver or anyone in a similar role. *Curling v. Raffensperger*, 2021 WL 5162576, at *1-2 (N.D. Ga. Nov. 5) (finding that discussions with legislators were privileged). Though the motion to quash highlights these deterrent effects, *see* Mot. at 12-13, Plaintiffs have failed to address them, *see* Opp. at 18-20. That omission was likely deliberate, since Plaintiffs have relied on a robust understanding of First Amendment privilege throughout discovery in this case.

### 3. Plaintiffs had no interest that outweighs Mr. Carver's First Amendment privilege.

Finally, Plaintiffs argue that their interest in deposing Mr. Carver should outweigh Mr. Carver's First Amendment rights. *See* Opp. at 21-22. But as explained previously, Plaintiffs have struggled to explain how Mr. Carver's testimony is relevant, let alone how they have a "compelling need" for it. *In re Motor Fuel Temperature Sales*, 707 F. Supp. 2d at 1151. They speculate that he might have information relevant to the legislature's intent, but they fail to explain how any piece of information that they could seek in a deposition might be relevant to that inquiry. *Id* at 6-7.

### D. If nothing else, Plaintiffs' opposition confirms that narrow limits are needed for any deposition of Mr. Carver.

Plaintiffs' opposition highlights the need to, at a bare minimum, severely narrow any deposition of Mr. Carver. *See* Fed. R. Civ. P. 45(d)(3). Without pointing to any specific information that they hope to elicit or explaining how that information could be linked to the *legislature's* intent, Plaintiffs indicate that they seek to engage in a broad inquiry into "the motivations" behind SB202. Opp. at 7. Moreover, their arguments suggest that they will inquire into privileged information. They assert that none of the advice Mr. Carver gave during the consideration of election-reform proposals is attorney-client privileged. *See* Opp. at 14 n.4. And they argue that the First Amendment

14

privilege does not protect "topics" that Mr. Carver has discussed in public. Opp. at 15.

To avoid a wide-ranging inquiry into irrelevant and privileged information, any deposition of Mr. Carver should be limited to the relevant and non-privileged information that he might have. Specifically, his deposition should be limited to communications with Georgia legislators. And because Plaintiffs' opposition focuses on topics that Mr. Carver has already discussed publicly, the deposition should be further narrowed to communications with Georgia legislators that Mr. Carver has already discussed publicly.

## CONCLUSION

For all these reasons, this Court should quash the subpoena seeking deposition testimony from Mr. Carver. In the alternative, the subpoena should be modified to limit the deposition to Mr. Carver's non-privileged communications with Georgia legislators that have already been referenced publicly.

Dated: March 30, 2023                               Respectfully submitted,

                                                    */s/ Baxter D. Drennon*

Tyler R. Green*                          John E. Hall, Jr.
Cameron T. Norris*                          Georgia Bar No. 319090
CONSOVOY MCCARTHY PLLC                   William Bradley Carver, Sr.
1600 Wilson Boulevard, Suite 700            Georgia Bar No. 115529
Arlington, Virginia 22209                Baxter D. Drennon
(703) 243-9423                              Georgia Bar No. 241446
                                         Jake Evans
Alex Benjamin Kaufman                       Georgia Bar No. 797018
CHALMERS, ADAMS, BACKER & KAUF-          HALL BOOTH SMITH, P.C.
MAN, LLC                                 191 Peachtree Street NE, Suite 2900

15

11770 Haynes Bridge Road  Atlanta, Georgia 30303
Ste #G205-219  (404) 954-5000
Alpharetta, GA 30009  (404) 954-5020 (Fax)
404-964-5587

*pro hac vice

*Counsel for Intervenor GAGOP*

16

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

/s/ *Baxter D. Drennon*

## CERTIFICATE OF SERVICE

On March 30, 2023, I e-filed this document on ECF, which will email everyone requiring service.

/s/ *Baxter D. Drennon*