**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*, <br><br>*Plaintiffs*, <br>v. <br>BRIAN KEMP, Governor of the State of Georgia, in his official capacity, *et al.*, <br><br>*Defendants*, <br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br>*Intervenor-Defendants.* | Civil Action No.: 1:21-cv-01284-JPB |
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br>*Plaintiffs*, <br>v. <br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*, <br><br>*Defendants*, <br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br>*Intervenor-Defendants.* | Civil Action No.: 1:21-cv-01259-JPB |

**AME & GEORGIA NAACP PLAINTIFFS' BRIEF IN SUPPORT OF
RENEWED MOTION FOR A PRELIMINARY INJUNCTION**

## INTRODUCTION

On August 19, 2022, this Court held that Plaintiffs were "substantially likely to succeed on the merits" of their claim that Georgia Senate Bill ("S.B.") 202's criminal prohibition on providing food and drink to voters waiting in line ("line relief") violates the First Amendment as it applies to individuals more than 150 feet from the outer edge of a polling place but within 25 feet from any voter (the "Supplemental Zone"). ECF No. 241 at 56. Nevertheless, it declined to enjoin the ban on line relief in the Supplemental Zone for the "November 2022 general elections and any related early voting period and runoff elections." *Id.* at 74 n.30. The Court withheld a preliminary injunction solely because it determined that, under "the *Purcell* doctrine," *id.* at 71, there was a risk that implementing a change a few months before the election "would impair the state's interests in avoiding voter confusion," *id.* at 72; *see Purcell v. Gonzalez*, 549 U.S. 1 (2006).

Now, with respect to relief for 2024 elections and beyond—with almost a year before Georgia's next likely statewide primary election[1] and over 18 months before the next statewide general election—the *Purcell* doctrine is not implicated. Yet, the merits of Plaintiffs' challenge to the line relief ban in the Supplemental Zone have

---

[1] To date, Georgia's Presidential Preference Primary has not been set but is unlikely to happen until March of 2024 according to Defendants. *See* ECF No. 487 at 9 n.7.

not changed, and the equitable factors still strongly favor an injunction. Indeed, the evidence revealed during months of discovery tilts the balance even more in Plaintiffs' favor. For example, two of the State Defendants' witnesses—who had testified during the July 2022 preliminary injunction hearing—have now affirmed that the ban was primarily focused on addressing concerns related to the area that extends 150 feet from the outer edge of any building (the "Buffer Zone") rather than the Supplemental Zone. Germany Dep. 96–98, 100 (Ex. A); Mashburn Dep. 93–94 (Ex. B). Mr. Germany also confirmed the ban was enacted for content-based reasons: fear that voters would perceive line relief as attempts at partisan influence, irrespective of partisan intent. Germany Dep. 96–98. Several county election officials, including State Defendants' witness Lynn Bailey, similarly focused their purported concerns with line relief on the 150-foot zone rather than the Supplemental Zone, *see* Bailey Dep. 140 (Ex. C); Athens-Clarke Dep. 151–52 (Ex. D), or expressed no concerns about line relief occurring, *see* Kidd Dep. 137 (Ex. E).

Plaintiffs therefore renew their Preliminary Injunction Motion to enjoin S.B. 202's line relief ban within the Supplemental Zone for 2024 elections and beyond.[2] That injunction should be in place even if no trial is completed by that time.

---

[2] Plaintiffs maintain the portion of their First Amendment claim as to the zone within 150 feet of the polling place entrance, but they do not renew it in this motion.

## BACKGROUND

Plaintiffs incorporate by reference their factual evidence and briefing from their initial preliminary injunction motion, *see* ECF Nos. 171, 171-1–27, 216, 216-1–5, and do not repeat it here for efficiency purposes. Plaintiffs address relevant new evidence obtained during discovery below.

## ARGUMENT

A preliminary injunction issues when the moving party demonstrates: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) injury to the movant that outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) the injunction would not be adverse to the public interest. *See Keeton v. Anderson-Wiley*, 664 F.3d 865, 868 (11th Cir. 2011). This Court already found that each factor decisively favors an injunction against enforcement of the line relief ban in the Supplemental Zone, and that only election-timing considerations precluded issuing such an injunction. *See generally* ECF No. 241. With fact discovery closed, the evidence continues to support Plaintiffs on all factors, while the *Purcell* doctrine is not yet implicated for 2024 elections. Therefore, Plaintiffs should prevail on their renewed motion.

