UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: GEORGIA SENATE BILL 202 | No. 1:21-MI-55555-JPB<br>ALL CASES |

# ORDER

This matter is before the Court on the Republican National Committee, National Republican Senatorial Committee, Georgia Republican Party, Inc. and the National Republican Congressional Committee's (collectively, "Intervenors") Motion to Quash Subpoena to Depose Brad Carver [Doc. 493]. This Court finds as follows:

## BACKGROUND

In this consolidated action, Plaintiffs challenge certain provisions of Georgia Senate Bill 202 ("SB 202"),[1] bringing, among others, claims under Section 2 of the Voting Rights Act ("VRA") and the Fourteenth Amendment of the United States Constitution. As to these claims, Plaintiffs contend that the Georgia Legislature (the "Legislature," comprised of the Georgia General Assembly and the Georgia Senate) passed SB 202 with the intent to discriminate based on race. Discovery is ongoing.

---

[1] SB 202 governs election-related processes and was signed into law by Governor Brian Kemp on March 25, 2021.

The instant discovery dispute concerns Brad Carver.  Currently, Mr. Carver is one of Intervenors' counsel of record.  Before this case began, however, Mr. Carver served as chairman of a committee on election reform led by the Georgia Republican Party (the "Georgia GOP").[2]  [Doc. 504-2, p. 2].  When the committee was in its infancy, members of the Georgia GOP sent Mr. Carver suggestions for election law changes.  Id.  Using those recommendations, the committee developed a set of proposals to submit to the General Assembly.  [Doc. 504-1, p. 2].  Ultimately, Mr. Carver lobbied the General Assembly to adopt these proposals, and many of the reforms for which Mr. Carver advocated became law when the General Assembly passed SB 202.  [Doc. 493, p. 3].

On January 6, 2023, Plaintiffs issued a subpoena seeking to depose Mr. Carver about his activities as chairperson for the Georgia GOP committee on election reform.  Id. at 4.  On March 16, 2023, Intervenors filed the instant motion seeking to quash the deposition subpoena.

## DISCUSSION

Under Federal Rule of Civil Procedure 45, a party may subpoena information from a nonparty to litigation.  Jordan v. Comm'r, Miss. Dep't of Corr., 947 F.3d 1322, 1329 (11th Cir. 2020).  The subpoena may be quashed, however, if

---

[2] The committee was known as the Georgia GOP Election Confidence Task Force and was formed following the 2020 senatorial runoff election in Georgia.  [Doc. 504, p. 8].

the subpoena "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). A subpoena may also be quashed to the extent that it seeks irrelevant information. Jordan, 947 F.3d at 1329.

Intervenors argue that the subpoena should be quashed for three primary reasons: (1) Mr. Carver's testimony would have little, if any, relevance; (2) compelling Mr. Carver to testify would impose a substantial burden in light of his role as litigation counsel; and (3) the First Amendment privilege protects Mr. Carver from being deposed about Plaintiffs' proposed topics. The Court discusses these arguments below.

**1.    Relevance**

Intervenors assert that the deposition should be quashed because "it is 'very questionable' whether Mr. Carver's deposition testimony would be relevant at all." [Doc. 493, p. 5]. The threshold for discovery to be relevant is relatively low. See Akridge v. Alfa Mut. Ins. Co., 1 F.4th 1271, 1276 (11th Cir. 2021) (holding that "a civil litigant is generally entitled to 'any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence'" (quoting Degen v. United States, 517 U.S. 820, 825–26 (1996))). The term "relevant" encompasses "any matter that bears on, or that reasonably could lead to other

3

matter that could bear on, any issue that is or may be in the case." Oppenheimer Funds Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Stated another way, information is relevant if it has a "tendency to make a fact more or less probable" and if "the fact is of consequence in determining the action."  Fed. R. Evid. 401. Significantly, whether information sought in discovery is relevant "depends on the claims asserted in the underlying action and the legal standards that govern those claims."  Jordan, 947 F.3d at 1329.

