# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| THE NEW GEORGIA PROJECT, *et al.*, <br><br> *Plaintiffs*, <br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State, *et al.*, <br><br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br> *Intervenor-Defendants*. | Civil Action No.: 1:21-cv-01229-JPB |

**NGP PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**

## Table of Contents

**INTRODUCTION**..................................................................................................................1

**BACKGROUND** ...................................................................................................................3

**ARGUMENT**........................................................................................................................4

    I.      Plaintiffs are likely to succeed on the merits of their claim. .......................4

    II.     The remaining factors weigh heavily in Plaintiffs' favor. .........................8

    III.    *Purcell* does not weigh against granting the preliminary injunction. ........9

**CONCLUSION**....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Spear*,
  356 F.3d 651 (6th Cir. 2004) ............................................................................. 6

*First Nat'l Bank of Bos. v. Bellotti*,
  435 U.S. 765 (1978) ........................................................................................... 7

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*,
  896 F.2d 1283 (11th Cir. 1990) ......................................................................... 9

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ............................................................................................... 2

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
  487 U.S. 781 (1988) ........................................................................................... 7

*Russell v. Lundergan-Grimes*,
  784 F.3d 1037 (6th Cir. 2015) ....................................................................... 6, 7

*White v. Baker*,
  696 F. Supp. 2d 1289 (N.D. Ga. 2010) .............................................................. 9

**Statutes**

O.C.G.A. § 15-18-66(a) ............................................................................................ 8

O.C.G.A. § 21-2-414 ................................................................................................. 5

O.C.G.A. § 21-2-414(a) ............................................................................................ 6

O.C.G.A. § 21-2-567 ................................................................................................. 6

O.C.G.A. § 21-2-570 ................................................................................................. 6

## INTRODUCTION

Last summer, this Court concluded that Plaintiffs had "established each of the preliminary injunction factors" as to Georgia Senate Bill ("S.B.") 202's Food and Water Ban (the "Ban"), as it pertains to any individuals providing food or drink within 25 feet of any voter in line (the "Supplemental Zone"). *See* August 18 Order on Prelim. Inj. ("Order") at 74, ECF No. 241. The Court noted that the Supplemental Zone had "no limit" and could thus extend "thousands of feet away from the polling station (and across private property)." *Id.* at 55. As a result, the Ban in the Supplemental Zone was substantially likely to be unconstitutional because it constituted an "impermissible burden" on Plaintiffs' constitutional right to free speech. *Id.* at 55–56. The Court also found that Plaintiffs had demonstrated irreparable harm because the threat of prosecution of line relief activities in the Supplemental Zone had deterred Plaintiffs and other organizations from engaging in such behavior. *Id.* at 59. Because such an infringement upon Plaintiffs' First Amendment rights constitutes a "serious and substantial injury" and the government "has no legitimate interest in enforcing an unconstitutional [statute]," *id.* at 61 (quoting *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006)), the Court concluded that Plaintiffs had shown the balance of equities and public interest weighed in their favor.

Despite finding that all of the preliminary injunction factors weighed in Plaintiffs' favor, the Court ultimately did not enjoin the Food and Water Ban in the Supplemental Zone. At the time the Court issued its ruling, the general election was less than three months away and a primary for that election had already been held. As a result, the Court concluded that an injunction might cause voter confusion and burden on election administrators, and therefore denied relief under *Purcell v. Gonzalez*, 549 U.S. 1 (2006). *See* Order at 72.

As the AME and GA NAACP Plaintiffs explain in their renewed motion, which the NGP Plaintiffs join and incorporate here, fact discovery is now over, and the merits of Plaintiffs' challenges to the Food and Water Ban in the Supplemental Zone are only stronger. *See generally* AME Renewed Motion ("AME Br."), ECF No. 535-1. This is especially so with regard to the NGP Plaintiffs' claim, which seeks relief from Defendants Keith Gammage, the Solicitor General ("SG") of Fulton County, and Gregory W. Edwards, the District Attorney ("DA") for Dougherty County (collectively, the "County Prosecutors"). Deposition testimony from these two individuals demonstrates that the Food and Water Ban does not address the State's concern about maintaining a restricted zone around voters. The County Prosecutors also explicitly fail to disclaim their intent to enforce the Food and Water Ban, thus confirming Plaintiffs' legitimate concern about the threat of

prosecution for line relief activities in Fulton and Dougherty Counties. And importantly, the *Purcell* considerations that led to the Court's denial of relief are no longer implicated, as the next statewide election in Georgia is no less than nine months away.

