1                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
2                          ATLANTA DIVISION

3     _____
                                         :
4     IN RE GEORGIA SENATE BILL 202 : Master Case No.
                                    : 1:21-MI-55555-JPB
5     _____ :
                                         :
6     _____:

7

8

9

10

11

12

13              DEPOSITION OF GREGORY W. EDWARDS

14                      ALBANY, GEORGIA

15                 MONDAY, FEBRUARY 27, 2023

16

17

18

19

20

21

22

23    REPORTED BY:   TANYA L. VERHOVEN-PAGE,
                     CCR-B-1790
24

25    FILE NO.   J9319235



```
 1                   February 27, 2023

 2                      10:15 a.m.

 3

 4               Deposition of

 5   GREGORY W. EDWARDS, held at the Dougherty

 6   County District Attorney's Office, 225

 7   Pine Avenue Albany Georgia before

 8   Tanya L. Verhoven-Page, Certified

 9   Court Reporter.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                    APPEARANCES OF COUNSEL

 2

 3   On behalf of the Plaintiff New Georgia Project:

 4         ELIAS LAW GROUP, LLP
           10 G Street, N.E.
 5         Suite 600
           Washington, D.C. 20002
 6         (202) 968-4511
           BY:  MARCOS MOCINE-MCQUEEN, ESQ.
 7              e-mail: mmcqueen@elias.law
           BY:  MINDY JOHNSON, ESQ.
 8              e-mail: mjohnson@elias.law
           BY:  SAMUEL WARD-PACKARD, ESQ. (via Zoom)
 9              e-mail: swardpackard@elias.law

10

11

12   On behalf of the Plaintiff Georgia NAACP:

13         LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
           1500 K Street, N.W.
14         Suite 900
           Washington, D.C. 20005
15         (202) 783-8600
           BY:  HEATHER SZILAGYI, ESQ.
16              (Via Zoom)

17

18

19   On behalf of USA Plaintiff:

20         U.S. DEPARTMENT OF JUSTICE
           950 Pennsylvania Avenue, N.W.
21         NWB Room 7231
           Washington, D.C. 20530
22         (202) 514-2000
           BY:  RACHEl EVANS, ESQ.
23              e-mail: revans@usdoj.gov
           BY:  JOI HYATTE, ESQ.
24              e-mail: jhyatte@usdoj.gov
                (Via Zoom)
25
```



```
 1                    APPEARANCES OF COUNSEL

 2

 3    On behalf of the Witness:

 4          TAYLOR ENGLISH DUMA, LLP
            1600 Parkwood Circle
 5          Suite 400
            Atlanta, Georgia 30339
 6          (404) 434-6868
            BY:  DONALD P. BOYLE, JR., ESQ.
 7               e-mail: dboyle@taylorenglish.com

 8

 9

10    On behalf of Defendant Dekalb County:

11          DEKALB COUNTY LAW DEPARTMENT
            1300 Commerce Drive
12          5th Floor
            Decatur, Georgia 30030
13          (404) 371-3011
            BY:  IRENE B. VANDER ELS, ESQ.
14               e-mail: ibvanderels@dekalbcountyga.gov
                 (Via Zoom)
15

16

17

18    On behalf of the Defendant Fulton County Registration
      and Election Board:
19
            FULTON COUNTY ATTORNEY'S OFFICE
20          141 Pryor Street, S.W.
            Suite 4038
21          Atlanta, Georgia 30303
            (404) 612-7020
22          BY:  DAVID R. LOWMAN, ESQ.
                 (Via Zoom)
23

24

25
```



```
 1                 APPEARANCES OF COUNSEL

 2

 3   On behalf of the Defendant Solicitor Keith E.
     Gammage:
 4
             FULTON COUNTY ATTORNEY'S OFFICE
 5           141 Pryor Street, S.W.
             Suite 4038
 6           Atlanta, Georgia 30303
             (404) 612-7020
 7           BY:  BRAD BOWMAN, ESQ.
                  (Via Zoom)
 8

 9

10

11   On behalf of the Defendant Columbia County:

12           HULL BARRETT, P.C.
             Truist Building
13           801 Broad Street
             7th Floor
14           Augusta, Georgia 30901
             (706) 722-4481
15           BY:  THOMAS L. CATHEY, ESQ.
                  (Via Zoom)
16

17

18                        -    -    -

19

20

21

22

23

24

25
```



```
1                          I N D E X

2

3               WITNESS: GREGORY W. EDWARDS

4

5      Examination                           Page

6   BY MR. MOCINE-MCQUEEN                      8
    BY MR. BOYLE                              63
7

8

9                        EXHIBITS:

10     Plaintiff's
       (Edwards)
11    Deposition
       Exhibit            Description         Page
12

13  Exhibit 183        Section 15-18-6 of
                       the Georgia Code        22
14
    Exhibit 184        Section 21-2-414 of
15                     the Georgia Code        47

16

17

18

19

20

21

22

23

24

25
```



```
 1   ALBANY, GEORGIA; MONDAY, FEBRUARY 27, 2023

 2                   10:15 A.M.

 3

 4            P R O C E E D I N G S

 5

 6        MS. VANDER ELS:  Irene Vander Els.

 7   I'm with Dekalb County Law Department,

 8   and I'm here on behalf of the Dekalb

 9   County Defendants.

10        MS. EVANS:  From the U.S.

11   Department of Justice, I'm Rachel Evans,

12   and on, is also my colleague, Joi Hyatte.

13        MR. LOWMAN:  I'm David Lowman with

14   the Office of the Fulton County Attorney,

15   and I'm here on behalf of the Fulton

16   County Board of Registration and

17   Elections.

18        MR. BOWMAN:  Good morning.  I'm

19   Brad Bowman, also with the Office of the

20   Fulton County Attorney, and I am here

21   representing Solicitor Gammage.

22        MS. SZILAGYI:  Hi.  My name is

23   Heather Szilagyi.  I'm with the Lawyers

24   Committee for Civil Rights Under Law, and

25   I represent the Georgia NAACP Plaintiffs
```



```
 1            in this case.
 2                 MR. CATHEY:  Good morning.  This is
 3            Tom Cathey from Hull Barrett.  I'm here
 4            on behalf of the Columbia County
 5            Defendants.
 6                 MR. MOCINE-MCQUEEN:  We do have --
 7            yes, from the Elias Law Group -- our
 8            colleague, Samuel Ward-Packard.
 9                 My name is Marcos Mocine-McQueen.
10            I'm with the Elias Law Group, and we
11            represent the New Georgia Project
12            Plaintiffs.
13                 MS. JOHNSON:  Mindy Johnson also
14            representing the New Georgia Project
15            Plaintiffs.
16                 MR. BOYLE:  I'm Donald Boyle
17            representing the witness, Mr. Edwards.
18
19        Thereupon --
20                     GREGORY W. EDWARDS,
21        called as a witness, having been first duly sworn,
22        was examined and testified as follows:
23
24                     EXAMINATION
25     BY MR. MOCINE-MCQUEEN:
```



