**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>                              *Plaintiffs*,<br>         v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*,<br><br>                         *Defendants*,<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>                    *Intervenor-Defendants*. | Civil Action No.: 1:21-cv-01259-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*,<br><br>                              *Plaintiffs*,<br>         v.<br>BRIAN KEMP, Governor of the State of Georgia, in his official capacity, *et al.*,<br><br>                         *Defendants*,<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>                    *Intervenor-Defendants*. | Civil Action No.: 1:21-cv-01284-JPB |

**GEORGIA NAACP PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION BASED ON IMMATERIAL VOTING REQUIREMENTS**

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

    A.    GEORGIA REMOVED A SIMILAR BIRTHDATE
          REQUIREMENT AFTER THIS DISTRICT HELD IT VIOLATED
          FEDERAL LAW ..................................................................................2

          1.    This District Struck Down Birthdate Requirements in 2018......2

          2.    The General Assembly Dismantled Birthdate Requirements
              in 2019...................................................................................5

    B.    SB 202 REINSTATES A BIRTHDATE REQUIREMENT THAT
          DISENFRANCHISES ELIGIBLE ABSENTEE VOTERS ................6

ARGUMENT ..........................................................................................................9

    A.    PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF
          SUCCESS..............................................................................................9

          1.    Plaintiffs Have Standing. ............................................................9

          2.    The Birthdate Requirement Violates the CRA. ........................13

    B.    IRREPARABLE HARM ABSENT AN INJUNCTION IS
          CERTAIN............................................................................................19

    C.    THE BALANCE OF HARDSHIPS WEIGHS STRONGLY IN
          FAVOR OF A PRELIMINARY INJUNCTION ................................20

    D.    THE PUBLIC INTEREST STRONGLY FAVORS AN
          INJUNCTION ....................................................................................22

CONCLUSION .....................................................................................................23

ii

# TABLE OF AUTHORITIES

CASES                                                                          PAGE(S)

*Action NC v. Strach*,
   216 F. Supp. 3d 597 (M.D.N.C. 2016) ............................................................19

*Arcia v. Fla. Sec'y of State*,
   772 F.3d 1335 (11th Cir. 2014) ....................................................................10

*City of S. Miami v. Governor*,
   65 F.4th 631 (11th Cir. 2023) ...............................................................10, 12

*Democratic Party of Georgia, Inc. v. Crittenden*,
   347 F. Supp. 3d 1324 (N.D. Ga. 2018) ...................................................*passim*

*Fla. State Conf. of NAACP v. Browning*,
   522 F.3d 1153 (11th Cir. 2008) ............................................................12, 14

*Georgia Coal. for People's Agenda, Inc. v. Kemp*,
   347 F. Supp. 3d 1251 (N.D. Ga. 2018) .........................................................19

*Gonzalez v. Governor of Ga.*,
   978 F.3d 1266 (11th Cir. 2020) ......................................................................9

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)............................................................................11, 12

*Jones v. Jessup*,
   279 Ga. 531 (2005) ....................................................................................16

*League of Women Voters of Fla. v. Browning*,
   863 F. Supp. 2d 1155 (N.D. Fla. 2012) ........................................................22

*League of Women Voters of Fla. v. Cobb*,
   447 F.Supp.2d 1314 (S.D. Fla. 2006) ...........................................................19

*League of Women Voters of N.C. v. N. Carolina*,
   769 F.3d 224 (4th Cir. 2014) .......................................................................20

*Martin v. Crittenden*,
   347 F. Supp. 3d 1302 (N.D. Ga. 2018)...................................................*passim*

*Migliori v. Cohen*,
   36 F.4th 153 (3d Cir. 2022) .........................................................................18

*Obama for Am. v. Husted*,
   697 F.3d 423 (6th Cir. 2012) .......................................................................22

*Project Vote, Inc. v. Kemp*,
   208 F. Supp. 3d 1320 (N.D. Ga. 2016).............................................................19

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006).............................................................................................22

*Schwier v. Cox*,
   340 F.3d 1284 (11th Cir. 2003) .................................................................14, 23

*Touchston v. McDermott*,
   234 F.3d 1133 (11th Cir. 2000) ......................................................................20

*Vote.org v. Georgia State Election Board*,
   No. 1:22-CV-01734-JPB, 2023 WL 2432011
   (N.D. Ga. March 9, 2023).............................................................................12, 14

*Wesberry v. Sanders*,
   376 U.S. 1 (1964).............................................................................................20

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)...............................................................................................9

*Wood v. Raffensperger et al.*,
   No. 20-cv-4651-SDG (N.D. Ga. Nov. 19, 2020)..............................................6

**STATUTES**

Civil Rights Act, 52 U.S.C. §10101 ...............................................................*passim*

O.C.G.A. § 21-2-216.......................................................................................2, 15

O.C.G.A. § 21-2-381.............................................................................................3

O.C.G.A. § 21-2-386.............................................................................................4

**RULES**

Local Rule § 5.1..................................................................................................28

