# Exhibit 11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.:<br>1:21-MI-55555-JPB |
| GEORGIA STATE CONFERENCE OF THE NAACP, ET AL.<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL. | Civil Action No.<br>1:21-cv-1259-JPB |

**DECLARATION OF SUSANNAH SCOTT**

Pursuant to 28 U.S.C. § 1746, I, Susannah Scott, declare as follows:

1. I am the current President of the League of Women Voters of Georgia ("LWVGA"). I have served in that role since May 2019. Based on my position and job responsibilities, I am familiar with and can attest to the effect that SB 202 has had on the organization's work and mission. I am over 18 years of age and am competent to make this declaration. I have personal knowledge of the facts stated here and would testify to those facts if called as a witness before this Court.

2. The League of Women Voters is a nonpartisan membership organization that encourages informed and active participation in government by voters and influences public policy through education and advocacy. It was founded

in 1920 by leaders of the women's suffrage movement and has units in all 50 states and more than 800 local communities. The League of Women Voters has two distinct roles. First, it educates voters and citizens about elections, the voting process, and public policy issues. Second, it studies issues under consideration by lawmakers and then advances particular policies in the public interest through grassroots advocacy.

3. LWVGA is a state subsidiary of the League of Women Voters, focused on issues in the State of Georgia. The LWVGA acts as a state-level umbrella organization and is responsible for overseeing 13 local Leagues across Georgia. As of this date, LWVGA has 624 members in the State of Georgia, including 102 in the local League for Atlanta-Fulton County and 46 in Marrietta-Cobb County.

4. LWVGA has no paid full-time employees. It engages a limited number of contractors in administrative roles, including at present an office manager and a grants manager (both part-time), and a small handful of interns. Most of the work that LWVGA does is performed on a voluntary basis, either by people on its Board (which at present has 12 members, plus a Board advisor) or by a core of roughly 20 active volunteers.

5. Consistent with its mission, the LWVGA champions bills that make it easier for people to exercise the constitutional right to vote, and thus supports state voting laws that provide for broad access to no-excuse absentee ballots. With SB 202, the Georgia State Legislature instituted sweeping changes to the elections

process, including new restrictions on requesting, assisting with, and casting absentee ballots such as a requirement that voters print their full date of birth on the return envelope for an absentee ballot (the "Birthdate Requirement"), limitations on the availability of dropboxes, etc. As I detail below, the LWVGA had to make significant changes to its programs and divert resources to address SB 202's restrictions, including its absentee voting provisions.

6. As part of its voter education activities, the League of Women Voters operates an online voter guide (Vote411.org) with information about elections in each state. The LWVGA is responsible for maintaining and posting Georgia-related voting resources on the Vote411.org website, available at the following URL: https://www.vote411.org/georgia. Due to the extensive changes in Georgia's elections laws under SB 202, the LWVGA had to overhaul the Georgia-specific voting materials on Vote411.org completely. In particular, given SB 202's severe restrictions on absentee ballots, the LWVGA prepared detailed guides covering SB 202's changes to the absentee voting process specifically, including information about the Birthdate Requirement.

7. In the wake of SB 202, the LWVGA also had to organize a number of town halls, information sessions, trainings and other civic engagement events with local Leagues and Georgia voters to educate them about SB 202's new restrictions on the absentee ballot process and its changes to elections laws more broadly.

8.     Given the increased need for voter education, the LWVGA has had to divert resources from other initiatives, such as state voter registration drives and Get Out The Vote ("GOTV") efforts.  As an example, historically, the LWVGA would organize roughly three to four statewide voter registration drives annually, outside of voter registration activities it conducted in connection with naturalization ceremonies.  But, because of the importance of educating the voting public about SB 202's changes in Georgia voting laws, the LWVGA had to discontinue all its voter registration initiatives except for those it conducted at naturalization ceremonies.

9.     Similarly, the LWVGA has had to shift the focus of the materials it prepared for voters.  Typically, the LWVGA would send questionnaires to all candidates in specific races and, based on the responses, it would prepare candidate guides detailing where they stood on the issues.  However, given the scope of SB 202's changes to Georgia voting laws, the LWVGA had to prepare more detailed materials about the voting process itself and had to reduce the number of races it included in the candidate survey; as a result, the candidate guide that LWVGA prepared for the election following the enactment of SB 202 was less robust and comprehensive than it would usually have been.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of May, 2023 at 2557 Hawthorne Drive NE, Atlanta, Georgia 30345.

_____

Susannah E. Scott

5