# Exhibit 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.:<br>1:21-MI-55555-JPB |
| GEORGIA STATE CONFERENCE<br>OF THE NAACP, ET AL.<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL. | Civil Action No.<br>1:21-cv-1259-JPB |

**DECLARATION OF TREAUNNA ("AUNNA") DENNIS**

Pursuant to 28 U.S.C. § 1746, I, Treaunna ("Aunna") Dennis, declare as follows:

1.     I am the Executive Director of Common Cause Georgia ("Common Cause GA").  I have served in that role since June 2020.  Given my position and job responsibilities, I am familiar with, and can attest to, the effect that SB 202 has had on the organization's work and mission.  I am over 18 years of age and am competent to make this declaration.  I have personal knowledge of the facts stated here and would testify to those facts if called as a witness before this Court.

2.     Plaintiff Common Cause is a national, nonpartisan, nonprofit organization with the mission of making government more open, honest, and accountable.  Common Cause was founded in 1970 and focuses on efforts that bring

equity, equality and fairness across different sectors concerning public participation. Its work includes campaigns directed at voter protection and education; gerrymandering and representation; ethics and accountability; and the democratic process. Common Cause has over 28 state-level offices, each of which conduct state-specific program work related to its mission.

3.      Common Cause has a state-level office in Atlanta, Georgia, known as Common Cause GA. Common Cause GA was founded in 1974. Common Cause GA conducts Georgia-related programs, including Common Cause's work relating to voting rights and elections, among other issues. As of today, Common Cause GA has over 24,000 members throughout the State of Georgia in virtually every county.

4.      Common Cause GA is dedicated to encouraging voter participation in Georgia, including among Black voters and other voters of color, as well as among other traditionally underrepresented communities. Common Cause GA's support of voting rights is central to its mission to provide equitable access to the democratic process and encourage voter participation.

5.      In addition to its voting-related initiatives, Common Cause GA has focused on issues concerning fairness in the redistricting process and transparency in state and local government. Its work has also included special programs like broadband accessibility and sheriff accountability, among others. As Executive Director, I have the ability and obligation to direct the types of issue areas that

Common Cause GA focuses on within the mission of the national office.

6.      Several different voter participation activities compete for the limited resources that Common Cause GA has available.  These include mobilizing volunteers to engage with election boards and offices to better understand the elections processes, to pinpoint gaps in capacity and infrastructures in election offices, and to build a relationship with county election offices.  Common Cause also helps recruit community members to support all phases of the elections process, including to be poll workers, to serve onsite at voting precincts during election cycle to address voter questions, and to volunteer in election-related processes such as risk-limiting audits and recounts.  It also creates and publishes resources for voters and community members to utilize regarding elections and engages in efforts to educate them about changes in the voting and election process.  In addition, as part of its civic engagement education outreach, Common Cause GA works with members of local communities to understand the obstacles that they encounter in trying to engage in the voting process and to find ways to address them; for instance, Common Cause GA's transportation and mobile voter accessibility initiatives in 2021 were the result of such civic engagement efforts, which surfaced the difficulties that many voting members of Georgia communities had in traveling to poll locations.

7.      With SB 202, the Georgia State Legislature introduced a number of restrictions on requesting, assisting with, and casting absentee ballots, including a

3

requirement that voters print their full date of birth on the return envelope for an absentee ballot (the "Birthdate Requirement").   As a result of these changes introduced by SB 202, Common Cause GA had to divert resources to helping voters educate themselves on SB 202's additional obstacles to absentee ballot voting, including the Birthdate Requirement, and to making accessible technology services for voters who may need to request an absentee ballot, to upload or retrieve ID information for absentee ballot applications, to retrieve absentee ballots, etc.  Given the new restrictions on absentee voting under SB 202, Common Cause GA had to invest significant time and resources in mass education campaigns at a scale unlike those the organization had previously conducted to teach voters about SB 202's absentee balloting provisions, including its Birthdate Requirement.  These included not only member meetings to educate on changes in election processes, but also in-person community engagement panels, town halls, and other outward-facing events for voters and local communities.  Such voter education efforts were particularly necessary given the wide availability and utilization of absentee voting in the 2020 election cycle.

8.     Because of the increased need for voter education on absentee ballot processes and restrictions, as well as SB 202's other provisions, Common Cause GA had to divert resources from other pressing matters and initiatives.  Common Cause and its state-level office in Georgia has traditionally been a governmental watchdog

organization serving as a bulwark against unaccountable government practices. Nevertheless, because of SB 202's stark changes in absentee voting procedures and the elections process more broadly, Common Cause GA had to discontinue its sheriff accountability work because the organization did not have enough staffing or headcount to perform it, given the increase demand for voter education.  Similarly, Common Cause GA had to delay important institutional priorities.  As an example, prior to SB 202, Common Cause GA had intended to research procurement processes for real estate and other resources within half a dozen local jurisdictions in Georgia to support Common Cause GA's operations and its mission; but, because of SB 202, Common Cause GA had to scale back its research efforts drastically; accordingly, Common Cause GA has had capacity only to conduct research with respect to procurement within a single local jurisdiction.  In fact, given the disruption caused by SB 202, I personally was not able to perform one of my key duties as Executive Director, which is to build and grow Common Cause GA's advisory board.  Had SB 202 and its many restrictions on absentee voting and the voting process more broadly not been enacted, Common Cause GA would have had capacity to address these other important matters.

9.     The Birthdate Requirement and the other restrictions on absentee voting under SB 202 make it harder to vote, especially for older voters and other voters with limited transportation options.  For instance, if my grandfather were alive

today, he would be in his 90s.  But, if he hypothetically were to cast an absentee ballot, he would be unable to supply a full birthdate; that is because he was born via a midwife (which was common at the time), and his birthdate was recorded only in a family Bible (which no longer exists).  Similarly, my grandmother, who is elderly and a voter, struggles with recalling her birthdate and occasionally requires help in doing so based on the ages and birthdays of other family members.  I know from personal experience that such circumstances are not unique, and that there are voters in Georgia, particularly among the elderly, who may not be able to immediately or accurately recall their full date of birth, as well as those who speak and understand limited or no English.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _16_ day of ___May 2023___ at ____Atlanta, Georgia____ .

Treaunna ("Aunna") Dennis

6