IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No. 1:21-MI-55555-JPB |
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF GEORGIA; *et al.*,<br><br>Defendants,<br><br>THE REPUBLICAN NATIONAL COMMITTEE; *et al.*,<br><br>Intervenor-Defendants. | Civil Action No. 1:21-CV-2575-JPB |

**UNITED STATES' OPPOSITION TO STATE DEFENDANTS' AND INTERVENOR DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................1

II.  LEGAL STANDARD ........................................................................3

III.  ARGUMENT ...................................................................................4

    A.  The United States May Prove a Violation of Section 2 by Establishing Intentional Racial Discrimination ...........................................6

        1.  Section 2 Has Always Encompassed a Claim Challenging Intentionally Discriminatory Voting Laws and Practices................6

        2.  Even Under *League of Women Voters*, a Section 2 Purpose-Based Claim and a Section 2 Results Claim Are Analytically Distinct. ...10

    B.  The United States' Complaint States a Discriminatory Purpose Claim under Section 2 .....................................................................15

IV.  CONCLUSION ...............................................................................20

# TABLE OF AUTHORITIES

## Cases

*Allen v. Milligan*,
  599 U.S. ___ (2023), 2023 WL 3872517 (June 8, 2023) ........................ 6, 7, 8, 16

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) ............................................................5

*Brnovich v. Democratic Nat'l Comm.*,
  141 S. Ct. 2321 (2021)........................................................ 6, 8, 12, 16

*Burton v. City of Belle Glade*,
  178 F.3d 1175 (11th Cir. 1999) ..................................................... 13, 17

*Cannon v. City of W. Palm Beach*,
  250 F.3d 1299 (11th Cir. 2001) ............................................................3

*Chisom v. Roemer*,
  501 U.S. 380 (1991)..................................................................... passim

*City of Mobile v. Bolden*,
  446 U.S. 55 (1980)...........................................................................6

*Dillard v. Baldwin Cnty. Bd. of Educ.*,
  686 F. Supp. 1459 (M.D. Ala. 1988) ....................................................14

*Ferrill v. Parker Grp., Inc.*,
  168 F.3d 468 (11th Cir. 1999) ............................................................18

*Garza v. Cnty. of Los Angeles*,
  918 F.2d 763 (9th Cir. 1990) ....................................................... 10, 13

*Greater Birmingham Ministries v. Sec'y of State for Ala.*,
  992 F.3d 1299 (11th Cir. 2021) ..................................................... 9, 17, 18

*Hall v. Holder*,
  117 F.3d 1222 (11th Cir. 1997) ..........................................................18

*Hawthorne v. Mac Adjustment, Inc.*,
   140 F.3d 1367 (11th Cir. 1998) .......................................................................4, 16

*Hunt v. Cromartie*,
   526 U.S. 541 (1999).........................................................................................17

*Hunter v. Underwood*,
   471 U.S. 222 (1985).........................................................................................18

*Johnson v. DeSoto County Board of Commissioners*,
   72 F.3d 1556 (11th Cir. 1996) ....................................................................13, 14

*Johnson v. Governor of Fla.*,
   405 F.3d 1214 (11th Cir. 2005) .........................................................................7

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
   66 F.4th 905 (11th Cir. 2023) .................................................................... passim

*League of Women Voters of Fla., Inc. v. Lee*,
   595 F. Supp. 3d 1042 (N.D. Fla. 2022) ..............................................................10

*LULAC v. Perry*,
   548 U.S. 399 (2006)........................................................................................20

*McMillan v. Escambia Cnty., Fla.*,
   748 F.2d 1037 (Former 5th Cir. 1984) ....................................................... passim

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
   429 U.S. 274 (1977).........................................................................................18

*N.C. NAACP v. McCrory*,
   831 F.3d 204 (4th Cir. 2016) ....................................................................16, 17

*Perez v. Wells Fargo N.A.*,
   774 F.3d 1329 (11th Cir. 2014) ..........................................................................4

*Pers. Adm'r of Mass. v. Feeney*,
   442 U.S. 256 (1979)........................................................................................9, 18

*Powers v. Sec'y, U.S. Homeland Sec.*,
   846 F. App'x 754 (11th Cir. 2021) ......................................................................4

