**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-mi-55555-JPB |

**INTERVENORS' OPPOSITION TO PLAINTIFFS' PRELIMINARY INJUNCTION MOTIONS AGAINST THE LINEWARMING PROVISIONS**

Plaintiffs renew their requests for this Court to enjoin Georgia's prohibition of giving gifts within 25 feet of a voter standing in line to vote. Plaintiffs bring a facial challenge to this gift-giving ban under the First Amendment. *See* Docs. 535, 537, 547. Intervenors join the State's opposition to Plaintiffs' motions. They write separately to address why Plaintiffs' claims likely fail on the merits, why Plaintiffs' undue delay defeats their request, and why this Court should deny relief under *Purcell*.

Starting with the merits, the gift-giving ban survives modified strict scrutiny. *See Burson v. Freeman*, 504 U.S. 191, 209 (1992). The ban protects voters who have entered the line to vote from undue influence, or even intimidation, during the voting process. "A broad prohibition on soliciting voters serves the State's interest in preserving order at polling places." *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State* (*League of Women Voters II*), 66 F.4th 905, 930 (11th Cir. 2023). Plaintiffs' insistence that the 25-foot ban fails because it reaches beyond a narrow geographic area beyond the polls

1

misunderstands the State's interest: the 25-foot ban protects voters who have chosen to get in line, not polling places. Plaintiffs offer no explanation of why voters in a short line can be protected from undue influence while they wait, but voters willing to wait in a longer line cannot. In any event, Plaintiffs' facial challenge fails because they have not demonstrated that most applications of the gift-giving ban would unconstitutionally burden protected speech.

Even if their claims had merit, Plaintiffs' undue delay bars preliminary relief. Plaintiffs must "show reasonable diligence" to obtain a preliminary injunction. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (per curiam). This Court denied Plaintiffs request for a preliminary injunction for the 2022 election cycle over eight months ago. But Plaintiffs waited until now to renew their request even though they "incorporate by reference" the "factual evidence and briefing from their initial preliminary injunction." Doc. 535-1 at 3. That unjustified delay forecloses relief.

Plaintiffs' request also fails under *Purcell*. *Purcell* instructs that a court should ordinarily decline to issue an injunction—especially one that changes existing election rules—when an election is imminent." *Coal. for Good Governance v. Kemp*, 2021 WL 2826094, at 3 (N.D. Ga. July 7). This Court previously looked to the four conditions that a plaintiff must "at least" satisfy under Justice Kavanaugh's opinion in *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring). It denied relief to Plaintiffs because they could

not satisfy two of these requirements: the merits are not clearcut in their favor, and the changes they have requested would have significant cost and confusion. Plaintiffs now also fail a third factor—undue delay. So Plaintiffs instead argue that *Purcell* is categorically inapplicable because they filed their motions nearly eleven months before the next election. That argument rests on a false premise. The relevant time for *Purcell* is when the State would have to implement the requested change. *Purcell* reaches to changes that would take place several months before an election. And Plaintiffs seek relief for the 2024 primary elections, Doc. 535-1 at 1-2, which are just nine months away, *see* Stephen Fowler, *When Is Georgia's 2024 Presidential Primary? March 12*, GPB News (May 4, 2023), https://perma.cc/Q6K8-ART5.

## ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden." *Georgiacarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015). That burden requires Plaintiffs to show a "substantial likelihood" of success on the merits, irreparable injury absent an injunction, that the balance of the equities favors them, and that an injunction favors the public interest. *Id*. But that alone is not enough in cases like this one. Courts must also look to "considerations specific to election cases." *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State* (*League of Women Voters I*), 32 F.4th 1363,

1371 (11th Cir. 2022). Those considerations instruct courts not to issue injunctions that could cause disruption and voter confusion close to an election. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). Plaintiffs cannot meet their burden on the merits or on the equities.

## I. The gift-giving ban is constitutional.

Plaintiffs renew their facial challenge to the 25-foot gift-giving ban. Doc. 535-1 at 4-10. The ban states that "[n]o person shall … give, offer to give, or participate in the giving of any money or gifts, including, but not limited to food and drink, to an elector" within 150 feet of a polling place or 25 feet of someone standing in line to vote. O.C.G.A. §21-2-414(a). This 25-foot ban is a reasonable restriction that protects voters from undue influence while they are in line to vote. But even if it did impose an unconstitutional burden in some cases, it does not do so in a sufficient number of cases to merit facial relief.

### A. The 25-foot zone is narrowly tailored to protect voters standing in line to vote.

This Court previously applied modified strict scrutiny, ruling that gift-giving must be "reasonable" and must not "significantly impinge on constitutionally protected rights."[1] *Burson v. Freeman*, 504 U.S. 191, 209

---

[1] Intervenors respectfully maintain their position that strict scrutiny applies, and they incorporate their arguments made in opposition to Plaintiffs' first set of preliminary injunction motions. *See* Doc. 194 at 10-21. The gift-giving ban does not regulate expressive conduct. *See id.* at 11-15. Even if it did, the ban is a reasonable time, place, or manner restriction. *See id.* at 17-18. It also meets the relaxed standard for laws governing express conduct. *See id.* at 18-20. Finally, even if the gift-giving ban imposed a content-based

4

(1992) (plurality op.) (citation omitted); *see* Doc. 241 at 51. That standard requires Plaintiffs to show that a substantial number of the statute's applications significantly impinge their constitutional rights. Plaintiffs do not come close to meeting that standard.

This Court found that the 150-foot ban was likely constitutional. It is "narrowly drawn to achieve the State's compelling interest in protecting the right to vote." *Burson*, 504 U.S. at 208. The State has a compelling interest in "restoring peace and order around the polls, protecting voters from political pressure and intimidation, and supporting election integrity." Doc. 241 at 51-52. And the 150-foot ban is a "reasonable resolution of the tension between the right to free speech and the right to cast a ballot without improper influence." *Id.* at 54.

The 25-foot zone is constitutional for the same reason: it is narrowly drawn to protect voters from improper influence when they are waiting in line. Line-warming activities introduce the potential of undue influence of voters: food trucks could be used "to reach electors before they vote[] and offer[] rewards to those who voted," close contact with line-warming volunteers might "be unwelcome and could interfere with the voting process," and even worse, "close contact from groups associated with controversial issues could deter

---

restriction or involved a traditional public forum, it would be subject to the *Anderson-Burdick* balancing test, which it easily passes. *See id.* at 20-21.

5

some voters from going to the polls." *Id.* at 46-47. "Handing a voter something of value, even water, could be a means of influence," and thus "a categorical bar on soliciting voters" furthers a valid state interest. *League of Women Voters II*, 66 F.4th at 929. The 25-foot ban protects voters from these pressures by limiting access to the area around voters who have chosen to enter the line. *See Burson* 504 U.S. at 208.

Plaintiffs argue that the 25-foot zone around voters waiting in line to vote is unconstitutional "because it applies no matter the distance from the poll entrance." Doc. 535-1 at 8. But that's the wrong standard. When a statute restricts expressive activity based on "some measurable distance from the polls," the distance cannot be so great that it "effectively become[s] an impermissible burden" on First Amendment rights. *Burson,* 504 U.S. at 210. But the 25-foot ban around the voting line is "a less restrictive alternative in kind," not "a difference only in degree." *Id.* It makes no sense to require a zone around *voters* to comply with a standard of degree that applies to zones around *polling places*.

In other words, Plaintiffs misunderstand the State's interest. The State does not assert an interest in protecting buildings. Its interests are in "protecting voters from confusion and undue influence" during the voting process, and in "preserving the integrity of the election process." *Citizens for Police Accountability Pol. Comm. v. Browning*, 572 F.3d 1213, 1219 (11th Cir.

6

2009). Restricted zones around polling places serve those interests because that's where the voters are. The point of those "common sense" zones—and the reason they are constitutional—is that they limit access to voters while they are in the process of voting. *Burson*, 504 U.S. at 208, 211 (emphasis added). So do zones around voters in lines longer than a buffer zone around the polling place. There is no reason that voters in lines shorter than 150-feet should be protected from undue influence, while voters waiting in longer lines cannot be protected.

"The real question then is how large a restricted zone is permissible or sufficiently tailored." *Id.* at 208. To be sure, a restricted zone around the voting line cannot be so large that it "effectively become[s] an impermissible burden" on First Amendment rights. *Id.* at 210. But "25 feet" around the protected interest is so minimal it is hardly even "a question of 'constitutional dimension.'" *Id.* (citation omitted). In contrast to large "300–foot no-political-speech buffer zone[s]" that "prohibit[] core political speech over a large geographical area," SB 202 prohibits gift-giving within a targeted area tailored to fit the very interest it is protecting: the voters. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1043, 1054 (6th Cir. 2015); *cf. Schirmer v. Edwards*, 2 F.3d 117, 123-24 (5th Cir. 1993) (upholding a "total ban on politicking" within 600 feet of a polling place).

"Today, all 50 States and the District of Columbia have laws curbing various forms of speech in and around polling places on Election Day." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1883 (2018). Plaintiffs cite no authority indicating that SB 202's targeted protections around voters standing in line to vote "significantly impinge on constitutionally protected rights." *Burson*, 504 U.S. at 209. "The state has a compelling interest in protecting its voters," and that's what the gift-giving ban does. *Schirmer*, 2 F.3d at 123. Indeed, it is difficult to see how the State could have been any more precise in tailoring the gift-giving ban to "limit access to the area around the voter." *Burson*, 504 U.S. at 211.

### B. Plaintiffs have not proven that the gift-giving ban is unconstitutional in a substantial number of its applications.

Plaintiffs seek facial invalidation of the 25-foot ban. *See* Doc. 535-1 at 2. To succeed on their facial challenge, Plaintiffs must show that "a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (citation omitted). Even if this Court decides that distance from the polling place is the proper constitutional measure for a zone around voters waiting in line to vote, plaintiffs have not shown that "a substantial number of [the statute's] applications are unconstitutional." *Id.* (citation omitted).

*First*, the 25-foot zone around voters standing in line is, at a minimum, constitutional as applied up to a certain distance from the polls. This Court ruled that the 150-foot zone around the polling place is likely constitutional. *See* Doc. 241 at 53-54. And courts have upheld far larger zones around polling places. *See, e.g., Schirmer*, 2 F.3d at 123-24 (upholding a 600-foot zone around a polling place). Only a fraction of polling places will have lines that extend beyond the 150-foot zone around polling places. Of those, an even smaller number of lines will extend so far beyond the zone that the distance would "effectively become an impermissible burden" on Plaintiffs' First Amendment rights. *Burson*, 504 U.S. at 210. How many? Plaintiffs don't say, nor do they provide evidence that it would be a "substantial number." *Ams. for Prosperity Found.*, 141 S. Ct. at 2387.

*Second*, most applications of the law will not target expressive activity. The gift-giving ban prohibits "giv[ing], offer[ing] to give, or participat[ing] in the giving of any money or gifts" within 25 feet of a voter standing in line to vote. Ga. Code §21-2-414(a)(3). But the gift-giving ban does not target speech *as such*. The Eleventh Circuit has held that "most social-service food sharing events will not be expressive." *Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale*, 11 F.4th 1266, 1292 (11th Cir. 2021). Gift giving is expressive only to the extent that it is meant to convey a message and a reasonable person would understand it to convey some message. *See Ft. Lauderdale Food Not*

9

*Bombs v. City of Ft. Lauderdale*, 901 F.3d 1235, 1241 (11th Cir. 2018) (*Food Not Bombs I*). Even Plaintiffs admit that giving gifts to voters in line is expressive conduct only to the extent "'at least some' viewers would understand those acts to communicate some message." Doc. 535-1 at 4 (emphasis omitted) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004)). For this reason, whether gift giving is protected "under particular circumstances is a question to be decided in an as-applied challenge." *Food Not Bombs I*, 901 F.3d at 1241. But Plaintiffs have made no effort to show that gift giving would be protected in a substantial number of the contexts covered by the gift-giving ban.

In fact, Plaintiffs provide no examples—either real or imagined—of unconstitutional applications of the 25-foot ban. After months of discovery, Plaintiffs rely on unfounded, unsupported fears that the gift-giving ban will apply "limitless distances from the polls." Doc. 535-1 at 10. But because "[e]lections vary from year to year, and place to place," the Court can't assume that those hypothetical situations will occur, let alone constitute a substantial number. *Burson*, 504 U.S. at 209. Rather, the court must "accord significant value" to the State's interest in "preserv[ing] the integrity and dignity of the voting process." *Browning*, 572 F.3d at 1220.

## II. Plaintiffs' undue delay defeats their request for a preliminary injunction.

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (per curiam). The "balance of the equities … tilt[s] against" a party who cannot show reasonable diligence. *Id.*; *see also Adventist Health Sys./Sunbelt, Inc. v. HHS*, 17 F.4th 793, 806 (8th Cir. 2021) (Delay "means that the balance of the equities favors the denial of a preliminary injunction."). This principle "is as true in election law cases as elsewhere." *Benisek*, 138 S. Ct. at 1944. Delay also "militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2021); *see also Adventist Health Sys.*, 17 F.4th at 806 (Delay "refuted … allegations of irreparable harm.").

Plaintiffs failed to act with reasonable diligence in renewing their motions for a preliminary injunction. Plaintiffs renew a request for a preliminary injunction that they filed nearly a year earlier. *See* AME and Georgia NAACP PI Motion (Doc. 171) (May 25, 2022). This Court ruled on that motion on August 19, 2022. *See* Order Denying Motions for Preliminary Injunctions (ECF No. 241). The Court explained that "policy considerations under the *Purcell* doctrine weigh[ed] against issuing an injunction at th[at] time." *Id.* at 74. An injunction, the Court reasoned, would cause confusion and disrupt the 2022 midterm elections. *Id.* at 68-71. Since that order, Plaintiffs

11

have been free to renew their motion for a preliminary injunction for 2024 election cycle. But they waited over eight months to renew that motion as discovery closes and the parties prepare for summary judgment briefing. *See* Renewed Motion Brief (April 24, 2023).

Far more-limited delays have defeated a request for a preliminary injunction. *Wreal* found that a "five-month delay" supported denial of a preliminary injunction. 840 F.3d at 1248. A delay "even of only a few months," the Eleventh Circuit explained, "militates against" a preliminary injunction. *Id.* This Court should reach the same conclusion based on Plaintiffs unexplained eight-month delay.

Plaintiffs' delay weighs especially heavy against a preliminary injunction because they rely primarily on evidence that they have had for the past eight months. Ongoing discovery does not excuse a party for delay in seeking for a preliminary injunction. *Benisek* confirmed that privilege disputes that "delayed the completion or discovery … d[id] not change the fact that plaintiffs could have sought a preliminary injunction much earlier." 138 S. Ct. at 1944. And delay is especially unjustified when "the preliminary-injunction motion relied exclusively on evidence that was available" earlier. *Wreal*, 840 F.3d at 1248-49 (rejecting preliminary-injunction motion based on evidence "available" to the moving party "at the time it filed its complaint"). Plaintiffs' delay is even more inexcusable here because their renewed motion relies

almost exclusively on evidence they had when they filed their first preliminary injunction motion. *See* AME and Georgia NAACP PI Motion Brief (Doc. 171-1) at 1-28. In fact, Plaintiffs even "incorporate by reference their factual evidence and briefing from their initial preliminary injunction" as the background for their renewed motion. Doc. 535-1 at 3.

Plaintiffs say they have new evidence, but the façade of new depositions and declarations shows only that discovery produced nothing supporting their motions. Plaintiffs' new evidence consists of statements by election officials opining why *they* think the Legislature enacted the line-warming provisions and why they "had no concern" with line-warming. Doc. 535-1 at 8-10. But the opinions of a handful of officials do not negate the *State's* interests, which courts have long recognized as compelling. *See supra* Section I.A. Similarly, that county prosecutors say the line-warming provision does not prohibit anyone from approaching a voter in line is not a new revelation. Doc. 547-1 at 4-5. That was always evident from the statute's text, and it doesn't rebut the State's interest in prohibiting the giving of gifts to voters engaged in the process of voting, *see supra* Section I.A, which is narrowly tailored to avoid targeting speech, *see supra* Section I.B. Finally, the declarations of Plaintiffs' own members, which Plaintiffs could have prepared months ago, do not justify their delay. In short, Plaintiffs' patina of "new" evidence is largely irrelevant, does not support their motions, and does not excuse their delay.

Plaintiffs' delay cannot be excused because the 2024 election was not impending eight months ago. At most, the time until the 2024 election might support an argument that Plaintiffs are only now facing irreparable injury. But courts have "rejected [the] implausible assertion of law" that "delay bears on irreparable harm only where the plaintiff delays despite suffering the harm." *Adventist Health Sys.*, 17 F.4th at 806. More importantly, "the balance of the equities" would still "tilt[]" against Plaintiffs because of their delay. *Benisek*, 138 S. Ct. at 1944. In fact, the Supreme Court rejected a delayed request for preliminary relief looking on to the balance of the equities and public interest, not irreparable harm, in *Benisek*. *See id*. The same is true here; Plaintiffs' "unreasonable delay … means that the balance of the equities favors the denial of a preliminary injunction." *Adventist Health Sys.*, 17 F.4th at 806.

### III.   *Purcell* forecloses relief.

The *Purcell* principle is a "bedrock tenet of election law." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring in grant of stay applications). This principle instructs that the "traditional test" for injunctive relief "does not apply" when a plaintiff asks for "an injunction of a state's election in the period close to an election." *Id*. Instead, "[w]hen an election is close at hand, the rules of the road must be clear and settled." *Id*. at 880-81.

*Purcell* is an equitable principle that protects against disruption of elections. Preliminary injunctions barring the enforcement of election laws

14

cause "voter confusion" that encourages voters to stay "away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). They also cause confusion for election administrators who may have to "grapple with a different set of rules." *Coal. for Good Governance v. Kemp*, 2020 WL 2829064, at *3 (N.D. Ga. July 7).

Plaintiffs make no effort to justify a preliminary injunction under *Purcell*. *See* Doc. 535-1 at 12-14. Nor could they. To "overcome" *Purcell*, they must show "at least … (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Milligan*, 142 S. Ct. 881 (Kavanaugh, J., concurring). This Court previously found that Plaintiffs "failed to show at least two" of these factors: the merits are not clearcut in their favor, and a change would not be feasible without significant cost, confusion, or hardship. Doc. 241 at 741-42. The same analysis applies to Plaintiffs renewed motions. But now, Plaintiffs cannot satisfy the third factor as well. By waiting over eight months to renew their requests for a preliminary injunction, Plaintiffs unduly delayed. Thus, *Purcell* provides sufficient basis to deny Plaintiffs renewed motion. *League of Women Voters I*, 32 F.4th at 1371.

Since they cannot justify an injunction under *Purcell*, Plaintiffs argue that it "is simply not implicated" because "the earliest possible affected

15

election" is not expected to take place until about 11 months after they filed their motions. Doc. 535-1 at 12. But *Purcell* applies to Plaintiffs' request. Even an election several months away is close enough for *Purcell*. The Supreme Court applied *Purcell* to an election that was "about four months" away in *Milligan*. 142 S. Ct. at 88 (Kagan, J., dissenting). And the Eleventh Circuit found that four months "easily falls within" *Purcell*'s reach. *League of Women Voters I*, 32 F.4th at 1371. Other courts have applied *Purcell* six months before an election. *Thompson v. Dewine*, 959 F.3d 804, 813 (6th Cir. 2020). In each of these cases, the Courts measured from the time when the State would have to implement a disruptive change. *See Milligan*, 142 S. Ct. at 88 (Kagan, J., dissenting) (Election is "four months from now."); *League of Women Voters I*, 32 F.4th at 1371 ("[D]istrict court … issued its injunction" when the next election was "set to begin in *less* than four months); *Thompson*, 959 F.3d at 813 ("[M]oving or changing a deadline or procedure now will have inevitable, further consequences."). While Georgia's presidential primary—planned for March 2024—may be somewhat further, these decisions confirm that *Purcell* is not categorically inapplicable because a plaintiff sought relief several months before an election.

The costs of an injunction reinforce *Purcell's* applicability. In *Milligan*, Justice Kavanaugh noted that "'[h]ow close to an election is too close may depending in part on … how easily the State could make the change without

16

undue collateral effects." The collateral effects of a change here would be great. This Court has a noted that "S.B. 202 is already the law, and an injunction … would not merely preserve the status quo." Doc. 241 at 69. Since voters have already voted with the limits on gift-giving in place, a change would cause voter confusion. *See id.* at 69-70. It would also require retraining of election officials who have been trained under the gift-giving ban. *See id.* These unavoidable costs confirm that *Purcell* applies to Plaintiff's request.

## CONCLUSION

This Court should deny Plaintiffs' motions for preliminary injunctions.

Dated: June 15, 2023                    Respectfully submitted,

                                                                                         */s/ William Bradley Carver*

| | |
|---|---|
| Cameron T. Norris* | John E. Hall, Jr. |
| Gilbert C. Dickey* |    Georgia Bar No. 319090 |
| CONSOVOY MCCARTHY PLLC | William Bradley Carver, Sr. |
| 1600 Wilson Boulevard, Suite 700 |    Georgia Bar No. 115529 |
| Arlington, Virginia 22209 | Baxter D. Drennon |
| (703) 243-9423 |    Georgia Bar No. 241446 |
| | Stuart Sumner |
| Tyler R. Green* |    Georgia Bar No. 353355 |
| CONSOVOY MCCARTHY PLLC | HALL BOOTH SMITH, P.C. |
| 222 S. Main Street, 5th Floor | 191 Peachtree Street NE, Suite 2900 |
| Salt Lake City, UT 84101 | Atlanta, Georgia 30303 |
| (703) 243-9423 | (404) 954-5000 |
| | (404) 954-5020 (Fax) |
| *admitted pro hac vice | |

*Counsel for Intervenors*

18

**CERTIFICATE OF COMPLIANCE**

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

/s/ *William Bradley Carver*

**CERTIFICATE OF SERVICE**

On June 15, 2023, I e-filed this document on ECF, which will email everyone requiring service.

/s/ *William Bradley Carver*