UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-mi-55555-JPB |
|---|---|

**INTERVENORS' OPPOSITION TO PLAINTIFFS' PRELIMINARY INJUNCTION MOTION AGAINST THE BIRTHDATE REQUIREMENT**

"In order to verify that the absentee ballot was voted by the elector who requested the ballot," Georgia requires absentee voters to print their "date of birth in the space provided in the outer oath envelope." Ga. Code §21-2-385(a). Plaintiffs move to enjoin the birthdate requirement, arguing that it imposes a requirement that is immaterial to an applicant's qualifications to vote. Doc. 548-1. Intervenors join the State's opposition to Plaintiffs' motion. They write separately to address why Plaintiffs' claim likely fails on the merits, why Plaintiffs' undue delay defeats their request, and why this Court should deny relief under *Purcell*.

First, Plaintiffs are not likely to succeed on the merits of their novel theory that the materiality provision of the Civil Rights Act prohibits the birthdate requirement. The materiality provision applies only to determinations regarding whether a voter is qualified to vote, not to the mechanics of voting. *See* 52 U.S.C. §10101(a)(2)(B). Even if it did apply to run-of-the-mill voting rules, the materiality provision prohibits only denials of "the right … to vote." *Id*. But the birthdate requirement does not deny the right to vote by

1

setting the requirements for submission of an absentee ballot. Finally, the materiality provision reaches only requirements that are not "material" to a voter's qualifications "under State law." *Id.* By setting a requirement to validly cast a ballot under state law, the birthdate requirement is, by definition, material under state law.

Even if their claim had merit, Plaintiffs' undue delay bars preliminary relief. Plaintiffs must "show reasonable diligence" to obtain a preliminary injunction. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (per curiam). This Court denied Plaintiffs' request for a preliminary injunction for the 2022 election cycle over eight months ago. They did not seek relief from the birthdate requirement at that time. Instead, Plaintiffs waited until now—several months after this Court's previous preliminary injunction decision—to claim irreparable harm from the birthdate requirement. That unjustified delay forecloses relief.

Plaintiffs' request also fails under *Purcell*, which instructs "that a court should ordinarily decline to issue an injunction—especially one that changes existing election rules—when an election is imminent." *Coal. for Good Governance v. Kemp*, 2021 WL 2826094, at 3 (N.D. Ga. July 7). This Court previously looked to the four conditions that a plaintiff must "at least" satisfy under Justice Kavanaugh's opinion in *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring). It denied relief to Plaintiffs because they could not

2

satisfy two of these requirements: the merits were not clearcut in their favor, and the changes they requested would have significant cost and confusion. The same is true here, but Plaintiffs also fail a third factor—undue delay. So *Purcell* bars relief.

## ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden." *Georgiacarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015). That burden requires Plaintiffs to show a "substantial likelihood" of success on the merits, irreparable injury absent an injunction, that the balance of the equities favors them, and that an injunction favors the public interest. *Id*. But that alone is not enough in cases like this one. Courts must also look to "considerations specific to election cases." *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022). Those considerations instruct courts not to issue injunctions that could cause disruption and voter confusion close to an election. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). Plaintiffs cannot meet their burden on the merits or on the equities.

### I. Plaintiffs are not likely to succeed on their claim that the materiality provision preempts ordinary voting rules.

The materiality provision reaches only voter-qualification requirements. It does not preempt ordinary voting rules. This conclusion follows from the text of the provision:

> No person acting under color of law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election….

52 U.S.C. §10101(a)(2)(B). The materiality provision applies to determinations regarding whether a voter is "qualified … to vote." *Id.* It does not apply wholesale to all election rules. The provision applies to executive action that "den[ies] the right of any individual to vote." *Id.* It does not apply to a voter's failure to properly cast an absentee ballot. The provision applies to requirements that are not material "under State law." *Id.* It does not apply to requirements that state law says are mandatory.

Courts understood these principles for decades, applying the materiality provision with little trouble to state action that erroneously disqualified voters. Plaintiffs' novel theory of the decades-old statute spurns these principles. Under their theory, "virtually every rule governing how citizens vote would [be] suspect." *Vote.Org v. Callanen*, 39 F.4th 297, 306 n.6 (5th Cir. 2022). But

4

Congress did not enact such a sweeping constraint of state election rules. And this Court should not create one.

### A. The materiality provision governs voter qualifications, not rules for casting a valid ballot.

The materiality provision is silent about requirements for a qualified voter to cast a valid ballot. It bars election officials from determining that a person is not "qualified … to vote" based on an error unrelated to the State's voting qualifications. 52 U.S.C. §10101(a)(2)(B). By its terms, this provision applies to "the requirements that must be met in order to register (and thus be 'qualified') to vote," not to "the requirements that must be met in order to cast a ballot that will be counted." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental). Several textual features confirm Justice Alito's reading.

*First,* the materiality provision applies only to an "error or omission" in an "application, registration, or other act requisite to voting" that affects a "determin[ation] whether such individual is qualified under State law to vote." 52 U.S.C. §10101(a)(2)(B). If the "paper or record" at issue does not determine a voter's qualification—say, a ballot envelope—the materiality provision doesn't apply. *Id.* "[I]t is not enough that the error or omission be immaterial *to* whether the individual is qualified to vote; the paper or record must also be used 'in determining' the voter's qualifications." *Ball v. Chapman*, 289 A.3d 1, 38 (Pa. 2023) (Brobson, J., dissenting). In other words, the materiality

5

provision does not apply once a voter has been deemed qualified to vote. Rather, the provision "prohibits states from *disqualifying* potential voters based on their failure to provide information not relevant to determining their eligibility to vote." *Schwier v. Cox*, 340 F.3d 1284, 1287 (11th Cir. 2003) (emphasis added). Qualified voters who fail to follow state-law procedures for casting a ballot cannot prevail under the materiality provision.

*Second*, the surrounding provisions in §10101(a) confirm that it sets rules governing voter qualifications. The first paragraph begins, "All citizens of the United States who are *otherwise qualified by law* to vote at any election … shall be entitled and allowed to vote at all such elections…." 52 U.S.C. §10101(a)(1) (emphasis added). And the materiality provision is nested between two paragraphs placing limits on the determination of voter qualifications: Paragraph (a)(2)(A) prevents state actors from discriminatory application of rules "in determining whether any individual is qualified under state law or laws to vote in any election." *Id.* §10101(a)(2)(A). And paragraph (a)(2)(C) restricts state actors from "employ[ing] any literacy test as a qualification for voting in any election." *Id.* §10101(a)(2)(C). The materiality provision's placement in the middle of these limitations on voter-qualification requirements confirms that it too applies only to voter-qualification requirements.

6

Case law supports this plain reading. The two Eleventh Circuit cases Plaintiffs cite applied the materiality provision to *voter registration* laws that were used to determine voters' qualifications. *See Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1175 (11th Cir. 2008) (holding that Florida's verification processes for voter registration did not violate the materiality provision); *Schwier*, 340 F.3d at 1287 (remanding to determine whether requiring social security numbers on Georgia's voter registration form violated the materiality provision). Indeed, for decades, "[n]othing in … the case law … indicate[d] that section 1971(a)(2)(B) was intended to apply to the counting of ballots by individuals already deemed qualified to vote." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1371 (S.D. Fla. 2004). Plaintiffs only support for the proposition that it does is the Third Circuit's vacated decision in *Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), but that decision "is very likely wrong," *Ritter*, 142 S. Ct. at 1824 (Alito, J., dissental), and, in any event, no longer of precedential value in any court, *Ritter v. Migliori*, 143 S. Ct. 297 (2022) (vacating the Third Circuit's opinion).

Finally, Plaintiffs rely on *Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) and *Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp. 3d 1324 (N.D. Ga. 2018), but neither opinion addresses the textual question here. In *Martin*, this Court assumed the materiality provision applied to all election rules and began its analysis by asking whether "an elector's year of

birth is … material to determining the eligibility of an absentee voter." *Id.* at 1308. That skips the first question—whether the birthdate on the ballot envelope is "used 'in determining whether [an] individual is qualified under State law to vote.'" *Ball*, 289 A.3d at 38 (Brobson, J., dissenting) (alteration in original) (quoting 52 U.S.C. §10101(a)(2)(B)). If the requirements are not used to determine eligibility of a voter, "then they do not fall within the scope of state laws that are subject to the material error provision." *Id. Democratic Party of Georgia*, for its part, merely "adopt[ed] the rationale" of *Martin* "for the sake of statewide uniformity," with no further analysis. *Democratic Party of Ga.*, 347 F. Supp. 3d at 1341. These decisions provide no basis for rejecting a textual argument not addressed.

This case asks the Court to answer that question: does the requirement that voters print their "date of birth in the space provided in the outer oath envelope" govern a voter's qualifications to vote? Ga. Code §21-2-385(a). Plaintiffs admit that it does not. They concede that Georgia law requires election officials to "verify a voter's eligibility before sending out an absentee ballot and return envelope in the first place." Doc. 548-1 at 15. And they admit that the birthdate requirement "is not used to determine whether the individual is 'qualified' to vote under Georgia law." *Id.* (quoting Pulgram Decl. Ex. 3 at 3). Those concessions resolve this motion. Since the date requirement has nothing to do with voter qualifications, the materiality provision doesn't apply.

8

### B. The birthdate requirement doesn't deny anyone the right to vote.

The materiality provision doesn't apply to the birthdate requirement for another reason: the birthdate requirement doesn't "deny the right of any individual to vote." 52 U.S.C. §10101(a)(2)(B). "Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2338 (2021). Rejecting a ballot when a voter fails to comply with these rules is "not the denial" of the right to vote. *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental). Instead, "the failure to follow those rules constitutes the forfeiture of the right to vote." *Id.*

For this reason, a person is denied the right to vote under the materiality provision if that person is erroneously deemed not "qualified under State law to vote." 52 U.S.C. §10101(a)(2)(B). But "[w]hen a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.' Rather, that individual's vote is not counted because he or she did not follow the rules for casting a ballot." *Ritter*, 142 S. Ct. at 1825. So voters who fail to comply with the birthdate requirement are not denied the right to vote when their vote is not counted. *Cf.* Doc. 548-1 at 8-9. That is doubly true of voters who fail to cure the deficiency as Georgia law allows voters to do. *See* Ga. Code §21-2-385(a)(1)(C).

9

Plaintiffs' theory proves too much. Under their theory, anytime a voter is unable to vote, she is "den[ied] the right … to vote." 52 U.S.C. §10101(a)(2)(B). But "[i]t cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under [the materiality provision]." *Vote.Org*, 39 F.4th at 306 n.6. If that were the case, rejecting an absentee ballot for *any* mistake would amount to a "denial" of the right to vote. But Plaintiffs do not move to enjoin the oath requirement or the ID requirement that apply to absentee ballot envelopes. Ga. Code §21-2-385(a). They also do not move to enjoin the requirement that applicants provide their birthdate on absentee ballot applications. *Id.* §21-2-381(a)(1)(C)(i). For good reason. Those rules do not deny anyone the right to vote, and neither does the birthdate requirement for ballot envelopes.

At bottom, "the thrust of plaintiffs' argument is not that the information sought by [state law] [is] immaterial, but that the likelihood of error combined with the consequences are unjustifiably burdensome on the applicant." *Browning*, 522 F.3d at 1175. The materiality provision, however, "does not establish a least-restrictive-alternative test" for voting. *Id.* The Court should reject Plaintiffs' invitation to engage in the risk-balancing that the Eleventh Circuit said is improper.

### C. The materiality provision does not preempt state law.

The materiality provision applies to ad hoc executive actions, not state laws that are duly enacted by the Legislature. The statute forbids action taken based on an error or omission that is "not material in determining whether [an] individual is qualified under State law to vote." 52 U.S.C. §10101(a)(2)(B). That is, the statute asks whether the error or omission was material "under State law." *Id.* The text does not reach errors or omissions that state law says are material. Thus, plaintiffs proceeding under the materiality provision must allege that the defendant went beyond state law. *See, e.g.*, *Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005) (ruling that requiring social security numbers from prospective voters "is not material in determining whether one is qualified to vote under Georgia law" because Georgia law did not require social security numbers).

Eleventh Circuit precedent does not conflict with this application of the statutory text. True, the Eleventh Circuit has heard facial challenges to state law under the materiality statute. *See, e.g.*, *Browning*, 522 F.3d at 1172-75. But "assumptions are not holdings," *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016), and the circuit has not addressed the argument that state law determines what is material.

Plaintiffs' problem is with state law itself. Georgia requires absentee voters to fill in their birthdate on the ballot envelope. Ga. Code §21-2-385(a). If the voter fails to write in his birthdate, or if the birthdate does not match the voter's records, the election official "shall" reject the ballot. *Id.* §21-2-386(a)(1)(C). Plaintiffs admit that "[u]nder SB 202, if the voter does not properly write his or her birthdate or other identification number, the official *must* reject the ballot." Doc. 548-1 at 7. In other words, the birthdate requirement is material under state law.

This Court's rejection of a state law that merely permitted rejection based on a birthdate is not relevant to SB 202's birthdate *requirement*. Under a prior law, a deficient birthdate was "a ground for rejection," but the law did not "mandate the automatic rejection of any absentee ballot lacking the elector's place and/or date of birth." *Jones v. Jessup*, 615 S.E.2d 529, 531 n.5 (Ga. 2005). In *Martin*, this Court ruled that rejecting ballots for deficient birthdates violated the materiality provision when that practice was not required "under Georgia law." *Martin*, 347 F. Supp. 3d at 1308-09. But "*Martin* isn't instructive" where a birthdate is *required* by state law "because the court held that the county's decision was *inconsistent* with state law." *Common Cause v. Thomsen*, 574 F. Supp. 3d 634, 636 (W.D. Wis. 2021) (emphasis added) (citing *Martin*, 347 F. Supp. 3d at 1308-09). The birthdate is now required by state law. That conclusion ends the inquiry under the materiality provision. *See Org. for*

12

*Black Struggle v. Ashcroft*, 493 F. Supp. 3d 790, 803 (W.D. Mo. 2020) (ruling that election officials "may reject applications and ballots that do not clearly indicate the required information required by [state law] without offending 52 U.S.C. §10101(a)(2)(B)").

\*   \*   \*

Congress did not write a law requiring every voting procedure in this country to be tied to a voter's qualifications. Neither text nor precedent supports Plaintiffs' novel theory. Plaintiffs have not shown a substantial likelihood of success on the merits.

## II. Plaintiffs' undue delay defeats their request for a preliminary injunction.

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (per curiam). The "balance of the equities … tilt[s] against" a party who cannot show reasonable diligence. *Id.*; *see also Adventist Health Sys./Sunbelt, Inc. v. HHS*, 17 F.4th 793, 806 (8th Cir. 2021) (Delay "means that the balance of the equities favors the denial of a preliminary injunction."). This principle "is as true in election law cases as elsewhere." *Benisek*, 138 S. Ct. at 1944. Delay also "militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2021); *see also Adventist Health Sys.*, 17 F.4th at 806 (Delay "refuted … allegations of irreparable harm.").

Plaintiffs failed to act with reasonable diligence in moving for a preliminary injunction. Plaintiffs moved to preliminarily enjoin the line-warming provisions for the 2022 election, claiming those provisions would cause irreparable harm. *See* AME and Georgia NAACP PI Motion (Doc. 171) (May 25, 2022). But they did not ask the Court to enjoin the birthdate requirement for the November 2022 election. Plaintiffs' failure to request for the *last* election the relief they want for *this* election indicates "that the harm would not be serious enough to justify a preliminary injunction." *Adventist Health Sys.*, 17 F.4th at 805 (quoting Wright & Miller, 11A Fed. Prac. & Proc., §2948.1 & n.13 (3d ed. 2013)).

Moreover, Plaintiffs have been free to move for a preliminary injunction for the 2024 election cycle since filing their lawsuit. At the very least, they should have sought relief after the November 2022 elections. Instead, they waited six months to file their motion as discovery closes and the parties prepare for summary judgment briefing.

Far more modest delays have defeated requests for a preliminary injunction. *Wreal* found that a "five-month delay" supported denial of a preliminary injunction. *Wreal*, 840 F.3d at 1248. A delay "even of only a few months," the Eleventh Circuit explained, "militates against" a preliminary injunction. *Id.* This Court should reach the same conclusion based on Plaintiffs' unexplained six-month delay.

Plaintiffs' delay weighs especially heavy against a preliminary injunction because they rely primarily on evidence that they have had for the past eight months. Ongoing discovery does not excuse a party for delay in seeking for a preliminary injunction. *Benisek* confirmed that privilege disputes that "delayed the completion or discovery … d[id] not change the fact that plaintiffs could have sought a preliminary injunction much earlier." 138 S. Ct. at 1944. But delay is especially unjustified when "the preliminary-injunction motion relied exclusively on evidence that was available" earlier. *Wreal*, 840 F.3d at 1248-49 (rejecting preliminary-injunction motion based on evidence "available" to the moving party "at the time it filed its complaint"). Plaintiffs' delay is even more inexcusable here because their motion relies almost exclusively on declarations of their own members and evidence they have long had in their possession. *See* Doc. 548-1 at 8-11. The remaining "new" evidence is unnecessary to resolve the purely legal issues presented in their motion.

Plaintiffs' delay cannot be excused because the 2024 election was not impending six months ago. At most, the time until the 2024 election might support an argument that Plaintiffs are only now facing irreparable injury. But courts have "reject[ed] [the] implausible assertion of law" that "delay bears on irreparable harm only where the plaintiff delays despite suffering the harm." *Adventist Health Sys.*, 17 F.4th at 806 (cleaned up). More importantly, "the balance of the equities" would still "tilt[]" against Plaintiffs because of their

15

delay. *Benisek*, 138 S. Ct. at 1944. In fact, the Supreme Court rejected a delayed request for preliminary relief looking on to the balance of the equities and public interest, not irreparable harm, in *Benisek*. *See id*. The same is true here: Plaintiffs' "unreasonable delay … means that the balance of the equities favors the denial of a preliminary injunction." *Adventist Health Sys.*, 17 F.4th at 806.

### III. *Purcell* forecloses relief.

The *Purcell* principle is a "bedrock tenet of election law." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring in grant of stay applications). This principle instructs that the "traditional test" for injunctive relief "does not apply" when a plaintiff asks for "an injunction of a state's election in the period close to an election." *Id*. Instead, "[w]hen an election is close at hand, the rules of the road must be clear and settled." *Id*. at 880-81.

*Purcell* is an equitable principle that protects against disruption of elections. Preliminary injunctions barring the enforcement of election laws cause "voter confusion" that encourages voters to stay "away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). They also cause confusion for election administrators who may have to "grapple with a different set of rules." *Coal. for Good Governance v. Kemp*, 2020 WL 2829064, at *3 (N.D. Ga. July 7).

*Purcell* applies to Plaintiffs' request. Even an election several months away is close enough for *Purcell*. The Supreme Court applied *Purcell* to an

16

election that was "about four months" away in *Milligan*. 142 S. Ct. at 88 (Kagan, J., dissenting). And the Eleventh Circuit found that four months "easily falls within" *Purcell*'s reach. *League of Women Voters*, 32 F.4th at 1371. Other courts have applied *Purcell* six months before an election. *Thompson v. Dewine*, 959 F.3d 804, 813 (6th Cir. 2020). In each of these cases, the Courts measured from the time when the State would have to implement a disruptive change. *See Milligan*, 142 S. Ct. at 88 (Kagan, J., dissenting) (Election is "four months from now."); *League of Women Voters*, 32 F.4th at 1371 ("[D]istrict court … issued its injunction" when the next election was "set to begin in *less* than four months); *Thompson*, 959 F.3d at 813 ("[M]oving or changing a deadline or procedure now will have inevitable, further consequences."). While Georgia's presidential primary—planned for March 2024—may be somewhat further, these decisions confirm that *Purcell* is not categorically inapplicable because a plaintiff sought relief several months before an election.

If there were any doubt, the costs of an injunction reinforce *Purcell's* applicability. In *Milligan*, Justice Kavanaugh noted that "'[h]ow close to an election is too close may depending in part on … how easily the State could make the change without undue collateral effects." The collateral effects of a change here would be great. This Court has a noted that "S.B. 202 is already the law, and an injunction … would not merely preserve the status quo." Doc. 241 at 69. Since voters have already voted with the birthdate requirement in place, a

17

change would cause voter confusion. *See id.* at 69-70. It would also require retraining election officials who have been trained to follow the mandatory birthdate requirement. *See id.* These unavoidable costs confirm that *Purcell* applies to Plaintiff's request.

Plaintiffs cannot justify an injunction under *Purcell*. To "overcome" *Purcell*, they must show "at least … (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Milligan*, 142 S. Ct. 881 (Kavanaugh, J., concurring). Plaintiffs argue that they can satisfy *Purcell* because an injunction against application of the birthdate requirement would be "easily implemented." Doc. 548-1 at 21. They ignore, however, the substantial costs that would have to go into retraining election officials who have been implementing the birthdate requirement. *Cf.* Doc. 241 at 741-42. But even if their requested relief were not cost prohibitive, Plaintiffs still cannot satisfy *Purcell's* requirements: they have failed to show a likelihood of success, let alone that the merits are clearcut in their favor, and they unduly delayed in seeking an injunction. Thus, *Purcell* provides sufficient basis to deny Plaintiffs motion. *League of Women Voters*, 32 F.4th at 1371.

18

## CONCLUSION

This Court should deny Plaintiffs' motion for preliminary injunctions.

Dated: June 22, 2023                                      Respectfully submitted,

                                                          */s/ William Bradley Carver*

Cameron T. Norris*                                        John E. Hall, Jr.
Gilbert C. Dickey*                                            Georgia Bar No. 319090
CONSOVOY MCCARTHY PLLC                                    William Bradley Carver, Sr.
1600 Wilson Boulevard, Suite 700                              Georgia Bar No. 115529
Arlington, Virginia 22209                                 Baxter D. Drennon
(703) 243-9423                                                Georgia Bar No. 241446
                                                          Jake Evans
Tyler R. Green*                                               Georgia Bar No. 797018
CONSOVOY MCCARTHY PLLC                                    HALL BOOTH SMITH, P.C.
222 S. Main Street, 5th Floor                             191 Peachtree Street NE, Suite 2900
Salt Lake City, UT 84101                                  Atlanta, Georgia 30303
(703) 243-9423                                            (404) 954-5000
                                                          (404) 954-5020 (Fax)

*admitted pro hac vice

*Counsel for Intervenors*

**CERTIFICATE OF COMPLIANCE**

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

/s/ *William Bradley Carver*

**CERTIFICATE OF SERVICE**

On June 22, 2023, I e-filed this document on ECF, which will email everyone requiring service.

/s/ *William Bradley Carver*