**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*,<br><br>*Plaintiffs,*<br>v.<br><br>BRIAN KEMP, Governor of the State of Georgia, in his official capacity, *et al.*,<br><br>*Defendants,*<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>*Intervenor-Defendants.* | Civil Action No.: 1:21-cv-01284-JPB |
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>*Plaintiffs,*<br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*,<br><br>*Defendants,*<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>*Intervenor-Defendants.* | Civil Action No.: 1:21-cv-01259-JPB |

## AME & GEORGIA NAACP PLAINTIFFS' REPLY BRIEF IN SUPPORT OF RENEWED MOTION FOR A PRELIMINARY INJUNCTION

# INTRODUCTION

Plaintiffs' renewed motion provided a full array of evidence proving why the geographically limitless criminal ban on line relief within 25-feet of any voter must be enjoined. This record—compiled with the benefit of full discovery—reinforced their strong showing of likelihood of success on the merits in the initial motion. Yet Defendants[1] continue to ignore this evidence. Instead, they mischaracterize Plaintiffs' claim, misread controlling cases, and undermine their own arguments through internal contradictions.

Defendants barely attempt to contest the expressive nature of Plaintiffs' line relief activities, reverting to the same misreading of First Amendment case law this Court (and the Eleventh Circuit and Supreme Court) have already rejected. Their attempt to argue the ban is not content-based also fails. Defendants argue that regulating Plaintiffs' expressive conduct focuses on its "secondary effects" like those of adult theaters on the surrounding community rather than "the content of adult films themselves." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986). But the Supreme Court rejected that argument in *Boos v. Barry*, 485 U.S. 312 (1988), where, as here, the ban sought to restrict speech because of concerns about the *direct* effect on the listener.

---

[1] "Defendants" refers to State Defendants and Intervenor-Defendants collectively.

Even under modified strict scrutiny, *Burson v. Freeman*, 504 U.S. 191 (1992), Defendants bear the burden to prove proper tailoring. Yet they misleadingly argue that Plaintiffs "carry the burden" of rebutting the "State's interests supporting the Anti-Solicitation Provision." Defs.' Opp. to Pls.' Mot. for PI, ECF No. 578 ("Opp.") 3. Unsurprisingly, Defendants have not met and cannot meet that burden given the ban's *limitless* reach no matter the voter's distance from the polling-place entrance.

Applying Defendants' own arguments also shows the ban is unnecessary because—ignoring evidence to the contrary—they claim "lines are largely non-existent in Georgia elections following SB 202." Opp. 7. Defendants justify the ban as an "Anti-Solicitation Provision," Opp. 3, despite line-relief activities not involving solicitation. They also undermine their interference rationale by recognizing that the ban "does not limit [the] ability to approach and speak with voters." Opp. 19. And their own justification for the Supplemental Zone means that the Buffer Zone—which they have defended—is superfluous and thus unnecessary.

Rather, the evidence overwhelmingly shows that the challenged portion of the law at issue here—the ban on providing food and drinks within the Supplemental Zone—is facially unconstitutional because it "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) (cleaned up). This holds especially

true as a content-based ban targeting only one type of expressive conduct, and doing so without regard to scope or boundaries. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 766 (1988) (approving "facial challenges to statutes or policies that embodied discrimination based on the content . . . of expression.").

As to irreparable harm—which precedent counsels is easily shown in free expression cases—the record shows that the Supplemental Zone ban has prevented Plaintiffs from engaging in line relief altogether, and that they would resume this activity were the ban enjoined. By contrast, Defendants' slim rebuttal relies on flawed and irrelevant data in a failed attempt to argue that no lines stretch into the Supplemental Zone, and mischaracterizes inapposite evidence of individuals providing refreshments outside the context of line relief in the Supplemental Zone.

On the equities, Defendants criticize Plaintiffs for filing this motion eleven months before the next relevant election. Instead, they suggest Plaintiffs should have moved in August 2022 just after the Court's decision on Plaintiffs' first line relief motion. But Intervenors previously argued that awarding relief in 2022 for elections beyond 2022 would be an "abuse of discretion," PI Hearing Tr., ECF No. 234 ("Tr.") 39–40, and State Defendants then argued that any post-2022 relief should be dealt with in an "expedited trial," *id.* at 34. Accordingly, Plaintiffs renewed their preliminary injunction only after unsuccessfully seeking to secure a trial date, *see*

ECF No. 400, and almost a year before the relevant elections, making the timing eminently reasonable. Indeed, Defendants argue for a Catch 22 where plaintiffs could never seek preliminary relief despite looming irreparable harm as their request would be both too early and too late.

Defendants also argue that applying different line relief rules in 2023 and 2024 elections will cause confusion. But they ignore the evidence from state and county officials that lifting the Supplemental Zone ban would require little implementation, and provide no evidence that line-relief policies will be implicated in the limited 2023 elections. Under Defendants' theory, a court could *never* enjoin an election law because it would change policies from one election to the next.

Finally, Intervenors' *Purcell* argument borders on frivolous. Under their conception, courts must apply Justice Kavanaugh's four-part test from his concurrence in the 2022 *Milligan* Stay Order no matter the distance from the relevant election. Accepting this argument would in essence alter the legal standard for a preliminary injunction altogether. This is belied not only by commonsense, but also by the fact that the Supreme Court did not apply (or even mention) *Purcell* in ultimately affirming the *Milligan* preliminary injunction earlier this month.

Defendants fail to undermine Plaintiffs' strong showing of their entitlement to a preliminary injunction.

# ARGUMENT

## I.    Defendants Fail To Rebut Plaintiffs' Strong Showing That They Are Likely To Succeed On The Merits Of Their Claim.

### A.    Defendants' Arguments Against Line Relief As Expressive Conduct Are Legally Flawed And Fail To Address The Evidence.

This Court correctly held that the "evidence demonstrates that Plaintiffs' line warming activities convey a message regarding the importance of voting that is understood by the reasonable observer," making their line relief activities expressive conduct. ECF No. 241 at 33. Defendants ignore this Court's finding and the evidentiary record. Instead, they repeat their already rejected assertion that "there is no basis to conclude that voters would understand being handed something of value in line to impart *any* message." Opp. 13. Defendants then pivot to the Eleventh Circuit's second decision in *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1292 (11th Cir. 2021), which they say emphasized the "fact-bound nature" of the analysis concerning food-sharing programs, implying that this decision changes the analysis. Opp. 14. But the decision predated the parties' original briefing on this issue, and only reaffirms that this Court reached the correct conclusion here by engaging in a *fact-specific* analysis of Plaintiffs' evidence.

Defendants cite only a single piece of evidence for the idea that Plaintiffs' line relief does not imply any message. They contend that declarant Jauan Durbin says

"he received 'encouragement and support' from the organizations that also provided him 'water and snacks.'" Opp. 14 (citing ECF No. 547-9 ¶ 6). Yet Defendants misleadingly frame this stray comment, and it is insufficient on its own to rebut Plaintiffs' showing. The declaration does not say or imply that these were separate expressions of verbal support and line relief. Rather, Mr. Durbin says he "was fortunate to receive encouragement and support from various organizations that provided me with water and snacks while I waited in 2.5 to 3 hour long lines to vote in the 2018 general election." ECF No. 547-9 ¶ 6. Even if Mr. Durbin had also received verbal support, which he does not mention, this alone would not diminish his experience of receiving a non-verbal message by virtue of receiving line relief.

### B.   Defendants' Arguments Only Confirm That The Line Relief Ban Is A Content-Based Restriction Of Speech Meriting Strict Scrutiny, And They Misapply The Secondary Effects Doctrine.

Defendants' sole attempt to undercut the Court's prior evidence and the plain evidence that the line relief ban is content-based rests on their claim that the ban is targeted toward the secondary effects of the restricted speech rather than its primary message and thus not content-based under *Renton*, 475 U.S. 41. But the Supreme Court's later decision in *Boos*, 485 U.S. 312, directly rejects Defendants' argument.

The plaintiffs in *Boos* challenged a law banning "an entire category of speech—signs or displays critical of foreign governments" within a certain distance

of foreign embassies. 485 U.S. at 319. As here, the defendants in *Boos* tried to analogize the ban to *Renton*. There, an ordinance banned any adult movie theater from operating within certain distances of any residential zone, church, park, or school, and the Supreme Court found the ordinance content-neutral because it was not aimed "at the *content* of the films . . . . but rather at the *secondary effects* of such theaters on the surrounding community" in terms of crime and property values. *Renton*, 475 U.S. at 47. The *Boos* Court rejected this attempt, explaining that "[r]egulations that focus on the direct impact of speech on its audience present a different situation" and that "[l]isteners' reactions to speech are not the type of 'secondary effects' we referred to in *Renton*." *Boos*, 485 U.S. at 320–21; *see also Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation."). Rather, the Court has "made clear that the lesser scrutiny afforded regulations targeting the secondary effects of crime or declining property values has no application to content-based regulations targeting the primary effects of protected speech." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 815 (2000) (citations omitted).

The same principle holds true here. Defendants explicitly justify the line relief ban by pointing to "concerns about undue influence and intimidation" of voters, Opp. 11. Thus, the ban targets line relief precisely because of concerns about the

*primary* effect of the expressive conduct on voters, rather than secondary effects like line relief providers interfering with traffic in surrounding communities. Defendants, moreover, admit that the ban "does not limit [the] ability to approach and speak with voters," Opp. 19. This admission, in light of the fact that the law already prohibited electioneering activities before SB 202, underscores how the SB 202 ban targets a particular type of expressive conduct: line relief.

### C. The Limitless Supplemental Zone Cannot Survive First Amendment Scrutiny.

Because the Supplemental Zone line relief ban is a content-based restriction in a public forum, strict scrutiny applies.[2] *See Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015). Yet even under the modified-*Burson* strict scrutiny test, the Supplemental Zone ban fails because its geographically limitless nature is unreasonable and because it "punishes a 'substantial' amount of protected free speech" in relation to any legitimate goal. *Hicks*, 539 U.S. at 118 (citation omitted).

---

[2] Plaintiffs maintain that full strict scrutiny applies here because in *Burson*, the Court explained this modified standard "does not apply to all cases in which there is a conflict between First Amendment rights and a State's election process—instead, it applies only when the First Amendment right threatens to interfere with the act of voting itself, *i.e.,* cases involving voter confusion from overcrowded ballots," or cases where "the challenged activity physically interferes with electors attempting to cast their ballots." 504 U.S. at 209 n.11. This is especially true here with respect to the Supplemental Zone, which by definition only applies in geographic areas farther than 150-feet from the polling place, creating no risk that groups offering food or beverages to voters might interfere with the act of voting itself.

Defendants argue for the Supplemental Zone ban by contending it "creat[es] 'an island of calm in which voters can peacefully contemplate their choices.'" Opp. 23 (quoting *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1887 (2018)). The "island of calm" rationale might support the State's interests in the Buffer Zone, albeit not in a sufficiently tailored manner, but it loses any force when applied to the geographically limitless Supplemental Zone. Similarly, Intervenors contend that it "makes no sense to require a zone around voters to comply with a standard of degree that applies to zones around polling places." Intervenors' Opp. to Pls.' Mot. for PI, ECF No. 579 ("Intervenors' Opp.") 6. But were this true, the State would not have enacted a Buffer Zone at all and would have defined the restricted area solely with reference to the proximity of the voter.

Defendants also cite the recent decision in *League of Women Voters of Florida, Inc. v. Florida Secretary of State*, 66 F.4th 905 (11th Cir. 2023), which affirmed in part and reversed in part the district court's conclusion that Florida's buffer zone was unconstitutionally vague.[3] They mention this case for a proposition that no one disputes: states have an interest in orderly administration of the immediate zone around the polling place. Opp. 26; Intervenors' Opp. 1. But the

---

[3] Plaintiffs there did not bring, and that court did not rule upon, a First Amendment expressive conduct challenge like the one Plaintiffs bring here.

question is not whether the State has any interest, but whether the ban punishes an unreasonable amount of protected speech in attempting to pursue that interest and may do so at ever-expanding distances from the entrance. The answer is no.

Much of Defendants' framing of the ban's supposed tailoring comes from misclassifying Plaintiffs' conduct and what they challenge. Intervenors and Defendants repeatedly refer to the challenged law as an "Anti-Solicitation Provision." Yet Plaintiffs' conduct and the ban on line relief do not implicate solicitation at all. Solicitation concerns the "act or an instance of requesting or seeking to obtain something." BLACK'S LAW DICTIONARY (11th ed. 2019). Plaintiffs do not challenge any prohibition on solicitation, and none of the evidence shows that they engage in solicitation. Claiming solicitation as a justification but then banning line relief—which does not involve any solicitation—at unlimited distances from the polling place makes the ban facially unconstitutional because it "punishes a 'substantial' amount" of speech unrelated to the claimed interest. *Hicks*, 539 U.S. at 118 (citation omitted). Moreover, Defendants admit other provisions of Georgia law already prohibit "providing anything of value to a person in exchange for voting. O.C.G.A. § 21-2-570." ECF No. 578-3 ¶ 19. As such, the limitless ban on providing basic food and drink is inherently unreasonable and unnecessary.

Defendants also claim the ban is appropriately tailored because, "rather than extending the Buffer Zone to cover the *entire* line, irrespective of length, Georgia stopped that zone at 150 feet and limited restrictions thereafter (in the Supplemental Zone) only to the areas immediately surrounding the voting line." Opp. 27. But there is no dispute that Plaintiffs' line relief activities seek contact with voters, and the law seeks to prevent that contact. Thus, when it comes to the protected expressive conduct at issue here, the Supplemental Zone ban does indeed "cover the *entire* line." This practically concedes the Supplemental Zone ban's complete lack of tailoring.

Ultimately, stuck with *Burson*'s guidance that "[a]t some measurable distance from the polls, of course, governmental regulation of vote solicitation could effectively become an impermissible burden," Defendants' efforts sputter. 504 U.S. at 210. They cite other cases either upholding anti-electioneering buffer zones larger than 150 feet, or try to distinguish those striking them down. Opp. 20–21; Intervenors' Opp. 7–8. But as Mr. Germany admits, the ban applies "to all voters waiting in line to vote, irrespective of how far they are away from a polling place." ECF No. 578-3 ¶ 15. Like the cases cited by *Burson*—*Mills v. Alabama,* 384 U.S. 214 (1966), and *Meyer v. Grant,* 486 U.S. 414 (1988)—the Supplemental Zone ban shuts down Plaintiffs' expressive line relief activities completely, no matter how far from the polling place. Defendants try to cherry-pick from the extensive evidence of

the ban shutting down line relief to argue otherwise. Opp. 26–27. But none of the three examples plucked from the record undermines the absolute nature of the ban. Instead, Defendants mischaracterize the testimony and describe conduct that is not line relief at all.

ADAPT testified that separate and apart from any *line relief* activities, they have sometimes handed voters with disabilities a bottle of water as they transport them to the polls. ECF No. 578-6 at 4. Defendants claim Black Voters Matter admitted that they have the *ability* to provide food and water nearby, but fail to mention that they testified that their ability to provide actual line relief "has been blocked." ECF No. 578-7 at 4. And the Concerned Black Clergy (CBC) testimony Defendants cite did not implicate the Supplemental Zone at all but rather voters inside the Buffer Zone. Meanwhile, Defendants ignore that CBC could not provide line relief to people waiting in line after the polls closed and that their efforts were ineffective compared to previous years. CBC Dep. 122–25, 150–51 (Ex. A to Rosborough Decl.).

Intervenors fail once again to rebut Plaintiffs' facial challenge. Such challenges are particularly appropriate where, as here, the statute challenges "embodied discrimination based on the content . . . of expression." *City of Lakewood*, 486 U.S. at 766; *see also Gold Coast Publ'ns, Inc. v. Corrigan*, 42 F.3d 1336, 1343

(11th Cir. 1994) (plaintiffs could successfully "facially attack the constitutionality of the Ordinance" where it "could arguably provide the opportunity to discriminate based on the content of speech"). Intervenors do not rebut Plaintiffs' showing that the Supplemental Zone ban "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,'" by completely shutting down their expressive line-relief activities. *Hicks*, 539 U.S. at 118–19 (citation omitted). Nor do they provide any counter examples of how the ban prohibits anything that was not already illegal other than Plaintiffs' line-relief activities, dooming their argument.[4]

In contrast, Plaintiffs have repeatedly shown that the Supplemental Zone Ban has shut down their ability to engage in expressive line relief activities completely, no matter how far from the polling place, which is an unreasonably expansive restriction given electioneering and other bans already in place.

---

[4] To the extent this Court nonetheless finds a facial challenge improper here, it can and should still provide relief to Plaintiffs because the Supplemental Zone ban unconstitutionally burdens their line-relief activities. *See Texas v. Johnson*, 491 U.S. 397, 403 n.3 (1989) ("Although Johnson has raised a facial challenge to Texas' flag-desecration statute, we choose to resolve this case on the basis of his claim that the statute as applied to him violates the First Amendment.").

## II.    Nothing Offered By Defendants Undermines Plaintiffs' Strong Showing Of Irreparable Harm.

Just the *threat* of impairment of First Amendment interests, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (citations omitted). Yet Defendants try to undermine Plaintiffs' showing of irreparable harm by offering irrelevant data and unsupported claims about a lack of long lines post-SB 202. But they entirely ignore the extensive evidence showing otherwise. They also disregard unrebutted testimony that lines are almost always longer in Presidential election years, Pettigrew Dep. 59 (Ex. B to Rosborough Decl.), meaning that this problem will continue and likely worsen in 2024 relative to 2022.

In their opening brief, Plaintiffs provided numerous examples across multiple counties of lines exceeding an hour during the 2022 elections, *see* Br. 11, ECF No. 535 (citing Exs. N–P). Defendants simply ignored this evidence in their response. They disregard testimony from Gwinnett County's Elections Director that during the 2022 runoff election, lines "[d]efinitely" extended beyond 150 feet from the polls. ECF No. 535-16 at 3. Cobb County's Elections Director also testified that there were lines stretching more than 150-feet from the polling-place entrance. Cobb. Cnty. Dep. 142 (Ex. C to Rosborough Decl.). Defendants even introduce new evidence of such lines, citing the CBC deposition, where its representative testified that during

the 2022 election, individuals were in line waiting to vote *more than three hours* after the polls closed in South Fulton and at the C.T. Martin Natatorium, CBC Dep. 124, but voters would risk losing their chance to vote if they left the line to get food or drink.

Defendants' citations to *average* wait times are irrelevant to the presence of lines stretching far into the Supplemental Zone. Notwithstanding that Defendants' figures cover only Election Day and not early voting, the issue is not whether *most* voters are waiting in lines stretching more than 150-feet, but whether *some* are in areas where Plaintiffs provide line relief and would likely continue to provide line relief but for the ban. Even State Elections Director Blake Evans testified that "[t]here were areas that saw long lines" in 2022. ECF No. 535-15 at 3. Likewise, Defendants do not dispute that long lines existed in prior years, and they do not rebut Plaintiffs' expert Dr. Pettigrew's testimony that based on 2022 figures shown to him by Defendants, there weren't "statistically significant differences in how long lines were in 2022 versus the midterms prior" and there were "meaningful differences in the . . . white and black rates among people who waited longer than 30 minutes." Pettigrew Dep. 122. Indeed, "for early in-person voters, which in Georgia is a huge, huge chunk of people who vote, Georgia had . . . the second longest lines of any state" in 2022. *Id.* at 124. And because it is "pretty much always the case that lines

are longer in presidential years than midterms," it is highly unlikely lines beyond 150-feet will disappear in 2024. *Id.* at 187–88.

Plaintiffs offered evidence that many organizations that previously provided line relief were unable to do so in light of SB 202 and that an injunction against the Supplemental Zone ban would allow them to resume some of that activity. *See* ECF Nos. 535-10–535-14. Given this evidence, and the continued presence of long lines in some areas, Plaintiffs have shown likely irreparable harm in 2024.

## III. Defendants' Legally Erroneous Arguments Fail To Undermine The Strong Equities In Plaintiffs' Favor.

As the Court previously found, the equitable factors strongly support Plaintiffs. ECF No. 241 at 61. Defendants offer only timing-related arguments in response, all of which are entirely unfounded in law and fact.

First, they argue that Plaintiffs unreasonably delayed in filing this renewed motion. But courts have found that a delay in seeking a preliminary injunction matters only where it "militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Here, Plaintiffs face irreparable harm in the 2024 elections. By bringing this motion eleven months before the next relevant election, armed with evidence of still-present long lines in the November and December 2022 elections but with ample time to implement any

change to the law, Plaintiffs have struck a reasonable balance between ensuring they prevent future irreparable harm and guarding against mere speculation.

Indeed, Defendants' arguments that Plaintiffs should have renewed their preliminary injunction immediately following the denial last September is surprising given Defendants' previous contradictory assertions. When questioned by the Court as to whether it could block relief under *Purcell* for the 2022 elections but order relief for future elections at that time, State Defendants themselves argued that rather than granting a preliminary injunction at that time, "the solution would be just go ahead and have an expedited trial and move to a final decision before the next election after the election season this fall." Tr. at 34. After this Court in February 2023 denied the parties' request to set a trial date that would allow for such timing, ECF No. 400, Plaintiffs immediately switched gears to seek preliminary relief to protect against irreparable harm for 2024. Intervenors' position is even more contradictory, as they argued at the hearing last year that it "would be an abuse of discretion" to do what they now say Plaintiffs should have done, contending that "irreparable harm would not be shown for an election so far in advance." Tr. at 39–40. Plaintiffs are always either too early or too late under Defendants' ever-shifting timing arguments.

Defendants' weak arguments under *Purcell* make clear that what they really seek is a standard under which courts can never enjoin an election law. They contend that "an injunction for the 2024 elections would cause substantial confusion because it would mean that a different standard will govern upcoming elections in 2023 than will be in place for elections in 2024." Opp. 33. Yet there will always be a "next election,"[5] and thus never a proper time for a court to order changes under Defendants' standard. Moreover, Defendants also admit the elections they cite—"a possible July 18th runoff, a September 19th special election, and a November 7th election" in some localities—are unlikely to involve lines that "extend beyond 150 feet," Opp. 32 n.12, and ignore that Plaintiffs have ceased to provide line relief since the passage of SB 202, *see* ECF Nos. 535-10–535-14. Those limited elections are also part of a different election cycle from the statewide elections in 2024.

Defendants also entirely disregard the most salient facts about implementation. First, the counties—who are the ones to actually deal with line relief policies on the ground, *see* ECF No. 578-3 ¶ 24—did not even file a brief opposing this relief. Rather, experienced county election officials testified that they "wouldn't have to implement anything" were the line-relief policies changed. ECF No. 535-8

---

[5] Georgia has held at least one non-municipal election every year dating back to at least 1996. *See* Ga. Sec'y of State, Ga. Election Results, https://sos.ga.gov/page/georgia-election-results.

at 5. Likewise, Georgia's State Election Director testified that if the Court orders relief here, he's "not sure there's anything there for a county to implement." ECF No. 535-15 at 5.

Intervenors' *Purcell* arguments ignore the law completely. They contend that despite Plaintiffs filing this motion nearly a year before the next relevant election, Plaintiffs must meet Justice Kavanaugh's four-part test from his concurrence to the *Milligan* stay order. Under this framing, any election-related preliminary injunction would need to show not only a strong likelihood of success, but also that the merits are "entirely clearcut." Intervenors' Opp. 15. That is not the law.

Even were his concurring opinion to a stay order controlling, Justice Kavanaugh explained that *Purcell* applies when "a lower court has issued an injunction of a state's election law in the period close to an election" because when "an election is close at hand, the rules of the road must be clear and settled." *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring). Thus, in staying the initial preliminary injunction in *Milligan*, the Supreme Court was concerned with "Alabama's congressional districts be[ing] completely redrawn within a few short weeks" with the primary elections beginning seven weeks from then. *Id.* at 879. But in ultimately affirming the preliminary injunction earlier this month after full briefing and argument, the Supreme Court did not apply or even

mention *Purcell*, let alone Justice Kavanaugh's four-part test, even though Alabama's next statewide election, like Georgia's, is in March 2024.[6] *See generally Allen v. Milligan*, 143 S. Ct. 1487 (2023). This is no surprise given that just last year, the Court awarded relief on a constitutional claim ordering new maps just under five months before the election without applying the Kavanaugh *Purcell* factors. *See Wis. Legislature v. Wis. Elections Comm'n*, 142 S. Ct. 1245, 1248 (2022). Similarly, the Eleventh Circuit recently held that applying the Kavanaugh *Purcell* factors even "five months prior to the elections" would unreasonably "extend the 'eve of an election' farther than we have before." *Jacksonville Branch of NAACP v. City of Jacksonville*, No. 22-13544, 2022 WL 16754389, at *2 (11th Cir. Nov. 7, 2022).

*Purcell* is not a burden of proof for every election-law claim. It applies as an analytical framework when "an election is close at hand." *Merrill*, 142 S. Ct. at 880–81 (Kavanaugh, J., concurring). The Court should reject Defendants' attempt to remake the Supreme Court's jurisprudence and evade this Court's review.

## CONCLUSION

The Court should reject Defendants' arguments and grant Plaintiffs a preliminary injunction.

---

[6]   *See* Ala. Sec'y of State, Upcoming Elections, https://www.sos.alabama.gov/alabama-votes/voter/upcoming-elections.

Respectfully submitted, this 29th day of June, 2023.

/s/ *Pichaya Poy Winichakul*
Bradley E. Heard (Ga. Bar No. 342209)
*bradley.heard@splcenter.org*
Pichaya Poy Winichakul (Ga. Bar No. 246858)
*poy.winichakul@splcenter.org*
Matletha N. Bennette (pro hac vice)
*matletha.bennette@splcenter.org*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

Jess Unger (pro hac vice)
*jess.unger@splcenter.org*
Sabrina S. Khan (pro hac vice)
*sabrina.khan@splcenter.org*
SOUTHERN POVERTY
LAW CENTER
1101 17th Street NW, Suite 705
Washington, DC 20036
Telephone: (202) 728-9557

/s/ *Adam S. Sieff*
Adam S. Sieff (pro hac vice)
*adamsieff@dwt.com*
Daniel Leigh (pro hac vice)
*danielleigh@dwt.com*
Brittni A. Hamilton (pro hac vice)
*brittnihamilton@dwt.com*
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

/s/ *Sophia Lin Lakin*
Sophia Lin Lakin (pro hac vice)
*slakin@aclu.org*
Davin M. Rosborough (pro hac vice)
*drosborough@aclu.org*
Jonathan Topaz (pro hac vice)
*jtopaz@aclu.org*
Dayton Campbell-Harris (pro hac vice)
*dcampbell-harris@aclu.org*
Casey Smith (pro hac vice)
*csmith@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836
Facsimile: (212) 549-2539

Susan P. Mizner (pro hac vice)
*smizner@aclu.org*
ACLU FOUNDATION, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0781

Brian Dimmick (pro hac vice)
*bdimmick@aclu.org*
ACLU FOUNDATION, INC.
915 15th Street NW
Washington, D.C. 20005
Telephone: (202) 731-2395

Rahul Garabadu (Ga. Bar 553777)
*rgarabadu@acluga.org*
Caitlin May (Ga. Bar No. 602081)
*cmay@acluga.org*
Cory Isaacson (Ga. Bar No. 983797)

Matthew R. Jedreski (pro hac vice)
*mjedreski@dwt.com*
Grace Thompson (pro hac vice)
*gracethompson@dwt.com*
Danielle E. Kim (pro hac vice)
*daniellekim@dwt.com*
Kate Kennedy (pro hac vice)
*katekennedy@dwt.com*
Shontee Pant (pro hac vice)
*shonteepant@dwt.com*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

David M. Gossett (pro hac vice)
*davidgossett@dwt.com*
Courtney T. DeThomas (pro hac vice)
*courtneydethomas@dwt.com*
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, D.C.  20005-7048
Telephone: (202) 973-4288
Facsimile: (202) 973-4499

*Attorneys for Plaintiffs*
*Georgia Muslim Voter Project, Women*
*Watch Afrika, Latino Community Fund*
*Georgia, and The Arc of the United States*

/s/ *Bryan L. Sells*
Bryan L. Sells (Ga. Bar No. 635562)
The Law Office of Bryan Sells, LLC
PO Box 5493
Atlanta, Georgia 31107
Tel: (404) 480-4212

*cisaacson@acluga.org*
ACLU FOUNDATION OF GEORGIA,
INC.
P.O. Box 77208
Atlanta, Georgia 30357
Telephone: (678) 981-5295
Facsimile: (770) 303-0060

/s/ *Leah C. Aden*
Leah C. Aden (pro hac vice)
*laden@naacpldf.org*
John S. Cusick (pro hac vice)
*jcusick@naacpldf.org*
Alaizah Koorji
*akoorji@naacpldf.org* (pro hac vice)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592

Anuja Thatte (pro hac vice)
*athatte@naacpldf.org*
NAACP LEGAL DEFENSE AND
EDUCATION FUND, INC.
700 14th Street, NW
Washington, DC 20005
Telephone: (202) 682-1300

/s/ *Debo P. Adegbile*
Debo P. Adegbile (pro hac vice)
*debo.adegbile@wilmerhale.com*
Alexandra Hiatt (pro hac vice)
*alexandra.hiatt@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
250 Greenwich Street

Email: bryan@bryansellslaw.com

Gerry Weber (Ga. Bar No 744878)
Law Offices of Gerry Weber, LLC
PO Box 5391
Atlanta, GA 31107
Tel.: (404) 932-5845
wgerryweber@gmail.com

Jon Greenbaum (pro hac vice)
*jgreenbaum@lawyerscommittee.org*
Ezra D. Rosenberg (pro hac vice)
*erosenberg@lawyerscommittee.org*
Julie M. Houk (pro hac vice)
*jhouk@lawyerscommittee.org*
Jennifer Nwachukwu (pro hac vice)
*jnwachukwu@lawyerscommittee.org*
Heather Szilagyi (pro hac vice)
*hszilagyi@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Vilia Hayes (pro hac vice)
Neil Oxford (pro hac vice)
Gregory Farrell (pro hac vice)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Laurence F. Pulgram (pro hac vice)
*lpulgram@fenwick.com*
Molly Melcher (pro hac vice)

New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

George P. Varghese (pro hac vice)
*george.varghese@wilmerhale.com*
Stephanie Lin (pro hac vice)
*stephanie.lin@wilmerhale.com*
Arjun Jaikumar (pro hac vice)
*arjun.jaikumar@wilmerhale.com*
Sofia Brooks (pro hac vice)
*sophie.brooks@wilmerhale.com*
Mikayla Foster (pro hac vice)
*mikayla.foster@wilmerhale.com*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Tania Faransso (pro hac vice)
*tania.faransso@wilmerhale.com*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Nana Wilberforce (pro hac vice)
*nana.wilberforce@wilmerhale.com*
WILMER CUTLER PICKERING
  HALE  AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

mmelcher@fenwick.com
Armen Nercessian (pro hac vice)
Anercessian@fenwick.com
Ethan Thomas (pro hac vice)
EThomas@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
Telephone: 415.875.2300

Joseph S. Belichick (pro hac vice)
jbelichick@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041-2008
Telephone: 650-988-8500

Catherine McCord (pro hac vice)
cmccord@fenwick.com
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone: (212) 430-2690

*Attorneys for Plaintiffs Georgia State
Conference of the NAACP, Georgia
Coalition for the People's Agenda, Inc.,
League of Women Voters of Georgia, Inc.,
GALEO Latino Community Development
Fund, Inc., Common Cause, and Lower
Muskogee Creek Tribe*

*Attorneys for Plaintiffs
Sixth District of the African Methodist
Episcopal Church, Delta Sigma Theta
Sorority, Georgia ADAPT, and Georgia
Advocacy Office*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated:  June 29, 2023        /s/ *Davin M. Rosborough*
                             Davin M. Rosborough
                             *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated:  June 29, 2023        /s/ *Davin M. Rosborough*
                             Davin M. Rosborough
                             *Counsel for Plaintiffs*