**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
|---|---|
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*,<br><br>*Plaintiffs,*<br>v.<br>BRIAN KEMP, Governor of the State of Georgia, in his official capacity, *et al.,*<br><br>*Defendants,*<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>*Intervenor-Defendants.* | Civil Action No.: 1:21-cv-01284-JPB |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

ARGUMENT......................................................................................... 2

I.  Defendants Fail to Rebut Plaintiffs' Strong Showing That They Are
Likely to Succeed on the Merits. ................................................. 2

    A. Plaintiffs Have Demonstrated an ADA Violation .................................... 2

    B. Plaintiffs' Proposed Relief is Reasonable and Appropriate ...................11

II.  Defendants Fail to Undermine Plaintiffs' Showing of Irreparable
Harm..............................................................................................16

III.  Neither Challenged Provision Harms the State's Asserted Interests in
a Way that Outweighs the Harm to Plaintiffs and an Injunction
Supports the Public Interest. .......................................................18

IV.  Defendants' Arguments Regarding Timing Fail to Outweigh Strong
Equities in Plaintiffs' Favor Because Plaintiffs Did Not
Unreasonably Delay and Their Motion Does Not Implicate Purcell. ............23

CONCLUSION ...................................................................................25

CERTIFICATE OF COMPLIANCE...................................................30

CERTIFICATE OF SERVICE...........................................................30

# TABLE OF AUTHORITIES

## CASES

*Alabama v. United States Army Corps of Engineers*,
   424 F.3d 1117 (11th Cir. 2005) .......................................................................17

*American Council of Blind of Indiana v. Indiana Election Commission*,
   424 F.3d 1117 (S.D. Ind. Mar. 9, 2022) .........................................................5, 6

*Assenberg v. Anacortes Housing Authority*,
   2006 WL 1515603 (W.D. Wash. May 25, 2006), *aff'd* 268 F. App'x 643
   (9th Cir. 2008) .................................................................................................15

*Ayotte v. Planned Parenthood of Northern New England*,
   546 U.S. 320 (2006).....................................................................................22, 23

*Carey v. Wisconsin Elections Commission,*
   624 F. Supp. 3d 1020 (W.D. Wis. 2022) ....................................................14, 15

*City of Arlington v. Federal Communications Commission*,
   569 U.S. 290  (2013).........................................................................................14

*Democracy North Carolina v. North Carolina State Board of Elections*,
   476 F. Supp. 3d 158 (M.D.N.C. 2020) ...............................................4, 5, 19, 21

*Doe v. Housing Authority of Portland*,
   No. 3:13-CV-1974-SI, 2015 WL 758991 (D. Or. Feb. 23, 2015), *aff'd*, 664 F.
   App'x 722 (9th Cir. 2016)................................................................................15

*Fish v. Schwab*,
   957 F.3d 1105 (10th Cir. 2020)........................................................................19

*Georgia Coalition for the People's Agenda, Inc. v. Kemp*,
   347 F. Supp. 3d 1251 (N.D. Ga. 2018)............................................................24

*Georgia State Conference NAACP v. Georgia*,
   2017 WL 9435558 (N.D. Ga. May 4, 2017)....................................................22

*Guille v. Johnson*,
No. 21-1515, 2021 WL 4490248 (3d Cir. Oct. 1, 2021) ....................................15

*Johnson v. Bexar County Elections Administrator*,
No. SA-22-CV-00409-XR, 2023 WL 4374998 (W.D. Tex. July 6, 2023) ....12, 19

*Jones v. City of Monroe*,
341 F.3d 474 (6th Cir. 2003) ...............................................................................12

*League of Women Voters of Florida, Inc. v. Lee,* 595 F. Supp. 3d 1042
(N.D. Fla. 2022), *aff'd in part, vacated in part, rev'd in part sub nom.*
*League of Women Voters of Florida, Inc. v. Florida Secretary of State* ........13, 14

*Mary Jo C. v. New York State & Local Retirement System*,
707 F.3d 144 (2d Cir. 2013) ...............................................................12, 13, 23

*National Federation of the Blind v. Lamone*,
813 F.3d 494 (4th Cir. 2016) ............................................................2, 3, 12, 13

*Pacific Radiation Oncology, LLC v. Queen's Medical Center*,
810 F.3d 631 (9th Cir. 2015) ...............................................................................15

*People First of Alabama v. Merrill*,
491 F. Supp. 3d 1076 (N.D. Ala. 2020) ...........................................3, 13, 16, 21

*PGA Tour, Inc. v. Martin*,
532 U.S. 661 (2001) ................................................................................18, 22

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .................................................................................................24

*Schaw v. Habitat for Humanity of Citrus County, Inc.*,
938 F.3d 1259 (11th Cir. 2019) ...........................................................................12

*Shotz v. Cates*,
256 F.3d 1077 (11th Cir. 2001) ........................................................................3, 4

iv

*Stenberg v. Carhart*,
530 U.S. 914 (2000)........................................................................................10

*Stevens v. Premier Cruises, Inc.*,
215 F.3d 1237 (11th Cir. 2000) ...................................................................18

*Thomas v. Andino*,
613 F. Supp. 3d 926 (D.S.C. 2020) ..............................................................19

*United States v. Stevens*,
559 U.S. 460 (2010)...................................................................................9, 10

*Virginia v. American Booksellers Association*,
484 U.S. 383 (1988)........................................................................................ 9

*Westchester Disabled On the Move, Inc. v. County of Westchester*,
346 F. Supp. 2d 473 (S.D.N.Y. 2004) .......................................................4, 6

*Wreal, LLC v. Amazon.com*,
840 F.3d 1244 (11th Cir. 2016)....................................................................23

## STATUTES

42 U.S.C.
§ 12101(b)(1), (2) .....................................................................................18
§ 12132 ........................................................................................................ 3
§ 12134(a).................................................................................................14

O.C.G.A.
§ 21-2-382(c) ...........................................................................................21
§ 21-2-384(b).............................................................................................10
§ 21-2-385(a), (b)........................................................................ 7, 8, 10, 21
§ 21-2-566 .................................................................................................19
§ 21-2-598 .................................................................................................. 7
§ 21-2-568(a), (b).......................................................................................19
§ 50-13-22 .................................................................................................22

# REGULATIONS

28 C.F.R. Part 35 ...............................................................................7, 14

# ATTORNEY GENERAL OPINIONS

2016 Ga. Op. Att'y Gen. 02 (2016)......................................................... 8

# LEGISLATIVE MATERIALS

Senate Bill 202 (enrolled March 25, 2021)............................................. 1

# OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019) ...............................................10

*Caregiver Partners*, Centers for Medicare & Medicaid Services,
   https://www.cms.gov/outreach-and-
   education/outreach/partnerships/caregiver#:~:text=Caregivers%20are%20broadl
   y%20defined%20as,chronic%20illness%20or%20disabling%20condition
   (05/25/2023 12:28 PM)....................................................................10

Stephen Fowler, *Georgia Elections Board Allows Absentee Ballot Drop Boxes
   Ahead of June 9 Primary*, Georgia Public Broadcasting (Apr. 15, 2020),
   https://www.gpb.org/news/2020/04/15/georgia-elections-board-allows-absentee-
   ballot-drop-boxes-for-june-9-primary ...............................................25

## INTRODUCTION

Plaintiffs have established an extensive factual record showing that they are highly likely to succeed on the merits of their claims that two S.B. 202[1] provisions—the felony assistance provision and the drop box restrictions (collectively, "the Challenged Provisions")—violate the ADA and Section 504. The Challenged Provisions will continue to deny many Georgia voters with disabilities ready access to absentee voting as shown by evidence which includes the experiences of individual voters who faced substantial difficulties voting in the 2022 elections, as well as testimony demonstrating adverse impacts on organizational Plaintiffs and their members. Plaintiffs show that, because of the Challenged Provisions, Georgians with disabilities will have difficulty finding the assistors needed to help them return their ballots, and will be prevented from using drop boxes.

State Defendants and Intervenors (collectively, "Defendants") paint these barriers as insignificant. These individuals, they say, should have just chosen another way to vote. But the ADA's broad remedial purpose requires that disabled voters receive equal access to the state's absentee voting program and not bear substantial burdens that voters without disabilities do not face. The burdens the Challenged Provisions impose on individuals with disabilities create irreparable

---

[1] Defined terms are given the meaning assigned in the opening brief.

harm.  By contrast, the interests the State proffers are not even advanced by the

Challenged Provisions and, even if they were, they are insufficient to outweigh the

harm to voters with disabilities.

## ARGUMENT

I.    **Defendants Fail to Rebut Plaintiffs' Strong Showing That They Are
      Likely to Succeed on the Merits.**

### A. Plaintiffs Have Demonstrated an ADA Violation

The relevant question under the ADA[2] is whether the Challenged Provisions

prevent Plaintiffs' members and constituents from readily accessing[3] key

components of Georgia's absentee voting program due to their disabilities.  Plaintiffs

have established that they do.[4]

---

[2] As in their opening brief, Plaintiffs' reference to their ADA claims include their
Section 504 claims.  Pls. Br. 10 n.4.

[3] Plaintiffs acknowledge that this Court has adopted the standard "readily
accessible" in this case and use the terms "ready," "equal," and "meaningful"
access interchangeably as have many courts.  Order at 34; *see, e.g.*, *Nat'l Fed'n of
the Blind ("NFB") v. Lamone*, 813 F.3d 494, 504-507 (4th Cir. 2016) (absentee
voting program did not provide disabled voters an "equal" opportunity to
participate without assistance, thus denying "meaningful" access).

[4] To establish an ADA violation, a plaintiff must show: "(1) that he is a qualified
individual with a disability; (2) that he was either excluded from participation in or
denied the benefits of a public entity's services, programs, or activities, or was
otherwise discriminated against by the public entity; and (3) that the exclusion,
denial of benefit, or discrimination was by reason of the plaintiff's disability."
Order 34.  To the extent Intervenors suggest a different causation standard under
Section 504, the Court can ignore this distinction because Intervenors do not

2

No one disputes that Plaintiffs' members or constituents are qualified individuals with disabilities or that State Defendants are public entities covered by the ADA and receive federal financial assistance within the meaning of Section 504. Primarily, Defendants argue that the Challenged Provisions do not deny equal access to absentee voting because Georgia allows all voters to vote in multiple ways. State Opp., ECF No. 592 ("Opp.") 21; Intervenors' Opp. 3, 7-9. But even if the "many options" Georgia claims for voting were not illusory to many disabled voters, Pls. Br. 2-4, those options' existence cannot defeat Plaintiffs' claims. Plaintiffs need only prove that Georgia's absentee voting program is not "readily accessible" to voters with disabilities.[5] Order 34-35 (citing *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001)). Thus, "Plaintiffs need not show that the voting access allegedly denied here is absolute," and "a partial denial of access could be actionable." Order 36. Critically, "where the alternatives relied upon by the Defendants impose

---

suggest any reason Plaintiffs would have any more difficulty meeting that standard. Intervenors' Opp., ECF No. 591 ("Intervenors' Opp.") 11.

[5] The ADA's requirements apply to specific "services, programs, or activities." 42 U.S.C. § 12132. Plaintiffs here challenge the accessibility of Georgia's absentee voting program. To the extent Intervenors suggest that voting as a whole is the program at issue, Intervenors' Opp. 7, they are mistaken. This Court understood that and allowed this case to proceed on that basis. Order 35; *see also NFB*, 813 F.3d at 504 (4th Cir. 2016); *People First of Ala. v. Merrill*, ("*People First*"), 491 F. Supp. 3d 1076, 1158 (N.D. Ala. 2020).

additional costs, risks and inconveniences on disabled voters not faced by others," as the record shows they do here,[6] the absentee voting program is not readily accessible. *Westchester Disabled On the Move, Inc. v. Cnty. of Westchester*, 346 F. Supp. 2d 473, 478 (S.D.N.Y. 2004) (inability to vote in person at assigned polling place due to lack of accessibility is denial of meaningful access). Defendants' suggestion that voters endure additional burdens to use the mail or vote in-person (Opp. 20-21; Intervenors' Opp. 8) thus misses the mark: Plaintiffs seek and are entitled to ready access to absentee voting.

Defendants rely on *Democracy North Carolina v. North Carolina State Board of Elections*, 476 F. Supp. 3d 158, 233 (M.D.N.C. 2020), to support their claim that the existence of other methods to return an absentee ballot means there is no ADA violation.[7] This reliance is misplaced. There the court found that a statute prohibiting nursing facility staff from assisting a blind resident in completing his absentee ballot denied him meaningful access to voting in violation of the ADA.

---

[6] As described in the opening brief, disabled voters face a multitude of barriers that make voting in person burdensome or impossible, leaving absentee voting the only option for some. *See* Pls. Br. 3; 5-8: Schur 13-14; Papadopoulos Decl. ¶¶ 3-9.

[7] Defendants also cite *Westchester Disabled*, *Shotz,* and other cases for the same proposition. Opp. 22-23. But as set forth in Plaintiffs' opening brief, these cases support no such thing. Instead, they stand for the proposition that the increased time and/or burden required of people with disabilities to access a program or service constitutes a violation of Title II, *even if* the individuals with disabilities were ultimately able to access or use the program or service. *See* Pls. Br. 17-18.

While the court also rejected an ADA violation concerning ballot return assistance, it did not do so because the plaintiff had other means to return his ballot, but rather because he had not shown how his *disability* (rather than residency status) prevented him from submitting his ballot. *Id.* The plaintiff there presented no evidence as to why he could not use the mail. *Id.* at 233. While the court on that basis denied ADA relief as to ballot return assistance, it also found, more importantly, that the ballot completion restriction denied the plaintiff meaningful access to voting in violation of the ADA under the specific circumstances of that case. *Id.*; *see Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 201 (2d Cir. 2014) (rejecting defendants' contention that accommodations proffered provided meaningful access to disabled voters "in the circumstances here."). And critically, the court considered only one individual voter's claims, and had no occasion to evaluate the provision's broader impact on the state's disabled voters. The record evidence here, by contrast, establishes that a large subset of Georgia's disabled population lacks ready access to the absentee voting program due to their disabilities. *See* Pls. Br. 7-8.

State Defendants' attempt (at 18) to distinguish *American Council of the Blind of Indiana v. Indiana Election Commission*, 2022 WL 702257 (S.D. Ind. Mar. 9, 2022), fares no better. In that case, the court rejected defendants' contentions that offering multiple methods of voting sufficed to overcome an ADA challenge, and

held that blind plaintiffs subject to state-imposed restrictions on absentee voting that others did not encounter were denied meaningful access based on their disability. *Id.* at *8 (S.D. Ind. Mar. 9, 2022). So too here:  Applying the correct legal standard, the Challenged Provisions deny disabled voters in Georgia ready access to absentee voting based on their disabilities.

### 1. *Defendants Improperly Ignore or Minimize Factual Evidence of the Burden of the Challenged Provisions*

In addition to focusing on the existence of "many options" for voting, Defendants consistently minimize the Challenged Provisions' impact on voters with disabilities. Particularly with respect to the drop box restrictions, they argue that the excessive barriers that voters with disabilities face are mere "difficulties" or the "usual burdens of voting." Opp. 19-21; Intervenors' Opp. 12-13. This is incorrect. The Challenged Provisions deny disabled citizens equal access to absentee voting because they impose substantial burdens that voters without disabilities do not face.[8] *Westchester,* 346 F. Supp. 2d at 478. Defendants dismiss these barriers and suggest that voters who experience burdens of inaccessible drop boxes could make use of "accommodations" such as mailing their ballots, relying on relatives, or bringing own cane. Opp. 20; Intervenors' Opp. 3, 11-13. Accommodations are modifications

---

[8] Plaintiffs have described these burdens in detail. *See* Pls. Br. 8.

Defendants make to their program that allow disabled voters ready access to that program, not adjustments that people with disabilities must make (often enduring significant cost or inconvenience) to navigate.  28 C.F.R. § 35.130(b)(7).

### 2. *The Felony Provision Marks a Substantial Change from Prior Law And Denies Voters Ballot Assistance*

S.B. 202 discriminates against Georgia's disabled voters by creating a risk of felony punishment on voters' friends, neighbors, and residential staff providing legal ballot return assistance, which places greater burdens on voters with disabilities.  *See* Pls. Br. 5-7; Thomas Decl. ¶¶ 8, 11; Ex. 2, Papadopoulos Decl. ¶ 13.

Defendants claim that S.B. 202's felony penalty imposes no new burdens from the prior S.B. 202 regime.  Opp. 15-16.  But S.B. 202 made a material and consequential change by imposing new ballot return penalties that affect disabled voters and their assistors.  Prior to S.B. 202's felony provision, the pre-existing misdemeanor penalty for election code violations included an exception for legal actions such as those permitted by Section 208.  *See* O.C.G.A. § 21-2-598 ("*Except as otherwise provided by law*, any person who violates any provision of this chapter shall be guilty of a misdemeanor.") (emphasis added); 52 U.S.C.A. § 10508.  Consistent with that carve out and with Section 208, the Georgia Attorney General's office had twice affirmed, also pre-S.B. 202, that a state law limiting ballot return assistance to family or household members or caregivers of people with disabilities

(O.C.G.A. § 21-2-385(a)) did not apply to voters who require assistance with ballot return due to their disability. *See* 2016 Ga. Op. Att'y Gen. 02 (2016) ("The terms of ... [§ 21-2-385(a)] ... cannot be construed to prevent voters from receiving assistance, including assistance in mailing or delivering an absentee ballot, from anyone of their choosing and not otherwise prohibited by section 208 of the Voting Rights Act."). Put simply, before S.B. 202, non-family members and non-household members assisting a voter with a disability with ballot return was *not* a crime.

The unambiguous language in the Attorney General opinions and the carve-out in the pre-S.B. 202 catch-all misdemeanor penalty provision removed any fear of prosecution. *See* Orland Decl. ¶ 23 (citing the "Attorney General opinions" as a reason GAO was able to assist voters without fear that even well-intentioned assistors might face prosecution."); (Hargroves Decl. ¶ 9) (homeless shelter staff did not learn of the restrictions on ballot return assistance until after S.B. 202 passed); *see also* Thornton Decl. ¶¶ 22-23 (Georgia ADAPT volunteers will no longer assist disabled voters with ballot return due to S.B. 202). Under S.B. 202, however, there is now no carve-out in the felony provision for actions permitted by law, O.C.G.A. § 21-2-568(a)(5) nor has the Attorney General affirmed that its previous opinions apply, which would have alleviated confusion and fear of prosecution. Most importantly, Defendants nowhere disclaim that ballot return from non-caregivers

8

and non-household members *now* constitutes a felony.

Instead of grappling with Plaintiffs' showing—that disabled voters without access to eligible, willing assistors under S.B. 202 are denied ready access to absentee voting—Defendants draw on confusion in the legal framework of their own creation to deny the chilling effect based on a lack of current prosecutions. Defendants implicitly acknowledge that federal law permits non-caregivers and non-household members to provide ballot return assistance for voters with disabilities, suggesting that any burden imposed by the additional felony punishment "is simply a fiction." Opp. 15 (conceding applicability of Section 208 to ballot return assistance). Yet Defendants, elsewhere in their brief, claim they plan to "vigorously prosecute" such voter assistance from non-household members and non-caregivers. Opp. 35. Regardless of Defendants' current enforcement activities or lack thereof, the felony provision has created a substantial chilling effect for disabled voters and their would-be assistors. Pls. Br. 14-16. And promises from the government to prosecute responsibly or a lack of prior prosecution are not relevant to this Court's analysis where a statute nonetheless creates criminal penalties that prosecutors may enforce at any time. *See United States v. Stevens*, 559 U.S. 460, 480 (2010); *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988).

### 3. The Felony Provision Creates Substantial Confusion About Who Can Provide Assistance, Increasing Burdens on Disabled Voters

Compounding the denial of ready access to absentee voting for individuals whose would-be assistors now fear felony prosecution, the ballot return restriction to which S.B. 202 added felony penalties does not define the term "caregiver." Nevertheless, Defendants claim that "[u]nder any common understanding of the term 'caregiver,' none of the groups referenced by Plaintiffs are categorically excluded and most individuals within those classifications fall squarely within a common definition of caregiver."[9]   Opp. 12-13.   This gesture at a supposed "common" definition of the term "caregiver," offered only in Defendants' litigation papers, is not clear, binding, or officially adopted anywhere.[10]   It does nothing to alleviate the prosecution risk and chilling effect produced by the lack of clarity or explanation in public information shared by the State.   *See Stevens*, 559 U.S. at 480;

---

[9] Defendants are wrong that there exists a common understanding of the term caregiver.  For example, Black's Law Dictionary (11th ed. 2019) defines caregiver as "A person, who is not a parent, who has and exercises custodial responsibility for a child or for an elderly or disabled person," while the federal Centers for Medicare and Medicaid Services website states that: "Caregivers are broadly defined as family members, friends or neighbors who provide unpaid assistance to a person with a chronic illness or disabling condition."  This definition excludes paid professionals, such as personal assistants or institutional staff.

[10] Instructions the Secretary of State issued on March 30, 2022 pursuant to S.B. 202, which required "a list of authorized persons who may deliver or return the voted ballot to the board of registrars on behalf of the elector as provided in subsection (a) of Code Section 21-2-385," GA Code § 21-2-384(b), has created further confusion. The instructions list the limited categories of authorized assistors for ballot return but provide no exceptions nor define "caregiver."  *See* Orland Decl. ¶ 24(b).

*Stenberg v. Carhart*, 530 U.S. 914, 940–41 (2000); Thomas Decl. ¶ 11; Papadopoulos Decl. ¶¶ 13-15; Thornton Decl. ¶ 21-22; Orland Decl. ¶ 23-24.  This is also contradicted by previous testimony from Defendants, who have not defined the term to the public or to State Election Board and county officials.  Pls. Br. 5-6; 14-15.  Other evidence produced by Defendants indicates that some assistors, such as nursing facility staff, have not received clear guidance from officials that they qualify as caregivers under S.B 202.  *See* Ex. 9, (emails among state officials questioning legality of voter assistance provided at nursing homes).

Defendants' gestures at a potential meaning of "caregiver" aside, what is relevant to Plaintiffs' equal access claim is that voters with disabilities have no way to know whether the assistors available to them fall within the still-undefined category.  Therefore, they cannot access absentee voting on equal terms with other voters. *See, e.g.*, Papadopoulos Decl. ¶¶ 11-14 ("I'm not sure whether different roles within the [nursing] facility like a social worker, administrator, activities director, or other role qualify as a 'caregiver'."); Thomas Decl. ¶¶ 12-15.

## B. Plaintiffs' Proposed Relief is Reasonable and Appropriate

Having shown they are likely to succeed on their ADA claims, the burden shifts to Defendants to demonstrate that providing Plaintiffs' requested accommodations are unreasonable because they would fundamentally alter the

nature of their absentee voting program. *NFB*, 813 F.3d at 508. State Defendants do not argue that Plaintiffs' requested relief would be a fundamental alteration and waive an affirmative defense.[11] *See Johnson v. Bexar Cty. Elections Adm'r*, No. SA-22-CV-00409-XR, 2023 WL 4374998, at *8 (W.D. Tex. July 6, 2023). And while Intervenors argue (at 16-17) that Plaintiffs' relief constitutes a fundamental alteration, they never explain *why*.

In considering whether a proposed modification is a fundamental alteration, the court analyzes whether the proposed modification would eliminate an "essential aspect" of Defendants' policy, keeping in mind the basic purpose of the law, and weighing the benefits to Plaintiffs against the burdens on Defendants. *Schaw v. Habitat for Human. of Citrus Cnty., Inc*., 938 F.3d 1259, 1266-67 (11th Cir. 2019). And "[r]equiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does." *Jones v. City of Monroe*, 341 F.3d 474, 487 (6th Cir. 2003). When a conflict arises between a state law and the ADA's reasonable modifications requirement, state laws must yield to the "comprehensive national mandate" of the ADA. *Mary Jo C. v. N.Y. State & Local Ret. Sys*., 707 F.3d 144, 163 (2d Cir. 2013); *see also NFB*, 813 F.3d at 508.

---

[11] Nor could they, as their own officials concede the feasibility of removing the drop box restrictions and felony provision. *See* Ex. 7, Evans Dep. 227-28; Pls. Br. 19.

Here, Intervenors have not met their burden of showing Plaintiffs' proposed relief would constitute a fundamental alteration of the absentee voting program.  As an initial matter, even when plaintiffs have sought to expand or alter an existing provision in law—more than Plaintiffs seek in the instant case—courts have found the modification appropriate.  *See, e.g., People First,* 467 F. Supp. 3d at 1212-13 (expanding photo ID requirement exception for absentee ballots to a larger, yet still circumscribed, subset of older, disabled, and compromised voters).  Intervenors cite *League of Women Voters of Fla., Inc. v. Lee* ("*LWV*") for the proposition that enjoining the Challenged Provisions would be a fundamental alteration.  595 F. Supp. 3d 1042 (N.D. Fla. 2022), *aff'd in part, vacated in part, rev'd in part sub nom.* Intervenors' Opp. 17.  But they fail to offer any analysis other than describing the *LWV* claim as more "modest" because it focused on *one* state law provision and Plaintiffs here seek modifications to *two*.  *Id.*  But that distinction is of no consequence.  Plaintiffs' proposed relief is focused solely on relief for disabled voters, exactly the type of "limited injunction for a subset of disabled voters" for which the *LWV* court cited *People First* with approval.  595 F. Supp. 3d at 1158.[12]

Plaintiffs' requested modification to the felony assistance provision is simple

---

[12] Intervenors mention in passing (at 15) that Plaintiffs' arguments justify relief only for organizational Plaintiffs' members, but this bald assertion ignores the role of organizational plaintiffs, whose standing Defendants do not challenge.

and reasonable: allow voters with disabilities to use the assistor of their choice,
consistent with the narrow limitations of Section 208 as affirmed by the Georgia
Attorney General.  Plaintiffs seek a return to the pre-S.B. 202 regime where this
assistance was not a crime.  *Supra* Section I.A.2.  As the Department of Justice
explained in a recent case, "the provision of ballot return assistance is...a reasonable
modification necessary to avoid discrimination under Title II" and "could not be a
fundamental alteration" "because it is required by another federal law—the
[VRA]."[13]  As one court recently put it in enjoining a ballot return assistance
restriction under Section 208: "Voters shouldn't have to choose between exercising
their federal rights and complying with state law."  *Carey v. Wisconsin Elections
Commission*, 624 F. Supp. 3d at 1024.

Defendants question whether this Court can consider the rights afforded to
disabled voters under Section 208 in the context of an ADA equal access claim.
Opp. 14-15, Intervenors Opp. 13-14.  But courts regularly consider compliance with

---

[13] Statement of Interest of the Unites States of America at 11, *Carey v. Wisconsin
Elections Comm'n,* 624 F. Supp 3d 1020, No. 3:22-cv-00402 (W.D. Wis. 2022).
As the agency assigned to promulgate ADA regulations, the DOJ's interpretation is
afforded deference.  42 U.S.C. § 12134(a); 28 C.F.R. Part 35 (delegating to the
DOJ authority to promulgate regulations under Title II); *see, e.g., City of Arlington
v. FCC*, 569 U.S. 290, 296 (2013) ("Statutory ambiguities will be resolved, within
the bounds of reasonable interpretation, not by the courts but by the administering
agency.").

other federal statutes when considering appropriate relief under the ADA.[14]  And State Defendants *concede* that Section 208 allows a disabled voter to select a person of their choice to help return their ballot, only underscoring the absurdity of the status quo, where assistors face a felony charge for providing that help.  Opp. 14-15.[15]

As to drop box relief, Plaintiffs are not, as Defendants suggest, asking the Court to mandate drop boxes in all counties or ban drop boxes altogether (Opp. 21 n.11; Ex. 6, Germany Decl. ¶¶ 29-32).  *See* Proposed Order, ECF No. 546-29. Rather, as in *People First*, Plaintiffs ask this Court to remove the restriction

---

[14] *See, e.g.*, *Doe v. Hous. Auth. of Portland*, No. 3:13-CV-1974-SI, 2015 WL 758991, at *6 (D. Or. Feb. 23, 2015), *aff'd*, 664 F. App'x 722 (9th Cir. 2016) ("Plaintiff's request is patently unreasonable because if granted, it would violate federal regulations"); *Assenberg v. Anacortes Hous. Auth.*, 2006 WL 1515603, at *5, n. 7 (W.D. Wash. May 25, 2006), *aff'd* 268 F. App'x 643 (9th Cir. 2008) (noting that the ADA "only requires 'reasonable' accommodation, and therefore does not require entities to violate federal law as an accommodation").

[15] As Plaintiffs bring an ADA equal access challenge, this Court need not rule on Section 208 to grant relief.  Plaintiffs only ask this Court to consider Section 208 because it applied under the pre-S.B. 202 regime and so it informs the appropriate reasonable modification here.  *Supra* Section I.A.2.  However, contrary to Defendants' assertions, this Court may grant relief on an unpled claim where "[t]he relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'"  *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (internal citations omitted); *see also Guille v. Johnson*, No. 21-1515, 2021 WL 4490248, at *2 (3d Cir. Oct. 1, 2021) (same).

prohibiting counties from placing drop boxes in accessible locations outside.[16]
*People First*, 467 F. Supp. 3d at 1223.  Plaintiffs' proposed relief is reasonable.

## II.    Defendants Fail to Undermine Plaintiffs' Showing of Irreparable Harm.

Irreparable harm exists where, as here, a restriction makes voting unequally burdensome for some disabled voters, others face disenfranchisement, and still others become dissuaded from voting absentee.  Pls. Br. 21-24.  Defendants do not appear to contest this or the veracity of the numerous examples of harm testified to by Plaintiffs' declarants, *see id.*  Instead, they suggest no such harm exists due to S.B. 202, a claim that is flatly contradicted by Plaintiffs' evidence delineating the burdens disabled voters have already encountered due to the Challenged Provisions.

Defendants claim that any harm arising from the fear of prosecution borne from raising the misdemeanor to a felony and eliminating the Section 208 carve out is speculative absent evidence of prosecution.  Opp. 25.  But courts have repeatedly rejected this argument.  *See* Pls. Br. 24 n.9.  Defendants baselessly assert that increasing the penalty for voting assistance from a misdemeanor to a felony cannot cause harm, but fail to dispute Plaintiffs' evidence demonstrating the harm from precisely that change.  *See* Pls. Br. 5-7.

---

[16] Allowing discretion to move drop boxes outside would allow counties to comply with their own ADA obligations in selecting drop box locations.  There is no reason to believe that, given the opportunity, they will not comply with these obligations.

16

Contrary to Defendants' focus on pre-S.B. 202 harm, Opp. 27, Plaintiffs are not required to establish harm that *precedes* the provision they seek to enjoin.  *See Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005) ("preventing irreparable harm in the *future* is 'the sine qua non of injunctive relief' … a preliminary injunction is completely at odds with a sanction for *past* conduct") (emphasis added & citations omitted).

Defendants' arguments as to the harm from the drop box restrictions likewise fail.  Voters with disabilities experience additional and unequal obstacles to the absentee voting program due to the physical inaccessibility of indoor-only drop boxes and the limitations on hours that drop boxes are made available.  *See* Pls. Br. 16-17.  Defendants do not dispute that quintessential irreparable harm exists where, as here, citizens with disabilities must take on additional burdens to vote, or where voting becomes so burdensome for them that they may be unable to vote absentee or dissuaded from attempting to do so.  *See* Pls. Br. 21-22. Instead, Defendants suggest the added burdens that voters with disabilities face are unimportant because, in their view, "every form of voting inherently creates burdens on voters with disabilities."  Opp. 27-28.  They assert that voters like Mr. Halsell and Ms. Wiley "who experienced trouble personally accessing a drop box" have not been harmed because they could have pursued "alternative means."  Opp. 28.  That is not the law.

*Each* voting program must be made readily accessible. *Supra* at 3. This disparate burden from purportedly neutral rules is precisely what Congress passed the ADA to address. *See, e.g., PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674–75 (2001).

**III.  Neither Challenged Provision Harms the State's Asserted Interests in a Way that Outweighs the Harm to Plaintiffs, and an Injunction Supports the Public Interest.**

None of the purported state interests supporting the Challenged Provisions Defendants set forth outweigh harm to Plaintiffs, and they pale in the face of the ADA's purpose to provide both "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1), (2); *see also Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1241 (11th Cir. 2000) (per curiam) ("Congress did intend that the ADA have a broad reach.").

Defendants cite an interest in guarding against voter fraud as a reason not to effectuate the ADA, but do not ground their analysis in evidence of any actual voter fraud that the Challenged Provisions prevent. Courts have declined to weigh similar justifications in favor of states where they were not based in evidence. *See Johnson*, 2023 WL 4374998, at *8-9 ("the Court cannot countenance arguments that merely gesture toward threats to election or data security, real or imagined"); *see also*

*Thomas v. Andino*, 613 F. Supp. 3d 926, 952 (D.S.C. 2020) (concluding that while states have an interest in protecting against voter fraud and ensuring voter integrity, the interest will not suffice absent "evidence that such an interest made it necessary to burden voters' rights") (quoting *Fish v. Schwab*, 957 F.3d 1105, 1133 (10th Cir. 2020); *Democracy N.C.*, 476 F. Supp. 3d at 195 (same).

Rather than offer evidence of fraud that the Challenged Provisions would prevent,[17] state officials have repeatedly admitted that the 2020 election, *before* S.B. 202, was the most safe and secure in Georgia's history, and that the use of drop boxes did not result in any voter fraud.  Ex. 4, Sterling Dep. 73:13-20, 118:16-19; Ex. 108 to Intent PI (USA-04141 at 3:42); Ex. 47 to Intent PI (Anderson 107, 111, 130-31).  Multiple state and local officials testified that there were no instances of voter fraud in the pre-S.B. 202 regime.  Ex. 5, Wurtz Dep. 82; Ex. 3, Germany Dep. 57.

Defendants also argue that striking these provisions undermines the State's interest in voter confidence, but the only relevant record evidence indicates these provisions would have no effect on voter confidence.  Plaintiffs' expert Dr. Bridgett

---

[17] Defendants cite only one actual instance of fraud: an intentional scheme in North Carolina conducted by a political operative.  Opp. Br. 1.  But that activity was already a felony in North Carolina at the time, *see* Opp. Br. Ex. G, and Defendants offer no reason why Georgia's existing safeguards against voter interference and intentional misrepresentation, *e.g.* O.C.G.A. § 21-2-568(a)(1-4) & (b); O.C.G.A. § 21-2-566, would not already felonize such conduct.

King provided unrebutted evidence that both nationally and in Georgia, the most salient factors affecting voter confidence were whether voters' preferred candidates won, the in-person voting experience, and belief that election officials were changing votes. Ex. 1 (King Report 31, 34, 36, 38). Provisions concerning when and where voters with disabilities may deposit absentee ballots and who may assist them in returning them could not reasonably affect any of these factors.[18]

Also, Defendants argue that the Challenged Provisions protect Georgians with disabilities from "becom[ing] a target for the fraudulent and intimidating behaviors that Georgia law is designed to prevent," but this is grounded in no evidence, Opp. 31; it simply relies on stereotypical and unfounded assumptions that voters with disabilities are incapable of properly exercising their right to vote or are more likely to be subject to undue influence by third parties.

What Defendants disparagingly characterize as fraudulent "ballot harvesting" is easily distinguishable from a voter with a disability who relies on a trusted friend

_____

[18] To the extent any lack of confidence in drop boxes or concerns about assisted ballot returns exists, Defendants admit they were manufactured through disinformation campaigns and conspiracy theories, some of which S.B. 202's proponents actively promoted. Evans Dep. 175:1-5; Sterling Dep. 81:6-9, 82:19-25, 120:4-19; Memo. Supp. Pls.' Mot. for Prelim. Inj. ("Intent PI Brief") at 10-15; Ex. 8, Harvey Dep. 120:9-12. The solution to that ongoing problem should not be placating accusers who have not once proven their false allegations, at the expense of disabled Georgia voters already facing a plethora of barriers to voting.

or staff-person in a nursing facility to mail or drop off their ballot. *See e.g.*, Thomas Decl. ¶ 8; Papadopoulos Decl. ¶ 9. Indeed, consistent with Section 208, Georgia allows those same individuals to assist a disabled voter in "preparing" their absentee ballot. O.C.G.A. § 21-2-385(b). Courts have rejected voting restrictions that impede disability access based on concerns about "protecting" disabled voters. *See People First*, 467 F. Supp. 3d at 1222 (rejecting defendants' defense of restrictive voter ID law on fraud concerns); *Democracy N.C.*, 476 F. Supp. 3d at 233 (rejecting ballot assistance restrictions justified by defendants to "prevent undue influence on vulnerable people" because of existence of criminal penalties for voter fraud).

In terms of general burdens, Defendants incorrectly argue that "to enjoin the location and hours provisions of O.C.G.A. § 21-2-382(c) would either eliminate all drop boxes . . . or create hardship for Georgia counties—given that human security personnel would be required to monitor the boxes 24 hours a day in an outdoor location." But drop boxes were not illegal before S.B. 202 even if no statute explicitly provided for them. Were they impermissible, the Georgia State Election Board could not have implemented emergency regulation allowing for them, as their power does not include "limit[ing] or repeal[ing] additional requirements imposed by statute or otherwise recognized by law." O.C.G.A. § 50-13-22. And contrary to Defendants' mischaracterizations, Plaintiffs have asked that this Court enjoin the

21

drop box restrictions' human security requirements insofar as they prevent drop boxes from being located outside and available 24 hours a day.  Pls. Br. 1.[19]

Plaintiffs' requested relief is not overly burdensome as it is simply a return to the pre-S.B. 202 status quo and would serve the public interest by expanding voting accessibility because "[b]y definition, the public interest favors permitting as many qualified voters to vote as possible."  Pls. Br. 25 (quoting *Ga. State Conf. NAACP*, 2017 WL 9435558, at *5 (N.D.Ga. May 4, 2017)).  Defendants mischaracterize Plaintiffs' requested relief by arguing it requires the court to "blue pencil" the law when Plaintiffs merely ask the Court to ensure that the law makes reasonable modifications for Georgians with disabilities as to two provisions of the law.  When dealing with illegal portions of a law, it is not uncommon for courts to "sever [the statute's] problematic portions while leaving the remainder intact."  *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006).  In the ADA context, excising portions of statutes—if severable—rather than facial invalidation is common practice.  *E.g.*, *Mary Jo C.*, 707 F.3d at 163 ("the ADA's reasonable

---

[19] Even if additional drop box surveillance were required, this is not an unreasonable burden in light of the ADA's purpose and SB 202's impact on voters with disabilities.  The ADA at times "imposes some administrative burdens . . . that could be avoided by strictly adhering to general rules and policies that are entirely fair with respect to the able-bodied but that may indiscriminately preclude access by qualified persons with disabilities."  *PGA Tour,* 532 U.S. at 690.

modification requirement contemplates modification to state laws . . . .").  And as to the felony provision, Plaintiffs are simply asking the Court to order the State not to enforce the provision against voters with disabilities.

Finally, the assertion that counties would be confused by a court order simply lifting a restriction on their discretion to place drop boxes also makes little sense. Counties have ample time to decide in the next eight months where to locate drop boxes.  Defendants need not take any action to change drop box locations for counties who so choose, and the State does not routinely take part in physically setting up drop boxes as it is.  The same is true for the felony provision—all the State needs to do is *not* charge anyone with a felony, and update its instructions and public information, to comply with the requested relief.

## IV.   Defendants' Arguments Regarding Timing Fail to Outweigh Strong Equities in Plaintiffs' Favor Because Plaintiffs Did Not Unreasonably Delay and Their Motion Does Not Implicate Purcell.

Defendants argue that Plaintiffs unreasonably delayed in filing this motion. But courts have found that a delay in seeking a preliminary injunction matters only where it "militates against a finding of irreparable harm."  *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016).  As discussed, Plaintiffs face irreparable harm in the 2024 elections, and the timing of this motion does not erase that harm.  *Ga. Coalition for the People's Agenda v. Kemp*, 347 F. Supp. 3d 1251,

1268 (N.D. Ga. 2018) (rejecting argument that Plaintiffs' delay indicates an absence of irreparable harm because Plaintiffs developed facts supporting their irreparable harm over time by gathering evidence).  By bringing this motion eight months before the next relevant election, armed with evidence that disabled voters faced barriers in the 2022 elections but with ample time to implement changes to the law, Plaintiffs have struck a balance between preventing future harm and avoiding speculation.

Additionally, as Plaintiffs have explained in briefing regarding S.B. 202's provisions regarding line relief, upon being denied a request for a trial date before the 2024 election cycle, Plaintiffs have moved as expeditiously as possible to obtain relief in advance of the 2024 cycle (*see* Pls.' Reply Br. Supp. Mot. for Prelim. Inj., ECF No. 590 ("Line Relief Reply") at 16-17).[20]

Defendants' other *Purcell* arguments also fail.  *Purcell v. Gonzalez*, 549 U.S. 1 (2006). First, they argue that *Purcell could* apply here, eight months away from the next election, without explaining why, citing cases applying *Purcell* when relief was sought four months or less before an election.  Intervenors' Opp. 24.  Second, Defendants provide no argument as to why the requested relief would cause voter confusion, despite previously recognizing that "*Purcell* exists in the first place . . .

---

[20] Plaintiffs incorporate by reference their arguments regarding timing discussed in Plaintiffs' Line Relief Reply at 16-20.

[to] protect [ ] the *public* from confusion . . . .". *See* ECF No. 487 at 10–11 (emphasis in original)).   They vaguely cite the inability to "vigorously prosecute unlawful behavior that impacts the integrity and security of the election," Opp. 35, but this has nothing to do with confusion.   They also cite the administrative burdens of having "to put drop boxes outdoors" involving "significant coordination and resources to provide the security required." *Id.*   Yet this also has nothing to do with voter confusion, and conveniently ignores the speed and success of drop box implementation in 2020 under much faster timelines.[21]   Intervenors also cite no voter confusion from enjoining these provisions, instead referring to unrelated provisions involving birth dates not at issue in this motion.   Because Plaintiffs do not seek relief in the immediate run-up to an election and because there is no risk of voter confusion, *Purcell* is inapplicable.

## CONCLUSION

The Court should grant Plaintiffs' motion for a preliminary injunction.

---

[21] Officials created and implemented the drop box program less than two months before the 2020 primary election.   Stephen Fowler, *Georgia Elections Board Allows Absentee Ballot Drop Boxes Ahead of June 9 Primary*, Georgia Public Broadcasting (Apr. 15, 2020), https://www.gpb.org/news/2020/04/15/georgia-elections-board-allows-absentee-ballot-drop-boxes-for-june-9-primary.   Now, Defendants claim it takes four times that to simply allow counties to move existing drop boxes.

Respectfully submitted, this 13th day of July, 2023.

/s/ *Pichaya Poy Winichakul*
Bradley E. Heard (Ga. Bar No. 342209)
*bradley.heard@splcenter.org*
Pichaya Poy Winichakul (Ga. Bar No. 246858)
*poy.winichakul@splcenter.org*
Matletha N. Bennette (pro hac vice)
*matletha.bennette@splcenter.org*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

Jess Unger (pro hac vice)
*jess.unger@splcenter.org*
Sabrina S. Khan (pro hac vice)
*sabrina.khan@splcenter.org*
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 705
Washington, DC 20036
Telephone: (202) 728-9557

/s/ *Adam S. Sieff*
Adam S. Sieff (pro hac vice)
*adamsieff@dwt.com*
Daniel Leigh (pro hac vice)
*danielleigh@dwt.com*
Brittni A. Hamilton (pro hac vice)
*brittnihamilton@dwt.com*
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor

/s/ *Sophia Lin Lakin*
Sophia Lin Lakin (pro hac vice)
*slakin@aclu.org*
Davin M. Rosborough (pro hac vice)
*drosborough@aclu.org*
Jonathan Topaz (pro hac vice)
*jtopaz@aclu.org*
Dayton Campbell-Harris (pro hac vice)
*dcampbell-harris@aclu.org*
Casey Smith (pro hac vice)
*csmith@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836
Facsimile: (212) 549-2539

Susan P. Mizner (pro hac vice)
*smizner@aclu.org*
ACLU FOUNDATION, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0781

Brian Dimmick (pro hac vice)
*bdimmick@aclu.org*
ACLU FOUNDATION, INC.
915 15th Street NW
Washington, D.C. 20005
Telephone: (202) 731-2395

/s/ *Caitlin May*
Rahul Garabadu (Ga. Bar 553777)
*rgarabadu@acluga.org*
Caitlin May (Ga. Bar No. 602081)
*cmay@acluga.org*

26

Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

Matthew R. Jedreski (pro hac vice)
*mjedreski@dwt.com*
Grace Thompson (pro hac vice)
*gracethompson@dwt.com*
Danielle E. Kim (pro hac vice)
*daniellekim@dwt.com*
Kate Kennedy (pro hac vice)
*katekennedy@dwt.com*
Shontee Pant (pro hac vice)
*shonteepant@dwt.com*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

David M. Gossett (pro hac vice)
*davidgossett@dwt.com*
Courtney T. DeThomas (pro hac vice)
*courtneydethomas@dwt.com*
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, D.C.  20005-7048
Telephone: (202) 973-4288
Facsimile: (202) 973-4499

*Attorneys for Plaintiffs
Georgia Muslim Voter Project, Women
Watch Afrika, Latino Community Fund
Georgia, and The Arc of the United
States*

Cory Isaacson (Ga. Bar No. 983797)
*cisaacson@acluga.org*
ACLU FOUNDATION OF
 GEORGIA, INC.
P.O. Box 77208
Atlanta, Georgia 30357
Telephone: (678) 981-5295
Facsimile: (770) 303-0060

/s/ *Leah C. Aden*
Leah C. Aden (pro hac vice)
*laden@naacpldf.org*
John S. Cusick (pro hac vice)
*jcusick@naacpldf.org*
Alaizah Koorji
*akoorji@naacpldf.org* (pro hac vice)
NAACP LEGAL DEFENSE AND
 EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592

Anuja Thatte (pro hac vice)
*athatte@naacpldf.org*
NAACP LEGAL DEFENSE AND
 EDUCATION FUND, INC.
700 14th Street, NW
Washington, DC 20005
Telephone: (202) 682-1300

/s/ *Debo P. Adegbile*
Debo P. Adegbile (pro hac vice)
*debo.adegbile@wilmerhale.com*
Alexandra Hiatt (pro hac vice)
*alexandra.hiatt@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP

27

250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

George P. Varghese (pro hac vice)
*george.varghese@wilmerhale.com*
Stephanie Lin (pro hac vice)
*stephanie.lin@wilmerhale.com*
Arjun Jaikumar (pro hac vice)
*arjun.jaikumar@wilmerhale.com*
Sofia Brooks (pro hac vice)
*sophie.brooks@wilmerhale.com*
Mikayla Foster (pro hac vice)
*mikayla.foster@wilmerhale.com*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Tania Faransso (pro hac vice)
*tania.faransso@wilmerhale.com*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Nana Wilberforce (pro hac vice)
*nana.wilberforce@wilmerhale.com*
WILMER CUTLER PICKERING
  HALE  AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5300

28

Facsimile: (213) 443-5400

*Attorneys for Plaintiffs*
*Sixth District of the African Methodist*
*Episcopal Church, Delta Sigma Theta*
*Sorority, Georgia ADAPT, and Georgia*
*Advocacy Office*

29

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: July 13, 2023                    /s/ *Caitlin F. May*
                                        Caitlin F. May
                                        *Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated: July 13, 2023                    */s/ Caitlin F. May*
                                        Caitlin F. May
                                        *Counsel for Plaintiffs*