EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*, <br><br> *Plaintiffs*, <br> v. <br> BRIAN KEMP, Governor of the State of Georgia, in his official capacity, *et al.*, <br><br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br> *Intervenor-Defendants*. | Civil Action No.: 1:21-cv-01284-JPB |

## DECLARATION OF NIKOLAOS PAPADOPOULOS IN SUPPORT OF AME PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

DocuSign Envelope ID: 8D176258-8169-48AF-A683-8CFA92AED657

**DECLARATION OF NIKOLAOS PAPADOPOULOS**
(pursuant to 28 U.S.C. § 1746)

My name is Nikolaos Papadopoulos. I am over the age of 21 and fully competent to make this declaration. Under penalty of perjury, I declare the following based upon my personal knowledge:

1. I currently live in a nursing facility in Royston, Georgia. As of this year, I am registered to vote in Franklin County. Previously, I was registered to vote in Clarke County since around 2017.

2. I am 45 years old and white. I've worked with Multiple Choices, a Center for Independent Living in Athens, Georgia, in the past as a peer supporter, and I met staff members from the Arc through that work. More recently, I was contacted by Stacey Ramirez, a former staff member at the Arc, to talk about their voting advocacy programs and how I could become involved. With their help, I became involved with a voting advocacy group called Rev Up.

3. I have several disabilities, including cerebral palsy, which requires me to use a power wheelchair for mobility. I also have glaucoma, which has caused blindness in my right eye. Due to these disabilities, it is difficult for me to take care of many daily necessities without assistance, like going to the doctor's office, dressing, and bathing. Because of the level of assistance I require in my daily life, I reside in a nursing facility. I require a special aide for transportation outside of the nursing home and for assistance in getting around to stores and other buildings. The special aide is not something that the facility provides; I hire a special aide myself from time to time, such as when I need to get errands done outside of the facility.

4. I voted in person for the primary elections on May 16, 2022. I usually vote by mail due to my disabilities, but a disability rights group, Rev Up, approached me about filming the voting experiences of people with disabilities. The organization offered to arrange assistance for me to vote early in person, in exchange for being able to film my journey to, and time at, the polls. I own my

2

DocuSign Envelope ID: 8D476258-8160-48AF-A683-8CFA92A5D657

own van, but I require a driver in order to go anywhere. Rev Up provided a personal care assistant ("PCA"), who was able to help me get into and out of the van and drive me to the polls. Without the assistance from Rev Up, I would not have voted in person in the May 2022 primaries because I would not have been able to hire a PCA on my own.

5. Even with this outside help, it took considerable time and effort for me to vote in person in the May primaries. Initially, I did not even know that primary elections were scheduled, until Rev Up approached me, because my nursing facility had not informed me of the elections or offered to request absentee ballots for the residents, and I had not heard other announcements. Then, I could not find my polling location online. The Secretary of State's website for election information was very hard for me to read and decipher and did not have appropriate information. I had to call a state hotline to ask for the location of my polling place, and I was told that it was in nearby Royston. However, when I arrived at the polling location in Royston, the poll worker told the PCA who was driving my van that we were at the wrong polling place for early voting. We were directed to my correct early voting location, over a 20-minute drive away in Carnesville. We drove to the correct polling place, where I voted with the assistance of the poll worker, who helped me use an accessible voting machine.

6. In addition to the incorrect polling location information, physically preparing to vote in-person was difficult. Before leaving the nursing facility, I need to be bed-bathed by the nursing staff, take my medications, get into my chair with assistance, and gather needed supplies for the trip. I also have to check out with the nursing facility's front desk in order to leave. Ultimately, preparing to leave to vote in-person takes about an hour and a half. And, whenever I leave the nursing home, getting into and out of my accessible vehicle takes around 15 minutes each time, because it is a very particular process to load my wheelchair into the van. In order to make it up the ramp and into the van, I need to pull my leg rests back and carefully guide my chair through the side door. Then the PCA can lock my chair into place using Q-Straps. To exit the van, I repeat these steps, backing out

DocuSign Envelope ID: 8D176258-8160-48AF-A683-8CFA92A5D657

slowly and carefully with the help of the PCA, who gives me instructions on how to back out. The full experience of voting in person, from preparing to leave, loading myself into and out of the van, driving between polling places, and casting my ballot, took multiple hours, almost the entire afternoon.

7.     Aside from this past primary election, I have not voted in person since the 1990s. This is because the nursing facility that I live in does not provide me with transportation to or assistance at the polls, so I am not able to vote in person without hiring a PCA. If I were to vote in person again, I would need to hire a PCA to assist me in getting to and from the polling location and drive my van. I would need the PCA to assist me during the entire voting process, including, if needed, to use the restroom. However, as mentioned above, it is very difficult for me to hire a PCA on my own.

8.     I would prefer to have the option to vote in person because it makes me feel that I am a part of my community, and it provides certainty that my ballot will not be lost in the mail. My preferred mode of voting is in-person if I can find someone to take me to vote. Given that I generally cannot, I usually use absentee ballots. However, I always fear the possibility that my ballot may be subject to mail delays, and I'm concerned about the uncertainty with using the mail. I am also concerned that there is no way to know if my selected choices on paper are correctly entered, the way I could in-person.

9.     Because my disability affects my mobility, I use support to apply for, complete, fill out, and mail my absentee ballot. In the past, I have received this assistance from the social worker at the nursing home where I reside. My cerebral palsy makes it difficult for me to physically fill out a ballot, open and close the mailbox to mail my ballot, and insert my ballot in the mail. When I typically send mail, I need someone to help me open the mailbox since my disability affects my mobility. In addition, my glaucoma can make it difficult for me to read my ballot on my own, so the social worker has read phrases or names out loud to me. And, as described above, it takes

considerable effort, time, and assistance for me to leave the nursing home, and I am unable to drive myself to a drop box or other vote-by-mail drop off location to return my ballot. Generally, all of the resident mail is collected and distributed by the nursing facility, including absentee applications and ballots, and I require assistance in opening the on-site mailbox due to my motor limitations.

10.   In the 2020 election, my first absentee ballot was lost, so I had to request a new one and check back repeatedly with the social worker to make sure that I received one. I am not sure why my ballot was lost; whether it was the fault of the U.S. Postal Service, or whether it was something with the facility, is unknown. Living in the facility, my mail is generally relayed to me by a staff member, and, as a result, there have been times when mail or a parcel were lost. I am concerned that if my ballot were to be lost again my vote would not be counted, and my voice would be silenced. That is because I wouldn't have time to get another one—mail service in my rural community is slow, and I likely would not have time to mail in another absentee ballot under the new vote by mail timeline under Senate Bill 202.

11.   I have ongoing concerns about my facility's willingness to help me with voting in the future because of Senate Bill 202. The facility did not advertise, post signs, or prompt residents that it was voting time. I spoke with other residents the day after Election Day who felt they were not given an opportunity to vote. One resident I spoke with told me she only knew she could vote if she went in person but did not know if she could ask the facility for help with voting absentee. I feel the facility is particular about who they can help with the voting process even though I believe most residents here have the capacity the vote but need some help with filling out paperwork. I was told by the facility that they believe they can only help some people vote—those who have a cognitive score on the BIMS test of 10 or above—and that there are strict regulations on who the facility can help with voting because of Senate Bill 202. I was at first told the facility did not want to help people vote because they had concerns about violating voter tampering regulations in Senate Bill 202. We were told we could only use a family member or a friend to help out with our ballots. I am not sure the

5

DocuSign Envelope ID: 8D176258-8160-48AE-A683-8CFA92AED657

facility's stance on Senate Bill 202 at this point or their policy as a facility on who they will help and who they won't, but I cannot rely on them helping people with their ballots as a policy in the future while Senate Bill 202 exists.

12. I am worried that the nursing facility staff could at any point refuse to help me because of concerns related to Senate Bill 202 even though I am rightfully asking for help. I am always worried I could be refused help with voting. If they could clarify the language regarding caregiver assistance and make clear that the social worker or any staff member is allowed to help a person with a disability with their ballot, my fears would be greatly alleviated, because then staff would be more willing to help me without worrying that they might break the law. With staff turnover, too, my voting rights are never guaranteed—the practices and guidelines can change quickly and I can be easily disenfranchised if a new administrator has a new interpretation of the law. Without assistance from the nursing home's staff, I would not have anyone to assist me in requesting, completing, and mailing my absentee ballot. I do not have family members nearby that can assist me with absentee voting, and there is no one else I consider a "caregiver."

13. My understanding is that Georgia voters who receive assistance in returning their absentee ballots need to affirm on the voter oath that they did not receive unlawful assistance. Given the complexity of the law, I am not sure about all of the legal requirements and feel reluctant to sign that voter oath. I fear if I make any simple mistake, people could face criminal penalties for giving me the help with casting my vote that I need.

14. It is a huge problem that caregiver is not clearly defined in the law, and I don't have another caregiver available other than facility staff. Due to the lack of a definition of "caregiver," I believe that generally, staff members are reluctant to provide assistance to patients in need of help with voting in fear of prosecution. From the law, I'm not sure whether different roles within the facility like a social worker, administrator, activities director, or other role qualify as a "caregiver." The vague language increases the anxiousness on the part of the staff members to give me the help

DocuSign Envelope ID: 8D176258-8169-48AF-A683-8CFA92A5D657

that I need and to affirmatively offer help to me and other residents with voting. And as explained above, going to vote in person would be very burdensome for me, so I know it is not an option that is accessible to me at this time.

15. I already face significant barriers to casting my ballot, and Senate Bill 202 has made it even harder for me to vote in the future. It is deeply disheartening to be unsure if I even *can* vote in future elections, and as a voter with a disability, it contributes to the feeling that I am not really a part of my community. I do not know how I will be sure that I can vote for as long as Senate Bill 202 remains in place. I am disappointed that the state is working to make elections *less* accessible for people like me and that because of my disabilities, I face barriers that other voters don't face under Senate Bill 202.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 7/5/2023

*Nikolaos Papadopoulos*

Nikolaos Papadopoulos