<u>IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION</u>

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*,<br>                    *Plaintiffs,*<br>          v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br>                    *Defendants,*<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br>                    *Intervenor-Defendants.* | Civil Action No.: 1:21-cv-01259-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*,<br>                    *Plaintiffs,*<br>          v.<br><br>BRIAN KEMP, *et al.*,<br>                    *Defendants,*<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br>                    *Intervenor-Defendants.* | Civil Action No.: 1:21-cv-01284-JPB |

**GEORGIA STATE CONFERENCE OF THE NAACP AND AME
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION BASED ON IMMATERIAL VOTING
REQUIREMENTS**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

I.     PLAINTIFFS HAVE STANDING ...............................................2

       A.     Plaintiffs Have Organizational Standing...............................2

       B.     Plaintiffs Also Have Associational Standing .......................4

       C.     Plaintiffs Have Established Redressability and Traceability. ..............6

II.    BINDING PRECEDENT ESTABLISHES A PRIVATE RIGHT OF
       ACTION UNDER THE MATERIALITY PROVISION..............................8

III.   ALL ARGUMENTS FAIL TO REBUT PLAINTIFFS' SUBSTANTIAL
       LIKELIHOOD OF SUCCESS ON THE MERITS ......................................10

       A.     Georgia Has Already Excluded at Least Hundreds of Valid Votes....11

       B.     The Birthdate Requirement Violates the Materiality Provision .........13

              1.     The Requirement Denies Individuals the Right to Vote...........13

              2.     An Absentee Ballot Envelope Is a "Record or Paper
                     Relating to . . . Any Other Act Requisite to Voting."...............15

              3.     Birthdate on the Absentee Ballot Envelope Is Not Material. ...17

IV.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM............................22

       A.     Plaintiffs Will Suffer Harm Regardless of Opportunity to Cure. .......22

       B.     Plaintiffs' Motion Is Timely................................................22

V.     THE EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION .24

VI.    PURCELL POSES NO OBSTACLE TO INJUNCTIVE RELIEF ..............25

CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

CASES                                                                                                      PAGE(S)

*Arcia v. Fla. Sec'y of State*,
  772 F.3d 1335 (11th Cir. 2014) ........................................................................3

*Ass'n of Cmty. Organizations for Reform Now v. Fowler*,
  178 F.3d 350 (5th Cir. 1999) .........................................................................10

*Ball v. Chapman*,
  289 A.3d 1 (Pa. 2023) ........................................................................14, 15, 16

*Benisek v. Lamone*,
  138 S. Ct. 1942 (2018)..................................................................................23

*CBS v. Primetime 24 J.V.*,
  245 F.3d 1217 (11th Cir. 2001) .....................................................................16

*City of Rancho Palos Verdes, Cal. v. Abrams*,
  544 U.S. 113 (2005)........................................................................................8

*Common Cause Ga. v. Georgia*,
  17 F.4th 102 (11th Cir. 2021) ...............................................................8, 10, 27

*Common Cause v. Thomsen*,
  574 F. Supp. 3d 634 (W.D. Wis. 2021) .........................................................20

*Dem. Party of Ga., Inc. v. Crittenden*,
  347 F. Supp. 3d 1324 (N.D. Ga. 2018)..............................................3, 4, 5, 20

*Diaz v. Cobb*,
  435 F. Supp. 2d 1206 (S.D. Fla. 2006) ..........................................................18

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ...........................................................................2

*Federal Election Comm'n v. Akins*,
  524 U.S. 11 (1998)........................................................................................10

*Fla. State Conf. of N.A.A.C.P. v. Browning*,
  522 F.3d 1153 (11th Cir. 2008) ......................................................5, 11, 17, 18

*GRACE, Inc. v. City of Miami*,
  No. 1:22-CV-24066-KMM, 2023 WL 3594310 (S.D. Fla. May 23, 2023) .......23

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)........................................................................................2

*Howlette v. City of Richmond*,
  485 F.Supp. 17 (E.D. Va. 1978) .......................................................... 18

*J W by & through Tammy Williams v. Birmingham Bd. of Educ.*,
  904 F.3d 1248 (11th Cir. 2018) ............................................................. 4

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) ........................................................... 5, 7

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) ........................................................................... 3, 4

*La Unión del Pueblo Entero v. Abbott*,
  604 F. Supp. 3d 512 (W.D. Tex. 2022) .................................... 15, 16, 19

*La Unión del Pueblo Entero v. Abbott*,
  618 F. Supp. 3d 388 (W.D. Tex. 2022) ................................................. 9

*League of Women Voters of Ark. v. Thurston*,
  No. 5:20-CV-05174, 2021 WL 5312640
  (W.D. Ark. Nov. 15, 2021) ................................................ 9, 11, 14, 17

*League of Women Voters of N.C. v. N.C.*,
  769 F.3d 224 (4th Cir. 2014) ............................................................... 24

*Lewis v. Gov. of Ala.*,
  944 F.3d 1287 (11th Cir. 2019) ............................................................. 7

*Martin v. Crittenden*,
  347 F. Supp. 2d 1302 (N.D. Ga. 2018) ........................................ *passim*

*Martin v. Kemp*,
  341 F. Supp. 3d 1326 (N.D. Ga. Oct. 2018) ....................................... 17

*Migliori v. Cohen*,
  36 F.4th 153 (3d Cir. 2022) ................................................................. 14

*Nā Poʻe Kōkua v. Bank of Am. Corp.*,
  Civ. No. 22-00238-JMS-WRP, 2023 WL 2042923
  (D. Haw. Feb. 16, 2023) ........................................................................ 2

*New Georgia Project v. Raffensperger*,
  484 F. Supp. 3d 1265 (N.D. Ga. 2020) .................................................. 7

*Nnebe v. Daus*,
  644 F.3d 147 (2d Cir. 2011) ................................................................ 10

*Organization for Black Struggle v. Ashcroft*,
  493 F. Supp. 3d 790 (W.D. Mo. 2020) ................................................ 18

*Pa. State Conf. of the NAACP v. Schmidt,*
  No. 1:22-CV-339, 2023 WL 3902954 (W.D. Pa. June 8, 2023) .........................9

*Purcell v. Gonzalez,*
  549 U.S. 1 (2006).................................................................................................25

*Ritter v. Migliori,*
  142 S. Ct. 1824 (2022)........................................................................................14

*Rose v. Raffensperger,*
  511 F. Supp. 3d 1340 (N.D. Ga. 2021) ................................................................7

*Schwier v. Cox,*
  340 F.3d 1284 (11th Cir. 2003) ........................................................................8, 9

*Schwier v. Cox,*
  412 F. Supp. 2d 1266 (N.D. Ga. 2005) .........................................................15, 18

*Singleton v. Wulff,*
  428 U.S. 106 (1976).............................................................................................4

*Sixth Dist. Of Afr. Methodist Episcopal Church v. Kemp,*
  574 F. Supp. 3d 1260 (N.D. Ga. 2021)........................................................17, 22

*Texas Dem. Party v. Hughs,*
  474 F. Supp. 3d 849 (W.D. Tex. 2020) ................................................................9

*Trafficante v. Metro. Life Ins. Co.,*
  409 U.S. 205 (1972)...........................................................................................10

*United States ex. Rel. Williams v. NEC Corp.,*
  931 F.2d 1493 (11th Cir. 1991) .........................................................................16

*Vega v. Tekoh,*
  142 S. Ct. 2095 (2022)........................................................................................8

*Vote.org v. Callanen,*
  39 F.4th 297 (5th Cir. 2022) ...............................................................................8

*Vote.org v. Georgia State Election Bd.,*
  C.A. No. 1:22-CV-01734-JPB, 2023 WL 2432011
  (N.D. Ga. Mar. 9, 2023)..............................................................................*passim*

*Wreal, LLC v. Amazon.com,*
  840 F.3d 1244 (11th Cir. 2016) ........................................................................23

*Yick Wo v. Hopkins,*
  118 U.S. 356 (1886)...........................................................................................24

**STATUTES**

52 U.S.C. §10101 ..................................................................................*passim*

O.C.G.A. § 21-2-31.2 .......................................................................... 7

O.C.G.A. § 21-2-33.1 .......................................................................... 7

O.C.G.A. § 21-2-386 ......................................................................... 12

O.C.G.A. § 21-2-499 ........................................................................... 6

This District twice in 2018 enjoined laws rejecting absentee ballots that lacked a date of birth on the return envelope.  Although the County Defendants have not opposed this motion, State Defendants and Intervenors (together, "Defendants") do, arguing that the Court should condone SB 202's reinstatement of this practice—and thereby disenfranchise hundreds or thousands of voters in 2024—because Georgia now uses ID-match, as opposed to signature-match, to verify the identity of absentee voters.  That argument is without merit.  A date of birth is no more material to one's qualification under the current ID-match regime than it was under signature-match. If anything, the opposite is true.  This District already ruled that a purported interest in preventing fraud cannot justify excluding votes from previously verified voters who omit a date of birth.  And Defendants point to no evidence that this requirement serves any fraud-prevention purpose anyway.  It just disenfranchises voters due to immaterial errors or omissions—exactly what the Civil Rights Act prohibits.

Defendants' attempts to avoid the merits through procedural obstacles also fail.  Plaintiffs have both organizational and associational standing, and the Eleventh Circuit was not "incorrect" when it definitively held that a private right of action exists under the Materiality Provision.  As trial is unlikely before the 2024 elections, this motion is reasonably timed to secure relief within the power of the County Defendants and the State.  The Court should grant a preliminary injunction.

## I.   PLAINTIFFS HAVE STANDING

### A.   Plaintiffs Have Organizational Standing.

State Defendants' assertion that Plaintiffs must show third-party standing to establish organizational standing (Doc. 582 at 11-12) "conflates organizational standing with third-party standing." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 665 (9th Cir. 2021).  Organizational standing is not third-party standing; it "is a type of first-party standing asserted by the association to sue in its own right as an independent injured entity."  *Nā Poʻe Kōkua v. Bank of Am. Corp.*, Civ. No. 22-00238-JMS-WRP, 2023 WL 2042923, at *3 (D. Haw. Feb. 16, 2023).  No court in this Circuit has ever required a showing of third-party standing to meet organizational standing in a voting rights case.  Instead, it is settled law in this Circuit and Court that organizational standing is properly based on diversion of resources, as easily shown here.  *See* Opening Brief, Doc. 548-1 at 9-12; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

State Defendants mischaracterize Plaintiffs' diversion of resources as "self-inflicted" efforts placed "only in the realm of voter education."  Doc. 582 at 9, 13.  Rather, the declarants show that SB 202's changes to absentee voting rules forced Plaintiffs to divert their limited human resources to tasks like voter education and growing "GOTV [get out the vote] and voter registration efforts substantially" (Doc.

2

548-12 ¶ 11) instead of other projects in their organizations' missions.  *See also id.* ¶ 10 ("because of SB 202, the chair of the housing committee had to shift her focus to voter education and election protection matters unrelated to housing.").[1]  Plaintiffs have established their "standing to challenge election laws by showing that they will have to divert personnel and time to educating potential voters on compliance with the laws."  *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014).

State Defendants attempt to distinguish *Dem. Party of Ga., Inc. v. Crittenden*, 347 F. Supp. 3d 1324 (N.D. Ga. 2018), on the false premise that it was brought by "individual voters and candidates."  Doc. 582 at 12-13.  That case, like this one, involved claims *only* by organizations, and it found organizational standing without consideration of third-party standing.  347 F. Supp. 3d at 1337.

To be sure, in addition to organizational standing, Plaintiffs, too, meet the requirements for third-party standing.  *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).  Plaintiffs have a close relationship with their members and constituents, and the underlying voting rights Plaintiffs seek to vindicate are "inextricably bound up"

---

[1] *See also* Reply Declaration of Laurence Pulgram ("Pulgram Reply Decl.") Ex. 18 at 57:25-59:23, 81:8-85:13 (GA NAACP deposition).  Plaintiffs do not rely on "budgetary changes" (Doc. 582 at 13, n.7), but on diversion of personnel and time, as also addressed in their depositions.  *See* Pulgram Reply Decl. Ex. 19 at 60:6-64:22, 67:1-68:9 (League of Women Voters deposition); Decl. of Shafina Khabani, Doc. 548-19, Ex. 17  ¶¶ 5-8 (Georgia Muslim Voter Project).

with Plaintiffs' missions—all of which focus on voting and public participation. *See Singleton v. Wulff*, 428 U.S. 106, 111 (1976). This existing relationship is markedly different from the relationship, or lack thereof, between attorneys and hypothetical future clients at issue in *Kowalski*. Further, the lack of injury to an individual *before* their vote is denied, coupled with the inability to reclaim a right to vote *after* its denial, hinders any effective relief by individuals. *See Kowalski*, 543 U.S. at 130.

### B.   Plaintiffs Also Have Associational Standing.

State Defendants also err in disputing associational standing based on the alleged absence of specific injured members. Doc. 582 at 13. In the first place, Plaintiff Georgia Advocacy Office has at least one constituent, Terri Thrower, whose absentee ballot was initially rejected in the 2022 primary election based on the immaterial date of birth requirement. *See* Terri Thrower Declaration ¶ 13; Devon Orland (GAO) Declaration ¶¶ 6-7.

Moreover, it is incorrect that *Dem. Party of Georgia* requires specific individuals to be identified. There, this Court held that "probable danger is sufficient to satisfy the injury prong for associational standing" and that the plaintiffs were likely to suffer future injury given, like plaintiffs here, their tens of thousands of members. *Dem. Party of Ga.*, 347 F. Supp. 3d at 1337. That holding is consistent with circuit law. *See J W by & through Tammy Williams v. Birmingham Bd. of Educ.*,

4

904 F.3d 1248, 1272 (11th Cir. 2018) ("All that an association must do to establish the injury element of standing is show a realistic danger that at least one member of the association will suffer future injury unless relief is granted."); *Fla. State Conf. of N.A.A.C.P. v. Browning,* 522 F.3d 1153 (11th Cir. 2008) (rejecting argument that affected individuals must be *identified*, and finding associational standing for prospective relief against immaterial voting requirement). Requiring specification of injured members *before* suit could render pre-election relief impossible. Hence, this is exactly the case where associational standing applies.

State Defendants argue that Plaintiffs "have not established the counties in which they have members." Doc. 582 at 13. But Plaintiffs' declarations show "members across the State of Georgia and in virtually every county," (Doc. 548-12 ¶ 2) including, for Plaintiff League of Women Voters of Georgia, at least 102 in Fulton and 46 in Cobb (Doc. 548-13 ¶ 3). Every member faces the possibility of losing their vote due to an error, creating the "probable danger" that more will suffer future injury absent relief. *See Dem. Party of Ga.*, 347 F. Supp. 3d at 1337.[2]

---

[2] In the case cited by State Defendants (Doc. 582 at 13), the only plaintiff organization with *any* members was the Democratic National Committee, which had just a few members from Florida and had demonstrated no probability of injury to them. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1249 (11th Cir. 2020).

**C.     Plaintiffs Have Established Redressability and Traceability.**

State Defendants wrongly assert that Plaintiffs' claims are not traceable to or redressable by an order against them, and that the only proper defendants would be Georgia's 159 counties, because "the processing of absentee ballots has nothing to do with State Defendants."  Doc. 582 at 14.  As an initial matter, none of the County Defendants here denies that it is capable of redressing the issue simply by not excluding ballots with missing or erroneous birthdates.  An injunction should clearly issue against the Defendant Counties who have not opposed it.

Moreover, Georgia law hardly leaves the State so impotent.  The Secretary of State and the State Election Board ("SEB") have full power to implement relief.  The Secretary controls the "form and substance" of absentee ballot envelopes (SB 202 § 27).  The Secretary unquestionably may stop prescribing forms (*e.g.*, Doc. 582 at 6) that demand immaterial dates of birth.  He can also ensure statewide compliance with an order of this Court as he "shall be authorized to inspect and audit the information contained in the absentee ballot applications or envelopes at his or her discretion."   SB 202 § 30.   Likewise, the Secretary certifies election results (O.C.G.A. § 21-2-499) and may, as in *Martin v. Crittenden*, 347 F. Supp. 2d 1302 (N.D. Ga. 2018)*,* be enjoined to certify only counts complying with the Court's orders.  SB 202 even empowers the SEB to take over a county office by suspending

the superintendent and installing a replacement without seeking a court order. O.C.G.A. §§ 21-2-31.2(a) and 21-2-33.1(f).[3]   These features distinguish Georgia from other states and the cases cited by State Defendants.

Defendants rely on *Jacobson v. Fla. Sec'y of State,* where the Florida Secretary of State lacked the power to redress plaintiffs' injuries.   974 F.3d 1236, 1253 (11th Cir. 2020).   By contrast, "the Georgia Secretary of State and the State Election Board have broad powers to ensure the uniformity in the administration of election laws."   *New Georgia Project v. Raffensperger*, 484 F. Supp. 3d 1265, 1285-86 (N.D. Ga. 2020) (distinguishing *Jacobson*); *see also Rose v. Raffensperger*, 511 F. Supp. 3d 1340, 1357 (N.D. Ga. 2021) (holding that plaintiffs "adequately pleaded traceability and redressability" and distinguishing *Jacobson* and *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1305 (11th Cir. 2019), which "is not even a voting rights case").   Plaintiffs' injury is "sufficiently traceable" to State Defendants' "violation[] of the Materiality Provision" and "is redressable by a favorable decision" enjoining the birthdate requirement.   *See Vote.org v. Georgia State Election Bd.*, C.A. No. 1:22-CV-01734-JPB, 2023 WL 2432011, at *5 (N.D. Ga. Mar. 9, 2023).

---

[3] State Defendants assert that "[a]s with the supervisors in *Jacobson* . . . State Defendants can only resort to 'coercive judicial process' to enforce the Election Code if county registrars do not follow the law."   Doc. 582 at 16.   That is incorrect. As the SEB's deponent acknowledged, the suspension process is an administrative one before the SEB.   Pulgram Reply Decl. Ex. 20 at 192:18-193:13.

## II.   BINDING PRECEDENT ESTABLISHES A PRIVATE RIGHT OF ACTION UNDER THE MATERIALITY PROVISION

State Defendants assert that 52 U.S.C. §10101(a)(2)(B) creates no private right of action, arguing that controlling Eleventh Circuit precedent is "incorrect" (Doc. 582 at 16), apparently wishing to preserve the issue for appeal.  Their primary support is a single footnote from a non-binding Fifth Circuit order on a motion for stay, which noted a circuit split on the issue and left the question for the merits panel to decide.  *See Vote.org v. Callanen*, 39 F.4th 297, 305 n.5 (5th Cir. 2022).

As this Court has acknowledged, "the Eleventh Circuit has already directly addressed this issue in *Schwier v. Cox* and concluded that the Materiality Provision can be enforced by a private right of action under § 1983."  *Vote.org*, 2023 WL 2432011, at *6 (following *Schwier v. Cox*, 340 F.3d 1284, 1294-97 (11th Cir. 2003), and holding that organizational plaintiff had a private right of action under CRA and § 1983); *see also Common Cause Ga. v. Georgia*, 17 F.4th 102, 107 (11th Cir. 2021) (nonprofit voting rights organization was "prevailing party" in private action under § 1983).[4]  Most other federal courts considering the issue likewise recognize this

---

[4] State Defendants are wrong that "[r]ecent Supreme Court decisions" show *Schwier* is "incorrect."  Doc. 582 at 16-17.  Those cases neither address *Schwier* nor consider enforcement of CRA violations.  *See Vega v. Tekoh*, 142 S. Ct. 2095 (2022) (Fifth Amendment); *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 121 (2005) (the Telecommunications Act provided a "more restrictive private remedy for statutory violations" incompatible with a private right of action).

private right of action.  *See La Unión del Pueblo Entero v. Abbott*, 618 F. Supp. 3d 388, 432 (W.D. Tex. 2022); *Pa. State Conf. of the NAACP v. Schmidt*, No. 1:22-CV-339, 2023 WL 3902954, at \*5 (W.D. Pa. June 8, 2023); *League of Women Voters of Ark. v. Thurston*, No. 5:20-CV-05174, 2021 WL 5312640, at \*4 (W.D. Ark. Nov. 15, 2021) (collecting cases).

The text and history of the CRA show Congress's clear intent to furnish a private right of action.  In 1957, when introducing the CRA amendment allowing DOJ enforcement, the Attorney General testified that, if enacted, private people would still "retain the right they have now to sue in their own name."[5]  In fact, the 1957 amendments *removed* "procedural roadblocks" to private actions by specifying that "aggrieved parties" did not have to exhaust remedies first.  *Schwier*, 340 F.3d at 1296 (collecting legislative history for what is now 52 U.S.C. § 10101(d)).  The long history of private enforcement since—including claims under the Materiality Provision—is itself proof that a private right of action exists.  *Texas Dem. Party v. Hughs*, 474 F. Supp. 3d 849, 858 (W.D. Tex. 2020), *rev'd on other grounds*, 860 F. App'x 874 (5th Cir. 2021) (collecting cases).

---

[5] Civil Rights Act of 1957:  Hearings on S. 83, an amendment to S.83, S. 427, S. 428, S. 429, S. 468, S. 500, S. 501, S. 502, S. 504, S. 505, S. 508, S. 509, S. 510, S. Con. Res. 5 Before the Subcomm. on Constitutional Rights of the Senate Comm. on the Judiciary, 85th Cong. 73, 203, 1; 60-61, 67-73 (1957) (statement and testimony of the Hon. Herbert Brownell, Jr., Attorney General of the United States).

State Defendants fare no better with their fallback argument that Plaintiffs "are organizations and have no private right of action to invoke." Doc. 582 at 17. As just discussed, subsection (d) grants courts jurisdiction over enforcement actions by any "*party aggrieved*." 52 U.S.C. § 10101(d). This use of "aggrieved person" or "party aggrieved" indicates "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972); *accord Federal Election Comm'n v. Akins*, 524 U.S. 11, 19-20 (1998).

"[N]othing prevents an organization from bringing a Section 1983 suit on its own behalf so long as it can independently satisfy the requirements of Article III standing as enumerated in *Lujan*." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011); *see also Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 365 (5th Cir. 1999) (nonprofit voter registration organization had satisfied Article III standing requirements and thus had private right of action under NVRA); *accord Common Cause Georgia*, 17 F.4th at 107; *Vote.org*, 2023 WL 2432011, at *6. As established above, Plaintiffs have Article III standing. Neither the CRA nor Section 1983 impose any additional obstacles to Plaintiffs' pursuit of a private right of action.

## III.  ALL ARGUMENTS FAIL TO REBUT PLAINTIFFS' SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

The CRA prohibits rejecting legal votes merely because a voter has omitted

or erred in transcribing their date of birth on an absentee ballot envelope. Georgia's date of birth requirement has nothing to do with determining eligibility to vote. *See Browning*, 522 F.3d at 1175. It achieves no function other than to disenfranchise otherwise qualified voters based on the purported failure to meet immaterial requirements—the very result this statute seeks to avoid. *Id.* at 1173; *see also League of Women Voters of Arkansas*, 2021 WL 5312640, at *4.

It was foreseeable that reinstituting this requirement would disenfranchise voters. Pulgram Reply Decl. Ex. 21 at 188:1-189:6 (Dep. of Lynn Bailey, testifying that it is not uncommon for voters to put the current year rather than year of birth). And discovery has now shown that its use has excluded at least hundreds—likely thousands—of qualified voters. *See* Doc. 548-1 at 8 and part III(A), *infra*.

In their oppositions, Defendants rely on dissents to support their arguments; ignore or attempt to discredit precedent that defeats their desired outcome; and hypothesize alleged—but unfounded—consequences if Georgia's date of birth requirement were rightfully held immaterial. All of their arguments fail.

### A. Georgia Has Already Excluded at Least Hundreds of Valid Votes.

State Defendants do not dispute that *at least* hundreds have had their absentee ballots rejected for lack of a date of birth on the envelope, yet they criticize Plaintiffs for not submitting interrogatory responses of counties that reported "zero" such

incidents.  *See* Doc. 582 at 8.  Contrary to State Defendants' suggestion, the fact that any county may have ***reported*** zero birthdate-based exclusions does not prove lack of exclusion for that reason.  As conceded in the State's interrogatory responses, Georgia's prescribed categories of reasons for absentee rejections do not permit counties to break out data about missing birthdates separately.  Pulgram Reply Decl. Ex 30.  So counties lump their birthdate rejections into tallies of "Missing ID information," including in interrogatory responses here.

Take, for instance, Gwinnett County, whose interrogatory responses State Defendants misleadingly submit.  *See* Doc. 582-11 at 4 (Interrogatory No. 3 response).  The Gwinnett response lists "0" absentee ballots tallied as rejected for lack of a correct birthdate.  But in deposition, Zachary Manifold, Elections Supervisor for Gwinnett, explained that the county's reporting did not "separate" out exclusions based on the birthdate requirement.  *See* Pulgram Reply Decl. Ex. 22 at 114:19-115:11, 117:23-119:17 (counting of birthdate-based rejections "all kind of lumped together" with those based on ID requirements).  In fact, many absentee ballots in Gwinnett were rejected for non-compliant birthdates but tallied under the generic category "missing ID requirements."

We know this because state law requires counties to notify voters of ballot rejections and retain those letters (O.C.G.A. §21-2-386(a)(1)(C)), which Mr.

12

Manifold called "the best data for the cure process as far as rejections" go (Pulgram Reply Decl. Ex. 22 at 157:7-15).   Examination of those individual letters has revealed that Gwinnett—despite the "0" report—*__excluded at least 218 absentee ballots, 74% of all absentee rejections, based on missing or incorrect birthdates in the 2022 runoff alone__*.  *See id.* ¶¶ 12-15, Ex. 24.[6]  Extrapolating across all counties, this puts thousands of voters at risk of disenfranchisement across the state in 2024.

### B.   The Birthdate Requirement Violates the Materiality Provision.

Though Defendants seemingly accept that absentee ballot envelopes constitute "any record or paper" for section 10101(a)(2)(B), the parties' agreement ends there.  Plaintiffs address each contested element of the statute in turn.

### 1.   The Requirement Denies Individuals the Right to Vote.

State Defendants assert that voters are not "denied the right to vote," but rather their votes are merely excluded for failing to follow the absentee ballot rules.  Doc. 582 at 17-19.  Intervenors further complain that Plaintiffs' theory would mean that "anytime a voter is unable to vote, she is denied the right to vote."  Doc. 583 at 10.[7]

---

[6] State Defendants' suggestion of "0" birthdate rejections in other counties is also unsupported.  *See* Doc. 582-9 (for Columbia County, submitting no interrogatory response, but rather an unverified attorney's tally reporting "N/A," not "0" for each election's "missing birthdates"); Doc. 582-10 at 3 (DeKalb County, objecting to providing "information which the DeKalb Defendants do not track").

[7] Contrary to Intervenors' exaggeration, the CRA's limits do not, of course, address all voting rules, just immaterial requirements on papers and records.

Defendants heavily rely on Justice Alito's *dissent* from a denial of an emergency stay of a Third Circuit ruling that failure to date absentee ballot envelopes was immaterial. *Ritter v. Migliori*, 142 S. Ct. 1824 (2022); *Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), *cert. granted, judgment vacated sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (Mem.) (2022). But dissents are not law—much less dissents from stay denials. Justice Alito himself acknowledged that, given the case posture, he would "not rule out the possibility that further briefing and argument might convince [him] that [his] current view is unfounded." *Ritter*, 142 S. Ct. at 1824.

More important, Defendants' argument ignores the CRA's text. Section 10101 broadly defines "vote" to include "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, *casting a ballot*, and *having such ballot counted* and included in the appropriate totals of votes cast . . . ." 52 U.S.C. §10101(e) (emphases added); *see also League of Women Voters of Ark.*, 2021 WL 5312640, at *4 ("vote" includes "all action necessary to make a vote effective"). Congress has barred states from using immaterial requirements to strip voters of their rights both to cast a ballot and "hav[e] such ballot counted." *Id.; see also Ball v. Chapman*, 289 A.3d 1, 24-25 (Pa. 2023). Not counting an otherwise valid absentee ballot because it lacks the individual's birthdate plainly falls within the statute's scope.

14

Indeed, Defendants' interpretation would render the Materiality Provision meaningless. That provision is *only* triggered by an error or omission—that is, when an elector has erroneously *failed* to follow voting rules. Under Defendants' interpretation, Section 10101(a)(2)(B) could never be violated, because every "error or omission" of an immaterial requirement would constitute an elector's "forfeiture" of their vote by failing to follow the rules. *See Ball*, 289 A.3d at 25.[8]

### 2.   An Absentee Ballot Envelope Is a "Record or Paper Relating to . . . Any Other Act Requisite to Voting."

State Defendants next argue that Georgia's date of birth requirement does not concern a "record or paper *relating to any* application, registration, or *other act requisite to voting*." 52 U.S.C. §10101(b) (emphasis added). They posit that "[p]roviding a date of birth on an absentee-ballot envelope is not required or necessary for voting. It is required or necessary to properly return an absentee ballot." Doc. 582 at 19. Again relying on a dissent, Intervenors argue that the Materiality Provision applies only to voter registrations, not to other papers and

---

[8] State Defendants suggest that, because voters have a ***three-day*** window to cure the error, the CRA does not apply. Doc. 582 at 23. But, as noted in the Opening Brief (Doc. 548-1 at n.3), many voters are unable to cure and thus disenfranchised. Nothing in the CRA allows "state actors initially [to] deny the right to vote based on errors or omissions that are not material as long as they institute cure processes." *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 541 (W.D. Tex. 2022); *see also, e.g.*, *Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005); *Martin*, 347 F. Supp. 3d at 1302.

records involved in voting.  Doc. 583 at 5-8.  These arguments fail.

The CRA applies not only to applications and registrations, but also to records relating to "any . . . other act requisite to voting."  52 U.S.C. §10101(b).  This language necessarily must reach beyond an application or registration, since those are explicitly enumerated in the statute.  Defendants' construction would improperly render this language inoperative.  *See United States ex. Rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1502 (11th Cir. 1991) ("Any interpretation which renders parts or words in a statute inoperative or superfluous is to be avoided.").  "[T]he word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind . . . . [I]n the absence of any language limiting the breadth of that word, it must be read as referring to all of the subject that it is describing."  *CBS v. Primetime 24 J.V.*, 245 F.3d 1217, 1223 (11th Cir. 2001) (cleaned up).  Filling out information on an absentee ballot envelope—a step made requisite to voting absentee in Georgia—falls within the broad language of "any . . . other act requisite to voting."

State Defendants cite no precedent supporting their contrary interpretation. Intervenors cite a dissent in *Ball*, while ignoring the majority's conclusion, which is consistent with other courts:  the Materiality Provision applies to mistakes on a ballot return envelope because completing the envelope is an act requisite to voting.  *Ball*, 289 A.3d at 26 (majority opinion), 38 (Brobson, J., dissenting); *see also La Unión*

16

*del Pueblo Entero*, 604 F. Supp. 3d at 541; *Sixth Dist. Of Afr. Methodist Episcopal Church v. Kemp*, 574 F. Supp. 3d 1260, 1282 (N.D. Ga. 2021); *Martin*, 347 F. Supp. 3d at 1308-09; *League of Women Voters of Ark.*, 2021 WL 5312640, at \*4.[9]

These same absentee ballot cases undermine State Defendants' suggestion that applying Section 10101 here "would essentially create the right to vote absentee." Doc. 582 at 22.  Not so.  As this District has recognized, "once the state creates an absentee voting regime, they 'must administer it in accordance with the Constitution.'" *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1338 (N.D. Ga. Oct. 2018) (citation omitted).  Courts have thus repeatedly applied the Materiality Provision to absentee ballots, including this Court, which rejected a similar argument by the State in concluding that doing so "does not appear to create a right to vote absentee." *See Vote.org*, 2023 WL 2432011, at \*9.

### 3.    Birthdate on the Absentee Ballot Envelope Is Not Material.

State Defendants lastly dispute the element that "the error or omission [] not be material in determining whether such individual is qualified" to vote, arguing that a birthdate could be used to verify the identity of the person submitting the ballot. Doc. 582 at 19.  By contrast, Intervenors argue that the birthdate is *per se* material

---

[9] Intervenors' argument (Doc. 583 at 10) that *Browning* supports their position is wrong.  *Browning* found that the underlying information being required—ID or SSN—*was* material and expressly required by federal law.  522 F.3d at 1172-75.

because the State requires it, and the Materiality Provision cannot preempt state law. Doc. 583 at 11-13.  Both readings are incorrect.

To determine if an error or omission is material, courts consider "whether, accepting the error as true and correct, the information contained in the error is material to determining [the voter's] eligibility." *Browning*, 522 F.3d at 1175.  In other words, materiality is judged by comparing the content of the voter's error against the State's voter qualifications. *See Schwier*, 412 F. Supp. 2d at 1276.  Here, as State Defendants concede, a birthdate on an envelope does not assist in determining whether that voter is qualified under Georgia law to vote.  Doc. 582 at 21 ("the date of birth is not used to determine whether a voter is *qualified*").  That determination is made *before* a potential voter even receives an absentee ballot.

Defendants cite no case in which a date of birth was determined to be material *after* voter eligibility had been confirmed (nor before).  And none of their cases supports such a conclusion.[10]   State Defendants claim that the birthdate may help

---

[10] In *Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1213 (S.D. Fla. 2006), the court found requirements to check boxes certifying that the voter had not been found mentally incapacitated or guilty of a felony were material, as those were qualifications to vote. *Howlette v. City of Richmond*, 485 F.Supp. 17, 21-22 (E.D. Va. 1978), found material a requirement to notarize signatures collected to propose a referendum where signatories had not otherwise verified they were the person whose name was signed.  In *Organization for Black Struggle v. Ashcroft*, 493 F. Supp. 3d 790, 803 (W.D. Mo. 2020) (Doc. 583 at 12-13), the court determined that the challenged fields, i.e. voter name, address, and attestation, were material to voter qualification.

local election officials verify voter identity, as opposed to qualification (Doc. 582 at n.5); but they provide no declaration or other evidence that it is necessary or material even to that supposed purpose. Nothing in the record suggests that an ID or SSN is insufficient to verify identity. Defendants do not dispute that a date of birth is no obstacle to a hypothetical fraudster who already has the voter's ID. Nor have election officials' actions ever treated absence of a date of birth as indicative of fraud or abuse, as opposed to mere error. While Defendants do not dispute that hundreds of ballots were not counted for lack of birthdate, they identify not one investigation stemming from the purported lack of compliance.

Contrary to Intervenors' argument (Doc. 583 at 11-12), a state law that refuses to count votes based on omission of immaterial information cannot, by *ipse dixit*, make that information material. *See, e.g.*, *La Unión del Pueblo Entero*, 604 F. Supp. 3d at 540 (addressing requirements in Texas SB 1). Accepting this argument would negate the Materiality Provision, as any requirement enshrined by state law would become material simply by virtue of its existence. A state could then request *any* information, such as place of birth, date of registration, or various other extraneous details to "identity check" a ballot returned by an *already* verified voter. The precise

purpose of the CRA is to guard against such immaterial state-imposed burdens.[11]

Defendants contend that this District's decisions in *Martin* and *Dem. Party of Ga.* are inapposite because the method of absentee voter verification there included signature match (Doc. 582 at 20) and did not mandate, but just authorized, rejecting absentee ballot envelopes lacking year of birth (Doc. 583 at 7-8, 12). To the contrary, those rulings are relevant and determinative. First, *Martin*[12] and *Dem. Party of Ga.* confirm the presence of the very elements that State Defendants and Intervenors seek to refute: that a state requirement on a ballot return envelope can have the effect of denying an individual the right to vote; that providing such information is an "other act requisite to voting"; and that a requirement of information on a return envelope can be immaterial to determining voter eligibility.

Second, the fact that the prior statute identified voters by signature matches while the current statute uses ID numbers is a distinction without a difference; adding

---

[11] That other states may require different information to return absentee ballots in their states is of no moment. Doc. 582 at 22. The purported state requirements identified in State Defendants' footnote 9 tell us nothing about how they compare to those states' voter qualifications—which is the test to determine materiality.

[12] Intervenors misconstrue *Common Cause v. Thomsen*, 574 F. Supp. 3d 634, 636 (W.D. Wis. 2021) and its discussion of *Martin.* Doc. 583 at 12. In *Thomsen,* plaintiffs challenged a Wisconsin voter ID law that required student IDs (but not other IDs) to display certain information, arguing that information cannot be material to voter eligibility unless *every* form of voter ID included the same information. The court found that plaintiffs were "conflating" the CRA with an Equal Protection claim, and that *Martin* did not require every voter ID to reflect the same information.

an immaterial requirement to accurately recite a date of birth in returning absentee ballots is equally prohibited. If anything, date of birth might have been more useful in the prior era, which verified based on subjective signature match, rather than an objective ID number. Yet, the *Martin* court was unpersuaded by the State's argument, as here, that the year of birth might help verify a voter's identity. 347 F. Supp. 3d at 1309. And here, county officials have acknowledged that they do not need birthdates to verify the identity of an already-deemed-eligible voter.[13]

Intervenors misread *Martin*, which did not ground its finding of immateriality on the fact that birthdates were not "required under Georgia law." Doc. 583 at 12 (citing *Martin*, 347 F. Supp. 3d at 1308-09). To the contrary, Georgia law *did* expressly require that the year of birth be included on absentee ballots until 2019 (Doc. 548-1 at 5-6); it just did not mandate *automatic rejection* of the ballot. The *Martin* court held that "a voter's ability to correctly recite his or her year of birth on the absentee ballot envelope is not material to determining said voter's qualifications under Georgia law." 347 F. Supp. 3d. at 1308-09. In the next paragraph, the court

---

[13] *See, e.g.*, Doc. 582-05 (Ex. D) at 203:8-15 (Fulton County witness testifying that the County would be able to confirm the identity of the voter without a date of birth); Doc. 582-12 (Ex. K) at 48:10-21 (Gwinnett County witness testifying they use the voter's driver's license number to confirm identity on the absentee envelope); Doc. 582-13 (Ex. L) at 113:8-24 (Gwinnett County witness testifying that the driver's license number is a common way to verify voter identity).

added that its conclusion was "only strengthened" by the fact that Georgia law did not mandate automatic rejection.  That SB 202 now mandates disenfranchisement for every voter error only heightens the need for a statewide injunction.

## IV.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM

### A.   Plaintiffs Will Suffer Harm Regardless of Opportunity to Cure.

State Defendants "have not provided any support for their argument that the opportunity to cure an error rehabilitates any potential violation of the Materiality Provision, and the statute is silent on this point." *Vote.org*, 2023 WL 2432011, at *7; *accord Sixth Dist. of Afr. Methodist Episcopal Church*, 574 F. Supp. 3d at 1282.  A violation of the Materiality Provision occurs at the first rejection, regardless of what happens next.  And here, even after the cure period, the facts show at least hundreds of votes wrongly rejected, uncured, and uncounted—a plainly irreparable harm.

### B.   Plaintiffs' Motion Is Timely.

Defendants argue that Plaintiffs delayed unreasonably in bringing this motion.  But Plaintiffs brought this motion *eleven months before* the 2024 primaries, after developing the record of rejected absentee ballots post-SB 202 during the 2022 elections.  This timing is entirely reasonable, coming right after it became clear that no trial would occur sufficiently before the 2024 elections to guarantee relief.  Until the Spring of 2023, Plaintiffs had followed Defendants' urging that the Court "just

go ahead and have an expedited trial and move to a final decision before the next [2024] election."  Doc. 234 at 34:22-24 (line-relief PI Hearing Tr.).  The parties repeatedly stipulated to schedules that always required completion of discovery and summary judgment briefing by June 2023, in time to permit a trial and relief before the 2024 elections.  Docs. 84, 259, 387.  When Defendants moved to extend discovery and obtained an order vacating that schedule (Docs. 453, 496), Plaintiffs promptly and reasonably filed this motion as the only means to prevent irreparable harm in the 2024 elections.

Defendants' citation of *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016) is unpersuasive.  That case is about a party's five-month delay in seeking an injunction against the daily use of an allegedly infringing trademark.  *Wreal*, 840 F.3d at 1248.  In the instant case, the next injury to voters will be during the 2024 election, and Plaintiffs seek injunctive relief with ample time before such date.

Even if Plaintiffs had delayed (they did not), such delay would not foreclose relief but "must be weighed against the harm a plaintiff suffers."  *GRACE, Inc. v. City of Miami*, No. 1:22-CV-24066-KMM, 2023 WL 3594310, at *13 (S.D. Fla. May 23, 2023) (granting an injunction where election was nine months away and plaintiffs had taken time to develop the evidentiary record); *cf. Benisek v. Lamone*, 138 S. Ct. 1942 (2018) (cited by Defendants) (Court "consider[ed] the balance of

equities among the parties," refusing to order redistricting on the eve of the election after six years and three general election cycles).  Here, under the circumstances, Plaintiffs' timing is entirely reasonable.  And tellingly, neither State Defendants nor Intervenors submit *any* declaration asserting harm or injury due to the timing of Plaintiffs' preliminary injunction motion, much less harm that could offset the irreparable injury of disenfranchising voters in the 2024 election.

## V.    THE EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION

In opening, Plaintiffs established that the equities (Doc. 548-1 at 20-21) and public interest (*id.* at 22-23) both strongly favor preliminary injunctive relief.  The individual right to vote is "a fundamental political right, because [it is] preservative of all rights."  *E.g.*, *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).  "[O]nce the election occurs, there can be no do-over and no redress.  The injury to these voters is real and completely irreparable if nothing is done to enjoin this law."  *League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 247 (4th Cir. 2014).

Defendants do not rebut, or even address, Plaintiffs' arguments or authorities. Instead, they make generalized appeals to a state's interest in enforcing voting laws, relying on inapposite cases staying injunctions where, unlike here, a state had shown a substantial likelihood of success on the merits.  *See* Doc. 582 at 25.  Defendants again fail to provide a single declaration to support their contentions of harm, either

to them or to the public interest.  They do not show that SB 202's birthdate requirement has prevented even a single instance of voter fraud.  And they cannot overcome the fact that hundreds or thousands of Georgia voters, who already had been approved for absentee ballots, will be deprived of their right to vote.

## VI.  *PURCELL* POSES NO OBSTACLE TO INJUNCTIVE RELIEF

Finally, Intervenors, alone, argue that an injunction is barred by the *Purcell* principle.  Doc. 583 at 16-17, discussing *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).  Ironically, the State Defendants do not even mention *Purcell*.  Even Intervenors admit that Georgia's March 2024 federal primary is still "somewhat further" away than the four- to six-month periods contemplated under *Purcell* and its progeny.  Doc. 583 at 17.  And they offer no proof of why the ultimate relief that Plaintiffs seek—namely, counting absentee ballots regardless of purported errors or omissions with respect to birthdates—would result in confusion for election administrators or "substantial costs" for training.  *See* Doc. 583 at 17-18.  State Defendants' silence on *Purcell* speaks volumes and is determinative here.

## <u>CONCLUSION</u>

The Court should grant the motion and issue a preliminary injunction.

Respectfully submitted, this 14th day of July, 2023.

*/s/ Bryan L. Sells*
Bryan L. Sells
Georgia Bar No. 635562
THE LAW OFFICE OF BRYAN
SELLS, LLC
PO Box 5493 Atlanta, Georgia 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

Jon Greenbaum*
Ezra D. Rosenberg*
Julie M. Houk*
Jennifer Nwachukwu*
Heather Szilagyi*
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
jnwachukwu@lawyerscommittee.org
hszilagyi@lawyerscommittee.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Vilia Hayes*
Neil Oxford*
Gregory Farrell*
HUGHES HUBBARD & REED LLP
One Battery Park Plaza New York,
New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*/s/ Laurence F. Pulgram*
Laurence F. Pulgram*
lpulgram@fenwick.com
Molly Melcher*
mmelcher@fenwick.com
Armen Nercessian*
anercessian@fenwick.com
Ethan Thomas*
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 875-2300

Joseph S. Belichick*
jbelichick@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041-2008
Telephone: (650) 988-8500

Catherine McCord*
cmccord@fenwick.com
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone: (212) 430-2690

*Attorneys for Plaintiffs Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, Inc., League of Women Voters of Georgia, Inc., GALEO Latino Community Development Fund, Inc., Common Cause, and the Lower Muskogee Creek*

26

/s/ Pichaya Poy Winichakul
Bradley E. Heard (Bar No. 342209)
bradley.heard@splcenter.org
Pichaya Poy Winichakul (Bar 246858)
poy.winichakul@splcenter.org
Nancy G. Abudu (Bar 001471)
nancy.abudu@splcenter.org
Matletha N. Bennette*
matletha.bennette@splcenter.org
SOUTHERN POVERTY
LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30031-1287
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

Jess Unger*
jess.unger@splcenter.org
Sabrina S. Khan*
sabrina.khan@splcenter.org
SOUTHERN POVERTY
LAW CENTER
1101 17th Street NW, Suite 705
Washington, DC 20036
Telephone: (202) 728-9557

/s/ Leah C. Aden
Leah C. Aden*
laden@naacpldf.org
Alaizah Koorji*
akoorji@naacpldf.org
John S. Cusick*
jcusick@naacpldf.org
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592

Anuja Thatte*
athatte@naacpldf.org
NAACP LEGAL DEFENSE AND
EDUCATION FUND, INC.
700 14th Street, NW
Washington, DC 20005
Telephone: (202) 682-1300

/s/ Adam S. Sieff
Adam S. Sieff*
adamsieff@dwt.com
Daniel Leigh**
danielleigh@dwt.com
Brittni A. Hamilton*
brittnihamilton@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

Matthew R. Jedreski*
mjedreski@dwt.com
Grace Thompson*
gracethompson@dwt.com
Danielle E. Kim*
daniellekim@dwt.com
Kate Kennedy*
katekennedy@dwt.com
Shontee Pant*
ShonteePant@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

/s/ Sophia Lin Lakin
Sophia Lin Lakin*
slakin@aclu.org
Davin M. Rosborough*
drosborough@aclu.org
Jonathan Topaz*
jtopaz@aclu.org
Dayton Campbell-Harris*
dcampbell-harris@aclu.org
Casey Smith*
csmith@aclu.org
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836
Facsimile: (212) 549-2539

Susan P. Mizner*
smizner@aclu.org
ACLU FOUNDATION, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0781

Brian Dimmick*
bdimmick@aclu.org
ACLU FOUNDATION, INC.
915 15th Street NW
Washington, D.C. 20005
Telephone: (202) 731-2395

28

David M. Gossett*
davidgossett@dwt.com
Courtney DeThomas*
courtneydethomas@dwt.com
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, D.C.  20005-7048
Telephone: (202) 973-4288
Facsimile: (202) 973-4499

*Attorneys for Plaintiffs Georgia
Muslim Voter Project, Women Watch
Afrika, Latino Community Fund
Georgia, and The Arc of the United
States*

*Admitted pro hac vice
**Application to be admitted pro hac
vice forthcoming*

Rahul Garabadu (Bar 553777)
rgarabadu@acluga.org
Caitlin May (Bar 602081)
cmay@acluga.org
Cory Isaacson (Bar 983797)
cisaacson@acluga.org
ACLU FOUNDATION OF GEORGIA, INC.
P.O. Box 570738
Atlanta, Georgia 30357
Telephone: (678) 981-5295
Facsimile: (770) 303-0060

*Attorneys for Plaintiffs
Sixth District of the African Methodist
Episcopal Church, Delta Sigma Theta
Sorority, Georgia ADAPT, Georgia Advocacy
Office, and Southern Christian Leadership
Conference*

*/s/ Debo P. Adegbile*
Debo P. Adegbile*
debo.adegbile@wilmerhale.com
Alexandra Hiatt*
alexandra.hiatt@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

George P. Varghese*
george.varghese@wilmerhale.com
Stephanie Lin*
stephanie.lin@wilmerhale.com
Arjun K. Jaikumar*
arjun.jaikumar@wilmerhale.com

Mikayla C. Foster*
mikayla.foster@wilmerhale.com
Sofia C. Brooks*
sofie.brooks@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Tania C. Faransso*
tania.faransso@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Nana Wilberforce*
nana.wilberforce@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

*Admitted pro hac vice*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a font size of 14.

Dated: July 14, 2023

*/s/ Laurence F. Pulgram*
Laurence F. Pulgram
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated: July 14, 2023

*/s/ Laurence F. Pulgram*
Laurence F. Pulgram
*Counsel for Plaintiffs*

31