UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | MASTER CASE NO. 1:21-mi-55555-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN KEMP, *Governor of the State of Georgia, in his Official Capacity,* et al., <br><br> Defendants, <br><br> REPUBLICAN NATIONAL COMMITTEE, et al., <br><br> Intervenor-Defendants. | CIVIL ACTION NO. 1:21-cv-01284-JPB |

## <u>ORDER</u>

This matter is before the Court on the Motion for a Preliminary Injunction filed by the Sixth District of the African Methodist Episcopal Church Plaintiffs[1] ("Plaintiffs") [Doc. 546]. This Court finds as follows:

---

[1] Plaintiffs comprise the following:  Sixth District of the African Methodist Episcopal Church; Georgia Muslim Voter Project; Women Watch Afrika; Latino Community Fund of Georgia; Delta Sigma Theta Sorority, Inc.; The Arc of the United States; Georgia ADAPT; Southern Christian Leadership Conference; and Georgia Advocacy Office.

# INTRODUCTION

Georgia Senate Bill 202 ("S.B. 202") governs election-related processes and was signed into law by Governor Brian Kemp on March 25, 2021.  Plaintiffs in the instant action, among other plaintiff groups, subsequently filed complaints against Georgia state officials and county government officials[2] challenging various provisions of S.B. 202.  This order refers to both State Defendants[3] and Intervenor Defendants[4] and to both groups together as "Defendants."

At issue here are two challenged provisions in S.B. 202 (the "Challenged Provisions").  Plaintiffs contend that the Challenged Provisions violate Title II of the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act of 1973 (the "RA") by denying voters with disabilities equal access to voting in Georgia.

---

[2] The county government defendants have not responded to the motions before the Court.  The full list of county defendants is available on the docket.  To briefly review, Plaintiffs named as defendants the boards of elections and registration (as well as members of those boards) from the following counties:  Bibb, Chatham, Clarke, Clayton, Cobb, Columbia, DeKalb, Fulton, Gwinnett, Hall and Richmond.

[3] State Defendants are Brad Raffensperger, in his official capacity as the Georgia Secretary of State, and individual members of the State Elections Board, in their official capacities.

[4] Intervenor Defendants are the Republican National Committee, the National Republican Senatorial Committee, the National Republican Congressional Committee and the Georgia Republican Party, Inc.

The first provision makes it a felony for an unauthorized individual to return an absentee ballot for another person (the "Ballot Return Provision"). Specifically, under O.C.G.A. § 21-2-568(a)(5), "[a]ny person who knowingly . . . [a]ccepts an absentee ballot from an elector for delivery or return . . . except as authorized by [O.C.G.A. § 21-2-385(a)] shall be guilty of a felony." The individuals who are authorized to return an absentee ballot for another person are family members,[5] household members and caregivers.[6] O.C.G.A. § 21-2-385(a).

The second provision at issue is O.C.G.A. § 21-2-382(c)(1). This provision generally provides for the establishment of drop boxes. Plaintiffs contest the statute's requirements that absentee ballot drop boxes be placed inside, rather than outside, advance voting locations and that access to those locations be limited during advance voting (the "Drop Box Provision"). The Drop Box Provision states the following:

> Drop boxes . . . shall be established at the office of the board of registrars or absentee ballot clerk or inside locations at which advance voting . . . is conducted . . . and may be open during the hours of advance voting at that location. Such drop boxes shall

---

[5] The Ballot Return Provision states that the following relatives qualify as "family members": mother, father, grandparent, aunt, uncle, brother, sister, spouse, son, daughter, niece, nephew, grandchild, son-in-law, daughter-in-law, mother-in-law, father-in-law, brother-in-law and sister-in-law. O.C.G.A. § 21-2-385(a).

[6] S.B. 202 does not define the term "caregiver" but provides that "the absentee ballot of a disabled elector may be mailed or delivered by the caregiver of such disabled elector, regardless of whether such caregiver resides in such disabled elector's household." O.C.G.A. § 21-2-385(a).

be closed when advance voting is not being conducted at that location.

O.C.G.A. § 21-2-382(c)(1).  The Drop Box Provision further provides that drop box locations "shall have adequate lighting and be under constant surveillance." Id.

On May 17, 2023, Plaintiffs filed the instant Motion for Preliminary Injunction.  [Doc. 546].  Plaintiffs ask this Court to enjoin enforcement of the Challenged Provisions and to return Georgia's absentee voting program to the pre-S.B. 202 status quo.  [Doc. 546-1, p. 8].  Plaintiffs' Motion seeks relief for the 2024 elections and until any final judgment is in this case is rendered.  [Doc. 546, p. 2]; [Doc. 546-1, p. 8].

## FACTUAL BACKGROUND

Plaintiffs are nonprofit organizations whose work includes advocating for and protecting the legal rights of individuals with disabilities and providing support to those individuals in areas including voting.  [Doc. 546-6, p.3]; [Doc. 546-7, p. 3]; [Doc. 546-13, p. 3].  For example, Plaintiffs' voting programs in prior elections included educating voters on the absentee ballot process, coordinating and providing transportation to polls and drop box locations, applying for and filling out absentee ballots and providing specialized resources, such as sign language

interpreters, to individuals with disabilities.  [Doc. 546-6, pp. 4–5]; [Doc. 546-7, p. 5]; [Doc. 546-13, p. 4].

Plaintiffs assert that Georgians with disabilities face barriers to exercising their right to vote, including difficulty leaving the home, transportation challenges, a need for assistance and high rates of poverty, among others.  [Doc. 546-1, p. 9]; [Doc. 546-3, pp. 10–11].  Plaintiffs contend that, given those barriers, voters with disabilities rely on absentee voting to a greater degree than the rest of the voting population.  [Doc. 546-1, p. 10].  According to Plaintiffs, the Challenged Provisions disproportionately burden, discriminate against and make absentee voting inaccessible to voters with disabilities.  Id. at 1–2; [Doc. 546-3, pp. 10–11].

Plaintiffs' constituents provided declarations describing their concerns about S.B. 202's impact on their ability to vote.  For example, Empish Thomas, a blind voter, states that she prefers to drop off her absentee ballot in person because the mail is slow.  [Doc. 546-4, p. 6].  Notably, Thomas believes that the felony penalties in the Ballot Return Provision will make it difficult to find individuals who are willing to assist her with returning her absentee ballot, and she is unsure of whether her personal assistant qualifies as a "caregiver" under the new law.  Id. at 5.  Thomas also believes that the Drop Box Provision's restrictions on drop box

hours of access will make absentee voting more burdensome for her because she relies on others for transportation.  Id. at 6.

Patricia Chicoine and Wendell Halsell are other constituents who have disabilities that cause mobility limitations.  [Doc. 546-5, p. 2]; [Doc. 546-14, p. 3].  Although Chicoine previously voted absentee by mail, Chicoine and Halsell both prefer to return their absentee ballots at a drop box due to their distrust of the mail.  [Doc. 546-5, pp. 2, 6]; [Doc. 546-14, p. 4].  Chicoine and Halsell expressed concerns with the Drop Box Provision's requirement that drop boxes be located indoors because, in prior elections, they experienced significant difficulties in accessing indoor drop boxes because of their mobility limitations.  [Doc. 546-5, p. 6]; [Doc. 546-14, pp. 4–5].  For instance, in October 2021, when Chicoine went to return her ballot, she did not bring her walking cane because she was not expecting to walk down a long hallway to reach the drop box.  [Doc. 546-5, pp. 5–6].  Chicoine explained that she had to hold on to chairs and desks and take breaks along the way when walking to the indoor drop box.  Id. at 3.  Halsell likewise found it exhausting to reach the indoor drop box location when he voted in November and December 2022.  [Doc. 546-14, pp. 4–5].  Halsell noted that although his nephew drove him to the drop box location, he did not ask his nephew

for further assistance because he was unsure if his nephew's help would be illegal under the Ballot Return Provision.  Id. at 4.

Finally, Nikolaos Papadopoulos, an individual with conditions that cause partial blindness and mobility limitations, also submitted a declaration.  [Doc. 594-3, p. 3].[7]  Papadopoulos currently resides in a nursing facility.  Id. at 3. Papadopoulos usually submits his absentee ballot by mail, but he voted in-person during the May 2022 primary elections so that he could participate in a film about the voting experiences of people with disabilities.  Id. at 3.  With respect to absentee voting, Papadopoulos expressed concerns about mail delays and the uncertainty of using the mail.  Id. at 5.  Papadopoulos explained that he needs someone to help him open the mailbox so that he can mail his ballot.  Id. at 4. Papadopoulos also expressed his fear that, because of S.B. 202, the nursing facility staff would refuse to provide him with assistance to vote absentee because of the absence of a statutory definition for "caregiver" and the risk of prosecution for unauthorized assistance.  Id. at 7.

---

[7] Plaintiffs attached Nikolaos Papadopoulos' declaration to their reply brief.  See [Doc. 594-3].  Ordinarily, the Court would not consider evidence presented in a reply brief. However, the evidence herein supports an argument advanced in the opening brief, and therefore, the Court includes it in its analysis.  See, e.g., Giglio Sub s.n.c. v. Carnival Corp., No. 12-21680, 2012 WL 4477504, at *2 (S.D. Fla. Sept. 26, 2012) (noting that although the submission of new facts in a reply brief is improper, a court has discretion to consider additional exhibits where the evidence does not raise wholly new factual issues).

State Defendants contend that Georgia's absentee voting program provides multiple ways for voters with disabilities to participate in absentee voting.  [Doc. 592, p. 20].  State Defendants aver that S.B. 202 was passed in response to concerns about "ballot harvesting," which State Defendants describe as the practice of unauthorized third parties gathering absentee ballots from voters and returning them to election officials.  Id. 10–11.  Ryan Germany, General Counsel for the Secretary of State, stated that he is aware of instances in jurisdictions outside Georgia where drop boxes placed outside were destroyed or tampered with.[8]  [Doc. 592-2, p. 10].  Germany also pointed to recent convictions in North Carolina related to "ballot harvesting," which contributed to growing concerns about election fraud and the disenfranchisement of voters.  Id. 16.

Germany explained that claims of "ballot harvesting" associated with the use of drop boxes were one of the most common complaints that the Secretary of State's Office received following recent elections.  Id. at 5.  Germany noted that those complaints led to burdensome and time-consuming open records requests to county officials for surveillance video of the drop boxes.  Id. at 5–6.  According to Germany, the complaints also led to investigations that were left unresolved in many cases due to unclear surveillance footage.  Id. at 8.

---

[8]  Germany, however, did not provide any evidence that this happened in Georgia.

State Defendants also describe prior reports of county non-compliance with drop box security provisions before S.B. 202 was enacted.  Id. at 7.  For instance, Germany cites a county that did not implement proper video surveillance monitoring and another that failed to follow the proper chain of custody procedures.  Id. at 6.  Likewise, Matthew Mashburn, a member of the Georgia State Elections Board and a defendant in this case, testified that counties were erecting drop boxes that did not comply with the law and were beyond the counties' ability to service.  [Doc. 592-3, p. 5].

State Defendants assert that enjoining the Challenged Provisions would lead to the same issues that arose before S.B. 202 was enacted.  [Doc. 592-2, p. 12].  Germany noted that since the Challenged Provisions were implemented, the volume of complaints related to drop boxes or "ballot harvesting" received by the Georgia State Elections Board and the Secretary of State's Office has notably decreased in comparison to the 2020 election.  Id. at 9.  Germany also stated that county election officials were not faced with burdensome public records requests regarding surveillance video footage like they were following the 2020 election.  Id.  Finally, State Defendants assert that Plaintiffs' requested relief as to the Drop Box Provision would not be feasible:  moving drop boxes outside with no restrictions on hours of access would impose on counties the expense of providing

twenty-four-hour security for each drop box or purchasing the proper equipment to monitor the boxes.  Id.

Plaintiffs, on the other hand, provided evidence to support their contention that their proposed relief—enjoining the enforcement of the Challenged Provisions—is reasonable and feasible.  For example, with respect to the Ballot Return Provision, Joseph Blake Evans, the Elections Director in the Secretary of State's Office, testified that other than issuing guidance to counties, he was not aware of any other action that his office would need to take if the Ballot Return Provision were enjoined.  [Doc. 546-24, p. 4].  As to the Drop Box Provision, Gabriel Sterling, Chief Operating Officer in the Secretary of State's Office, stated that he found the drop box security provisions that existed prior to S.B. 202 to be adequate.  [Doc. 546-28, p. 8].  Finally, Charlotte Sosebee, the 30(b)(6) representative of the Athens-Clarke County Board of Elections and voter registration, estimated that it would take about two days to implement changes if the drop box rules reverted to the pre-S.B. 202 status quo.  [Doc. 546-22, p. 8].

## ANALYSIS

A plaintiff seeking preliminary injunctive relief must show (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) that the balance of equities is in the plaintiff's favor; and (4) that an injunction

would not be adverse to the public interest.  Sofarelli v. Pinellas County, 931 F.2d

718, 723–24 (11th Cir. 1991).  Because a preliminary injunction "is an

extraordinary and drastic remedy," the Court may not issue such relief "unless the

movant clearly establish[es] the burden of persuasion as to each of the four

prerequisites."  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal

punctuation omitted) (quoting McDonald's Corp. v. Robertson, 147 F.3d 1301,

1306 (11th Cir. 1998)).  Granting a preliminary injunction is thus the exception

rather than the rule.  See id.

To obtain a preliminary injunction, a moving party must show a substantial

likelihood that he will ultimately prevail on the merits of his claim.  Sofarelli, 931

F.2d at 723.  This factor is generally considered the most important of the four

factors, see Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986), and

failure to satisfy this burden—as with any of the other prerequisites—is fatal to the

claim, see Siegel, 234 F.3d at 1176.

Plaintiffs allege that the Challenged Provisions violate Title II of the ADA

and Section 504 of the RA by discriminating against voters with disabilities.[9]

_____

[9] In Plaintiffs' Motion, Plaintiffs assert that Section 208 of the Voting Rights Act
("VRA"), which allows voters with disabilities to obtain voting assistance from a person
of their choice, supersedes S.B. 202.  [Doc. 546-1, pp. 24–25].  However, because
Plaintiffs bring their disability discrimination claims exclusively under the ADA and RA
and do not bring a claim under Section 208 of the VRA, the Court will not evaluate the
likelihood of Plaintiffs' success on the merits as to a Section 208 VRA claim.

Discrimination claims under the ADA and RA are governed by the same standards. See Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000).  Therefore, the Court will analyze Plaintiffs' disability discrimination claims "under the framework of the ADA, except where it is necessary to refer to the [RA]."  Todd v. Carstarphen, 236 F. Supp. 3d 1311, 1325 n.26 (N.D. Ga. 2017).

Congress enacted the ADA to address and eliminate discrimination against individuals with disabilities.  Id. at 1325.  The ADA is broadly construed to effectuate its remedial purposes and serves as a safeguard to individuals with disabilities in various areas of public life, including voting.  See id. at 1325–26; People First of Ala. v. Merrill, 467 F. Supp. 3d 1179, 1214 (N.D. Ala. 2020).  In pertinent part, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[10]  42 U.S.C. § 12132.

To establish a prima facie ADA claim, a plaintiff must show the following:

> (1) that [the plaintiff] is a qualified individual with a disability;
> (2) that [the plaintiff] was either excluded from participation in or denied the benefits of a public entity's services, programs, activities, or otherwise discriminated against by the public entity;

---

[10] Section 504 of the RA similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

> and (3) that the exclusion, denial of benefit, or discrimination
> was by reason of the plaintiff's disability.

Karantsalis v. City of Miami Springs, 17 F.4th 1316, 1322 (11th Cir. 2021).

Courts have interpreted these elements as requiring an ADA plaintiff to show that,

because of his disability, he lacks "meaningful access" to a public benefit to which

he is entitled.  Todd, 236 F. Supp. 3d at 1328 (quoting Alexander v. Choate, 469

U.S. 287, 301 (1985)).  Additionally, "[i]f a plaintiff makes a prima facie case of

discrimination," the plaintiff "must then propose a reasonable modification to the

challenged requirement or provision."  Merrill, 467 F. Supp. 3d at 1216.  As such,

"a successful ADA claim requires plaintiffs to 'propose a reasonable modification

to the challenged public program that will allow them the meaningful access they

seek.'"  Id. at 1216–17 (quoting Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494,

507 (4th Cir. 2016)).

Defendants do not dispute that Plaintiffs' constituents are qualified

individuals with disabilities or that absentee voting is a public activity that

Plaintiffs' constituents are entitled to access.  Therefore, the first question before

the Court is whether Plaintiffs are substantially likely to show that their

constituents are denied meaningful access to absentee voting.[11]  The Court

---

[11] Plaintiffs assert that absentee voting is the relevant public "service, program, or
activity" that the Court must analyze under the ADA.  [Doc. 546-1, p. 19].  Intervenor
Defendants argue that Plaintiffs improperly reframe the question before the Court as a

addresses the remaining elements of an ADA claim (whether any such denial was by reason of the plaintiff's disability and whether the plaintiff has proposed a reasonable modification) as needed.

## A.     Meaningful Access to Absentee Voting

Plaintiffs argue that the Challenged Provisions discriminate against their constituents by making absentee voting burdensome or completely impossible for voters with disabilities.  With respect to the Ballot Return Provision, Plaintiffs argue that the provision's failure to define "caregiver" creates confusion among would-be assistors.  Plaintiffs also contend that the Ballot Return Provision's felony penalties deter potential assistors from returning ballots and discourage voters with disabilities from seeking assistance.

As to the Drop Box Provision, Plaintiffs contend that voters with mobility or sensory disabilities who could previously return their ballots to outdoor drop boxes now find it difficult or impossible to physically access indoor drop boxes. Plaintiffs also assert that the reduced hours in which drop boxes are accessible makes delivering absentee ballots more difficult for voters with disabilities who face transportation barriers.  Therefore, Plaintiffs maintain that the burdens

---

denial of access to *absentee* voting rather than voting in general.  [Doc. 591, pp. 8–9]. Because this distinction has no impact on the result of the Court's analysis, the Court proceeds by analyzing access to absentee voting under the ADA.

imposed by the Challenged Provisions deny voters with disabilities full and equal opportunity to participate in Georgia's absentee voting program.

Defendants argue that Georgia's absentee voting program provides several means of returning absentee ballots that allow disabled individuals meaningful access to absentee voting.  Defendants further contend that a voter's preference for one method of voting over another, despite the alternative methods and other means of assistance available under Georgia law, does not equate to a violation of the ADA or RA.

As previously noted, a plaintiff establishes an ADA violation by showing that he lacks "meaningful access" to a public benefit to which he is entitled.  Todd, 236 F. Supp. 3d at 1328 (quoting Alexander, 469 U.S. at 301).  To demonstrate a lack of meaningful access, a plaintiff is not required to show that he is completely prevented from enjoying a public benefit.  Shotz v. Cates, 256 F.3d 1077, 1080 (11th Cir. 2001).  Instead, a plaintiff can establish a lack of meaningful access by showing that the benefit is not "readily accessible" to him, even if the plaintiff ultimately manages to access the benefit.  Id.  "Difficulty in accessing a benefit, however, does not by itself establish a lack of meaningful access."  Todd, 236 F. Supp. 3d at 1329.  Nor does meaningful access require equal access, preferential treatment or accommodations that are aligned with the plaintiff's preferences.

<u>Medina v. City of Cape Coral</u>, 72 F. Supp. 3d 1274, 1279 (M.D. Fla. 2014).

The Court recognizes the challenges that individuals with disabilities must overcome to exercise their right to vote. Despite these challenges, however, the Court finds that Plaintiffs have not demonstrated a substantial likelihood of success on their claim that the Challenged Provisions deny voters with disabilities meaningful access to absentee voting. First, Plaintiffs' suggestion that the ADA requires *equal* access to absentee voting is contrary to the standard adopted by the Eleventh Circuit Court of Appeals. See <u>Ganstine v. Sec'y, Fla. Dep't of Corr.</u>, 502 F. App'x 905, 910 (11th Cir. 2012) (finding that a disabled prisoner had meaningful access to certain prison facilities where he was able to access the facilities "most of the time," despite instances of not having access or having difficulties in accessing the facilities); see also <u>Medina</u>, 72 F. Supp. 3d at 1279 (noting that "meaningful access" does not require equal access or preferential treatment).

Second, Plaintiffs are not substantially likely to show that the difficulties faced by voters with disabilities vis-à-vis absentee voting rise to the level where absentee voting is not readily available to those voters. In <u>Shotz</u>, the Eleventh Circuit found that individuals with disabilities were denied meaningful access to a county courthouse where the wheelchair ramps were more than two times steeper

than the maximum allowable slope and the bathroom stalls had insufficient floor space for use by a person with disabilities.  256 F.3d at 1079–80.  The Eleventh Circuit held that, even though the individuals with disabilities ultimately managed to enter the courthouse, the courthouse was not "readily accessible" because of the slope of the wheelchair ramps and the size of the bathrooms.  Id. at 1080.

Another case, Bircoll v. Miami-Dade County, concerned a deaf arrestee who was denied the use of an interpreter during a DUI traffic stop.  480 F.3d 1072, 1077 (11th Cir. 2007).  There, by contrast, the Eleventh Circuit concluded that the arrestee was not denied the benefit of effective communication, even though communication with the arresting officer was more difficult without the use of an interpreter.  Id. at 1086.  The arrestee was able to understand fifty percent of what was said by reading lips and the officer also gave physical demonstrations.  Id. The Eleventh Circuit reasoned that although the communication may not have been perfect, it was not so ineffective that the arrestee could not understand that he was being asked to perform field sobriety tests.  Id.  Therefore, the Eleventh Circuit held that the arrestee's ADA claim failed.  Id. at 1086–87.

Here, although Plaintiffs' constituents have expressed concerns about the difficulties that they have faced and may encounter with absentee voting under the Challenged Provisions, the Court finds that these difficulties do not deny those

voters ready access to absentee voting.  Despite some voters' preferences for certain methods of absentee voting, absentee voting remains readily accessible through alternative, feasible methods of returning absentee ballots.  Indeed, as their declarations show, Plaintiffs' constituents each had alternative ways to return their ballots, such as sending their ballots by mail, asking an authorized individual to deliver the ballots to a drop box or requesting that an assistor accompany them to return their ballots in person.  A mere preference for one method of absentee voting over another is not enough to show a denial of meaningful access to absentee voting.  See Todd, 236 F. Supp. 3d at 1330 (finding that the unavailability of one method of accessing a benefit did not demonstrate a lack of meaningful access where there were alternative options available to the plaintiff that she did not meaningfully explore).

Moreover, some of the concerns raised by Plaintiffs' constituents (such as obtaining assistance from family members or nursing facility staff) can be addressed without running afoul of the Challenged Provisions.  For example, although Halsell declined his nephew's assistance in returning his ballot, his nephew is expressly authorized to return Halsell's ballot under the Ballot Return Provision.  Similarly, that provision does not prevent anyone from helping Papadopoulos open a mailbox so that he can mail his own ballot.  Ultimately, the

Court finds that the availability of alternative methods of absentee voting offers a strong rebuttal to Plaintiffs' argument that the Challenged Provisions deny their constituents meaningful access to absentee voting.[12]  Therefore, the Court concludes that Plaintiffs have not met their burden of proof to show that they are substantially likely to show that the Challenged Provisions deny voters with disabilities meaningful access to absentee voting in Georgia.

Because Plaintiffs have not shown a substantial likelihood of success as to the first element of their ADA claim, the Court need not address the remaining elements.  See Pittman v. Cole, 267 F.3d 1269, 1292 (11th Cir. 2001) ("[W]hen a plaintiff fails to establish a substantial likelihood of success on the merits, a court does not need to even consider the remaining three prerequisites of a preliminary injunction.").  In an abundance of caution, the Court will consider these elements nonetheless.

---

[12] Plaintiffs also argue that the purported lack of clarity as to who qualifies as "caregiver" under the Ballot Return Provision results in the denial of meaningful access to voting. The Court construes this argument as a constitutional vagueness argument.  It is true that courts may render a statute void where it is facially "so vague that 'persons of common intelligence must necessarily guess at its meaning and differ as to its application.'"  DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1271 (11th Cir. 2007).  However, the Court finds that Plaintiffs' argument on that basis is misplaced because Plaintiffs do not bring a constitutional vagueness claim.  The Court therefore declines to analyze the Ballot Return Provision for vagueness.

**B.**     **"By Reason of" Disabilities**

Assuming *arguendo* that Plaintiffs met their burden as to the first element of their discrimination claims, Plaintiffs would also need "to establish a causal link between their disabilities and the exclusion, denial of benefits, or discrimination." People First of Ala. v. Merrill, 491 F. Supp. 3d 1076, 1155 (N.D. Ala. 2020).[13] Plaintiffs may do so by demonstrating "(1) intentional discrimination or disparate treatment; (2) disparate impact; [or] (3) failure to make reasonable accommodations."  Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 503 n.5 (4th Cir. 2016).

The Court notes that the parties devoted little, if any, discussion or analysis to this element in the briefing.  However, the "party seeking a preliminary injunction bears the burden of establishing its entitlement to relief."  Scott v. Roberts, 612 F.3d 1279, 1290 (11th Cir. 2010).  Without sufficient evidence or argument on this element, the Court cannot find that Plaintiffs have carried their burden on this factor by showing intentional discrimination or disparate treatment;

---

[13] The Court notes that the causation standard differs between the ADA and the RA. "[P]laintiffs claiming intentional discrimination under the RA must show that they were discriminated against '*solely* by reason of [their] disability,' but the ADA requires only the lesser 'but for' standard of causation."  Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (alteration in original) (citations omitted) (first quoting 29 U.S.C. § 794(a), then quoting McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1073–74 (11th Cir. 1996)).  This difference is not significant here, though, because Plaintiffs cannot establish causation under either standard.

disparate impact; or the failure to make reasonable accommodations.  Therefore,

even assuming that Plaintiffs' constituents lack meaningful access to absentee

voting, Plaintiffs have not shown that any such denial is by reason of their

constituents' disabilities.

## C.    Reasonable Modification

Finally, assuming *arguendo* that Plaintiffs were substantially likely to prove

a prima facie case of discrimination, Plaintiffs would then need to propose a

reasonable modification.  Plaintiffs' proposed modification is the preliminary

injunctive relief that they seek in the instant motion.  In other words, Plaintiffs ask

the Court to enjoin the enforcement of the Challenged Provisions altogether,

thereby returning to the status quo prior to the passage of S.B. 202.  Plaintiffs

argue that because the state has already administered elections without the

Challenged Provisions in place, Plaintiffs' proposed modifications are reasonable

and not unduly burdensome.

On the other hand, State Defendants contend that enjoining the Challenged

Provisions would lead to an increase in the issues that the provisions were intended

to address, namely concerns about illegal "ballot harvesting," counties' non-

compliance with drop box security provisions and the burden of open records

requests and investigations related to complaints about drop box security.  State

Defendants argue that moving drop boxes outdoors and removing restrictions on hours of access, as Plaintiffs propose, would impose significant burdens on counties by requiring them to hire twenty-four-hour security or purchase surveillance equipment.

The burden first rests on the plaintiff to propose a modification that is facially reasonable. Merrill, 467 F. Supp. 3d at 1217. If the plaintiff makes this showing, the burden shifts to the defendant to provide evidence demonstrating that the proposed modification is unreasonable, incompatible with the program at issue, that it would "fundamentally alter the nature of the service provided" or that it would "impose an undue financial or administrative burden." Merrill, 467 F. Supp. 3d at 1217 (quoting Tennessee v. Lane, 541 U.S. 509, 531–32 (2004)). This is a highly fact-specific inquiry. Id. The Court must consider whether the plaintiff's requested accommodation would eliminate an "essential aspect" of the program (here, absentee voting) or simply inconvenience it, while "keeping in mind the 'basic purpose' of the policy or program at issue, and weighing the benefits to the plaintiff against the burdens on the defendant." Schaw v. Habitat for Human. of Citrus Cnty., Inc., 938 F.3d 1259, 1267 (11th Cir. 2019). In sum, "[a] modification that provides an exception to a peripheral . . . rule without impairing its purpose cannot be said to 'fundamentally alter' the [program]." PGA

Tour, Inc. v. Martin, 532 U.S. 661, 690 (2001).

The Court finds that Plaintiffs have not met their burden in proposing a facially reasonable modification.  Instead of providing an exception to the Challenged Provisions, Plaintiffs propose eliminating those rules altogether.  This proposed modification would thus "fundamentally alter" the state's absentee voting program.  See id. at 690.  To explain further, Plaintiffs have not proposed a modification that is tailored to curb the impact of the Challenged Provisions on voters with disabilities.  Instead, Plaintiffs' proposed modification would enjoin the Challenged Provisions as to *all* voters.

Plaintiffs direct this Court to Merrill, 467 F. Supp. 3d at 1221, to support the reasonableness of their proposed modification.  The Court, however, views this case as easily distinguishable from Merrill.  There, the plaintiffs proposed exempting voters with disabilities (and only voters with disabilities) from the requirement that absentee voters submit a copy of their photo ID with their ballot.  Id. at 1192.  The court concluded that the proposed modification was facially reasonable for two reasons:  the plaintiffs requested an exemption for only a limited group of voters, and the defendants provided no evidence that the exemption was a fundamental alteration to the state's voting program.  Id. at 1221.

Similar facts are not present in this case.  Here, Plaintiffs do not propose

23

relief that extends to a limited group of voters; Plaintiffs' proposed modification would affect every voter who wishes to vote absentee.  The injunction requested by Plaintiffs would effectively remove all restrictions on the third-party gathering and returning of absentee ballots and provide for limitless access to drop boxes for voters with and without disabilities alike.  In League of Women Voters of Florida, Inc. v. Lee, for instance, the ADA plaintiffs proposed a modification similar to the one proposed here; they asked the court "to enjoin the entirety of [a voting regulation], for all voters."  595 F. Supp. 3d 1042, 1158 (N.D. Fla. 2022), aff'd in part, vacated in part, rev'd in part sub nom. League of Women Voters of Fla. Inc. v. Fla. Sec'y of State, 66 F.4th 905 (11th Cir. 2023).[14]  The court found that this modification was a "fundamental alteration" of the law because the plaintiffs did not seek "a limited injunction for a subset of disabled voters" and instead sought "to enjoin an entire provision," which would "necessarily eliminate[] an 'essential aspect'" of the law.  Id.  Plaintiffs here seek the same relief, and so, too, would their modification constitute a fundamental alteration of S.B. 202.

Additionally, State Defendants provided evidence that the proposed modification constitutes a fundamental alteration to Georgia's absentee voting

---

[14]  Although the Eleventh Circuit later vacated and reversed much of the district court's order, the Eleventh Circuit did not disturb the district court's analysis as to the plaintiffs' ADA claim.

program.  The record shows that the Challenged Provisions were passed to address security concerns about the third-party gathering and returning of absentee ballots that occurred in other jurisdictions.  The record also shows that before the Challenged Provisions were implemented, county officials and the Secretary of State's Office were faced with time consuming and burdensome open records requests and complaints related to drop box security.  The Court finds that Defendants have set forth adequate evidence that enjoining enforcement of the Challenged Provisions would fundamentally change the nature of Georgia's voting laws by undermining their very purpose—to bolster voting security and restore the public's confidence in election integrity.

Because Plaintiffs' proposed modification would amount to a complete overhaul of the Challenged Provisions rather than a targeted accommodation for voters with disabilities, the Court finds that Plaintiffs are not substantially likely to show that their proposed modification is facially reasonable.

* * *

For the reasons set forth above, Plaintiffs are not substantially likely to show that they will succeed on the merits of their claims under the ADA and the RA. First, Plaintiffs have not shown a substantial likelihood that the Challenged Provisions deny their constituents meaningful access to absentee voting.  Second,

even if Plaintiffs established this first element, Plaintiffs are not substantially likely to show that any such denial is by reason of a voter's disability.  Third and finally, assuming that Plaintiffs established a prima facie case of discrimination, their claim would nonetheless fail because Plaintiffs' proposed modification is not facially reasonable.  Because Plaintiffs have not demonstrated a substantial likelihood of success on the merits, a preliminary injunction is not warranted as to the Challenged Provisions.  Consequently, the Court declines to analyze Defendants' additional arguments or the remaining preliminary injunction factors.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction [Doc. 546] is **DENIED**.

**SO ORDERED** this 18th day of August, 2023.

J. P. BOULEE
United States District Judge