IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*, <br><br> *Plaintiffs*, <br><br> UNITED STATES OF AMERICA, <br><br> *Proposed Intervenor-Plaintiff* <br><br> v. <br><br> BRIAN KEMP, Governor of the State of Georgia, in his official capacity, *et al.*, <br><br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br> *Intervenor-Defendants.* | Civil Action No. 1:21-CV-01284-JPB |
| IN RE GEORGIA SENATE BILL 202 | Master Case No. 1:21-MI-55555-JPB |

**MEMORANDUM IN SUPPORT OF UNITED STATES'
MOTION TO INTERVENE**

Under Rule 24(a)(1) of the Federal Rules of Civil Procedure, the United

States respectfully moves to intervene in this lawsuit as Plaintiff-Intervenor. Fed. R. Civ. P. 24(a)(1). The United States has a statutory right to intervene under Section 902 of the Civil Rights Act of 1964. 42 U.S.C. § 2000h-2. Section 902 grants the United States an unconditional right to intervene in certain cases seeking relief from the alleged denial of equal protection of the laws under the Fourteenth Amendment if the Attorney General certifies, as he has here, that the case is one of general public importance. *Id.*

Intervention will not delay the case or prejudice any existing party. The Fourteenth Amendment intentional race discrimination claim in the United States' proposed Complaint in Intervention is identical to one of the claims already asserted by the AME Plaintiff group in this case and is akin to the statutory intentional race discrimination claim the United States has litigated under Section 2 of the Voting Rights Act in a related case. In light of the Court's December 22, 2023, Order in the related case, which suggested the Court may interpret recent Eleventh Circuit caselaw as precluding a discriminatory intent-based claim under Section 2, intervention will protect the United States' interest in litigating this intentional race discrimination case. For the reasons set forth below, the Court should grant the United States' motion.

**I.     BACKGROUND**

On June 25, 2021, the United States sued the State of Georgia, among other

State Defendants, under Section 2 of the Voting Rights Act of 1965. *See United States v. Georgia*, No. 21-CV-02575 (N.D. Ga. 2021) ("*United States v. Georgia*"). The United States' complaint alleged that certain provisions of SB 202, an omnibus election bill enacted in March 2021, were adopted with an intent to discriminate against Black voters. Compl., *United States v. Georgia*, ECF No. 1. Seven other cases challenging SB 202 under Section 2, the Constitution, and other statutes were filed in the Northern District of Georgia. The Court permitted the Republican National Committee and the Georgia Republican Party ("Intervenor Defendants") to intervene in each of the cases. The Court denied the State Defendants' motions to dismiss each of the eight cases.

With respect to the United States' suit, both State Defendants and Intervenor Defendants moved for dismissal, arguing that a standalone discriminatory purpose claim was not cognizable under Section 2 of the Voting Rights Act. *See* Mots. to Dismiss, *United States v. Georgia*, ECF Nos. 38, 39. Defendants asserted that the United States' complaint failed to state a claim because it purportedly failed to allege facts sufficient to prove a violation of Section 2's results standard. *Id*.

On December 9, 2021, the Court denied Defendants' motions. *United States v. Georgia*, 574 F. Supp. 3d 1245 (N.D. Ga. 2021). The Court explained that "[i]n *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, the Supreme Court of the United States identified a non-exhaustive list of factors that

courts can use to evaluate whether government action was undertaken with discriminatory intent." *Id.* at 1250 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977)). The Court found that because the "allegations in the [United States'] Complaint are consistent with the *Arlington Heights* factors and otherwise bear on the issue of intentional discrimination . . . the United States has stated a plausible discriminatory purpose claim." *Id.* at 1251 (citing *Chisom v. Roemer*, 501 U.S. 380, 394 n.21 (1991) for the proposition that a VRA Section 2 violation can be established by showing discriminatory intent or, alternatively, discriminatory results). The Court observed that the Supreme Court's decision in *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321 (2021), "reaffirm[ed] the practice of federal courts relying on the *Arlington Heights* framework to evaluate VRA § 2 discriminatory purpose claims." 574 F. Supp. 3d at 1251 n.3; *see also id.* at 1253 ("Presumably, the Supreme Court would have rejected the plaintiffs' discriminatory purpose claim if, as state defendants contend, such a claim were invalid as a matter of law.").

As an alternative ground for its opinion, the Court found that the United States' complaint pled sufficient facts to articulate a claim under Section 2's "totality of the circumstances" standard, referred to here as the results standard. *Id.* at 1251-52. The Court reasoned that, even if Defendants were correct that proving a violation of Section 2 required a showing of discriminatory results, the United

States had pled sufficient facts to satisfy that requirement. *Id*. Defendants moved for reconsideration of the order, and the Court denied the motion. *See* Order Den. Mot. for Recons., *United States v. Georgia*, ECF No. 94.

On December 23, 2021, the District Court consolidated for discovery the United States' case with the five other cases that brought race discrimination claims, including *Sixth District of the African Methodist Episcopal Church v. Kemp*, No. 1:21-CV-01284 (N.D. Ga. 2021) ("*AME*"),[1] because each of these lawsuits "involve virtually identical defendants and mostly the same facts and legal issues." *See* Order re Consolidation 7, *In re Georgia Senate Bill 202*, No. 21-mi-55555 (N.D. Ga. 2021) ("*In Re SB 202*"), ECF No. 1. Like the United States' proposed complaint in intervention, the *AME* case includes a claim challenging SB 202 as intentionally racially discriminatory in violation of the Equal Protection Clause. *See* Compl. ¶¶ 247-250, *AME*, ECF No. 1; *see also* [Proposed] Second Am. Compl. ¶¶ 325-328, *AME*, ECF No. 219-1.[2] Following consolidation, the parties conducted extensive fact and expert discovery, which closed in May 2023,

---

[1] The consolidated cases are *Sixth District of the African Methodist Episcopal Church, et al. v. Kemp, et al.*, 1:21-CV-01284; *The New Georgia Project, et al., v. Raffensperger, et al.*, 1:21-CV-01229; *Georgia State Conference of the NAACP, et al. v. Raffensperger, et al.*, 1:21-CV-01259; *The Concerned Black Clergy of Metropolitan Atlanta, Inc., et al. v. Raffensperger, et al.*, 1:21-CV-01728; and *Asian Americans Advancing Justice-Atlanta v. Raffensperger et al.*, 1:21-CV-01333.

[2] On January 18, 2024, the Court granted the AME Plaintiffs' motion to amend their complaint. *See* Order, *AME*, ECF No. 220.

with final depositions concluding in June 2023.

On May 18, 2023, State Defendants moved for judgment on the pleadings as to the United States' complaint, arguing that the Eleventh Circuit's recent decision in *League of Women Voters of Florida Inc. v. Florida Secretary of State*, 66 F.4th 905, 943-44 (11th Cir. 2023) ("*LWV*"), "clarifies" that plaintiffs may not bring "a purpose-only (or intent-only) Section 2 suit." State Defs.' Br. In Supp. of Mot. for J. on the Pleadings 2, *In Re SB 202*, ECF No. 549-1. On December 22, 2023, the Court denied State Defendants' motion for judgment on the pleadings. Order Den. Mot. for J. on the Pleadings, *In Re SB 202,* ECF No. 777. In that order, the Court explained that, under *LWV,* "the only permissible method of proving a § 2 violation is through a showing that the political processes are not equally open and that black voters have less opportunity than other members of the electorate to participate in the political process." *Id.* at 6. The Court went on to hold that State Defendants were not entitled to judgment on the pleadings because the United States had "pled sufficient facts to satisfy this standard." *Id.*

On October 30, 2023, State and Intervenor Defendants filed eight summary judgment motions in the consolidated cases, including motions seeking summary judgment on the United States' Section 2 claim. *See* State Defs.' Mot. for Summ. J. on Discriminatory-Intent Claims, *In Re SB 202,* ECF No. 759 ("State Defs. MSJ"); Intervenor Defs.' Mot. for Summ. J., *In Re SB 202*, ECF No. 761. Defendants

6

again asserted that, "as a matter of law, there is no cognizable stand-alone, discriminatory intent claim under… the Voting Rights Act." *Id.* at 27. The United States responded to the Defendants' summary judgment motions on January 19, 2024. Pls.' Opp. to State and Intervenor Defs.' Mot. for Summ. J. on Discriminatory Intent Claims, *In Re SB 202*, ECF No. 822 ("Pls.' Opp'n to MSJ").

## II.  LEGAL STANDARD

Under Rule 24(a)(1), on timely motion, a court must permit anyone to intervene who "is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Under these circumstances, a court has no discretion to deny the intervention. *See Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1322 (11th Cir. 2019); *see also L.W. ex rel. Williams v. Skrmetti*, No. 3:23-CV-00376, 2023 WL 3513302, at *1-3 (M.D. Tenn. May 16, 2023) (granting motion to intervene in its entirety because motion was timely and United States has a "widely recognized . . . unconditional right to intervene" under Section 902 of the Civil Rights Act of 1964).

The Eleventh Circuit considers the following factors when determining whether a motion to intervene is timely:[3]

> 1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene[;] 2. The extent of the prejudice that the existing

---

[3] The timeliness analysis is the same no matter what type of intervention is sought. *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1516 (11th Cir. 1983).

parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case[;] 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied[;] and 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017) (quoting *Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1478-79 (11th Cir. 1993), abrogated on other grounds by *Dillard v. Chilton Cnty. Comm'n,* 495 F.3d 1324 (11th Cir. 2007)) (alterations in original). The Eleventh Circuit has cautioned that analysis of timeliness requires "accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir.1989)). "'[A]bsolute measures of timeliness,' such as 'how far the litigation has progressed when intervention is sought' and 'the amount of time that may have elapsed since the institution of the action' are not to be relied upon." *Meek*, 985 F.2d at 1479 (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir.1977)).

In the Eleventh Circuit, courts apply a more lenient standard of timeliness when, as here, intervention is as of right under Rule 24(a). *See Stallworth*, 558 F.2d

8

at 266. [4] "The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene. In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right." *Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) (quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970)).

## III. ARGUMENT

### A. The United States Has an Unconditional Statutory Right to Intervene

Section 902 of the Civil Rights Act of 1964, as amended, grants the United States an unconditional right to intervene in certain cases seeking relief from the alleged denial of equal protection of the laws under the Fourteenth Amendment if the Attorney General certifies that the case is one of general public importance. 42 U.S.C. § 2000h-2; *see also* Fed. R. Civ. P. 24(a)(1). Section 902 provides that:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance. In such action the United States shall be

---

[4] The decisions of the former Fifth Circuit rendered before October 1, 1981 were adopted as binding precedent by the Eleventh circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

entitled to the same relief as if it had instituted the action. 42 U.S.C. § 2000h-2.

The Supreme Court has recognized that this statute entitles the United States to intervene in cases alleging a violation of the Equal Protection Clause of the Fourteenth Amendment. *See, e.g.*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009) (acknowledging that Section 902 allows the Attorney General to intervene in private equal protection suits); *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430-31 (1976) (holding that Section 902 authorizes the United States to continue as a party plaintiff despite the disappearance of the original plaintiffs).

Section 902 applies here, where both the AME Plaintiffs' complaint and the United States' proposed complaint in intervention allege that certain provisions of SB 202 were motivated by racially discriminatory intent in violation of the Fourteenth Amendment. And, as required by Section 902, the Attorney General has certified that this is a case of general public importance. *See* Ex. 1.

**B.     The Motion to Intervene Is Timely**

Whether a motion to intervene is timely, under Rule 24, "is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Stallworth*, 558 F.2d at 263 (quoting *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1325 (5th Cir. 1977)); *see also Cameron v. EMW Women's Surgical Ctr.*,

10

595 U.S. 267, 279-81 (2022). "The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene." *Comm'r, Ala. Dep't of Corr*, 918 F.3d at 1171 (quoting *McDonald*, 430 F.2d at 1073).

Here, the *AME* Plaintiffs have consented to the United States' intervention, and intervention will not prejudice Defendants in any way. Intervention will not expand the scope of the litigation because the claim advanced in the United States' proposed complaint in intervention—race discrimination in violation of the Equal Protect Clause—is one of the claims in the *AME* case, and the provisions of SB 202 that the United States proposes to challenge are also challenged by other Plaintiffs in the consolidated cases. As the *AME* case has "mostly the same facts and legal issues," the same judge, and nearly identical defendant parties and counsel, Defendants will not be required to defend against any claims or legal theories that they have not already been defending in these consolidated cases. Order re Consolidation 7, *In Re SB 202*, ECF No. 1.

Nor will intervention delay the litigation. The United States' case was already consolidated with the AME case for purposes of conducting discovery, and Plaintiffs and Defendants in all of the consolidated cases coordinated discovery and briefing. The United States has actively pursued its Section 2 intentional discrimination claim throughout the litigation. Because demonstrating intentional

11

racial discrimination in this case is the same whether under the Constitution or Section 2, intervention will not require any new discovery or legal briefing, and the substance of the United States' arguments will not change. *See Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970) (affirming District Court's grant of motion to intervene when, "[a]t the time of the intervention, there had been no legally significant proceedings . . . other than completion of discovery and a pretrial [determination] that . . . there were to be two separate suits"); *McDonald*, 430 F.2d at 1072 (reversing District Court's denial of motion to intervene when "[t]he timing of [the intervenor]'s motion to intervene could not have interfered substantially with the orderly processes of the court, for [the intervenor] did not seek to reopen or relitigate any issue which had previously been determined").

The Supreme Court recently held that the timeliness of intervention "should be assessed in relation to [the] point in time" when the "need to seek intervention" arose. *Cameron*, 595 U.S. at 280. Here, the United States moved to intervene promptly after the Court's December 22 order interpreting *LWV*, which suggested that proving intentional discrimination under the *Arlington Heights* framework may not be sufficient to establish a Section 2 violation in this case. *See Salvors*, 861 F.3d at 1294 (holding that District Court abused its discretion by denying as untimely a motion to intervene in thirty-three-year long litigation when "[t]he reason for [the intervenor]'s intervention . . . arose only two weeks before it sought

12

to intervene"); *see also United States v. Georgia*, 574 F. Supp. 3d at 1251. The United States has consistently argued, including in response to the Defendants' motions for summary judgment, that a violation of Section 2 can be established by a showing of discriminatory intent consistent with a constitutional violation. *See* Pls.' Opp'n to MSJ 17-21. The United States' position is supported by federal caselaw, including in the Eleventh Circuit, that has repeatedly analyzed Section 2 intent claims according to the legal and evidentiary framework laid out in *Arlington Heights*. *See* Pls.' Opp'n to MSJ at 17-19 (citing cases). Nevertheless, the Court's December 22 order interpreting the *LWV* decision raises the possibility that a showing of discriminatory intent under *Arlington Heights* would not be sufficient to prove a Section 2 statutory violation in this case.

    Defendants will not suffer any prejudice from the United States' intervention, but the United States will be prejudiced by a denial of its motion. So long as the United States could protect its interest in enforcing the nation's voting rights laws and protecting the right to vote free from racial discrimination through its Section 2 challenge to SB 202, it had no "need to seek intervention" in another case to challenge SB 202 under the Equal Protection Clause. *See Cameron*, 595 U.S. at 280. The United States has only ever sought to prove a discriminatory intent-based claim in this case, not a claim under Section 2's distinct results-based standard. *See, e.g.*, Compl. ¶ 161, *United States v. Georgia*, ECF No. 1; U.S.

13

Opp'n to Defs.' Mot. to Dismiss, *United States v. Georgia*, ECF No. 58; Am. Compl. ¶ 161, *United States v. Georgia*, ECF No. 139; United States' Opp'n to State Defs.' And Intervenor Defs.' Mot. for J. on the Pleadings 8, *In Re SB 202*, ECF No. 573 ("Here, the United States is pursuing a Section 2 intent claim."); Pls.' Opp'n to MSJ 2 n.1. The Court twice rejected the State Defendants' argument that the United States' intentional discrimination claim was not cognizable under Section 2. *See supra*. Although the United States does not believe *LWV* should be read to alter the standard for proving intent-based claims under Section 2, *see* Pls.' Opp'n to MSJ 18-21, intervention under Section 902 of the Civil Rights Act will allow the United States to continue to litigate this intentional racial discrimination case even if the Court holds that a statutory claim relying on proof of intentional discrimination is not cognizable.

## IV. CONCLUSION

Allowing intervention will help ensure the efficient and just adjudication of the United States' claim, and will not result in surprise, delay, or changed circumstances for Defendants. Under these conditions, where the United States has a statutory right to intervene, the United States respectfully requests that the Court grant its motion to intervene. A proposed order is attached.

Dated: February 6, 2024

RYAN K. BUCHANAN
United States Attorney
Northern District of Georgia


*/s/ Aileen Bell Hughes*
AILEEN BELL HUGHES
Georgia Bar No. 375505
Assistant U.S. Attorney
Office of the United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
Phone: (404) 581-6000
Fax: (404) 581-6181

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General

SPARKLE SOOKNANAN
Principal Deputy Assistant Attorney
    General
Civil Rights Division

*/s/ J. Eric Rich*
ALBERTO RUISANCHEZ
JOHN A. RUSS IV
JASMYN G. RICHARDSON
RACHEL R. EVANS
ERNEST A. MCFARLAND
MAURA EILEEN O'CONNOR
ELIZABETH M. RYAN
SEJAL JHAVERI
J. ERIC RICH
JUDY BAO
BRIAN REMLINGER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Phone: (800) 253-3931
Fax: (202) 307-3961
j.rich@usdoj.gov

15

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(D)

Pursuant to Local Rule 7.1(D), I certify that the foregoing document was prepared in Times New Roman 14-point font in compliance with Local Rule 5.1(C).

*/s/ John A. Russ IV*
JOHN A. RUSS IV
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2024, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ John A. Russ IV*
JOHN A. RUSS IV
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice