# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.:<br>1:21-MI-55555-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRIAN KEMP, Governor of the State of Georgia, in his official capacity, *et al.*,<br><br>*Defendants*. | Civil Action File No.:<br>1:21-CV-01284-JPB |

## STATE DEFENDANTS' RESPONSE IN OPPOSITION TO UNITED STATES' MOTION TO INTERVENE

## INTRODUCTION

When the United States filed its complaint claiming that portions of SB 202 violated Section 2 of the Voting Rights Act, it relied exclusively on an intent-only claim. At that time, several other plaintiffs had already filed complaints claiming, among other things, that portions of SB 202 violated the Fourteenth Amendment for having a discriminatory purpose and effect. But the United States did not seek to intervene in any of those cases. Rather, the United States allowed the various cases to proceed through years of discovery and motions practice.

Throughout that time, however, the United States has been on notice that there is no support for intent-only claims under Section 2 of the Voting Rights Act. But the United States only filed its motion to intervene, (Doc. 838), months after State Defendants filed extensive motions for summary judgment on all claims contained in the consolidated cases. That delay—and serious problems intervention would cause at this late hour—is reason enough to deny the intervention request.

But even if that inexplicable delay were not enough, the Court should deny the intervention request because the United States is attempting to use a procedural mechanism that permits it to *join* an existing case as a tool to bring what amounts to an entirely *new* case in an existing case number. While the Attorney General has a broad right to intervene under 42 U.S.C. § 2000h-

1

2, that right is still subject to general rules of intervention. Because this motion is not timely and because it would drastically expand this existing case, this Court should deny it to allow the parties to proceed with summary-judgment briefing. Had the United States sought this relief earlier, the outcome may have been different. But the United States chose its litigation strategy and should not be permitted to expand proceedings at the eleventh hour.

## BACKGROUND

### I. Procedural background.

The Sixth District of the African Methodist Episcopal Church and other Plaintiffs sued the Governor and Secretary of State regarding the provisions of SB 202 on March 29, 2021, just four days after the bill was signed into law. *Sixth District AME v. Kemp*, Case No. 1:21-cv-01284-JPB, Doc. 1 (N.D. Ga. 2021). While the *Sixth District AME* case was one of many cases, the United States Department of Justice (DOJ) did not file its own case against SB 202 until June 25, 2021, when it filed its intent-only claim under Section 2 of the Voting Rights Act. *U.S. v. Georgia*, Case No. 1-21-cv-02575-JPB, Doc. 1 (N.D. Ga. 2021). This Court consolidated six of the cases challenging SB 202 on December 23, 2021, including the DOJ case and the *Sixth District AME* case.

From the beginning of DOJ's case, State Defendants have asserted that DOJ cannot pursue an intent-only claim under Section 2. That was the showing in State Defendants' motion to dismiss filed on July 28, 2021 (*U.S.

2

Doc. 38) and the later motion for judgment on the pleadings filed on May 18, 2023 (*SB 202* Doc. 549). State Defendants continued pressing that argument in the motions for summary judgment filed in this case on October 30, 2023 (*SB 202* Doc. 759). DOJ agrees that State Defendants have made these points for almost three years. *See* (*SB 202* Doc. 838-1, pp. 3–7). And DOJ has steadfastly opposed those arguments at every turn. *See, e.g.*, (*U.S.* Doc. 58), (*SB 202* Doc. 573). But State Defendants have repeatedly shown that binding Supreme Court and Eleventh Circuit precedent confirms that Section 2 does not support an intent-only claim.

It was only after this Court's ruling on December 22, 2023, that DOJ apparently became concerned that it may be wrong and that the law may be just as State Defendants have urged from the beginning, precluding their intent-only claim. (*SB 202* Doc. 838-1, p. 12). DOJ then filed the current motion almost 50 days later in an apparent attempt to get a second bite at the apple.

**II.     DOJ's proposed new complaint.**

DOJ claims that there is no prejudice because "intervention will not require any new discovery or legal briefing." (*SB 202* Doc. 838-1, p. 12). But DOJ is not seeking to join the *Sixth District AME* Complaint—instead it is attempting to import much of its current complaint, including parties unnamed by the Sixth District AME, into a new case number.

3

Not only is DOJ doing more than just joining an existing case, it is also making a number of new factual allegations that likely require additional discovery. The proposed new DOJ complaint, (*SB 202* Doc. 838-3), changes the baseline Census numbers it relies on for analysis (¶¶ 17, 27–32), changes the voter turnout allegations (¶¶ 19–21), adds allegations about the use of absentee ballots by race in November 2022 (¶ 25), adds allegations about the Secretary conducting an analysis of voter-registration records during the 2021 session (¶ 54), adds allegations about specific individuals in various categories regarding their driver's license numbers (¶¶ 56–59), adds allegations about the rejection rate for Black voters' absentee-ballot applications (¶ 65), adds allegations about the racial makeup of voters returning absentee ballots (¶ 72), adds allegations about changes in drop box availability for Black voters (¶ 78), adds allegations about the reasons for line-relief activities carried out by Black-led organizations (¶¶ 79, 83), adds allegations about line length in majority-Black areas (¶¶ 81–82), adds allegations about expected rates of use by Black voters of provisional ballots (¶ 88), adds allegations that Georgia legislators "targeted practices on which Black voters relied disproportionately" (¶ 147), and adds allegations that "legislators were motivated, at least in part, by a desire to impede Black voters' ability to participate in the political process" (¶ 160). The proposed complaint in intervention also replaces allegations that

4

courts have recognized racially polarized voting in Georgia with allegations that racially polarized voting exists in Georgia (¶¶ 22, 144(b)).

### III. The Attorney General's certificate.

As required by 42 U.S.C. § 2000h-2, DOJ includes a certificate from Attorney General Garland certifying the *Sixth District AME* case as one of "general public importance" on February 5, 2024. (*SB 202* Doc. 838-2). DOJ and the Attorney General do not explain why only the *Sixth District AME* case was certified when there are other cases involving similar claims among the consolidated cases. This raises the question of whether all SB 202 cases are of general public importance or whether there is something unique about the *Sixth District AME* case.

Further, the Attorney General did not just learn about the *Sixth District AME* case or claims against SB 202 because he has taken a public position on SB 202 for years. At the press conference announcing the filing of the *U.S. v. Georgia* case in 2021, the Attorney General explained his view that SB 202's "provisions make it harder for people to vote. The complaint alleges that the state enacted those restrictions with the purpose of denying or abridging the right to vote on account of race or color." The Hon. Merrick Garland, Remarks as Delivered, June 25, 2021, *available at* https://www.justice.gov/opa/speech/attorney-general-merrick-b-garland-delivers-remarks-announcing-lawsuit-against-state  In spite of this knowledge

5

and public position about Georgia's election laws, the Attorney General did not seek to intervene or certify any other SB 202 cases while those cases proceeded.

## ARGUMENT AND CITATION OF AUTHORITY

To intervene as of right, DOJ must make (1) a timely motion and (2) be given an unconditional right to intervene by statute. Fed. R. Civ. P. 24(a)(1). State Defendants do not contest that 42 U.S.C. § 2000h-2 provides the Attorney General with a general right to intervene. *See* 6 Moore's Federal Practice – Civil § 24.02 (noting Attorney General can seek "whatever relief is desired and may choose relief beyond the original scope of the complaint"). But that does not excuse an untimely motion.

### I.     DOJ's motion is not timely.

DOJ correctly identifies the standard for determining timeliness in the Eleventh Circuit, which consists of four distinct factors, but none of those factors favor their motion:

> 1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene[] 2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case[] 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied[] and 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

6

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017) (quoting *Meek v. Metro. Dade Cnty.*, Fla., 985 F.2d 1471, 1478–79 (11th Cir. 1993), ab*rogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007)) (alterations in original).

First, DOJ has known for years that it has a significant legal problem in relying on intent as its sole claim under Section 2 because State Defendants have made numerous arguments to that effect since July 2021.[1] In that time, DOJ has steadfastly chosen not to amend its complaint or otherwise deviate from its chosen path of pursuing a single claim under the VRA. It has also known of the other cases challenging SB 202 on intentional discrimination grounds for a similar period of time, if not longer. DOJ could have chosen to intervene at any point during that period but chose not to.

Second, while the prejudice to State Defendants is reduced by the consolidation of discovery in the various cases, State Defendants are still prejudiced as DOJ seeks to add *new* allegations in its proposed complaint in intervention. DOJ chose to wait until after filing its responses to State Defendants' various summary-judgment motions before asserting new facts in

---

[1] The lack of an intent-only claim under Section 2 is also consistent with other scholarly work on the topic. *See, e.g.*, Amandeep S. Grewal, *Discriminatory Intent Claims Under Section 2 of the Voting Rights Act*, 2 Fordham L. Voting Rts. & Democracy F. 1 (2023) (explaining general rejections of the intent-only claims and urging Congress to change the text of the VRA to add such a claim).

its complaint in intervention and adding entirely new parties to the *Sixth District AME* case. That leaves State Defendants unable to address those claims at summary judgment.

At the very least, the proposed new allegations call into question whether there needs to be additional discovery or further changes to the summary-judgment briefing schedules to allow State Defendants to respond to DOJ's new allegations in their forthcoming replies.[2]

Third, DOJ will suffer no prejudice if the petition is denied. It chose a litigation strategy, stuck with that strategy for years, and now apparently regrets that choice. But there is no shortage of cases making claims against SB 202 even if this Court properly dismisses DOJ's intent-only claim at summary judgment.

Finally, the circumstances here militate against a determination the application was timely. Again, DOJ carefully chose its litigation strategy against the State of Georgia. Numerous plaintiffs have filed a litany of claims challenging SB 202 over the intervening period. To allow DOJ to make this late entrance into another case would be unusual as an effort to save its ability to sue a sovereign state. At the very least, this Court should limit the scope of

---

[2] At the very least, if the Court grants intervention, State Defendants must be able to address these new allegations in their summary judgment replies without triggering a sur-reply from DOJ.

DOJ's intervention into the *Sixth District AME* case. *See, e.g., Turner v. Goolsby*, 255 F. Supp. 724, 732-33 (S.D. Ga. 1965) (limiting intervention to particular issues).

## CONCLUSION

The cases against SB 202 should proceed through summary judgment without injecting issues that should have been raised earlier. This Court should deny DOJ's motion as untimely.

Respectfully submitted this 20th day of February, 2024.

>	Christopher M. Carr
>	Attorney General
>	Georgia Bar No. 112505
>	Bryan K. Webb
>	Deputy Attorney General
>	Georgia Bar No. 743580
>	Russell D. Willard
>	Senior Assistant Attorney General
>	Georgia Bar No. 760280
>	**State Law Department**
>	40 Capitol Square, S.W.
>	Atlanta, Georgia 30334

Gene C. Schaerr*
Special Assistant Attorney General
Erik Jaffe*
H. Christopher Bartolomucci*
Donald M. Falk*
Brian J. Field*
Cristina Martinez Squiers*
Edward H. Trent*
Nicholas P. Miller*
Annika Boone Barkdull*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
*Admitted pro hac vice*

*/s/Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Donald P. Boyle, Jr.
Georgia Bar No. 073519
dboyle@taylorenglish.com
Daniel H. Weigel
Georgia Bar No. 956419
dweigel@taylorenglish.com

10

**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for State Defendants*

11

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing brief was prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/Bryan P. Tyson*
Bryan P. Tyson

12