**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

---

IN RE GEORGIA SENATE BILL 202

Master Case No.:
1:21-mi-55555-JPB

---

**INTERVENORS' REPLY BRIEF IN SUPPORT OF MOTION FOR**
**SUMMARY JUDGMENT**

Gilbert C. Dickey*
Conor D. Woodfin*
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
(703) 243-9423

Tyler R. Green*
Consovoy McCarthy PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423

*admitted pro hac vice

John E. Hall, Jr.
  Georgia Bar No. 319090
William Bradley Carver, Sr.
  Georgia Bar No. 115529
Baxter D. Drennon
  Georgia Bar No. 241446
Hall Booth Smith, P.C.
191 Peachtree Street NE, Suite 2900
Atlanta, Georgia 30303
(404) 954-5000
(404) 954-5020 (Fax)

*Counsel for Intervenors*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................. 1

ARGUMENT ......................................................................................... 1

I.    Plaintiffs have not shown a violation of their right to vote under *Anderson-Burdick*. .................................................................... 1

II.   Plaintiffs' racial-discrimination claims rely on legal errors and unreasonable inferences. ............................................................ 5

III.  Plaintiffs have not shown that disabled voters lack meaningful access to voting opportunities. ....................................................10

IV.  Plaintiffs have not shown that the gift-giving ban is unconstitutional. .........................................................................13

    A.   Plaintiffs' food distribution is not expressive conduct. ...................13

    B.   Plaintiffs have not shown that strict scrutiny applies. ...................16

    C.   The gift-giving ban is narrowly tailored to protect voters and polling places. .......................................................................18

V.   The Court should reject Plaintiffs' recently discredited application of the materiality provision. ......................................................21

    A.   The Materiality Provision does not reach ballot-casting rules. ......21

    B.   Plaintiffs' §10101 claim fails for other independent reasons. .........23

    C.   Plaintiffs have no evidence that the birthdate requirement discriminates on the basis of race. ....................................................25

CONCLUSION ................................................................................... 28

CERTIFICATE OF COMPLIANCE ................................................. 29

CERTIFICATE OF SERVICE ........................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez,*
    585 U.S. 579 (2018)................................................................ 7, 11

*Am. Ass'n of People with Disabilities v. Harris,*
    647 F.3d 1093 (11th Cir. 2011) ........................................15

*Anderson v. Celebrezze,*
    460 U.S. 780 (1983)................................................................ 2, 21

*Bircoll v. Miami-Dade Cnty.,*
    480 F.3d 1072 (11th Cir. 2007) ........................................15

*Brnovich v. Democratic Nat'l Comm.,*
    141 S. Ct. 2321 (2021) .......................................................... 9, 12

*Broyles v. Texas,*
    618 F. Supp. 2d 661 (S.D. Tex. 2009)..............................34

*Burdick v. Takushi,*
    504 U.S. 428 (1992)..........................................................passim

*Burson v. Freeman,*
    504 U.S. 191 (1992)..........................................................passim

*Citizens for Police Accountability Pol. Comm. v. Browning,*
    572 F.3d 1213 (11th Cir. 2009) ................................... 22, 23

*City of Boerne v. Flores,*
    521 U.S. 507 (1997)..............................................................32

*City of Carrollton Branch of the N.A.A.C.P. v. Stallings,*
    829 F.2d 1547 (11th Cir. 1987) ........................................10

*City of Renton v. Playtime Theatres, Inc.,*
    475 U.S. 41 (1986)................................................................20

*Clark v. Cmty. for Creative Non-Violence,*
    468 U.S. 288 (1984)......................................................... 17, 20

*Common Cause v. Thomsen,*
    574 F. Supp. 3d 634 (W.D. Wis. 2021) ............................30

*Common Cause/Ga. v. Billups,*
    554 F.3d 1340 (11th Cir. 2009) .................................................................. 5, 7

*Crawford v. Marion Cnty. Election Bd.,*
    472 F.3d 949 (7th Cir. 2007) ........................................................................31

*Crawford v. Marion Cnty. Election Bd.,*
    553 U.S. 181 (2008) ........................................................................... 4, 5, 31

*D'Onofrio v. Costco Wholesale Corp.,*
    964 F.3d 1014 (11th Cir. 2020) ....................................................................16

*Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.,*
    950 F.3d 790 (11th Cir. 2020) ........................................................................5

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council,*
    485 U.S. 568 (1988) ......................................................................................33

*Fair Fight Action, Inc. v. Raffensperger,*
    634 F. Supp. 3d 1128 (N.D. Ga. 2022) .........................................................14

*First Vagabonds Church of God v. City of Orlando,*
    638 F.3d 756 (11th Cir. 2011) ....................................................... 20, 21, 22

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ., Inc.,*
    91 F. Supp. 3d 1265 (S.D. Fla. 2015) ...........................................................1

*Fla. State Conf. of N.A.A.C.P. v. Browning,*
    522 F.3d 1153 (11th Cir. 2008) ............................................................ 28, 29

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale,*
    11 F.4th 1266 (11th Cir. 2021) ....................................................................17

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale,*
    901 F.3d 1235 (11th Cir. 2018) .............................................................. 17, 18

*Frank v. Lee,*
    84 F.4th 1119 (10th Cir. 2023) ....................................................................23

*Gayle v. Meade,* No. 20-21553,
    2020 WL 2744580 (S.D. Fla. May 22, 2020) .................................................5

iv

*Greater Birmingham Ministries v. Sec'y of State for State of Ala.*,
   992 F.3d 1299 (11th Cir. 2021) ..................................................................passim

*Ind. Democratic Party v. Rokita*,
   458 F. Supp. 2d 775 (S.D. Ind. 2006) ...............................................31

*Jacobson v. Fla. Sec'y of State*,
   974 F.3d 1236 (11th Cir. 2020) ........................................................22

*Karantsalis v. City of Miami Springs*,
   17 F.4th 1316 (11th Cir. 2021) ........................................................14

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
   66 F.4th 905 (11th Cir. 2023) ........................................... 9, 11, 23, 25

*Lee v. Va. State Bd. of Elections*,
   843 F.3d 592 (4th Cir. 2016) ...........................................................11

*Libertarian Party of Ala. v. Merrill*, No. 20-13356,
   2021 WL 5407456 (11th Cir. Nov. 19, 2021) ....................................6

*Martin v. Crittenden*,
   347 F. Supp. 3d 1302 (N.D. Ga. 2018) ........................................ 29, 30

*Mays v. LaRose*,
   951 F.3d 775 (6th Cir. 2020) .............................................................2

*McDonald v. Bd. of Election Comm'rs of Chi.*,
   394 U.S. 802 (1969) ...................................................................... 2, 3

*Migliori v. Cohen*,
   36 F.4th 153 (3d Cir. 2022) .............................................................26

*Minn. Voters All. v. Mansky*,
   585 U.S. 1 (2018) ...................................................................... 19, 23

*Munro v. Socialist Workers Party*,
   479 U.S. 189 (1986) ................................................................... 24, 25

*N.C. State Conf. of NAACP v. McCrory*,
   831 F.3d 204 (4th Cir. 2016) ...................................................... 10, 11

*Nev. Dep't of Hum. Res. v. Hibbs*,
  538 U.S. 721 (2003)................................................................ 31, 32

*New Ga. Project v. Raffensperger*,
  976 F.3d 1278 (11th Cir. 2020) ............................................. 3, 5, 6

*Nunez v. Superior Oil Co.*,
  572 F.2d 1119 (5th Cir. 1978) .......................................................1

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
  557 U.S. 193 (2009).............................................................. 32, 33

*Org. for Black Struggle v. Ashcroft*,
  978 F.3d 603 (8th Cir. 2020) ........................................................2

*Penn. State Conf. of NAACP Branches v. Sec'y Commonwealth of Penn.*,
  97 F.4th 120 (3d Cir. 2024) ...................................................passim

*Penn. State Conf. of NAACP Branches v. Sec'y Commonwealth of Penn.*,
  Doc. 265, No. 23-3166 (3d Cir. Apr. 30, 2024)..............................28

*People First of Ala. v. Merrill*,
  491 F. Supp. 3d 1076 (N.D. Ala. 2020) ........................................15

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006)........................................................................24

*Ritter v. Migliori*,
  142 S. Ct. 1824 (2022) .......................................................... 26, 30

*Ritter v. Migliori*,
  143 S. Ct. 297 (2022)..................................................................26

*Rumsfeld v. FAIR*,
  547 U.S. 47 (2006)......................................................................17

*Russell v. Lundergan-Grimes*,
  784 F.3d 1037 (6th Cir. 2015) .....................................................24

*Schirmer v. Edwards*,
  2 F.3d 117 (5th Cir. 1993) ..........................................................23

*Schwier v. Cox,*
    412 F. Supp. 2d 1266 (N.D.Ga.2005) ...............................................29

*Schwier v. Cox,*
    439 F.3d 1285 (11th Cir. 2006)........................................................29

*Shelby Cnty. v. Holder,*
    570 U.S. 529 (2013)........................................................ 31, 32, 33

*Shotz v. Cates,*
    256 F.3d 1077 (11th Cir. 2001) .......................................................16

*South Carolina v. Katzenbach,*
    383 U.S. 301 (1966)........................................................................32

*Stein v. Ala. Sec'y of State,*
    774 F.3d 689 (11th Cir. 2014) ........................................................21

*Swain v. Junior,*
    958 F.3d 1081 (11th Cir. 2020) .........................................................6

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ......................................................... 3, 4

*Texas v. Johnson,*
    491 U.S. 397 (1989)........................................................................16

*Timmons v. Twin Cities Area New Party,*
    520 U.S. 351 (1997)........................................................................22

*Todd v. Carstarphen,*
    236 F. Supp. 3d 1311 (N.D. Ga. 2017) ...........................................13

*Tully v. Okeson,*
    977 F.3d 608 (7th Cir. 2020) .............................................................3

*UFCWL v. City of Sidney,*
    364 F.3d 738 (6th Cir. 2004) ..........................................................18

*United States v. Mississippi,*
    380 U.S. 128 (1965)................................................................. 29, 31

*United States v. O'Brien,*
  391 U.S. 367 (1968)............................................................................21

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
  429 U.S. 252 (1977)..............................................................................8

*Vote.Org v. Callanen,*
  89 F.4th 459 (5th Cir. 2023) ................................................... 32, 33

*Voting for Am., Inc. v. Steen,*
  732 F.3d 382 (5th Cir. 2013) ............................................................16

**Statutes**

42 U.S.C. §12132 ...................................................................................12

52 U.S.C. §10101 .............................................................................passim

52 U.S.C. §10301 ...................................................................................10

Ga. Code §21-2-220...............................................................................11

Ga. Code §21-2-381...............................................................................11

Ga. Code §21-2-385......................................................................... 11, 24

**Other Authorities**

*Shanghai, Merriam-Webster.com Dictionary,* https://perma.cc/Q2DS-VWEZ..8

**Rules**

11th Cir. Internal Operating Procedure 36.2 .......................................4

# INTRODUCTION

Plaintiffs insist their claims are "fact-driven," "fact-intensive," and "fact-specific." *E.g.*, Doc. 822 at 15; Doc. 824 at 11. But insistence is not evidence. Many of the material facts are undisputed. And many of the disputed facts are not material. In fact, most of the material disputes at this stage are legal, not factual. For at least some claims, Plaintiffs appear to acknowledge as much. *See, e.g.*, Doc. 822 at 33 ("The State does not contest the facts underlying this conclusion but contends that they are insufficient to support a finding of discriminatory purpose….").

Resolving legal disputes at this stage will likely resolve a claim entirely, or it will narrow the scope of admissible evidence to the issues on which there are factual disputes. And in non-jury cases "the Court may make factual determinations and draw inferences at the summary judgment" when "a trial on the merits would reveal no additional data nor aid the determination." *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ., Inc.*, 91 F. Supp. 3d 1265, 1273 (S.D. Fla. 2015) (cleaned up) (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978)), *aff'd*, 830 F.3d 1242 (11th Cir. 2016). Plaintiffs' misunderstanding of the law dooms their claims. For that reason, the Court should grant summary judgment in favor of Defendants.

# ARGUMENT

## I.   Plaintiffs have not shown a violation of their right to vote under *Anderson-Burdick*.

Plaintiffs have not shown that Georgia's laws impose "severe" burdens on the right to vote. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Nor have they shown that the election regulations are anything but "reasonable,

nondiscriminatory restrictions" that further "the State's important regulatory interests." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). For several reasons, Plaintiffs' responses do not rehabilitate their *Anderson-Burdick* claims.

*First*, Plaintiffs' challenges to absentee-voting rules are subject to rational-basis review. Those rules are a degree removed from "the right to vote" itself. *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807 (1969). Plaintiffs don't dispute that "there is no constitutional right to an absentee ballot." *Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020). That's unsurprising because, "[a]s other courts have stated, 'as long as the state allows voting in person, there is no constitutional right to vote by mail.'" *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 607 (8th Cir. 2020) (collecting cases). "It is thus not the right to vote that is at stake … but a claimed right to receive absentee ballots." *McDonald*, 394 U.S. at 807; *see also Tully v. Okeson*, 977 F.3d 608, 611 (7th Cir. 2020) ("[T]he Supreme Court told us that the fundamental right to vote does not extend to a claimed right to cast an absentee ballot…."). "Georgia has provided numerous avenues to mitigate chances that voters will be unable to cast their ballots." *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1281 (11th Cir. 2020). So the absentee-ballot rules do "not implicate the right to vote at all." *Id.*

Citing nothing, Plaintiffs suggest the Supreme Court abrogated *McDonald* because that case "predates *Anderson*, *Burdick*, *Crawford*, and their progeny." Doc. 825 at 5-6. But the Supreme Court "has never revisited *McDonald*," and other circuits have thus rejected attempts to disregard

"*McDonald* for being too aged." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 405 (5th Cir. 2020). In *Burdick*, the Supreme Court even cited *McDonald* for the proposition that "the mere fact that a State's system 'creates barriers tending to limit the field of candidates from which voters might choose does not of itself compel close scrutiny.'" *Burdick*, 504 U.S. at 433 (cleaned up) (citing *McDonald*, 394 U.S. 802). *McDonald* is still binding precedent. And "*McDonald* directs [the Court] to review only for a rational basis" laws that "burden[] only [Plaintiffs'] asserted right to an absentee ballot." *Tex. Democratic Party*, 961 F.3d at 403, 406.

*Second*, Plaintiffs continue to rely on idiosyncratic burdens of individual voters. For example, they claim the drop-box provisions burden the right to vote because one voter "had to take time off work to vote by drop box." Doc. 829 at 40. Another voter "had to drive to a location 25 minutes away on Mother's Day to cast her primary ballot." *Id.* And another voter who "was injured and on crutches" claimed to be "unable to vote in person" and didn't want to drive to a drop box. *Id.* at 41. But these facts don't show that "all" voters or even "most" voters experienced a "significant increase over the usual burdens of voting" because of the challenged laws. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008) (plurality op.); *see also Burdick*, 504 U.S. at 190 (upholding state law "despite the fact that it prevented a significant number of 'voters from participating in Hawaii elections in a meaningful manner'"). That some courts have looked at burdens on "identifiable subgroups" is no answer. Doc. 825 at 9-10. For all their talk of "identifiable subgroups," Plaintiffs don't actually identify a subgroup for their *Anderson-Burdick* claims. The only thing

Plaintiffs' identified voters have in common is that they experienced some event "'arising from life's vagaries'" that happened to coincide with the election, which does "not 'raise any question about the constitutionality of' the Georgia statute." *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1354 (11th Cir. 2009) (quoting *Crawford*, 553 U.S. at 197).

*Third*, Plaintiffs have not shown "severe" burdens on the right to vote. *Burdick*, 504 U.S. at 434. Because they can't distinguish *New Georgia Project,* Plaintiffs try to argue that the case is not precedential. They claim the decision is "unpublished" while citing the Federal Reporter that the decision *is published in*. Doc. 825 at 10 n.3. "Under the law of [the Eleventh] Circuit, published opinions are binding precedent." 11th Cir. Internal Operating Procedure 36.2. Plaintiffs confuse the footnote in *New Georgia Project* for a remark about the precedential value of the case. But that footnote merely references the principle that stay opinions need not be vacated if the case becomes moot, because stay motions have "no res judicata" effect. *See New Ga. Project*, 976 F.3d at 1280 (citing *Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, 950 F.3d 790, 795 (11th Cir. 2020)). A "published Eleventh Circuit opinion" reviewing "a motion to stay the District Court's preliminary injunction" is still "binding" on lower courts. *Gayle v. Meade*, No. 20-21553, 2020 WL 2744580, at \*12 (S.D. Fla. May 22, 2020) (citing *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020)).

Under that binding precedent, Georgia's "numerous avenues" to vote "mitigate chances that voters will be unable to cast their ballots." *New Ga. Project*, 976 F.3d at 1281. "[N]o one is 'disenfranchised'" by "reasonable and

nondiscriminatory" laws such as an "absentee ballot deadline." *Id.* at 1281-82. And the fact that the laws require voters to "take reasonable steps and exert some effort to ensure that their ballots are submitted on time, whether through absentee or in-person voting," does not mean those laws impose an undue burden. *Id.* at 1282. That is true even "if some ballots are likely to be rejected because of a rule." *Id.* at 1281. For those reasons, Georgia's election rules do "not implicate the right to vote at all." *Id.* That is true "as a legal matter," *id.*, which means summary judgment is appropriate. Plaintiffs assert that the *Anderson-Burdick* test is "fact-driven." Doc. 825 at 6. But that's not a free pass to trial. *See Libertarian Party of Ala. v. Merrill*, No. 20-13356, 2021 WL 5407456, at *10 (11th Cir. Nov. 19, 2021) (affirming the dismissal of *Anderson-Burdick* claims on summary judgment). The balancing of the burdens and state interests is a legal question, and Plaintiffs' evidence does not overcome Georgia's "weighty interests" justifying the challenged laws. *Common Cause/Ga.*, 554 F.3d at 1353. Summary judgment is thus appropriate on the *Anderson-Burdick* claims.

## II. Plaintiffs' racial-discrimination claims rely on legal errors and unreasonable inferences.

Plaintiffs try to craft a "mosaic of circumstantial evidence that supports the inference of discriminatory intent." Doc. 822 at 74. But the foundation of Plaintiffs' depiction is flawed. They continue to invoke outdated history, draw unreasonable inferences from "codewords," rely on out-of-circuit precedent, and misconstrue Supreme Court cases while ignoring the presumption of legislative good faith.

*First*, Plaintiffs continue to rely on outdated history. But "the presumption of legislative good faith" is "not changed" even "by a finding of past discrimination." *Abbott v. Perez*, 585 U.S. 579, 603 (2018). In its preliminary-injunction motion, the United States discussed the "legacy of Georgia's history of discrimination" at length. Doc. 566-1 at 4-5, 41-44, 58-61. It argued that history condemned the law on its face and was also relevant "because of its lasting effects on socioeconomic conditions and political participation." Doc. 566-1 at 59. At summary judgment, the United States all but abandons those arguments. *See* Doc. 96 n.24, 129 n.35 (discussing "the State's long history of official discrimination" in passing).

The private plaintiffs, however, stake their case on "old, outdated intentions of previous generations." *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1325 (11th Cir. 2021). They claim that "Georgia's history of discrimination has contributed to suppressed political participation for Black and minority voters" today, Doc. 824 at 32, and that Georgia's history is "quite relevant" to their claims that S.B. 202 discriminates on the basis of race, Doc. 825 at 18. Regardless of how "well-documented" Georgia's history is, Doc. 824 at 32, the "old, outdated intentions of previous generations" cannot ban Georgia's "legislature from ever enacting otherwise constitutional laws about voting," *Greater Birmingham Ministries*, 992 F.3d at 1325. That's true even in States with a history of racially polarized voting, such as Alabama and Georgia. *Id*. Plaintiffs argue that history is relevant under *Arlington Heights*. Doc. 825 at 18. But they ignore that it is the "historical background *of the decision*" that is an appropriate "evidentiary source." *Vill. of*

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) (emphasis added). After all, the entire point of the *Arlington Heights* inquiry is to address whether the enacting legislature acted with "racially discriminatory intent." *Id.* at 268. The presumption of legislative good faith cannot be overcome with outdated history unrelated to the "specific sequence of events leading up to the challenged decision." *Greater Birmingham Ministries*, 992 F.3d at 1325 (quoting *Arlington Heights*, 429 U.S. at 267).

For the same reason, "socioeconomic data" cannot support inferences of discrimination. *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State* (*LWV II*), 66 F.4th 905, 923 (11th Cir. 2023). And "predictable disparities in rates of voting and noncompliance with voting rules" do not "necessarily mean that a system is not equally open or that it does not give everyone an equal opportunity to vote." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2339 (2021). Preferring erroneous Fourth Circuit law to binding Eleventh Circuit law, Doc. 825 at 18, Plaintiffs continue to rely on the same evidence and inferences that were rejected in *Brnovich*, in *Greater Birmingham Ministries*, and in *League of Women Voters*.

*Second*, the Court should reject unreasonable inferences. Plaintiffs' briefs are full of them. For example, Plaintiffs continue to assert that discriminatory intent can be inferred from a single legislator's use of the term "shanghaied." *E.g.*, Doc. 822 at 73; Doc. 824 at 33; Doc. 830 at 8. What ordinary Americans recognize as benign everyday language, Plaintiffs present as "racially coded statements," "code words," and "camouflaged racial expressions." Doc. 822 at 73-74. Those inferences are neither true nor

reasonable.[1] And finding an expert to say it doesn't make it so. *See* Doc. 822 at 77.

The Eleventh Circuit has held that "[n]o reasonable fact-finder could find a discriminatory intent or purpose" from such thin statements from individual legislators. *Greater Birmingham Ministries*, 992 F.3d at 1325. That's in part because "determining the intent of the legislature" from a single legislator's statement "is a problematic and near-impossible challenge." *Id.* at 1324. But it's also because the "racist speech in 1947" that supported election legislation of the 1950s bears no resemblance to the election-integrity debates that supported election legislation of the 2020s. *Id.* at 1323 (distinguishing *City of Carrollton Branch of the N.A.A.C.P. v. Stallings*, 829 F.2d 1547, 1551 (11th Cir. 1987) (statements that "Georgia is in trouble with the Negroes unless this bill is passed" and "[t]his is a white man's country and we must keep it that way" demonstrated racial animus)). The Court need not—and should not—wait for a trial to reject these unreasonable inferences.

*Third*, Plaintiffs err in relying on out-of-circuit precedent. When Plaintiffs cite *North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016), they are inviting this Court to depart from binding Eleventh Circuit precedent. And they cite it *a lot*. *See* Doc. 822 at 13, 15-16, 18, 20, 22, 25-26, 31-32, 34-35, 48, 53-54, 61, 68, 76, 78, 79-81, 83, 89, 92, 94, 98, 103-04, 107-08, 114, 127, 130, 132, 134; Doc. 825 at 15, 18. No matter how

---

[1] In fact, the term "shanghaied" was coined because Shanghai stood in for the far-off destination of the subsequent voyage—not because the kidnapping of sailors was associated with a particular ethnic group. *See Shanghai, Merriam-Webster.com Dictionary*, https://perma.cc/Q2DS-VWEZ.

much Plaintiffs would prefer to be in the Fourth Circuit, this Court is bound by the law of the Eleventh Circuit.

The Court should not follow *McCrory* for at least three reasons. First, *McCrory* failed to apply the presumption of legislative good faith. In fact, the Fourth Circuit inferred *bad faith* from the legislature enacting voting reforms soon after *Shelby County*. *McCrory*, 831 F.3d at 228. But the Eleventh Circuit has rejected the idea that procedural anomalies such as "the use of cloture and truncated debate" can support an inference of discrimination. *Greater Birmingham Ministries*, 992 F.3d at 1326. Plaintiffs rely on the same inappropriate inferences, inviting this Court to make the same errors the Eleventh Circuit recently reversed. *LWV II*, 66 F.4th at 923, 938-40. Second, *McCrory* relied on North Carolina's "long history of race discrimination" and various "socioeconomic factors that may hinder their political participation" of certain groups. 831 F.3d at 223, 232-33. But as explained, that reliance is inconsistent with Supreme Court and Eleventh Circuit precedent. *See Perez*, 585 U.S. at 603; *Greater Birmingham Ministries*, 992 F.3d at 1325. Third, the Fourth Circuit limited *McCrory* to the unique circumstances of the North Carolina Legislature's immediate reaction to *Shelby County*'s end of Section 5's preclearance obligations. *See Lee v. Va. State Bd. of Elections*, 843 F.3d 592, 603-04 (4th Cir. 2016). This Court declined to apply *McCrory* at the preliminary injunction stage. *See* Doc. 686. It should again decline to apply it at this stage.

*Fourth*, Plaintiffs err in relying on *Thornburg v. Gingles*. Because *Gingles* was a "vote-dilution case[]," many of the factors it identified "are

plainly inapplicable in a case involving a challenge to a facially neutral time, place, or manner voting rule." *Brnovich*, 141 S. Ct. at 2340. Some factors that consider "racially polarized voting, racially tinged campaign appeals, and the election of minority-group candidates" might have a "bearing" on vote-denial claims, but their "only relevance … is to show that minority group members suffered discrimination in the past … and that effects of that discrimination persist." *Id.* Contrary to Plaintiffs' suggestions, these factors are not "particularly applicable" to vote-denial claims. Doc. 824 at 30. To the extent they apply at all, "their relevance is much less direct." *Brnovich*, 141 S. Ct. at 2340. Given "the fundamental misalignment between the *Gingles* factors" and vote-denial claims, the Supreme Court and Eleventh Circuit have cautioned against relying on even the marginally relevant *Gingles* factors in these cases. *Greater Birmingham Ministries*, 992 F.3d at 1332; *Brnovich*, 141 S. Ct. at 2340.

\*     \*     \*

As in *Greater Birmingham Ministries*, "Plaintiffs have not provided sufficient evidence that would permit a reasonable factfinder to conclude that minority voters, pursuant to Section 2(b), had 'less opportunity than other members of the electorate to participate in the political process.'" *Greater Birmingham Ministries*, 992 F.3d at 1334 (quoting 52 U.S.C. §10301(b)). The Court should grant summary judgment in favor of Defendants.

### III.   Plaintiffs have not shown that disabled voters lack meaningful access to voting opportunities.

Plaintiffs dispute the law of reasonable accommodation, not the facts. To the extent there is any disagreement about the experiences of Plaintiffs' members, it is whether those experiences amount to unlawful burdens that

deprive them of "meaningful access" to Georgia's voting system. *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1328 (N.D. Ga. 2017). That's a legal question appropriate for summary judgment.

Georgia's voting system provides many accommodations for time, manner, cost, travel, convenience, and preference. *See* Doc. 761-1 at 20-22. It even provides specific benefits to disabled voters that are not available to other voters. *E.g.*, Ga. Code §21-2-385(b) (voter who requires assistance can "receive assistance in preparing his or her ballot from any person of the elector's choice," other than the elector's employer, union, or agents of either); *id.* §§21-2-220(f), 21-2-381(a)(1), 21-2-385(a)-(b) (friends and family can help disabled voters register, apply for a mail ballot, prepare their ballot, and mail or drop off their ballot). On one hand, Plaintiffs say these many accommodations are "irrelevant." Doc. 828 at 16, 24; Doc. 824 at 15-16. On the other hand, they claim the State has failed "to provide reasonable accommodations." Doc. 828 at 16. The Court need not wait for Plaintiffs to get their story straight at trial, because as a matter of law Georgia's "program" of voting, "when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." *Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1322 (11th Cir. 2021) (quoting 28 C.F.R. §35.150).

Plaintiffs have not shown that Georgia's many options "exclude[]" anyone "from participation in" the voting process. *Id.* They have not identified anyone who was not able to vote because of Georgia's rules. The best they can muster is hearsay that they are "aware of a blind voter who was unable to vote," Doc. 828 at 22, but they have no admissible testimony of who that voter

11

is or what other opportunities were available to that voter. Other voters whose "absentee ballot never arrived" were *at most* unable to vote because of some mistake in the process. Doc. 824 at 14. But that "isolated event[]" is at most a mistake that has no bearing on whether Georgia has "systematic discriminatory laws." *Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128, 1201 (N.D. Ga. 2022) (citation omitted).

The rest of Plaintiffs' evidence is speculation that voters "may" not be able to vote if they "arrive at the wrong polling place on Election Day and are denied a provisional ballot." Doc. 828 at 21. Plaintiffs' expert similarly says that the out-of-precinct rules might "make it harder for a citizen to vote if they show up at the wrong polling place." Doc. 828 at 22. But Plaintiffs are not entitled to trial on the basis of guesses about a chain of hypothetical events that—at most—result in "mere difficulty" voting. *People First of Ala. v. Merrill*, 491 F. Supp. 3d 1076, 1155 (N.D. Ala. 2020) (citing *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1088 (11th Cir. 2007)).

In any event, federal disability law requires States to accommodate disabilities, not mistakes. And voters who don't vote because they "arrive[d] at the wrong polling place on Election Day," Doc. 828 at 21, do not lose out on voting "by reason of [their] disability," 42 U.S.C. §12132.

Plaintiffs want preferential treatment, not meaningful access. They say some people prefer to vote in person to take advantage of "the benefit of all current news and information" and because it allows them "to be in community with other voters." Doc. 828 at 16. But the purpose of "voting program" is to provide people an opportunity to *vote, Am. Ass'n of People with Disabilities v.*

*Harris*, 647 F.3d 1093, 1107 (11th Cir. 2011), not an opportunity "to be in community with other voters," Doc. 828 at 16. The State need not accommodate Plaintiffs' idiosyncratic preferences. *See D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1026 (11th Cir. 2020) (the ADA does not demand compliance with any "preferred mode" of accommodation). "[W]hen viewed in [their] entirety," Georgia's many options make voting "readily accessible" to disabled voters. *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001).

### IV. Plaintiffs have not shown that the gift-giving ban is unconstitutional.

#### A. Plaintiffs' food distribution is not expressive conduct.

Plaintiffs admit that they give out food to facilitate voting. *See* Doc. 823 at 4. They claim that "they are also communicating a message," *id.*, but the gift-giving ban doesn't reach whatever message they want to communicate. It prohibits giving gifts to voters in line to "facilitate voting," which Plaintiffs admit they do. *Id.* That conduct is not "inherently expressive." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Even if some part of Plaintiffs' activities are expressive, the Supreme Court "has repeatedly explained that non-expressive conduct does not acquire First Amendment protection whenever it is combined with another activity that involves protected speech." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 389 (5th Cir. 2013) (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 297-98 (1984)). "If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *Rumsfeld v. FAIR*, 547 U.S. 47, 66 (2006).

13

Plaintiffs try to tie their case to *Food Not Bombs* because that case also involved food. But that's where the similarities end. The Eleventh Circuit emphasized the importance of the "factual context and environment" to its holding that a *hunger-awareness group* engaged in expressive activity when it provided weekly meal-sharing events at a public park to bring attention to its message about "end[ing] hunger and poverty." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale* (*Food Not Bombs I*), 901 F.3d 1235, 1238, 1245 (11th Cir. 2018). That was in part because "the significance of sharing meals with others dates back millennia." *Id.* at 1243. Plaintiffs claim that food "has specific historical and cultural significance in the context of civil rights activities." Doc. 823 at 4. But even if true, the evidence does not show that giving food to voters "dates back millennia." *Food Not Bombs I*, 901 F.3d at 1243. Indeed, "most social-service food sharing events will not be expressive." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale* (*Food Not Bombs II*), 11 F.4th 1266, 1292 (11th Cir. 2021).

Also crucial in *Food Not Bombs I* was the fact that the meal-sharing took place in a traditional public forum. 901 F.3d at 1242. Plaintiffs assert that "Defendants do not contest that the area around polling centers is a public forum." Doc. 823 at 3 n.4. But Defendants do contest that. *E.g.*, Doc. 761-1 at 25-26 ("unlike a public park, a polling place is far from a traditional public forum"). Plaintiffs rely on the plurality in *Burson v. Freeman*, which recognized the area outside a polling place as a public forum. 504 U.S. 191, 196 (1992) (plurality op.). Justice Scalia concurred in the judgment, but he disagreed with the plurality's forum analysis. *Id.* at 214 (Scalia, J., concurring in the

judgment). Justice Scalia reasoned that "[b]ecause restrictions on speech around polling places on election day are as venerable a part of the American tradition as the secret ballot," a law that regulates conduct within 100 feet of a polling place "does not restrict speech in a traditional public forum." *Id.* Other courts have adopted Justice Scalia's historically correct view, and Plaintiffs don't even attempt to explain why it's wrong. *See UFCWL v. City of Sidney*, 364 F.3d 738, 750 (6th Cir. 2004) ("[W]e conclude that the parking lots and walkways leading to the polling places are nonpublic forums, with no different status than the remaining areas on school and private property.").

Moreover, the State has interests in preserving order and the appearance of order. Whether "voters perceive a water bottle to be a bribe" is thus beside the point. Doc. 823 at 5. As a matter of law, a "restricted zone is necessary in order to serve the States' compelling interests in preventing voter intimidation and election fraud." *Burson*, 504 U.S. at 206 (plurality op.). "Intimidation and interference laws," just like a bribery law, "fall short of serving a State's compelling interests because they 'deal with only the most blatant and specific attempts' to impede elections." *Id.* And the Court must regard the "historical backdrop" of "the problems of fraud, voter intimidation, confusion, and general disorder that had plagued polling places in the past." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 13 (2018). Georgia's interests at the polling place do not end at preventing bribes. Plaintiffs' activity is not inherently expressive, so it is subject only to rationality review under the *Anderson-Burdick* test.

### B.     Plaintiffs have not shown that strict scrutiny applies.

Even if Plaintiffs' gift-giving were inherently expressive, the gift-giving ban is not subject to strict scrutiny. To start, the gift-giving ban is not content-based. Plaintiffs claim that giving gifts is itself "specific category of speech." Doc. 823 at 5. But that confuses the content of speech with the manner of speech. Giving gifts isn't inherently expressive at all, as just explained. *See supra* Section IV. Even if it is, prohibiting gifts is a classic "manner" restriction, not a content restriction. *See First Vagabonds Church of God v. City of Orlando*, 638 F.3d 756, 758 (11th Cir. 2011) (en banc). Contrast S.B. 202 with the law in *Burson*, which prohibited only speech "related to a political campaign" and did "not reach other categories of speech, such as commercial solicitation, distribution, and display." *Burson*, 504 U.S. at 197 (plurality op.). The "topic" or "content" of Plaintiffs' message is the "importance of voting." Doc. 823 at 4-5. The law does not prohibit that message or any other message the gift-giving might communicate. It prohibits the *manner* of that communication, via gifts. *See Clark*, 468 U.S. at 294-95. And it is limited to the "time" of voting and the "place" of polling locations. *Id.*; *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986).

Plaintiffs' attempt to create factual disputes is a nonstarter. "[B]ecause a government has such a compelling interest in securing the right to vote freely and effectively, [the Supreme] Court never has held a State 'to the burden of demonstrating empirically the objective effects on political stability that are produced' by the voting regulation in question." *Burson*, 504 U.S. at 208 (plurality op.) (cleaned up). States need not present precise evidence of these

strong interest, as "it is difficult to isolate the exact effect of these laws on voter intimidation and election fraud." *Id.* The gift-giving ban is thus a reasonable time, place, or manner restriction.

Alternatively, the gift-giving ban passes muster under *United States v. O'Brien*, 391 U.S. 367 (1968). Plaintiffs have little argument against *O'Brien*. *See* Doc. 823 at 7. But the Eleventh Circuit upheld the restriction on food-sharing events in *First Vagabonds Church* under *O'Brien* because of the city's unquestioned power to regulate such activity, its "interest in managing park property," and its wide latitude to determine what restrictions were necessary to further that interest. *First Vagabonds Church*, 638 F.3d at 762. All of those features are present here. *See Burson*, 504 U.S. at 214 (Scalia, J., concurring in the judgment) ("Ever since the widespread adoption of the secret ballot in the late 19th century, viewpoint-neutral restrictions on election-day speech within a specified distance of the polling place—or on physical presence there—have been commonplace, indeed prevalent.").

Finally, the gift-giving ban satisfies *Anderson-Burdick*, which is the test the Court should apply to election regulations. Even First Amendment claims are subject to the *Anderson-Burdick* test. *E.g.*, *Stein v. Ala. Sec'y of State*, 774 F.3d 689, 694 (11th Cir. 2014); *Burdick*, 504 U.S. at 434; *Anderson*, 460 U.S. at 789. And because the gift-giving ban is a "reasonable, nondiscriminatory restriction[]" and is justified by "a State's important regulatory interests," it is a constitutional election regulation. *Stein*, 774 F.3d at 694 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).

### C.   The gift-giving ban is narrowly tailored to protect voters and polling places.

Regardless of which standard the Court applies, the gift-giving ban is constitutional. It passes strict scrutiny. *See Burson*, 504 U.S. at 211 (plurality op.). It passes the *O'Brien* test. *See First Vagabonds Church*, 638 F.3d at 762. And it passes the *Anderson-Burdick* test. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1261-62 (11th Cir. 2020).

The State's interests are compelling. This Court has recognized as much. Doc. 241 at 51-52 (the state has compelling interests in "restoring peace and order around the polls, protecting voters from political pressure and intimidation, and supporting election integrity"). And Plaintiffs don't dispute that these interests are compelling. *See* Doc. 823 at 11-13. That's unsurprising, as plaintiffs often "take no issue with the presence or legitimacy of those compelling interests." *Citizens for Police Accountability Pol. Comm. v. Browning*, 572 F.3d 1213, 1219 (11th Cir. 2009). Instead, Plaintiffs argue that the gift-giving ban doesn't "vindicate those interests." Doc. 823 at 11. But the connection between solicitation regulations around polling places and those compelling interests is well-established. *E.g.*, *Burson*, 504 U.S. at 208 (plurality op.); *Schirmer v. Edwards*, 2 F.3d 117, 123-24 (5th Cir. 1993); *Citizens for Police Accountability*, 572 F.3d at 1219-21; *LWV II*, 66 F.4th at 929-30; *Frank v. Lee*, 84 F.4th 1119, 1138-39 (10th Cir. 2023), *cert. denied*, No. 23-901 (U.S. Apr. 15, 2024). Because of that connection, polling-place regulations "have an impressively long history of general use." *Burson*, 504 U.S. at 214 (Scalia, J., concurring in the judgment). And that's why "all 50

States and the District of Columbia have laws curbing various forms of speech in and around polling places on Election Day." *Minn. Voters All.*, 585 U.S. at 7.

Georgia's approach is narrowly tailored. The zone around the polling place protects the polling place, and the zone around voters protects voters. The State has compelling interests in protecting both. Doc. 241 at 51-52. Plaintiffs claim the zone around voters in line "is even less tailored." Doc. 823 at 20. But the zone around voters in line is itself a "more targeted alternative[]" to imposing an even larger zone around the polling place. Doc. 823 at 20. Georgia could have implemented a blanket 600-foot radius around the polling place. *See Schirmer*, 2 F.3d at 123-24. Instead, it adopted a tailored approach that targets where its interests are strongest: the voters standing in line to vote.

Plaintiffs attempt to create a fact issue, but they hardly dispute the State's evidence. To start, "in this context, a State need not have a strong evidentiary basis for the law to withstand strict scrutiny" given "*Burson*'s solicitude for state sovereignty regarding elections." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1043, 1053 (6th Cir. 2015). Nevertheless, the State presents a full evidentiary record that supports the laws. *See* Doc. 762 at 2-6. Election officials received numerous complaints and questions about line relief; organizations were inducing voters with things of value; polling places became chaotic and disruptive; and voters and poll workers alike were distracted and confused. Doc. 762 at 2-4. And State officials tailored the gift-giving laws to address these precise problems. Doc. 762 at 4-5.

Contrary to Plaintiffs' suggestion, the State need not fill the record with evidence of actual "attempt[s] to influence voters." Doc. 823 at 15. Requiring that evidence "would necessitate that a State's political system sustain some level of damage before the legislature could take corrective action." *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986). "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). And the Supreme Court has "*never* required a State to make a particularized showing of the existence of voter confusion." *Munro*, 479 U.S. at 194 (emphasis added). The State's largely uncontested evidence of confusion is more than sufficient to warrant summary judgment.

Plaintiffs and other organizations have numerous other ways express themselves. The gift-giving ban does not prohibit their mission to "support and encourage" voters. Doc. 823 at 1-2. It does not prohibit expressing "encouragement and hope" to voters standing in line. Doc. 823 at 3. It does not prohibit giving "food or water" to voters a short distance away from the polling place and who aren't standing in line to vote. Doc. 823 at 17. It does not prohibit telling voters "about the importance of voting." Doc. 823 at 4-5. If it regulates speech at all, the gift-giving ban prohibits only a particular manner of speech (giving things of value) at a particular time (during voting hours) and particular place (immediately near a polling place or voters standing in line to vote). The State has strong interests in these narrow prescriptions. *LWV II*, 66 F.4th at 929-30.

### V.   The Court should reject Plaintiffs' recently discredited application of the materiality provision.

#### A.   The Materiality Provision does not reach ballot-casting rules.

Just over a month ago, the Third Circuit rejected the novel interpretation of the materiality provision that Plaintiffs push here. *Penn. State Conf. of NAACP Branches v. Sec'y Commonwealth of Penn.*, 97 F.4th 120, 125 (3d Cir. 2024). The court held that, "[r]ead as a whole and in context …, the Materiality Provision targets laws that restrict who may vote. It does not preempt state requirements on how qualified voters may cast a valid ballot, regardless what (if any) purpose those rules serve." *Id.* at 131. That decision corrects the Third Circuit's earlier mistakes in *Migliori v. Cohen*, 36 F.4th 153 (3d Cir.), *cert. granted, judgment vacated Ritter v. Migliori*, 143 S. Ct. 297 (2022); *see also Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissental) ("There is no reason why the requirements that must be met in order to register (and thus be 'qualified') to vote should be the same as the requirements that must be met in order to cast a ballot that will be counted. Indeed, it would be silly to think otherwise."). The Third Circuit reversed course after analyzing the text and context of the materiality provision. This Court should, too.

Georgia's absentee ballot envelope does not determine a voter's qualifications to vote, so the materiality provision doesn't apply. The text of the materiality provision applies only to acts that determine a voter's qualifications. "[T]he text does not say the error must be immaterial 'to' whether an individual is qualified to vote. It uses the words 'in determining,' and that choice must mean something." *Penn. State Conf. of NAACP Branches*, 97 F.4th at 131. And the surrounding provisions "that sandwich the

Materiality Provision" likewise relate to qualification determinations. *Id.* Text and context indicate that "the information containing an error or omission, material or not, must itself relate to ascertaining a person's qualification to vote (like paperwork submitted during voter registration)." *Id.* When a state official rejects a *ballot* for a deficient birthdate, she is not determining whether the voter "is qualified under State law to vote." 52 U.S.C. §10101(a)(2)(B). That determiniation was made at the registration stage. Everyone agrees that S.B. 202's birthdate requirement is a ballot-casting requirement, not a registration requirement, so the materiality provision doesn't apply.

The Third Circuit correctly rejected the same counterarguments Plaintiffs make here. *See* Doc. 825 at 23-26. Plaintiffs argue that the materiality provision governs "any … act requisite to voting," 52 U.S.C. §10101(a)(2)(B), and the definition of "vote" includes "all action necessary to make a vote effective" including "having such ballot counted and included in the appropriate totals of votes cast," *id.* § 10101(e); *see* Doc. 825 at 23. But "[t]he phrase 'act requisite to voting' also draws its import from the context in which it appears." *Penn. State Conf. of NAACP Branches*, 97 F.4th at 132. Because the materiality provision "applies to determinations that affect a voter's *eligibility* to cast a ballot, its application necessarily is limited to 'record[s] or paper[s]' used in that process." *Id.* (emphasis added). Those include papers like an "application" and "registration." 52 U.S.C. §10101(a)(2)(B). The meaning of "other act requisite to voting" is informed by the words that precede it, which "limit the scope of the relevant paperwork in

a way that coheres with the statute's voter qualification focus." *Penn. State Conf. of NAACP Branches*, 97 F.4th at 132.

The Third Circuit analyzed the materiality provision at length, explaining that "[i]t targets rules that require unnecessary information during *voter qualification processes* and prohibits disqualifying individuals making immaterial errors or omissions in paperwork related to registration." *Id.* at 137. In doing so, the Court departed from its earlier vacated decision, and denied rehearing en banc. *See Penn. State Conf. of NAACP Branches*, Doc. 265, No. 23-3166 (3d Cir. Apr. 30, 2024). The court provided the most comprehensive explanation of the materiality provision to date, thoroughly rejecting Plaintiffs' interpretation. This Court should follow the Third Circuit.

### B. Plaintiffs' §10101 claim fails for other independent reasons.

The Third Circuit's opinion is the most direct path to granting judgment in Defendants' favor. But Plaintiffs' claim fails for other independent reasons.

*First*, the materiality provision prohibits ad hoc executive actions—it does not preempt state law. Under the plain text of the statute, "State law" is the measure of what is "material." 52 U.S.C. §10101(a)(2)(B). The Eleventh Circuit has held that information *must be* material if federal law requires it. *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). And it has held that information *cannot be* material if federal law prohibits it. *Schwier v. Cox*, 412 F. Supp. 2d 1266 (N.D.Ga.2005), *aff'd* 439 F.3d 1285 (11th Cir. 2006); *see also Browning*, 522 F.3d at 1174 n.22 (noting that *Schwier* was the "mirror image" of *Browning*). The Eleventh Circuit has not

yet addressed whether information is material because *state law* requires, but that's exactly what the statute says. 52 U.S.C. §10101(a)(2)(B).

Plaintiffs respond by relying on paragraph (1), not the materiality provision. Doc. 825 at 25; Doc. 830 at 100-01 (citing *United States v. Mississippi*, 380 U.S. 128, 136 (1965)). But the materiality provision explicitly considered whether the information is required by "State law." 52 U.S.C. §10101(a)(2)(B). Plaintiffs don't address that textual feature of the provision.

Plaintiffs next rely on *Martin v. Crittenden*, but that case supports the conclusion that state law is the measure of materiality. *See* Doc. 825 at 25-26. In *Martin*, the Court ruled that the county-established practice of rejecting absentee ballots for deficient birth information violated the materiality provision because that county practice was not required "under Georgia law." 347 F. Supp. 3d 1302, 1308-09 (N.D. Ga. 2018). As other courts have noted, "*Martin* isn't instructive" where a birthdate is *required* by state law, "because the court held that the county's decision was *inconsistent* with state law." *Common Cause v. Thomsen*, 574 F. Supp. 3d 634, 636 (W.D. Wis. 2021) (emphasis added) (citing *Martin*, 347 F. Supp. 3d at 1308-09). Plaintiffs' misinterpretation of *Martin* does not defeat the plain text of the materiality provision.

*Second*, Georgia's birthdate requirement doesn't deny anyone the right to vote. "[A] voter who fails to abide by state rules prescribing how to make a vote effective is not 'denied the right to vote' when his ballot is not counted." *Penn. State Conf. of NAACP Branches*, 97 F.4th at 133 (cleaned up). "Rather, that individual's vote is not counted because he or she did not follow the rules

for casting a ballot." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental). Georgia even permits voters to cure any deficiencies in the birthdate requirement. Ga. Code §21-2-385(a)(1)(C). A vote who fails to follow the rules and fails to cure that deficiency "is not denied the right to vote." *Penn. State Conf. of NAACP Branches*, 97 F.4th at 133 (cleaned up). Plaintiffs have no response to this argument, which is "[y]et a separate reason" why "a vote-casting rule cannot violate the Materiality Provision." *Id.*

### C. Plaintiffs have no evidence that the birthdate requirement discriminates on the basis of race.

Plaintiffs misunderstand the constitutional problem of sweeping racial legislation. They don't dispute that §10101 "was enacted pursuant to the Fifteenth Amendment for the purpose of eliminating racial discrimination in voting requirements." *Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 839 (S.D. Ind. 2006), *aff'd sub nom. Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008); *see also Mississippi*, 380 U.S. at 138. To be sure, "Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 727-28 (2003). But §5 "legislation reaching beyond the scope of §1's actual guarantees must be an appropriate remedy for identified constitutional violations." *Id.* Identifying past constitutional violations does not justify *current application* of prophylactic legislation: the "current burdens" of the materiality provision "must be justified by 'current needs.'" *Shelby Cnty. v. Holder*, 570 U.S. 529, 550-51 (2013); *see also City of Boerne v. Flores*, 521 U.S. 507, 520 (1997).

Plaintiffs don't identify current discriminatory practices in voter registration that justify "proscrib[ing] facially constitutional conduct." *Nev. Dep't of Hum. Res.*, 538 U.S. at 727-28. Indeed, they claim they don't have to. *See* Doc. 825 at 29-23. The Supreme Court says otherwise. When legislation "imposes current burdens," those burdens "must be justified by current needs." *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 203 (2009). Today, "[b]latantly discriminatory evasions of federal decrees are rare. And minority candidates hold office at unprecedented levels." *Id.* at 202. The "exceptional conditions" that might have justified such an "uncommon exercise of congressional power" in 1964 can no longer justify the application of §10101. *South Carolina v. Katzenbach*, 383 U.S. 301 (1966). "[T]hat history cannot be ignored." *Shelby Cnty.*, 570 U.S. at 553.

The Fifth Circuit overlooked *Shelby County* and *Northwest Austin* when it rejected this argument. *Vote.Org v. Callanen*, 89 F.4th 459, 486 (5th Cir. 2023). The court observed only that Congress can enact prophylactic legislation, and skipped straight to upholding the materiality provision, bypassing the decades of improvement that *undercut* the case for prophylactic legislation. Indeed, the Fifth Circuit committed the very error the Supreme Court reversed in *Shelby County*: it ruled that Congress could "prohibit those acting under color of law from using immaterial omissions … irrespective of racial animus" because those omissions "were historically used to prevent racial minorities from voting." *Id.* at 487. But that omissions were "historically used" for such a purpose, *id.*, does not justify the statute's "current burdens," *Shelby Cnty.*, 570 U.S. at 550-51. The Fifth Circuit looked to "1965," not to

26

"'current political conditions.'" *Id.* at 552. But courts and Congress "cannot rely simply on the past." *Id.* at 553.

These principles would ordinarily require the Court to declare §10101 unconstitutional, just as the Supreme Court declared the preclearance coverage formula unconstitutional in *Shelby County*. *Id.* at 557. But this court need not declare the materiality provision unconstitutional. Instead, the court can "avoid ruling on the constitutionality" of the provision, "and instead resolve[] the case … on statutory grounds." *Id.* at 556-57. Requiring racial discrimination as an element of §10101 violations reorients the statute toward the "evil that § 5 is meant to address." *Nw. Austin*, 557 U.S. at 203; *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

Requiring racial discrimination is consistent with the text. Plaintiffs narrowly focus on paragraph (2), but "[w]ords also take color from context." *Penn. State Conf. of NAACP Branches*, 97 F.4th at 131. Paragraph (1) explicitly prohibits racial discrimination in voting. 52 U.S.C. §10101(a)(1). Paragraph (2) in turn is focused on "determining whether an individual is qualified to vote." *Id.* And remedies under both provisions contemplate whether there is a "pattern or practice of discrimination." *Id.* §10101(e). That is, a state action is illegitimate under the materiality provision only if used to "qualify[] persons" of one "race or color" but disqualify persons of other races or colors. *Id.* Section

10101 claims thus "fail as a matter of law" when they "do not allege that the actions by [election] officials were racially motivated." *Broyles v. Texas*, 618 F. Supp. 2d 661, 697 (S.D. Tex. 2009). That conclusion is consistent with the text, and it is the only conclusion consistent with the Constitution.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Defendants.

Dated: May 14, 2024                    Respectfully submitted,

                                       */s/ Gilbert C. Dickey*

Gilbert C. Dickey*                     John E. Hall, Jr.
Conor D. Woodfin*                        Georgia Bar No. 319090
CONSOVOY MCCARTHY PLLC                 William Bradley Carver, Sr.
1600 Wilson Boulevard, Suite 700         Georgia Bar No. 115529
Arlington, Virginia 22209              Baxter D. Drennon
(703) 243-9423                           Georgia Bar No. 241446
                                       HALL BOOTH SMITH, P.C.
Tyler R. Green*                        191 Peachtree Street NE, Suite 2900
CONSOVOY MCCARTHY PLLC                 Atlanta, Georgia 30303
222 S. Main Street, 5th Floor          (404) 954-5000
Salt Lake City, UT 84101               (404) 954-5020 (Fax)
(703) 243-9423

*admitted pro hac vice

*Counsel for Intervenors*

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

*/s/ Gilbert C. Dickey*

## CERTIFICATE OF SERVICE

On May 14, 2024, I e-filed this document on ECF, which will email everyone requiring service.

*/s/ Gilbert C. Dickey*