UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN KEMP, Governor of the State of Georgia, in his official capacity, et al., <br><br> Defendants. | MASTER CASE NO. 1:21-MI-55555-JPB <br><br> CIVIL ACTION NO. 1:21-CV-01284-JPB |

# **ORDER**

This matter is before the Court on the United States of America's Motion to Intervene [Doc. 838]. This Court finds as follows:

## BACKGROUND

On March 29, 2021, Plaintiffs[1] filed this action against Georgia state officials[2] and counties[3] (collectively, "Defendants"), challenging provisions of Georgia Senate Bill 202 ("S.B. 202"), which governs election-related processes in the state.[4]  Governor Brian Kemp signed S.B. 202 into law on March 25, 2021.

On February 6, 2024, the United States moved to intervene in the instant case.  [Doc. 838].[5]  In its proposed complaint, the United States seeks to bring a

---

[1] Plaintiffs include the Sixth District of the African Methodist Episcopal Church, Georgia Muslim Voter Project, Women Watch Afrika, Latino Community Fund Georgia, Delta Sigma Theta Sorority, Inc., the Arc of the United States, Georgia Adapt and the Georgia Advocacy Office.

[2] This list includes Brian Kemp, Governor of the State of Georgia, in his official capacity; Brad Raffensperger, Secretary of State of Georgia, in his official capacity; the Georgia State Election Board; and individual members of the Georgia State Election Board, in their official capacities.

[3] Plaintiffs' complaint names as defendants the boards of elections and registration (as well as members of those boards) from the following counties:  Bibb, Chatham, Clarke, Clayton, Cobb, Columbia, DeKalb, Fulton, Gwinnett, Hall and Richmond.  The master docket contains a complete list of County Defendants.

[4] Ultimately, the Court consolidated this case with five other cases involving similar challenges to the law:  United States v. Georgia, 1:21-CV-2575; The New Ga. Project v. Raffensperger, 1:21-CV-1229; Ga. State Conf. of the NAACP v. Raffensperger, 1:21-CV-1259; Asian Americans Advancing Justice-Atlanta v. Raffensperger, 1:21-CV-1333; and The Concerned Black Clergy of Metro. Atlanta, Inc. v. Raffensperger, 1:21-CV-1728.  The consolidated case is In re Georgia Senate Bill 202, 1:21-MI-55555.

[5] Unless otherwise indicated, docket citations pertain to 1:21-MI-55555.

Fourteenth Amendment intentional race discrimination claim against Defendants related to the enactment of S.B. 202.[6]  See [Doc. 838-3].  In its motion, the United States asserts that it should be permitted to intervene in this case as a matter of right because (a) the case involves the alleged denial of equal protection of the laws under the Fourteenth Amendment, and (b) the Attorney General has certified that the case is one of general public importance.  [Doc. 838-1, pp. 1–2].  The motion, which is opposed by State Defendants[7] and Intervenor Defendants,[8] is ripe for the Court's review.

---

[6] The United States filed a similar claim under Section 2 of the Voting Rights Act in United States v. Georgia, 1:21-CV-2575; in that case, the United States asserted that certain provisions of S.B. 202 were adopted with an intent to discriminate against Black voters.  In its proposed intervenor complaint, the United States again brings a discriminatory intent claim, but does so under the Fourteenth Amendment rather than Section 2.

[7] Across the consolidated cases, State Defendants include the State of Georgia, Georgia Governor Brian Kemp, Georgia Secretary of State Brad Raffensperger, the Georgia State Election Board, individual members of the Georgia State Election Board and Gregory Edwards, in his official capacity as District Attorney for Dougherty County.

[8] Intervenor Defendants are the Republican National Committee, the National Republican Senatorial Committee, the National Republican Congressional Committee and the Georgia Republican Party, Inc.  Although they did not submit their own brief opposing the United States' motion to intervene, Intervenor Defendants joined in State Defendants' opposition.  See [Doc. 844].

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 governs intervention and provides for intervention as a matter of right in certain instances. Rule 24(a) states that on timely motion, courts must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Section 902 of the Civil Rights Act of 1964 grants the United States an unconditional right to intervene in cases seeking relief from the alleged denial of equal protection of the laws under the Fourteenth Amendment if the Attorney General certifies that the case is one of general public importance. 42 U.S.C. § 2000h-2. Pursuant to this statutory authority, when applicable, the United States may intervene as a matter of right under Rule 24(a)(1) if it timely moves to do so.

## ANALYSIS

The United States asserts—and State Defendants concede—that it has been given an unconditional right to intervene in this case by a federal statute, 42 U.S.C. § 2000h-2, and therefore must be permitted to intervene as a matter of right under

Rule 24(a)(1), so long as its motion for intervention was timely filed.  The resolution of the instant motion thus turns on timeliness.

With respect to the timeliness of a motion to intervene, courts consider:  (1) "the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene"; (2) "the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest"; (3) "the extent of prejudice to the proposed intervenor if the motion is denied"; and (4) "the existence of unusual circumstances militating either for or against a determination that their motion was timely."  Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242, 1259 (11th Cir. 2002).  Importantly, "[t]imeliness is not a word of exactitude or of precisely measurable dimensions.  The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice."  Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989) (citation omitted).  The Court analyzes these factors below.

1. **Length of Time During Which the Proposed Intervenor Knew or Reasonably Should Have Known of the Interest in the Case**

As stated above, with respect to the timeliness of a motion to intervene, courts first consider "the length of time during which the proposed intervenor

knew or reasonably should have known of the interest in the case before moving to intervene." Georgia, 302 F.3d at 1259.  Here, the United States argues that it moved to intervene soon after it realized its interest in this case.  Specifically, the United States contends that it only became aware of its interest after this Court issued its December 22, 2023 order (the "December 2023 Order") in the United States' case, [9] and it filed the instant motion less than seven weeks later.

By way of background, in case number 1:21-CV-2575, the United States brought a claim challenging S.B. 202 under Section 2 of the Voting Rights Act ("VRA"), asserting that the challenged provisions "were adopted with the purpose of denying or abridging Black citizens' equal access to the political process." See [CV-2575 Doc. 1, pp. 42–44].  State Defendants moved to dismiss the case on the grounds that the United States failed to state a claim because it only pled discriminatory intent, which they argued was insufficient to establish a violation of Section 2.  See [CV-2575 Doc. 38, pp. 14–19].  In an order dated December 9, 2021, the Court denied the motion,[10] finding that the United States adequately pled an intentional race discrimination claim under Section 2.  [CV-2575 Doc. 69].  The

---

[9] As discussed previously, both cases have since been consolidated, along with four other cases, into In re Georgia Senate Bill 202, 1:21-MI-55555.  See supra note 4.
[10] The Court also denied Intervenor Defendants' Motion to Dismiss [CV-2575 Doc. 39] in the same Order.

Court further held, in the alternative, that the United States had also sufficiently pled a discriminatory results claim because the United States alleged facts sufficient to show that, under the totality of the circumstances, the political process under S.B. 202 was not "equally open" to Black voters. Id. at 10.

On April 27, 2023, the Eleventh Circuit Court of Appeals decided League of Women Voters of Florida, Inc. v. Florida, Secretary of State, 66 F.4th 905 (11th Cir. 2023). Based on this intervening decision, State Defendants filed a motion for judgment on the pleadings and again argued that an intent-only claim was not permissible under Section 2. [Doc. 549]. In December 2023, the Court denied State Defendants' Motion for Judgment on the Pleadings. [Doc. 777]. Although the Court allowed the United States' case to proceed, the Court held that the United States' only permissible method of proving a Section 2 violation in its case was through a showing that the political processes are not equally open and that Black voters have less opportunity than other members of the electorate to participate in the political process as a result of the challenged law. See id. Put differently, the Court concluded—based on intervening Eleventh Circuit authority set forth in League of Women Voters of Florida, Inc.—that a claim based only on discriminatory intent is not cognizable under Section 2. Id.

7

Thus, the United States asserts that only after the Court's December 2023 Order did it become aware of its interest to intervene in order to continue litigating an intentional racial discrimination claim. [Doc. 838-1, pp. 12–14]. State Defendants, on the other hand, maintain that the United States should have known of its potential interest well before December 2023, namely because they have argued since the inception of the United States' case that an intent-only claim is not cognizable under Section 2 of the VRA. [Doc. 842, pp. 3–4, 8].

This Court acknowledges that State Defendants have consistently argued that Section 2 does not allow for a discriminatory intent claim. The Court also recognizes, however, that until League of Women Voters of Florida, Inc., it was not clear in the Eleventh Circuit how a Section 2 claim could be proved. Thus, the Court finds that the United States' assertion that it did not realize its interest in this case until after this Court's December 2023 Order is reasonable. Accordingly, the Court finds that the length of time during which the United States knew or reasonably should have known of its interest in the case before filing its motion—approximately seven weeks—weighs in favor of a determination that the motion was timely.

### 2. Prejudice to Existing Parties

The next factor courts consider when evaluating timeliness is the extent of prejudice to the existing parties.  The Eleventh Circuit has advised that "[t]he most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene."  Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC, 918 F.3d 1161, 1171 (11th Cir. 2019) (quoting McDonald v. E. J. Lavino Co., 430 F.2d 1065, 1073 (5th Cir. 1970)).  Indeed, the Eleventh Circuit opined that this "may well be the only significant consideration" when a movant seeks intervention as a matter of right.  Id.

The United States argues that intervention will not prejudice the parties primarily because the Fourteenth Amendment intentional race discrimination claim that the United States raises in its proposed complaint is a claim already asserted by Plaintiffs in this case.  [Doc. 838-1, p. 2]; see [CV-1284 Doc. 219-1, pp. 120–121].  Moreover, the United States contends that the claim and the evidence underpinning the claim are substantially similar to the intentional race discrimination claim that the United States has litigated under Section 2.  [Doc. 838-1, p. 2].  And, the United States explains, "[b]ecause demonstrating intentional racial discrimination in this case is the same whether under the Constitution or

9

Section 2 of the VRA . . . the substance of the United States' arguments will not change." Id. at 11–12.  Accordingly, the United States contends that "Defendants will not be required to defend against any claims or legal theories that they have not already been defending in these consolidated cases," and its intervention will not expand the scope of litigation.  Id. at 11.  As such, the United States argues, Defendants will not be prejudiced by the United States' intervention.[11]

Although State Defendants acknowledge that any prejudice to them is reduced by the consolidated discovery in the combined S.B. 202 cases, they maintain that they will be prejudiced by the United States' intervention because in its proposed complaint, the United States seeks to add new allegations and a new defendant, and because the United States "chose to wait until after filing its responses to State Defendants' various summary-judgment motions" before moving to intervene.  [Doc. 842, pp. 8–9].

As discussed, this Court is of the view that the length of time during which the United States knew or reasonably should have known of its interest in the case before moving to intervene was less than seven weeks.  But, even if the Court had agreed with State Defendants that the United States' delay was much longer—that

---

[11] Plaintiffs in this case have consented to the United States' motion to intervene, see [Doc. 838-1. p. 11], and thus do not claim that they will be prejudiced by its intervention.

is, that the United States knew or reasonably should have known of its interest based on State Defendants' earlier arguments that a discriminatory intent claim was not cognizable under Section 2—the Court is not persuaded that Defendants will suffer significant prejudice as a result of the United States' intervention. Given the similarity of claims and procedural posture of the consolidated cases, including the extensive discovery that has already occurred and which bears directly on the United States' proposed cause of action, the Court views any prejudice to Defendants resulting from the United States' delay as minimal.

### 3. Prejudice to the United States

The third factor that the Court must consider is prejudice to the United States if intervention is denied. The United States argues that it would be prejudiced if not allowed to intervene because denial of its motion would prevent the United States from challenging S.B. 202 on the basis of discriminatory intent. [Doc. 838-1, p. 13]. The United States asserts that this is significant because of its stated interest: protecting citizens' right to vote free from racial discrimination. Id. Given the significance of the United States' interest, the Court finds that the prejudice to the United States if intervention is denied outweighs the minimal prejudice suffered by Defendants if intervention is allowed.

\* \* \*

On balance, the timeliness factors weigh in favor of allowing the United States to intervene.[12]  Thus, the Court concludes that the United States' motion to intervene is due to be **GRANTED**.[13]

## CONCLUSION

For the reasons explained above, the Motion to Intervene [Doc. 838] is **GRANTED**.  The Clerk is **DIRECTED** to add the United States of America as a plaintiff in this case and docket the proposed complaint.

**SO ORDERED** this 11th day of July, 2024.

_____
J. P. BOULEE
United States District Judge

---

[12] Additionally, regarding the fourth factor, State Defendants argue that to permit the United States "to make this late entrance" in the instant case "would be unusual" given the United States' preexisting case and the various other challenges to S.B. 202 that have been filed since then.  [Doc. 842, p. 9].  The Court is not convinced that this presents an unusual circumstance militating against a determination that the United States' motion was timely.  Even if this Court were to find otherwise, this factor does not outweigh the others which support intervention in this case.

[13] The Court recognizes and agrees with State Defendants that, as a result of the United States' intervention, Defendants may need to be afforded the opportunity to conduct additional discovery, even if minimal, or supplement their already-filed motions for summary judgment in the consolidated case.  Accordingly, Defendants may make a motion seeking relief to that effect within seven days of the date of entry of this order.