**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.:<br>1:21-MI-55555-JPB |

## STATE DEFENDANTS' MOTION TO REOPEN LIMITED EXPERT DISCOVERY ON THE 2024 ELECTIONS AND BRIEF IN SUPPORT

State Defendants respectfully request that the Court permit the parties to engage in limited supplemental expert discovery to provide the Court with important information on the 2024 elections, which will address various claims and arguments advanced in the summary judgment briefing.

## INTRODUCTION

One challenge of election cases is that elections keep happening, which can make dealing with discovery challenging in long-running cases. *See, e.g.*, *Fair Fight Action, Inc. v. Raffensperger*, No. 1:18-CV-5391-SCJ, 2022 WL 6344390, at *1 (N.D. Ga. Apr. 7, 2022) (noting additional post-2018 election discovery, but setting cutoff date for discovery about future elections).

As this Court is aware, this case involves the State's Election Integrity Act of 2021 (SB 202), which directly addresses the administration of Georgia's elections. Plaintiffs and Defendants have relied heavily on data from specific elections before and after SB 202's adoption as support for their claims and defenses. But fact discovery closed on April 14, 2023, with expert

discovery completed by May 19, 2023, [Doc. 496], meaning that the entire 2024 election cycle, including the recent presidential election, is not part of the record of this case.

## ARGUMENT AND CITATION OF AUTHORITY

This Court has "broad discretion in managing pretrial discovery matters." *Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005) (quoting *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002)); *see also EarthCam, Inc. v. OxBlue Corp.,* 703 F. App'x 803, 814 (11th Cir. 2017) ("Because the impact on judicial proceedings of extending discovery varies from case to case, district courts have considerable leeway in handling discovery matters"). When a party seeks to modify a scheduling order after that order has already expired, the Eleventh Circuit requires that the movant demonstrate "both good cause and excusable neglect." *Maynard Terrace Townhomes Ass'n, Inc. v. Peterson Contractors, Inc.*, No. 1:15-CV-00518-JPB, 2024 WL 4998532, at *2 (N.D. Ga. Oct. 7, 2024) (quoting *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 944 (11th Cir. 2015)); *see also* Fed. R. Civ. P. 6(b)(1) and 16(b)(4). That standard is easily met here for a limited period of additional expert discovery on the 2024 elections.

**A. Good cause exists to include the 2024 elections in the record.**

In this case, good cause exists for this Court to permit limited additional expert discovery concerning Georgia's 2024 elections. This

information is necessary for the Court's consideration of "all relevant information" and to have a "full and accurate understanding" of the impact of the challenged provisions of SB 202. *Abruscato v. GEICO Gen. Ins. Co.*, No. 3:13-CV-962-J-39JBT, 2014 WL 12616965, at \*2 (M.D. Fla. May 30, 2014) (quoting *Gonzalez v. ETourandTravel, Inc.*, Case No. 6:13–cv–827–Orl–36TBS, 2014 WL 1250034, at \*2 (M.D. Fla. Mar. 26, 2014)). Further, data and expert analysis from a presidential election cycle after the enactment of SB 202 provides a more complete factual record than relying solely on the results of the 2022 midterm election cycle. *See Barnette v. Fed. Exp. Corp.*, No. 2:10-CV-471-FTM-36, 2011 WL 2413437, at \*2 (M.D. Fla. June 14, 2011) (good cause found where facts became known after the close of discovery).

State Defendants expect that their experts will be able to provide the Court with the following types of updated information from the 2024 elections.

1. Election data show that turnout rates remain high post-SB 202. For instance, overall voter turnout rates in Georgia in 2024 were higher than in any election since 2014, including being higher than the 2020 election during the COVID pandemic. Additionally, the 2024 turnout rate was higher in Georgia than in other states, which is consistent with previous years. Yet Plaintiffs attempt to downplay the significance of turnout. *See, e.g.*, [Doc. 824 at 27–28].

2. Methods of voting do not significantly vary across racial groups. In 2024, Georgia voters continued to vote predominately early in person as compared to voting on Election Day and at a rate more than double from 2014 and larger than in 2018 and 2022. Moreover, Black and white voters generally voted early in person in 2024 at nearly the same rates. And use of absentee by mail voting among Black and white voters remained relatively constant in 2024 as compared to 2022. Yet Plaintiffs argued that changes to absentee voting in SB 202 would make it "significantly harder" for minority voters to navigate the election system. *See, e.g.*, [Doc. 830 at 3–5, 36–38] (discussing how limiting absentee voting would affect minority voters).

3. Absentee ballot rejections remain very small. In 2024, the share of absentee ballots rejected for arriving late was relatively small. Yet Plaintiffs rely on data from earlier elections when challenging portions of SB 202. *See, e.g.,* [Doc. 830 at 26–27] (discussing absentee-ballot rejection rates when challenging SB 202's birthdate requirement).

4. Wait times in Georgia have decreased after SB 202. Fewer Georgia voters waited in lines of 30 minutes or more in 2024 as compared to previous elections, including among different racial groups. Further, Georgia voters of all races reported positive voting experiences in the 2024 election, with few, if any, reported problems. Yet Plaintiffs have relied on the existence of wait times when challenging various portions of SB 202. *See, e.g.*, [Doc. 823 at 26]

4

(discussing "wait times in Georgia during the 2022 general election" when challenging SB-202's prohibition on giving things of value to voters waiting in line); [Doc. 826 at 18 n.5] (discussing how various "restrictions increase waiting times for early in-person and Election Day voters").

Accordingly, each of these categories of data and the related expert opinions is directly relevant to points the Court must address when deciding the pending motions for summary judgment. Updating these important issues will have a significant benefit to this Court's consideration of the impact of SB 202 on Georgia election processes. As a result, permitting limited expert discovery of 2024 election results in this case will greatly assist the Court, meaning there is a significant showing of good cause for the additional discovery.

**B. There was no neglect in this case.**

Regarding the second prong, when determining whether a party has shown excusable neglect, the Supreme Court instructs courts to consider four factors: "(1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *EarthCam,* 703 F. App'x at 813 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). A period of additional discovery that is limited to relevant

facts that "could not have been obtained through diligence and good faith during the discovery period" avoids unnecessary prejudice to either party as this case proceeds. *Moore v. Intuitive Surgical, Inc.*, No. 1:15-CV-56 (WLS), 2021 WL 3739168, at *3 (M.D. Ga. Aug. 24, 2021).

Again, the 2024 elections had not occurred at the time discovery expired and could not have been a part of the record in this case at that time. In addition, there is no prejudice to Plaintiffs if discovery is extended for the limited purpose of updating expert information, because the requested limited extension allows for experts of all parties to evaluate the 2024 elections and supplement their opinions accordingly.

Moreover, there is no trial yet scheduled in this case, and a short delay in this Court's consideration of the motions for summary judgment to update the record with information about additional post-SB 202 elections ensures that the Court has all the facts available to rule on the pending motions and, if necessary, to decide the issues of this case at trial.

State Defendants have therefore satisfied all four factors for excusable neglect. Further, they have demonstrated the significant benefit of the requested limited expert discovery to the Court and the record.

**PROPOSED SCHEDULE**

Because both prongs necessary to modify the scheduling order are present in this case, State Defendants request the Court allow limited expert discovery on the administration of the 2024 elections as follows:

1. Within two weeks of the start of the limited additional expert discovery period, the parties will produce any updated 2024 election data on which their experts plan to rely.

2. Four weeks after the deadline for production of data, the parties will produce supplemental expert reports.

3. Three weeks after the deadline for the production of supplemental expert reports, the parties will produce rebuttal expert reports.

4. Following the production of rebuttal expert reports, the parties will have three weeks to take supplemental expert depositions (if needed).

5. After the conclusion of the period of expert depositions, the parties will then have four weeks to file supplemental briefs, with each side permitted to file a single supplemental brief on summary judgment.

6. Three weeks after the deadline for supplemental briefs, each party will be permitted to file a single response brief. There will be no replies allowed.

State Defendants have conferred with counsel for Plaintiffs regarding this proposal. Plaintiffs oppose this motion and oppose supplemental briefing.

**CONCLUSION**

This Court benefits from having the most current information about Georgia elections. There is good cause and no neglect sufficient to allow a limited period of expert discovery on the 2024 elections. This Court should grant the limited additional expert discovery outlined in this motion.


Respectfully submitted this 30th day of January, 2025.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Elizabeth T. Young
Senior Assistant Attorney General
Georgia Bar No. 707725
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

Gene C. Schaerr*
Special Assistant Attorney General
H. Christopher Bartolomucci*
Donald M. Falk*
Brian J. Field*
Edward H. Trent*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
*Admitted pro hac vice*

8

*/s/Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@clarkhill.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@clarkhill.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@clarkhill.com
**Clark Hill PLC**
3630 Peachtree Road NE
Suite 550
Atlanta, Georgia 30339
(678) 370-4377

*Counsel for State Defendants*

9

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing brief was prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

_/s/Bryan P. Tyson_
Bryan P. Tyson