# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRIAN KEMP, Governor of the State of Georgia, in his official capacity, *et al.*,<br><br>*Defendants*,<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>*Intervenor-Defendants.* | Civil Action No.: 1:21-cv-01284-JPB |
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*,<br><br>*Defendants,*<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>*Intervenor-Defendants.* | Civil Action No.: 1:21-cv-01259-JPB |

## AME & GEORGIA NAACP PLAINTIFFS' REPLY BRIEF IN SUPPORT OF SECOND RENEWED MOTION FOR A PRELIMINARY INJUNCTION

This Court has twice rejected the merits arguments that Defendants and Intervenors recycle here and the Eleventh Circuit's recent decision did not disturb this Court's analysis as applied to Plaintiffs. On the equities, the record shows a likelihood that at some long lines will continue to persist such that the Supplemental Zone Ban will irreparably harm Plaintiffs by restricting their First Amendment rights. Raising *Purcell* more than seven months before the relevant election does not bar relief either. Intervenors' arguments regarding remedy also fail as they do not address Plaintiffs' as-applied request, or, regarding similarly situated organizations, overcome the unique nature of the First Amendment's overbreadth doctrine. Accordingly, Plaintiffs respectfully request that the Court grant the injunction.

## ARGUMENT

### I. Defendants' Arguments Fail to Rebut Plaintiffs' Showing of Likelihood of Success on the Merits.

#### A. Line Relief Is Expressive Conduct.

Defendants acknowledge that this "Court previously held that Plaintiffs are engaged in expressive conduct." Defs.' Br. (ECF No. 999) 17. Rather than identify any change in law or facts, Defendants admit that they are merely asking the Court to "reconsider that conclusion, because it turns all conduct into expressive conduct." *Id.* But that is not what this Court has found, or the record shows. This Court has already found that Plaintiffs' line relief activities convey messages of "community support, voter dignity and the importance of political participation." *In re Ga. Senate*

Bill 202 ("*Ga. SB 202 II*"), 688 F. Supp. 3d 1300, 1313 (N.D. Ga. 2023), *vacated and remanded,* 160 F.4th 1171 (11th Cir. 2025). The "common thread is that voters understand that line warming activities are intended to support and encourage voters who have chosen to exercise their right to vote." *In re Ga. Senate Bill 202* ("*Ga. SB 202 I*"), 622 F. Supp. 3d 1312, 1329 (N.D. Ga. 2022). The facts in the record provide ample support for the conclusion that "the context of the activities in this case largely mirrors the context of the food-sharing events in" *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235 (11th Cir. 2018). *Id.* Plaintiffs' declarations accompanying this renewed motion demonstrate that they intend to convey that same message in the upcoming elections. *See* ECF Nos. 988-4 ¶ 26, 988-5 ¶ 8, 988-6 ¶ 8, 988-7 ¶ 22, 988-8 ¶ 19, 988-9 ¶ 7.

### B. The Line Relief Ban Is Content Based.

Defendants' attempt to justify the Supplemental Zone Ban as a content-neutral law also fails for the same reasons this Court has already found. Defendants contend that the "Ban does not target any message that might be conveyed through giving out handouts to voters," Defs.' Br. 22, but this misses the point. The Supplemental Zone Ban is still content based because "the regulation was prompted by the notion that voters would perceive line relief as improper electioneering or political pressure," *Ga. SB 202 II*, 688 F. Supp. 3d at 1313—i.e., the statute was "justified based on the 'direct' and 'emotive' impact of the speech on its audience," *Ga. SB*

*202 I*, 622 F. Supp. 3d at 1331 (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988)).

### C. Line Relief in the Supplemental Zone Occurs in Public Forums.

State Defendants repeat their failed argument that areas outside of polling places and the 150-foot zone, including sidewalks and streets, are not public fora on Election Day. Defs.' Br. 19–21. The record and controlling law show otherwise.

*First*, the record confirms that lines "more than 150 feet from the entrance" typically extend onto "the public sidewalk and street outside of the polling location." ECF No. 171-15 ¶ 12; *accord* ECF Nos. 171-3 ¶ 18, 171-6 ¶ 6, 535-6 at 3.

*Second*, a plurality of the U.S. Supreme Court in *Burson* held that an area even closer to the polling place—a 100-foot campaign-free zone—was a public forum even in the context of Election Day. *See Burson v. Freeman*, 504 U.S. 191, 196 (1992); *see also id.* at 196 n.2 (citing testimony that "the campaign-free zone included sidewalks and streets adjacent to the polling places"). The Eleventh Circuit adopted that plurality opinion in the same context. *See Citizens for Police Accountability Pol. Comm. v. Browning*, 572 F.3d 1213, 1217–18 & n.9 (11th Cir. 2009); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1052 (6th Cir. 2015) ("spaces adjacent to" a "100–foot radius" surrounding a polling booth "often include sidewalks and streets, [which] are usually traditional public fora") (citation modified). And in *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1 (2018), the Court explained that "streets [and] sidewalks" are "traditional public forum[s]," but

the "interior of a polling place" was a nonpublic forum in Minnesota. *Id.* at 11–12.

### D. The Supplemental Zone Ban Is Not Narrowly Tailored as Applied to Plaintiffs and Other Non-Partisan Line Relief Providers.

Neither of the two primary arguments Defendants and Intervenors present meets their burden for why the Supplemental Zone Ban is narrowly tailored.

*First*, Defendants offer the same arguments already rejected twice by this Court: that restricting only one type of expressive conduct, line relief, and doing so only within 25 feet of the voting line is sufficiently narrow. Defs.' Br. 23–25. But, contrary to Defendants' argument, 25-feet is not just "a few steps back from the line." Defs.' Br. 23. Rather, line relief "necessarily involve[s] approaching voters" which cannot occur within 25 feet from the voting line. ECF No. 535-12 ¶ 5; *see also* ECF No. 535-14 ¶ 4. Once again, Defendants ask the Court to do what it cannot: "overlook an unconstitutional restriction upon some First Amendment activity simply because it leaves other First Amendment activity unimpaired." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 581 (2000). Defendants also argue that the Supplemental Zone Ban "imposes an even lesser burden on speech" than restricted areas upheld by courts in other states. Defs.' Br. 24. But none of those states ban line relief, only electioneering (as Georgia also continues to do), and all of them have firm cutoffs of where that activity can occur, while Georgia's zone is "limitless." *Ga. SB 202 II*, 688 F. Supp. 3d at 1310.

*Second*, Intervenors contend that Plaintiffs must identify at what distance the Supplemental Zone Ban becomes unconstitutional. Intvrs.' Br. 5. But Plaintiffs are merely applying the statute written by the Georgia Legislature to their expressive activities. When a statute, like the Supplemental Zone Ban, cuts off all expressive line relief, no matter the distance, Plaintiffs do not have the burden to show that a ban on expressive activities is constitutional at 200 feet but not at 250 feet. The "editorial freedom" to "blue-pencil" a statute "belongs to the Legislature, not the Judiciary." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509–10 (2010). Yet that's precisely what Intervenors would have the Court do.

## II. Plaintiffs Have Established a Likelihood of Irreparable Harm, the Equities Favor Relief, and *Purcell* Does Not Apply.

### A. Defendants Fail to Rebut Plaintiffs' Showing of Irreparable Harm.

Plaintiffs demonstrated the irreparable harm that their First Amendment rights will be impaired, *see Elrod v. Burns*, 427 U.S. 347, 373–74 (1976), in their opening brief by showing a likelihood that at least some Georgians will remain forced to wait in lines stretching longer than 150-feet from the polling place, ECF No. 988-1 at 23–24, and that the Supplemental Zone Ban "has already deterred" Plaintiffs from engaging in line relief. ECF Nos. 241 at 59, 988-1 at 24. As this Court recognized, "[b]ecause the lost opportunity for expression cannot be remedied after the fact, . . . the irreparable harm factor of the preliminary injunction test is satisfied . . . [as to] the Supplemental Zone." *Ga. SB 202 I*, 622 F. Supp. 3d at 1340.

Unable to rebut Plaintiffs' showing of irreparable harm, Defendants instead focus on irrelevant data, such as *average* wait times. The issue is not average wait time, however, but rather whether there are likely to be long lines such that Plaintiffs would continue to provide such relief but for Georgia's Supplemental Zone Ban. *See* Defs.' Br. 8. Plaintiffs have made that showing. *Id.*; ECF No. 988-1 at 23–24.

Defendants then offer unsupported claims about the lack of long lines post-implementation of SB 202, ignoring the evidence showing otherwise. *See* Defs.' Br. 8. Notably, Defendants do not dispute that long lines existed in 2022 and voters of color—particularly Black voters—continued to face substantially longer wait times than white voters. *Ga. SB 202 II*, 688 F. Supp. 3d at 1316–17; ECF No. 574-35 (2023 Pettigrew Dep.) at 118–21. Defendants' own expert's analysis shows some long lines continued in 2024. *See, e.g.*, 2025 Pettigrew Dep. 82:4-83:8, 96:19-23 (ECF No. 970); *see also* ECF No. 797 at 25-26.

Defendants fail to undermine Plaintiffs' evidence that many organizations that previously provided line relief, such as Plaintiffs, could not do so in light of SB 202 and that an injunction against the Supplemental Zone Ban would allow them to resume some of that activity. ECF No. 988-1 at 24. Based on the factual record and continued presence of long lines in some areas, Plaintiffs have shown a likelihood of irreparable harm in 2026 and beyond.

### B. The Balance of Equities and Public Interest Favor Plaintiffs.

As the Court found, an "infringement of First Amendment rights balances the equities in Plaintiffs' favor," ECF No. 241 at 61, and "neither Defendants nor the public have a legitimate interest in enforcing an unconstitutional statute," *id.*

Defendants offer two arguments in response, both of which are unfounded.

First, Defendants claim that Plaintiffs' requested injunctions "would be impossible to implement" because of purported burdens on election officials. Defs.' Br. 9. This is wrong. As discussed below, an injunction would maintain the status quo from the 2024 and 2025 elections regarding line relief. Election officials successfully navigated and ran elections during those election cycles while the Supplemental Zone Ban was enjoined without issues. And, as noted below, Defendants' arguments are contradicted by testimony from State Elections Director Evans and county election officials.

Second, Defendants argue that voters would face "improper interference, political pressure, or intimidation" if the Supplemental Zone Ban were enjoined. Defs.' Br. 10. But there are no examples in the record that support such a claim when line relief activities were permitted in the Supplemental Zone, including after this Court's injunction was in place for the 2024 and 2025 election cycles. This is because Georgia has long banned vote buying and electioneering around polling places. O.C.G.A. §§ 21-2-570, 21-2-414.

### C. The Narrow, Status-Quo Relief Sought Months from the Relevant Election Does Not Implicate and Is Not Barred By *Purcell*.

*Purcell* does not bar or counsel against the narrow preliminary relief Plaintiffs seek for three independent reasons.

*First*, Plaintiffs' requested relief does not implicate *Purcell* because the next election for which an injunction would apply is over seven months away. Plaintiffs seek only to maintain the status quo for their line-relief efforts more than 150 feet from the polling place, and at most, also seek an injunction allowing other similarly situated non-partisan organizations and individuals to provide such line relief. Defendants' and Intervenors' reliance on upcoming special elections—and even the May 2026 primary—have little import where Plaintiffs admit lines likely will not stretch longer than 150 feet in those elections. Rather, the evidence concerning long lines pertains to even-year, general and general run-off elections. *See, e.g.*, *Ga. SB 202 II*, 688 F. Supp. 3d at 1317. Thus, the next relevant election for these purposes—November 2026, including October 2026 early voting—is over seven months away.

State Defendants argue that *Purcell* applies because "Georgia voters will be voting in person in elections *most months this year*." Defs.' Br. 6. But the same was true last year, where elections in Georgia occurred in eight out of twelve months in 2025.[1] Under Defendants' theory, *Purcell* always applies and imposes heightened

---

[1] *See* Ga. Office of the Sec'y of State, Elections Div., *2025 Election Calendar and Highlights*, https://sos.ga.gov/sites/default/files/forms/2025%20Elections%20Calendar.pdf.

burdens for any voting or election-related challenge. That is simply not the state of the law. *See, e.g.*, *Jacksonville Branch of NAACP v. City of Jacksonville*, No. 22-13544, 2022 WL 16754389, at *6 (11th Cir. Nov. 7, 2022) (Lagoa, J., concurring). As Judge Lagoa distinguished, "*Purcell* [did] not apply" where "the district court issued its preliminary injunction against the current redistricting plan more than five months before the [relevant] elections," in contrast to "the relevant statewide election in *League of Women Voters of Florida* [which] was less than four months away." *Id.*; *see also Am. Encore v. Fontes*, 152 F.4th 1097, 1121 (9th Cir. 2025) ("Only 'under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress' is *Purcell* implicated.") (internal citation omitted).

The narrow line-relief injunction in the coming weeks that Plaintiffs seek would not change election rules on the eve, or in the middle, of relevant election deadlines like in the cases in which the Supreme Court or Eleventh Circuit invoked *Purcell*. In *Merrill v. Milligan*, 142 S. Ct. 879 (2022), the Supreme Court stayed a redistricting-related injunction where candidate filing deadlines would have already passed if not stayed by the district court. *See id.* (Kavanaugh, J., concurring); *Singleton v. Merrill*, 582 F. Supp. 3d 924, 936–37 (N.D. Ala. 2022). And in *Democratic National Committee v. Wisconsin State Legislature*, 141 S. Ct. 28 (2020), the Court stayed an order making several changes to Wisconsin's absentee-

balloting laws issued "after absentee voting had already begun," *id.* at 31 (Kavanaugh, J., concurring). Similarly, in *League of Women Voters of Florida, Inc. v. Florida Secretary of State*, 32 F.4th 1363, 1371 (11th Cir. 2022), the Eleventh Circuit stayed a district court injunction that "implicates voter registration" where voter registration was "currently underway" and the order purported "to require the state to take action now." So too in *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020), where the Eleventh Circuit stayed an order issued when absentee ballots were "already printed and mailed." Intervenors also cite a Sixth Circuit case, *Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020), for the proposition that the court "applied *Purcell* six months before an election." Intvrs.' Br. (ECF No. 998) 11. But this case concerned requirements for ballot-initiative petitions and thus the relevant deadline was not the election itself but "interim deadlines" that were "imminent." *Thompson*, 959 F.3d at 813.

Defendants also claim that issuing an injunction would require county officials to re-train election workers, citing a vague statement from State Elections Director Blake Evans that county election officials tend to "train poll workers ahead of the May primary elections and utilize those same poll workers throughout the year." Evans Decl. ¶ 18 (ECF No. 999-2). But given that the injunction here seeks to maintain the status quo from the 2024 and 2025 elections regarding line relief, there would be little burden on election officials to use the training and guidance

they relied on for those elections in the upcoming 2026 general election, as Intervenor RNC has acknowledged elsewhere. *See* Br. of RNC, *Republican Nat'l Comm. v. Fontes*, No. 2 CA-CV 2024-0241, 2024 WL 4719797, at *25–26 (Ariz. Ct. App. Oct. 17, 2024) ("*Purcell* does not apply because any 'change' [ ] would be a reversion . . . [which] election administrators across the state are familiar with after having used it the last four years.").

Moreover, Director Evans's own prior testimony and that of several county election officials contradict his present statement. In his deposition, Director Evans testified that if there were an injunction against the line relief ban, as sought here, he was "not sure there's anything there for a county to implement." Evans Dep., ECF No. 535-15 at 4–5; *see also* Eveler Dep., ECF No. 535-8 at 5 (Cobb County Elections Director testifying that "we wouldn't have to implement anything"); Wurtz Dep., ECF No. 535-19 at 2 (Hall County Elections Director testifying similarly).

*Second*, "*Purcell*'s heightened standard is not appropriate [where] . . . the primary reason for applying that standard—risk of voter confusion—[is] lacking." *Jacksonville Branch of NAACP*, 2022 WL 16754389, at *3. Because the injunction sought by Plaintiffs has been the status quo for the past election cycles (i.e., in 2024 and 2025), and because Defendants point to no evidence of voter confusion, *Purcell* concerns are not implicated here.

*Third*, even if this Court expanded the bounds of *Purcell*, Plaintiffs meet the

"heightened burden" for obtaining preliminary injunctive relief required by the Eleventh Circuit in *League of Women Voters of Florida*, 32 F.4th at 1372. Indeed, this Court has held twice that Plaintiffs are likely to succeed on the merits of their claim challenging Georgia's Supplemental Zone Ban in 2022 and 2023, as Plaintiffs do here. The Eleventh Circuit's recent decision on this Court's 2023 preliminary injunction did not call into question the Court's analysis as applied to "the plaintiffs' own line-relief efforts," and "the downstream questions regarding content-neutrality, the requisite level of scrutiny, and governmental interests and tailoring." *In re Ga. Senate Bill 202*, 160 F.4th 1171, 1175–77 (11th Cir. 2025). This Court has held that Plaintiffs were diligent in pursuing this challenge, *Ga. SB 202 II*, 688 F. Supp. 3d at 1318; *Ga. SB 202 I*, 622 F. Supp. 3d at 1346, and Defendants acknowledge that Plaintiffs sought preliminary relief again here "before the ink dried on [the] decision" from the Eleventh Circuit, Defs.' Br. 1. Plaintiffs demonstrate irreparable harm, as set out in Section II.A., and the injunction would be feasible "without significant cost, confusion, or hardship," *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring), because they require only a reversion to the recent status quo and in an even narrower form.

Defendants and Intervenors seek to impose a *Purcell*-applies-all-the-time regime, which blinks reality. The Court should decline their invitation.

## III. *CASA v. Trump* Does Not Prohibit Any of the Relief Sought Here.

Intervenors only, unlike State Defendants, contend that the relief sought by Plaintiffs here runs afoul of the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), because Plaintiffs seek relief for non-parties. Intvrs.' Br. 2, 7. Plaintiffs seek two forms of relief, the first of which runs only to the Plaintiffs and thus does not implicate *CASA* at all. *See* ECF No. 988-1 at 1–3. But *CASA* also does not preclude the second form of relief sought for two independent reasons.

*First*, nothing in *CASA* undermines the Supreme Court's repeated affirmance "that when a law is unconstitutionally overbroad [under the First Amendment], 'all enforcement of that law' may be enjoined." *Welty v. Dunaway*, 791 F. Supp. 3d 818, 843 (M.D. Tenn. 2025) (internal citation omitted). As Circuit Judge Gibbons (sitting by designation) held, "*CASA* also does not address the need for broader injunctions in the First Amendment context" and "[t]he court sees no reason to disregard the Supreme Court's prior First Amendment jurisprudence because of *CASA*." *Id.* The Supreme Court has "long [ ] recognized that the First Amendment needs breathing space," and so litigants may "challenge a statute [because] . . . the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973); *see also Thornhill v. Alabama*, 310 U.S. 88, 97 (1940) ("Proof of an abuse of power in the particular case has never been deemed a requisite for attack on the

constitutionality of a statute purporting to license the dissemination of ideas.") (internal citations omitted). As Justice Scalia explained, the Court has "provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may . . . 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

Indeed, Justices Kavanaugh and Barrett (who authored *CASA*) specifically concurred in the denial of a stay in a case involving injunctions affecting non-parties because the issue arose there "in the context of a First Amendment overbreadth challenge, which presents its own doctrinal complexities about the scope of relief." *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 (2023). *CASA* does not override the unique, historically founded doctrine of allowing relief for non-parties in the First Amendment context.

*Second*, *CASA* recognized that "[t]o afford the plaintiff complete relief," courts may issue injunctions that incidentally benefit non-parties. 606 U.S. at 851. That type of relief is necessary to provide complete relief to organizational-Plaintiffs and their members. An injunction against the law only for organizational-Plaintiffs and their members creates significant risks: having their members inadvertently denied their rights because the organizations rightfully do not wish to disclose such membership information that is protected under the First Amendment. To avoid these risks and so that Plaintiffs can vindicate the First Amendment rights of their

members, enjoining the law as applied to other non-partisan groups and individuals performing line relief will protect the rights of organizational-Plaintiffs' members from erroneous deprivation.

For this reason, several post-*CASA* courts have issued injunctions on a broader, though far from universal, basis to protect organizational members where it can be difficult to determine whether an individual is an organizational member in the enforcement context. *See, e.g., Chi. Women in Trades v. Trump*, No. 25 C 2005, 2025 WL 3034056, at *6 (N.D. Ill. Oct. 30, 2025) (only "feasible option" to afford complete relief and avoid the chilling effect of deterring individuals from collaborating with the organization members is to "enjoin all enforcement" of the challenged provision); s*ee also United States v. Lierman*, 151 F.4th 530, 543 (4th Cir. 2025) ("Plaintiffs here are associations with many members" which "makes it hard to tell how far an injunction can sweep to give Plaintiffs 'complete relief.'").

While Plaintiff-only relief will still be beneficial and is the minimum form of requested relief Plaintiffs seek, the broader injunction will ensure complete relief to both organizational Plaintiffs and their members.

## CONCLUSION

The Court should reject Defendants' and Intervenors' arguments and grant at least one of the two forms of the narrow injunctive relief requested.

Respectfully submitted, this 5th day of March, 2026.

/s/ *Pichaya Poy Winichakul*
Pichaya Poy Winichakul (Ga. Bar 246858)
*poy.winichakul@splcenter.org*
Matletha N. Bennette (pro hac vice)
*matletha.bennette@splcenter.org*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
Telephone: (404) 521-6700

Bradley E. Heard (Ga. Bar No. 342209)
*bradley.heard@splcenter.org*
Sabrina S. Khan (pro hac vice)
*sabrina.khan@splcenter.org*
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 705
Washington, DC 20036
Telephone: (202) 728-9557

Adam S. Sieff (pro hac vice)
*adamsieff@dwt.com*
Daniel Leigh (pro hac vice)
*danielleigh@dwt.com*
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800

*Attorneys for Plaintiffs*
*Georgia Muslim Voter Project, Women Watch Afrika, Latino Community Fund Georgia, and The Arc of the United States*

/s/ *Davin M. Rosborough*
Davin M. Rosborough (pro hac vice)
*drosborough@aclu.org*
Sophia Lin Lakin (pro hac vice)
*slakin@aclu.org*
Jonathan Topaz (pro hac vice)
*jtopaz@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836

Brian Dimmick (pro hac vice)
*bdimmick@aclu.org*
ACLU FOUNDATION, INC.
915 15th Street NW
Washington, D.C. 20005

Cory Isaacson (Ga. Bar No. 983797)
*cisaacson@acluga.org*
Briana Futch (Ga Bar No. 007314)
*bfutch@acluga.org*
ACLU FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, Georgia 30357
Telephone: (678) 981-5295

Leah C. Aden (pro hac vice)
*laden@naacpldf.org*
John S. Cusick (pro hac vice)
*jcusick@naacpldf.org*
Alaizah Koorji (pro hac vice)
*akoorji@naacpldf.org* (pro hac vice)
NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200

/s/ *Gerald Weber*

Gerald Weber
Georgia Bar No. 744878
LAW OFFICES OF GERRY
WEBER, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: 404.522.0507
Email: *wgerryweber@gmail.com*

Julie M. Houk (pro hac vice)
*jhouk@lawyerscommittee.org*
Jennifer Nwachukwu (pro hac vice)
*jnwachukwu@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600

Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan Sells, LLC
PO Box 5493
Atlanta, Georgia 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

Vilia Hayes (pro hac vice)
Gregory Farrell (pro hac vice)
Mana Ameri (pro hac vice)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000

Laurence F. Pulgram (pro hac vice)
*lpulgram@fenwick.com*
Molly Melcher (pro hac vice)
*mmelcher@fenwick.com*

Anuja Thatte (pro hac vice)
*athatte@naacpldf.org*
NAACP LEGAL DEFENSE AND
EDUCATION FUND, INC.
700 14th Street, NW
Washington, DC 20005
Telephone: (202) 682-1300

Tania Faransso (pro hac vice)
*tania.faransso@wilmerhale.com*
Laura Powell (pro hac vice)
*laura.powell@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000

Debo P. Adegbile (pro hac vice)
*debo.adegbile@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

George P. Varghese (pro hac vice)
*george.varghese@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Plaintiffs
Sixth District of the African Methodist
Episcopal Church, Delta Sigma Theta
Sorority, Georgia ADAPT, and Georgia
Advocacy Office*

FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
Telephone: 415.875.2300

Joseph S. Belichick (pro hac vice)
*jbelichick@fenwick.com*
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041-2008
Telephone: 650-988-8500

Catherine McCord (pro hac vice)
*cmccord@fenwick.com*
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone: (212) 430-2690

*Attorneys for Plaintiffs Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, Inc., League of Women Voters of Georgia, Inc., GALEO Latino Community Development Fund, Inc., Common Cause, and Lower Muskogee Creek Tribe*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated:  March 5, 2026            /s/ *Davin M. Rosborough*
                                 Davin M. Rosborough
                                 *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated:  March 5, 2026            /s/ *Davin M. Rosborough*
                                 Davin M. Rosborough
                                 *Counsel for Plaintiffs*