**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRIAN KEMP, Governor of the State of Georgia, inhis official capacity, *et al.*, <br><br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br> *Intervenor-Defendants*. | Civil Action No.: 1:21-cv-01284-JPB |
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*, <br><br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br> *Intervenor-Defendants*. | Civil Action No.: 1:21-cv-01259-JPB |

## <u>AME & GEORGIA NAACP PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING</u>

**INTRODUCTION**

Plaintiffs file this brief in response to the Court's May 26, 2026 order, requesting additional briefing as to "whether Plaintiffs have met their burden to show traceability and redressability, especially in light of the decision from the Eleventh Circuit Court of Appeals in *Coalition for Good Governance v. Secretary of State for the State of Georgia* [*(CFGG)*], No. 25-11347, 2026 WL 172950, at *4 (11th Cir. Jan. 22, 2026)." Dkt. No. 1008 at 4. Plaintiffs have satisfied traceability and redressability because State Defendants—namely, the Secretary of State and the State Election Board (SEB)—are the key officials and entities tasked with enforcing State election law generally and the line relief ban specifically.

*CFGG* is inapposite for three main reasons. *First*, the Secretary "has a special relationship to SB 202 and its enforcement" unlike in *CFGG*, which did not concern the Secretary at all. 2026 WL 172950, at *4. *Second*, Plaintiffs seek to enjoin not just criminal enforcement of the line relief ban, but in fact any enforcement of it at all. Practically speaking, enjoining State Defendants' enforcement of the line relief ban will not only remedy Plaintiffs' irreparable injury due to the loss of their freedom of expression, it will also stave off most, if not all, criminal enforcement of the ban. And regardless, an injunction preventing civil enforcement would at least partially remediate the harm Plaintiffs face, which is sufficient for redressability purposes.

*Third*, it is unsupported and untenable to read *CFGG* as requiring any plaintiff to sue 159 different district attorneys to enjoin any law that both proscribes conduct and attaches a criminal penalty. The *CFGG* panel did not announce this as a rule, nor did it purport to extend its ruling beyond the specific provisions and parties at issue in that case. Any such rule would conflict with Eleventh Circuit precedent that has found causation and redressability when plaintiffs seek to enjoin statutes without suing the parties tasked with criminal enforcement of those statutes.

This Court should accordingly find that Plaintiffs have satisfied causation and redressability as to the State Defendants here.

## LEGAL STANDARD

To satisfy Article III standing, an "injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified). "Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (quoting *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012)). In election cases, "[a]n injury is traceable to an election official responsible for the election administration process

or rule that allegedly has caused the plaintiff's injury." *Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128, 1185 (N.D. Ga. 2022).

Article III standing also requires that the injury be redressable, meaning that "a decision in a plaintiff's favor would significantly increase the likelihood that [they] would obtain relief." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc) (citation modified). If the Court's judgment could remedy plaintiff's injury, "whether directly or indirectly," there is standing. *Id*. It need only be "'likely' . . . that the injury will be 'redressed by a favorable decision'" of the Court. *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976)).

## ARGUMENT

Plaintiffs have established causation and redressability as to the State Defendants. "Secretary of State Brad Raffensperger is the 'chief election official' of Georgia." *Wood v. Raffensperger*, 981 F.3d 1307, 1310 (11th Cir. 2020) (quoting Ga. Code Ann. § 21-2-50(b) (2024)). In this capacity, "[h]e manages the state system of elections" and "promulgate[s] rules and regulations to ensure uniformity in the practices of county election officials" and "to aid 'the fair, legal, and orderly conduct of primaries and elections.'" *Id.* at 1310–11 (quoting Ga. Code Ann. § 21-2-31(1)– (2) (2024)). Similarly, "the State Election Board is charged with enforcing Georgia's

election code under state law." *Grizzle v. Kemp*, 634 F.3d 1314, 1316 (11th Cir. 2011).

As this Court has already found, State Defendants—and especially the Secretary and his office—have been principally tasked with enforcing Georgia's electioneering laws and the line relief ban and have the authority to direct elections officials regarding their application. For example, the Secretary's Office and the SEB dealt with complaints and alerts, including from poll workers, about supposed line warming and electioneering activities, and the Secretary issued multiple Official Election Bulletins about the permissibility of line warming activities. *See* Dkt. No. 241 at 13–19. The Court also noted that "the Secretary of State's office . . . has fielded incessant questions in the past regarding the appropriate boundaries for line warming activities." *Id*. at 46–47, 67, 70; *see also* Dkt. No. 197-2 ¶ 24 (Secretary's General Counsel testifying that "voters and county election officials routinely contact the Secretary of State's Office with questions about who is permitted in which portions of the polling place."); *Sixth Dist. of the AME Church v. Kemp*, 21-cv-1284-JPB, Pls.' Response to Defs.' Mot. to Dismiss, ECF No. 94 at 7 n.5 (N.D. Ga. June 21, 2021) (citing various Georgia statutory provisions giving Secretary and SEB authority to regulate, train, investigate, sanction, and even remove and replace county election officials to enforce the line relief ban).

Consequently, this Court has already held that "State Defendants . . . have enforcement responsibility" for the provisions of SB 202 that Plaintiffs challenge, including the line relief ban. *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, 574 F. Supp. 3d 1260, 1272 (N.D. Ga. 2021). Given that "[a]ll that is required [for injunctive relief against a state official] is that the official [sued] be responsible for the challenged action," meaning that "the state officer sued must, by virtue of his office, have *some* connection with the unconstitutional act or conduct complained of," *id*. at 1271 (quoting *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (1988)), the straightforward conclusion is that Plaintiffs have satisfied causation and redressability as to State Defendants.

*CFGG* does not change this analysis. In that case, the Eleventh Circuit held that plaintiffs had not established traceability and redressability for the Governor and SEB as to four provisions of SB 202—which Plaintiffs do not challenge in this case—related to election monitoring and observation. *See CFGG*, 2026 WL 172950, at *4–5. *CFGG* is inapplicable here for three main reasons.

*First*, unlike the Governor in the *CFGG* case, the Secretary "has a special relationship to SB 202 and its enforcement" such that traceability and redressability are established as to the line relief ban. *Id*. at *4. In *CFGG*, the plaintiffs did not defend traceability or redressability as to the Secretary in their opposition to

summary judgment and effectively waived the argument on appeal. *See CFGG*, No. 25-11347, Br. of Def.-Appellees, ECF No. 27 at 54 n.4 (11th Cir. Sept. 10, 2025) ("Plaintiffs' arguments address only the Board, so they have forfeited claims against the Secretary."); *id.*, Reply Br. of Pls.-Appellants, ECF No. 30 at 14 (11th Cir. Oct. 31, 2025) (failing to rebut defendants' waiver argument on reply). Further, plaintiffs in *CFGG* did "not quarrel with the district court's finding that the Governor's general enforcement power is not enough to establish traceability," and instead challenged *only* "the district court's determination that the Governor does not control state attorneys." *CFGG*, 2026 WL 172950, at *4.

None of this applies here. As noted *supra*, this Court has already held that "State Defendants . . . have enforcement responsibility" for the provisions of SB 202 that Plaintiffs challenge, *Sixth Dist. of Afr. Methodist Episcopal Church*, 574 F. Supp. 3d at 1272, in large part because the Secretary is the chief elections officer of the State, tasked with interpreting and enforcing the State's laws and rules regarding line relief and electioneering, *see* Dkt. No. 241 at 13–19. Unlike the waiver in *CFGG*, Plaintiffs have consistently argued that the Secretary and SEB have enforcement power over the line relief ban. *See, e.g.*, Dkt. No. 826 at 83–85; *Sixth Dist. of the AME Church v. Kemp*, 21-cv-1284-JPB, Pls.' Response to Defs.' Mot. to Dismiss, ECF No. 94 at 7 (N.D. Ga. June 21, 2021). This Court has already

properly rejected any argument that State Defendants, and particularly the Secretary, lack "a special relationship to SB 202 and its enforcement." *CFGG*, 2026 WL 172950, at *4. This alone is grounds to find causation and redressability and reject any meaningful overlap with *CFGG*.

*Second*, Plaintiffs seek to enjoin the prohibition on line relief, not only on its criminal enforcement. In *CFGG*, Plaintiffs pointed to the Governor's "general criminal enforcement power" and his "control [over] state attorneys." *Id.* Yet here, as this Court has held, the irreparable injury facing Plaintiffs is not only criminal prosecution, but rather "the lost opportunity for [First Amendment] expression," which "cannot be remedied after the fact." Dkt. No. 241 at 59; *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").[1] As this Court explained regarding another group of plaintiffs, "the irreparable harm identified by NGP Plaintiffs is not the potentially speculative risk of criminal

---

[1] The *CFGG* decision does briefly address the plaintiffs' argument "that an injunction would prevent the SEB from instituting civil proceedings," but seemingly only because those civil proceedings "can result in fines and possible referrals for criminal prosecutions." *CFGG*, 2026 WL 172950, at *5. Again, a major remedy that an injunction would secure for Plaintiffs here is relief from the injury to their First Amendment freedom of expression, which is separate from any potential injury stemming from criminal enforcement. And unlike in *CFGG*, the factual record as to SEB's role in the civil enforcement of the line relief ban is clear in this case. *See supra*.

penalties. It is the impact of that risk on the NGP Plaintiffs' ability to exercise their First Amendment rights." *In re Ga. Senate Bill 202*, 688 F. Supp. 3d 1300, 1317 (N.D. Ga. 2023), *vacated on other grounds*, 160 F.4th 1171 (11th Cir. 2025).

The fact that State Defendants' enforcement of the prohibition on line relief is causing Plaintiffs' injuries and an injunction against those Defendants would at least in part remedy those injuries is sufficient for purposes of standing. "Standing is not defeated merely because the alleged injury can be fairly traced to the actions of both parties and non-parties." *Loggerhead Turtle v. Cnty. Council of Volusia Cnty.,* 148 F.3d 1231, 1247 (11th Cir. 1998); *see also Made in the USA Found. v. United States*, 242 F.3d 1300, 1310–11 (11th Cir. 2001) (describing instances in which "partial relief is sufficient for standing purposes") (citation modified). Similarly, a plaintiff "need not show that a favorable decision will relieve his *every* injury" to satisfy redressability. *Larson v. Valente*, 456 U.S. 228, 243, n.15 (1982). And of course, an injunction preventing the enforcement of the prohibition on line relief would, as a practical matter, considerably diminish any chance of criminal enforcement of the ban. *See generally Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n*, 127 F.4th 1294, 1303 (11th Cir. 2025) (noting that injunction against administrative rule proscribing criminal punishment would ensure

that plaintiff "would not face any threat of prosecution," even where defendants did not include any prosecuting or law enforcement officials or entities).

*Third*, *CFGG* did not announce any sort of rule that would require any plaintiff to sue all 159 district attorneys in Georgia merely to enjoin any law that threatens criminal enforcement. *CFGG*'s analysis was confined to the facts and procedural posture of the case in terms of the specific provisions challenged, the different state defendants against whom relief was sought, the specific harms the plaintiffs alleged, and the specific arguments the plaintiffs waived during the litigation. Plaintiffs here challenge a different legal provision, on a different theory of harm, and against a different Defendant—one who has primary responsibility for enforcement of the law at issue.

A holding that Plaintiffs here were required to sue district attorneys would run afoul of precedent from the Eleventh Circuit, which has found standing in cases where plaintiffs seek to enjoin a law that entails criminal enforcement but have not sued state or local prosecutors. In *Daniels*, for example, a commercial fisherman sued for injunctive relief to prevent the defendant—the head of Florida's Fish and Wildlife Conservation Commission—from enforcing a state regulation carrying criminal penalties. 127 F.4th 1294. The Eleventh Circuit held that the plaintiff met

the traceability and redressability requirements even though he did not sue any prosecutors or law enforcement officers:

> Daniels's injury—the threat of prosecution for targeting pompano in federal waters with gill nets—is directly traceable to the existence of Florida's pompano rules in Chapter 68B-35 of the Florida Administrative Code. Without those rules … Daniels would not face any threat of prosecution for his commercial conduct in federal waters. This satisfies standing's causation requirement. And because the pompano rules would not be enforced against Daniels if he were to succeed on any of his challenges to the suite of pompano rules in Chapter 68B-35, Daniels's injury can be redressed by this litigation.

*Id*. at 1303. *Daniels* is not an outlier. *See Dream Defs. v. Governor of the State of Fla.*, 57 F.4th 879, 886, 888–89 (11th Cir. 2023) (finding traceability and redressability against Governor "from enforcing the new definition of 'riot'" in a state criminal statute because the statute authorized the Governor to order sheriffs to suppress riots "with force and strong hand when necessary") *certified question answered sub nom., DeSantis v. Dream Defs.*, 389 So. 3d 413 (Fla. 2024).[2]

While it does not concern a criminal statute, the Supreme Court's decision in *Whole Woman's Health v. Jackson* also counsels restraint in interpreting *CFGG*. 595 U.S. 30 (2021). That case concerned a Texas law restricting abortions but permitting enforcement *only* "through . . . private civil actions." *Id*. at 35–36 (quoting Tex. Health & Safety Code Ann. § 171.207(a)). The Supreme Court held that plaintiffs

---

[2] It bears noting that *Daniels* and *Dream Defenders* are published, while *CFGG* is not.

satisfied standing even though they sued *no* private parties who intended to enforce the law, finding that the claim was redressable against state licensing officials charged with enforcing "other laws that regulate . . . abortion." *Id*. at 46. In other words, *Whole Woman's Health* found standing and provided relief even where the plaintiffs sued none of the individuals tasked with the principal method of enforcing the challenged law. There is no way to square that Supreme Court holding with the expansive interpretation of *CFGG* that would bar standing here.[3]

## CONCLUSION

For the foregoing reasons, this Court should find that Plaintiffs have established traceability and redressability as to State Defendants, and grant Plaintiffs' Second Renewed Motion for a Preliminary Injunction, *see* Dkt. No. 988.

---

[3] Plaintiffs interpreted the Court's order as asking for briefing about the specific issue of causation and redressability raised by *CFGG*, *see* Dkt. No. 1008 at 4, rather than a full recitation of Plaintiffs' standing arguments. Consistent with this understanding, and in the interest of judicial economy, Plaintiffs addressed only this discrete standing issue identified by the Court. To the extent this Court sought to interrogate Plaintiffs' fuller arguments on standing, Plaintiffs cross reference their previous briefing. *See* Dkt. No. 826 at 2–10, 21–49, 65–68, 71–74, 83–85; *Sixth Dist. of the AME Church*, 21-cv-1284-JPB, Pls.' Response to Defs.' Mot. to Dismiss, ECF No. 95; *id*., ECF No. 94 at 3–7, 20–22.

Respectfully submitted, this 29th day of May, 2026.

/s/ *Pichaya Poy Winichakul*
Pichaya Poy Winichakul (Ga. Bar 246858)
*poy.winichakul@splcenter.org*
Matletha N. Bennette (pro hac vice)
*matletha.bennette@splcenter.org*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
Telephone: (404) 521-6700

Bradley E. Heard (Ga. Bar No. 342209)
*bradley.heard@splcenter.org*
Sabrina S. Khan (pro hac vice)
*sabrina.khan@splcenter.org*
SOUTHERN POVERTY
LAW CENTER
1101 17th Street NW, Suite 705
Washington, DC 20036
Telephone: (202) 728-9557

Adam S. Sieff (pro hac vice)
*adamsieff@dwt.com*
Daniel Leigh (pro hac vice)
*danielleigh@dwt.com*
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800

*Attorneys for Plaintiffs*
*Georgia Muslim Voter Project, Women Watch Afrika, Latino Community Fund Georgia, and The Arc of the United States*

/s/ *Jonathan Topaz*
Jonathan Topaz (pro hac vice)
*jtopaz@aclu.org*
Davin M. Rosborough (pro hac vice)
*drosborough@aclu.org*
Sophia Lin Lakin (pro hac vice)
*slakin@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836

Brian Dimmick (pro hac vice)
*bdimmick@aclu.org*
ACLU FOUNDATION, INC.
915 15th Street NW
Washington, D.C. 20005

Cory Isaacson (Ga. Bar No. 983797)
*cisaacson@acluga.org*
Briana Futch (Ga. Bar No. 007314)
*bfutch@acluga.org*
Akiva Freidlin (Ga. Bar No. 692290)
*afreidlin@acluga.org*
ACLU FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, Georgia 30357
Telephone: (678) 981-5295

Leah C. Aden (pro hac vice)
*laden@naacpldf.org*
John S. Cusick (pro hac vice)
*jcusick@naacpldf.org*
Alaizah Koorji (pro hac vice)
*akoorji@naacpldf.org* (pro hac vice)

/s/ *Gerald Weber*

Gerald Weber
Georgia Bar No. 744878
LAW OFFICES OF GERRY
WEBER, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: 404.522.0507
Email: *wgerryweber@gmail.com*

Julie M. Houk (pro hac vice)
*jhouk@lawyerscommittee.org*
Jennifer Nwachukwu (pro hac vice)
*jnwachukwu@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600

Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan Sells, LLC
PO Box 5493
Atlanta, Georgia 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

Vilia Hayes (pro hac vice)
Neil Oxford (pro hac vice)
Gregory Farrell (pro hac vice)
Mana Ameri (pro hac vice)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Laurence F. Pulgram (pro hac vice)

NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200

Anuja Thatte (pro hac vice)
*athatte@naacpldf.org*
NAACP LEGAL DEFENSE AND
EDUCATION FUND, INC.
700 14th Street, NW
Washington, DC 20005
Telephone: (202) 682-1300

Tania Faransso (pro hac vice)
*tania.faransso@wilmerhale.com*
Laura Powell (pro hac vice)
*laura.powell@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000

Debo P. Adegbile (pro hac vice)
*debo.adegbile@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

*lpulgram@fenwick.com*
Molly Melcher (pro hac vice)
*mmelcher@fenwick.com*
Armen Nercessian (pro hac vice)
*Anercessian@fenwick.com*
FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
Telephone: 415.875.2300

Joseph S. Belichick (pro hac vice)
*jbelichick@fenwick.com*
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041-2008
Telephone: 650-988-8500

Catherine McCord (pro hac vice)
*cmccord@fenwick.com*
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone: (212) 430-2690

*Attorneys for Plaintiffs Georgia State
Conference of the NAACP, Georgia
Coalition for the People's Agenda, Inc.,
League of Women Voters of Georgia,
Inc., GALEO Latino Community
Development Fund, Inc., Common
Cause, and Lower Muskogee Creek
Tribe*

George P. Varghese (pro hac vice)
*george.varghese@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Plaintiffs
Sixth District of the African Methodist
Episcopal Church, Delta Sigma Theta
Sorority, Georgia ADAPT, and Georgia
Advocacy Office*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: May 29, 2026

/s/ *Jonathan Topaz*
Jonathan Topaz
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated: May 29, 2026

/s/ *Jonathan Topaz*
Jonathan Topaz
*Counsel for Plaintiffs*