# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | Master Case No.: 1:21-MI-55555-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>BRIAN KEMP, Governor of the State of Georgia, in his official capacity, *et al.*,<br><br>*Defendants*,<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>*Intervenor-Defendants*. | Civil Action No.: 1:21-cv-01284-JPB |
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>*Plaintiffs,*<br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*,<br><br>*Defendants,*<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>*Intervenor-Defendants.* | Civil Action No.: 1:21-cv-01259-JPB |

## AME & GEORGIA NAACP PLAINTIFFS' REPLY BRIEF IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEFS ON STANDING

## INTRODUCTION

Unable to contest that "[P]laintiffs have standing where an injunction would give them partial relief," State Defs.' Supp. Br. in Opp. to Pls. (Defs.' Br) Dkt. No. 1012 at 8, State Defendants make two nonsensical arguments as to why Plaintiffs cannot satisfy traceability or redressability. *First*, State Defendants insist that the Secretary of State—the chief elections officer in the state who has been implementing the line relief ban since SB 202 was passed years ago—somehow lacks a "special relationship to SB 202 and its enforcement." *Coal. for Good Governance v. Sec'y of State for the State of Georgia (CFGG)*, No. 25-11347, 2026 WL 172950, at *4 (11th Cir. Jan. 22, 2026). This claim defies this Court's finding that the Secretary "[has] enforcement responsibility" for SB 202 and its line relief ban, *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp* (*AME Church*), 574 F. Supp. 3d 1260, 1272 (N.D. Ga. 2021), and the considerable record evidence corroborating this finding. *Second*, State Defendants argue that if the chief elections officer in Georgia is wholly prevented from enforcing the line relief ban under SB 202, that injunction will provide *no relief at all* to Plaintiffs—neither in terms of their ability to exercise their First Amendment freedom of expression, nor reducing the likelihood of criminal prosecution. This argument is similarly precluded by the factual record and by common sense.

As Plaintiffs demonstrated, *see* Pls.' Supp. Br. on Standing (Pls.' Br.) Dkt. No. 1009 at 5–11, *CFGG* does not change the standing analysis in this case. Plaintiffs have satisfied causation and redressability as to the line relief ban.

## ARGUMENT

**I.      The State Defendants Fail to Undermine Plaintiffs' Proof That They Have a Special Relationship to the Enforcement of the Line Relief Ban.**

In *CFGG*, the Court held that plaintiffs can show sufficient causation and redressability for an officer who "has a special relationship to SB 202 and its enforcement." 2026 WL 172950, at *4. Plaintiffs meet this standard under this Court's own decision in this case, in which it found that State Defendants, including the Secretary, "have enforcement responsibility" over the challenged provisions, including the line relief ban. *AME Church*, 574 F. Supp. 3d at 1272. This alone settles the matter: Based on this Court's findings, and under *CFGG*'s plan terms, State Defendants have a special relationship to SB 202 and its enforcement such that traceability and redressability are established here.

Attempting to complicate this simple reality, Defendants make several unavailing arguments. *First*, they claim that this Court should disregard its own finding in this case, stating that the *AME Church* decision is "irrelevant" because (i) "the Court accepted the operative complaint's allegations as true" for purposes of that motion-to-dismiss decision, and (ii) "at that time, Plaintiffs named multiple prosecuting attorneys as defendants." Defs.' Br. at 6–7.

Neither of those factors matter. The Court did not rely on any factual allegations in the complaint to support its conclusions on traceability and redressability. Instead, it relied only on Eleventh Circuit precedent and the enforcement responsibilities SB 202 provides for State Defendants. *See AME Church*, 574 F. Supp. 3d at 1271–72. State Defendants do not identify *any* factual allegation that was contingent to this Court's finding, let alone contest any such allegation. Nor could they. Unlike the Governor, courts have found—not only at the pleading stage—that "Georgia law confers primary authority on Georgia's Secretary of State to manage Georgia's electoral system," *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1345 (N.D. Ga. 2019); *see also Black Voters Matter Fund v. Raffensperger*, 478 F. Supp. 3d 1278, 1305 (N.D. Ga. 2020) (similar finding), *aff'd sub nom. Black Voters Matter Fund v. Sec'y of State for Georgia*, 11 F.4th 1227 (11th Cir. 2021). The Georgia Attorney General has even explained that "it is clear that under both the Constitution and the laws of the State the Secretary is the state official with the power, duty, and authority to manage the state's electoral system." Ga. Op. Att'y Gen. No. 2005-3 (Apr. 15, 2005). If this is not a special relationship to SB 202 and its enforcement, it is unclear what would be.

Further, it is immaterial that prosecuting attorneys in two counties were defendants at the time this decision came down, because the Court's finding at issue was specifically about State Defendants. *See AME Church*, 574 F. Supp. 3d at 1271–

72. Even the State Defendants downplayed the role of the two prosecutors, contending that there was no threatened enforcement of the law from the prosecutors. Defs.' Opp. to Mots. for Preliminary Injunction, Dkt. No. 197 at 6.

*Second*, State Defendants effectively challenge this Court's finding that State Defendants "have enforcement responsibility" over the line relief ban, *AME Church*, 574 F. Supp. 3d at 1272, insisting that "Plaintiffs still have not identified anything beyond the Secretary's 'general authority' to enforce election law" to support this argument, Defs.' Br. at 5–6. This ignores the extensive record evidence Plaintiffs cited in their opening brief detailing the specific responsibilities State Defendants have undertaken to enforce the line relief ban, including the issuance of Official Election Bulletins (OEBs) and dispensing guidance to county election officials, poll workers, and voters alike. *See* Pls.' Br. at 4. But this was only a partial list by means of example. There is more.

One former top official in the Secretary's office testified that the Secretary "had investigations into groups handing out food and water in line," sent specific directives to county election officials regarding line relief activities, and made determinations about whether or not certain line relief activities constituted a violation of Georgia law. Deposition of Ryan Germany, Dkt. No. 574-20 at 102–12. Mr. Germany also testified that "[i]f the Court enjoins the Anti-Solicitation Provision, the Secretary of State's office and county elections officials will be

required to update their trainings to educate officials and poll workers about the new rules in place for the general election," Decl. of C. Ryan Germany, Dkt. No. 197-2 ¶ 39—hardly the position of someone with little role in the enforcement of the line relief ban.

Another top official confirmed that when counties had specific complaints about line relief activities, they went directly to the Secretary's office. Deposition of Chris Harvey, Dkt. No. 574-36 at 148–49. And county election officials have confirmed that they look to the Secretary's office for directives and guidance about how to implement laws affecting electioneering and election administration— including through frequent OEBs, trainings and webinars, and written training documentation. *See* Deposition of Janine Eveler, Dkt. No. 700 at 31–34. All this unrebutted evidence detailing the tangible enforcement power and implementation responsibilities the Secretary's office has regarding enforcement of the line relief ban corroborates the utterly unremarkable conclusion that Georgia's chief election officer has "enforcement responsibility" over the state election law in question, *AME Church*, 574 F. Supp. 3d at 1272, and "has a special relationship to SB 202 and its enforcement," *CFGG*, 2026 WL 172950, at *4.

*Third*, State Defendants suggest that Plaintiffs are misreading *CFGG*, arguing that any official's "general enforcement power [over a statute] is not enough" to satisfy traceability and redressability. Defs.' Br. at 3 (quoting *CFGG*, 2026 WL

172950, at *4). But it is State Defendants who are selectively reading *CFGG*. The "general enforcement power" language the panel was specifically referring to was "the Governor's general *criminal* enforcement power," referenced in the preceding sentence. *CFGG*, 2026 WL 172950, at *4 (emphasis added). As Plaintiffs have already noted, the plaintiffs in *CFGG only* contested "the district court's determination that the Governor does not control state attorneys," *id*., and did not put forth further evidence of the Governor's enforcement over SB 202. Regardless, any close parsing is unnecessary here, given the considerable evidence of State Defendants' tangible responsibilities and enforcement power over the line relief ban, discussed *supra*.

## II. The Factual Record Demonstrates That Enjoining the State Defendants Will At Least Partially, and Likely Fully, Redress Plaintiffs' Threatened Injuries.

State Defendants do not contest the following three binding principles: (1) a plaintiff "need not show that a favorable decision will relieve [their] *every* injury" to satisfy redressability, *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982); (2) "standing is not defeated merely because the alleged injury can be fairly traced to the actions of both parties and non-parties," *Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 148 F.3d 1231, 1247 (11th Cir. 1998); and (3) "Article III also does not demand that the redress sought by a plaintiff be complete," *Moody v. Holman*, 887 F.3d 1281, 1287 (11th Cir. 2018). Rather, "to satisfy redressability requirements

for standing purposes, Plaintiffs need to show only that an injunction . . . would address at least some of the alleged injuries in this case." *AME Church*, 574 F. Supp. 3d at 1272.

Indeed, even State Defendants admit that, as a legal principle, "[P]laintiffs have standing where an injunction would give them partial relief." Defs.' Br. at 8. Yet they argue that a federal court order enjoining the State's top election officials from enforcing the line relief prohibition because it likely violates the First Amendment provides the Plaintiffs with *zero* relief. This strains credulity. Indeed, in the years in which the injunction was in place only as to state officials and prosecutors in two counties, Plaintiffs openly conducted line relief in many counties, and *not a single one* was prosecuted or threatened with prosecution. This is because as a practical reality, local election officials—the individuals who witness and contend with any provided line relief—go to the Secretary of State's office for advice on how to deal with potential violations, as former Elections Director Harvey and former Cobb County Elections Director Eveler testified. S*ee supra* at 5. As Mr. Germany testified in opposition to Plaintiffs' first preliminary injunction motion, "[b]ecause of the complexities of this system, voters and county election officials routinely contact the Secretary of State's Office with questions about who is permitted in which portions of the polling place," Dkt. No. 197-2 ¶ 24; *see also id.* ¶¶ 29–31 (listing questions and complaints to the Secretary's office).

Defendants argue without a single citation to the factual record or legal authority that an injunction against State Defendants would give Plaintiffs "*no relief at all.*" Defs.' Br. at 8–9. But as Plaintiffs showed in their opening brief, this is incorrect for two main reasons. *See* Pls.' Br. at 7–8. *First*, this Court has already held that the irreparable injury facing Plaintiffs is not only criminal prosecution, but rather also "the lost opportunity for [First Amendment] expression," which "cannot be remedied after the fact." Order, Dkt. No. 241 at 59. Absent an injunction, Plaintiffs forego this opportunity for First Amendment expression not *simply* because they fear criminal repercussions, but also because they are law-abiding citizens who do not wish to violate state law, regardless of criminal consequence.

*Second*, "an injunction preventing the enforcement of the prohibition on line relief would, as a practical matter, considerably diminish any chance of criminal enforcement of the ban." Pls.' Br. at 8. State Defendants would have this federal court believe that if it declared that the line relief ban is likely unconstitutional under the First Amendment, and if it enjoined Georgia's chief election officers from enforcing that law, there would be *no* effect on the likelihood of future criminal prosecutions under the line relief ban. That is absurd on its face. That prosecutors would spend their time criminally prosecuting individuals under a law that has been enjoined because it is likely unconstitutional is highly doubtful at best. *See generally Utah v. Evans*, 536 U.S. 452, 463–64 (2002) (holding plaintiff had standing because

it was "substantially likely" that other government officials who were not defendants in the case "would abide by an authoritative" ruling of the court and "bring about the ultimate relief that [the plaintiff] seeks").

This is particularly true given that, as noted *supra*, county election officials, poll workers, and voters receive key information and guidance about line relief activities and enforcement from the Secretary's office. If the Secretary instructs county election officials to permit line relief within the Supplemental Zone, those county election officials will be far less likely to make criminal referrals for those providing line relief. There is nothing in the record concerning police or prosecutorial enforcement of the Line Relief Ban or similar activities before the Ban, but there is extensive evidence of State Defendants and local election officials' involvement. To this day, the Secretary's website proclaims that the office is tasked with investigating violations of election laws.[1] Similarly, "the State Election Board has authority to conduct investigations into the administration of primary and election law and fraud and irregularities in primaries and elections" and it "shall be the duty of the State Election Board to report violations of the primary and election laws to the Attorney General or the appropriate district attorney who shall be

---

[1] *See* Elections Security, Office of the Ga. Sec'y of State (last visited June 4, 2026) https://sos.ga.gov/page/elections-security.

responsible for further investigation and prosecution."[2] In other words, prosecutors depend on State Defendants for referrals for these prosecutions—without them, there are unlikely to be any such prosecutions.

Finally, several counties submitted materially identical briefs arguing that Plaintiffs have not demonstrated traceability and redressability as to County Defendants. *See* Dkt. Nos. 1010–11, 1013. Plaintiffs did not specifically address County Defendants in their opening brief because the analysis in *CFGG*—which prompted this Court's request for supplemental briefing—concerned only the Governor and State Election Board (SEB), rather than any county defendants. Nevertheless, there is no reason for this Court to depart from its prior holding that Plaintiffs' injuries are also traceability to and redressable by County Defendants, given that the counties "concede that they must enforce SB 202 and do not dispute Plaintiffs' assertion that county officials are responsible for the day-to-day operations of running elections in their respective counties," and that this Court has found that "an injunction against County Defendants would address at least some of the alleged injuries in this case." *AME Church*, 574 F. Supp. 3d at 1272 (citation modified).

---

[2] *See* How to Request an Investigation, Office of the Ga. Sec'y of State (last visited June 4, 2026) https://sos.ga.gov/page/how-request-investigation.

### III.    Binding Precedent Demonstrates That Plaintiffs Do Not Need to Sue Prosecuting Attorneys to Satisfy Traceability and Redressability.

Finally, State Defendants have not materially distinguished the Eleventh Circuit and Supreme Court precedent that has found causation and redressability satisfied when plaintiffs seek to enjoin statutes without suing all parties tasked with enforcement—criminal or otherwise—of those statutes. This is precisely what happened in *Daniels v. Executive Director of Florida Fish & Wildlife Conservation Commission*: the Eleventh Circuit held that the plaintiff had traceability and redressability for his suit challenging a regulation that proscribed potential criminal enforcement despite not suing any prosecutors or law enforcement officers; *i.e.*, anyone who could actually bring a criminal prosecution against the plaintiff. 127 F.4th 1294, 1303 (11th Cir. 2025). In their opposition, State Defendants attempt to move the goalposts, claiming that an injunction can "functionally" erase a *regulation* while an injunction can never erase a statute. Defs.' Br. at 10. Defendants do not find support for this excessively formalistic distinction in *Daniels*, 127 F.4th, *Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir. 2020), or any other case, for that matter. *Daniels* proves the point here: To establish causation and redressability when challenging a law or regulation that provides for criminal enforcement, it is not necessary for the plaintiff to challenge anyone who can bring such criminal actions. *See* 127 F.4th at 1303.

Any point State Defendants thought they had on *Daniels* falls apart by the time they arrive at *Dream Defenders v. Governor of the State of Florida*, 57 F.4th 879 (11th Cir. 2023). In that case, civil society organizations brought a First Amendment vagueness and overbreadth challenge to a state statute that expanded the definition of the word "riot" in a criminal statute. *Id.* at 883–84. The Eleventh Circuit held that plaintiffs had satisfied causation and redressability as to the Governor because he has the legal authority to "'[o]rder any sheriff . . . [to] suppress tumults, riots, and unlawful assemblies in [his] count[y] with force and strong hand when necessary'" *Id.* at 889 (quoting Fla. Stat. § 30.15 (2015)). *Dream Defenders* is strikingly similar to this case: civil society organizations bringing suit to enjoin a statute with criminal consequences as violative of the First Amendment, and suing state officers who have enforcement power over the statute in question *but who do not themselves have prosecutorial power*. State Defendants' contention that in this case, "unlike Florida's governor in *Dream Defenders*, it is non-party prosecutors who enforce the law," Defs.' Br. at 10, is manifestly wrong under State Defendants' own logic. State Defendants cannot simultaneously argue that only prosecutors can enforce the line relief ban, but Florida's Governor—who, like the Secretary here, does not bring criminal prosecutions—can somehow enforce the criminal riot statute. Rather, if enjoining the Florida Governor from ordering sheriffs to suppress riots would, in effect, prevent prosecutions, enjoining State Defendants here would

do the same. *See supra* Argument Section II.[3] *Dream Defenders* is directly on point and governs this case.

Last, State Defendants' attempt to reconcile *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), with their position also fails. State Defendants insist that the licensing officials "were functionally the equivalent of the non-party prosecutors here" because they were permitted to take "'disciplinary action'" for abortion providers who violated the Texas law. Defs.' Br. at 11 (quoting *Whole Woman's Health*, 595 U.S. at 46). But State Defendants here conflate the two different ways of enforcing the challenged law. The Court rejected standing as to private individuals who could potentially enforce the law through initiating civil suits against the providers, while permitting suit against licensing officials who could take other disciplinary action such as refusal to issue or renew a medical license. *Whole Woman's Health*, 595 U.S. at 46 (citing Tex. Occ. Code Ann. §

---

[3] The district court record in *Dream Defenders* further dooms State Defendants' argument. State Defendants claim that "if [the Governor] were enjoined, [the statute] would not be enforced" in *Dream Defenders*. Defs.' Br. at 10. Yet in fact, the district court found that "sheriffs across Florida might still enforce" the law even if the Governor were enjoined—but that "[made] no difference" to the analysis, as an injunction against the Governor would "at least partially redress Plaintiffs' alleged injuries." *Dream Defs. v. DeSantis*, 553 F. Supp. 3d 1052, 1084 (N.D. Fla. 2021). The district court expressly found that the plaintiffs did not need to sue "the relevant State Attorneys, the remaining 63 Sheriffs' Departments, or other policing agencies in Florida" to satisfy the redressability requirement. *Dream Defs. v. DeSantis*, 559 F. Supp. 3d 1238, 1263 (N.D. Fla. 2021), *rev'd and remanded sub nom. Dream Defs. v. Governor of Fla.*, 119 F.4th 872 (11th Cir. 2024). The Eleventh Circuit's analysis did not contradict this. *See Dream Defs.*, 57 F.4th at 889.

164.055(a)). This is precisely the point: the Supreme Court permitted suit to go forward against defendants who had some—but not exclusive or even primary—enforcement authority over the statute, and even when other nonparties who could enforce the statute in other ways were not included as defendants. There is no reason why the same principle should not apply to this case.

## CONCLUSION

For the foregoing reasons, and the reasons outlined in Plaintiffs' opening supplemental brief, *see* Dkt. No. 1009, this Court should find that Plaintiffs have established traceability and redressability as to State Defendants, and grant Plaintiffs' Second Renewed Motion for a Preliminary Injunction, *see* Dkt. No. 988.

Respectfully submitted, this 4th day of June, 2026.

/s/ *Pichaya Poy Winichakul*
Pichaya Poy Winichakul (Ga. Bar 246858)
*poy.winichakul@splcenter.org*
Matletha N. Bennette (pro hac vice)
*matletha.bennette@splcenter.org*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, Georgia 30030
Telephone: (404) 521-6700

/s/ *Jonathan Topaz*
Jonathan Topaz (pro hac vice)
*jtopaz@aclu.org*
Davin M. Rosborough (pro hac vice)
*drosborough@aclu.org*
Sophia Lin Lakin (pro hac vice)
*slakin@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836

Bradley E. Heard (Ga. Bar No. 342209)
*bradley.heard@splcenter.org*
Sabrina S. Khan (pro hac vice)
*sabrina.khan@splcenter.org*
SOUTHERN POVERTY
LAW CENTER
1101 17th Street NW, Suite 705
Washington, DC 20036
Telephone: (202) 728-9557

Adam S. Sieff (pro hac vice)
*adamsieff@dwt.com*
Daniel Leigh (pro hac vice)
*danielleigh@dwt.com*
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800

*Attorneys for Plaintiffs*
*Georgia Muslim Voter Project, Women*
*Watch Afrika, Latino Community Fund*
*Georgia, and The Arc of the United*
*States*

Gerald Weber (Ga. Bar No. 744878)
*wgerryweber@gmail.com*
LAW OFFICES OF GERRY
WEBER, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: (404) 522-0507

Brian Dimmick (pro hac vice)
*bdimmick@aclu.org*
ACLU FOUNDATION, INC.
915 15th Street NW
Washington, D.C. 20005

Cory Isaacson (Ga. Bar No. 983797)
*cisaacson@acluga.org*
Briana Futch (Ga. Bar No. 007314)
*bfutch@acluga.org*
Akiva Freidlin (Ga. Bar No. 692290)
*afreidlin@acluga.org*
ACLU FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, Georgia 30357
Telephone: (678) 981-5295

Leah C. Aden (pro hac vice)
*laden@naacpldf.org*
John S. Cusick (pro hac vice)
*jcusick@naacpldf.org*
Alaizah Koorji (pro hac vice)
*akoorji@naacpldf.org* (pro hac vice)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200

Anuja Thatte (pro hac vice)
*athatte@naacpldf.org*
NAACP LEGAL DEFENSE AND
EDUCATION FUND, INC.
700 14th Street, NW
Washington, DC 20005
Telephone: (202) 682-1300

Julie M. Houk (pro hac vice)
*jhouk@lawyerscommittee.org*
Jennifer Nwachukwu (pro hac vice)
*jnwachukwu@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600

Bryan L. Sells (Ga. Bar No. 635562)
*bryan@bryansellslaw.com*
THE LAW OFFICE OF BRYAN
SELLS, LLC
PO Box 5493
Atlanta, Georgia 31107
Telephone: (404) 480-4212

Vilia Hayes (pro hac vice)
*vilia.hayes@hugheshubbard.com*
Gregory Farrell (pro hac vice)
*gregory.farrell@hugheshubbard.com*
Mana Ameri (pro hac vice)
*mana.ameri@hugheshubbard.com*
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000

Laurence F. Pulgram (pro hac vice)
*lpulgram@fenwick.com*
Molly Melcher (pro hac vice)
*mmelcher@fenwick.com*
FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 875-2300

Tania Faransso (pro hac vice)
*tania.faransso@wilmerhale.com*
Laura Powell (pro hac vice)
*laura.powell@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000

Debo P. Adegbile (pro hac vice)
*debo.adegbile@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

George P. Varghese (pro hac vice)
*george.varghese@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Plaintiffs*
*Sixth District of the African Methodist*
*Episcopal Church, Delta Sigma Theta*
*Sorority, Georgia ADAPT, and Georgia*
*Advocacy Office*

Catherine McCord (pro hac vice)
*cmccord@fenwick.com*
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone: (212) 430-2690

*Attorneys for Plaintiffs Georgia State
Conference of the NAACP, Georgia
Coalition for the People's Agenda, Inc.,
League of Women Voters of Georgia,
Inc., GALEO Latino Community
Development Fund, Inc., Common
Cause, and Lower Muskogee Creek
Tribe*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: June 4, 2026

/s/ *Jonathan Topaz*
Jonathan Topaz
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated: June 4, 2026

/s/ *Jonathan Topaz*
Jonathan Topaz
*Counsel for Plaintiffs*