UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | MASTER CASE NO. 1:21-mi-55555-JPB |
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN KEMP, *Governor of the State of Georgia, in his official capacity,* et al., <br><br> Defendants, <br><br> REPUBLICAN NATIONAL COMMITTEE, et al., <br><br> Intervenor-Defendants. | CIVIL ACTION NO. 1:21-cv-01284-JPB |
| GEORGIA STATE CONFERENCE OF THE NAACP, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, *in his official capacity as the Secretary of State for the State of Georgia,* et al., <br><br> Defendants, <br><br> REPUBLICAN NATIONAL COMMITTEE, et al., <br><br> Intervenor-Defendants. | CIVIL ACTION NO. 1:21-cv-01259-JPB |

## <u>ORDER</u>

This matter is before the Court on Plaintiffs'[1] Second Renewed Motion for a Preliminary Injunction [Doc. 988].  This Court finds as follows:

## **BACKGROUND**

 Georgia Senate Bill 202 ("S.B. 202"), a law that governs election-related processes, contains a provision (hereinafter, the "Food, Drink and Gift Ban") that prohibits the distribution of food, drinks and other gifts to voters waiting in line at polling places.  The Food, Drink and Gift Ban specifically states that:

> [n]o person shall . . . give, offer to give, or participate in the giving of any money or gifts, including, but not limited to, food and drink, to an elector . . . [or] establish or set up any tables or booths on any day in which ballots are being cast.

O.C.G.A. § 21-2-414(a).  The Food, Drink and Gift Ban applies (1) "[w]ithin 150 feet of the outer edge of any building within which a polling place is established," and (2) "[w]ithin 25 feet of any voter standing in line to vote at any polling place,"

---

[1] Plaintiffs include the Sixth District of the African Methodist Episcopal Church; Georgia Muslim Voter Project; Women Watch Afrika; Latino Community Fund Georgia; Delta Sigma Theta Sorority, Inc.; The Arc of the United States; Georgia ADAPT; Georgia Advocacy Office; Georgia State Conference of the NAACP; Georgia Coalition for the People's Agenda, Inc.; League of Women Voters of Georgia, Inc.; GALEO Latino Community Development Fund, Inc.; Common Cause; and Lower Muskogee Creek Tribe.

which this Court terms the "Supplemental Zone."[2] Id.  A violation of the Food,

Drink and Gift Ban is punishable as a misdemeanor.  Id. § 21-2-414(f).

On August 18, 2023, this Court enjoined Defendants[3] as well as Keith

Gammage, the Solicitor General of Fulton County, and Gregory W. Edwards, the

District Attorney for Dougherty County,[4] from enforcing the Food, Drink and Gift

Ban in the Supplemental Zone.  [Doc. 614].  More specifically, the Court enjoined

"criminal prosecutions or otherwise imposing criminal penalties."  Id. at 39.  That

decision was appealed to the Eleventh Circuit Court of Appeals.  [Doc. 644].  On

appeal, the Eleventh Circuit did not reach the merits of the preliminary injunction

order.  [Doc. 984, p. 2].  Instead, because Plaintiffs had brought a facial challenge

to the Food, Drink and Gift Ban, the circuit court vacated and remanded the case

for this Court to perform the facial-challenge analysis required by Moody v.

---

[2] The Food, Drink and Gift Ban also applies within any polling place.  See O.C.G.A.
§ 21-2-414(a).

[3] Defendants are named in Plaintiffs' respective First Amended Complaints and include
Brian Kemp, Governor of the State of Georgia, in his official capacity; Brad
Raffensperger, Secretary of State of Georgia, in his official capacity; and individual
members of the Georgia State Election Board, in their official capacities.  Defendants
also consist of the boards of registrations and elections (as well as members of those
boards) from the following counties:  Bibb, Chatham, Clarke, Clayton, Cobb, Columbia,
DeKalb, Fulton, Gwinnett, Hall and Richmond.

[4] Since the Court's August 18, 2023 preliminary injunction order, both Gammage and
Edwards have been voluntarily dismissed from the case.  [Doc. 879]; [Doc. 980].

3

NetChoice, LLC, 603 U.S. 707 (2024)—a case that was decided after this Court's preliminary injunction order.  Id. at 6.

On January 22, 2026, Plaintiffs filed the instant Second Renewed Motion for a Preliminary Injunction seeking "two narrower forms of preliminary relief."[5] [Doc. 988-1, p. 2].  In the motion, Plaintiffs ask the Court to enter an order enjoining Defendants from enforcing "the provisions of [the Food, Drink and Gift Ban] that impose criminal penalties" as applied to their own line-relief activities and to the line-relief activities of other non-partisan groups.  [Doc. 988, pp. 2–3]. Defendants oppose the motion.  [Doc. 998]; [Doc. 999].

Concerned about standing, on May 26, 2026, the Court ordered additional briefing.  [Doc. 1008].  The Court asked for supplemental briefing because it was not clear how an injunction against Defendants—none of whom are prosecutors equipped to enforce criminal laws or leverage criminal penalties—would afford Plaintiffs sufficient relief when "nonparties remain lawfully entitled to act in accordance with the law."  Id. at 5.  The supplemental briefing period closed on June 4, 2026, and this matter is now ripe for review.

---

[5] Plaintiffs request these narrower forms of relief in lieu of facial relief.

## ANALYSIS

Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to "cases" and "controversies."  U.S. Const. art. III, § 2.  To fulfill this case-or-controversy requirement, litigants must have standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  Importantly, a court must "satisfy itself that the plaintiff has standing before proceeding to consider the merits of [the] claim, no matter how weighty or interesting."  Lewis v. Governor of Ala., 944 F.3d 1287, 1296 (11th Cir. 2019).  Indeed, it is improper to consider the merits of a dispute if standing is lacking.  Id. at 1292.  This is because "standing is more than a procedural speed bump before the merits:  it is a constitutional mandate built on a single basic idea—the idea of separation of powers."  Johnson v. Mayor of Jacksonville, No. 23-11937, 2026 WL 1676195, at *3 (11th Cir. June 10, 2026) (citation modified).

The standing doctrine requires a plaintiff to show that it:  (1) suffered an injury-in-fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision.  Lujan, 504 U.S. at 560–61.  "These three elements 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case.'"  Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections, 36 F.4th 1100, 1113

(11th Cir. 2022) (quoting Lujan, 504 U.S. at 561).  Thus, a plaintiff must support each element of standing "with the manner and degree of evidence required at the successive stages of litigation."  Lujan, 504 U.S. at 561.  At the preliminary injunction stage, "the plaintiff must make a clear showing that [it] is likely to establish each element of standing."  Murthy v. Missouri, 603 U.S. 43, 58 (2024) (citation modified).  If a plaintiff fails to demonstrate all three requirements, "there is no case or controversy for the federal court to resolve."  Polelle v. Fla. Sec'y of State, 131 F.4th 1201, 1208 (11th Cir. 2025) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021)).

Defendants contend in their supplemental briefing that Plaintiffs have not met their burden to show traceability and redressability because they failed to sue the prosecutorial officials who enforce the Food, Drink and Gift Ban.  According to Defendants, "Plaintiffs' fear of prosecution," which is the alleged injury in this case, "is traceable only to those who would prosecute them:  'the prosecuting attorney.'"  [Doc. 1012, p. 8] (quoting O.C.G.A. § 17-7-71(a)).  Defendants further argue that an injunction would provide no relief because prosecuting attorneys could still bring criminal charges.  Id. at 12, 15 (explaining that non-party prosecutors could continue enforcing the Food, Drink and Gift Ban in the Supplemental Zone despite an order enjoining Defendants).

Plaintiffs, on the other hand, argue that they have established traceability and redressability for two primary reasons.  First, they argue that the Secretary of State and the State Election Board ("SEB")—two of the named defendants in this case— are the "key officials and entities tasked with enforcing State election law generally and the [Food, Drink and Gift Ban] specifically."  [Doc. 1009, p. 2].  Second, in their reply brief, Plaintiffs contend that an injunction against Defendants would provide them with at least partial relief, and that this partial relief is sufficient to establish standing.[6]  [Doc. 1015, pp. 9–11].

As demonstrated by the parties' arguments, the primary issues as to standing are traceability and redressability.  "When traceability and redressability are at stake, the key questions are who caused the injury and how it can be remedied." City of South Miami v. Governor, 65 F.4th 631, 640 (11th Cir. 2023).  For

---

[6] Plaintiffs make two other arguments, both of which are addressed here.  First, they assert that precedent does not require a "plaintiff to sue all 159 district attorneys in Georgia merely to enjoin [a] law that threatens criminal enforcement."  [Doc. 1009, p. 10].  Plaintiffs misunderstand the Court's order to provide supplemental briefing.  Indeed, the Court has never held or otherwise suggested that Plaintiffs must sue all 159 district attorneys to succeed in this matter.  Rather, the problem here is that Plaintiffs have sued no district attorneys—not even the district attorneys located within the counties where they intend to conduct their activities.  Plaintiffs also argue that this Court already decided the standing issue in a previous order and should be bound by that decision.  Id. at 7–8.  The Court disagrees.  This Court's previous order was decided at a different procedural posture and involved different claims and defendants.  Moreover, "the court always has a duty to make sure it has standing at every juncture of the case."  Coal. for Good Governance v. Sec'y of State for the State of Ga., No. 25-11347, 2026 WL 172950, at *4 n.3 (11th Cir. Jan. 22, 2026).

traceability, "[t]he injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" Ga. Ass'n of Latino Elected Offs., 36 F.4th at 1115–16 (quoting Lujan, 504 U.S. at 560–61).  Redressability is a closely related concept, and traceability and redressability often "travel together." Support Working Animals, Inc. v. Governor of Fla., 8 F.4th 1198, 1201 (11th Cir. 2021).  To show redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'" of the court.  Lujan, 504 U.S. at 561 (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 38 (1976)). Particularly relevant here, "[t]o establish traceability and redressability in a lawsuit seeking to enjoin a government official from enforcing the law, a plaintiff must show 'that the official has the authority to enforce the particular provision [being] challenged, such that [the] injunction prohibiting enforcement would be effectual.'" Dream Defs. v. Governor of the State of Fla., 57 F.4th 879, 888–89 (11th Cir. 2023) (quoting Support Working Animals, 8 F.4th at 1201).  The Court will address traceability first.

### A.  Traceability

As stated previously, "standing requires that the plaintiff's injuries be fairly traceable to the challenged action of the defendant, and not the result of the

independent action of some third party not before the court." Walters v. Fast AC, LLC, 60 F.4th 642, 650 (11th Cir. 2023) (citation modified). While traceability "is not an exacting standard," the "requirement is not toothless." Id. At the very least, a plaintiff must demonstrate "factual causation between his injuries and the defendant's misconduct," and traceability is lacking "if the plaintiff would have been injured in precisely the same way without the defendant's alleged misconduct." Id. (citation modified).

Plaintiffs have not established traceability as to Defendants. Here, Plaintiffs seek an injunction prohibiting the enforcement of a criminal statute.[7] Yet Plaintiffs have not explained any "factual causation" between Defendants' actions and the risk of criminal enforcement. Id.; see also Dream Defs., 57 F.4th at 888–89. In Georgia, the law establishes that non-party prosecutors, not Defendants, have the authority to initiate and carry out criminal enforcement proceedings for violations of the Food, Drink and Gift Ban. Thus, because non-parties with the authority to

---

[7] In their supplemental briefing, Plaintiffs claim that they "seek to enjoin the prohibition on line relief, not only . . . its criminal enforcement." [Doc. 1009, p. 8]. However, that is not the relief requested in their motion. Plaintiffs' Second Renewed Motion for a Preliminary Injunction specifically states that they seek an order enjoining Defendants "from enforcing" the provisions of the Food, Drink and Gift Ban that "impose criminal penalties." [Doc. 988, p. 2]. Even if Plaintiffs did request an injunction of the prohibition itself, the Court has no power to provide such relief. See Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1255 (11th Cir. 2020) ("[F]ederal courts have no authority to erase a duly enacted law from the statute books." (citation modified)).

enforce the statute's provisions remain able to initiate enforcement proceedings, Plaintiffs would be injured "in precisely the same way" if the Court were to issue an injunction against Defendants. Walters, 60 F.4th at 650 (citation modified). Plaintiffs make a variety of arguments as to how criminal enforcement power is not necessary to establish traceability, but none of them are persuasive. The Court addresses the arguments below.

First, Plaintiffs argue that they have established traceability because the Secretary of State is the "chief election official" who is "tasked with interpreting and enforcing the State's laws and rules regarding line relief and electioneering." [Doc. 1009, pp. 5, 7]. Similarly, Plaintiffs contend that the SEB is "charged with enforcing Georgia's election code" and that the counties are "responsible for the day-to-day operations of running elections in their respective counties." Id. at 4–5; [Doc. 1015, p. 11]. In short, Plaintiffs argue that because the Secretary of State and the SEB field questions, make rules and give guidance to election workers about the Food, Drink and Gift Ban, they have sufficient enforcement authority to establish traceability.

This Court certainly acknowledges that evidence in the record shows that Defendants have issued guidance and provided training as to the Food, Drink and Gift Ban. This involvement, however, is insufficient to establish traceability. See

10

Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1257 (11th Cir. 2020) (explaining that the Secretary's "power to prescribe rules and issue directives . . . says nothing about whether she possesses authority to *enforce* the complained-of provision" (citation modified)).  Instead, to determine traceability, the Court must focus on the injury and who causes that specific injury.

In this case, Plaintiffs contend that they are injured because they have stopped their line-warming activities to avoid criminal penalties.  In other words, they claim that the threat of criminal prosecution chills their speech.  See, e.g., [Doc. 988-1, p. 16] ("Plaintiffs seek to vindicate the rights of all non-partisan groups and individuals who will have their line relief efforts chilled by the Ban's criminal provision . . . .").  Thus, for Plaintiffs to establish standing, the criminal penalties or the threat of criminal penalties must be traceable to Defendants.  Problematically for Plaintiffs, district attorneys—not Defendants—prosecute offenses in Georgia.  Indeed, a district attorney's duty is "to represent the state in all criminal cases in the superior court."  Ga. Const. art. VI, § 8.  Georgia law requires district attorneys to prosecute all "indictable offenses" and "[t]o review every individual case for which probable cause for prosecution exists and to make a prosecutorial decision available under the law based on the facts and circumstances of each individual case."  O.C.G.A. § 15-18-6.  Here, aside from a

passing mention that Defendants can refer violations of election law to a district attorney, Plaintiffs have offered no evidence to establish that Defendants play any role in prosecuting violations of the Food, Drink and Gift Ban.[8] [Doc. 1015, pp. 9–10]. Certainly, Plaintiffs have not presented evidence which would show that Defendants can control a district attorney's decision to charge a crime if a violation of the law occurs. See Jacobson, 974 F.3d at 1253 (finding that traceability was lacking because the election supervisors were "independent officials under Florida law who [were] not subject to the Secretary's control"). In short, because Defendants neither bring criminal charges nor control the officials who do, Plaintiffs cannot meet Article III's traceability requirement.

The Court is not persuaded by Plaintiffs' argument that the Secretary and the SEB's general authority to oversee election activities is sufficient to show traceability. Otherwise, the Secretary and the SEB would be proper defendants in every single election case. Importantly, the Eleventh Circuit has found that "general supervision and administration of . . . election laws" is insufficient to

---

[8] While Plaintiffs argue that the possibility of referral establishes some criminal enforcement authority, they do not present any evidence that Defendants have ever referred a case involving the Food, Drink and Gift Ban to a district attorney. See Coal. for Good Governance, 2026 WL 172950, at *5 (finding that the plaintiffs failed to establish traceability and redressability as to the SEB because the plaintiffs "failed to present any evidence that the SEB ha[d] referred any cases to the Attorney General" and noting that "the general authority of the SEB is not enough" to show redressability).

establish traceability where the law expressly gives a "different, independent official control over" enforcement of the relevant provision. Id. at 1254 (citation modified). As already explained above, the Food, Drink and Gift Ban is enforceable through criminal prosecution. O.C.G.A. § 21-2-414(f). Such prosecution occurs at the discretion of district attorneys, who are not under the direction of any named Defendant in this action. Ga. Const. art. VI, § 8, ¶ 1(d); O.C.G.A. § 17-7-71(a).

To summarize, Plaintiffs have failed to make a clear showing that they are likely to establish traceability. As explained above, any alleged injury stemming from a threatened prosecution is not fairly traceable to Defendants because they neither enforce nor possess the authority to enforce the statute. In fact, Plaintiffs' alleged harm depends on the discretionary actions of third parties not before the Court. Even though traceability is lacking, the Court will nevertheless address whether Plaintiffs have satisfied their burden to show redressability.

## B. Redressability

To show redressability, a plaintiff must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Support Working Animals, 8 F.4th at 1205 (citation modified). In deciding whether the redressability requirement is satisfied, a court must first

13

analyze "whether a decision in a plaintiff's favor would significantly increase the likelihood that she would obtain relief that directly redresses the injury that she claims to have suffered." Lewis, 944 F.3d at 1301 (citation modified). "Second, it must be the effect of the court's judgment on the defendant—not an absent third party—that redresses the plaintiff's injury, whether directly or indirectly." Id. (citation modified). Importantly, "a plaintiff's injury isn't redressable by prospective relief where other state actors, who aren't parties to the litigation, would remain free and clear of any judgment and thus free to engage in the conduct that the plaintiffs say injures them." Support Working Animals, 8 F.4th at 1205.

In the Court's view, a preliminary injunction against Defendants would not significantly increase the likelihood of redressing Plaintiffs' injuries because (1) Defendants have no criminal enforcement authority and (2) an injunction against Defendants would not bind other parties who are not before this Court. Because Plaintiffs' requested injunction would only bind Defendants, every district attorney would still have the ability to bring criminal charges against Plaintiffs for violations of the law.[9] In other words, an order enjoining Defendants would not,

---

[9] Plaintiffs seem to suggest that district attorneys would not bring charges for violations of the Food, Drink and Gift Ban absent a referral from Defendants. Defendants, however, are not the only ones who can report violations of the Food, Drink and Gift Ban to law enforcement. Any poll worker, voter or other concerned citizen could make a

and could not, constrain the district attorneys "who are not parties to the suit and who wouldn't be obliged—at least in any binding sense—to honor an incidental legal determination the suit produced."  Lewis, 944 F.3d at 1302 (citation modified); see also Coal. for Good Governance v. Sec'y of State for the State of Ga., No. 25-11347, 2026 WL 172950, at *4 n.4 (11th Cir. Jan. 22, 2026) (holding that "the district court did not err in focusing on the fact that an injunction against the Governor would not redress Plaintiffs' injuries because the state attorneys, nonparties, would still be able to enforce" the law "against Plaintiffs").  Critically, Plaintiffs in this case have not presented any evidence that Defendants have any ability to control a local district attorney or to order a district attorney to stop a prosecution.[10]

---

complaint to the police which could result in prosecution without Defendants' involvement.  And Defendants have not provided any evidence that prosecutors would not bring charges in response to such reports.

[10] To support their position that they have standing without seeking an injunction against any prosecutorial officials, Plaintiffs cite to Daniels v. Executive Director of the Florida Fish & Wildlife Conservation Commission, 127 F.4th 1294, 1303 (11th Cir. 2025).  Daniels, however, is inapposite because the plaintiff in that case named the executive director of the state agency which promulgated the challenged regulation.  Id. at 1300–01.  Unlike Daniels, the Food, Drink and Gift Ban and S.B. 202 more broadly were enacted by the Georgia legislature, not Defendants.  Plaintiffs also rely on Dream Defenders, which does not support their argument.  In that case, the Eleventh Circuit found that the traceability and redressability requirements were satisfied where the plaintiffs sought to enjoin the governor and three sheriffs with "clear statutory authority" to enforce the challenged law.  Dream Defs., 57 F.4th at 889.

Perhaps recognizing that Defendants lack criminal enforcement authority, Plaintiffs argue that if the Court were to enjoin the Secretary and the SEB, their injury would be remedied "at least in part." [Doc. 1009, p. 9]; see also id. at 2 ("[A]n injunction preventing civil enforcement would at least partially remediate the harm Plaintiffs face . . . ."). The Court acknowledges that the redressability requirement "does not demand that the redress sought by a plaintiff be complete." Moody v. Holman, 887 F.3d 1281, 1287 (11th Cir. 2018). This argument, however, attempts to shift away from the injury that Plaintiffs have relied on thus far—chilled speech caused by the imposition or threatened imposition of criminal penalties. Until their briefing in response to this Court's show cause order, Plaintiffs have never asserted that they are injured by the threat of the Secretary or the SEB bringing a civil enforcement action[11] or directing election workers to administer lines in accordance with the Food, Drink and Gift Ban's requirements. Thus, even if the Court were to enjoin Defendants from taking civil enforcement actions or issuing guidance and instructions, Plaintiffs have not shown that such an injunction would remedy, even partially, the injury they complain of in their motion—chill caused by the risk of criminal enforcement.

---

[11] Though their brief refers to "civil enforcement," Plaintiffs have not identified any mechanism for a civil enforcement action based on violations of the Food, Drink and Gift Ban.

Additionally, the Court is not persuaded by Plaintiffs' argument that it is "absurd on its face" and "highly doubtful at best" "[t]hat prosecutors would spend their time criminally prosecuting individuals under a law that has been enjoined because it is likely unconstitutional." [Doc. 1015, p. 9]. It is well settled that this type of argument is not sufficient to establish redressability. See Jacobson, 974 F.3d at 1254 (holding that "any persuasive effect" that a judicial decision might have on non-party government officials "cannot suffice to establish redressability"); see also Franklin v. Massachusetts, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part) ("Redressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power."). Ultimately, even if this Court were to issue an injunction in Plaintiffs' favor, the Food, Drink and Gift Ban would "remain on the books," Plaintiffs' line-warming activities would remain in violation of the statute and Plaintiffs "would remain in the same position they were in when they filed" this action with regard to criminal enforcement. Support Working Animals, 8 F.4th at 1205. Consequently, Plaintiffs have not adequately shown a likelihood of establishing redressability.

## CONCLUSION

For the reasons explained above, Plaintiffs have failed to make a clear showing that they are likely to establish traceability and redressability. Injunctive relief is thus not proper here, and therefore Plaintiffs' Second Renewed Motion for a Preliminary Injunction [Doc. 988] is **DENIED**.

**SO ORDERED** this 11th day of June, 2026.

_____

**J. P. BOULEE**
United States District Judge