I.  **Plaintiffs Are Likely To Succeed On The Merits Of Their Claim.**

   A.  **S.B. 202's Line Relief Ban Criminalizes Speech And Expressive Conduct That Is Protected Under The First Amendment.**

S.B. 202 makes it a crime to "offer to give" food and drink to voters waiting in line. O.C.G.A. § 21-2-414(a). That prohibition restricts both verbal speech and expressive conduct. First, by criminalizing the utterance of particular words and phrases, the law plainly imposes First Amendment burdens.

Second, constitutional protection for freedom of speech "does not end at the spoken or written word" but also protects expressive conduct. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). As this Court recognized, in determining whether conduct qualifies as expressive, "the Supreme Court confirmed in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 'a narrow, succinctly articulable message is not a condition of constitutional protection.' 515 U.S. 557, 569 (1995)." ECF No. 241 at 32. Rather, nonverbal acts intended to convey a message where "at least some" viewers would understand those acts to communicate *some* message qualify, even if they would not "necessarily infer a *specific* message." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004); ECF No. 241 at 32; *see also NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1217 (11th Cir. 2022) (reaffirming this standard for evaluating whether conduct is expressive under the First Amendment).

This Court found "substantial evidence that Plaintiffs intend to convey a message that voting is important and that voters should remain in line to ensure their participation in the democratic process," and that the "evidence is also clear that voters infer 'some' message from Plaintiffs' efforts." ECF No. 241 at 31. It also correctly found that "the context of the activities in this case largely mirrors the context of the food-sharing events in *FLFNB*," a case in which the Eleventh Circuit found the plaintiffs' food distribution conduct at a park to be expressive. *Id.* at 32 (citing *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235 (11th Cir. 2018) ("*FLFNB*")). Subsequently, another federal court endorsed this Court's "well-reasoned and thorough opinion" in holding that New York's line-relief prohibitions against provision of food or drink valued at more than $1 covered expressive conduct protected under the First Amendment. *Brooklyn Branch of Nat'l Ass'n for Advancement of Colored People v. Kosinski*, No. 21 CIV. 7667 (KPF), 2023 WL 2185901, at *11 (S.D.N.Y. Feb. 23, 2023) ("*Brooklyn NAACP*").

Nothing in discovery has rebutted this Court's prior finding. As one County Defendant official explained in deposition, groups that performed line relief in Cobb County appeared to want direct contact with voters, rather than to provide food and drink to election officials to hand out to voters. Cobb Dep. 139–40 (Ex. F). This official's testimony thereby confirms both the expressive intent underlying line relief

activities and the message that those activities are intended to communicate to voters. And the record still "shows that beneficiaries of Plaintiffs' line warming activities understand the general purpose and message underlying Plaintiffs' efforts." ECF No. 241 at 11. Plaintiffs' line relief efforts therefore remain expressive conduct protected by the First Amendment.

### B. Strict Scrutiny Applies Because The Line Relief Ban Is A Content-Based Restriction Of Speech In A Public Forum.

This Court correctly recognized that restrictions which "are justified only by reference to the content of the regulated speech are subject to strict scrutiny." *Id.* at 34. It recognized that under "Supreme Court precedent, '[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.' *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). 'The government's purpose is the controlling consideration.' *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)." ECF No. 241 at 35. Even "facially content-neutral laws can nevertheless be content-based if they 'cannot be "justified without reference to the content of the regulated speech"' or if they 'were adopted by the government "because of disagreement with the message [the speech] conveys."' *Reed*, 576 U.S. at 164 (alteration in original)." ECF No. 241 at 37.

The Court held that the line relief ban is a content-based restriction because (1) it "prohibits a specific category of speech or conduct around a polling place—

offering or giving items to voters waiting in line"—and (2) the "impetus" and "stated purpose" of the ban concerns what "volunteers were communicating to voters and that line warming activities could . . . be perceived as improper electioneering, political pressure or intimidation." [3] *Id.* at 38–39. Additionally, the ban "prohibits expression that offers to provide or actually provides items to voters in line, while it allows other forms of expression to those same voters that do not offer or provide such items." *Id.* at 40. The *Brooklyn NAACP* court agreed, for similar reasons, that New York's ban was content-based. *See* 2023 WL 2185901, at *14 ("Because the Line Warming Ban uniquely targets Plaintiff's intended communication, but permits expression on other topics, it is a content-based regulation.") (citations omitted).

Fact discovery—which is now complete—has further confirmed this Court's findings and holding. Key defense witness and former General Counsel to the Secretary of State Ryan Germany even admitted during his deposition that the ban was driven by concerns about perceptions of political influence (regardless of partisan intent) by those providing line relief. Germany Dep. 96–97. In other words,

---

[3] The Court also correctly held that Plaintiffs conducted their line relief activities in a public forum. *See id.* at 32 n.16; *Burson v. Freeman*, 504 U.S. 191, 196 (1992) (describing a law restricting speech within 100 feet of a polling place as operating "in quintessential public forums").

the ban was motivated by concerns about the content of the speech, making it a content-based restriction subject to strict scrutiny.

### C. The Line Relief Ban In The Supplemental Zone Cannot Survive First Amendment Scrutiny.

Criminalizing the provision of food and water to voters waiting in line outside the 150-foot zone is unjustifiable no matter the level of First Amendment scrutiny, and particularly the applicable strict scrutiny standard. In its prior ruling, this Court applied the modified strict scrutiny standard from *Burson v. Freeman*, 504 U.S. 191 (1992), which "lowered the narrow tailoring requirement," ECF No. 241 at 43, to ask whether the restriction represents an unreasonable and "significant impingement" on First Amendment rights. This Court correctly found that prohibiting line relief "in the Supplemental Zone is unreasonable and significantly impinges on Plaintiffs' constitutional rights," *id.* at 56, because it applies no matter the distance from the poll entrance, *id.* at 55.

Additional evidence obtained in discovery further supports the unreasonable nature of the Supplemental Zone ban. In depositions, the State Defendants' own witnesses from the preliminary injunction hearing focused their testimony on the Buffer Zone as the reason for, and focus of, the line relief ban. Defendant State Election Board Member Mashburn, for example, testified that the line relief ban was intended to create a bright-line rule because of an increasing number of "incursions

into the hundred and fifty foot" zone. Mashburn Dep. 93–94. Both Defendant Mashburn and Ryan Germany also referred to the historical precedent of restrictions within "150 feet away from the polling place" and the 150-foot "bubble," Germany Dep. 100–101; State Elections Bd. Dep. 103–04 (Ex. G), without even addressing the Supplemental Zone ban.

Some election officials had no concern with line relief occurring even within the 150-foot zone, let alone the Supplemental Zone. As one example, Douglas County Elections Director Milton Kidd testified that he did not understand the line relief ban because it "was very useful for Douglas County to be able to have external organizations [provide line relief] and not have to worry about that as an organizational function with all that is going on at a polling location." Kidd Dep. 137.[4] Yet even those administrators who preferred a 150-foot ban distinguished it from a ban in the Supplemental Zone. Defendants' witness and former Richmond County Elections Director Lynn Bailey testified that, when she was Director, her "instruction was always keep it outside 150 feet, and then do what you want." Bailey

---

[4] *See also* Decl. of Dwight C. Brower (ECF No. 171-5) ¶ 9 ("During my time as a senior election administrator in Fulton County, I neither saw nor heard any evidence that volunteers who were providing water or food at a polling location attempted to influence individuals' votes. Laws and policies that were in place prior to the enactment of SB 202 banning electioneering within a certain distance of a polling location adequately addressed concerns about any potential instances of electioneering and vote-buying.").

Dep. 140. And Defendant Athens-Clarke Elections Director Charlotte Sosebee testified that she "wouldn't have a problem" with line relief in the Supplemental Zone. Athens-Clarke Dep. 151–52.

Because the Supplemental Zone ban criminalizes Plaintiffs' First Amendment activities limitless distances from the polls, and because there is no evidence the ban is necessary or even useful, it fails even the *Burson* modified strict-scrutiny test.

## II.     The Remaining Factors Weigh Heavily In Plaintiffs' Favor

Each remaining factor decidedly favors granting a preliminary injunction, as Plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief," the "balance of equities tips in [their] favor," and "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

After discovery, it remains true that the line relief ban "has already deterred Plaintiffs and other organizations from engaging in line warming activities," and "[b]ecause the lost opportunity for expression cannot be remedied after the fact, . . . the irreparable harm factor of the preliminary injunction test is satisfied as to . . . the Supplemental Zone." ECF No. 241 at 59. As Plaintiffs' declarations show, the ban even for the Supplemental Zone prevented them from conducting line relief during the 2022 elections, and, absent a preliminary injunction, will prevent them from resuming line relief in 2024 and beyond. *See* Briggins Decl. ¶¶ 8–9 (Ex. H); Jackson

Decl. ¶¶ 12–15 (Ex. I); Khabani Decl. ¶¶ 14–15 (Ex. J); Mattox Decl. ¶¶ 7–8 (Ex. K); Kilanko Decl. ¶¶ 5, 10 (Ex. L).

This high risk of irreparable harm remains in part because long lines continue to be an issue in Georgia elections. Not only has "Georgia has historically had a very bad problem with line length," State Elections Bd. Dep. 95, but in the 2022 general election runoff, "[t]here were areas that saw long lines," according to State Elections Director Blake Evans. Evans Dep. 181 (Ex. M). For example, Cobb County had waits at some locations of "up to two hours." Cobb Dep. 135. In Gwinnett County, it was still "somewhat common" to have wait times over an hour, and lines during the runoff "[d]efinitely" extended beyond 150 feet from the polls. Gwinnett Dep. 41 (Ex. N); *see also* Fulton Dep. 206 (Ex. O) (lines over an hour during same period); Pettigrew Jan. 2023 Expert Report 35 (Ex. P) (showing data that on the Friday before the runoff, 21 of 24 Fulton County early voting locations had waits of at least over 60 minutes, and 11 of 16 sites in DeKalb County had wait times of over an hour).

Because an "infringement of First Amendment rights balances the equities in Plaintiffs' favor, and neither Defendants nor the public have a legitimate interest in enforcing an unconstitutional statute[,] . . . Plaintiffs have satisfied their burden as to the third and fourth prongs of the preliminary injunction test." ECF No. 241 at 61.

### III. The *Purcell* Principle Does Not Weigh Against The Limited Relief Sought Here Because No Election Is Close At Hand.

In its ruling on Plaintiffs' prior motion, the Court declined to issue a preliminary injunction as to the Supplemental Zone solely because "the *Purcell* doctrine preclude[d] the issuance of an injunction at th[at] time." *Id.* at 71. Without any trial date set or summary judgment deadline, Plaintiffs now seek relief for elections occurring in 2024 (and beyond to the extent no final relief has been ordered) to avoid *Purcell* problems a second time. According to Defendants, Georgia's "Presidential Preference Primary . . . is not likely to happen until March" 2024, ECF No. 487 at 9 n.7, and the next presently scheduled statewide election is not until the week of May 20, 2024, *see* O.C.G.A. § 21-2-150. With eleven months until the earliest possible affected election, *Purcell* is simply not implicated.[5] *Compare Wisc. Legislature v. Wisc. Elections Comm'n*, 142 S. Ct. 1245, 1248 (2022) (awarding relief on constitutional claim and ordering new maps drawn just

---

[5] Plaintiffs would also meet each prong of Justice Kavanaugh's four-part *Purcell* test from his *Merrill v. Milligan* stay concurrence if it applied, but Justice Kavanaugh sought to apply this test only "with respect to an injunction issued close to an election . . . ." 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). The cases Justice Kavanaugh cited all involved injunctions within a few months of Election Day. *See id.* at 880. In *Merrill* itself, it was the interceding deadlines in the "seven weeks" before absentee voting that raised concern, not the four months to Election Day. *Id.* at 879–80. Because Plaintiffs seek relief over 11 months before any potential election, this test is inapplicable.

under five months before the election), *and Jacksonville Branch of NAACP v. City of Jacksonville*, No. 3:22-CV-493-MMH-LLL, 2022 WL 7089087, at *4 (M.D. Fla. Oct. 12, 2022) ("application of the *Purcell* principal is not warranted" where "the election itself is over five months away" and neither the "Eleventh Circuit or the Supreme Court has applied *Purcell* under similar timeframe.") (citations omitted), *with Merrill v. Milligan*, 142 S. Ct. 879, 879–880 (2022) (Kavanaugh, J., concurring) (citing complex, interceding deadlines in the "seven weeks" before absentee voting began); *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022) (finding relief sought for election beginning in less than four months and with local elections ongoing brought the case within "*Purcell*'s outer bounds"). Were *Purcell* a basis to deny relief this far in advance of any election, it would cease to be an election-timing principle and become, in practice, an all-out ban on changes to election rules.

This holds particularly true here, where "the *Purcell* considerations are arguably less significant in this case as compared to, perhaps, a redistricting case." ECF No. 241 at 73. Local and state election officials testified during discovery that there would be only minimal burdens, if any, in implementing changes to the line relief ban. *See* Evans Dep. 227–28 (State Elections Director testifying that if the line relief ban were struck down, he's "not sure there [would be] anything there for a

county to implement."); Hall Dep. 61 (Ex. Q) ("Q. "If the ban on line relief activities in S.B. 202 were to be changed or removed, would your office have to undertake any changes to adapt to that change? A. I don't believe so."); Cobb Dep. 144 ("we wouldn't have to implement anything."). And if the Court does not act now, there is no certainty, based on the present schedule and lack of a trial date, that a final decision or permanent injunction could be issued before the 2024 elections, much less sufficiently in advance to implement that injunction under *Purcell*.

## CONCLUSION

Because all the factors supporting a preliminary injunction against enforcement of the line relief ban in the Supplemental Zone continue to strongly favor Plaintiffs (and even more so following discovery), and *Purcell* concerns are not implicated for the 2024 elections, Plaintiffs respectfully request the Court grant their motion for the 2024 elections and beyond.

Respectfully submitted, this 24th day of April, 2023.

/s/ *Pichaya Poy Winichakul*
Bradley E. Heard (Ga. Bar No. 342209)
*bradley.heard@splcenter.org*
Pichaya Poy Winichakul (Ga. Bar 246858)
*poy.winichakul@splcenter.org*
Nancy G. Abudu (Ga. Bar No. 001471)
*nancy.abudu@splcenter.org*

/s/ *Sophia Lin Lakin*
Sophia Lin Lakin (pro hac vice)
*slakin@aclu.org*
Davin M. Rosborough (pro hac vice)
*drosborough@aclu.org*
Jonathan Topaz (pro hac vice)
*jtopaz@aclu.org*
Dayton Campbell-Harris (pro hac vice)

Matletha N. Bennette (pro hac vice)
*matletha.bennette@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

Jess Unger (pro hac vice)
*jess.unger@splcenter.org*
Sabrina S. Khan (pro hac vice)
*sabrina.khan@splcenter.org*
SOUTHERN POVERTY
LAW CENTER
1101 17th Street NW, Suite 705
Washington, DC 20036
Telephone: (202) 728-9557
/s/ *Adam S. Sieff*
Adam S. Sieff (pro hac vice)
*adamsieff@dwt.com*
Daniel Leigh (pro hac vice)
*danielleigh@dwt.com*
Brittni A. Hamilton (pro hac vice)
*brittnihamilton@dwt.com*
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

Matthew R. Jedreski (pro hac vice)
*mjedreski@dwt.com*
Grace Thompson (pro hac vice)
*gracethompson@dwt.com*
Danielle E. Kim (pro hac vice)
*daniellekim@dwt.com*
Kate Kennedy (pro hac vice)

*dcampbell-harris@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836
Facsimile: (212) 549-2539

Susan P. Mizner (pro hac vice)
*smizner@aclu.org*
ACLU FOUNDATION, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0781

Brian Dimmick (pro hac vice)
*bdimmick@aclu.org*
ACLU FOUNDATION, INC.
915 15th Street NW
Washington, D.C. 20005
Telephone: (202) 731-2395

Rahul Garabadu (Bar 553777)
*rgarabadu@acluga.org*
Caitlin May (Ga. Bar No. 602081)
*cmay@acluga.org*
Cory Isaacson (Ga. Bar No. 983797)
*cisaacson@acluga.org*
ACLU FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, Georgia 30357
Telephone: (678) 981-5295
Facsimile: (770) 303-0060

/s/ *Leah C. Aden*
Leah C. Aden (pro hac vice)
*laden@naacpldf.org*
John S. Cusick (pro hac vice)
*jcusick@naacpldf.org*

*katekennedy@dwt.com*
Shontee Pant (pro hac vice)
*shonteepant@dwt.com*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

David M. Gossett (pro hac vice)
*davidgossett@dwt.com*
Courtney T. DeThomas (pro hac vice)
*courtneydethomas@dwt.com*
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, D.C.  20005-7048
Telephone: (202) 973-4288
Facsimile: (202) 973-4499

*Attorneys for Plaintiffs*
*Georgia Muslim Voter Project, Women Watch Afrika, Latino Community Fund Georgia, and The Arc of the United States*

/s/ *Bryan L. Sells*
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan Sells, LLC
PO Box 5493
Atlanta, Georgia 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

Jon Greenbaum (pro hac vice)
*jgreenbaum@lawyerscommittee.org*
Ezra D. Rosenberg (pro hac vice)

Alaizah Koorji*
*akoorji@naacpldf.org* (pro hac vice)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592

Anuja Thatte (pro hac vice)
*athatte@naacpldf.org*
NAACP LEGAL DEFENSE AND
EDUCATION FUND, INC.
700 14th Street, NW
Washington, DC 20005
Telephone: (202) 682-1300

/s/ *Debo P. Adegbile*
Debo P. Adegbile (pro hac vice)
*debo.adegbile@wilmerhale.com*
Alexandra Hiatt (pro hac vice)
*alexandra.hiatt@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

George P. Varghese (pro hac vice)
*george.varghese@wilmerhale.com*
Stephanie Lin (pro hac vice)
*stephanie.lin@wilmerhale.com*
Arjun Jaikumar (pro hac vice)
*arjun.jaikumar@wilmerhale.com*
Sofia Brooks (pro hac vice)
*sophie.brooks@wilmerhale.com*
Mikayla Foster (pro hac vice)

*erosenberg@lawyerscommittee.org*
Julie M. Houk (pro hac vice)
*jhouk@lawyerscommittee.org*
Jennifer Nwachukwu (pro hac vice)
*jnwachukwu@lawyerscommittee.org*
Heather Szilagyi (pro hac vice)
*hszilagyi@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Vilia Hayes (pro hac vice)
Neil Oxford (pro hac vice)
Gregory Farrell (pro hac vice)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Laurence F. Pulgram (pro hac vice)
*lpulgram@fenwick.com*
Molly Melcher (pro hac vice)
*mmelcher@fenwick.com*
Armen Nercessian (pro hac vice)
*Anercessian@fenwick.com*
Ethan Thomas (pro hac vice)
*EThomas@fenwick.com*
FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
Telephone: 415.875.2300

*mikayla.foster@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Tania Faransso (pro hac vice)
*tania.faransso@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Nana Wilberforce (pro hac vice)
*nana.wilberforce@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE  AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

*Attorneys for Plaintiffs*
*Sixth District of the African Methodist*
*Episcopal Church, Delta Sigma Theta*
*Sorority, Georgia ADAPT, and Georgia*
*Advocacy Office*

Joseph S. Belichick (pro hac vice)
*jbelichick@fenwick.com*
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041-2008
Telephone: 650-988-8500

Catherine McCord (pro hac vice)
*cmccord@fenwick.com*
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone: (212) 430-2690

*Attorneys for Plaintiffs Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, Inc., League of Women Voters of Georgia, Inc., GALEO Latino Community Development Fund, Inc., Common Cause, and Lower Muskogee Creek Tribe*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated:  April 24, 2023            /s/ *Davin M. Rosborough*
                                  Davin M. Rosborough
                                  *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated:  April 24, 2023            /s/ *Davin M. Rosborough*
                                  Davin M. Rosborough
                                  *Counsel for Plaintiffs*