To prevail on their claims under the Fourteenth Amendment and the VRA, Plaintiffs must show, among other things, that SB 202 was passed with discriminatory intent.  Greater Birmingham Ministries v. Sec'y of State for the State of Ala., 992 F.3d 1299, 1321 (11th Cir. 2021).  Intervenors contend that the information Plaintiffs seek from Mr. Carver is not relevant because Mr. Carver's views on election reform are not probative of the Legislature's intent.  In response, Plaintiffs argue that Mr. Carver's deposition is directly relevant to the factors that this Court must consider under Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977).

In Arlington Heights, the Supreme Court of the United States held that determining legislative intent "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 459 U.S. at 266.  The Supreme

4

Court identified the following examples of evidence that may show intent: (1) "the historical background of the decision . . . particularly if it reveals a series of official actions taken for invidious purposes"; (2) "the specific sequence of events leading up to the challenged decision"; (3) "[d]epartures from the normal procedural sequence"; (4) "[s]ubstantive departures, . . . particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached"; and (5) "[t]he legislative or administrative history . . . especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." Id. at 266–68.

The Court is not convinced that Mr. Carver's intent and motives are irrelevant simply because he is not a member of the Legislature. To be sure, Mr. Carver's own intent or his personal statements are not *direct* evidence of the Legislature's discriminatory intent. See Stout by Stout v. Jefferson Cnty. Bd. of Educ., 882 F.3d 988, 1007 (11th Cir. 2018). His views and associated lobbying efforts, however, could be *circumstantial* evidence of the Legislature's intent. See I.L. v. Alabama, 739 F.3d 1273, 1287 (11th Cir. 2014) (relying on evidence of "heavy support" from private lobbyists to affirm the district court's ruling that two state constitutional amendments were financially, and not discriminatorily, motivated); see also Fla. State Conf. of Branches & Youth Units of the NAACP v.

Lee, 568 F. Supp. 3d 1301, 1305 (S.D. Fla. 2021) (holding that documents relating to lobbying efforts about election reform were discoverable because the documents constituted circumstantial evidence of legislative intent).

It is undisputed that Mr. Carver played an important part in the formulation and passage of SB 202. As such, this Court finds that his testimony relates to the sequence of events underlying the legislation. Because evidence concerning the sequence of events is relevant to the Legislature's intent as explained in Arlington Heights, this Court finds that the information Plaintiffs seek surpasses the low bar for relevance. See Akridge, 1 F.4th at 1276 (emphasizing "the need to construe the [Federal] Rules liberally to allow for robust discovery"). To the extent that Intervenors argue that the deposition should be quashed based on relevance grounds, the motion is **DENIED**.

**2.    Substantial Burden**

Intervenors contend that the deposition should be quashed because it subjects Mr. Carver to a substantial burden in light of his position as Intervenors' litigation counsel. As an initial matter, "[t]he Federal Rules of Civil Procedure do not prevent the deposition of another party's lawyer, so long as the deposition seeks relevant, non-privileged information." Gaddy v. Terex Corp., No. 1:14-cv-1928, 2015 WL 13545486, at *2 (N.D. Ga. Oct. 28, 2015). Moreover, protective

orders that prohibit a deposition are rarely granted "absent extraordinary circumstances." Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979).[3] Notwithstanding these principles, "[t]he deposition of a party's attorney calls for special scrutiny because 'experience teaches that countenancing unbridled depositions of attorneys constitutes an invitation to delay, disruption of the case, harassment, and perhaps disqualification of the attorney.'" Gaddy, 2015 WL 13545486, at *2 (quoting N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 85 (M.D.N.C. 1987)).

    The Eleventh Circuit Court of Appeals has not adopted a specific approach for evaluating when the deposition of a party's counsel is appropriate. As the parties acknowledge, courts that have considered the issue have formulated different tests. For example, the Eighth Circuit Court of Appeals adopted a three-part test that limits depositions to situations where (1) there are no other means to obtain the information, (2) the attorney actually possesses relevant and non-privileged information and (3) the information is crucial to the preparation of the case. Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986). The Second Circuit Court of Appeals—which called the Eighth Circuit's rule "rigid"—

---

[3] "[D]ecisions of the United States Court of Appeals for the Fifth Circuit . . . handed down by that court prior to the close of business on [September 30, 1981], shall be binding as precedent in the Eleventh Circuit." Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

adopted a "more flexible approach to attorney depositions." In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 67 (2d Cir. 2003). Under this framework, courts should consider "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." Id. at 72. "Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." Id.

District courts within this circuit are divided over which approach to use and "'have used both approaches[] or a combination thereof.'" Gaddy, 2015 WL 13545486, at *3 (quoting Bank of Am., N.A. v. Ga. Farm Bureau Mut. Ins. Co., No. 3:12-CV-155, 2014 WL 4851853, at *3 (M.D. Ga. Sept. 24, 2014)). In Gaddy, the court did not strictly apply either the Second Circuit's or the Eighth Circuit's approach and instead focused its analysis on weighing and balancing the plaintiff's need for the information sought with the defendant's interest in its attorney-client relationship. Id. at *3–4; see also Bank of Am., 2014 WL 4851853, at *3 (using the same weighing-and-balancing approach). In the absence of controlling precedent, this Court finds the approach taken in Gaddy to be persuasive.

8

The Court thus begins by assessing Plaintiffs' need for the deposition. As previously explained, it is Plaintiffs' burden to show that the Legislature intended to discriminate when passing SB 202. Importantly, Mr. Carver's lobbying efforts could provide circumstantial evidence of that intent. While the Court recognizes that Mr. Carver is an attorney, attorneys such as Mr. Carver "do not always act in a legal capacity." Gaddy, 2015 WL 13545486, at *3. Consequently, "[a]n attorney's deposition may be necessary and appropriate where the attorney is the person with the best information concerning non-privileged matters relevant to a lawsuit." Id. In the Court's view, Mr. Carver's testimony is both necessary and appropriate. Because of his role as chairperson of the election reform committee, he is well-positioned to provide information about the advocacy efforts preceding SB 202. Moreover, Mr. Carver does not dispute that he played a meaningful role in the development of SB 202 and that many of the reforms for which he advocated eventually became law. In sum, the Court finds that Plaintiffs have shown that they have a need for the deposition.

The Court must next weigh Plaintiffs' need for deposing Mr. Carver against Intervenors' interest in the attorney-client relationship with Mr. Carver, their litigation counsel. In doing so, the Court is mindful that "depositions of attorneys inherently constitute an invitation to harass the attorney and parties, and to disrupt

9

and to delay the case." W. Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990).  Intervenors' interest in the attorney-client relationship, however, does not outweigh Plaintiffs' need for complete discovery, particularly because Plaintiffs intend to question Mr. Carver only about activities predating his role as litigation counsel.[4]  As such, the Court finds that the deposition should not be quashed on the ground that deposing Mr. Carver poses a substantial burden.  To the extent that Intervenors seek relief on this basis, the motion is **DENIED**.

**3.     The First Amendment Privilege**

In their final argument, Intervenors contend that the deposition should be quashed because the First Amendment provides a privilege that protects Mr. Carver's lobbying activities from disclosure.  Intervenors attached the affidavit of Mr. Carver to support this claim of privilege.  In the affidavit, Mr. Carver asserted that compelling him to testify will harm his ability to advocate for policy changes. [Doc. 493, pp. 16–17].  More specifically, Mr. Carver stated that when he speaks with legislators about legislative reforms, those legislators expect that their communications will remain confidential.  Id.  According to Mr. Carver, without the expectation of confidentiality, "party leaders, party employees, and legislators

---

[4] To protect the attorney-client relationship, Plaintiffs are admonished to seek only testimony about non-privileged factual matters separate and apart from any litigation strategy in this case.

10

will be less likely to discuss policies openly or even to have policy conversations at all." Id. at 17.  Furthermore, Mr. Carver stated that he has already been harassed because of his association with the Georgia GOP and similar organizations and that compelling him to testify will subject him to further harassment.  Id.

The First Amendment provides that Congress "shall make no law . . . abridging the freedom of speech, or of the press; or the right of people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The Supreme Court of the United States has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others."  Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984).  In turn, "[t]he First Amendment's right to freedom of association provides a privilege that protects certain associational activities from discovery." Young Conservatives of Tex. Found. v. Univ. of N. Tex., No. 4:20-CV-973, 2022 WL 2901007, at *2 (E.D. Tex. Jan. 11, 2022).  The privilege, however, is not absolute.  NAACP v. State of Alabama, 357 U.S. 449, 462 (2010) (holding that the First Amendment creates a qualified privilege from disclosure of certain associational information).

While the Eleventh Circuit has not yet adopted a specific framework for evaluating a claim of the First Amendment privilege, other courts, including some

11

within this circuit, have adopted a two-part burden-shifting framework.  See, e.g., In re Motor Fuel Temperature Sales Pracs. Litig., 641 F.3d 470, 488 (10th Cir. 2011); Perry v. Schwarzenegger, 591 F.3d 1126, 1140 (9th Cir. 2009); Curling v. Raffensperger, No. 1:17-cv-2989, 2021 WL 5162576, at *1 (N.D. Ga. Nov. 5, 2021); Flynn v. Square One Distrib., Inc., No. 6:16-mc-25, 2016 WL 2997673, at *2 (M.D. Fla. May 25, 2016); All. of Auto Mfrs., Inc. v. Julie L. Jones, No. 4:08-cv-555, 2013 WL 4838764, at *4 (N.D. Fla. Sept. 11, 2013).  Under this two-part framework, the party asserting the privilege must first make a prima facie showing that the privilege applies.  The burden is satisfied "when [the movant] can show—with an 'objectively reasonable probability'—that 'compelled disclosure will chill associational rights.'"  Curling, 2021 WL 5162576, at *1 (quoting Flynn, 2016 WL 2997673, at *2).  "The movant bears the burden of making this prima facie showing," and "'specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself' are examples of acceptable proofs to establish an 'objectively reasonable probability.'"  Flynn, 2016 WL 2997673, at *2–3 (quoting Buckley v. Valeo, 424 U.S. 1, 74 (1976)).

Once the prima facie showing is made, the burden shifts to the opposing party to show that its "interest in disclosure outweighs any First Amendment

harm." Curling, 2021 WL 5162576, at *2.  When balancing these interests, the Court may consider the following factors:  (1) "the importance of the litigation," (2) "the centrality of the information sought to the issues in the case," (3) "the existence of less intrusive means of obtaining the information" and (4) the "substantiality of the First Amendment interests at stake." Perry, 591 F.3d at 1161.  Ultimately, under the balancing test, "the party seeking discovery must show that the information sought is highly relevant to the claims or defenses in the litigation," that the request is "carefully tailored to avoid unnecessary interference with protected activities" and that "the information must be otherwise unavailable."  Id.

      The Court is satisfied that Intervenors have made the necessary prima facie showing for two reasons.  First, Mr. Carver's affidavit establishes that if he were required to divulge his prior conversations with legislators, the disclosure would likely affect the willingness of legislators and others to speak and associate with him in the future.  See Curling, 2021 WL 5162576, at *1–2 (where affidavits stated that compelled disclosure would affect the willingness of "legislators, experts, organizations, and voters[] to associate" with the plaintiffs, finding "an objectively reasonable probability that the disclosure of their private communications would chill their exercise of First Amendment rights").  Second, Mr. Carver's affidavit

shows that he has already been harassed due to his association with the Georgia GOP.  Specifically, because of this association, a bar complaint was filed against Mr. Carver and leaked to the press.  It is reasonable to conclude that compelling Mr. Carver to testify creates a risk of further harassment.  Ultimately, for these two reasons, the Court finds that Intervenors have met their burden to show that compelled testimony would chill Mr. Carver's exercise of his First Amendment rights.

Because Intervenors have made this prima facie showing, the burden shifts to Plaintiffs to establish that their interest in disclosure outweighs any First Amendment harm to Mr. Carver.  In balancing Plaintiffs' and Intervenors' respective interests, the Court recognizes both that this litigation is important and that the information Plaintiffs seek is relevant to a central issue in this case (i.e., the Legislature's intent).  But the Court also recognizes that less intrusive means of obtaining the information exists; for instance, through interrogatories or requests for production of documents.  Importantly, Plaintiffs must show that the information they seek is "highly relevant" to this litigation, which is a "more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." Perry, 591 F.3d at 1141.  While the information Plaintiffs seek is relevant (or could lead to relevant information), see supra Part 1, it likely fails to

meet this more exigent standard.  For instance, Mr. Carver's testimony about communications with members of the Legislature would provide only circumstantial evidence of legislative intent.  His testimony would not, however, provide direct evidence of that intent, and as such, it would not meet the demanding standard necessary to overcome the First Amendment privilege.  These factors thus appear to weigh in favor of quashing the deposition.

Notwithstanding this initial conclusion, the Court must also consider the scope of Plaintiffs' request and the "substantiality of the First Amendment interests at stake."  Perry, 591 F.3d at 1141.  Mr. Carver undoubtedly has substantial First Amendment interests in some of his associational activities, and compelling him to testify about, for example, private conversations with legislators poses a serious risk of chilling his exercise of that First Amendment right.  That risk, however, is less concerning where Mr. Carver has made public statements or comments about his lobbying activities.  Indeed, Mr. Carver has spoken publicly about his conversations with legislators and other lobbying efforts.  Compelling Mr. Carver to testify about his own public communications creates a significantly lower risk of harm to his First Amendment rights than compelling him to testify about conversations he held with an expectation of confidentiality.  Accordingly, after balancing the potential harm to Mr. Carver's associational rights against Plaintiffs'

15

interest in disclosure, the Court finds that Plaintiffs may depose Mr. Carver and ask him about conversations or communications that he has discussed publicly.[5]  Thus, to the extent that Intervenors seek to quash the deposition based on the First Amendment privilege, the motion is **GRANTED IN PART**.

## CONCLUSION

For the reasons explained above, Intervenors' Motion to Quash Subpoena to Depose Brad Carver [Doc. 493] is **GRANTED IN PART**.

**SO ORDERED** this 9th day of May, 2023.

_____
J. P. BOULEE
United States District Judge

---

[5] Intervenors appear to agree, at least in part, with this approach.  In their motion, they argued that if the deposition is not quashed, it should be limited in scope to only those communications between Mr. Carver and Georgia legislators that Mr. Carver discussed publicly.  The Court concludes that limiting the deposition in this manner is the correct outcome not only for the reasons set forth above but also because of the broad scope of discovery permitted by the Federal Rules of Civil Procedure.  See Akridge, 1 F.4th at 1276 (noting that the Federal Rules "strongly favor full discovery whenever possible" (quoting Republic of Ecuador v. Hinchee, 741 F.3d 1185, 1189 (11th Cir. 2013))).  Furthermore, allowing Plaintiffs to depose Mr. Carver about the matters that he has discussed publicly is supported by Perry.  In that case, the Ninth Circuit emphasized that the First Amendment privilege only protects private and internal communications.  591 F.3d at 1144 n.12.  Given that Mr. Carver did not keep the communications private, the privilege is not implicated.