For these reasons, NGP Plaintiffs renew their Motion for Preliminary Injunction to enjoin the Food and Water Ban in the Supplemental Zone against the County Prosecutors. Because the Court has already found that Plaintiffs have demonstrated the merits of their claim for injunctive relief as to that Zone, and equitable considerations about confusion and administration of criminal penalties are not implicated, especially months before the next statewide election, the Court should enjoin the County Prosecutors from enforcing the Food and Water Ban in the Supplemental Zone.[1]

## BACKGROUND

NGP Plaintiffs incorporate by reference the factual evidence and briefing from their initial preliminary injunction motion, *see* NGP Prelim. Inj., ECF Nos. 185, 185-1–8; NGP Prelim. Inj. Reply, ECF No. 217; *see also* AME Br. at 3. NGP Plaintiffs address relevant new evidence obtained during discovery below.

---

[1] NGP Plaintiffs maintain the portion of their First Amendment claim as to the zone within 150 feet of the polling place entrance, but do not renew this part of the claim in this motion.

# ARGUMENT

**I.     Plaintiffs are likely to succeed on the merits of their claim.**

As the Court has already concluded, Plaintiffs are likely to prevail on their claim that the Food and Water Ban in the Supplemental Zone violates Plaintiffs' constitutional rights. To avoid repetition and for the Court's convenience, NGP Plaintiffs join and incorporate the AME and GA NAACP Plaintiffs' arguments in their renewed motion, and emphasize several pieces of additional evidence obtained in discovery from the County Prosecutors that further demonstrate the unconstitutionality of the Ban. *See* AME Br. at 4–10.

The Food and Water Ban in the Supplemental Zone is indeed "unreasonable," Order at 56, because it does not serve the State's proffered interests of "restoring peace and order around the polls; protecting voters from political pressure and intimidation; and supporting election integrity." *Id.* at 51–52. As both County Prosecutors have admitted, Georgia law, including the Food and Water Ban, does not actually prohibit anyone from approaching a voter in line, or engaging a voter in conversation while they stand in line, as long as that individual is not engaged in behavior otherwise prohibited by law, such as electioneering or intimidation. *See* Edwards Tr. (Ex. 1), 59:14-21 (agreeing that a person wearing an unmarked shirt and not carrying any food or gifts could walk into the 150-foot "Buffer Zone" or

Supplemental Zone and freely have a conversation with a voter); 61:12-62:4 (agreeing that a person not engaged in any conduct prohibited by O.C.G.A. § 21-2-414 could still approach a voter in either Zone); *see also* Gammage Tr. (Ex. 2), 65:22-66:9 (stating it was not a violation of any law for someone to approach a voter in line as long as they were not engaging in any conduct identified in O.C.G.A. § 21-2-414).[2] So, even if the State's purported concerns about sharing food and drink in the Supplemental Zone were justified, voters are no more insulated from any hypothetical disruption, intimidation, and improper influence from others that can legally and freely approach any voter waiting in line to vote. *See* Order at 52–53. In other words, the Ban does not actually address the risk that individuals can approach and interact with voters in line. The Ban also does not address the risk that those conversations or interactions could lead to behavior aimed at influencing a voter's decision at the ballot box—it simply prevents people from sharing food and water with voters in long lines.

Nor does the Ban insulate voters from any behavior that was not previously unlawful. It is already a crime in Georgia to "solicit votes in any manner or by any

---

[2] The State Election Board has also testified as much. During its 30(b)(6) deposition, the Board agreed that nothing in SB 202 prohibits individuals from approaching voters in line and interacting with them, as long as they are not campaigning, being disruptive, or offering anything to voters. *See* SEB 30(b)(6) Tr. (Ex. 3), 250:21-251:2.

5

means or method," and to "distribute or display any campaign material" in an effort to influence a voter. O.C.G.A. § 21-2-414(a). Before SB 202, Georgia law already prohibited giving or offering to give "money or gifts for the purpose of . . . voting." *Id.* § 21-2-570. And Georgia law broadly prohibits the intimidation of voters. *Id.* § 21-2-567. Contrary to the State Defendants' claims, the Ban does not *create* a restricted zone where individuals cannot solicit votes, engage in electioneering, or bribe or intimidate voters—that zone was already in place because of laws that predate SB 202.

Finally, as the AME and GA NAACP Plaintiffs have explained, the State has failed to articulate why there is *any* need to create a Supplemental Zone that extends prohibitions on protected speech—with no limit—even further beyond the existing Buffer Zone. *See* AME Br. at 8–10. As this Court has already recognized, the existing Buffer Zone is already larger than any zone found to be constitutional by the Supreme Court. *See* Order at 53. And because a "buffer zone runs in all directions from [a] building," any extension beyond the 100-foot zone in *Burson* has a magnified area of coverage. *See Anderson v. Spear*, 356 F.3d 651, 661 (6th Cir. 2004) (finding that a 500-foot buffer zone covered an area 25 times larger than the area at issue in *Burson*); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1053–54 (6th Cir. 2015) (finding that a 300-foot buffer zone covered an area nine times larger than

the area at issue in *Burson*). Not only is the Buffer Zone already more than two times larger than the area at issue in *Burson*, but the addition of an unlimited Supplemental Zone—on top of an already enlarged Buffer Zone—"impairs a substantial amount of speech beyond what is required to achieve acceptable objectives." *Russell*, 784 F.3d at 1054.[3] For these reasons, the Food and Water Ban in the Supplemental Zone is overbroad and "must be invalidated." *Id.* (quoting *Citizens United v. FEC*, 558 U.S. 310, 336 (2010)); *id.* at 1054–55 (finding Kentucky's 300-foot buffer zone unconstitutional where the State failed to present evidence justifying a zone nine times larger than the zone in *Burson*).

Because Georgia law already provides clear enforcement mechanisms against improper electioneering, bribery, and intimidation at the polls, but prohibits Plaintiffs from engaging in expressive conduct, like sharing food and water, and is far greater than is necessary, the Food and Water Ban in the Supplemental Zone is a "prophylactic, imprecise, and unduly burdensome" rule that is "suspect" and not permitted "in the area of free expression." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800–01 (1988) (citation omitted); *see also First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 794 (1978) (holding that a regulation that is

---

[3] The zone approved by the Supreme Court in *Burson* covers an area of $100^2\pi$, or 31,415 square feet, and the Buffer Zone under Georgia law covers an area of $150^2\pi$, or 70,650 square feet, which is more than twice the area of the zone in *Burson*.

overinclusive is not narrowly tailored to its goal). Thus, the Food and Water Ban in the Supplemental Zone violates the First Amendment, and the County Prosecutors should be enjoined from enforcing it.

## II. The remaining factors weigh heavily in Plaintiffs' favor.

The Court has already correctly concluded that without an injunction of the Food and Water Ban in the Supplemental Zone, Plaintiffs will suffer irreparable harm because the undeniable, ongoing risk of criminal enforcement against line relief activities deters protected speech. Order at 58–59; *see generally* Honor Decl. (Ex. 4), Hector Decl. (Ex. 5), Johnson Decl. (Ex. 6), Durbin Decl. (Ex. 7); *see also* AME Br. at 10–11. Evidence obtained in discovery only further supports the Court's conclusion because the County Prosecutors have now acknowledged that it is their duty to enforce the Food and Water Ban and refused to disclaim any intent to enforce the Ban in the future. *See* Edwards Tr. 43:15-22; 50:19-51:3; *see also* O.C.G.A. § 15-18-66(a) (delineating authority of prosecuting attorneys to bring criminal cases in Georgia). DA Edwards also confirmed that there is no official or entity that could prevent him from bringing a prosecution under his authority. Edwards Tr. 46:16-25 (speaking generally about all laws); 51:15-19 (speaking specifically about the Food and Water Ban); *see also Gammage* Tr. 61:7-21 ("I cannot categorically state that I'll never bring a prosecution for the offenses contained in the [Food and Water]

statute in which we speak.").

This record makes clear that NGP Plaintiffs face the threat of criminal prosecution if they engage in line relief activities in the Supplemental Zone. *See also* NGP Reply at 14, ECF No. 217; Exs. 4–7. Because this threat chills their speech, Plaintiffs continue to experience irreparable injury. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285-86 (11th Cir. 1990) (ongoing First Amendment violation is irreparable injury); *White v. Baker*, 696 F. Supp. 2d 1289, 1312–13 (N.D. Ga. 2010) ("Plaintiffs that show a chilling effect on free expression have demonstrated an irreparable injury."). Thus, the irreparable harm factor for preliminary injunctive relief continues to weigh in Plaintiffs' favor.

And because an "infringement of First Amendment rights balances the equities in Plaintiffs' favor, and neither Defendants nor the public have a legitimate interest in enforcing an unconstitutional statute[,] . . . Plaintiffs have satisfied their burden as to the third and fourth prongs of the preliminary injunction test." Order at 61.

## III. *Purcell* does not weigh against granting the preliminary injunction.

The *Purcell* doctrine is no barrier to relief here. As the AME and GA NAACP Plaintiffs correctly point out, the next statewide primary will be no sooner than nine

months from now, and the next statewide general election is even farther away. *See* AME Br. at 1, 12. Even the presidential preference primary is not scheduled to conclude sooner than mid-March 2024. There is ample time for any relief to be implemented in advance of the 2024 elections. And enjoining the County Prosecutors' enforcement of the Food and Water Ban in the Supplemental Zone at this stage is even further removed from the concerns that animate the *Purcell* doctrine. *See* NGP Prelim. Injun. at 18–20; NGP Prelim. Inj. Reply at 2–4.

## CONCLUSION

For these reasons, NGP Plaintiffs' Renewed Motion for Preliminary Injunction should be granted.

Respectfully submitted this 17th day of May, 2023,

| | |
|---|---|
| Halsey G. Knapp, Jr.<br>Georgia Bar No. 425320<br>Joyce Gist Lewis<br>Georgia Bar No. 296261<br>Adam M. Sparks<br>Georgia Bar No. 341578<br>KREVOLIN & HORST, LLC<br>1201 W. Peachtree St., NW<br>One Atlantic Center, Suite 3250<br>Atlanta, GA 30309<br>Telephone: (404) 888-9700<br>Facsimile: (404) 888-9577<br>hknapp@khlawfirm.com<br>jlewis@khlwafirm.com<br>sparks@khlawfirm.com | /s/ Uzoma N. Nkwonta<br>Uzoma N. Nkwonta*<br>Jacob D. Shelly*<br>Spencer Klein*<br>Melinda K. Johnson*<br>Tina Meng Morrison*<br>Marcos Mocine-McQueen*<br>Samuel T. Ward-Packard*<br>ELIAS LAW GROUP LLP<br>250 Massachusetts Ave NW<br>Suite 400<br>Washington, D.C. 20001<br>Telephone: (202) 968-4490<br>unkwonta@elias.law<br>jshelly@elias.law<br>sklein@elias.law<br>mjohnson@elias.law<br>tmengmorrison@elias.law<br>mmcqueen@elias.law<br>swardpackard@elias.law<br><br>*Admitted *pro hac vice*<br>*Counsel for Plaintiffs* |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: May 17, 2023                      /s/ *Uzoma N. Nkwonta*
                                                          *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated: May 17, 2023                      /s/ *Uzoma N. Nkwonta*
                                                          *Counsel for Plaintiffs*