1   to take a moment here.

2          So just one last question:  Must all

3   misdemeanor prosecutions proceed either through an

4   indictment or an accusation?

5       A    That's correct.

6       Q    Okay.  There are no other avenues to

7   prosecute a misdemeanor criminal offense other than

8   those two paths that we --

9       A    Not that I'm aware of in the State of

10  Georgia.  I mean, to my legal knowledge, I'm not

11  aware of any other process that would bring a matter

12  forward.

13      Q    Great.  This has been very helpful.

14  Thank you for explaining those terms to me.

15         So, Mr. Edwards, did you take an oath

16  when you assumed your office?

17      A    I did.

18      Q    Okay.  I don't need an exact recitation

19  of that oath.  Although, you've done it enough times

20  you probably could.

21         What is your understanding of what that

22  oath compels you to do?

23      A    It compels me to -- to do what's right

24  and to -- to do what's right.  I can't sum it up even

25  more than that.  You know, the duty of a prosecutor,



1 │ as I see it, is not necessarily to prosecute every

2 │ matter that appears.  It's not the duty of a

3 │ prosecutor to convict everybody that's charged with a

4 │ crime.

5 │         My duty is to seek the truth and to do

6 │ whatever is appropriate to make sure that the truth

7 │ about whatever the situation is is the net result.

8 │     Q     So you listed several things there.  Is

9 │ one of the duties that you have as the District

10 │ Attorney to enforce the law?

11 │     A     That's correct.

12 │     Q     With regard to enforcing the laws, you

13 │ also mentioned some things there.  You said it is not

14 │ always to get a conviction.

15 │         Are there any laws that you categorically

16 │ do not enforce?

17 │     A     No.  I do not have any laws that I do

18 │ not -- I'm not engaged in what people describe as a

19 │ prosecutorial veto.  I will look at each case, each

20 │ circumstance and look at the law and make decisions

21 │ based upon what I think is the best and most

22 │ appropriate thing to do.

23 │     Q     And you said this, but I just want to

24 │ make sure I'm understanding correctly.  You make that

25 │ judgment on a case by case basis?



1          A      That's what I do.

2          Q      Yes, sir.

3                 What are some of the factors that you

4    weigh when you're making that determination?

5          A      The totality of circumstances,

6    particularly the law, the facts of that particular

7    situation, the defendant.  All of those things are

8    matters that I put into the calculus of deciding what

9    I want to do or should do in a particular instance.

10         Q      So is the -- it sounds like -- would the

11   type of crime be one of the factors that you're

12   considering whether -- when you're considering

13   whether to prosecute an individual?

14         A      Perhaps, in relation to other

15   circumstances.  Like I said, including, perhaps, the

16   history of that individual, the history of that

17   offense by other individuals.  All of the factors --

18   it's -- all the variables would need to be weighed.

19                Every case should be evaluated on its

20   specific circumstances.

21         Q      When you say how others have been

22   prosecuted on those type of actions, can you explain

23   to me, sir, a little bit more about what you mean by

24   that?

25         A      Well, I would certainly look at the



1  notion that, if there are matters where, you know,

2  one person may have done the crime and not been

3  prosecuted and then now a subsequent person is, you

4  know, alleged to have done the same thing and not

5  prosecuted, you know, that would be something that I

6  would certainly weigh into my evaluation of the

7  situation.  I try not to mix the proverbial, you

8  know, other matters and look at each case, but, you

9  know, I look holistically at what's going on in the

10  community, what's going on with the law, what's going

11  on with these individual circumstances.  So my

12  intentions is always to look at everything.

13       Q    Okay.  And are there any circumstances --

14  let me narrow that down.  Are there any categories of

15  crime in which you feel you do not have the

16  discretion to go through this weighing process?

17       A    No.  I think that prosecutorial

18  discretion is one of the most important things, you

19  know, of being a prosecutor, and prosecutorial

20  discretion with the notion of getting to the truth,

21  getting to justice, is what should be the guiding

22  principle.

23       Q    Okay.  And I think we've actually gone

24  through a lot of the next questions.  I just want to

25  make sure that I ask just a couple of very quick



1   follow-up questions on what we've already discussed.

2              So Georgia's Attorney General can

3   potentially prosecute crimes here in Dougherty

4   County, but he cannot prevent you from prosecuting a

5   crime; is that correct?

6        A    To my knowledge and information, that's

7   correct.  He can prosecute any matter that I could

8   prosecute, and I'm not aware of any directive that

9   would prevent -- you know, I'm an independent elected

10  official in this circuit, and there's nothing that

11  I'm aware of that would prevent me from doing my

12  duties as an elected official in this judicial

13  circuit.

14       Q    And I think you just answered this

15  question, but I just want to make sure.

16             To your knowledge, are there any

17  officials or official bodies that can prevent you

18  from bringing a prosecution under your authority as

19  the District Attorney in Dougherty County?

20       A    Not that I'm aware of.  I'm not aware of

21  anything that would bar me from bringing a

22  prosecution other than, perhaps, the legal bar of the

23  statute of limitations, which is the legal bar for

24  any prosecution if you don't bring it within the

25  allotted time for that particular offense.



1       Q     Okay.  So the statutory limitations on

2    the crime itself, things like the statute of

3    limitations, can prevent you, but as far as

4    authorities, as far as officials who might have

5    county power or state power, to your knowledge, there

6    are no officials that can prevent you from bringing a

7    prosecution?

8       A     I'm not aware of any official who has

9    authority over the actions of the district attorney.

10            MR. MOCINE-MCQUEEN:  We've been

11         going about hour.  It seems like a good

12         moment to take a break, if that's okay

13         with you?

14            THE WITNESS:  Sure.

15                (Brief pause.)

16         (Plaintiff's (Edwards) Deposition

17         Exhibit No. 184 was marked for the

18         record.)

19    BY MR. MOCINE-MCQUEEN:

20       Q     Mr. Edwards, we're going to shift a

21    little bit.  I'm going to hand you an exhibit that

22    we're going to mark as Exhibit 184.

23            I apologize.  There are no staples on

24    this one either, but it is two pages, and these two

25    pages are Georgia Annotated Code 21 -- they are just



 1   a printout of the Annotated Code 21-2-414, 21-2-414.

 2   I'll give you a moment, sir, to read that, and I'm

 3   particularly going to be discussing today Paragraph A

 4   and its subparts.  So --

 5               I'm just taking a look at my notes.

 6   Thank you for your patience.

 7               So I'm just going to read this so that --

 8   for the folks who are not with us here and can't see

 9   the physical exhibits, they have a chance to hear it.

10               This is Georgia Annotated Code 21-2-414,

11   Paragraph A, and I'm going to read A, subparts -- and

12   including Subparts 1, 2 and 3, and it reads:  No

13   person shall solicit votes in any manner or by any

14   means or method, nor shall any person distribute or

15   display any campaign material, nor shall any person

16   give, offer to give or participate in the giving of

17   any money or gifts, including, but not limited to,

18   food and drink, to an elector, nor shall any person

19   solicit signatures for any petition, nor shall any

20   person, other than election officials discharging

21   their duties, establish or set up any tables or

22   booths on any date in which ballots are being cast:

23   Subpart 1 reads:  Within 150 feet of the outer edge

24   of any building within which a polling place is

25   established; Subpart 2:  Within any polling place; or



 1  Subpart 3:  Within 25 feet of any voter standing in
 2  line to vote at any polling place, and the concluding
 3  sentence reads:  These restrictions shall not apply
 4  to conduct occurring in private offices or areas
 5  which cannot be seen or heard by such electors.
 6            Are you familiar, Mr. Edwards, with this
 7  section of the Georgia statute?
 8       A    I became aware it had been enacted as
 9  dated, yes.
10       Q    Okay.  And if I refer to this as
11  Georgia's electioneering law, will you understand
12  that I'm referring to this statute here?
13       A    Yes.
14       Q    Okay.  Can you describe, in your
15  understanding, of what conduct is covered by this
16  statute?
17       A    Well, my understanding would be that, if
18  there's any conduct within the forbidden area of
19  150 feet; such as, contacting persons who are in the
20  line to vote by any means with any materials or
21  contact, that that possibly would be a violation of
22  this particular statute.
23       Q    Okay.  And we'll ask some more details
24  about that in a moment.  Thank you for that.
25            Do your duties as the District Attorney



```
 1   here in Dougherty County include, if it were needed,

 2   enforcing this law?

 3         A      Possibly, yes.

 4         Q      Would anyone else in Dougherty County

 5   enforce this statute other than yourself?

 6         A      Not that I'm aware of.  I would

 7   anticipate that someone might investigate it and make

 8   a report to a magistrate or to me about it.

 9         Q      Okay.  And when I asked if you would

10   prosecute this in Dougherty County, your answer was

11   possibly.  Am I to understand that as a -- how do I

12   understand your use of the word "possibly" as opposed

13   to yes or no?

14         A      Simply as that.  I would look at the

15   facts relating to the allegations to see if there is,

16   beyond a reasonable doubt, and that's my standard --

17         Q      Okay.

18         A      -- a violation of this particular law.

19         Q      Okay.  So as far as enforcing the law,

20   that is a responsibility of your office?  Not looking

21   at the facts of a specific -- I'm not asking you now

22   about the facts of any specific case, but as far as

23   who has the duty to enforce this law, that would be

24   your office; is that correct?

25         A      It would be my office if the matter is
```



1  brought to my attention, and there's evidence beyond

2  a reasonable doubt that it occurred, then it would be

3  my duty to enforce it.

4       Q    Okay.  Understood.  And so with regards

5  to that, have you ever brought charges under this

6  section of the Georgia code?

7       A    No, sir, I have not.

8       Q    Okay.  Would anyone outside of your

9  office -- and I think we -- we actually already went

10  over that.  I'm going to stop that question.  I'll

11  move on.

12            This kind of goes back to some earlier

13  questions we asked, but I just want to make sure I

14  understand.

15            Is there anyone outside of your office

16  who could prohibit you from enforcing this law?

17       A    I'm not aware of any authority or an

18  individual that would have the authority to keep me

19  from enforcing the law.

20       Q    Okay.  And if you were to enforce this

21  law, would it proceed through the processes that we

22  discussed earlier, either an indictment or a criminal

23  accusation?

24       A    That's correct.

25       Q    Okay.  So I'd like to take a look -- just



1   briefly take a closer look at some of the language in

2   this statute.  I'd like to specifically start with

3   understanding physically where this law can be

4   enforced.

5            I'm going to -- can you look at the --

6   the subparagraphs one, two and three, and just as a

7   starting question, I would just ask:  Would you agree

8   with me that these describe where physically this law

9   applies?

10       A     In my estimation, I would say yes.

11       Q     Yes, sir.  So these are the ones that say

12  within 150 feet of the outer edge of any building in

13  which a polling place is established within the

14  polling place or within 25 feet of any voter standing

15  in line at any poling place.

16            Do you -- in your understanding, does

17  this statute, the electioneering statute, have

18  anything to say about behavior taking place outside

19  of those zones?

20       A     It seems to have an exclusive zone within

21  that described perimeter, 150 feet.  So I anticipate

22  that anything beyond 150 feet is not covered.

23       Q     Okay.  And then it also mentions -- just

24  to make sure we're on the same page -- within the

25  polling place is subparagraph B.  So would this also



1      Q     So I'll move on from that question.  The

2   next clause reads:  Nor shall any person distribute

3   or display any campaign material.

4           What would constitute campaign material?

5           MR. BOYLE:  Object.  Calling for a

6       legal interpretation.  You may answer.

7           THE WITNESS:  I would use the plain

8       meaning of that -- that phrase.  Campaign

9       material is something that denotes an

10      individual or a cause or -- that they

11      would want to have that elector consider.

12  BY MR. MOCINE-MCQUEEN:

13      Q     Okay.  And would that -- would that

14  person or cause need to be something that appeared on

15  the ballot?

16      A     I would think that would be something

17  that would go hand and hand with that consideration.

18  If it's somebody that, you know, you have a current

19  election and -- but you're looking at other elections

20  down the road and you see many candidates beginning

21  their campaigns now for elections to come in 2024, so

22  it would depend, again, on what is being asked of the

23  elector.

24      Q     Okay.  So what if -- so can you give me

25  some -- just, in your understanding, an example of



 1  what would be electioneering in terms of what would

 2  clearly be prohibited by this statute -- let's say --

 3  in the context of a candidate for office?

 4        A     Certainly anything with an image,

 5  certainly anything with a name, certainly anything

 6  with, perhaps, marketing cliches that have been

 7  presented by a known candidate, a potential

 8  candidate.

 9              Those are the three things that would be

10  what I would look at at least initially.

11        Q     Okay.  So I'll move on to kind of some

12  related questions.  I'd like to understand what would

13  fall outside of this statute.  So what would not be

14  prohibited by this statute.  So if I'm -- so if a

15  person is wearing an unmarked T-shirt, they are not

16  carrying any food or any sort of gift and they are

17  not asking any -- the voter in line to vote for or

18  against anything on that ballot, can just a normal

19  citizen walk into the zone and begin having a

20  conversation with a voter?

21        A     That seems to be allowed.

22        Q     And are you aware that -- so I want to

23  reference something that I'm going to call SB 202,

24  and I will explain that.  By that, I mean Senate Bill

25  202 that was passed by the Georgia General Assembly



GREGORY W. EDWARDS                                    February 27, 2023
IN RE GEORGIA SENATE BILL 202                                       60

```
 1   in 2021, and it became effective, I believe, in March
 2   of 2021, but it is Georgia Senate Bill 202 as enacted
 3   by the General Assembly in 2021.
 4            If I refer to that as SB 202, will you
 5   know what I mean?
 6        A    I'll follow that.
 7        Q    Okay.  So SB 202 made some changes to
 8   this specific statute.  Are you aware of that?
 9        A    I have not researched it or --
10        Q    Okay.  Do you have a general idea of
11   about what changes might have been made to the
12   statute?
13        A    No, I have not --
14        Q    Okay.
15        A    -- paid any particular attention to that
16   particular statute because of other matters.
17        Q    Okay.  And the reason I was asking is
18   earlier you made reference to the statute being
19   enacted, and I was trying to understand as to whether
20   you meant the changes made by SB 202 or if you meant
21   as it stands now or what you meant by enacted?
22        A    Well, what I meant was that I was aware
23   that there were changes in the election laws.  I had
24   not given a lot of, you know, intense research in it.
25        Q    Okay.
```



1          A      So just in passing with other information

2    that I get usually on a daily basis about changes in

3    the laws among prosecutors, you know, we have our

4    continuing discussions about changes in the law and

5    potential laws, and so quite literally, it's probably

6    in the mix of all of these other things that I've

7    been looking at over these past couple of years.

8          Q      Okay.  We're nearing the end of my

9    questions.  We'll probably pause for a moment for me

10   to make sure that I've gotten them, but I do have

11   just a couple of follow-up questions here at the end.

12              So we talked about a person approaching a

13   voter.  If that person isn't participating in any --

14   or isn't engaging in any of the prohibited conduct as

15   laid out in 414, it was your understanding that they

16   could still approach a voter in one of these zones;

17   is that correct?

18         A      Right.  I would anticipate you might have

19   any instance where, you know, an emergency situation

20   where somebody is going to talk to their -- talk to

21   somebody who is in the line, or, you know, you never

22   know when a person might need to talk to somebody in

23   the line.

24         Q      And so if they are not discussing some of

25   the matter prohibited by Section 414, they can engage



GREGORY W. EDWARDS                          February 27, 2023
IN RE GEORGIA SENATE BILL 202                            62

```
 1   in a conversation -- a citizen can engage in a
 2   conversation with a voter who is standing in line or
 3   who is otherwise in one of these protected zones?
 4       A    That seems to be allowed.
 5       Q    Okay.
 6            MR. MOCINE-MCQUEEN:  Let's take a
 7       five-minute break.  We may be near the
 8       conclusion here.
 9            Let me take a five-minute break.
10                 (Brief pause.)
11            MR. MOCINE-MCQUEEN:  We are back on
12       the record.  I'll ask, once again, if
13       someone who is on-line can unmute to
14       confirm that they can hear us.
15            MS. EVANS:  Yes.
16            MR. MOCINE-MCQUEEN:  Great.  Thank
17       you.
18            Mr. Edwards, I have no further
19       questions for you at this time.
20            Does anyone joining us, who is
21       making an appearance on Zoom, wish to ask
22       any questions?
23            I'm going to give folks a moment to
24       unmute since I know that can be a
25       struggle.
```



1                   D I S C L O S U R E

2          The following representations and disclosures

3     are made in compliance with Georgia Law, more

4     specifically:

5          Article 10(B) of the Rules and Regulations of

6     the Board of Court Reporting (disclosure forms).

7          OCGA 9-11-28(c (disqualification of reporter for

8     financial interest).  OCGA 15-14-37(a) and (b)

9     (prohibitions against contracts except on a

10    case-by-case basis.)

11         I am a certified court reporter in the State of

12    Georgia.  I am a subcontractor for Esquire Deposition

13    Solutions.  I have been assigned to make a complete

14    and accurate record of these proceedings.

15         I have no relationship of interest in the matter

16    on which I am about to report which would disqualify

17    me from making a verbatim record or maintaining my

18    obligation of impartiality in compliance with the

19    Code of Professional Ethics.

20         I have no direct contract with any party in this

21    action and my compensation is determined solely by

22    the terms of my subcontractor agreement.

23         This 10th day of March, 2023.

24    _____

                Tanya L. Verhoven-Page,
25              B-1790.



800.211.DEPO (3376)
EsquireSolutions.com

1                    C E R T I F I C A T E

2

3    STATE OF GEORGIA:

4    FULTON COUNTY:

5

6              I hereby certify that the foregoing

7         deposition was reported, as stated in the

8         caption, and the questions and answers

9         thereto were reduced to written page

10        under my direction, that the preceding

11        pages represent a true and correct

12        transcript of the evidence given by said

13        witness.

14             I further certify that I am not of

15        kin or counsel to the parties in the

16        case, am not in the regular employ of

17        counsel for any of said parties, nor am I

18        in any way financially interested in the

19        result of said case.

20        Dated this 10th day of March, 2023.

21

22        _____

23        Tanya L. Verhoven-Page,
          Certified Court Reporter,
          B-1790.

24

25