**OTHER AUTHORITIES**

House Bill 316 ...................................................................................................1, 5

SAFE Commission Report to the General Assembly, p. 3 (Jan. 10, 2019),
   https://sos.ga.gov/sites/default/files/2022-
   03/safe_commission_report_final_1-10-18.pdf ...................................................5

Senate Bill 202 ......................................................................................................1

## **INTRODUCTION**

The 2022 election results show that Senate Bill 202 ("SB 202") has already denied the right to vote to hundreds and potentially thousands of qualified Georgia voters by rejecting absentee ballots without a correct birthdate on the return envelope.  Absent a preliminary injunction, the birthdate requirement will, disenfranchise many more eligible voters in the upcoming 2024 primaries and general election.  Because this "error or omission" on the ballot return envelope is "not material to determining" whether any person "is qualified under State law to vote"—as the State and counties admit—this requirement violates the Civil Rights Act (the "CRA"), 52 U.S.C. §10101(a)(2)(B).  This Court should enjoin it.

Indeed, this District held twice before, in 2018, that laws requiring absentee voters to provide birthdates on ballot return envelopes violate the CRA.  *See Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018); *Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp. 3d 1324 (N.D. Ga. 2018) (the "*Crittenden"* cases).  In both cases, the court granted injunctions ordering officials to count absentee ballots despite a then-existing Georgia law that required voters to write their birth years on the envelope.  *Id.*  Following these decisions, Georgia removed the birth-year requirement.  House Bill 316 ("HB 316") § 30.  This slashed the rejection rate for absentee ballots, ensuring that many more valid votes were counted.  Yet, despite

the prior injunctions, and with full knowledge that the immaterial birthdate requirement would increase rejections of valid ballots, the General Assembly and Governor Kemp in 2021 reintroduced a birthdate requirement in SB 202.

To stop SB 202's immaterial birthdate requirement from disenfranchising more Georgians in the upcoming 2024 elections, the Georgia State Conference of the NAACP and other signatory  Plaintiffs below ("Plaintiffs") request that this Court enter an injunction that parallels those in the *Crittenden* cases: ENJOIN Defendants from rejecting absentee ballots based on any error or omission relating to SB 202's requirement of birthdates on ballot return envelopes and ORDER the Secretary of State to count such ballots and refuse certification of election results until all such ballots have been counted.

## **BACKGROUND**

### A.   **GEORGIA REMOVED A SIMILAR BIRTHDATE REQUIREMENT AFTER THIS DISTRICT HELD IT VIOLATED FEDERAL LAW**

#### 1.   **This District Struck Down Birthdate Requirements in 2018.**

Birthdate plays only one role in determining qualifications to vote under Georgia law.  A voter must be "[a]t least 18 years of age on or before the date of the primary or election in which such person seeks to vote"—a determination made at the time of registration.  O.C.G.A. § 21-2-216(a)(3) (2020).

From 2007 to 2018, Georgia law nonetheless required absentee voters to write their birthdates on ballot return envelopes, even though those voters had already proven their age eligibility when registering, and after election officials had already confirmed their eligibility to receive ballots.  A registered voter could request an absentee ballot by completing an application requiring the voter's name, home address, the election the voter wished to vote in, and the voter's signature on an oath.  O.C.G.A. § 21-2-381 (a)(1)(C) & (b)(2) (2018).  Before mailing an absentee ballot and two envelopes to the voter, Georgia law required election officials to "compare the Identifying information on the application with the information on file in the registrar's office and, if the application is signed by the elector, compare the signature or mark of the elector on the application with the signature or mark of the elector on the elector's voter registration card."  O.C.G.A. § 21-2-381 (b)(1) (2018).

To submit the absentee ballot, the voter had to place the ballot in a first envelope, and then place that envelope in a second, ballot return envelope.  On the ballot return envelope, voters had to again sign an oath, and provide their home address and birthdate.  Georgia law changed in 2017, requiring voters to instead write their year of birth on the envelope.  O.C.G.A. § 21-2-384(c)(1) (2018).  Georgia law further provided that, if the voter failed to put this information on the

3

return envelope, the absentee ballot "shall" be rejected.   O.C.G.A. § 21-2-386(a)(1)(C) (2018).

During the 2018 election, this District held, in two separate decisions, that requiring birth year information violated the Materiality Provision of the CRA, which forbids officials from denying the right to vote "because of an error or omission on any record or paper relating to any . . . act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."  52 U.S.C. § 10101(a)(2)(B).  In *Martin*, the court held that "a voter's ability to correctly recite his or her year of birth on the absentee ballot envelope is not material to determining said voter's qualifications under Georgia law," and accordingly enjoined Gwinnett County from rejecting absentee ballots for failure to provide year of birth on the return envelope.  347 F. Supp. 3d at, 1308-09.  One day later, the court in *Democratic Party of Georgia* adopted "the rationale set forth in" *Martin* and confirmed "that absentee mail-in ballots rejected solely because of an omitted or erroneous birth date must be counted" state-wide and granted plaintiffs' motion for a preliminary injunction concerning these rejected ballots.  347 F. Supp. 3d at, 1347.

### 2.      The General Assembly Dismantled Birthdate Requirements in 2019.

Less than two months after the *Crittenden* decisions, the Secure, Accessible & Fair Elections ("SAFE") Commission recommended changes to Georgia voting law.  Then-Secretary of State Brian Kemp established the SAFE Commission "to thoroughly study and discuss all options for Georgia's next voting system, with a focus on security, transparency, voter experience, accessibility and inclusion, voters' ability to adjust to a new system, and the ability of election officials to adapt to a new system quickly and accurately."[1]  The Commission found that Georgia should update its absentee ballot process in light of recent court orders, including to "make clear that slight variations in any information on the envelope not be a reason to reject an absentee ballot unless the variation does not allow the election official to identify the voter and confirm that the voter cast the ballot."  *Id*. at 18.

In 2019, following the Commission's recommendations, the Georgia General Assembly passed, and the Governor signed, House Bill 316 ("HB 316").  HB 316 removed the requirement that voters write their birth year on ballot return envelopes. HB 316 § 30.

---

[1] SAFE Commission Report to the General Assembly, p. 3 (Jan. 10, 2019), available at https://sos.ga.gov/sites/default/files/2022-03/safe_commission_report_final_1-10-18.pdf.

Eliminating the immaterial birth year requirement cut the rejection rate for valid absentee ballots.  Just a few months before SB 202's enactment, counsel for the Secretary of State and members of the Georgia State Election Board confirmed that HB 316 had "resulted in a significant decrease in the percentage of absentee ballots that were rejected at the outset" in the 2020 General Election as compared to the 2018 General Election, in part because "[t]here were quite a number in 2018 that were rejected for that missing [birthdate] information."  *See* Decl. of Laurence Pulgram dated May 17, 2023 ("Pulgram Decl.") Ex. 1 at 51:12-15 (Oral Argument Transcript from *Wood v. Raffensperger et al.*, No. 20-cv-4651-SDG (N.D. Ga. Nov. 19, 2020), ECF. No. 64,).

## B.   SB 202 REINSTATES A BIRTHDATE REQUIREMENT THAT DISENFRANCHISES ELIGIBLE ABSENTEE VOTERS

Despite this history, SB 202 reinstitutes the very type of absentee-ballot-envelope birthdate requirement that the *Crittenden* cases held impermissible. Registered voters who submit an absentee ballot application must include their name, date of birth, address as registered, address where they want the ballot mailed, a signed oath, and the number on their driver's license or identification card.  SB 202 § 25 at 945-48.  Election officials must compare the applicant's "name, date of birth, and number of his or her Georgia driver's license or identification card" in the application with the same information in the voter's registration records to "verify

the identity of the applicant." *Id.* at 1056-63. If the application contains all the required fields and the information on the application matches that in the voter file, then the applicant is considered "eligible to vote." *Id.* The registrar will then mail an absentee ballot to the voter, along with two envelopes. *Id.* at 1074-76.

To submit an absentee ballot, a voter must place it first in one envelope, which then must be placed into a second, ballot return envelope. SB 202 § 28 at 1453-60. The ballot return envelope must now include not only the voter's signed oath, but also the voter's full date of birth, the voter's driver's license or identification card number, or if not available, the last 4 digits of his or her social security number. *Id.* The election official must then compare the date of birth and driver's license or state identification number on the envelope with the same information in the voter's registration records. *Id.* § 29 at 1570-79.

Under SB 202, if the voter does not properly write his or her birthdate or other identification number, the official ***must*** reject the ballot. *Id.* at 1593-99; Pulgram Decl. Ex. 2 at 211:6-213:5, 81:7-82:17 (Transcript of April 5, 2023 Deposition of Keisha Smith ("Smith Depo. Tr.")). That is the case even though, as the State admits in its discovery responses, the birthdate requirement "is not used to determine whether the individual is 'qualified' to vote under Georgia law." Pulgram Decl. Ex. 3 at 3 (State Defendants' Responses and Objections to Plaintiff's First Interrogatories

dated May 16, 2022).  Upon rejection of an absentee ballot, voters have just three days from the date of the election, no matter when they receive notice of the error or omission, to "cure" the problem by submitting an affidavit to the county registrar or clerk, along with a valid form of identification.  SB 202 § 29 at 1602-07.  Otherwise, the lack of birthdate negates their vote.

The foreseeable consequence of the renewed birthdate requirement is more disenfranchised Georgians.  The table below shows the number of absentee ballots rejected due to the birthdate requirement just before and after enactment of SB 202, as identified for just the six counties that have responded to Plaintiffs' interrogatories.

| County | Pre-SB 202 | | Post-SB 202 | |
|---|---|---|---|---|
| | Nov. 2020 | Jan. 2021 | Nov. 2022 | Dec. 2022 |
| Athens-Clarke | 0 | 0 | 17 | 3 |
| Chatham | 0 | 0 | 25 | 49 |
| Cobb | 0 | 0 | 0 | 180 |
| Fulton[2] | 0 | 0 | 16-283 | 1-279 |
| Hall | 0 | 0 | 3 | 1 |
| Richmond | 0 | 0 | 21 | 13 |

---

[2] Fulton County responded that it combines its count of ballot rejections due to the birthdate requirement with rejections due to the missing driver's license number (or alternative identifications).  This resulted in the ranges described in the text.

*See* Pulgram Decl. Exs. 4-9 (interrogatory responses of County Defendants).  Even the limited information available shows that this birthdate requirement has already disenfranchised qualified voters in every county reporting.

**ARGUMENT**

To obtain a preliminary injunction, the movant must establish that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer an irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The third and fourth factors merge when the government opposes injunctive relief.  *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020) (citing *Swain v. Junior*, 961 F.3d 1276, 1285 n.3 (11th Cir. 2020)).  Here, all factors support a preliminary injunction.

A.    **PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS**

1.    **Plaintiffs Have Standing.**

To establish standing, a plaintiff must show (1) that it has suffered, or faces an imminent, "concrete and particularized" injury; (2) that defendant's conduct caused that injury; and (3) that the injury or threat is redressable by a favorable outcome. *Democratic Party of Ga.*, 347 F. Supp. 3d at 1336.  Each requirement is met here.

*First*, Plaintiffs have suffered and will suffer a concrete injury through their "diversion-of-resources" to address SB 202's illegal requirements. "[A]n organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341–42 (11th Cir. 2014). An organization must show that it has "diverted its resources," and that "the injury to the identifiable community that the organization seeks to protect is itself a legally cognizable Article III injury that is closely connected to the diversion." *City of S. Miami v. Governor*, 65 F.4th 631, 638 (11th Cir. 2023). Plaintiffs satisfy both prongs.

Plaintiffs are organizations that aid underrepresented communities, including people of color and/or women, to participate in voting. Pulgram Decl. Ex. 10 at ¶ 2 (Decl. of Gerald Griggs dated May 16, 2023 ("Griggs Decl.")); Pulgram Decl. Ex. 11 at ¶ 2 (Decl. of Susannah Scott dated May 15, 2023 ("Scott Decl.")); Pulgram Decl. Ex. 12 at ¶ 2 (Decl. of Gerardo Gonzalez dated May 15, 2023 ("Gonzalez Decl.")); Pulgram Decl. Ex. 13 at ¶ 4 (Decl. of Treaunna ("Aunna") Dennis dated May 16, 2023 ("Dennis Decl.")); Pulgram Decl. Ex. 14 at ¶ 2; (Decl. of Helen Butler dated May 14, 2023 ("Butler Decl.")); Pulgram Decl. Ex. 17 at ¶ 4 (Decl. of Shafina Khabani dated May 16, 2023 ("Khabani Decl.")). The organizations' core missions

include promoting voter registration, voter education, election protection, and maximizing voter participation. *Id*. Their limited resources have been and will continue to be diverted from other activities to address the immaterial birthdate requirement, through time spent educating voters about absentee ballots, constituting a "concrete and demonstrable injury." *Havens Realty Corp. v. Coleman*, 455 US 363, 379 (1982). *See also, e.g.*, Griggs Decl. at ¶ 9 ("As part of this effort, for the first time in its history, the Georgia NAACP organized a statewide, 22-city voter education campaign, including town halls, civic engagement events, and church events throughout Georgia, to make sure that people were aware of SB 202's voting processes and its new restrictions, and that they had available options to participate in the franchise."); Scott Decl. at ¶ 7 ("In the wake of SB 202, the LWVGA also had to organize a number of town halls, information sessions, trainings and other civic engagement events with local Leagues and Georgia voters to educate them about SB 202's new restrictions on the absentee ballot process and its changes to elections laws more broadly."); *see also* Gonzalez Decl. at ¶ 7; Dennis Decl. ¶ 8; Butler Decl. ¶¶ 6-10; Khabani Decl. ¶¶ 6-8.

Using an immaterial birthdate requirement to reject valid votes also impairs Plaintiffs' missions to maximize the right to vote. Griggs Decl. ¶ 10; Scott Decl. ¶ 9; Gonzalez Decl. ¶ 8; Dennis Decl. ¶ 7; Butler Decl. ¶ 8. This "concrete and

demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp.*, 455 U.S. at 379.

These injuries to Plaintiffs and to the communities they represent—*i.e.*, people of color and women—is legally cognizable and is closely connected to the organizations' missions. The failure to count votes is not hypothetical or conjectural; it has already happened and will continue to happen to the communities that Plaintiffs serve. *See Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008). This injury is a direct consequence of SB 202's reinstitution of an immaterial birthdate rule that Georgia abandoned in 2019. *Compare City of S. Miami*, 65 F.4th at 839 (finding no standing where "[t]he record is rife with *speculative* fears of future harm" but "fails to establish that local officers profiled *anyone based on* S.B. 168") (emphasis added).

Alternatively, the Plaintiffs also have associational standing. As in *Crittenden*, given the tens of thousands of members of Plaintiffs' groups collectively, it is highly likely that ongoing rejection of absentee ballots because of the birthdate requirement will affect some of Plaintiffs' members. As this Court recently recognized, "[t]his probable danger is sufficient to satisfy the injury prong for associational standing." *Vote.org v. Georgia State Election Board,* No. 1:22-CV-

01734-JPB, 2023 WL 2432011 (N.D. Ga. March 9, 2023) (quoting *Democratic Party of Ga.*, 347 F. Supp. 3d at 1337, and discussing *Browning* and *Arcia*).

*Second*, as to causation, the State's reinstatement of the birthdate requirement and the Counties' failure to count valid absentee votes directly cause both the diversion of resources and the frustration of the Plaintiffs' missions. The Court "can trace a direct line between . . . any county's[] decision to reject an absentee ballot for missing information, when that information is not material to verifying a voter's identity, and the resulting injury when that person's vote is not counted." *Democratic Party of Ga.*, 347 F. Supp. 3d at 1338. There is no legitimate question that Defendants' rejection of otherwise valid ballots due to immaterial paperwork requirements has directly caused and will cause the injuries discussed above. *Id.*

*Third*, a preliminary injunction can redress this injury to Plaintiffs and the communities they serve. After all, "any injunction that clarifies the legal requirements surrounding absentee ballots . . . can reduce the number of rejected ballots, thereby addressing the individual harm suffered by Plaintiffs' members" and can "reduce Plaintiffs' burden of assisting voters." *Id.* at 1338.

## 2.     The Birthdate Requirement Violates the CRA.

The Materiality Provision of the CRA prohibits "denying the right of any individual to vote in any election" based on an "error or omission on any record or

paper related to any application, registration, or other act requisite to voting, if such error or omission is not material to determining whether such individual is qualified under State law to vote in such election."  52 U.S.C. §10101(a)(2)(B).  No racially discriminatory intent or effect is required.  Instead, this provision "prohibits denying the right to vote based on errors or omissions that are not material in determining voter eligibility," *Browning*, 522 F.3d at 1173, "thus providing an excuse to disqualify potential voters."  *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (finding direct private right of action under the CRA, as well as right of action under Section 1983 to enforce CRA) (citation omitted); *Vote.org*, 2023 WL 2432011 at *6 (same for organizational plaintiff).

The elements of a CRA violation are met here because SB 202 (1) denies qualified voters the right to vote by rejecting their ballots (2) due to an "error or omission" in omitting or erroneously inputting birthdates (3) on a "record or paper relating to any . . . act requisite to voting," *i.e.*, the absentee ballot return envelope required to submit the ballot, (4) which is immaterial to whether the voter "is qualified under State law to vote in the election."

To evaluate materiality, the Court considers "whether, accepting the error as true and correct, the information contained in the error is material to determining the eligibility of the applicant" to vote.  *Browning*, 522 F.3d at 1175.  The ability of

voters to correctly write their birthdate on an absentee ballot return envelope has no bearing on determining their eligibility to vote under Georgia law. To the contrary, to be eligible to vote in Georgia, one need only meet the following qualifications: (1) U.S. citizenship; (2) Georgia residency; (3) at least 18 years old on or before the applicable primary or election; (4) no adjudication of incompetency; and (5) no outstanding sentence for a felony conviction. O.C.G.A. § 21-2-216(a) (2020).

Georgia confirms that a person is old enough to vote when they register. *See* O.C.G.A. § 21-2-216(a)(3) (2020). And SB 202 requires that election officials verify a voter's eligibility *before* sending out an absentee ballot and return envelope in the first place. Under SB 202, election officials check whether absentee voters are "eligible to vote" by comparing their absentee ballot *application* with their voter registration card. SB 202 § 25 at 945-48. Officials only mail an absentee ballot and return envelope after confirming eligibility to cast an absentee vote. *Id.* at 1074-76. The presence of the voter's date of birth on the return envelope *afterwards* is entirely unnecessary and therefore immaterial to eligibility.

The State's discovery responses admit as much. They state that "the requirement that the voter print his or her date of birth in the space provided on the outer oath envelope of the absentee ballot packet ***is not used to determine whether the individual is 'qualified' to vote under Georgia law***." Pulgram Decl. Ex. 3 at 3

(State Defendants' Responses and Objections to Plaintiff's First Interrogatories dated May 16, 2022) (emphasis added).  Local elections officials have also that the birthdate on the absentee ballot envelope is not used to determine a voter's eligibility. Pulgram Decl. Ex. 2 at 213:2-13 ("Q. So the request for a birth date on the absentee ballot envelope is not then used to determine a voter's eligibility; is that correct?  A. That's correct.  Q. This was already done in the registration process?  A. Yes.").

Georgia courts have repeatedly found that absentee ballots reflecting an inaccurate birthdate must still be counted.  The Georgia Supreme Court recognizes that the law "does not mandate the automatic rejection of any absentee ballot lacking the elector's place and/or date of birth." *Jones v. Jessup*, 279 Ga. 531, 533 n.5 (2005) (finding that absentee ballots with an incorrect date of birth still counted because they "substantially complied with all of the essential requirements").  This District followed suit in the *Crittenden* cases, relying on *Jones* to enjoin election officials from rejecting absentee ballots where the voter did not provide their year of birth on the envelope.  347 F. Supp. 3d at 1308-11.  Those courts held that "a voter's ability to correctly recite his or her year of birth on the absentee ballot envelope" violated the CRA because "election officials have already confirmed such voters' eligibility through the absentee ballot application process."  *Martin*, 347 F. Supp. 3d at 1308-09; *accord Democratic Party of Ga.*, 347 F. Supp. 3d at 1347.

SB 202 revives the immaterial birthdate requirement struck down in the *Crittenden* cases with no legitimate justification.  The State Defendants claim that "the voter's date of birth is used by county election officials to ***assist*** them in verifying the identity of the voter."  Pulgram Decl. Ex. 3 at 3 (emphasis added).  But at no point during discovery have Defendants offered any explanation on why such information is necessary for validating a voter that officials have already deemed eligible to vote and issued an absentee ballot.  State Defendants' expert Justin Grimmer, Ph.D., testified that he thought that "the ID requirements will ensure that voters are who they say they are," without concluding that a birthdate was needed.  Pulgram Decl. Ex. 16 at 180:22-181:17 (Transcript of May 1, 2023 Deposition of Dr. Justin Grimmer ("Grimmer Depo. Tr.")).

Nor can the State Defendants salvage the birthdate requirement by a claim that there is a "lack of elector confidence in the election system" stemming from "allegations of rampant voter fraud."  *See* SB 202 Section 2 (1), (4).  Federal law does not permit immaterial obstacles to voting because of unsupported claims they prevent fraud or promote public confidence.  *See* 52 U.S.C. §10101(a)(2)(B).  It prohibits exactly such requirements.  "Whatever sort of fraud deterrence or prevention this requirement may serve, it in no way helps the [State] determine whether a voter's age, residence, citizenship, or felony status qualifies them to vote."

17

*Migliori v. Cohen*, 36 F.4th 153, 163 (3d Cir. 2022), *vacated as moot sub nom. Ritter v. Migliori*, 143 S.Ct. 297 (Oct. 11, 2022) (finding absence of handwritten date on absentee ballot return envelope immaterial under CRA).

In all events, there is no proof of significant absentee ballot fraud in Georgia, much less proof that a birthdate requirement would be material to reducing fraud. It is highly improbable to believe that a fraudster who somehow obtains an eligible voter's ballot and identification or social security number would not also know that voter's date of birth. If anything, just the opposite; the usual voter ID (*e.g.*, driver's license) generally includes the date of birth. Requiring a birthdate is immaterial even under the farfetched, hypothetical scenario of an effort to obtain, and return, a single fraudulent ballot. As the State's own expert witness, Dr. Justin Grimmer testified, "there is no evidence of meaningful fraud in Georgia [elections] in 2020." Grimmer Depo. Tr. at 36:19-20; *see also id.* at 38:11-39:2 (explaining analysis finding claims of fraud to be false).

The denial of even one qualified voter's ballot due to an immaterial requirement establishes a violation of the statute.[3] The undisputed record to date shows at least hundreds in six counties, alone.

---

[3] The superficiality of SB 202's "cure" process is magnified in that it grants absentee voters a mere three days after the election to cure. SB 202 § 27 at 1258-61. As the uncounted votes in 2022 reflect, voters do not always receive timely notice that a

**B.      IRREPARABLE HARM ABSENT AN INJUNCTION IS CERTAIN**

Absent injunctive relief, organizational Plaintiffs will suffer irreparable harm as they will both continue to face frustration of their mission of maximizing voter participation and be required to divert resources to assist voters in addressing issues arising from the immaterial birthdate requirement.  *See Georgia Coal. for People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1268 (N.D. Ga. 2018) (finding that Plaintiffs, as organizations, suffer irreparable injury distinct from the injuries of eligible voters because, without an injunction, their organizational missions "will continue to be frustrated and organization resources will continue to be diverted to assist with [the challenged law]").  Both this frustration of purpose and diversion of resources constitute irreparable harm: Plaintiffs' opportunities to increase voter participation "cannot be remedied once lost" (*id.*), and there is no monetary remedy that can correct it.  *See Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1350 (N.D. Ga. 2016); *see also Action NC v. Strach*, 216 F. Supp. 3d 597, 642 (M.D.N.C. 2016); *League of Women Voters of Fla. v. Cobb*, 447 F.Supp.2d 1314, 1339 (S.D. Fla. 2006).

Similarly, irreparable harm is threatened to the Plaintiff associations' constituencies whose ballots will go uncounted.  When restrictions threaten the right

---

cure is necessary or time to comply, particularly if they are submitting an absentee ballot because they will be out of the state on election day.

to vote, "irreparable harm is presumed and no further showing of injury need be made." *Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000). That is because "a violation of the right to vote cannot be undone through monetary relief and, once the election results are tallied, the rejected electors will have been disenfranchised without a future opportunity to cast their votes." *Martin*, 347 F. Supp. 3d at 1309.

## C.   THE BALANCE OF HARDSHIPS WEIGHS STRONGLY IN FAVOR OF A PRELIMINARY INJUNCTION

Any purported hardship that Defendants suffer from a preliminary injunction is outweighed by the harm that Plaintiffs seek to redress. SB 202's birthdate requirement disenfranchises already eligible voters for simply failing to write a correct date of birth on a ballot return envelope. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Without an injunction, voters have been and will be stripped of their fundamental right to vote, for which there is no after-the-fact remedy: "[O]nce the election occurs, there can be no do-over and no redress. The injury to these voters is real and completely irreparable if nothing is done to enjoin this law." *League of Women Voters of N.C. v. N. Carolina*, 769 F.3d 224, 247 (4th Cir. 2014).

In contrast, Defendants will suffer little, if any, hardship from an injunction. Plaintiffs request narrow and easily implemented relief that would not disrupt upcoming elections or even require change in forms. If anything, enjoining the Secretary of State and County Defendants from rejecting otherwise valid ballots based on the immaterial birthdate requirement would make review of absentee ballots *easier*, as birthdates need not be checked. The Secretary of State would also issue an Official Election Bulletin advising of this and be enjoined from certifying the election until county election officials confirm that they have complied. The relief sought is straightforward and mirrors the relief granted on a much shorter timeline in the two prior court decisions after the 2018 general election. *Democratic Party of Ga.*, 347 F. Supp. 3d at 1340-41 (enjoining certification of election results until Secretary "has confirmed that each county's returns include the counts for absentee ballots where the birth date was omitted or incorrect"); *Martin*, 347 F. Supp. 3d at 1308-09 (enjoining Gwinnett County from rejecting absentee ballots because of omitted or incorrect dates of birth).[4]

---

[4] Of course, if there is sufficient time before an election to eliminate the immaterial requirement from absentee ballot forms, that remedy is preferable. But if the State contends there is insufficient time, then counting absentee ballots regardless of birthdate information on the return envelope is an adequate alternative.

For these reasons, the prudential principles in *Purcell v. Gonzalez*, 549 U.S. 1 (2006) do not weigh against an injunction here.  To the contrary, *Purcell* supports immediate issuance of an injunction now, to ensure relief is granted sufficiently in advance of coming elections to prevent any disruption or confusion.

## D.    THE PUBLIC INTEREST STRONGLY FAVORS AN INJUNCTION

Vindicating voting rights and enforcing "a federal statute serve the public interest almost by definition."  *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012); *see also Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012) (explaining that a preliminary injunction serves the public interest when it helps permit "as many qualified voters to vote as possible").

Further, as explained above, Defendants have not and cannot show that the birthdate requirement will prevent even a single instance of fraud, and Congress enacted the Materiality Provision to eliminate exactly these kinds of clerical hurdles to the right to vote rather than subject them to a balancing test.

Accordingly, the public interest here is best served by a procedure that allows otherwise valid absentee ballots to be cast and counted without the risk of being rejected because the voter omitted immaterial information.  Without an injunction, the State of Georgia will continue to enforce "an excuse to disqualify potential

voters" by creating immaterial requirements that needlessly "increase the number of errors or omissions on the application forms." *Schwier*, 340 F.3d at 1294.

## CONCLUSION

For the reasons above, Plaintiffs respectfully ask this Court to grant this motion for a preliminary injunction and enter an order: enjoining Defendants from rejecting absentee ballots based on any error or omission relating to SB 202's requirement of birthdates on ballot return envelopes, directing the Secretary of State to issue guidance to all counties to comply, and ordering the Secretary of State to count such ballots and refuse certification of election results until all such ballots have been counted.

Respectfully submitted, this 17th day of May, 2023.

/s/ Bryan L. Sells
Bryan L. Sells
Georgia Bar No. 635562
THE LAW OFFICE OF BRYAN
SELLS, LLC
PO Box 5493 Atlanta, Georgia 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

Jon Greenbaum*
Ezra D. Rosenberg*
Julie M. Houk*
Jennifer Nwachukwu*
Heather Szilagyi*
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org

/s/ Laurence F. Pulgram
Laurence F. Pulgram*
lpulgram@fenwick.com
Molly Melcher*
mmelcher@fenwick.com
Armen Nercessian*
anercessian@fenwick.com
Ethan Thomas*
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA  94104
Telephone:     415.875.2300

Joseph S. Belichick*
jbelichick@fenwick.com

23

jhouk@lawyerscommittee.org
jnwachukwu@lawyerscommittee.org
hszilagyi@lawyerscommittee.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Vilia Hayes*
Neil Oxford*
Gregory Farrell*
HUGHES HUBBARD & REED LLP
One Battery Park Plaza New York,
New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041-2008
Telephone:    650-988-8500

Catherine McCord*
cmccord@fenwick.com
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY  10010
Telephone:    (212) 430-2690

*Admitted pro hac vice

*Attorneys for Plaintiffs Georgia State
Conference of the NAACP, Georgia Coalition
for the People's Agenda, Inc., League of
Women Voters of Georgia, Inc., GALEO
Latino Community Development Fund, Inc.,
Common Cause, and the Lower Muskogee
Creek*

/s/ Pichaya Poy Winichakul
Bradley E. Heard (Bar No. 342209)
bradley.heard@splcenter.org
Pichaya Poy Winichakul (Bar 246858)
poy.winichakul@splcenter.org
Nancy G. Abudu (Bar 001471)
nancy.abudu@splcenter.org
Matletha N. Bennette*
matletha.bennette@splcenter.org
SOUTHERN POVERTY
LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30031-1287
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

/s/ Leah C. Aden
Leah C. Aden*
laden@naacpldf.org
Alaizah Koorji*
akoorji@naacpldf.org
John S. Cusick*
jcusick@naacpldf.org
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592

Anuja Thatte*

24

Jess Unger*
*jess.unger@splcenter.org*
Sabrina S. Khan*
*sabrina.khan@splcenter.org*
SOUTHERN POVERTY
LAW CENTER
1101 17th Street NW, Suite 705
Washington, DC 20036
Telephone: (202) 728-9557

/s/ *Adam S. Sieff*
Adam S. Sieff*
*adamsieff@dwt.com*
Daniel Leigh**
*danielleigh@dwt.com*
Brittni A. Hamilton*
*brittnihamilton@dwt.com*
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

Matthew R. Jedreski*
*mjedreski@dwt.com*
Grace Thompson*
*gracethompson@dwt.com*
Danielle E. Kim*
*daniellekim@dwt.com*
Kate Kennedy*
*katekennedy@dwt.com*
Shontee Pant*
*ShonteePant@dwt.com*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone: (206) 622-3150

*athatte@naacpldf.org*
NAACP LEGAL DEFENSE AND
EDUCATION FUND, INC.
700 14th Street, NW
Washington, DC 20005
Telephone: (202) 682-1300

/s/ *Debo P. Adegbile*
Debo P. Adegbile*
*debo.adegbile@wilmerhale.com*
Alexandra Hiatt*
*alexandra.hiatt@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

George P. Varghese*
*george.varghese@wilmerhale.com*
Stephanie Lin*
*stephanie.lin@wilmerhale.com*
Arjun K. Jaikumar*
*arjun.jaikumar@wilmerhale.com*
Mikayla C. Foster*
*mikayla.foster@wilmerhale.com*
Sofia C. Brooks*
*sofie.brooks@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Tania C. Faransso*
*tania.faransso@wilmerhale.com*

25

Facsimile: (206) 757-7700

David M. Gossett*
*davidgossett@dwt.com*
Courtney DeThomas*
*courtneydethomas@dwt.com*
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, D.C.  20005-7048
Telephone: (202) 973-4288
Facsimile: (202) 973-4499

*Attorneys for Plaintiffs Georgia Muslim Voter Project, Women Watch Afrika, Latino Community Fund Georgia, and The Arc of the United States*

*Admitted pro hac vice
**Application to be admitted pro hac vice forthcoming*

WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Nana Wilberforce*
*nana.wilberforce@wilmerhale.com*
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

/s/ *Sophia Lin Lakin*
Sophia Lin Lakin*
*slakin@aclu.org*
Davin M. Rosborough*
*drosborough@aclu.org*
Jonathan Topaz*
*jtopaz@aclu.org*
Dayton Campbell-Harris*
*dcampbell-harris@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836
Facsimile: (212) 549-2539

Susan P. Mizner*
*smizner@aclu.org*
ACLU FOUNDATION, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0781

26

Brian Dimmick*
*bdimmick@aclu.org*
ACLU FOUNDATION, INC.
915 15th Street NW
Washington, D.C. 20005
Telephone: (202) 731-2395

/s/ *Rahul Garabadu*
Rahul Garabadu (Bar 553777)
*rgarabadu@acluga.org*
Caitlin May (Bar 602081)
*cmay@acluga.org*
Cory Isaacson (Bar 983797)
*cisaacson@acluga.org*
ACLU FOUNDATION OF GEORGIA, INC.
P.O. Box 570738
Atlanta, Georgia 30357
Telephone: (678) 981-5295
Facsimile: (770) 303-0060

*Attorneys for Plaintiffs*
*Sixth District of the African Methodist*
*Episcopal Church, Delta Sigma Theta*
*Sorority, Georgia ADAPT, Georgia Advocacy*
*Office, and Southern Christian Leadership*
*Conference*

27

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a font size of 14.

Dated: May 17, 2023                                    */s/ Laurence F. Pulgram*
                                                                        Laurence F. Pulgram
                                                                        *Counsel for Plaintiffs*


## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated: May 17, 2023                                    */s/ Laurence F. Pulgram*
                                                                        Laurence F. Pulgram
                                                                        *Counsel for Plaintiffs*