*Rogers v. Lodge*,
   458 U.S. 613 (1982) ........................................................................... 17, 18

*Shelby Cnty. v. Holder*,
   570 U.S. 529 (2013) ..................................................................................4

*Slagle v. ITT Hartford*,
   102 F.3d 494 (11th Cir. 1996) ..................................................................4

*Thornburg v. Gingles*,
   478 U.S. 30 (1986) ....................................................................................8

*United States v. Georgia*,
   574 F. Supp. 3d 1245 (N.D. Ga. 2021) ....................................................2

*United States v. Marengo Cnty. Comm'n*,
   731 F.2d 1546 (11th Cir. 1984) ............................................... 5, 7, 11, 15

*Veasey v. Abbott*,
   830 F.3d 216 (5th Cir. 2016) ............................................................ 10, 16

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ............................................................................ 16, 17

*Voinovich v. Quilter*,
   507 U.S. 146 (1993) ............................................................................ 13, 15

**Statutes**

42 U.S.C. § 2000h-2 .........................................................................8, 20

52 U.S.C. § 10301 ..................................................................... passim

52 U.S.C. § 10303 ......................................................................................4

Fed. R. Civ. P. 12(b)(6) ............................................................................4

Fed. R. Civ. P. 12(c) .................................................................................3

**Other Authorities**

S. Rep. No. 97-417 (1982) ........................................................... 5, 8, 17

## I.  <u>INTRODUCTION</u>

On June 25, 2021, the United States commenced this suit against the State of Georgia for violating Section 2 of the Voting Rights Act ("VRA"). 52 U.S.C. § 10301 ("Section 2"). The United States contends that certain provisions of Georgia Senate Bill 202 (2021) ("SB 202") were adopted for the purpose of denying or abridging the right to vote on account of race. The United States' Complaint alleges a classic violation of Section 2. Against a backdrop of racial polarization in voting, the Georgia legislature adopted SB 202, which targets the very practices on which Black voters relied, just as Black voters had begun to exercise real political power in the state, and to exercise that power in ways that were at cross-purposes with the legislative majority. Indeed, as described in the United States' Motion for Preliminary Injunction, ECF No. 566 (May 30, 2023), extensive discovery has confirmed that the challenged provisions of SB 202 were enacted to impede Black voters' equal opportunity to participate in the political process and, as designed, have profound discriminatory effects.

This Court has already denied motions to dismiss the United States' Complaint filed by the State Defendants and Intervenor Defendants, *see* Order Den. Mot. to Dismiss, No. 1:21-CV-2575, ECF No. 69 (Dec. 9, 2021) (hereinafter Dec. 2021 Order), *United States v. Georgia*, 574 F. Supp. 3d 1245, 1248 (N.D. Ga.

2021). In denying the motions, the Court concluded that the United States'
Complaint stated a Section 2 claim by articulating facts sufficient to infer a
discriminatory purpose under the "familiar approach outlined in *Arlington
Heights*" and, further, by alleging that under the totality of circumstances the
political process under SB 202 is not "equally open" to Black voters. Dec. 2021
Order 9-11 & n.3. The State Defendants then sought reconsideration of the Dec.
2021 Order, reiterating the same arguments. ECF No. 11, No. 1:21-MI-55555 (Jan.
6, 2022). The Court denied the State Defendants' motion to reconsider. *See* Order
Den. Mot. for Reconsideration 4-5, No. 1:21-MI-55555, ECF No. 144 (Apr. 21,
2022).

   Nearly 18 months of fact and expert discovery have transpired in this
litigation since the Court's first order. State Defendants and Intervenor Defendants
(collectively, Defendants) now ask this Court—yet again—to reconsider its well-
reasoned Orders, this time on the basis of intervening authority that Defendants say
"clarifies" that this Court's previous rulings were incorrect. Defs.' Mot. for J. on
the Pleadings, No. 1:21-MI-55555, ECF No. 549 (May 18, 2023) (Defs.' Mot.);
Intervenors' Joinder of State's Mot. for J. on the Pleadings, ECF No. 553 (May 22,

2023).[1] In fact, the Court's prior rulings are correct under Eleventh Circuit and Supreme Court jurisprudence.

Despite Defendants' barebones assertions, the Eleventh Circuit's recent decision in *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 943-44 (11th Cir. 2023) (hereinafter, *LWV*), does not overturn well-settled binding precedent, or change the pleading standard for a Section 2 discriminatory purpose claim. As set forth below, Defendants misinterpret the Eleventh Circuit's decision in *LWV* to relitigate the unsuccessful arguments they previously advanced in their motions to dismiss and reconsider. As this Court held then, the United States' Complaint states a discriminatory purpose claim under Section 2 of the Voting Rights Act. *See* Dec. 2021 Order 16. The Court should deny the motion.

## II.   <u>LEGAL STANDARD</u>

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is only appropriate "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "The ultimate question on a motion for judgment on the pleadings under Rule 12(c) is the same as on a motion

---

[1] Intervenors joined State Defendants' motion but make no substantive arguments of their own. *See* ECF No. 553.

to dismiss under Rule 12(b)(6)—whether the complaint states a claim for relief." *Powers v. Sec'y, U.S. Homeland Sec.*, 846 F. App'x 754, 757 (11th Cir. 2021); *see also* Dec. 2021 Order 4. In deciding a motion for judgment on the pleadings, courts must "accept the facts in the complaint as true" and "view them in the light most favorable to the nonmoving party." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). The complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hawthorne*, 140 F.3d at 1370 (quoting *Slagle v. ITT Hartford*, 102 F.3d 494, 497 (11th Cir. 1996)) (quotation marks and citations omitted).

## III.   <u>ARGUMENT</u>

Section 2 imposes a "permanent, nationwide ban on racial discrimination in voting." *Shelby Cnty. v. Holder*, 570 U.S. 529, 557 (2013). The statute prohibits any voting-related law or practice that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color" or membership in a language minority group. 52 U.S.C. §§ 10301(a), 10303(f)(2). A violation of Section 2

> is established if, based on the totality of circumstances, it is shown that
> the political processes leading to nomination or election . . . are not

equally open to participation by members of [a racial group] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301(b).

As amended in 1982, Section 2 forbids "those voting practices directly prohibited by the Fifteenth Amendment" *and* "also any practice 'imposed or applied . . . in a manner which results in a denial or abridgement of the right . . . to vote on account of race or color.'" *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1553 (11th Cir. 1984) (emphasis omitted). Thus, to prevail on a Section 2 claim, "[p]laintiffs must either prove [discriminatory] intent, or, alternatively, must show that the challenged system or practice, in the context of all the circumstances in the jurisdiction in question, results in minorities being denied equal access to the political process." *Chisom v. Roemer*, 501 U.S. 380, 394 n.21 (1991) (quoting S. Rep. No. 97-417, at 27 (1982)); *see also McMillan v. Escambia Cnty., Fla.*, 748 F.2d 1037, 1046 (Former 5th Cir. 1984) (same).[2]

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent former Fifth Circuit decisions handed down by September 30, 1981. *McMillan* was filed in 1977 over a challenged practice in Florida, *see* 748 F.2d at 1039; the 1984 decision is treated as a former Fifth Circuit case given prior proceedings in the case but also is binding Eleventh Circuit precedent. *See Bonner*, 661 F.2d at 1207-08 (describing rules governing such cases).

Notwithstanding the longstanding consensus that Section 2 encompasses both purpose and intent claims, Defendants contend that the panel decision in *LWV* should be read to jettison any statutory prohibition on practices adopted or maintained for a racially discriminatory purpose. *LWV*, and the cases on which it relies, cannot be read in this way in light of Supreme Court and Eleventh Circuit precedent. *See infra* III.A. As this Court already has held, the United States' Complaint states a valid claim under Section 2 of the VRA. *See infra* III.B.

### A.   The United States May Prove a Violation of Section 2 by Establishing Intentional Racial Discrimination

#### 1.   Section 2 Has Always Encompassed a Claim Challenging Intentionally Discriminatory Voting Laws and Practices

"The Fifteenth Amendment—and thus §2—prohibits States from acting with a 'racially discriminatory motivation' or an 'invidious purpose' to discriminate." *Allen v. Milligan*, 599 U.S. ___ (2023), 2023 WL 3872517, at *6 (June 8, 2023) (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 61-65 (1980) (plurality opinion)). As originally enacted in 1965, the language of Section 2 "closely tracked" the language of the Fifteenth Amendment. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2331 (2021). When a plurality of the Supreme Court held that the Fifteenth Amendment prohibits *only* intentional discrimination, it also applied this standard to Section 2. *See City of Mobile*, 446 U.S. at 60-62. In "an express effort

to broaden the protection afforded by the Voting Rights Act," Congress responded

to *City of Mobile* by amending Section 2 to make clear that a statutory violation

"could be established by proof of discriminatory results alone." *Chisom*, 501 U.S.

at 404; *see also Milligan*, 2023 WL 3872517, at *6-7 (describing the question

before Congress in 1982 as "whether to broaden §2 or keep it as is" and the final

legislative compromise, under which "Section 2 would include the effects test that

many desired") *id.* at *19 (citing the discussion of the 1982 amendments in

*Chisom*, 501 U.S. at 403-04, and noting that a showing of discriminatory purpose

is no longer required to establish liability under Section 2); *Johnson v. Governor of

Fla.*, 405 F.3d 1214, 1227-28 (11th Cir. 2005) (en banc).

The 1982 amendments "expanded" the methods of proving a violation of

Section 2. *Chisom*, 501 U.S. at 392. They did not, as Defendants' arguments

suggest, *contract* the scope of the statute. As the Eleventh Circuit held shortly after

the statute was amended, Section 2 still "forbid[s] those voting practices directly

prohibited by the Fifteenth Amendment." *Marengo Cnty. Comm'n*, 713 F.2d at

1553. And it also prohibits "any practice . . . which results in a denial or

abridgement of the right . . . to vote on account of race or color." *Id.* (emphasis

omitted).

Accordingly, there are two paths to establishing a violation of Section 2: plaintiffs may either prove that a challenged voting law or practice is intentionally racially discriminatory *or* prove that, "in the context of all the circumstances in the jurisdiction in question, [it] results in minorities being denied equal access to the political process." S. Rep. No. 97-417, at 27;[3] *see also Chisom*, 501 U.S. at 394 n.21 (quoting the Senate Report); *McMillan*, 748 F.2d at 1046 (same). These two paths to proving a violation commonly became known as Section 2 intent (or purpose) claims and Section 2 results claims. Here, the United States is pursuing a Section 2 intent claim.[4]

As the Eleventh Circuit held in *McMillan*, a showing of intentional discrimination that is "sufficient to constitute a violation of the [F]ourteenth [A]mendment" is also "sufficient to constitute a violation of [S]ection 2." *McMillan*, 748 F.2d at 1046. In other words, plaintiffs may prove a Section 2

---

[3] The Supreme Court has described this committee report, which "elaborates on the nature of § 2 violations and on the proof required to establish these violations[,]" as "the authoritative source for legislative intent" on the 1982 amendments to the VRA. *Thornburg v. Gingles*, 478 U.S. 30, 43 & n.7 (1986); *see also Brnovich*, 141 S. Ct. at 2332-33 (relying on the Senate Report); *Milligan*, 2023 WL 3872517, at *15 (same).

[4] The United States may also bring claims challenging intentional discrimination on the basis of race, among other characteristics, under the Fourteenth Amendment by intervening in a case that alleges a violation of the Equal Protection Clause. *See* 42 U.S.C. § 2000h-2.

purpose-based claim by establishing the equivalent of a constitutional violation, which requires proof of both a discriminatory purpose and a discriminatory effect. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (emphasizing that to prove an intentional-discrimination violation, a challenged action must be taken "because of, not merely in spite of, its adverse effects"); *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1321 (11th Cir. 2021) (hereinafter, *GBM*) (requiring "proof of *both* an intent to discriminate and actual discriminatory effect").

Section 2's "results test," on the other hand, "was intended to be a less stringent standard that substantially lessened the burden on plaintiffs" by relieving them of the obligation to prove that the challenged practice was motivated by a discriminatory purpose. *McMillan*, 748 F.2d at 1046; *see also Chisom*, 501 U.S. at 403 ("Congress amended the Act in 1982 in order to relieve plaintiffs of the burden of proving discriminatory intent."). "Congress intended that fulfilling either the more restrictive intent test or the results test would be sufficient to show a violation of Section 2." *McMillan*, 748 F.2d at 1046. Courts around the country have long recognized these two paths to Section 2 liability.[5] *See, e.g., Veasey v. Abbott*, 830

---

[5] Separately, courts, including this one, have recognized two distinct categories of Section 2 claims—vote dilution claims and vote denial claims—based on the

F.3d 216, 229-30, 243 (5th Cir. 2016) (en banc); *Garza v. Cnty. of Los Angeles*, 918 F.2d 763, 766 (9th Cir. 1990).

> **2.    Even Under *League of Women Voters*, a Section 2 Purpose-Based Claim and a Section 2 Results Claim Are Analytically Distinct**

Defendants' repeated attempts to construe Eleventh Circuit case law to foreclose the United States' Section 2 purpose claim defy this controlling precedent. Defendants' latest motion argues that *LWV*, 66 F.4th 905, "clarifies" that plaintiffs may not bring "a purpose-only (or intent-only) Section 2 suit." Defs.' Mot. 2. Not so.

In *LWV*, a case involving both constitutional and statutory challenges to an election law in Florida, the Eleventh Circuit rejected the district court's conclusion, after a full trial on the merits, "that a finding of discriminatory impact was unnecessary to establish a Section 2 violation." 66 F.4th at 942, *reversing League of Women Voters of Fla., Inc. v. Lee*, 595 F. Supp. 3d 1042, 1076 (N.D. Fla. 2022) (district court finding that although the constitutional standard requires a showing of both discriminatory intent and discriminatory impact, "[t]o make out a section 2 claim, Plaintiffs need only show a discriminatory purpose"); *see also LWV*, 66

---

context in which the claim arises. Dec. 2021 Order 15. For either type of claim, practices can be challenged under the "intent test," "results test," or both.

F.4th at 943 ("A finding of discriminatory intent alone will not suffice."). By the time the court of appeals turned to the plaintiffs' Section 2 claim, it had already held as to their constitutional claims that none of the challenged provisions of the Florida statute were enacted with discriminatory intent, and most would not have a discriminatory impact on Black voters. *Id.* at 941-42. Under these circumstances, the court of appeals held that, for purposes of Section 2, the plaintiffs failed to prove that the political process in Florida was not "equally open to [B]lack voters." *Id*. at 943-44.

Despite Defendants' arguments to the contrary, Defs.' Mot. 4-6, *LWV* did not eliminate Section 2's purpose claim, nor should it be read to require a Section 2 plaintiff proceeding on a purpose-based claim to prove that a challenged practice would separately violate Section 2's discriminatory results test. Indeed, such a requirement is foreclosed by Supreme Court and earlier circuit precedent that, as discussed above, recognize two analytically distinct paths to proving a Section 2 claim: discriminatory purpose or discriminatory results. *See supra* (discussing *Chisom*, 501 U.S. at 394 n.21; *McMillan*, 748 F.2d at 1046-47; *Marengo Cnty. Comm'n*, 731 F.2d at 1553). As *LWV* recognized, the panel was "bound to follow a prior panel's holding unless and until it is overruled or undermined to the point of abrogation by an opinion of the Supreme Court or of this Court sitting en banc."

*LWV*, 66 F.4th at 943. Neither occurred here. In fact, both Supreme Court precedent and the earliest post-1982 binding circuit authority confirm that Section 2 plaintiffs can proceed on either a purpose-based claim or a results claim, or both.

*LWV* did not discuss *McMillan* or *Marengo County*, let alone suggest that their holdings had been overruled and that the *LWV* panel intended to depart from them. Although *LWV* cited *Chisom* for Section 2's statutory language, *see* 66 F.4th at 942-43, it did not address *Chisom*'s discussion of the 1982 amendments or suggest that the Court's interpretation of Section 2 has been abrogated. Nor did *LWV*, in its discussion of Section 2, address the Supreme Court's recent decision in *Brnovich*, in which the Court considered a Section 2 discriminatory purpose claim separately from the discriminatory results claim in the same case. *See Brnovich*, 141 S. Ct. at 2334, 2348-49. As this Court observed when denying the Defendants' first motion to dismiss the United States' Complaint here, "Presumably, the Supreme Court would have rejected the plaintiffs' discriminatory purpose claim if, as State Defendants contend, such a claim were invalid as a matter of law." Dec. 2021 Order 15.

*LWV* relied principally on *Johnson v. DeSoto County Board of Commissioners*, a vote dilution case in which the Eleventh Circuit held that the district court erred by concluding that "a showing of intent to discriminate

12

establishes a violation of § 2 . . . regardless of whether the plaintiffs prove any discriminatory results." 72 F.3d 1556, 1558 (11th Cir. 1996). As this Court has previously held, the principle of *Johnson* is that "a vote dilution claim is viable only if the [challenged] districting scheme 'has the effect of diminishing or abridging the voting strength of the protected class.'" Dec. 2021 Order 14 (quoting *Voinovich v. Quilter*, 507 U.S. 146, 157 (1993)). Like *LWV*, *Johnson* did not hold that a Section 2 plaintiff may not bring an intentional discrimination case. To the contrary, the court there discussed how evidence of discriminatory purpose should be weighed in such a case. *See Johnson*, 72 F.3d at 1565.

Rather than read *LWV* and *Johnson* as contravening binding precedent, as Defendants here suggest, these cases are best read as holding that a discriminatory purpose, without a sufficient showing of discriminatory impact, cannot establish a violation of Section 2. It is well-settled that plaintiffs challenging a voting law as intentionally discriminatory, whether under the Constitution or Section 2, must show a discriminatory purpose and some discriminatory impact. *See, e.g.*, *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188-89 (11th Cir. 1999) (constitutional standard); *Garza*, 918 F.2d at 771 ("Although the showing of injury in [Section 2] cases involving discriminatory intent need not be as rigorous as in effects cases, some showing of injury must be made to assure that the district court can

impose a meaningful remedy."); *Dillard v. Baldwin Cnty. Bd. of Educ.*, 686 F.

Supp. 1459, 1467-68 (M.D. Ala. 1988) (on a Section 2 purpose claim, requiring

evidence of a "significant adverse impact" on minority voters). But the showing of

discriminatory impact or adverse effect that plaintiffs must make in a purpose-

based case is distinct from the "discriminatory results needed to establish a

[S]ection 2 violation in the absence of intentional discrimination." *Dillard*, 686 F.

Supp. at 1468 n.10; *see also McMillan*, 748 F.2d at 1046 (distinguishing between

Section 2's "intent test" and "results test").[6]

As *LVW* stressed, the text of Section 2 requires that political processes

leading to election are "equally open to participation by" members of minority and

majority racial groups. 52 U.S.C. § 10301(b). What qualifies as equally open

depends on the facts of each case and requires an inquiry into the "totality of

---

[6] Although *Johnson* refers to the showing of discriminatory effect required in a discriminatory purpose case as a showing of "discriminatory results," this does not mean that plaintiffs bringing a discriminatory purpose challenge under Section 2 must also prove a violation of the "results test," which does not require proving intentional discrimination. *Johnson* used the term "discriminatory results" to describe the impact requirement of discriminatory purpose claims brought under the Constitution or under Section 2. *Compare Johnson*, 72 F.3d at 1560 & n.3 (constitutional standard) *with id.* at 1563 (Section 2 standard). Other cases refer to this requirement as evidence of a "discriminatory effect" or "discriminatory impact." *See, e.g.*, *LWV*, 66 F.4th at 941 (constitutional standard); *id.* at 942-43 (Section 2 standard).

circumstances." 52 U.S.C. § 10301(b); *cf. Voinovich*, 507 U.S. at 154-55 ("Which effect [a] practice has, if any at all, depends entirely on the facts and circumstances of each case."). A jurisdiction can deprive minority voters of an equal opportunity to participate in the political process by adopting a practice that purposefully discriminates against them. *See, e.g.*, *Marengo Cnty. Comm'n*, 731 F.2d at 1553 (Section 2 forbids practices that violate the Fifteenth Amendment).

As discussed further below, the United States' Complaint alleges that SB 202 was enacted with a discriminatory purpose and, under the totality of circumstances, renders Georgia's election system not equally open to Black voters. In particular, the United States alleges that Georgia enacted measures specifically designed to target the tools that Black voters had relied upon to achieve political success, in ways disproportionately likely to impose heightened burdens on Black voters. As this Court has already held, these allegations of the United States' Complaint are more than sufficient to state a claim under Section 2. *See* Dec. 2021 Order 9-12.

### B. The United States' Complaint States a Discriminatory Purpose Claim under Section 2

In this case, the United States has pled a textbook claim of intentional racial discrimination under Section 2. "Accept[ing] the facts in the complaint as true" and

"view[ing] them in the light most favorable to the" United States, *Hawthorne*, 140 F.3d at 1370, this Court should deny the Defendants' motion.

When considering a discriminatory purpose claim under Section 2, courts typically apply the "familiar approach" outlined in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266-68 (1977), for cases arising under the U.S. Constitution. *Brnovich*, 141 S. Ct. at 2349 (approving of the district court's application of *Arlington Heights* to a Section 2 intent claim); *see also* Dec. 2021 Order 9 n.3 ("This language [in *Brnovich*] reaffirms the practice of federal courts relying on the *Arlington Heights* framework to evaluate VRA § 2 discriminatory purpose claims."); *Veasey*, 830 F.3d at 229-30 (applying *Arlington Heights* to Section 2 intent claim); *N.C. NAACP v. McCrory*, 831 F.3d 204, 220-21 (4th Cir. 2016) (same).

Under this standard, plaintiffs must show that race was a motivating factor for the official action, but the evidence need not show "that the challenged action rested solely on racially discriminatory purposes" or even that the discriminatory purpose "was the 'dominant' or 'primary' one." *Arlington Heights*, 429 U.S. at 265; *see also Milligan*, 2023 WL 3872517, at *19 (rejecting the contention that vote dilution plaintiffs must show that the challenged districting plan "rested solely on racially discriminatory purpose" (quoting *Arlington Heights,* 429 U.S. at 265)).

16

"[T]argeting a particular race's access to the franchise because its members vote for a particular party, in a predictable manner, constitutes discriminatory purpose." *LWV*, 66 F.4th at 924 (quoting *McCrory*, 831 F.3d at 222).

Because "[o]utright admissions of impermissible racial motivation are infrequent[,]" *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999), analyzing whether a government action was motivated by a discriminatory purpose requires a fact-intensive analysis of "the totality of the relevant facts." *Rogers v. Lodge*, 458 U.S. 613, 618 (1982). In a Section 2 discriminatory purpose case, as in cases arising under the Constitution directly, "'direct or indirect circumstantial evidence, including the normal inferences to be drawn from the foreseeability of defendant's actions' [are] relevant evidence of intent." *McMillan*, 748 F.2d at 1047 (quoting S. Rep. No. 97-417 at 27); *see also Burton*, 178 F.3d at 1188-89 (describing the constitutional standard).

In *Arlington Heights*, the Supreme Court set forth a non-exhaustive list of considerations that may assist the factfinder in determining whether racially discriminatory intent was a motivating factor in an official decision. *See Arlington Heights*, 429 U.S. at 266-68; *see also GBM*, 992 F.3d at 1322 (describing additional factors relevant to the intent inquiry). The factors set forth in the 1982 Senate Report, many of which overlap with the *Arlington Heights* factors, can also

17

support an inference of discriminatory purpose. *See Lodge*, 458 U.S at 620-21; *cf. Hall v. Holder*, 117 F.3d 1222, 1226 n.5 (11th Cir. 1997) ("The evidence relevant to determining whether a discriminatory impact exists under § 2 overlaps substantially with the evidence deemed important in *Lodge*."). Establishing proof of discriminatory purpose does not require proof of invidious racial animus, but rather an intent to disadvantage minority citizens, for whatever reason. *See Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472-73 & n.7 (11th Cir. 1999) ("[I]ll will, enmity, or hostility are not prerequisites of intentional discrimination."); *see also Feeney*, 442 U.S. at 279 ("[Discriminatory purpose] implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."). "Once racial discrimination is shown to have been a 'substantial' or 'motivating' factor behind enactment of the law, the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *GBM*, 992 F.3d at 1321.

　　As this Court previously held, the United States' Complaint here states a plausible discriminatory purpose claim under Section 2. *See* Dec. 2021 Order 9-

10.[7] The Complaint alleges that the Georgia legislature enacted SB 202 with the intent to affect political outcomes in the State by specifically targeting the ways in which Black voters participate in the political process. *See generally* Compl. ¶¶ 134-165. The Complaint alleges that the challenged provisions of SB 202 were enacted by the legislature because of their impact on Black voters' emerging ability to participate on an equal basis with white voters, in the context of racially polarized elections where Black voters were not supporting the majority party in the legislature. *See, e.g.*, Compl. ¶¶ 135-138, 151-153. Defendants cite a single paragraph of the Complaint relating to socioeconomic disparities between Black and white Georgians, implying it is the only allegation of discriminatory effect. Defs.' Mot. 7. This is a mischaracterization of the Complaint, which lays out extensive allegations pertaining to the sought-after discriminatory impact of the State's enacted measures. *See, e.g.*, Compl. ¶¶ 137-149. As this Court previously held, the Complaint alleges facts sufficient to infer a discriminatory purpose under

---

[7] Because Defendants' motion relies exclusively on the argument that the United States may not bring a discriminatory purpose claim and does not contend that the facts alleged in the Complaint are not sufficient to state such a claim, the United States does not address the factual allegations in detail here. They are covered at length in the United States' Opposition to the Defendants' Mot. to Dismiss. *See* U.S. Opp'n to Mot. to Dismiss 23-40, ECF 58, *United States v. Georgia*, 1:21-CV-02575 (Aug. 11, 2021).

*Arlington Heights*, Dec. 2021 Order 9, and satisfies the "key requirement" of alleging that, under the totality of circumstances, the political process in Georgia is not "equally open" to Black voters. *Id.* at 10.[8]

The United States' recently filed motion for a preliminary injunction in this case shows that these allegations have been borne out through discovery. *See* ECF No. 566-1 at 27-60. As described there, the legislature redesigned the State's voting system to impede Black voting strength because it posed a political threat. Taking away Black voters' "opportunity because [they] were about to exercise it . . . bears the mark of intentional discrimination." *LULAC v. Perry*, 548 U.S. 399, 440 (2006).

## IV.   **CONCLUSION**

For the reasons set forth above, the Court should deny the motions for judgment on the pleadings.

---

[8] If the Court is inclined to grant the Defendants' motion, the United States respectfully requests an opportunity to either amend its complaint or, pursuant to 42 U.S.C. § 2000h-2, intervene in one of the pending cases challenging SB 202 under the Equal Protection Clause. *See supra* n.4.

Dated: June 8, 2023

RYAN K. BUCHANAN
United States Attorney
Northern District of Georgia


*/s/ Aileen Bell Hughes*
AILEEN BELL HUGHES
Georgia Bar No. 375505
Assistant U.S. Attorney
Office of the United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
Phone: (404) 581-6000
Fax: (404) 581-6181

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General

ELISE BODDIE
Principal Deputy Assistant
Attorney General
Civil Rights Division


*/s/ Elizabeth M. Ryan*
T. CHRISTIAN HERREN, JR.
JOHN A. RUSS IV
JASMYN G. RICHARDSON
RACHEL R. EVANS
ERNEST A. MCFARLAND
MAURA EILEEN O'CONNOR
J. ERIC RICH
ELIZABETH M. RYAN
SEJAL JHAVERI
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Phone: (800) 253-3931
Fax: (202) 307-3961
elizabeth.ryan@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(D)

Pursuant to Local Rule 7.1(D), I certify that the foregoing document was prepared in Times New Roman 14-point font in compliance with Local Rule 5.1(C).

*/s/ Elizabeth M. Ryan*
ELIZABETH M. RYAN
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2023, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ Elizabeth M. Ryan*
ELIZABETH M. RYAN
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice